ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
Maurice A. Bumbu, Esq. (SBN 325343)
mbumbu@as7law.com
3636 Fourth Avenue, Suite 200
San Diego, California  92103
Telephone: 619-232-3122
Facsimile: 619-232-3264

Attorney for Defendant School Employees

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual , <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, et al, <br><br> Defendants. | Case No.:   23CV0768 BEN WVG <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS COMPLAINT** <br> **[FED. R. CIV. P. 12(b)(6)]** <br><br> Judge:      Hon. Roger T. Benitez <br> Dept.:      5A <br> Date:       June 26, 2023 <br> Time:       10:30 a.m. |

ARTIANO SHINOFF

*i*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

## Table of Contents

I.      INTRODUCTION ..................................................................................1

II.     PROCEDURAL STATUS .....................................................................1

III.    PERTINENT FACTS ............................................................................2

IV.     LEGAL STANDARD ...........................................................................4

V.      ANALYSIS ...........................................................................................4

    A.   The School's Policies Are Consistent with State and Federal Law......4

        1.   Federal Law Protects Against Discrimination Because of Gender Identity ...........................................................................4

        2.   California Protects Against Discrimination Because of Gender Identity ...........................................................................6

    B.   California Constitution Protects Privacy……....................................6

    C.   Statutes Protect Against Discrimination and Harassment ....................6

    D.   The California Department of Education Requires the Policy..............7

        1.   May a student's gender identity be shared with the student's parents, other students, or members of the public? ....................7

    E.   Plaintiffs Assertion of Parents' Rights Misstates the Law .................8

    F.   The Regulation Does Not Violate the Plaintiffs' Right to Free Speech...9

        1.   First, The Regulation Does Not Require Any Lie .....................9

        2.   Plaintiffs' Speech at School Is Not Protected Speech ...............9

    G.   A Techer's Speech in the Classroom Is Not Protected Speech ..........11

    H.   Plaintiffs' Speech Is Curricular Speech ...............................................14

    I.   The Policy Does Not Violate the Plaintiffs Religion............................14

        1.   The School's Policy Does Not Burden Plaintiffs' Religion.......15

        2.   The School's Policy Is Neutral and Applied Generally ............16

        3.   The Policy Meets the Strict Scrutiny Test ...............................17

    J.   The California Department of Education Authorities Support the Policy..................................................................................................18

    K.   The School Employees Are Entitled to Qualified Immunity.................18

VI.     CONCLUSION ...................................................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

ARTIANO SHINOFF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARTIANO SHINOFF

## TABLE OF AUTHORITIES

**Cases**

*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 359,................6

*Associated Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983) .....................................................................................4

*Apache Stronghold v. United States,* 38 F.4th 742, 770 (9th Cir. 2022).....................15

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)...............................................................4

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) .....................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)...........................................4

*Blau v. Fort Thomas Public School Dist.* (6th Cir. 2005) 401 F.3d 381, 395–396 .......................................................................................................................8

*Borden v. Sch. Dist. of East Brunswick,* 523 F.3d 153, 171 (3d Cir. 2008 ................14

*Bostock v. Clayton County* (2020) —— U.S. ——, 140 S.Ct. 1731, 1741...................17

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1204 (10th Cir. 2007)...........................................................................................................14

*Bureerong v. Uvawas*, 922 F.Supp. 1450, 1462 (C.D. Cal. 1996 ...............................4

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). .....................4

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi*"), 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) .................................................16

*Connick v. Myers,* 461 U.S. 138 (1983) ......................................................................11

*Demers v. Aaustin*, 746 F.3d 402, 411-13 (9th Cir. 2014.) ..........................................11

*Dep't of Fair Emp't and Hous. v. Cathy's Creations, Inc.*, No. BCV-18-102633, 2022 WL 18232316, at *13 (Cal. Super. Dec. 27, 2022 ...........................9

*Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) ...........................................................16

*Evans-Marshall v. Board of Educ.*, 624 F.3d 332 (6th Cir. 2010)..............................11

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005..........................8

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) ....................................5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006 ......................................................11,12

*Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011).........................................6

*Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 651
  (10th Cir.2006) .......................................................................................16

*Hope v. Pelzer*, 536 U.S. 730 (2002)....................................................................18

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...........................................................18

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, Council 31, _ U.S. _, 138
  S.Ct. 2448, 2463 (2018)...........................................................................9

*Johnson v. Poway Unified School Dist.* (9th Cir. 2011) 658 F.3d 954, 966. ...............13

*Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 Fed.Appx. 492, 493 (9th Cir.
  2009)..................................................................................................4

*Kennedy v. Bremerton School District* (2022) __ U.S. __, 142 S.Ct. 2407,
  2421, 2422 ............................................................................................14

*Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007)................................14

*Lukumi*, 508 U.S. at 531–32, 113 S.Ct. 2217 ......................................................16

