Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,

        Plaintiffs,

    v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

        Defendants.

Case No.: 3:23-cv-0768-BEN-WVG

**Plaintiffs' Memorandum of Points & Authorities in Opposition to School District Defendants' Motion to Dismiss [Fed. R. Civ. P. 12(b)(6)]**

Judge:        Hon. Roger T. Benitez
Courtroom:    5A
Hearing Date:  June 26, 2023
Hearing Time:  10:30 a.m.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ................................... 1

LEGAL STANDARD ............................................................................. 4

ARGUMENT .......................................................................................... 4

I.    The Four Claims for Relief Are Adequately Pleaded ........................... 4

    A.    Plaintiffs Have Adequately Pleaded a Violation of the Free Speech Clause through Compelled Speech and Viewpoint Discrimination ........................................................... 4

        1.    Plaintiffs object to "betraying" parents through a lack of candor, not just "lying" ....................................... 5

        2.    Plaintiffs are speaking as private citizens, not public employees, due to the factual nature of their jobs and the constitutional limits on the government ................................................................... 7

            a.    The Second *Eng* question is skipped in the academic context due to the constitutional protection for academic freedom ................................................................ 7

            b.    The government cannot make everything an employee says while on the job into government speech. ........................... 10

            c.    The government cannot force employees to violate parental rights as a condition of employment ......................................................... 12

    B.    Plaintiffs Have Adequately Pleaded a Violation of the Free Exercise Clause through Categorical and Discretionary Exemptions ...................................................... 13

        1.    Plaintiffs object to the Policies on religious grounds. ......................................................................... 14

i

2. The Parental Exclusion Policies Trigger Strict Scrutiny Because of their De Facto Categorical Exemptions for Classified Staff, Administrative Staff, and Students. ........................................ 15

3. The Parental Exclusion Policies Trigger Strict Scrutiny Because of their Discretionary Exemptions if the Violation Had a "Legitimate" Purpose. .................................... 17

4. The Parental Exclusion Policies Cannot Satisfy Strict Scrutiny ............................................. 18

C. Plaintiffs Have Adequately Pleaded a Claim for Declaratory Relief. .................................. 22

II. The Determination of Qualified Immunity Is Not Ripe ..................... 23

CONCLUSION ........................................................................ 25

ii

1

# TABLE OF AUTHORITIES

2

## CASES

3
*Aguayo v. U.S. Bank,*
4
    653 F.3d 912 (9th Cir. 2011) ............................................................. 4

5
*Am. Acad. of Pediatrics v. Lungren,*
6
    16 Cal. 4th 307 (1997)............................................................... 19, 20

7
*Am. Nurses Assn. v. Torlakson,*
8
    57 Cal. 4th 570 (2013)...................................................................... 22

9
*Anderson v. Creighton,*
10
    483 U.S. 635 (1987) ......................................................................... 24

11
*Apache Stronghold v. United States,*
12
    38 F.4th 742 (9th Cir. 2022) ........................................................... 15

13
*Apache Stronghold v. United States,*
14
    56 F.4th 636 (9th Cir. 2022)............................................................ 15

15
*Ashcroft v. al-Kidd,*
16
    563 U.S. 731 (2011)......................................................................... 24

17
*Ashcroft v. Iqbal,*
18
    556 U.S. 662 (2009) ........................................................................... 4

19
*Axson-Flynn v. Johnson,*
20
    356 F.3d 1277 (10th Cir. 2004)....................................................... 25

21
*Bell Atl. Corp. v. Twombly,*
22
    550 U.S. 544 (2007) ........................................................................... 4

23
*Blackhawk v. Pennsylvania,*
24
    381 F.3d 202 (3d Cir. 2004) ........................................................... 18

25
*Brach v. Newsom,*
26
    6 F.4th 904 (9th Cir. 2021) ............................................................. 16

27
*Brach v. Newsom,*
28
    18 F.4th 1031 (9th Cir. 2021)........................................................... 16

# TABLE OF AUTHORITIES—Continued

## Cases (Cont.)

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011) ................................................................20

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520, 537 (1993) ........................................................ 18

*Conley v. Gibson*,
    355 U.S. 41 (1957)................................................................... 4

*Demers v. Austin*,
    746 F.3d 402 (9th Cir. 2014) ...........................................7, 8, 9, 10

*Dodge v. Evergreen Sch. Dist. #114*,
    56 F.4th 767 (9th Cir. 2022)..................................................... 24, 25

*Doe v. Heck*,
    327 F.3d 492 (7th Cir. 2003) ....................................................22

*Donahoe v. Arpaio*,
    869 F. Supp. 2d 1020 (D. Ariz. 2012).......................................... 23

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ....................................................21

*Eng v. Cooley*,
    552 F.3d 1062 (9th Cir. 2009) ...................................... 7, 8, 9, 10, 12

*Escobar-Resendiz v. Garland*,
    No. 20-73807, 2022 WL 1599126 (9th Cir. May 20, 2022) ..............5

*Espinoza v. Montana Dep't of Revenue*,
    140 S. Ct. 2246, 2254 (2020) ...................................................21

*Ferrari v. Nat. Partners, Inc.*,
    No. 15-cv-4787, 2016 WL 4440242 (N.D. Cal. Aug. 23, 2016) .......19

*Fields v. Palmdale Sch. Dist.*,
    427 F.3d 1197 (9th Cir. 2005) ..............................................12, 13

# TABLE OF AUTHORITIES—Continued

## CASES (CONT.)

*Fields v. Palmdale Sch. Dist.*,
447 F.3d 1187 (9th Cir. 2006)..................................................12, 13

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021) ..................................................15, 17, 18, 20

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) ..................................................7, 8, 9, 11, 12

*Green v. Miss United States of Am., LLC*,
52 F.4th 773 (9th Cir. 2022)..................................................20

*Hodge v. Antelope Valley Cmty. Coll. Dist.*,
No. CV 12-780, 2014 WL 12776507 (C.D. Cal. Feb. 14, 2014) ........8

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018)..................................................24

*Johnson v. Poway Unified Sch. Dist.*,
658 F.3d 954 (9th Cir. 2011)..................................................8, 9, 10, 11

*Jones v. Johnson*,
781 F.2d 769 (9th Cir. 1986)..................................................19

*Keates v. Koile*,
883 F.3d 1228 (9th Cir. 2018) ..................................................23

*Kennedy v. Bremerton Sch. Dist.*,
142 S. Ct. 2407 (2022)..................................................9, 11, 15, 18, 19

*Kennedy v. Bremerton Sch. Dist.*,
869 F.3d 813 (9th Cir. 2017)..................................................9

*Kennedy v. Bremerton Sch. Dist.*,
4 F.4th 910 (9th Cir. 2021)..................................................11, 12

*Kennedy v. Bremerton Sch. Dist.*,
443 F. Supp. 3d 1223 (W.D. Wash. 2020)..................................................9

v

# TABLE OF AUTHORITIES—Continued

## CASES (CONT.)

*Kwai Fun Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) ........................................................... 23

*Lee v. York Cnty. Sch. Div.*,
    484 F.3d 687 (4th Cir. 2007) ............................................................. 8

*Lowe v. Mills*,
    ___ F.4th ___, No. 22-1710, 2023 WL 3642081 (1st Cir. May 25, 2023) ......... 16

*Mann v. Cnty. of San Diego*,
    907 F.3d 1154 (9th Cir. 2018) ......................................................... 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ........................................................... 4

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ............................................................. 9

*Morley v. Walker*,
    175 F.3d 756 (9th Cir. 1999) ........................................................... 23

*NAACP of San Jose/Silicon Valley v. City of San Jose*,
    562 F. Supp. 3d 382 (N.D. Cal. 2021) ............................................. 23

*Oyama v. Univ. of Hawaii*,
    813 F.3d 850 (9th Cir. 2015) ......................................................... 8, 9

*Parham v. J.R.*,
    442 U.S. 584 (1979) .................................................................... 21, 22

