| | |
|---|---|
| Charles S. LiMandri, SBN 110841<br>  cslimandri@limandri.com<br>Paul M. Jonna, SBN 265389<br>  pjonna@limandri.com<br>Mark D. Myers, SBN 235719<br>  mmyers@limandri.com<br>Jeffrey M. Trissell, SBN 292480<br>  jtrissell@limandri.com<br>Milan L. Brandon II, SBN 326953<br>  mbrandon@limandri.com<br>LiMANDRI & JONNA LLP<br>P.O. Box 9120<br>Rancho Santa Fe, CA 92067<br>Telephone: (858) 759-9930<br>Facsimile: (858) 759-9938 | Thomas Brejcha, *pro hac vice*\*<br>  tbrejcha@thomasmoresociety.org<br>Peter Breen, *pro hac vice*\*<br>  pbreen@thomasmorsociety.org<br>THOMAS MORE SOCIETY<br>309 W. Washington St., Ste. 1250<br>Chicago, IL 60606<br>Tel: (312) 782-1680<br>\*Application forthcoming<br><br>*Attorneys for Plaintiffs* |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,<br><br>         Plaintiffs,<br><br>    v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>         Defendants. | Case No.: 3:23-cv-0768-BEN-WVG<br><br>**Reply to the EUSD Defendants in Support of Plaintiffs' Motion for a Preliminary Injunction**<br><br>Judge:         Hon. Roger T. Benitez<br>Courtroom:  5A<br>Hearing Date: June 26, 2023<br>Hearing Time: 10:30 a.m. |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

REPLY ARGUMENT ............................................................................................... 3

    I.    Plaintiffs Are Likely to Succeed on the Merits ..................................... 3

        A.    Plaintiffs Incorporate the Motion to Dismiss Briefing by Reference ................................................................................. 3

        B.    The Court Should Give No Weight to Director Schmidt's Declaration ............................................................... 5

    II.    The Other Injunction Factors Favor Plaintiffs .................................... 8

        A.    Plaintiffs Are Suffering Irreparable Harm Due to the Loss of their Constitutional Rights and Severe Emotional Stress ........................................................................ 8

        B.    The Public Interest and the Balance of Harms Favors Plaintiffs: Students Will Be Benefitted and Constitutional Rights Preserved ................................................ 10

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Am. Acad. of Pediatrics v. Lungren* .................................................................................... 4
    16 Cal. 4th 307 (1997)

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.* ............................................................. 8
    750 F.2d 1470 (9th Cir. 1985)

*Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, ................................................................ 9
    840 F.2d 701 (9th Cir. 1988)

*Citizens for a Responsible Curriculum v. Montgomery Cnty. Pub. Sch.* ........................... 4
    No. Civ.A. AW-05-1194, 2005 WL 1075634 (D. Md. May 5, 2005)

*Cont'l Airlines, Inc. v. Intra Brokers, Inc.* ........................................................................... 9
    24 F.3d 1099 (9th Cir. 1994)

*Dairy Maid Dairy, Inc. v. United States* .............................................................................. 9
    837 F. Supp. 1370 (E.D. Va. 1993)

*Doe 1 v. Madison Metro. Sch. Dist.*, ................................................................................... 3
    976 N.W.2d 584 (Wis. 2022)

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.* .................................................... 8
    924 F. Supp. 1559 (S.D. Cal. 1996)

*Edwards v. Aguillard* ........................................................................................................... 1
    482 U.S. 578 (1987)

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.* ......................................................................... 9
    630 F.3d 1153 (9th Cir. 2011)

*Espinoza v. Montana Dep't of Revenue* .............................................................................. 5
    140 S. Ct. 2246 (2020)

*Fortyune v. Am. Multi-Cinema, Inc.* ................................................................................. 10
    364 F.3d 1075 (9th Cir. 2004)

*Fulton v. City of Philadelphia*, ............................................................................................. 4
    141 S. Ct. 1868 (2021)