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477,479-80 (7th Cir.
  2007 ....................................................................................................14

*Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999.............................................16

*North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44
  Cal.4th 1145, 1158..................................................................................18

*Patricia H. Berkeley. Unified Sch. Dist.*, 830 F.Supp. 1288, 1290 (C.D. Cal.
  1993) ...................................................................................................4

*Pearson v. Callahan*, 555 U.S. 223 (2009 ...........................................................18

*Pickering v. Board of Educ.*, 391 U.S. 563 (1968 .................................................11

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).............................................5

*Regino v. Staley* (E.D. Cal., Mar. 9, 2023, No. 223CV00032JAMDMC) ...................9

*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 626. ................................17

*Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215–16 (1st Cir. 2000)..............6

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833
  (1995)..............................................................................................13, 14

*Saucier v. Katz*, 533 U.S. 194, 195 (2001 ...........................................................18

*Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000) ...................................5

ARTIANO SHINOFF

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

*Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004)..............................................6

*Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015). ............................16

*Taking Offense v. State,* 66 Cal. App. 5th 696, 709 (2021)..................................9

*Tinker v. Des Moines Ind. Comm'ty. Sch. Dist.*, 393 U.S. 503, 506 (1969 .................11

*Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F.3d 1034, 1049 (7th Cir. 2017).................................................................................................................6

*Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)....................14

**Statutes**

Cal. Ed. Code § 49602, subd. (e)...............................................................7

Ed. Code, § 220.................................................................................6

Federal Rule of Civil Procedure 12(b)(6).................................................19

Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 et seq., ...................5

**Regulations**

Administrative Regulation 5145.3.........................................................2,3

Board Policy 5145.3............................................................................2

EUSD AR 5145.3, Comp. Ex. 3 ..........................................................10,11

<div style="writing-mode: vertical">ARTIANO SHINOFF</div>

*v*

## I.   INTRODUCTION

Two schoolteachers object because the school has asked them to be respectful of students who are experiencing confusion over their gender identity.  The school did that because the state and federal government required the school to do that. The teachers object to governments' policies and seek to inject the judicial branch into this legislative issue. This case raises very important issues for the Legislature.  But this is not an issue for the Court.

Schools are required to provide a safe place for children to learn.  The law forbids discrimination against a child who questions their gender and encourages teachers to respect the child's preferred gender.  But issues arise if the child does not want their parents to know their intent to change their gender identification.  These two teachers assert the right of parents to be central in raising their children. That very significant Constitutional issue – regarding the parents' right to raise their children—belongs to parents and is not at issue here, because these teachers do not assert their interest *as parents*; instead, they contend the policy violates their personal free speech and religious rights.

The problematic event occurs when a student wants to use a non-conforming name and pronoun but does not want the parents to know they are non-conforming.  If the parent asks the teacher directly whether their student is non-conforming, the teachers contend the school policy requires them to lie, which violates their religious beliefs.  Consequently, the principal factual issue is whether the policy requires the teachers to lie.  Review of the policy and the training provided shows the policy does not ask the teachers to lie. It instructs them to tell the parent the question is not theirs to answer, or to refer the question to an Administrator. Declining to answer a question is not a lie.  Referring a question to another person is not a lie. The remaining issue is whether any other aspect of the policy requiring respect for children's gender-identification, such as using a student's preferred pronoun or name, violates the teachers' right to freedom of speech or religion.

## II.   PROCEDURAL STATUS

The two school-teacher Plaintiffs -- ELIZABETH MIRABELLI and LORI ANN WEST-- sued individuals associated with the Escondido Union School District ("school district"), but did not sue

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

ARTIANO SHINOFF

the school district.  The school district employees are MARK OLSON, President of the EUSD Board of Education; FRANK HUSTON, Vice President of the EUSD Board of Education; JOAN GARDNER, member of the EUSD Board of Education; DOUG PAULSON, member of the EUSD Board of Education; ZESTY HARPER, a member of the EUSD Board of Education; LUIS RANKINS-IBARRA, Superintendent of EUSD; JOHN ALBERT,  Assistant Superintendent of EUSD; TRENT SMITH, Director of Integrated Student Services for EUSD; TRACY SCHMIDT, Director of Integrated Student Supports for EUSD; and STEVE WHITE, Principal of Rincon Middle School at EUSD.  The Defendant employees of the school district are referred to herein as "School Employees."

Plaintiffs also sued The State Superintendent of Public Instruction and individuals associated with the State of California and the California State Board of Education but did not sue the State. Those employees are separately represented.

Plaintiffs identified four claims for relief:

1.  Violation of Free Speech Clause of First Amendment to U.S. Constitution: Compelled Speech & Viewpoint Discrimination;

2. Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Generally Applicable due to Categorical Exemptions;

3. Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Generally Applicable due to Discretionary Exemptions; and

4. Declaratory Relief. They seek declaratory relief and an injunction. They seek damages, but have not presented a Government Claim.