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) ......................................................... 19

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*,
    546 F.3d 1121 (9th Cir. 2008) ......................................................... 12

*Prince v. Massachusetts*,
    321 U.S. 158 (1944) ..................................................................... 13

vi

# TABLE OF AUTHORITIES—Continued

## Cases (Cont.)

*Regino v. Staley*,
    No. 2:23-cv-32, 2023 WL 2432920 (E.D. Cal. Mar. 9, 2023)........................ 13

*Ricard v. USD 475 Geary County, KS Sch. Bd.*,
    No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022) ...............1, 14, 22

*Roe v. San Jose Unified Sch. Dist. Bd.*,
    No. 20-cv-2798, 2021 WL 292035 (N.D. Cal. Jan. 28, 2021)........................ 25

*Roman Catholic Archbishop of Washington v. Bowser*,
    531 F. Supp. 3d 22 (D.D.C. 2021) .................................................................. 16

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020)..................................................................................15, 16

*San Diego Minutemen v. California Bus. Transp. & Hous. Agency's Dep't of Transp.*,
    570 F. Supp. 2d 1229 (S.D. Cal. 2008)........................................................... 23

*South Bay United Pentecostal Church v. Newsom*,
    141 S. Ct. 716 (2021)...................................................................................... 16

*Stanley v. Illinois*,
    405 U.S. 645 (1972) ..................................................................................21, 22

*Stapley v. Pestalozzi*,
    733 F.3d 804 (9th Cir. 2013)........................................................................... 23

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)..........................................................................17

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015).......................................................................... 18

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ...............................................................................15, 16

*Tatel v. Mt. Lebanon Sch. Dist.*,
    No. CV 22-837, 2022 WL 15523185 (W.D. Pa. Oct. 27, 2022) ..................... 25

# TABLE OF AUTHORITIES—Continued

## CASES (CONT.)

*Tatel v. Mt. Lebanon Sch. Dist.*,
  No. CV 22-837, 2023 WL 3740822 (W.D. Pa. May 31, 2023) ...................... 25

*The Presbyterian Church (U.S.A.) v. United States*,
  870 F.2d 518 (9th Cir. 1989)............................................................. 23

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ...................................................................... 7

*Troxel v. Granville*,
  530 U.S. 57 (2000) ................................................................... 13, 22

*United States v. Lanier*,
  520 U.S. 259 (1997).......................................................................... 24

*United States v. McAdory*,
  935 F.3d 838 (9th Cir. 2019)............................................................ 10

*Wallis v. Spencer*,
  202 F.3d 1126 (9th Cir. 2000) ...................................................... 21, 25

*Waln v. Dysart Sch. Dist.*,
  54 F.4th 1152 (9th Cir. 2022) ................................................. 16, 17, 18

*White v. Pauly*,
  580 U.S. 73 (2017) ......................................................................... 24

## STATUTES, RULES, & CONSTITUTIONAL PROVISIONS

42 U.S.C. § 1983.................................................................................... 23

Cal. Educ. Code § 49091.12(a) ............................................................. 15

Cal. Educ. Code § 49602...................................................................... 22

Fed. R. Civ. P. 12(b)(6)..........................................................1, 3, 4, 7, 17

U.S. Const., art. VI, cl. 2 ....................................................................... 21

# TABLE OF AUTHORITIES — Continued

## Other Authorities

1 Funk & Wagnalls New Practical Standard Dictionary 772 (1946) ............... 6

1 Ronna Greff Schneider, Education Law: First Amendment, Due Process and Discrimination Litigation § 2:18 & n.22 (Oct. 2022 Update) ........................................................................................ 8

2 Webster's Third New Int'l Dictionary Unabridged 1305 (1976) ................... 6

*Exodus* 20:1-12 (Douay-Rheims) .................................................. 14

Kenneth J. Vandevelde, Thinking Like A Lawyer: An Introduction To Legal Reasoning 11 (2d ed. 2011) ............................................ 17

Minute Entry, *Konen v. Caldeira*, No. 5:22-cv-5195, ECF No. 45 (N.D. Cal., Apr. 7, 2023) .................................................................. 13

## INTRODUCTION

Pending before the Court are the parties' cross motions: Plaintiffs Elizabeth Mirabelli and Lori Ann West's motion for a preliminary injunction (ECF No. 5) and the Escondido Union School District ("EUSD") Defendants'[1] Rule 12(b)(6) motion to dismiss. (ECF No. 7.) EUSD's motion to dismiss is flawed for the simple reason that it misconstrues Plaintiffs' claims, draws all inferences (whether reasonable or not) in EUSD's favor, and finally ignores inconvenient pleaded allegations.

The Complaint, as framed, adequately pleads claims upon which relief can be granted—and indeed, persuasively pleads a clear violation of law. As stated in Plaintiffs' motion for a preliminary injunction, courts across the country are already striking down policies like EUSD's. *See, e.g., Ricard v. USD 475 Geary County, KS Sch. Bd.*, No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022). Thus, the Court should deny EUSD's motion to dismiss and grant Plaintiff Mirabelli and West's motion for a preliminary injunction.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Elizabeth Mirabelli and Lori Ann West are long-time and devoted educators. They greatly love their work and find inspiring young children to be a fulfilling vocation. As a result they pour themselves into their work, and in their several decades teaching seventh and eighth grade children, they have received numerous accolades. (ECF No. 1, Compl., pp.20-23, ¶¶75-90.) But with the 2022-2023 school year, they discovered for the first time that they were expected to deceive parents by withholding information about a child's gender identity. (Compl., pp.28-37, 67-113,

---

[1] The motion to dismiss was brought by the defendants associated with the Escondido Union School District ("EUSD"). (ECF No. 7-1, pp.1:19-2:6.) It was not joined by the defendants associated with the California Department of Education ("CDE"). As short-hand, the motion alternatively refers to the movants as the "School District Defendants" (ECF No. 7-1) or the "School Employee Defendants." (ECF No. 7.) This brief will refer to them as "EUSD." Further, unless otherwise noted, all quotations are "cleaned up" by omitting citations, quotation marks, brackets, ellipses, and emphasis; all emphasis is added. Page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

¶¶117-48 & Exs.1-9.) Presenting as a gender different from one's biological sex in public is called a "social transition" and is normally a reasoned medical decision made by families in consultation with psychologists. (Compl., pp.25-26, ¶104; *see also* ECF No. 5-2, Declaration of Dr. Erica E. Anderson, pp.24-34, ¶¶56-86.)

However, EUSD ordered that children alone can make the decision whether to "socially transition" and that under the child's "Right to Privacy" teachers had to scrupulously avoid "outing" a child to his parents. (Compl., pp.28-37, 51-52, 67-113, ¶¶117-48, 208-12 & Exs.1-9.) As shown by the discipline of a fellow teacher (Compl., pp.28-29, ¶117), failure to comply with these policies will lead to discipline, including eventually termination. (Compl., p.32, ¶129.) This greatly bothered both Plaintiffs Mirabelli and West because, both morally and religiously, they know that keeping this information from parents is wrong. They believe that the relationship between parents and children is sacred and should not be undermined through introducing deception and distrust. (Compl., pp.20-27, 193-236, ¶¶75-111 & Exs.24-25.)

Moreover, in seeking the best for their gender incongruent students, Plaintiffs Mirabelli and West believe that life-altering decisions like whether to "socially transition" must be left in the hands of parents, not children alone. (*Id.*) Thus, they sought a religious accommodation under Title VII and the California Fair Employment & Housing Act. EUSD agreed to grant them a partial accommodation, such that they could personally refer to students in a gender-neutral manner. But EUSD held firm on its requirement that they participate in the deception of parents. (Compl., pp.44-53, 101-13, 250-75, ¶¶177-216 & Exs.7-9, 27-28.)