# TABLE OF AUTHORITIES—Continued
**Cases (Cont.)**

*Green v. Miss United States of Am., LLC,* ....................................................................... 4
    52 F.4th 773 (9th Cir. 2022)

*Hardwick v. Bd. of Sch. Trustees of Fruitridge Sch. Dist.* ............................................... 2
    54 Cal. App. 696 (1921)

*Hardwick v. Bd. of Sch. Trustees of Fruitridge Sch. Dist.* ............................................... 2
    205 P. 49 (Cal. 1921)

*Interstate Cir. v. United States* ......................................................................................... 8
    306 U.S. 208 (1939)

*Keene v. City & Cnty. of San Francisco* ........................................................................... 9
    No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023)

*Kennedy v. Bremerton Sch. Dist.*, ..................................................................................... 4
    142 S. Ct. 2407 (2022)

*Meriwether v. Hartop*, ....................................................................................................... 4
    992 F.3d 492 (6th Cir. 2021)

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra* ................................................................. 4
    138 S. Ct. 2361 (2018)

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen* ........................................................ 4
    142 S. Ct. 2111 (2022)

*Ricard v. USD 475 Geary County, KS Sch. Bd.*, ............................................................. 3
    No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022)

*Riley's Am. Heritage Farms v. Elsasser*, .......................................................................... 4
    32 F.4th 707 (9th Cir. 2022)

*Singh v. Gonzales* ............................................................................................................... 8
    491 F.3d 1019 (9th Cir. 2007)

*Southland Sod Farms v. Stover Seed Co.* ........................................................................ 6
    108 F.3d 1134 (9th Cir. 1997)

iii
Reply to the EUSD Defendants ISO
Plaintiffs' Motion for a Preliminary Injunction

# TABLE OF AUTHORITIES—Continued

## Cases (Cont.)

*Taking Offense v. State*, ............................................................................................................ 1
    66 Cal. App. 5th 696 (2021)

*Taking Offense v. State*, ............................................................................................................ 1
    498 P.3d 90 (Cal. 2021)

*Tatel v. Mt. Lebanon Sch. Dist.*, .............................................................................................. 3
    No. CV 22-837, 2022 WL 15523185 (W.D. Pa. Oct. 27, 2022)

*Tatel v. Mt. Lebanon Sch. Dist.*, .............................................................................................. 3
    No. CV 22-837, 2023 WL 3740822 (W.D. Pa. May 31, 2023)

*Tingley v. Ferguson* ................................................................................................................... 4
    57 F.4th 1072 (9th Cir. 2023)

*Wisconsin v. Yoder* ............................................................................................................ 1, 2, 5
    406 U.S. 205 (1972)

*Wooley v. Maynard* .................................................................................................................. 1
    430 U.S. 705 (1977)

## Statutes & Rules

Cal. Const., art. I, § 1 ................................................................................................................. 4

Cal. Bus. & Prof. Code § 6068(d) .............................................................................................. 6

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3

Fed. R. Evid. 401 ........................................................................................................................ 7

Fed. R. Evid. 403 ........................................................................................................................ 7

Fed. R. Evid. 1002 ...................................................................................................................... 7

# INTRODUCTION

This case concerns fundamental constitutional rights. It concerns Plaintiffs Elizabeth Mirabelli and Lori Ann West's First Amendment rights to freedom of speech and religion. It also concerns the First and Fourteenth Amendment rights of parents to direct the upbringing of their children. As presented here, these interests are two sides of the same coin. The California Department of Education ("CDE") and the Escondido Union School District ("EUSD") seek to impose on impressionable children a novel and quasi-religious view of sex, gender, and personhood.[1]

In their own right, Plaintiffs object to being required to endorse and advance the new gender ideology. As stated by the California Court of Appeal in a recent analogous case, Plaintiffs absolutely have this right: "[W]here the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message." *Taking Offense v. State*, 66 Cal. App. 5th 696, 711 (2021) *not depublished pending grant of review*, 498 P.3d 90 (Cal. 2021) (quoting *Wooley v. Maynard*, 430 U.S. 705, 717 (1977)).