## III.   PERTINENT FACTS

Plaintiffs allege in 2020, Escondido Union School District ("EUSD") enacted Administrative Regulation 5145.3, expanding upon its Board Policy 5145.3, which they allege "required certificated EUSD staff to unquestioningly accept a students' transgender or gender nonconforming self-identification, begin referring to transgender or gender nonconforming students by their preferred names and pronouns, and hide that information from parents or caretakers, among other requirements." Comp. ¶ 116, p. 28:16-19.  They attach the AR as Exhibit 4.  They contend:

2

ARTIANO SHINOFF

EUSD's policies state that "revealing a student's transgender status to individuals who do not have a legitimate need for the information, without the student's consent" is prohibited, and "parents or caretakers" are, according to EUSD, individuals who "do not have a legitimate need for the information," irrespective of the age of the student or the specific facts of the situation.

Comp. ¶3, p. 3:18-13.

They allege that the policy prohibits teachers from respecting parents' wishes. "According to EUSD, 'we shall use a student's preferred name and pronoun based upon student request,' and so 'a parent [is not] allowed to override a student's request for different pronouns/alternate names.'" Comp. ¶ 5, p. 4:10-12 (Ex. 5).

The school district policy is attached to the Complaint as **Exhibit 2** and the Regulation is attached as **Exhibit 3**.  The school district policy seeks to protect the privacy of students who seek to keep their gender identity confidential. Comp. Ex. 4.  The Plaintiffs allege that policy violates their right to free speech and their religion.

There are two parts to the Plaintiffs' objections.  First, they object to the part of the policy that requires them to respect a student's request not to disclose the student's new gender identity with one or both parents.  The call that a "lie." Second, apparently, Plaintiffs object that they are required to support a belief they disagree with when they are required to use the pronoun and name selected by a student, which are inconsistent with the student's birth gender.

93. Plaintiffs' faith teaches that God immutably creates each person as male or female; these two distinct, complementary sexes reflect the image of God; and rejection of one's biological sex is a rejection of the image of God within that person.

94. Plaintiffs also believe that they cannot affirm as true those ideas and concepts that they believe are not true, nor can they aid and abet the deception of others. Doing so, they believe, would violate biblical commands against dishonesty and lying.

95. Plaintiffs' faith does not command them to affirmatively communicate

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

ARTIANO SHINOFF

their religious beliefs at school, and they do not seek to do so. However, their faith requires them to refrain from speaking in a manner that their faith instructs as immoral, dishonest, or harmful.

Comp. p. 24:11-21.

## IV.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper when there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Basic federal pleading standards require a plaintiff to provide "fair notice" of the claims asserted and the "grounds" on which they rest. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In deciding a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled factual allegations as true to determine whether the plaintiff can prove any set of facts to support a claim for relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).   However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court need not accept as true "unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1462 (C.D. Cal. 1996). Nor should a court assume that the plaintiff can prove facts different from those alleged. *Associated Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.

Instead, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 545 (The Court may properly dismiss a claim where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible").

## V.   ANALYSIS

### A.   The School's Policies Are Consistent with State and Federal Law

#### 1.   Federal Law Protects Against Discrimination Because of Gender Identity

4

In March, 2021, President Biden issued "Executive Order 14021 on Guaranteeing an Educational Environment Free From Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity."

> It is the policy of my Administration that all students should be guaranteed an educational environment free from discrimination on the basis of sex, including discrimination in the form of sexual harassment, which encompasses sexual violence, and including discrimination on the basis of sexual orientation or gender identity. For students attending schools and other educational institutions that receive Federal financial assistance, this guarantee is codified, in part, in Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 et seq., which prohibits discrimination on the
>
> basis of sex in education programs or activities receiving Federal financial assistance.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") prohibits discrimination based on sex in education programs and activities that receive federal financial assistance. Title IX states "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . . " 20 U.S.C. § 1681, subd. (a).

In evaluating Title IX claims, federal courts look to Title VII cases for guidance. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992); *Patricia H. Berkeley. Unified Sch. Dist.*, 830 F.Supp. 1288, 1290 (C.D. Cal. 1993). In *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000), the Ninth Circuit, relying on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), reasoned that "'sex' under Title VII encompasses both sex—that is, the biological difference between men and women—and gender." It explained that while earlier cases distinguished between "sex" and "gender," the Supreme Court in *Price Waterhouse* abandoned that distinction and held that Title VII bars discrimination based on both an individual's sex and failure to conform to socially-constructed gender expectations. *Id.* In *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 Fed.Appx. 492, 493 (9th Cir. 2009),

A<small>RTIANO</small> S<small>HINOFF</small>

5

the Ninth Circuit reaffirmed that "it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men or women."