Thus, on May 26, 2023, Plaintiffs Mirabelli and West initiated this action. They submitted a lengthy, 64-page complaint with 286 paragraphs. (Compl., pp.1-64.) That complaint also attached thirty-two exhibits documenting the contours of EUSD's gender identity policies and the history of the parties' negotiations. (Compl., pp.67-275.) The Complaint coined the term of art "Parental Exclusion Policies" to encompass the constellation of policies that require teachers to unhesitatingly accept a

student's self-professed gender identity, begin using the student's preferred name and pronouns (even if instructed not to by a parent), and revert to a legal name and biological pronouns when speaking with parents to avoid "outing" the student. (Compl., p.37, ¶150.) The Complaint was verified by both Plaintiff Elizabeth Mirabelli and Plaintiff Lori Ann West. (Compl., pp.65-66.)

The Complaint pleads four claims for relief. First, it pleads that EUSD's Parental Exclusion Policies violate the Free Speech Clause of the First Amendment by compelling speech in a viewpoint discriminatory manner. (Compl., pp.53-56, ¶¶217-39.) Second and third, the Complaint pleads that EUSD's refusal to exempt Plaintiffs Mirabelli and West from the Parental Exclusion Policies violates the Free Exercise Clause of the First Amendment under two different theories. The Complaint pleads that the policies are not neutral and generally applicable, because of their categorical exemptions (Compl., pp.57-59, ¶¶240-58) and discretionary exemptions. (Compl., pp.60-63, ¶¶259-80.)[2] Fourth, the Complaint pleads a claim for declaratory relief that the California Department of Education's ("CDE") Frequently Asked Questions page on gender identity—which formed the basis of EUSD's own policies—is not an accurate recitation of California or federal law. (Compl., pp.63-64, ¶¶281-86.)

The Complaint names as defendants twenty-two individuals: ten associated with EUSD (Compl., pp.7-9, ¶¶21-32), and twelve associated with the CDE. (Compl., pp.10-12, ¶¶33-46.) It seeks declaratory and injunctive relief, and actual and nominal damages. (Compl., p.64, Prayer ¶¶A-C.) In early May, both EUSD and the CDE waived service of summons. (ECF Nos. 3 & 4.) On May 23, 2023, EUSD filed the present Rule 12(b)(6) motion to dismiss the Complaint. (ECF No. 7.) The CDE has not yet filed a responsive pleading.

---

[2] EUSD incorrectly states that "Plaintiffs' second and third claims for relief are captioned the same." (Mtn., p.19:23-25.) In fact, Plaintiffs' second claim is titled: "Not Generally Applicable due to *Categorical* Exemptions" (Compl., p.57:1-4), and their third claim is titled: "Not Generally Applicable due to *Discretionary* Exemptions." (Compl., p.60:1-4.)

## LEGAL STANDARD

A complaint must provide "fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The standard for dismissal Rule 12(b)(6) is quite strict. "A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## ARGUMENT

## I.   THE FOUR CLAIMS FOR RELIEF ARE ADEQUATELY PLEADED

EUSD's motion proceeds in reverse order. Its first four sections address California and federal law on gender identity, and are then incorporated by reference into its section attacking Plaintiffs' fourth claim for declaratory relief. (Mtn., p.23, § V.J (citing Mtn., pp.4-14, §§ V.A-E).) The motion then addresses Plaintiffs' free speech claim (Mtn., pp.14-19, §§ V.F-H) and Plaintiffs' free exercise claims. (Mtn., pp.19-23, §§ V.I.) This brief will address the claims in the order pleaded.

### A.   Plaintiffs Have Adequately Pleaded a Violation of the Free Speech Clause through Compelled Speech and Viewpoint Discrimination

EUSD raises two arguments against Plaintiffs' free speech claim. First, EUSD argues that its Parental Exclusion Policies do not actually require Plaintiffs to do anything to which they object. (Mtn., pp.14-16, § V.F.) Second, EUSD argues that

Plaintiffs' speech complying with (or refusing to comply with) its Parental Exclusion Policies is government speech for which Plaintiffs have no First Amendment rights. (Mtn., pp.16-19, §§ V.G-H.) Both arguments fail.

### 1. Plaintiffs object to "betraying" parents through a lack of candor, not just "lying"

EUSD's first argument is that a necessary element of a compelled speech claim is that the compelled speech must be speech "to which the speaker objects." (Mtn., p.14:17-18.) Then, EUSD argues that Plaintiffs only object to lying (Mtn., p.14:25-26), but that the Parental Exclusion Policies do not actually require them to lie. (Mtn., pp.14:26-11:22.) The key clause is that Plaintiffs *only object to lying*. But, unsurprisingly, EUSD cites nothing from the complaint to support this assertion. It is incorrect.

Throughout, the Complaint pleads a description of EUSD's Parental Exclusion Policies, pleads that the policies require speech (or refraining from speech), and pleads that Plaintiffs *object to those policies*. Nowhere does the Complaint limit Plaintiffs' objection to reciting "a lie." Rather, just as Plaintiffs object to using their speech to lie to parents, they object to using their speech to *betray* parents:

> 176. … As teachers caring for children, [Plaintiffs] believe they have a very specific relationship with parents. They believe they have a religious and moral duty to provide parents with all information that is needed to properly care for and raise their children. They also believe that parents would expect that all such information would be shared and would feel betrayed if their child's gender identity was specifically withheld.

(Compl., p.44, ¶176.) Even if the policies are only, as EUSD suggests in briefing, "an instruction to avoid the question" (Mtn., p.16:22), Plaintiffs object to *that. Cf. Escobar-Resendiz v. Garland*, No. 20-73807, 2022 WL 1599126, at *1 (9th Cir. May 20, 2022) (witness lacked "candor" when he "avoided answering questions").

Even on its face, however, EUSD's argument fails. In its motion, EUSD never defines a "lie." To "lie" includes "*to create a false or misleading impression.*" 2 WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 1305 (1976) (emphasis

added), or to "*give a deceitful impression.*" 1 Funk & Wagnalls New Practical Standard Dictionary 772 (1946) (emphasis added). Thus, at the very end of the factual allegations, the Complaint rightly pleads that anything other than perfect candor with parents is "a lie":

> 211. The issue that arises when speaking with parents is that, as agents of EUSD, they would be directly communicating a different false message. According to EUSD, it has approximately five transgender or gender diverse children assigned to Mrs. Mirabelli's classes and three transgender or gender diverse children assigned to Mrs. West's classes. As an agent of EUSD, when speaking with parents, if Mrs. Mirabelli and Mrs. West refer to these students as "girls" without identifying them as "boys" or "nonbinary children" they would be communicating that EUSD does not believe they are boys or nonbinary—which is not what EUSD believes.

> 212. The only way to truthfully communicate with parents is to state, at the outset of any communication, the following: "I am calling about [legal name], who EUSD refers to as [preferred name]." Anything else— whether viewed through the lens of fraudulent concealment or affirmative misrepresentation—is a lie. Mrs. Mirabelli and Mrs. West have no desire to call parents to specifically report a child's gender identity, and will only speak with parents about legitimate school business. But when speaking with parents, they cannot conceal relevant information.

(Compl., pp.51-52, ¶¶211-12.)

However framed, the Complaint cannot be read in such a way that Plaintiffs do not object to the Parental Exclusion Policies. Plaintiffs directly object to the speech that EUSD seeks to compel. (Compl., p.55, ¶¶227-28 (paragraphs in First Claim stating that Plaintiffs object to the compelled speech, without limiting objection to "lying").) [3]

---

[3] Moreover, Defendants' policies do require teachers to make false statements of fact. If parents become curious about what a teacher is hiding and directly ask whether their child has socially transitioned at school, the teacher is instructed to reply that they can only discuss "information regarding the student's behavior as it relates to school, class rules, assignments, etc." (Compl., p.51, 110, ¶209 & Ex.9 at pp.2-4.) Teachers, of course, can and do discuss students' behavior with their parents as it affects many other things such as the child's social adjustment, physical and emotional health, and the like. (Compl., pp.37, 151, ¶151 & Ex.15 at ¶7.)