But perhaps more importantly, Plaintiffs object to being used as the vehicle for coming between parents and their children. Parents absolutely have the primary and most important role in their children's lives. As stated by the Supreme Court, "[f]amilies entrust public schools with the education of their children, *but condition their trust* on the understanding that the classroom will not purposely be used to advance religious [or quasi-religious, ideological] views that may conflict with the private beliefs of the student and his or her family." *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987). As the Supreme Court has made very clear, the government has

---

[1] Unless otherwise noted, all quotations are "cleaned up" by omitting citations, quotation marks, brackets, ellipses, and emphasis; all emphasis is added. Page number references are to the ECF-generated page number contained in the header of each ECF-filed document. As explained in Plaintiffs' separate Reply to the CDE Defendants, the term "CDE" is a perfectly accurate short-hand.

absolutely no interest or right to "save" a child from his parents' religious or ideological views. *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).

Over 100 years ago, California itself was a leader in recognizing parental rights. Citing to both the California Constitution and the U.S. Constitution, the California Supreme Court affirmed the Court of Appeals' conclusion that a public school district had to grant a parent the right to opt his child out of classes that he found offensive. As stated by the Court:

> Has the state the right to enact a law or confer upon any public authorities a power the effect of which would be to alienate in a measure the children from parental authority? May the parents thus be eliminated in any measure from consideration in the matter of the discipline and education of their children along lines looking to the building up of the personal character and the advancement of the personal welfare of the latter? … [T]o answer said questions in the affirmative would be to give sanction to a power over home life that might result in denying to parents their natural as well as their constitutional right to govern or control, within the scope of just parental authority, their own progeny. Indeed, it would be distinctly revolutionary and possibly subversive of that home life so essential to the safety and security of society and the government which regulates it, the very opposite effect of what the public school system is designed to accomplish, to hold that any such overreaching power existed in the state or any of its agencies.

*Hardwick v. Bd. of Sch. Trustees of Fruitridge Sch. Dist.*, 54 Cal. App. 696, 714 (1921), *opinion respecting denial of review*, 205 P. 49, 56 (Cal. 1921) (per curiam).

As explained in Plaintiffs' moving papers, the motion to dismiss briefing, and below, EUSD's and the CDE's Parental Exclusion Policies are unconstitutional and are likely to cause real harm to real students. Plaintiffs object to advancing EUSD's gender ideology and object to interfering with parents' rights to direct the upbringing of their children by lying to them about their child's gender identity. This Court should grant Plaintiffs' motion for a preliminary injunction against both the EUSD and the CDE in time for the 2023-2024 school year.[2]

---

[2] Both EUSD and the CDE filed opposition to Plaintiffs' motion for a preliminary

# REPLY ARGUMENT

## I. Plaintiffs Are Likely to Succeed on the Merits

### A. Plaintiffs Incorporate the Motion to Dismiss Briefing by Reference

With respect to the merits, EUSD takes the odd approach of copying and pasting, nearly verbatim, the text from its Rule 12(b)(6) motion to dismiss. (*Compare* ECF Nos. 7 & 17, Mtn. to Dismiss, pp.7:22-9:4 (facts), 9:26-23:14 (argument); *with* ECF Nos. 12 & 16, Opp. to Mtn. Prelim. Inj., pp.2:25-4:6 (facts), 5:4-18:3 (argument).) Thus, Plaintiffs expressly incorporate by reference their opposition to the EUSD's motion to dismiss. (*See* ECF No. 10, Opp. to Mtn. Dismiss, pp.14:16-33:7.)