Similarly, other circuits have interpreted the sex discrimination provisions under Title IX and Title VII to protect transgender individuals from discrimination. See, e.g., *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) ("[D]iscrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender."); *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) ("[A] label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity."); *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215–16 (1st Cir. 2000) (holding that a transgender individual stated a claim for sex discrimination under the Equal Credit Opportunity Act); *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F.3d 1034, 1049 (7th Cir. 2017) (granting a preliminary injunction and holding that the plaintiff had established a likelihood of success under Title IX where the school denied a transgender boy access to the boy's restroom). Because Title VII recognizes that discrimination on the basis of transgender identity is discrimination on the basis of sex, by extension, Title IX prohibits discrimination on the basis of gender identity.

### 2.   California Protects Against Discrimination Because of Gender Identity

### B.   California Constitution Protects Privacy

The right to privacy is protected by Article 1, section 1, of the California Constitution.  That privacy right applies to children and permits the child to keep significant secrets from a parent.  For example, the California Supreme Court has held that a child's privacy rights include the right to obtain an abortion without state notification of their parents. (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 359,

### C.   Statutes Protect Against Discrimination and Harassment

The Education Code protects a range of private information provided to a school counselor, even to the extent of prohibiting disclosure to parents in some circumstances.

Notwithstanding the provisions of this section, a school counselor shall

not disclose information deemed to be confidential pursuant to this

6

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

ARTIANO SHINOFF

ARTIANO SHINOFF

> section to the parents of the pupil when the school counselor has
> reasonable cause to believe that the disclosure would result in a clear
> and present danger to the health, safety, or welfare of the pupil.

Cal. Ed. Code § 49602, subd. (e).

Students are protected against gender-identity discrimination by the Education Code. "No person shall be subjected to discrimination on the basis of … gender, gender identity, gender expression, . . . sexual orientation, . . . in any program or activity conducted by an educational institution . . . ." Ed. Code, § 220. "All pupils have the right to participate fully in the educational process, free from discrimination and harassment." Ed. Code, § 201.

> No person shall be subjected to discrimination on the basis of
> disability, gender, gender identity, gender expression, nationality, race
> or ethnicity, religion, sexual orientation, or any other characteristic that
> is contained in the definition of hate crimes set forth in Section 422.55
> of the Penal Code, including immigration status, in any program or
> activity conducted by an educational institution that receives, or benefits
> from, state financial assistance, or enrolls pupils who receive state
> student financial aid.

Ed. Code, § 220.

### D.    The California Department of Education Requires the Policy

The California Department of Education ("CDE") provides a website with Frequently Asked Questions ("FAQ") on the subject of school policies related to gender identity. The guidance from the CDE is the source of the school district's policy. That policy is consistent with the CDE instruction to preserving the privacy of a student's gender identity, even against the inquiry of a parent:

> **1.    May a student's gender identity be shared with the student's parents, other students, or members of the public?**
>
> A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home. **Revealing a student's gender identity or expression to others may compromise the student's safety. Thus, preserving a student's privacy is of**

7

**the utmost importance. The right of transgender students to keep their transgender status private is grounded in California's antidiscrimination laws as well as federal and state laws.** Disclosing that a student is transgender without the student's permission may violate California's antidiscrimination law by increasing the student's vulnerability to harassment and may violate the student's right to privacy.

CDE FAQ No. 6; Comp. Exhibit 23, ¶ 6, p. 5/12. (Emphasis added.)

The California Department of Education specifically prohibits schools from sharing a student's gender preference with the student's parents in some rare circumstances.

Pursuant to the above protections, schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. **With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents.** In those very rare circumstances where a school believes there is a specific and compelling "need to know," the school should inform the student that the school intends to disclose the student's transgender status, giving the student the opportunity to make that disclosure her or himself.

CDE FAQ No. 7; Comp. Exhibit 23, ¶ 7, p. 6/12. (Emphasis added.)

### E.    Plaintiffs Assertion of Parents' Rights Misstates the Law

The Ninth Circuit Court of Appeals has explained that parents are vested with the right to choose where their children obtain an education. But, "once parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the least, substantially diminished. *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) Parents are not vested with the power to determine how a school "will provide information to its students or what information it will provide, in its classrooms or otherwise." *Id*. (emphasis added). The Ninth Circuit then adopted the Sixth Circuit's position on this right:

Perhaps the Sixth Circuit said it best when it explained, "While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct

ARTIANO SHINOFF

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}

how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally 'committed to the control of state and local authorities.'"

*Id.* (quoting *Blau v. Fort Thomas Public School Dist.* (6th Cir. 2005) 401 F.3d 381, 395–396).