Plaintiffs' Memorandum of Points & Authorities
in Opposition to School District Defendants' Motion to Dismiss

**2. Plaintiffs are speaking as private citizens, not public employees, due to the factual nature of their jobs and the constitutional limits on the government**

EUSD next argues that Plaintiffs lack any First Amendment rights because the speech at issue is EUSD's speech—not Plaintiffs' speech—which has been sold to EUSD in its role as employer under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). (Mtn., pp.16:24-19:21.) Importantly, neither *Garcetti* nor any other case cited by EUSD held on a Rule 12(b)(6) motion to dismiss that a government employee had waived his free speech rights.[4] This is Question No. 2 in the Ninth Circuit's *Eng* analysis. *See Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

**a. *The Second* Eng *question is skipped in the academic context due to the constitutional protection for academic freedom***

First, EUSD attacks Plaintiffs' assertion that the academia exception to *Garcetti* can apply in the context of public school teachers instead of university professors. (Mtn., pp.17:26-18:18.) If that exception applies, the second *Eng* question is simply skipped. *See Demers v. Austin*, 746 F.3d 402, 412-13 (9th Cir. 2014).

The Ninth Circuit in *Demers*, however, could not have been clearer. There, a professor was retaliated against for distributing drafts from an in-progress book and an accreditation plan for a Communications Department. The Ninth Circuit held as follows: "We conclude that ***Garcetti does not***—indeed, consistent with the First Amendment, cannot—***apply to teaching*** and academic writing that are ***performed "pursuant to the official duties" of a teacher*** and professor." *Id.* at 412 (emphasis added). If the use of the term "teacher" was not clear, the Ninth Circuit later made clear that it meant a public school teacher: "Further, the degree of freedom an instructor should have in choosing what and how to teach will vary depending on whether the instructor ***is a high school teacher*** or a university professor." *Id.* at 413 (emphasis added).

---

Requiring teachers to tell parents of the existence of an imaginary rule is to require them to say something that is literally untrue, i.e., to lie.

[4] The only case EUSD cited which was decided on a motion to dismiss involved a reversal. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969).

That *Demers* extends the academia exception to public school teachers has been recognized by several cases. *See, e.g., See Oyama v. Univ. of Hawaii*, 813 F.3d 850, 866 n.13 (9th Cir. 2015) ("In part due to considerations of academic freedom, we have declined to extend *Garcetti* to the context of ***public school teachers.***") (emphasis added); *Hodge v. Antelope Valley Cmty. Coll. Dist.*, No. CV 12-780, 2014 WL 12776507, at *5 n.4 (C.D. Cal. Feb. 14, 2014) ("The Ninth Circuit generally considers five questions under the *Pickering* test, including whether the speech was performed according to the employee's official duties. *See Eng*, 552 F.3d at 1070. *Demers*, however, effectively eliminated that inquiry with respect to ***public school teachers*** and professors' academic speech.") (emphasis added).

EUSD next cites to the Sixth Circuit, which has not extended that exception to the public school context. But courts in the Ninth Circuit are not bound by the Sixth Circuit. Rather, a respected treatise identifies *Demers* as part of a circuit split, with the Ninth and Fourth Circuits applying academic freedom to public school teachers, and other circuits not doing so. *See* 1 RONNA GREFF SCHNEIDER, EDUCATION LAW: FIRST AMENDMENT, DUE PROCESS AND DISCRIMINATION LITIGATION § 2:18 & n.22 (Oct. 2022 Update) ("Lower courts have reached mixed results on whether there should be some kind of academic exception to the 'official duties' test of *Garcetti*, and if so, whether it should only apply to higher education and under what circumstances.").[5]

Finally, EUSD cites *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011). There, several years before *Demers*, the Ninth Circuit applied all five *Eng* questions in a case involving a public school teacher. The teacher, Bradley Johnson, was a math teacher ordered to take down banners from his classroom that celebrated America's religious heritage. The Ninth Circuit only made it through the first two

---

[5] *See Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 695 n.11 (4th Cir. 2007) (in case brought by public school teacher: "The Court [in *Garcetti*] explicitly did not decide whether this analysis would apply in the same manner to a case involving speech related to teaching. *Id.* at 1962. Thus, we continue to apply the *Pickering–Connick* standard as articulated in *Boring* to this appeal.").

*Eng* questions, finding that under the second one (that would normally be omitted in an "academic freedom" case), the teacher's speech was the government's speech and so he had no First Amendment rights.

The vast majority of the Ninth Circuit's analysis focused on the factual analysis of whether Mr. Johnson "spoke as a private citizen" or as a "public employee." *Id.* at 966-70. This substantive analysis has since been directly abrogated by the Supreme Court. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2424-25 (2022). Indeed, in *Kennedy*, the lower courts cited and relied heavily on *Johnson's* analysis, but were reversed by the Supreme Court. *See Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 823-30 (9th Cir. 2017) (appeal from orally denied preliminary injunction); *Kennedy v. Bremerton Sch. Dist.*, 443 F. Supp. 3d 1223, 1233-37 (W.D. Wash. 2020) (granting summary judgment).

On this substantive analysis, obviously this Court is bound by the Supreme Court in *Kennedy*, not the Ninth Circuit in *Johnson. See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority, … district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). However, in addition to this substantive analysis, the Ninth Circuit in *Johnson* included a passing footnote regarding "academic freedom." In that footnote, the *Johnson* court stated:

> We reject the contention that *Eng* step two, which is derived from [*Garcetti v.*] *Ceballos*, does not apply to inquiries regarding teacher speech. As the Sixth Circuit recognized in *Evans–Marshall*, [*Garcetti v.*] *Ceballos's* "academic freedom" carve-out applied to teachers at "public colleges and universities," not primary and secondary school teachers.

658 F.3d at 966 n.12. In this respect, the Ninth Circuit's earlier *Johnson* is apparently conflicting with the Ninth Circuit's later *Demers* and *Oyama*.

The reason that the *Demers* court apparently did not feel bound by *Johnson* is that passing comments in footnotes do not become law of the circuit. Rather, only

substantive analysis—such as occurred in *Demers*—is later binding:

> Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense. In other words, well-reasoned dicta is the law of the circuit, but we are not bound by a prior panel's comments made casually and without analysis, uttered in passing without due consideration of the alternatives, or done as a prelude to another legal issue that commands the panel's full attention.

*United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (cleaned up).

In *Demers*, the Ninth Circuit's "full attention" was devoted to the academia exception to the second question of the *Eng* analysis, and "after reasoned consideration in a published opinion," it decided to extend that exception to public school teachers. *That* decision is binding law of the circuit.[6]

### b. *The government cannot make everything an employee says while on the job into government speech.*

EUSD next quotes, in two separate places, the same sentence from the Ninth Circuit's *Johnson* opinion. That sentence announces the broad holding that when a "teacher[] goes to work and performs the duties he is paid to perform, he speaks not as an individual, but as a public employee, and the school district is free to take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." (Mtn., pp.18:19-24, 19:15-21 (quoting *Johnson*, 658 F.3d at 957).) EUSD also string cites the out-of-circuit cases that *Johnson* relied on. (*See* Mtn., pp.18:25-19:13.)

But the government *cannot* make everything an employee says while on duty into government speech. This analysis from *Johnson* is the specific holding expressly repudiated by the Supreme Court in *Kennedy*. As the High Court stated:

---

[6] EUSD also makes an ambiguous statement that Plaintiffs cited *Demers v. Austin*, 746 F.3d 402, 411-13 (9th Cir. 2014), to "incorrectly contend they are discussing matter [sic] of public concern so that their discussion is protected." (Mtn., p.17:26-27.) This could appear to be a reference to the first *Eng* question, but *Demers* is only cited in the complaint for its reference to the academia exception, and Plaintiffs expect that is what EUSD is referring to. (*See* Compl., p.54, ¶ 223.)