In sum, as explained in Plaintiffs' motion for a preliminary injunction and opposition to EUSD's motion to dismiss, EUSD's Parental Exclusion Policies violate Plaintiffs' free speech and free exercise of religion rights—and violate the rights of Escondido parents. Similar policies are being struck down across the nation. *See, e.g., Ricard v. USD 475 Geary County, KS Sch. Bd.*, No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022); *Doe 1 v. Madison Metro. Sch. Dist.*, 976 N.W.2d 584, 589-90 (Wis. 2022); *Tatel v. Mt. Lebanon Sch. Dist.*, No. CV 22-837, 2022 WL 15523185 (W.D. Pa. Oct. 27, 2022), *recons. den.*, 2023 WL 3740822 (W.D. Pa. May 31, 2023).

For freedom of speech, because EUSD is a government employer, the Court must answer a series of questions that ultimately boil down to balancing EUSD's administrative interests in accomplishing its legitimate objective (of teaching children) against Plaintiffs' right to freedom of speech. Illegitimate objectives—such as violating parental rights or enforcing ideological conformity among its staff—may not be considered, and political speech is entitled to special protection. Courts that have engaged in this analysis have acknowledged that there is a constitutional problem when

---

injunction. EUSD's opposition defends its Parental Exclusion Policies on the merits. In contrast, the CDE's opposition is a quasi-motion to dismiss and argues that an injunction should be denied because Plaintiffs lack standing and because the CDE is protected by sovereign immunity. Thus, this Reply to EUSD focuses on the merits of the motion for a preliminary injunction, and Plaintiffs' separate Reply to the CDE focuses on the standing and immunity issues.

the government makes adherence to the new gender orthodoxy a condition of governmental employment. *See, e.g., Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 721-27 (9th Cir. 2022) (government contractor); *Meriwether v. Hartop*, 992 F.3d 492, 508-09 (6th Cir. 2021) (professor); *cited approvingly in Green v. Miss United States of Am., LLC*, 52 F.4th 773, 784 n.12 (9th Cir. 2022); *cf. also Citizens for a Responsible Curriculum v. Montgomery Cnty. Pub. Sch.*, No. Civ.A. AW-05-1194, 2005 WL 1075634, at *11-12 (D. Md. May 5, 2005).

For free exercise of religion, EUSD must show that its refusal to exempt Plaintiffs from the Parental Exclusion Policies survives strict scrutiny because (1) they have already categorically exempted thousands of staff, in a manner that undermines the policy similarly to how an exemption for Plaintiffs would, and (2) because EUSD officials have discretion to exempt any staff so long as the exemption satisfies a nebulous "legitimate" reasons standard. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877-79 (2021). Yet the only justification that EUSD or the CDE can muster in support of its Parental Exclusion Policies is an argument that the California Constitution's privacy protections include access to certain medical care (abortion and gender transition) that might be frustrated if parents were kept in the loop. Cal. Const., art. I, § 1; *Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 359 (1997) (plurality). Unsurprisingly, they cannot cite a single case in support of this alarming argument that actually supports the application of the California privacy right in this context, as a justification for coming between 12-year old children and their parents.

Importantly, the Supreme Court has recently re-focused the constitutional inquiry towards a history and tradition analysis. *See, e.g., Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (Free Speech Clause);[3] *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (Establishment Clause); *New York

---

[3] *Tingley v. Ferguson*, 57 F.4th 1072, 1078-83 (9th Cir. 2023) (Statement of O'Scannlain, J., respecting denial of rehearing en banc) (noting that Ninth Circuit panel had rightly engaged in a tradition and history analysis In a Free Speech case, but arguing that analysis was flawed).

*State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126-34 (2022) (Right to Bear Arms). In the Free Exercise context, the government must show that its compelling state interest is supported by history and tradition. *See, e.g., Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2258-59 (2020) (examining but rejecting "tradition against state support for religious schools"); *Wisconsin v. Yoder*, 406 U.S. 205, 227 (1972) (examining "historical origin" of "compulsory education" in exempting the Amish). Here, EUSD and the CDE absolutely cannot show a tradition of excluding parents from decision-making regarding their children. The tradition is the exact opposite. *See Yoder*, 406 U.S. at 232 ("Th[e] primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition").