But, notwithstanding the importance of parents' rights, one Federal District Court has denied an injunction against a very similar policy sought by a parent who contended she had a right to be informed of her child's gender identity.  "Plaintiff asks this Court to enjoin enforcement of school district regulation AR 5145.3, which broadly covers nondiscrimination and harassment as it applies to the school district's transgender students."  *Regino v. Staley* (E.D. Cal., Mar. 9, 2023, No. 223CV00032JAMDMC) 2023 WL 2432920, at *1.   "For the reasons set forth below, the Court DENIES Plaintiff's motion."  *Id.*

**F.     The Regulation Does Not Violate the Plaintiffs' Right to Free Speech**

**1.     First, The Regulation Does Not Require Any Lie**

A compelled speech claim has three elements. "[A] party must establish (1) speech, (2) that is compelled by governmental action, and (3) to which the speaker objects. [citation]. If the three elements are satisfied, strict scrutiny is triggered." *Dep't of Fair Emp't and Hous. v. Cathy's Creations, Inc.*, No. BCV-18-102633, 2022 WL 18232316, at *13 (Cal. Super. Dec. 27, 2022) (citing *Taking Offense v. State,* 66 Cal. App. 5th 696, 709 (2021).  "Compelling individuals to mouth support for views they find objectionable violates [the First Amendment's] cardinal constitutional command, and in most contexts, any such effort would be universally condemned."  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, Council 31, _ U.S. _, 138 S. Ct. 2448, 2463 (2018).

Plaintiffs' Free Speech claim hinges upon the assertion that Regulation requires them to lie. But that is not true.  It is not true that the Policy or the Regulation requires anyone to lie.  Nor does it require the Plaintiffs to "mouth support" for views they find objectionable.

On the face of AR 5145.3, there is no requirement for anyone to lie.  The entire Regulation is

9

ARTIANO SHINOFF

attached to the Complaint as Exhibit 3.  It is a long Regulation, but the pertinent part says:

> To ensure that transgender and gender-nonconforming students are afforded the same rights, benefits, and protections provided to all students by law and Board policy, the district shall address each situation on a case-by-case basis, in accordance with the following guidelines:
>
> 1. Right to privacy: A student's transgender or gender-nonconforming status is his/her private information and the district will only disclose the information to others with the student's prior written consent, except when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being. In the latter instance, the district shall limit disclosure to individuals reasonably believed to be able to protect the student's well-being. Any district employee to whom a student discloses his/her transgender or gender-nonconforming status shall seek the student's permission to notify the compliance officer. If the student refuses to give permission, the employee shall keep the student's information confidential, unless he/she is required to disclose or report the student's information pursuant to this procedure, and shall inform the student that honoring the student's request may limit the district's ability to meet the student's needs related to his/her status as a transgender or gender-nonconforming student. If the student permits the employee to notify the compliance officer, the employee shall do so within three school days.
>
> As appropriate given the physical, emotional, and other significant risks to the student, the compliance officer may consider discussing with the student any need to disclose the student's transgender or gender-nonconformity status to his/her parents/guardians and/or others,

10

ARTIANO SHINOFF

1  including other students, teacher(s), or other adults on campus. The

2  district shall offer support services, such as counseling, to students who

3  wish to inform their parents/guardians of their status and desire

4  assistance in doing so.

5  EUSD AR 5145.3, Comp. Ex. 3.

6  As applied, the school did not require anyone to lie, either.  Plaintiffs allege the school provided

7  training, and nowhere in that training is there any requirement to lie.  Plaintiffs attached as Exhibit 4

8  to the Complaint a transcript of training provided by the school to the teachers.  It does not include

9  any requirement to state any fact that is false, i.e. to lie.  There is a requirement to protect the privacy

10  rights of students who wish to keep private their name and pronoun as they make the decisions related

11  to gender-identity transition. Plaintiffs allege they were instructed,

12  If a suspicious parent asks a teacher about whether their child

13  has socially transitioned at school, the teacher must simply respond that

14  "the inquiry is outside of the scope of the intent of their interaction" and

15  that they can only discuss "information regarding the student's behavior

16  as it relates to school, class rules, assignments, etc." (Ex. 9, pp.2-4.)

17  Even if a parent expresses concern, teachers are specifically "directed

18  to refrain from elaborating on their personal beliefs" regarding the

19  child's gender confusion. (Ex. 9, p.2.)

20  Comp. p. 4:1-7, citing from Exhibit 9.

21  The instruction to say a subject is outside of the scope of the discussion is not an instruction to

22  lie.  It is not an instruction to state an opinion.  It is an instruction to avoid the question.