In reaching its contrary conclusion, the Ninth Circuit stressed that, as a coach, Mr. Kennedy served as a role model "clothed with the mantle of one who imparts knowledge and wisdom." 991 F.3d at 1015. The court emphasized that Mr. Kennedy remained on duty after games. *Id.*, at 1016. Before us, the District presses the same arguments. See Brief for Respondent 24. And no doubt they have a point. Teachers and coaches often serve as vital role models. But this argument commits the error of positing an "excessively broad job descriptio[n]" by treating everything teachers and coaches say in the workplace as government speech subject to government control. *Garcetti*, 547 U.S. at 424, 126 S.Ct. 1951.

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2425 (2022). As the Supreme Court's citation to *Garcetti* itself makes clear, this was always the rule, and the Ninth Circuit in *Johnson* and *Kennedy* had simply overlooked it.

Rather, the proper analysis appears in the opinions dissenting from the denial of rehearing en banc in *Kennedy*—which were vindicated by the Supreme Court's reversal. As stated by Judge O'Scannlain, joined by six other Ninth Circuit Judges:

The Court took pains, however, to admonish 'that employers can [not] restrict employees' rights by creating excessively broad job descriptions.' [*Garcetti*] at 424, 126 S.Ct. 1951. Tellingly, the Court offered this admonition in direct response to Justice Souter's concern that "the government may well try to limit the English teacher's options,' for example, 'by the simple expedient of defining teachers' job responsibilities expansively, investing them with a general obligation to ensure sound administration of the school." *Id.* at 431 n.2, 126 S.Ct. 1951 (Souter, J., dissenting). To guard against such concerns, the Court explained that the 'proper inquiry' into a public employee's official job duties 'is a practical one,' and that 'the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.' *Id.* at 424–25, 126 S.Ct. 1951."

*Kennedy v. Bremerton Sch. Dist.*, 4 F.4th 910, 933–34 (9th Cir. 2021) (Statement of O'Scannlain, J., joined by Callahan, Bea, R. Nelson, Collins, Lee, Vandyke, JJ., dissenting from denial of rehearing en banc); *see also id.* at 934 ("This epitomizes the sort of reasoning *Garcetti* forbids."); *id.* at 937 ("[I]f we heed *Garcetti's* instruction to

1  inspect the functional *content* of an employee's speech, it is easy to see the distinction

2  between private speech and official public speech").

3        EUSD's appeal to a broad, bright-line rule is understandable because oftentimes

4  "there is a genuine factual dispute between the parties regarding whether [the

5  plaintiff's] speech … was made as part of his [official] duties or as a private citizen,"

6  precluding determination as a matter of law. *Eng v. Cooley*, 552 F.3d 1062, 1073 (9th

7  Cir. 2009); *accord Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th

8  Cir. 2008) ("[T]he third element of the protected status inquiry—whether the

9  plaintiff spoke as a public employee or a private citizen—is a mixed question of fact

10  and law. We further conclude that the pleadings and evidence in this case present

11  genuine disputes of material fact regarding the scope and content of Posey's job

12  responsibilities."). But that bright-line rule has been expressly rejected by the Supreme

13  Court—in reversing the Ninth Circuit. It is both bad law and, in any event, could not

14  form the basis of a motion to dismiss in a mixed question of fact and law.

15            **c.**    ***The government cannot force employees to violate parental***
16                   ***rights as a condition of employment***

17        EUSD next contends that "Plaintiffs['] Assertion of Parents' Rights Misstates

18  the Law." (Mtn., pp.13:18-14:14.) In the complaint, Plaintiffs pleaded that EUSD

19  cannot force teachers to use their speech to violate the Fourteenth Amendment

20  substantive due process parental rights to direct the upbringing of their children.

21  (Compl., p.56, ¶233; *see* Compl., pp.18-20, ¶¶68-74.) In its motion, EUSD rightly

22  notes that the controlling authority is *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197 (9th

23  Cir. 2005) ("*Fields I*"), *amended*, 447 F.3d 1187 (9th Cir. 2006) ("*Fields II*").

24        *Fields* stands for the proposition that parental rights "do[] not include the right

25  to restrict the flow of information in the public schools," and that "parents do not have

26  a fundamental due process right generally to direct how a public school teaches their

27  child." *Fields II*, 447 F.3d at 1190. That's it. To clarify its holding, the Ninth Circuit in

28  *Fields II* deleted the sentence from *Fields I* that parental rights "do[] not extend beyond

---

12

the threshold of the school door," and replaced it with the statement that the "due process right of parents to make decisions regarding their children's education does not entitle individual parents to enjoin school boards from providing information the boards determine to be appropriate in connection with the performance of their educational functions." *Fields II*, 447 F.3d at 1190.

As pleaded in the complaint, "the interest of parents in the care, custody, and control of their children[] is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality). And "'[i]t is cardinal'" that "'the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Id*. at 65-66 (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). (Compl., pp.18-19, ¶¶69-71.) Neither *Fields I* nor *Fields II* stand for any contrary proposition and, as pleaded, Plaintiffs have adequately stated that EUSD's policies would force them to violate parental rights.[7]

## B. Plaintiffs Have Adequately Pleaded a Violation of the Free Exercise Clause through Categorical and Discretionary Exemptions

In its motion to dismiss, EUSD attacks both of Plaintiffs' free exercise claims on the merits. (Mtn., pp.20:6-11, 21:25-22:5 (categorical exemptions); Mtn., pp.21:15-24, 22:6-15 (discretionary exemptions).) EUSD further argues that Plaintiffs' religious

---

[7] In its discussion of parental rights, EUSD cites an order denying a preliminary injunction in a parental rights case. *See Regino v. Staley*, No. 2:23-cv-32, 2023 WL 2432920 (E.D. Cal. Mar. 9, 2023). In *Regino*, the court held "that Plaintiff has raised serious questions that go to the merits of her case, namely what the bounds of the parental right are to direct the upbringing of one's children as they pertain to a child's gender identity and expression in school." *Id*. at *4. But the court ultimately denied a preliminary injunction due to the absence of irreparable harm: "A.S. has returned to identifying as a girl despite the continuance of the Regulation," and so "Plaintiff's general claims of emotional distress and fear that the district will apply the Regulation against her children are vague." *Id*. In other words, *Regino* is not particularly helpful to either Plaintiffs nor Defendants here, no more than *Konen v. Caldeira*, a factually similar case that a school district chose to settle instead of fight. *See* Minute Entry, *Konen v. Caldeira*, No. 5:22-cv-5195, ECF No. 45 (N.D. Cal., Apr. 7, 2023).

beliefs are not actually burdened (Mtn., pp.20:2-21:1), and that denying an exemption to Plaintiffs satisfies strict scrutiny. (Mtn., pp.22:21-23:9.) As in *Ricard*, where a preliminary injunction was granted on the Free Exercise Clause, all of the arguments fail. *See Ricard*, 2022 WL 1471372, *7-8 & nn.11-12.

### 1.   Plaintiffs object to the Policies on religious grounds.

Like with its free speech argument, EUSD begins its free exercise argument by asserting that Plaintiffs "allege the policy requires them to lie when they must not disclose to the parent a students' preferred name and pronoun without the student's permission," but that "it is not a lie to avoid answering a question." (Mtn., p.20:13-24.) But, as discussed above, it is a dictionary definition of a "lie" to create a "misleading impression." (*See* § I.A.1, *supra*.) In any event, Plaintiffs pleaded broadly that "Plaintiffs' religious faith precludes them from observing the Parental Exclusion Policy" (Compl., pp.57, 60, ¶¶245, 263 (citing Compl., pp.20-27, § II, ¶¶75-111)), because "Plaintiffs understand that their role as teachers is complementary to, and not a substitute for, the parents' role as the primary caregivers for their children." (Compl., p.26, ¶108.) Both Plaintiffs Mirabelli and West believe that the parent-child relationship is sacred, was ordained by God, and that they cannot interfere with it. (*See* Compl., pp.21-23, ¶¶80-83, 90.)