Finally, as explained below, EUSD's sole attempt to dispute Plaintiffs' characterization of the facts—meticulously and comprehensively documented in a 288-page verified complaint, along with a lengthy 31-page expert declaration—is a vague, two page declaration which should be given no weight. In contrast, Plaintiffs submitted the expert testimony of a renowned expert in child gender dysphoria who summarized EUSD's policies as follows: "Rather than ensuring student safety and overall mental-health well-being, EUSD's policies are discordant with the practices of all mental health professional associations and are more likely to lead to student harm." (ECF No. 5-2, Declaration of Dr. Anderson, p.34, ¶86.)

Thus, this Court should find that Plaintiffs have established that they are likely to succeed on the merits and grant their requested preliminary injunction.

### B. The Court Should Give No Weight to Director Schmidt's Declaration

The only substantive difference between EUSD's motion to dismiss and opposition to the present motion for a preliminary injunction is that, in contending that EUSD's policies do not compel Plaintiffs to lie, EUSD included a citation to the declaration of Defendant Tracy Schmidt, EUSD's Director of Integrated Student Services. (ECF No. 16, EUSD Opp., p.11:8-13 (citing ECF No. 16-1, Schmidt Decl., p.2, ¶¶5-6).) EUSD sprinkled citations to Director Schmidt's declaration throughout

its opposition, but generally all for the same proposition: that there's no direct requirement for Plaintiffs to lie, only to "avoid the question." (ECF No. 16, EUSD Opp., pp.2:16-24, 3:15-16, 4:8-9, 11:8-13.)

As in their motion to dismiss, this argument might draw a chuckle if its implications were not so grim. By narrowly defining lying as "to state any fact that is false" (ECF No. 16, EUSD Opp., p.11:9), EUSD appears to think it has found some kind of loophole that allows it to sidestep candor and get away with deception. *See* Cal. Bus. & Prof. Code § 6068(d). Telling partial truths with the intent to deceive and mislead is not lying, in EUSD's book. As long as no one says something that is literally false, there has been no lie. Nor is using artful language, omitting key facts, deliberately giving the wrong impression and concealing the truth—all are allowed.

In practice, no one take such nonsensical ideas seriously. Advertisers who rely on literally true statements can still be liable for false advertising. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1137 (9th Cir. 1997). And in the legal context, there are good reasons "candor" and not merely "avoiding stating a fact that is false" is the standard of conduct. The fact that EUSD sees fit to define a "lie" so narrowly only speaks to the type of moral bankruptcy that Plaintiffs refuse to participate in.

This casual relationship with the truth is evident not only in EUSD's policies, but in its reasoning. In its motion to dismiss, EUSD stated: "The instruction to say a subject is outside of the scope of the discussion is not an instruction to lie…. *It is an instruction to avoid the question.*" (ECF No. 17, p.16:21-22.) But in opposition to Plaintiffs' motion for a preliminary injunction, EUSD changed tacks: "Contrary to the Plaintiffs['] position, the School District's training did not instruct a person to lie, *or even avoid the truth.*" (ECF No. 16, p.4:8-9.) EUSD's claim to have a finely-tuned sense of what it means to speak the truth is perhaps not as finely-tuned as it may think.

With respect to the declaration of Defendant Schmidt, therein, she explains that she was responsible for "the training" on compliance with Board Policy 5145.3 and Administrative Regulation 5145.3, which was "much broader and deeper than the

Plaintiffs' Complaint and motion make it sound" than Plaintiffs' Complaint says. (ECF No. 12-1, Schmidt Decl., p.1, ¶¶1-2.)[4] In her declaration, however, Defendant Schmidt moves between describing different "trainings" without clearly explaining to which training she is referring. As written, the declaration creates the misleading impression that all of the training provided to all staff has been the same. In this respect, her declaration is more likely to confuse the issues than provide probative value. *See* Fed. R. Evid. 403.