23  **2.   Plaintiffs' Speech at School Is Not Protected Speech**

24  **G.   A Techer's Speech in the Classroom Is Not Protected Speech**

25  Arguendo, if the Court decides the school district's Regulation, as applied, imposes some

26  obligation on the Plaintiffs' speech, that speech is *not* protected. "We hold that when public employees

27  make statements pursuant to their official duties, the employees are not speaking as citizens for First

28  Amendment purposes, and the Constitution does not insulate their communications from employer

11

ARTIANO SHINOFF

1    discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

2         There is no doubt that a public-school teacher has certain First Amendment rights of freedom

3    of speech or expression. *Pickering v. Board of Educ.*, 391 U.S. 563 (1968); *Tinker v. Des Moines Ind.*

4    *Comm'ty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ["[i]t can hardly be argued that either students or

5    teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."].

6    But the free speech rights of public employees, including teachers, are not unlimited. Those rights

7    have been restricted under the test established in *Pickering* and clarified in *Connick v. Myers,* 461 U.S.

8    138 (1983), and *Garcetti*, supra, 547 U.S. at p. 418.

9         The *Pickering* test provides a public employee with First Amendment protections only if (1)

10   the employee is speaking as citizen, (2) on a matter of public concern, and (3) the public entity has no

11   adequate justification for treating the employee differently from any other member of the general

12   public. *Garcetti*, supra, 547 U.S. at 418.

13        The *Garcetti* case clarified the first prong of the *Pickering* test -- whether a public employee

14   is speaking as a citizen. In *Garcetti*, an assistant district attorney wrote a memo to his supervisor

15   recommending dismissal of a particular criminal case because the affidavit police used to obtain a

16   critical search warrant was inaccurate. *Garcetti*, supra, 547 U.S. at 414. The assistant D.A. was

17   criticized by his supervisors for writing the memo and demoted. *Id*. at 415. He then sued his employer

18   under 42 U.S.C. § 1983 for retaliation in violation of his First Amendment rights. *Id*. The Garcetti

19   court upheld the use of the *Pickering* test to determine the public employee's free speech rights in the

20   workplace. *Garcetti*, 574 U.S. at 418.

21        In clarifying the definition of "citizen" under the first prong of the Pickering test, the *Garcetti*

22   court explained that the focus should not be on the content of the speech, but on the role the speaker

23   occupied when the speech was made. *Garcetti,* supra, 574 U.S. at 421. Using that standard, Court held

24   that "when public employees make statements pursuant to their official duties, the employees are not

25   speaking as citizens for First Amendment purposes." *Id.*

26        Plaintiffs incorrectly contend they are discussing matter of public concern so that their

27   discussion is protected, citing *Demers v. Aaustin*, 746 F.3d 402, 411-13 (9th Cir. 2014.)  But *Demers*

28   *v. Aaustin* does not apply. Its analysis only applies to post-secondary education -- colleges and

**A**RTIANO **S**HINOFF

12

universities. And it recognizes the difference between universities and high schools education. "Further, the degree of freedom an instructor should have in choosing what and how to teach will vary depending on whether the instructor is a high school teacher or a university professor." *Demers v. Austin*, supra, at 413.

The *Garcetti* court expressly left open the question of whether its gloss on the *Pickering* test should be applied to the world of public academia, where there are different free speech concerns, such as academic freedom. *Id*. at 425. To that end, the *Garcetti* court noted: "There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." Id.

Such "academic freedom" concerns are not present at the high-school level. For example, in *Evans-Marshall v. Board of Educ*., 624 F.3d 332 (6th Cir. 2010), the Sixth Circuit explained that "'academic freedom' … does not readily apply to in-class curricular speech at the high school level" but applies more at the university level. *Evans-Marshall*, supra, 624 F.3d at 343-344.

The Ninth Circuit has agreed with the Sixth Circuit, noting that *Garcetti's* "'academic freedom' carve-out applied to teachers at public colleges and universities, not primary and secondary school teachers." *Johnson v. Poway Unified School Dist.* (9th Cir. 2011) 658 F.3d 954, 966.

In *Johnson*, a schoolteacher hung banners expressing religious phrases in his math classroom; the school instruct him to remove them. *Johnson*, supra, at 958-959. "When Bradley Johnson, a high school calculus teacher, goes to work and performs the duties he is paid to perform, he speaks not as an individual, but as a public employee, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Johnson*, supra at 957, citing, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995).

Primary and secondary schools hire teachers for their ability to convey the school district's curriculum, not for their academic publications, as might occur at the university level. And teachers may not introduce their own views on a particular subject, but "must stick to the prescribed curriculum not only the prescribed subject matter, but also the prescribed perspective on that subject matter."

13

ARTIANO SHINOFF

*Mayer v. Monroe County Community School Corp.*, 474 F.3d 477,479 (7th Cir. 2007). This is because "the school system does not regulate teachers' speech as much as it hires that speech. Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary." *Id.*; see also, *Borden v. Sch. Dist. of East Brunswick,* 523 F.3d 153, 171 (3d Cir. 2008) (holding under Pickering-based analysis that school could prohibit faculty participation in student-initiated prayer); *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007) (holding under a Pickering-based analysis that a school board did not infringe the rights of a teacher when it ordered him to remove religious material from a classroom bulletin board); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1204 (10th Cir. 2007); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007); *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477,479-80 (7th Cir. 2007) (applying Pickering-based test and holding that "the [F]irst [A]mendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system").