This belief is more than plausible. Indeed, the Vatican's Congregation for Education issued its own guidance document for Catholic educators to make clear that decisions concerning childhood gender incongruence must be made by parents—*not teachers*. (*See* Compl., p.22, ¶83 (quoting Compl., pp.226-29, Ex. 25 at ¶¶36-42).) This is not a novel theological concept, but one that has existed for more than three thousand years: "And the Lord spoke all these words: … Honor thy father and thy mother." *Exodus* 20:1-12 (Douay-Rheims). In any event, even if Plaintiffs' religious beliefs were not traditional and long-standing, Plaintiffs have pleaded that the policies violate their religious beliefs, which is sufficient: "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First

1   Amendment protection." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021).

2   **2.   The Parental Exclusion Policies Trigger Strict Scrutiny**
3   **Because of their *De Facto* Categorical Exemptions for**
    **Classified Staff, Administrative Staff, and Students.**

4       The Complaint pleads that "*in practice*," EUSD's Parental Exclusion Policies

5   only bind teachers—excluding thousands of students and administrative staff.

6   (Compl., p.58, ¶248 (citing Compl., pp.33-35, 119-46, ¶¶135-143 & Exs.11-13).) But, a

7   policy or regulation will fail the general applicability requirement if it is "not applied in

8   an evenhanded, across-the-board way." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct.

9   2407, 2423 (2022). EUSD responded with the conclusory statement that:

10      Neither the Policy (Ex. 2) nor the Regulation (Ex. 3) excludes any adult
11      or student. "The Regulation broadly applies to all acts relate to school
        activity or to school attendance occurring with a district school…"
12      Comp. Ex. 2. It is true that the District provided training to teachers that
13      it did not provide to custodians, but that was because teachers are on the
        front line of communication with parents. The policy requiring respect
14      for gender diverse students applies to everyone.

15   (Mtn., p.22:1-5.)[8]

16      The only case cited by EUSD concerning categorical exemptions was vacated

17   (without EUSD noting as much) long before its brief was filed. (*See* Mtn., p.20:7-10

18   (quoting *Apache Stronghold v. United States*, 38 F.4th 742, 770 (9th Cir. 2022), *reh'g en*

19   *banc granted, opinion vacated*, 56 F.4th 636 (9th Cir. 2022)).) In any event, the law on

20   categorical exemptions is clear. In *Tandon* and *South Bay*, the Supreme Court

21   recognized that government actions—there selective burdens on worship—that

22   "treat *any* comparable secular activity more favorably than religious exercise" trigger

23   strict scrutiny under the Free Exercise Clause. *Tandon v. Newsom*, 141 S. Ct. 1294,

24   1296 (2021) (emphasis in original) (citing *Roman Catholic Diocese of Brooklyn v.*

25   *Cuomo*, 141 S. Ct. 63, 67-68 (2020)). Governmental action is not generally applicable

26   ───────────────────
     [8] Even if the policy facially applies to everybody on school campuses, the policy likely
27   could not be enforced against students for a myriad of reasons. *See* Cal. Educ. Code
     § 49091.12(a) ("A pupil may not be compelled to affirm or disavow any particular
28   personally or privately held world view, religious doctrine, or political opinion.").

1    if the government "impose[s] more stringent regulations on religious" activity than

2    secular activity. *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717

3    (2021) (Statement of Gorsuch, J.); *see id.* (Barrett, J., concurring).[9]

4         In ruling on a motion to dismiss, the court must generally accept as true

5    plaintiff's assertion that comparable secular activity has been exempted from the

6    policy. *See Lowe v. Mills*, ___ F.4th ___, No. 22-1710, 2023 WL 3642081, at *6 & n.10

7    (1st Cir. May 25, 2023) (medical exemptions to vaccine mandate made it not generally

8    applicable when "[d]rawing all reasonable inferences in the plaintiffs' favor"). Thus,

9    at the motion to dismiss stage, the issue is whether Plaintiffs have plausibly pleaded

10   that "the District permitted secular conduct that contravened the legitimate

11   government interests underlying the policy to the same degree that Plaintiff's

12   [requested exemption] would have done." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152,

13   1159 (9th Cir. 2022) (reversing grant of motion to dismiss).

14        At best, EUSD's argument could be construed as: "because teachers are on the

15   front line of communication with parents," it only needed to provide training to

16   teachers (not students or staff), to arrive at an acceptable, across-the-board level of

17   "respect for gender diverse students." (Mtn., p.22:3-5.) But that draws inferences in

18   EUSD's favor—not Plaintiffs' favor. The proper inference is that EUSD refused to

19   provide training to students or staff for the administrative and political purpose of

20   avoiding a leak and public relations headache—to prevent parents from learning of the

21   polices. (*See* Compl., pp.34, 140-41, ¶138 & Ex.12.) Further, EUSD has not only failed

22   to train "custodians" (Mtn., p.22:4), but all administrative staff at the main office.

23   (Compl., p.34, ¶139.) There is no possible justification for failing to train *them*.

24        Where multiple conflicting inferences can be drawn from the evidence, "one

25   _____

     [9] The reasoning in Justice Gorsuch's statement was joined by four other Justices,

26   making it a binding opinion. *See, e.g., Brach v. Newsom*, 6 F.4th 904, 933 n.26 (9th Cir.

     2021), *reh'g en banc granted, opinion vacated*, 18 F.4th 1031 (9th Cir. 2021); *Roman*

27   *Catholic Archbishop of Washington v. Bowser*, 531 F. Supp. 3d 22, 42 n.15 (D.D.C.

     2021); *id.* at 32 n.5; *accord Tandon*, 141 S. Ct. at 1296-97 (citing Justice Gorsuch's

28   statement as binding authority).

advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Waln*, 54 F.4th at 1160 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id.* at 1159-60. Here, Plaintiffs' allegations are not *implausible*, and so the motion must be denied.

### 3. The Parental Exclusion Policies Trigger Strict Scrutiny Because of their Discretionary Exemptions if the Violation Had a "Legitimate" Purpose.

As a second basis for triggering strict scrutiny, the Complaint pleads that by excusing "legitimate" violations, "the Parental Exclusion Policies invite EUSD officials to decide which reasons for not complying with them are worthy of solicitude." (Compl., p.61, ¶270 (citing Compl., p.35-37, ¶¶144-48 & Exs.3-4).) But where a regulation "invites the government to decide which reasons for not complying with the policy are worthy of solicitude," strict scrutiny is triggered. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878-79 (2021). EUSD's attack is twofold.

*First*, EUSD argues that "the discretion only applies to issues related to discipline." (Mtn., p.22:7.) Thus, it only has unfettered discretion to decide to not discipline a teacher for refusing to comply with the Parental Exclusion Policies. (*See* Mtn., p.22:12-13 ("It is an exception to discipline for a person who violated the policy based upon circumstances.").) This is an oddly circular argument. Plaintiffs, too, would like to be exempted from any discipline for refusing to deceive parents. *See* Kenneth J. Vandevelde, Thinking Like A Lawyer: An Introduction To Legal Reasoning 11 (2d ed. 2011) ("An ancient maxim of the law holds that 'where there is no remedy, there is no right.' To say that I have a certain right arguably is an insignificant statement unless I can enforce that right").

*Second*, EUSD appears to alternatively argue that its discretion is limited solely to excusing compliance when the violation was inadvertent. (Mtn., p.22:13-15.) In this respect, EUSD cites the Ninth Circuit's decision in *Stormans*, which noted that where

"the exemptions at issue are tied directly to limited, particularized, business-related, objective criteria, they do not create a regime of unfettered discretion that would permit discriminatory treatment of religion or religiously motivated conduct," and therefore do not trigger strict scrutiny. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015); *see also id.* ("What makes a system of individualized exemptions suspicious is the possibility that certain violations may be condoned when they occur for secular reasons but not when they occur for religious reasons.").