Most plainly, Defendant Schmidt states that certain training on gender identity was provided to certificated/teaching staff in January 2018 and administrative/classified staff in June 2018. (Schmidt Decl., pp.1-2, ¶2.) Oddly, Defendant Schmidt fails to note that this training was provided more than two years before AR 5145.3 was adopted. Thus, it could not be training on compliance with AR 5145.3 itself. (*See* Compl., p.77.) But, in any event, the role of parents was not discussed at that training at all. (Rebuttal Mirabelli Decl., ¶¶2-11; Rebuttal West Decl., ¶2.) This discussion is necessarily irrelevant to EUSD's *current* Parental Exclusion Policies. *See* Fed. R. Evid. 401.

Defendant Schmidt's declaration also avoids ever stating whether the 2018 training was performed pursuant to training manuals or via a slideshow presentation—presumably to avoid triggering the Best Evidence Rule. Plaintiff Mirabelli, however, does remember this training and its slideshow presentation (Rebuttal Mirabelli Decl., ¶6), making the testimony inadmissible. *See* Fed. R. Evid. 1002. And Defendant Schmidt never addresses the evidence that classified staff are apparently unaware of EUSD's gender identity policies. (Compl., ¶193; Rebuttal Mirabelli Decl., ¶4 & Ex.45.)

Defendant Schmidt then describes "more individualized training with select staff" and how it was similar or dissimilar to the Parental Exclusion Policies at issue in

---

[4] As stated in the Complaint, BP 5145.3 is a generic nondiscrimination policy from 2003 that includes gender identity as a protected characteristic. (Compl., pp.27-28, 70-75, ¶¶112-14 & Ex.2.) In contrast, AR 5145.3 is a new regulation adopted in August 2020 that explains that gender identity discrimination includes violating a child's "privacy right" to preclude his parents from learning that he has socially transitioned to a new gender at school. (Compl., p.28, 76-82, ¶¶115-16 & Ex.3.)

this case. (Schmidt Decl., p.2, ¶¶5-6.) That description downplays the requirement that teachers deceive parents, but is not how the Parental Exclusion Policies are being implemented in practice. (Rebuttal Mirabelli Decl., ¶¶12-21.)

In light of the above, especially the disconnect between the January 2018 training and the August 2020 regulation, and because EUSD chose not to provide the actual training—but merely a short and sparse declaration characterizing it—Plaintiffs object to Defendant Schmidt's entire declaration as irrelevant, more prejudicial than probative, hearsay, a legal conclusion, and a violation of the Best Evidence Rule.[5]

## II. THE OTHER INJUNCTION FACTORS FAVOR PLAINTIFFS

The remaining preliminary injunction factors are irreparable harm, balance of harms, and the public interest. All three factors tilt strongly in Plaintiffs' favor.

### A. Plaintiffs Are Suffering Irreparable Harm Due to the Loss of their Constitutional Rights and Severe Emotional Stress

With respect to irreparable harm, EUSD argues that "Plaintiffs cannot meet the requirement on no legal remedy, because, if they are being mistreated in the workplace, they have a legal remedy in Title VII employment action or a state action for discrimination." (ECF No. 16, EUSD Opp., p.4:19-21; *see also id.* at 5:2-3.) The CDE, in turn, simply argues that there is not a "sufficient causal connection" between Plaintiffs' irreparable injury and the CDE's Frequently Asked Questions guidance

---

[5] On a preliminary injunction motion, courts may give even inadmissible evidence some weight. But courts should reject evidence, even on a preliminary injunction motion, if it is insufficiently reliable. *See, e.g., Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (rejecting affidavits because they affidavits were "conclusory and without sufficient support in facts"); *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1562 (S.D. Cal. 1996) (court "has discretion to weight the evidence as required to reflect its reliability"). At the very least, the Court can and should view suspiciously EUSD's decision not to submit any documentary evidence. *See, e.g., Interstate Cir. v. United States*, 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse."); *Singh v. Gonzales*, 491 F.3d 1019, 1024-25 (9th Cir. 2007).

document—the source of EUSD's Parental Exclusion Policies. (ECF No. 9, CDE Opp., pp.16:8-18:3.)