### H.    Plaintiffs' Speech Is Curricular Speech

There can be no doubt that Plaintiffs' objections to speaking, or refraining from speaking as the Regulation required, was speech in the scope of their duties as a teacher.  It was not spoken as a private citizen, but was "government speech," required by the school district Regulation.  When Plaintiffs go to work and perform the duties they are paid to perform, they speak not as individuals, but as public employees, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Johnson*, supra at 957, citing, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995).

### I.    The Policy Does Not Violate the Plaintiffs Religion

Plaintiffs' second and third claims for relief are captioned the same: "Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Generally Applicable due to Categorical Exemptions."  Each claim is similar.

**ISSUES**:  Does the school's policy actually burden the Plaintiffs' religious beliefs? If so, does a policy designed to prevent discrimination and harassment that incidentally burdens religion violate the free exercise clause of the Constitution? Stated more broadly, can a religious belief serve to permit

14

ARTIANO SHINOFF

1  racial discrimination against gender non-conforming students?

2  **1.    The School's Policy Does Not Burden Plaintiffs' Religion**

3  Plaintiffs claim the school's policy prohibited the free exercise of their religion. U.S. Const.

4  amend. I. Under this guarantee, Plaintiffs must "show[ ] that a government entity has burdened [their]

5  sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy*

6  *v. Bremerton School District* (2022) __ U.S. __, 142 S.Ct. 2407, 2421, 2422. General applicability

7  requires, among other things, that the laws be enforced evenhandedly. *Id*. at 2423; see also *Apache*

8  *Stronghold v. United States,* 38 F.4th 742, 770 (9th Cir. 2022) ("[A] law is not 'generally applicable'

9  if the law 'impose[s] burdens only on conduct motivated by religious belief' in a 'selective manner.'"

10  (second brackets in original) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508

11  U.S. 520, 533, 543, (1993)); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015).

12  First, the school's policy does not actually burden the Plaintiffs' free exercise of their religious

13  beliefs.  They allege the policy requires them to lie when they must not disclose to the parent a

14  students' preferred name and pronoun without the student's permission.   Comp. p. 51, ¶¶ 208-211.

15  Mrs. Mirabelli and Mrs. West remain committed—in light of their

16  faith—to prevent transgender students from being bullied or harassed.

17  They have no intention to, and will not, harass or tolerate harassment of

18  transgender or gender diverse students. **But a requirement that Mrs.**

19  **Mirabelli and Mrs. West actively deceive parents and hide their**

20  **child's gender confusion from them, and a strict prohibition against**

21  **Mrs. Mirabelli and Mrs. West even responding to questions from**

22  **parents about gender identity, will never be acceptable**.

23  Comp. p. 52, ¶ 215.

24  But it is not a lie to avoid answering a question, in that very rare situation where a child does

25  not want their parent to know their gender identity is different.  It is not a lie to refer a parent's question

26  to an administrator or limit the subject matter to education issues.  The California Department of

27  Education does not think it is a lie: "With rare exceptions, schools are required to respect the

28  limitations that a student places on the disclosure of their transgender status, including not sharing that

ARTIANO SHINOFF

15

information with the student's parents."   CDC FAQ # 7, Comp. Ex. 26, 6/12.

### 2.     The School's Policy Is Neutral and Applied Generally

The right to exercise one's religion freely, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted).

A neutral law of general application need not be supported by a compelling government interest even when "the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi*"), 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Such laws need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999).  For laws that are not neutral or not generally applicable, strict scrutiny applies. See *Lukumi*, 508 U.S. at 531–32, 113 S.Ct. 2217 ("A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.").

The tests for "[n]eutrality and general applicability are interrelated, and ... failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id*. at 531, 113 S.Ct. 2217.

> The mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability. See *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 651 (10th Cir.2006) ("Consistent with the majority of our sister circuits, ... we have already refused to interpret *Smith* as standing for the proposition that a secular exemption automatically creates a claim for a religious exemption.")

*Stormans, Inc. v. Wiesman* (9th Cir. 2015) 794 F.3d 1064, 1082.

The Plaintiffs contend the policy is not neutral and not applied generally in two ways.  First, they argue it does not apply to some employees.   "As outlined above, the policies apply to approximately 1,000 certificated teachers, but do not apply to more than 115 credentialed administrative staff, 740 classified support staff, or 17,000 students."  Comp. p.58, ¶ 258.  But that is

16

not true. Neither the Policy (Ex. 2) nor the Regulation (Ex. 3) excludes any adult or student. "The Regulation broadly applies to all acts relate to school activity or to school attendance occurring with a district school . . ." Comp. Ex. 2.  It is true that the District provided training to teachers that it did not provide to custodians, but that was because teachers are on the front line of communication with parents.  The policy requiring respect for gender diverse students applies to everyone.