It is, again, reasonable for EUSD to attempt to shoehorn its Parental Exclusion Policies into *Stormans'* analysis, but EUSD's description of its own policies is factually incorrect. As pleaded in the complaint, "EUSD's policies define 'revealing a student's transgender status or gender diverse status to individuals who do not have a *legitimate* need for the information without the student's consent, and this includes parents or caretakers,' as '*harassment* of our gender diverse students.'" (Compl., p.35, ¶144 (quoting Compl., pp.89-90, Ex.4 at pp.6:25-26, 7:15-17).) This includes "when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being." (Compl., p.81, Ex.3 at p.5.)

Whether the term "good cause" or "legitimate" is used,[10] this is quintessentially a paradigm creating unfettered discretion for "the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 141 S. Ct. at 1878-79. Nowhere does EUSD limit what can constitute a "legitimate need for the information"—it only provides illustrative examples.

### 4. The Parental Exclusion Policies Cannot Satisfy Strict Scrutiny

The question next becomes whether, "[t]aking the allegations in the complaint as true, as we must," EUSD can show that "its restrictions on the plaintiff's protected

---

[10] Or the terms "unnecessary," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537 (1993), or "consistent with sound" policies. *Blackhawk v. Pennsylvania*, 381 F.3d 202, 210 (3d Cir. 2004) (Alito, J.).

rights serve a compelling interest and are narrowly tailored to that end." *Waln*, 54 F.4th at 1163 (quoting *Kennedy*, 142 S. Ct. at 2426). Like any other allegations, pleaded allegations of a scientific or medical nature must also be accepted as true. *Jones v. Johnson*, 781 F.2d 769, 772 n.1 (9th Cir. 1986), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *see also Ferrari v. Nat. Partners, Inc.*, No. 15-cv-4787, 2016 WL 4440242, at *5 (N.D. Cal. Aug. 23, 2016).

EUSD points to four compelling interests: (1) protecting children's constitutional right to privacy (Mtn., p.22:22-24; *see* Mtn., p.11:18-23); (2) eradicating sex discrimination, which includes gender identity discrimination (Mtn., p.22:24-27); (3) ensuring full and equal access to medical treatment regardless of sexual orientation (Mtn., pp.22:27-23:2), and (4) protecting at-risk students from harm. (Mtn., p.23:2-3.) EUSD then concludes that its Parental Exclusion Policies are narrowly tailored because "[t]here is no alternative method of" satisfying these interests "when the student does not want a parent to know." (Mtn., p.23:6-9.)

*First*, EUSD's "'justification[s]' for interfering with First Amendment rights 'must be genuine, not hypothesized or invented *post hoc* in response to litigation.'" *Kennedy*, 142 S. Ct. at 2432 n.8. Thus, EUSD needed to cite where in its policies the above four interests are identified—but it didn't. In its actual documents, EUSD's only asserted interests are: (1) compliance with state and federal law (Compl., p.46, 253, 265, ¶187, Ex.27 at p.3, Ex.28 at p.3); and (2) "creat[ing] safe and inclusive campuses," to "uphold[] a positive and diverse culture in our District." (Compl., p.29, 84, ¶119, Ex.4 at p.1:11-12.)

*Second*, with respect to student's right to privacy in the California Constitution, EUSD cites a plurality opinion of the California Supreme Court striking down a statute requiring an unemancipated minor to receive parental consent prior to obtaining an abortion. According to the California Supreme Court, constitutional privacy rights do not emerge solely when a child reaches majority, and so the parental consent requirement unconstitutionally interfered with a minor's right to obtain an abortion.

1   *Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 359 (1997) (plurality).

2       But California privacy rights require a careful and fact-intensive weighing of the

3   facts. Thus, the opinion of Justice Kennard, concurring in the judgment only, made

4   clear that he only agreed that the statute was unconstitutional because it applied to

5   children over the age of 14 years. *Id.* at 361, 372-75 (Kennard, J., concurring in the

6   judgment). In other words, the opinion says nothing about the constitutional privacy

7   rights of children *under* the age of 14 years. *Id.* EUSD fails to engage in the complicated

8   analysis of whether privacy rights are violated. The Complaint, however, pleads that

9   complicated analysis and concludes that they are not. (Compl., pp.47-48, ¶¶192-95.)

10  Here, "because [the government] bears the risk of uncertainty, [this] ambiguous proof

11  will not suffice." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799-800 (2011).

12      **Third**, EUSD contends that it has a compelling interest in eradicating sex and

13  gender identity discrimination (Mtn., p.22:24-27), but it is unclear how being truthful

14  with parents about their child's gender identity is sex or gender identity discrimination.

15  Assuming *arguendo* that this conduct can be labelled "discrimination," this broadly

16  formulated interest is inadequate. The government may not assert generally that it has

17  an interest in preventing "serious mental, financial, and emotional harm on

18  transgender individuals," but must show that denying an exception here is necessary

19  to achieve that goal. *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 791 (9th

20  Cir. 2022). The issue "is not whether [EUSD] has a compelling interest in enforcing

21  its non-discrimination policies generally, but whether it has such an interest in denying

22  an exception to [Plaintiffs here]." *Id* at 792 (quoting *Fulton*, 141 S. Ct. at 1877). Yet

23  EUSD has made no effort to explain why an exception cannot be given.

24      **Fourth**, EUSD asserts that it has an interest in ensuring full and equal access to

25  medical treatment regardless of sexual orientation. (Mtn., pp.22:27-18:2.) Again, the

26  logic of this assertion is not clear. However, it appears that EUSD is asserting that

27  parents may interfere with EUSD engaging in the "active intervention" of socially

28  transitioning their child to a new gender, with its "significant effects on the child or

20

young person in terms of their psychological functioning." (Compl., pp.25-26, ¶104.) This argument seems to dovetail with EUSD's privacy argument—that children have a constitutional privacy right to certain medical treatment that could be frustrated if parental consent were required. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 770 (9th Cir. 2019) ("evidence-based treatment options for individuals with gender dysphoria" include "changes in gender expression and role"); (ECF No. 5-2, Declaration of Dr. Erica E. Anderson, pp.12-19, ¶¶29-38 (discussing how "social transition" is a "psychotherapeutic intervention," not "harmless 'exploration'").)

But, as a general matter, parents have the constitutional right under the Fourteenth Amendment right to make "medical decisions for their children." *Wallis v. Spencer*, 202 F.3d 1126, 1141-42 (9th Cir. 2000) (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)); *accord Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018) ("'parental consent is critical' in medical procedures involving children 'because children rely on parents or other surrogates to provide informed permission for medical procedures that are essential for their care.'"). Even if children had a privacy right under the California Constitution to obtain gender-identity related medical care without parental knowledge or consent (which they do not), the U.S. Constitution's guarantee that parents have the right to make medical decisions for their children would supersede. U.S. Const., art. VI, cl. 2; *cf. Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2254 (2020) (striking down provision in Montana Constitution as violative of U.S. Constitution).

***Fifth***, EUSD asserts that it has a compelling interest in "protecting at-risk students from harm," with the risk of harm shown by the simple fact that "the student does not want a parent to know." (Mtn., p.23:2-9.) This argument is irrationally overbroad. EUSD's Parental Exclusion Policies do not require a finding that students who want to be socially transitioned would be subject to child abuse if their parents were informed. But such a finding is absolutely required. The government "*has no interest whatever* in protecting children from their parents unless it has some reasonable

evidence that the parent is unfit and the child is in imminent danger." *Wallis*, 202 F.3d at 1142 n.14; *see also Stanley v. Illinois*, 405 U.S. 645, 652 (1972) (holding dependency proceeding unconstitutional that failed to provide "a hearing designed to determine whether the father is unfit"). Indeed, the California Education Code similarly requires a finding that a "disclosure would result in a clear and present danger to the health, safety, or welfare of the pupil" before information can be withheld from parents. Cal. Educ. Code § 49602.