But the existence of monetary damages for violation of Title VII does not adequately remedy the non-monetary harms that Plaintiffs are suffering. For example, Plaintiff Lori Ann West was placed on administrative leave for the rest of the 2022-2023 school year, over her objection, with less than 24 hours' notice. (ECF No. 8, Supp. West Decl., pp.3-4, ¶¶7-10.) She immediately requested clarification whether this would include the summer school class for special needs children that she was agreed to teach. But EUSD chose not to respond to her inquiry for over two weeks—until the day class was supposed to start. (Rebuttal West Decl., ¶¶3-7.) These harms cannot be remedied via monetary damages.

In any event, even in the Title VII context, placing "pressure on Appellants to violate their faith," through a "Hobson's choice: lose your faith and keep your job, or keep your faith and lose your job," is irreparable harm. *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023). And the CDE's guidance document applies to the whole State. Thus, unless it is enjoined as to Plaintiffs, they will lose "the opportunity to pursue their 'chosen profession,' which [the Ninth Circuit has] recognized as irreparable harm." *Id*. (citing *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 710 (9th Cir. 1988); *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1156, 1165-66 (9th Cir. 2011)).

Finally, the fact that it is questionable that Plaintiffs could ever seek monetary recovery from the CDE under Title VII weighs in favor of injunctive relief. *See, e.g., Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1105 (9th Cir. 1994) (holding "lack of proof of damages, and possible immeasurability or unascertainability of harm, does not mean Continental was not harmed" and "so cuts in favor of equitable relief"); *Dairy Maid Dairy, Inc. v. United States*, 837 F. Supp. 1370, 1381 (E.D. Va. 1993) (enjoining government conduct that would cause plaintiff $4 million in harm, where statute limited damages award against government).

### B. The Public Interest and the Balance of Harms Favors Plaintiffs: Students Will Be Benefitted and Constitutional Rights Preserved

With respect to the public interest and the balance of harms, EUSD is silent. The CDE, in turn, argues that a vague injunction "would impermissibly impact and undermine the ability of the State-level Defendants to freely conduct their daily governmental and administrative functions." (ECF No. 9, CDE Opp., p.18:4-19:15.) Thus, *on the merits*, neither the EUSD Defendants nor the CDE Defendants contend that the public interest or the balance of harms favor them.

With respect the injunction, Plaintiffs requested an injunction "prohibiting the CDE Defendants from interfering in any way, including by taking action against the EUSD Defendants," with Mrs. Mirabelli's and Mrs. West's rights as determined "in accordance with this Court's order." (ECF No. 5-1, Ntc. of Mtn., p.3:7-10.) This is not unduly vague. An injunction is not vague by simply failing "to provide [the defendant] with explicit instructions on the appropriate means to accomplish th[e] directive." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004) (no need to for court to "elucidate *how* to [comply]") (emphasis in original). Plaintiffs' notice of motion makes clear that they seek the right "[c]ommunicat[e] with parents using the legal name of a transgender or gender diverse student, while also mentioning that the student is referred to at school using a preferred name," and the right to "[n]otify[] parents of a student's request to be referred to using a name that is different than the student's legal name or a pronoun inconsistent with the student's biological/natal sex." (ECF No. 5, Ntc. of Mtn., p.2:1-6.) This is a "fair and precisely drawn notice of what the injunction actually [permits];" there is no need to identify and enumerate all the "numerous" ways that the CDE may try to interfere. *Fortyune*, 364 F.3d at 1087.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for a preliminary injunction in full and waive the bond requirement—a waiver which neither set of Defendants opposed.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: June 16, 2023          By: _____
                              Charles S. LiMandri
                              Paul M. Jonna
                              Jeffrey M. Trissell
                              Milan L. Brandon II
                              Attorneys for Plaintiffs