Second, they contend the policy has discretionary exceptions.  Comp. p. 60-61, ¶ ¶ 266-270. But the discretion only applies to issues related to discipline.  The staff was told that refusing to address the student by the name and the pronoun consistent with their gender identity was one of the discriminatory or harassing actions that could subject the person to discipline. Comp. Ex. 4, p. 6. Plaintiffs argued that "harassment" had elements that required discretion to analyze.  Comp. p. 61, ¶¶ 268-270.  That is not an exception to the policy requiring respect for the student's gender identity or respect for the student's privacy. It is an exception to discipline for a person who violated the policy based upon circumstances. Similarly, the policy did not cover "inadvertent slips or honest mistakes." Comp. p. 61, ¶270.  That also is not an "exception" but is part of a consistent policy against *intentional* discrimination against a student because of gender identity.

There are no exceptions in the application of the policy and the policy is applied generally, consequently, the policy need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999).  The school's policy of respecting a student's privacy and gender identity, and keeping their gender identity private upon request, is rationally related to the purpose of preventing discrimination and harassment.

### 3.    The Policy Meets the Strict Scrutiny Test

The Policy requires all staff to protect the privacy of students, consistent with their Constitutional right to privacy, to protect the student's safety and emotional security. That is a compelling interest. The state has a compelling interest "of the highest order" in eradicating sex discrimination. *Roberts v. United States Jaycees* (1984) 468 U.S. 609, 626. The Supreme Court found that discrimination on the basis of "sex" includes discrimination on the basis of sexual orientation or transgender status. *Bostock v. Clayton County* (2020) —— U.S. ——, 140 S.Ct. 1731, 1741. The California Supreme Court also recognized that the state has a compelling interest "in ensuring full and

17

equal access to medical treatment irrespective of sexual orientation." *North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1158. The governmental purpose of protecting at-risk students from harm is a compelling governmental interest and the Policy of protecting the student's privacy, even from the parents in rare instances, is narrowly tailored, meeting the strict scrutiny test.

The Policy and Regulation are narrowly tailored. There is no alternative method of meeting the requirement to keep the student's gender identity private when the student does not want a parent to know except the careful referral to experts with the purpose of assisting the student to work through the process of informing their parents.

**J.      The California Department of Education Authorities Support the Policy**

The Fourth Claim for Relief contends the California Department of Education's legal authorities do not support the advice given to schools by the FAQ. The CDE's FAQ pages are attached to the Complaint as Exhibit 26. The policy is amply supported by the legal authorities identified above in Section A of this brief.

**K.      The School Employees Are Entitled to Qualified Immunity**

Plaintiffs seek nominal and actual damages. Comp. p. 64:14. In the event the court denies the motion to dismiss, the school employee defendants are entitled to qualified immunity.

Qualified immunity seeks to guarantee that public officials who are subjected to suit are on notice that their actions were unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002). In order to make a determination regarding qualified immunity, a court may first determine that, given the facts alleged and, in the light most favorable to the plaintiff, the official's conduct violated the plaintiff's constitutional right. *Saucier v. Katz*, 533 U.S. 194, 195 (2001). If a constitutional right was violated, then it must be determined that the right was clearly established. This determination rests upon the specific context of the case, and not a broad general proposition. *Id*. Moreover, the court must inquire as to whether it would be clear to a reasonable official that his or her conduct was unlawful in the given situation. *Id*. In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court held that a court may determine which prong of the analysis should be addressed first in light of the circumstances.

Here, it is indisputable that the entire issue of gender-identity rights is anything but clear. There

18

ARTIANO SHINOFF

1 is no possibility that the school employees could have known that complying with their employer's

2 policy could have violated the Plaintiffs' right to free speech or religion.  Consequently, if the Court

3 denies the motion to dismiss, or grants the motion with leave to amend, the Court should order that

4 the individual defendants are entitled to immunity from all damages.

5                                                **VI.**    **CONCLUSION**

6            Based upon the foregoing, it is respectfully requested that this Court sustain Defendants'

7 motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). If the Court

8 denies any part of the motion to dismiss, the Court is requested to order that the individual defendants

9 ae entitled to immunity from all damages.

10

11 Dated: May 23. 2023                             ARTIANO SHINOFF

12

13

14                                                By: _____

15                                                     Daniel R. Shinoff
                                                      Maurice A. Bumbu
                                                 Attorney for Defendants School Employees

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SCHOOL EMPLOYEE DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT

{AS7 Law San Diego/001290/000012/PL/S0554293.DOCX}