By presuming that gender diverse children are at risk of harm from their parents, EUSD's policies reverse the constitutionally mandated presumptions of parental fitness and affinity that underlie the parental right. *Parham*, 442 U.S. at 603 (rejecting "statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse … [their] children") (emphasis in original); *Troxel*, 530 U.S. at 68 (holding unconstitutional state action that contravened presumption of parental fitness) (plurality); *accord Stanley*, 405 U.S. at 652; *Doe v. Heck*, 327 F.3d 492, 521 (7th Cir. 2003); *Ricard*, 2022 WL 1471372, at *8.

### C.   Plaintiffs Have Adequately Pleaded a Claim for Declaratory Relief

Plaintiffs' fourth claim is for declaratory relief. Specifically, Plaintiffs seek a declaration that EUSD's Parental Exclusion Policies are not required by state or federal law, or are superseded by the U.S. Constitution. (Compl., pp.3-64, ¶¶281-86.) EUSD responds by contending that its policies are required by the CDE's Frequently Asked Questions page on gender identity which, EUSD asserts, accurately summarizes the law. (Mtn., p.23, § V.J (citing Mtn., pp.4-14, §§ V.A-E).)[11]

But nothing in any of EUSD's lengthy recitation of background law actually supports its Parental Exclusion Policies. Plaintiffs agree that discrimination on the basis of gender identity is generally prohibited by federal law (Mtn., pp.9-11, § V.A) and California law. (Mtn., pp.11-12, § V.C.) Thus, Plaintiffs do not seek to discriminate on

---

[11] That FAQ page is non-binding and not subject to any judicial deference. *See Am. Nurses Assn. v. Torlakson*, 57 Cal. 4th 570, 588 (2013).

the basis of gender identity. The *only* basis that EUSD actually cites to support its Parental Exclusion Policies (or the CDE's FAQ page) is the California Constitution's privacy guarantee (Mtn., p.11, § V.B.) But, as stated above, whether that privacy right would apply here is a very fact-intensive analysis that EUSD has simply not engaged in; and, in any event, it would most likely be superseded by parental rights under the U.S. Constitution. (*See* § I.B.4, *supra*.) On this motion, the claim for declaratory relief cannot be dismissed.

## II.   THE DETERMINATION OF QUALIFIED IMMUNITY IS NOT RIPE

EUSD lastly raises the issue of qualified immunity. (Mtn., pp.23-24, § V.K.) "Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief." *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989). Under that doctrine, unless the violation of law was clearly established, the governmental official is only subject to an injunction, and is immune to damages liability under 42 U.S.C. § 1983. *Id.*

When a complaint adequately pleads a constitutional violation, it is inadvisable to adjudicate qualified immunity on the pleadings. *See San Diego Minutemen v. California Bus. Transp. & Hous. Agency's Dep't of Transp.*, 570 F. Supp. 2d 1229, 1242 (S.D. Cal. 2008) (citing *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)). Indeed, "[w]hile courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has noted that '[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.'" *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 395 (N.D. Cal. 2021) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). This is especially the case when "the courts [are] called upon to decide far-reaching constitutional questions on a nonexistent factual record." *Id.* (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004)). Deferring on the issue "does not prejudge whether some of Plaintiffs' claims may ultimately fail under a qualified immunity analysis after discovery in this matter." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020,

1068 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).

"To be 'clearly established,' 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 783 (9th Cir. 2022) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). The court must "frame the issues presented … at a level commensurate with the specific factual and legal context of the case." *Id.* at 783-84. But "a plaintiff need not produce 'a case directly on point.'" *Id.* at 784 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Rather, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful.'" *Id.* at 784 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

On qualified immunity, EUSD's argument boils down to a single sentence: "Here, it is indisputable that the entire issue of gender-identity rights is anything but clear." (Mtn., p.23:28.) This single sentence is inadequate.

With respect to Plaintiffs' free speech claim, Plaintiffs object to using different pronouns for students in different contexts (*i.e.*, in class v. when speaking with parents), and especially object to doing so as part of an intentional effort to deceive parents. (Compl., p.55, ¶¶227-28.) Plaintiffs pleaded that EUSD has no legitimate interest in forcing Plaintiffs to speak (or not speak) in a manner calculated to (1) enforce ideological conformity among its staff (Compl., p.55, ¶232), or (2) violate parental rights to direct the upbringing of their children. (Compl., p.56, ¶233.) With respect to Plaintiffs' free exercise of religion claim, the issue is that EUSD is requiring Plaintiffs to comply with its Parental Exclusion Policies while categorically excluding *thousands* of others, and *anybody else* who has a "legitimate" reason for violating it. (Compl., pp.33-37, ¶¶135-48.)

The various cases cited in Plaintiffs' complaint, above, and in their motion for a preliminary injunction fully support that it is clearly established that EUSD cannot

enforce ideological conformity among its staff, *see Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2473 (2018) (the government cannot impose "a blanket requirement that all employees subsidize [or engage in] speech with which they may not agree"), cannot force its staff to provide medical care to children without parental consent or knowledge, *Wallis*, 202 F.3d at 1141-42 (citing *Parham*, 442 U.S. at 602), and cannot exclude thousands of individuals from a policy, but refuse to provide a similar exemption to people of faith. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1300-01 (10th Cir. 2004) ("It was clearly established by the Supreme Court that if a defendant has in place a system of individualized exemptions, it must extend that system to religious exemptions or face strict scrutiny review.").

Indeed, the Ninth Circuit has held that "several … cases[] clearly establish that disagreement with a disfavored political stance or controversial viewpoint, by itself, is not a valid reason to curtail expression of that viewpoint at a public school." *Dodge*, 56 F.4th at 786. Plaintiffs' "right to express political views, even as a public-school teacher, is clearly established." *Id.* at 787; *accord Roe v. San Jose Unified Sch. Dist. Bd.*, No. 20-cv-2798, 2021 WL 292035, at *17 (N.D. Cal. Jan. 28, 2021) ("*Alpha Delta* and *Truth* clearly established that viewpoint-discriminatory application of a valid nondiscrimination policy violates the First Amendment"). In the absence of meaningful briefing from EUSD, this court should follow other courts dealing with gender identity issues in public schools and deferred on the issue of qualified immunity pending summary judgment. *See, e.g., Tatel v. Mt. Lebanon Sch. Dist.*, No. CV 22-837, 2022 WL 15523185, at *28 (W.D. Pa. Oct. 27, 2022) ("*Tatel I*"), *recons. den.*, No. CV 22-837, 2023 WL 3740822, at *2, *15-19 (W.D. Pa. May 31, 2023) ("*Tatel II*").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny EUSD's motion to dismiss and grant Plaintiffs' motion for a preliminary injunction.

1

2

3

4

5

6   Dated: June 12, 2023

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LiMANDRI & JONNA LLP

By:

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Milan L. Brandon II
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***
USDC Court Case No.: 3:23-cv-00768-BEN-WVG

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **Plaintiffs' Memorandum of Points & Authorities in Opposition to School District Defendants' Motion to Dismiss [Fed. R. Civ. P. 12(b)(6)].**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Thomas Prouty, Deputy General Counsel
California Department of Education
1430 "N" Street, Suite 5319
Sacramento, CA 95814
Tel: 916-319-0860; Fax: 916-322-2549
E-Mail:  tprouty@cde.ca.gov
**Attorneys for CDE Defendants**

Daniel R. Shinoff, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail:  Dshinoff@as7law.com
E-Mail: nlay@as7law.com
**Attorneys for EUSD Defendants**

  X    **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  X    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

  X    (**BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on June 12, 2023, at Rancho Santa Fe, California.

Kathy Denworth

1