Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-WVG <br><br> **Notice of Related Case in Support of Plaintiffs' Motion for a Preliminary Injunction, and in Opposition to the Defendants' Motions to Dismiss** <br><br> Judge:          Hon. Roger T. Benitez <br> Courtroom:    5A <br> Hearing Date:  August 30, 2023 <br> Hearing Time:  10:00 a.m. |

## NOTICE OF RELATED CASE

Pursuant to S.D. Cal. CivLR 40.1(f), Plaintiffs Elizabeth Mirabelli and Lori Ann West bring to the Court's attention the recently filed related action of *People of the State of California v. Chino Valley Unified School District*, No. CIV SB 2317301 (Cal. Super Ct., San Bernardino Cnty., Aug. 28, 2023). *See* S.D. Cal. CivLR 40.1(f) (duty to file notice of related case applies to any "action or proceeding on file in this or any other federal or State Court"). That action was filed by California Attorney General Rob Bonta. General Bonta's press release announcing the lawsuit is attached as Exhibit A, and a file-stamped copy of the complaint is attached as Exhibit B. A copy of General Bonta's initial legal demand letter and corresponding press release, which cc'd State Superintendent Tony Thurmond, is attached as Exhibit C. A copy of the California Department of Education's own press release is attached as Exhibit D.

As stated in the complaint, on July 20, 2023, the Chino Valley Unified School District adopted a policy requiring school officials to notify a child's parents anytime a child "asks to be identified or treated as a gender 'other than the student's biological sex or gender listed on the student's birth certificate or any other official records.'" (Ex. B, Compl., ¶8.) At the time, the California Department of Education's press release announced that "[w]hat CVUSD has done may be in violation of state law. We will be working closely with the State Attorney General's office to verify and enforce California law." (Ex. D.)

As a result, on August 28, 2023, the California Attorney General filed a "civil rights" lawsuit against the school district. (Ex. A.) According to General Bonta, the parental notification policy violates: (1) the California Equal Protection Clause, Cal. Const., art. I, § 7 (Ex. B, Compl., ¶¶109-14); (2) the prohibition on gender identity discrimination in Cal. Educ. Code § 200 (Ex. B, Compl., ¶¶115-20); (3) the prohibition on sex discrimination in Cal. Gov. Code § 11135 (Ex. B, Compl., ¶¶121-25); and (4) the California Privacy Clause, Cal. Const., art. I, § 1 (Ex. B, Compl., ¶¶126-29).

///

The position taken by "the People of the State of California" in *Chino Valley Unified* appears inconsistent with the position taken by the CDE Defendants in this action, who have asserted as the basis of their motion to dismiss that no provision in California law "bind[s]" the EUSD Defendants to adopt and enforce its Parental Exclusion Policies. (*See* ECF Nos. 25 & 30.) Plaintiffs' position has been simply that EUSD believes it is so bound (*see* ECF No. 28), and now the California Attorney General's lawsuit against Chino Valley Unified School District lends credence to EUSD's fears.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: August 29, 2023        By:

Charles S. LiMandri
Paul M. Jonna
Mark D. Myers
Jeffrey M. Trissell
Milan L. Brandon II
Attorneys for Plaintiffs

**EXHIBIT A**

Case 3:23-cv-00768-BEN-WVG   Document 36   Filed 08/28/23   PageID.895   Page 5 of 44

 **Subscribe to Our Newsletter**   `Enter your`   Subscribe



# ROB BONTA
## *Attorney General*

# Attorney General Bonta Announces Lawsuit Challenging Chino Valley Unified School District's Forced Outing Policy

Press Release    /    *Attorney General Bonta Announces Lawsuit Challenging Chino V…*

Monday, August 28, 2023

Contact: (916) 210-6000, agpressoffice@doj.ca.gov

**LOS ANGELES** — California Attorney General Rob Bonta today announced a lawsuit to immediately halt the enforcement of the Chino Valley Unified School District Board of Education's (Board) mandatory gender identity disclosure policy. The policy, adopted in July, requires schools to inform parents, with minimal exceptions, whenever a student requests to use a name or pronoun different from that on their birth certificate or official records, even without the student's permission. The policy also requires notification if a student requests to use facilities or participates in programs that don't align with their sex on official

records. In today's lawsuit, Attorney General Bonta challenges the policy, which violates the California Constitution and state laws safeguarding civil rights, and has already caused and is threatening to cause LGBTQ+ students with further mental, emotional, psychological and potential physical harm.

"Every student has the right to learn and thrive in a school environment that promotes safety, privacy, and inclusivity – regardless of their gender identity," **said Attorney General Bonta.** "We're in court challenging Chino Valley Unified's forced outing policy for wrongfully and unconstitutionally discriminating against and violating the privacy rights of LGBTQ+ students. The forced outing policy wrongfully endangers the physical, mental, and emotional well-being of non-conforming students who lack an accepting environment in the classroom and at home. Our message to Chino Valley Unified and all school districts in California is loud and clear: We will never stop fighting for the civil rights of LGBTQ+ students."

In today's lawsuit, Attorney General Bonta argues that the policy infringes on several state protections safeguarding students' civil and constitutional rights, including:

- **California's Equal Protection Clause:** The policy unlawfully discriminates and singles out students who request to identify with or use names or pronouns different from those on their birth certificates, or who access programs or facilities that, in the view of the Board, are not "aligned" with the student's gender.
- **California's Education and Government Code:** Education is a fundamental right in California, and California Education Code Sections

200 and 220 and Government Code section 11135 also ensure equal rights and opportunities for every student and prohibit discrimination on the basis of gender identity and gender expression. The policy violates these fundamental anti-discrimination protections.

- **California's constitutional right to privacy:** California's constitution expressly protects the right to "privacy," including both "informational privacy," and "autonomy privacy," and the policy's mandate to out transgender and gender-nonconforming students against their wishes or without their consent violates that right.

Furthermore, the lawsuit alleges that the Board's policy has already placed transgender and gender-nonconforming students in danger of imminent, irreparable harm from the consequences of forced disclosures. These students are currently under threat of being outed to their parents against their will, and many fear that the District's policy will force them to make a choice: either "walk back" their constitutionally and statutorily protected rights to gender identity and gender expression, or face the risk of emotional, physical, and psychological harm. The Board's policy thus unlawfully discriminates against transgender and gender nonbinary students, subjecting them to disparate treatment and harassment, including mental, emotional, and even physical abuse.

The lawsuit also asserts this the Board's plain motivations in adopting the policy were to create and harbor animosity, discrimination, and prejudice towards transgender and gender-nonconforming students, without any compelling reason to do so, as evidenced by statements made during the Board's hearing. In discussing the policy before its passage, board members made a number of statements describing students who are transgender or gender-nonconforming

8/29/23, 8:03 AM    Attorney General Bonta Announces Lawsuit Challenging Chino Valley Unified School District's Forced Outing Policy | State of Cali…

Case 3:23-cv-00768-BEN-WVG Document 36 Filed 08/28/23 PageID.808 Page 8 of 44

as suffering from a "mental illness" or "perversion", or as being a threat to the integrity of the nation and the family. The Board President went so far as to state that transgender and gender nonbinary individuals needed "non-affirming" parental actions so that they could "get better."

Attorney General Bonta has a substantial interest in protecting the legal rights, physical safety, and mental health of children in California schools, and in protecting them from trauma, harassment, bullying, and exposure to violence and threats of violence. Research shows that protecting a transgender student's ability to make choices about how and when to inform others is critical to their well-being, as transgender students are exposed to high levels of harassment and mistreatment at school and in their communities.

- In the 2015 U.S. Transgender Survey, 10% of respondents said that an immediate family member had been violent toward them because they were transgender, and 15% ran away from home or were kicked out of their home because they were transgender. And fewer than one-in-three transgender and gender nonbinary youth found their home to be gender-affirming.
- Seventy-seven percent of students known or perceived as transgender reported negative experiences such as harassment and assault, and over half of transgender and nonbinary youth reported seriously considering suicide in the past year.
- Nearly 46% of transgender students reported missing at least one day of school in the preceding month because they felt unsafe or uncomfortable there and 17% of transgender students reported that they left a K-12 school due to the severity of the harassment they experienced at school.

8/29/23, 8:04 PM Attorney General Bonta Announces Lawsuit Challenging Chino Valley Unified School District's Forced Outing Policy | State of Cali…

Case 3:23-cv-00768-BEN-WVG Document 36 Filed 08/28/23 PageID.809 Page 9 of 44

Attorney General Bonta is committed to defending the rights and safety of our LGBTQ+ youth. Prior to filing a lawsuit, Attorney General Bonta announced opening a civil rights investigation into the legality of Chino Valley Unified School District's adoption of its mandatory gender identity disclosure policy. Prior to opening the investigation, Attorney General Bonta in July sent a letter to Superintendent Norman Enfield and the Board of Education cautioning them of the dangers of adopting its forced outing policy, emphasizing the potential infringements on students' privacy rights and educational opportunities. Just days ago, Attorney General Bonta issued a statement following Anderson Union High School District, and Temecula and Murrieta Valley Unified School District Boards' decisions to implement copy-cat mandatory gender identity disclosure policy targeting transgender and gender nonconforming students.

A copy of the lawsuit is available here.

# # #

Office of the Attorney General     Accessibility     Privacy Policy     Conditions of Use     Disclaimer

© 2023 DOJ

**EXHIBIT B**

1  ROB BONTA
   Attorney General of California
2  MICHAEL L. NEWMAN
   Senior Assistant Attorney General
3  LAURA L. FAER (SBN 233846)
   JAMES F. ZAHRADKA II (SBN 196822)
4  Supervising Deputy Attorneys General
   EDWARD NUGENT (SBN 330479)
5  GARY D. ROWE (SBN 165453)
   ALEXANDER SIMPSON (SBN 235533)
6  XIYUN YANG (SBN 315187)
   DELBERT TRAN (SBN 323993)
7  Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
8    San Francisco, CA 94102-7004
     Telephone: (415) 229-0110
9    E-mail: Delbert.Tran@doj.ca.gov
   *Attorneys for The People of the State of California*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 28 2023

BY:   Stephanie Paraagua, Deputy

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                   COUNTY OF SAN BERNARDINO

13

14

15  **THE PEOPLE OF THE STATE OF**          Case No.
    **CALIFORNIA, EX REL. ROB BONTA,**
16  **ATTORNEY GENERAL OF THE STATE**       **COMPLAINT FOR DECLARATORY**
17  **OF CALIFORNIA,**                       **AND INJUNCTIVE RELIEF**

18                            Plaintiff,

19            v.                            Date:
                                           Time:
20                                         Dept:
    **CHINO VALLEY UNIFIED SCHOOL**        Judge:
21  **DISTRICT,**                          Trial Date:

22                            Defendant.   Action Filed:

23

24       The People of the State of California, by and through Rob Bonta, Attorney General of the

25  State of California, allege on information and belief as follows:

26                            **INTRODUCTION**

27       1.    The People of the State of California, acting by and through Attorney General Rob

28  Bonta (collectively, the People), seek declaratory and injunctive relief, declaring Board

                                        1

Policy 5020.1's (Policy 5020.1 or Policy) forced disclosure provisions unconstitutional according to the State Constitution and in violation of State law, and enjoining Chino Valley Unified School District from implementing Policy 5020.1's forced disclosure provisions.

2.     Policy 5020.1's forced disclosure provisions include:

    a.   subdivisions 1(a) and 1(b) of the Policy in full;

    b.   subdivision 1(c) of the Policy, insofar as it applies to transgender or gender nonconforming students' requests to change their name, pronouns, sex, or gender on unofficial records; and

    c.   subdivision 5 of the Policy, insofar as it applies to transgender or gender nonconforming students (i) requesting to be treated as a gender other than the student's biological sex or gender listed on the student's birth certificate or any other official records or (ii) accessing sex-segregated school programs or activities that do not align with the student's biological sex or gender listed on the student's birth certificate or any other official records.

3.     Education is a fundamental right in California pursuant to the Equal Protection Clause of the California Constitution, and education is essential to prepare our youth for civic participation and to provide them with the information and judgment needed to maintain a healthy democracy. (Cal. Const., art. IX, § 1.) As California's Constitution recognizes, the "diffusion of knowledge and intelligence [is] essential to the preservation of the rights and liberties of the people . . . ." (Cal. Const., art. IX, § 1.) Formal education also plays an essential role in building understanding of California's diverse communities and the shared values that unite them.

4.     This fundamental right to education is available to all, including those students who are transgender, gender nonconforming, and those whose gender expression and gender identity differ from their cisgender and gender conforming peers.

5.     Under the California Constitution, and pursuant to state law, local educational agencies must ensure that any policies they implement provide equal protection to all students regardless of their gender expression, gender identity, or sexual orientation, and may not

1   unlawfully discriminate against any protected class of students while receiving funds from the

2   State. (Cal. Const., art. I, § 7; Ed. Code, § 200 et seq.; Gov. Code, § 11135.)

3        6.    The California Constitution also prohibits local educational agencies from infringing

4   on the privacy rights of their students. (Cal. Const., art I, § 1.)

5        7.    These responsibilities of local educational agencies—to provide equal protection to

6   all students, and to refrain from infringing on the privacy rights of students—must not be taken

7   lightly, and certainly should not be used as justification for discrimination. However, instead of

8   honoring these duties, the Chino Valley Unified School District (District or CVUSD) has singled

9   out an especially vulnerable group of children and youth for discriminatory treatment:

10  transgender and gender nonconforming students.[1]

11       8.    On July 20, 2023, the District School Board adopted Policy 5020.1 and its forced

12  disclosure provisions. The policy mandates that Chino Valley Unified School District employees

13  "out" transgender and gender nonconforming students to their parents or guardians, regardless of

14  the students' wishes, whenever the student asks to be identified or treated as a gender "other than

15  the student's biological sex or gender listed on the student's birth certificate or any other official

16  records."

17       9.    Policy 5020.1 also requires forced disclosure whenever a student requests to use a

18  different name than their legal name or to use pronouns "that do not align with the student's

19  biological sex or gender listed on the student's birth certificate or other official records."

20       10.   And Policy 5020.1 requires staff members to notify parents or guardians whenever

21  the student requests to access "sex-segregated school programs and activities," including asking

22  to join a sports team or use a different bathroom.

23       11.   Since the first day of the 2023-2024 school year, Policy 5020.1 has placed

24  transgender and gender nonconforming students in danger of imminent, irreparable harm from the

25  consequences of forced disclosures. These students are currently under threat of being outed to

26  their parents or guardians against their express wishes and will. They are in real fear that the

---

[1] As explained below, as used herein, the term "gender nonconforming" includes individuals who are gender nonbinary, i.e., whose gender identity fall outside the traditional male-female binary.

Complaint for Declaratory and Injunctive Relief

District's policy will force them to make a choice: either "walk back" their constitutionally and statutorily protected rights to gender identity and gender expression, or face the risk of emotional, physical, and psychological harm from non-affirming or unaccepting parents or guardians.

12.    Policy 5020.1 unlawfully discriminates against transgender and gender nonconforming students, subjecting them to disparate treatment, harassment, and abuse, mental, emotional, and physical. This is by design: the Board's plain motivations in adopting Policy 5020.1 were to create and harbor animosity, discrimination, and prejudice towards these transgender and gender nonconforming students, without any compelling reason to do so.

13.    Without action from this Court, transgender and gender nonconforming students' rights to be free from unlawful discrimination, harassment, and abuse will be violated.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the allegations and subject matter of the People's Complaint filed in this action and the parties to this action pursuant to Government Code section 11180 et seq., and Government Code sections 525, 526, 1060; venue is proper in this County.

## PARTIES

15.    The Attorney General is the chief law officer of the State and has the authority to see that the State's laws are uniformly and adequately enforced for the protection of public rights and interests. (Cal. Const., art. V, § 13; Gov. Code, § 11180 et seq.) The Attorney General may file any civil action for the enforcement of California's laws he deems necessary for the protection of public right and interests, absent direct constitutional or legislative restrictions. (See, e.g., *People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 157.)

16.    Defendant Chino Valley Unified School District receives state funds, is a public school district organized and existing under the laws of the State of California, and is responsible for providing public education to District students.

17.    Defendant Chino Valley Unified School District is located in San Bernardino County and serves nearly 26,000 students.

## FACTUAL BACKGROUND

18.     In California, education is a fundamental interest, and students have the right to equal protection with respect to its provision. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 608-609, 619.) The State of California and the District are required to ensure that all students, regardless of gender, gender identity, and gender expression, are treated equally in all aspects of education. (Cal. Const., art. I, § 7, subd. (a); Ed. Code, §§ 200, 220, 262.4.)

19.     The Attorney General has the authority, in his sole discretion, to bring claims against a school district for violation of the California Constitution, Article 1, section 7, or where the district has violated students' right to be treated equally in all aspects of education, regardless of gender, gender identity, and gender expression. (Ed. Code, §§ 200, 220.)

20.     The Attorney General has the authority, in his sole discretion, to bring claims against a school district that has unlawfully subjected transgender and gender nonconforming students in the district to discrimination while receiving funds from the state. (Gov. Code, § 11135.)

21.     The Attorney General has the authority, in his sole discretion, to bring claims against a school district for violation of the California Constitution, Article I, section 1, where the district has violated the privacy rights of its students.

**A.     Transgender and Gender Nonconforming Students in Unsupportive Environments Experience High Degrees of Discrimination and Harassment**

22.     An individual is transgender if their gender identity differs from the sex the person had or was identified as having at birth. Gender nonconforming individuals include those whose gender identities that are not solely male or female (i.e., gender nonbinary). (Diamond, *Gender Fluidity and Nonbinary Gender Identities Among Children and Adolescents* (2020) 14 Child Development Perspectives 110.)

23.     Gender identity is not a choice, and it is not a mental illness. It is an essential part of one's identity and being, and cannot be voluntarily changed.

24.     Transgender students in unsupportive or unsafe environments suffer significant levels of discrimination, abuse, and harassment, both physical and mental, well above their non-transgender peers.

25.    Though schools are typically safe and supportive environments, schools that are not can create serious harms for transgender students. A report analyzing 2017-2019 data concerning students across 2,749 California schools—in grades seven, nine, and 11—found that transgender students in California reported negative school experiences and poorer mental health "at higher rates" than any other "sexual orientation subgroups." (Hanson et al., *Understanding the Experiences of LGBTQ Students in California* (Oct. 2019) The California Endowment, pp. 9, 52, https://tinyurl.com/v452ty7s.)

26.    A study of 2015-2016 data from California public schools found that more than 40 percent of transgender students reported being bullied because of their gender identity, as opposed to only 7.3 percent of non-transgender students who reported gender-based bullying or bullying on the basis of perceived gender identity. (De Pedro et al., *Exploring Physical, Nonphysical, and Discrimination-Based Victimization Among Transgender Youth in California Public Schools* (2019) 1 Internat. J. of Bullying Prevention 218, 222.)

27.    This same study also reported that more than half (55.6 percent) of transgender students in the State reported physical victimization (such as being threatened with a weapon, threatened with harm, shoved, or in a physical fight), and more than two-thirds (69.2 percent) reported nonphysical victimization, such as being called a demeaning name or being the recipient of demeaning sexual jokes or gestures. (De Pedro, *supra*, Internat. J. of Bullying Prevention at p. 222.)

28.    Because transgender students face discrimination because of their gender identity, they are also at risk of suicide and serious mental health issues. (James et al., *The Report of the 2015 U.S. Transgender Survey* (Dec. 2016) Nat. Ctr. for Transgender Equality, at p. 132; Kosciw et al., *The 2019 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools* (2020) GLSEN, pp. 52-4; Jody L. Herman, *Gendered Restrooms and Minority Stress: The Public Regulation of Gender and Its Impact on Transgender People's Lives* (2013) J. of Pub. Mgmt. & Soc. Pol'y 65, 76-8)

29.    Eighty-six percent of transgender youth reported suicidal thoughts, and 56 percent of transgender youth reported a previous suicide attempt. (Austin et al., *Suicidality Among*

6

*Transgender Youth: Elucidating the Role of Interpersonal Risk Factors* (2020) 37 J. Interpersonal Violence 5.)

30.     Conversely, transgender children who socially transition[2] have mental health outcomes that mirror those of their cisgender peers. (Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* (2022) 23 Internat. J. of Transgender Health S1, S77.)

31.     A recent study examined the impact of supportive environments (i.e., affirming use of chosen name and pronouns) on depression, suicidal ideation and suicide attempts among transgender youth. Results showed that adding one context (e.g., school, friends) where affirmed gender was used consistently decreased suicidal behavior by 56 percent. (Russell et al., *Chosen Name Use Is Linked To Reduced Depressive Symptoms, Suicidal Ideation, And Suicidal Behavior Among Transgender Youth*, J. of Adolescent Health (2018) pp. 503-505.)

32.     The U.S. Centers for Disease Control and Prevention has found that, "[s]chool connectedness, which is the feeling among adolescents that people at their school care about them, their well-being, and success, has long-lasting protective effects for adolescents. Youth who feel connected at school are less likely to experience risks related to substance use, mental health, violence, and sexual behavior." (Centers for Disease Control, *Youth Risk Behavior Survey: Data Summary & Trends Report* (2021) p. 72.)

33.     Additionally, while many transgender or gender nonconforming youth are fortunate to have parents or guardians who are accepting of their gender identity, others are not so lucky. Those who do not have parents or guardians who accept or affirm their gender identity risk physical, mental, and emotional harm and abuse if their parents, guardians, or other relatives learn of their identity.

34.     In the 2015 U.S. Transgender Survey, 10 percent of respondents said that an immediate family member had been violent toward them because they were transgender, and 15

---

[2] Social transition is the process by which transgender people publicly affirm their gender identity after coming out. This commonly involves changing one's name and pronouns, as well as dress and other external gender cues such as voice and mannerisms. (Olson et al., *Gender Identity 5 Years After Social Transition* (2022) 150 Pediatrics 2.) That study found that 94 percent of transgender youth maintain their gender identity five years after social transition.

percent ran away from home or were kicked out of their home because they were transgender. (James et al., *supra*, Nat. Ctr. for Transgender Equality at p. 65.) Of those who transitioned in the year preceding the survey, eight percent reported violence from an immediate family member because they were transgender, seven percent ran away from home, and eight percent had been kicked out of their home. (*Id.* at pp. 71-72, 74.)

35.    Fewer than one-in-three transgender and gender nonbinary youth found their home to be gender-affirming, or accepting of their gender identity. (The Trevor Project, 2022 National Survey on LGBTQ Youth Mental Health, p. 4, https://tinyurl.com/2fn5xfjr.)

36.    Due to these risks, many transgender and gender nonconforming students are not "out" to their immediate families.

37.    Recognizing these risks, the California Department of Education has issued statewide guidance since at least 2014, generally recommending that school officials and staff members not "out" students to their parents or guardians against the students' wishes. (Cal. Dept. of Ed., Frequently Asked Questions, https://www.cde.ca.gov/re/di/eo/faqs.asp.) Doing so, the guidance notes, could "compromise the student's safety" by "increasing the student's vulnerability to harassment," violence, or other forms of abuse at school or at home. (*Ibid.*)

38.    Many California districts, including Chino Valley Unified, have incorporated this guidance into binding Administrative Regulations; CVUSD's had been in place for years before the adoption of Policy 5020.1.

39.    California's Education Code also requires schools to permit students "to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with" their "gender identity, irrespective of the gender listed on the pupil's records." (Ed. Code, § 221.5, subd. (f).)

**B.    The Chino Valley Unified District School Board Adopts Policy 5020.1 and Demonstrates Its Animus**

40.    On July 20, 2023, the District School Board, which has five members, held a public meeting to discuss whether to adopt Policy 5020.1, requiring, in relevant part, school personnel to

"out" transgender and gender nonconforming students to their parents or guardians without their consent and even against their express wishes.

41.   Over several hours, more than 80 members of the public spoke regarding the forced disclosure policy.

42.   Those opposing the policy included current and former LGBTQ+ and cisgender students, and teachers, parents, mental health professionals, and advocates who warned that the policy would endanger transgender and gender nonconforming students.

43.   A current CVUSD transgender student stated, "[t]his policy threatens my safety" and "tells me I don't belong." The student explained: "52 percent of trans kids feel accepted at school, but only 35 percent feel accepted at home. That leaves a large gap there of kids who feel welcome at school but not at home. Feeling safe at school lessens suicide risk. If a student isn't out to their parent, [Policy 5020.1] shoves them 'in the closet' at school. That's a miserable place to be."

44.   Another LGBTQ+ and current CVUSD student added, "[t]his policy will destroy the lives of kids who should not have to live in fear for being their true selves."

45.   A third CVUSD student, who self-identified as LGBTQ+, noted that "LGBTQ youth who experience parental rejection are eight times more likely to attempt suicide and six times more likely to report major depressive symptoms."

46.   Explaining the consequences of forced disclosure, a recent graduate from a CVUSD high school, who also self-identified as LGBTQ+, stated that "[Students] could be kicked out or attacked by their parents both physically and verbally. Their home life may become a living hell because of that [disclosure]."

47.   Several adults read letters to the Board by Chino Valley LGBTQ+ students or individuals who feared for their safety.

48.   One read a letter from a transgender student that explained: "If a student is outed to their family without their consent, this could possibly result in abuse, hate crimes, getting kicked out of their homes, [and] in extreme cases, being murdered."

49.     Another letter from a transgender student raised "the continuous fear and pressure that [the Policy ] put[s] upon all of us trans youth. . . . we're constantly in a state of panic, fearing the consequences of being outed. Some of us may even feel the need to hide our identities."

50.     Parents of current CVUSD students expressed similar opposition to Policy 5020.1's forced disclosure provisions. One parent, who was also a "public school educator with 22 years of experience," identified the Policy as "a flagrant attempt to isolate, shame, and otherwise alienate our LGBTQIA students, creating a hostile environment for them in our public schools."

51.     Another parent and former educator stated, "[t]his policy breaks down trust between parents, teachers, and students and exposes our most vulnerable students. Policies like this . . . make all kids feel less safe. Kids cannot learn if they do not feel safe, period."

52.     One former educator "know[s] students who left the district because they were outed," cautioning that "[t]hey will be put in . . . risky situations; they will be unhoused; they will have . . . suicidal tendencies if this policy is passed."

53.     Also speaking in opposition to the Policy's forced disclosure provisions, a school counselor on the board of directors of the National Association of Social Workers' California Chapter warned that Policy 5020.1 "directly contradicts" social workers' "oath to do no harm in our work with students," including social workers' commitment to "put our students' safety and trust first."

54.     Sounding similar notes, another individual speaking in opposition referenced research showing that "if parent notification was mandated," youth are "less likely to seek . . . counseling or medical services."

55.     One CVUSD teacher put it starkly: "This policy will out a student . . . putting them into a hostile household, which will further their mental degradation to the point where they will harm themselves. . . . This policy will kill somebody."

56.     State Superintendent of Public Instruction Tony Thurmond also attended the hearing, speaking in opposition. Superintendent Thurmond pointed out that the policy "not only may fall outside of the laws that respect privacy and safety for our students but may put our students at risk because they may not be in homes where they can be safe."

Complaint for Declaratory and Injunctive Relief

57.    Individuals who spoke in support of Policy 5020.1's forced disclosure requirements claimed that transgender identity is a "mental illness," a "delusion," and a "damaging ideolog[y]."

58.    Echoing these statements before voting to enact the policy, Board members described students who are transgender or gender nonconforming as suffering from a mental illness or perversion, or as being a threat to the integrity of the nation and the family.

59.    Board Member 1, for example, stated, "there's always been man, woman; and then you have this transgender [identity] . . . it is an illusion; it is mental illness." He noted that "at the end, our children are going to be lonely, isolated, and in despair. And a lot of them are not going to be having children because it's one way to reduce the population, realistically."

60.    Board Member 1 further likened the issues related to gender identity to a "death culture," and claimed that that the Policy was needed because "women are being erased," and that "[i]t's not going to end with transgenderism. . . . You got to put a stop to it."

61.    The Board President expressed "appreciat[ion]" for "each one of our board member's viewpoints," offering no repudiation of Board Member 1's comments about transgender identity.

62.    Additionally, the Board President stated that transgender and gender nonconforming individuals needed "non-affirming" parental actions so that they could "get better."

63.    In an earlier part of the Board meeting, the Board President claimed that the State Superintendent—who had cautioned that the policy may endanger transgender or gender nonconforming youth—was "proposing things that pervert children."[3]

64.    In his comments supporting the Policy, Board Member 2 stated that it was needed to counter Karl Marx's call, in the *Communist Manifesto*, "for the abolition of the family" and prevent the creation of "the, quote and unquote, 'new man.'"

65.    At the conclusion of its meeting, the Board voted 4-1 to approve Policy 5020.1. The Board President and Board Members 1, 2, and 3 voted in support.

66.    Board Member 4, the lone dissenter, expressed concern that "[i]f this policy passes, we will have, effectively, shut the door on students confiding to a staff member or a teacher," preventing the school from being "a supportive place." Board Member 4 continued: "So how

---

[3] *Id.*, p. 75:1-6.

Complaint for Declaratory and Injunctive Relief

good is this notification process if these students are, effectively . . . 'throw[n] . . . back into the closet . . . slamming the door?'"

### C. The Policy Singles Out Transgender and Gender Nonconforming Students for Discriminatory Treatment

67. The Policy states that a school's "[p]rincipal/designee, certificated staff, and school counselors" shall notify parents or guardians "in writing, within three days" whenever "any District employee, administrator, or certificated staff, becomes aware" that a student is:

(a) Requesting to be identified or treated, as a gender (as defined in Education Code Section 210.7) other than the student's biological sex or gender listed on the student's birth certificate or any other official records. This includes any request by the student to use a name that differs from their legal name (other than a commonly recognized diminutive of the child's legal name) or to use pronouns that do not align with the student's biological sex or gender listed on the student's birth certificate or other official records.

(b) Accessing sex-segregated school programs and activities, including athletic teams and competitions, or using bathroom or changing facilities that do not align with the student's biological sex or gender listed on the birth certificate or other official records.

(c) Requesting to change any information contained in the student's official or unofficial records.

(Policy 5020.1, § 1, subds. (a)-(c).)[4]

68. Policy 5020.1 also requires school personnel to log and officially document the forced outing of a transgender or gender nonconforming student: "The District employees who make such notification shall either keep a record of such notification (if written) or document such notification (if verbal) and place the record or documentation in the student's official student information system." (*Id.*, § 5.)

69. Finally, Policy 5020.1 contains the following paragraph:

For purposes of this Board policy, Family Code Section 6924, Health and Safety Code Section 124260, and Education Code Section 49602(C), inclusion of parent(s)/guardian(s) is appropriate unless specifically prohibited by law. Nothing in this policy affects the obligations of the District's employees, administrators, and certificated staff as mandated reporters under Article 2.5 of the Child Abuse and Neglect Reporting Act Sections 11164-11174.3 of the Penal Code, and the District Policy 5141 and Administrative Regulations 5141.4(a)).

---

[4] Policy 5020.1 also has provisions relating to disclosures, for instance, related to complaints of bullying involving a child. (*Id.*, § 4.) As noted above, this litigation challenges the Policy's provisions on forced disclosure of gender identity.

(*Id.*, § 6.)

70.     As to this paragraph, at the Board Meeting, counsel for the District stated that Policy 5020.1 was limited in application based on "very specific statutes" governing school counselors and the disclosure of confidential information, although he did not reference these citations specifically. Counsel claimed that if a student aged 12 years or older stated to a school counselor "while receiving counseling services" that they wished to use different bathroom facilities or told the counselor they were "transgender, gender nonconforming, binary, . . . whatever it is that is their gender identity," the counselor would be prohibited from disclosing this information based on privacy.

71.     Counsel's characterizations were incorrect, as these statutory provisions do not limit forced disclosure of a student's gender identity at all, or only limit such forced disclosure in narrow circumstances.

72.     Family Code Section 6924, subdivision (d), directs counselors and mental health providers providing treatment to minors 12 years and older to include "the minor's parent or guardian" in the treatment of the minor "unless, in the opinion of the professional person who is treating or counseling the minor, the involvement would be inappropriate." Health and Safety Code Section 124260, subdivision (c) contains a nearly identical provision for students 12 years and older, except that it also requires the professional person to consult with a minor before determining that parental involvement is inappropriate.

73.     Thus, rather than providing *prohibitions* on disclosure, these sections only *permit* non-disclosure if the counselor concludes disclosure would be appropriate.

74.     Education Code section 49602 states that personal information disclosed by a student "in the process of receiving counseling from a school counselor . . . is confidential." However, Education Code section 49602, subdivision (c)—the subdivision cited in Policy 5020.1—*permits* counselors to "[r]eport[] information to the principal or parents of the pupil when the school counselor has reasonable cause to believe that disclosure is necessary to avert a clear and present danger to the health, safety, or welfare of the pupil" or "other school community members."

75.   Article 2.5 of the Child Abuse and Neglect Reporting Act (CANRA) simply requires school personnel to report known or suspected child abuse to a Child Welfare Agency or a police department; it does not require a school staff member to withhold a student's transgender identity, even if the staff member knows that disclosure could cause harm to the student.

76.   Finally, Policy 5020.1 states that "[n]othing in this policy affects the obligations of the District's employees . . . under . . . District Policy 5141 and Administrative Regulation[] 5141.4(a)." But neither address student privacy or otherwise create an exemption to Policy 5020.1's forced disclosure rule.

77.   Chino Valley Administrative Regulation 5141.4(a) simply reiterates school personnel's mandatory reporting obligations under CANRA. And Policy 5141 enumerates steps schools will take to provide "first aid and/or medical attention" in an emergency, noting that "parents/guardians are notified as appropriate" whenever an accident or injury occurs.

**D.   The Attorney General's Investigation of Policy 5020.1**

78.   On August 4, 2023, the Department of Justice (DOJ) began an investigation to determine the legality and effect of Policy 5020.1's forced disclosure provisions pursuant to Government Code section 11180 et seq. The District was notified of the opening of the investigation that same day.

79.   Under Government Code section 11181, subdivision (h), the DOJ may "[p]resent information or evidence obtained or developed from the investigation of unlawful activity to a court . . . in connection with any action or proceeding."

80.   During the investigation, the DOJ interviewed or communicated with current District counsel, the District Superintendent, students, parents, teachers, and community members regarding Policy 5020.1 and its effects, and received documents responsive to subpoenas.

81.   DOJ learned that counsel for the District provided a training and PowerPoint presentation to school administrators across the District on July 19, 2023. In that training, counsel referenced California's right to privacy (Cal. Const., art. I, § 1), the right to safe schools (Cal. Const., art I, § 28, subd. (f)), Education Code section 49602, and Penal Code section 11165.7 as

"legal issues with respect to parental notification." Counsel also acknowledged the recommendations provided in the California Department of Education's statewide guidance.

82.    At that training, district Superintendent Dr. Norm Enfield told administrators that there were no other trainings planned, but that administrators were to train school staff about Policy 5020.1 in staff training immediately prior to the first day of school on August 7, 2023.

83.    On August 4, 2023, teachers in at least one school in the District attended training from a school administrator regarding the District's Policy 5020.1.

84.    In an August 4 training at one school, a principal informed teachers that after the school disclosed the student's gender identity to the student's parents or guardians, the school principal would arrange a meeting between the principal, the student, and the student's parents or guardians. The principal also told teachers that the principal would "call the child out of class," inform the student of "what was going to happen," and attempt to persuade the student to "walk it back"—i.e., to disclaim their gender identity—before the meeting.

85.    When a teacher asked for clarification in that training about when a "name" change would trigger the forced disclosure, the principal stated that the forced disclosure would occur only if the teacher received a request for a name change that the teacher believed was "gender connected."

86.    During that training, the principal informed teachers that if they did not report a student's name, gender, or bathroom request to the school administration, it will be "an HR issue."

87.    The principal also told teachers not to bring up the policy in their classrooms to avoid students getting "fired up," warning that if teachers did raise it with students, the teachers would find themselves in an "awkward, uncomfortable position."

88.    Several teachers in the District have also informed DOJ that school personnel have already disclosed several students' gender identities to their parents or guardians without the students' consent, and have observed that these students have experienced emotional, physical, or mental harm following the forced disclosure.

89.   One teacher reported that one of his students was outed, against her wishes, within the first two days of schools, leaving her in tears.

90.   Multiple teachers have described how Policy 5020.1's forced disclosure provisions have created an environment of fear that has substantially harmed their students.

91.   One teacher shared that, since the enactment of Policy 5020.1, LGBTQ+ students are having hushed conversations about "which teacher is safe" and "which teacher might report them."

92.   A second teacher observed "significant change" in students at his high school. As the faculty liaison for the student-run LGBTQ+ club, this teacher had in previous years seen students expressing their gender identity and other parts of their personality "openly," with "enthusiasm," "energy and excitement." After Policy 5020.1, students are "withdrawn" and "no longer . . . speaking up" about "LGBTQ+ rights."

93.   One student, Jordan,[5] informed a teacher that, following the enactment of Policy 5020.1, "I feel like I'm not wanted." He expressed fear that his teacher will be forced to out him to his parents, as Jordan had a parent hostile toward the LGBTQ+ community who had "an aggressive personality"; Jordan "did not feel safe" if his gender identity was disclosed.

94.   A former educator and parent of current students in the District spoke numerous times with Morgan, a current District student who expressed fear of severe physical or emotional harm that Policy 5020.1 would cause him.

95.   Morgan had participated in his school's "Gender Support Plan"—which provided accommodations for his gender identity at school—but became fearful enough that he asked the former educator whether he should delete their support plan and all the accommodations included to avoid the even greater harm that would be caused by forced disclosure.

96.   Chris, a current student in the District who prefers they/them pronouns, confirmed the harms that students experienced when they (the students) felt unsafe and unable to openly share their gender identity with faculty. Chris noted that when a teacher refused to recognize their (Chris's) gender identity, it caused them to withdraw completely from participating at all in class.

_____

[5] Students are referred to by pseudonyms herein to protect their privacy and safety.

97.     Chris was in attendance at the District's July 20 Board meeting, and when they heard the comments made by Board members, after several queer or transgender students had made their presence known during public comment—comments calling transgender identity a "delusion" or "mental illness"—Chris felt that the Board member "was speaking to us, the trans kids in the audience. . . . like he wanted us to know that we were an illness that needed to be cured. That we needed to be exterminated."

98.     The Board's policy and its statements made Chris feel physically threatened.

99.     Another transgender student in the District informed Chris that though this student usually asks teachers to call them by a gender-affirming nickname, the student was too afraid to do so this year due to the policy, and was "struggling with depression and anxiety."

100.    Chris affirmed how "extremely draining" it was to hide their identity. Chris stated, "No kid wants to have to waste time that could be spent finishing their homework to attend a Board meeting to fight for their right to exist. . . . We don't deserve to be shoved back in the closet, forever afraid to express who we are."

101.    The Rainbow Youth Project, an LGBTQ+ organization working in Chino Valley, established a crisis hotline to collect reports related to the enactment of Policy 5020.1. Between August 5 and 23, 2023, the Rainbow Youth Project's case management and crisis teams answered 61 communications specifically from San Bernardino County, as reported by the individual callers utilizing the hotline number designed for reports regarding Policy 5020.1.

102.    Of the communications about Policy 5020.1's forced disclosure provisions to Rainbow Youth Project: 58 contacts reported a desire to relocate to a different school district; 54 contacts sought resources regarding rights and procedures under federal antidiscrimination law; 26 contacts screened positive for anxiety; 17 contacts screened positive for isolation; and one contact expressed thoughts of self-harm and/or suicidal ideation that pre-dated the adoption of Policy 5020.1 but were exacerbated by the adoption of Policy 5020.1. The individual expressing thoughts of self-harm was referred to mental health counseling.

103. Our Schools USA, another organization working in Chino Valley, has informed DOJ of additional reports of current students who have experienced harm or who reasonably fear harm as a result of Policy 5020.1's forced disclosures.

104. During its investigation, counsel for the District represented that the District was in the process of drafting an Administrative Regulation related to Policy 5020.1, to be presented for consideration at the Board's September 7, 2023 meeting.

105. On August 14, 2023, the Attorney General served a letter on the District requesting the District halt implementation or enforcement of Policy 5020.1 until after the District adopted and promulgated Administrative Regulations related to Policy 5020.1.

106. On August 18, 2023, counsel for the District stated that the District rejected the Department of Justice's request.

107. On August 18, the District provided a production of records that included a draft Administrative Regulation 5020.1. The draft Administrative Regulation reiterates the forced disclosure provision of Policy 5020.1 and adds that following a forced disclosure, the principal or other individual will contact the Coordinator of Equity, Diversity, and Support system to facilitate a student plan.

108. Investigating the District's policy, to date, the DOJ has found that Policy 5020.1 has already resulted in forced disclosures of students' gender identity during the first two weeks of school, causing harm, and that the Policy imminently threatens further severe, irreparable physical, emotional, and psychological harm to students.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(Violation of California Constitution, Article I, section 7)**

109. Plaintiff realleges all paragraphs set forth above and incorporates them by reference as though they were fully set forth in this cause of action.

110. Under the California Constitution, Article I, section 7, sex is a suspect classification. (See *Catholic Charities of Sacramento, Inc. v. Super. Ct.* (2004) 32 Cal.4th 527, 564; *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 17-20.) So too is sexual orientation: gay and lesbian people

18

constitute a protected class for equal protection purposes, because—like racial minorities and women—they have been subject to invidious treatment unrelated to their ability to contribute to society. (*In re Marriage Cases* (2008) 43 Cal.4th 757, 843-844.) It follows that gender identity is a suspect classification as well.

111.   Following an investigation carried out pursuant to his authority as the state's chief law officer and pursuant to Government Code section 11180 et seq., the Attorney General has determined that Defendant has violated the California Constitution, Article 1, section 7, by subjecting transgender and gender nonconforming students in the District to expressly discriminatory treatment, through passage and implementation of Policy's 5020.1's forced disclosure provisions.

112.   The District's passage and implementation of Policy 5020.1's forced disclosure provisions violate the California Constitution, Article 1, section 7, by subjecting transgender and gender nonconforming students in the District to expressly discriminatory treatment.

113.   The District has no compelling interest for singling out transgender and gender nonconforming students to different and unfavorable treatment, and the forced disclosure provisions are neither necessary nor narrowly tailored.

114.   Due to Defendant's violations of the California Constitution, declaratory and injunctive relief is an appropriate remedy.

**SECOND CAUSE OF ACTION**

**(Violation of Education Code sections 200 et seq.)**

115.   Plaintiff realleges all paragraphs set forth above and incorporates them by reference as though they were fully set forth in this cause of action.

116.   Education Code section 200 states, in pertinent part, that "[i]t is the policy of the State of California to afford all persons in public schools, regardless of their . . . gender, gender identity, [or] gender expression . . . equal rights, and opportunities in the educational institutions of the state." It adds that "[t]he purpose of this chapter is to prohibit acts that are contrary to that policy and to provide remedies therefor."

117.   Education Code section 220 implements that policy by prohibiting discrimination based on gender, gender identity, and gender expression in state-funded programs and activities: "No person shall be subjected to discrimination on the basis of . . . gender, gender identity, [or] gender expression . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid."

118.   Following an investigation carried out pursuant to his authority as the State's chief law officer and Government Code section 11180 et seq., the Attorney General has determined that Defendant receives state funding and has violated Education Code section 200 et seq. by subjecting transgender and gender nonconforming students to discrimination.

119.   Defendant's Policy 5020.1's forced disclosure provisions discriminate against transgender and gender nonconforming students on the basis of their gender identity and expression by singling them out for unfavorable treatment.

120.   Due to Defendant's violations of Education Code sections 200 et seq., and their implementing regulations, declaratory and injunctive relief is an appropriate remedy.

## THIRD CAUSE OF ACTION
### (Violation of Government Code section 11135)

121.   Plaintiff realleges all paragraphs set forth above and incorporates them by reference as though they were fully set forth in this cause of action.

122.   Government Code section 11135 prohibits discrimination based on sexual orientation or sex—which is defined to include gender and gender expression—in state-funded programs and activities, including prohibiting unlawful denial of full and equal access to the benefits of and unlawful discrimination under any such program or activity receiving funding or financial assistance from the State.

123.   Following an investigation carried out pursuant to his authority as the State's chief law officer, the Attorney General has determined that Defendant has violated Government Code section 11135 by unlawfully subjecting transgender and gender nonconforming students in the District to discrimination while receiving funds from the State.

124. Defendant's Policy 5020.1's forced disclosure provisions violate Government Code section 11135 because they unlawfully subject transgender and gender nonconforming students in the District to discrimination while receiving funds from the State.

125. Due to Defendant's violations of Government Code section 11135, declaratory and injunctive relief is an appropriate remedy.

**FOURTH CAUSE OF ACTION**

**(Violation of California Constitution, Article I, section 1)**

126. Plaintiff realleges all paragraphs set forth above and incorporates them by reference as though they were fully set forth in this cause of action.

127. Following an investigation carried out pursuant to his authority as the State's chief law officer, the Attorney General has determined that Defendant has violated the California Constitution, Article 1, section 1, by infringing on the privacy interests of transgender and gender nonconforming students, without the compelling interest necessary to overcome the privacy interests of those students, and because there are feasible and effective alternatives which have a lesser intrusion upon students' autonomy.

128. Defendant's Policy 5020.1's forced disclosure provisions violate the California Constitution, Article 1, section 1, by infringing on the privacy interests of its transgender and gender nonconforming students, without the compelling interest necessary to overcome the privacy interests of those students, and because there are feasible and effective alternatives which have a lesser intrusion upon students' autonomy.

129. Due to Defendant's violations of the California Constitution, declaratory and injunctive relief is an appropriate remedy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the Court to enter judgment as follows:

130. Issue a declaration that Policy 5020.1's forced disclosure provisions are unconstitutional under the California Constitution and/or violates State law;

131. Issue a temporary restraining order and preliminary injunction prohibiting Defendant, until the resolution of this case, from implementing the following provisions of Policy 5020.1:

  a. subdivisions 1(a) and 1(b) of the Policy in full;

  b. subdivision 1(c) of the Policy, insofar as it applies to transgender or gender nonconforming students' requests to change their name, pronouns, sex, or gender on unofficial records; and

  c. subdivision 5 of the Policy, insofar as it applies to transgender or gender nonconforming students (i) requesting to be treated as a gender other than the student's biological sex or gender listed on the student's birth certificate or any other official records or (ii) accessing sex-segregated school programs or activities that do not align with the student's biological sex or gender listed on the student's birth certificate or any other official records;

132. Issue an order permanently enjoining Defendant from implementing the following provisions of Policy 5020.1:

  a. subdivisions 1(a) and 1(b) of the Policy in full;

  b. subdivision 1(c) of the Policy, insofar as it applies to transgender or gender nonconforming students' requests to change their name, pronouns, sex, or gender on unofficial records; and

  c. subdivision 5 of the Policy, insofar as it applies to transgender or gender nonconforming students (i) requesting to be treated as a gender other than the student's biological sex or gender listed on the student's birth certificate or any other official records or (ii) accessing sex-segregated school programs or activities that do not align with the student's biological sex or gender listed on the student's birth certificate or any other official records;

133. Issue an order entering final judgment;

134. Award reasonable attorneys' fees and costs of suit as permitted by law; and

For such other and further relief as the Court deems just and proper.

Complaint for Declaratory and Injunctive Relief

1  Dated: August 28, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ROB BONTA
Attorney General of CaliforniaMICHAEL L.
NEWMAN
Senior Assistant Attorney General
LAURA L. FAER
JAMES F. ZAHRADKA II
Supervising Deputy Attorneys General
EDWARD NUGENT
GARY D. ROWE
ALEXANDER SIMPSON
XIYUN YANG
Deputy Attorneys General


*Delbert Tran*

DELBERT TRAN
Deputy Attorney General

23

Complaint for Declaratory and Injunctive Relief

**EXHIBIT C**



**Subscribe to Our Newsletter**    Enter your    Subscribe



# ROB BONTA
*Attorney General*

# Attorney General Bonta Urges Chino Valley Unified School District to Safeguard Student Privacy, Autonomy Amid Proposed Parental Notification Policy Impacting Gender Identity

Press Release    /  *Attorney General Bonta Urges Chino Valley Unified School Dis…*

Thursday, July 20, 2023

Contact: (916) 210-6000, agpressoffice@doj.ca.gov

**OAKLAND** – California Attorney General Rob Bonta today issued a statement urging the Chino Valley Unified School District (CVUSD) to prioritize protecting student privacy. In an urgent letter sent to Superintendent Norman Enfield and the Board of Education, Attorney General Bonta expressed serious concern over the proposed Parental Notification policy, emphasizing the potential

infringements on students' privacy rights and educational opportunities. The Attorney General's office is committed to protecting the rights and well-being of students in California schools.

"The protection of every student's privacy and safety is of utmost importance, and that includes protecting their right to choose when, how, and with whom they share their gender identity. That is a personal decision for them, and them alone," **said Attorney General Bonta**. "By allowing for the disclosure of a student's gender identity without their consent, Chino Valley Unified School District's suggested Parental Notification policy would strip them of their freedom, violate their autonomy, and potentially put them in a harmful situation. Our schools should be protecting the rights of all students, especially those who are most vulnerable, and should be safeguarding students' rights to fully participate in all educational and extracurricular opportunities. I strongly encourage CVUSD to prioritize the rights and privacy of all their students."

The proposed policy is up for consideration tonight at the CVUSD Board of Education meeting. If approved, it would require schools to inform parents, without exception, if a student wants to use a name or pronoun different from what's on their birth certificate or official records. It would also require notification if a student wants to use facilities or participate in programs that don't match their gender on official records or if a student wants to change any information in their school records.

In the letter, Attorney General Bonta calls on CVUSD to fulfill its weighty responsibility as educators to create an inclusive and safe environment for all students. Additionally, the letter underlines that decisions about gender identity

are deeply personal and should be handled with sensitivity, allowing students to make their own choices regarding when and how to disclose their identities to their parents. Furthermore, this proposed mandate demonstrates a reckless disregard for the real-world dangers some children may face at home. Any child harmed following such a mandatory parental notification could lead to potential liability for the school district.

A copy of the letter can be found here.

# # #



State of California
# Office of the Attorney General

## ROB BONTA
### ATTORNEY GENERAL

July 20, 2023

**VIA U.S. MAIL & EMAIL**

Dr. Norman Enfield, Superintendent
Members, Board of Education
Chino Valley Unified School District
5130 Riverside Drive
Chino, CA 91710

RE: <u>Item II.A.1 on July 20, 2023 Agenda -- "New Board Policy 5020.1 – Parental
Notification"</u>

Dear Superintendent Enfield and Members of the Chino Valley School Board:

 I write to share my serious concern regarding the proposed "New Board Policy
5020.1 – Parental Notification" scheduled for consideration on the agenda for the July 20
meeting of the Chino Valley Unified School District ("CVUSD") Board of Education. The
policy would, if enacted, require school officials to notify parents, without exception,
whenever: (1) a student requests to use a name or pronoun other than those listed on the student's birth
certificate or in official records; (2) a student requests to participate in programs or to use
facilities that do not align with the gender stated in these records; or (3) when a student requests
to change any information in their official or unofficial school records. (Item II.A.1,
July 20, 2023 agenda, New Board Policy 5020.1—Parental Notification.)

 As the California Department of Education has instructed, "Disclosing that a student is
transgender without the student's permission may violate California's antidiscrimination law by
increasing the student's vulnerability to harassment and may violate the student's right to
privacy."[1] Courts have recognized that gender identity is a protected privacy right under the
California and U.S. Constitutions. (See *Whalen v. Roe* (1997) 429 U.S. 589, 598–600 (avoiding
disclosure of personal matters is constitutionally protected); see also Cal. Const. art. I, § 1
(listing privacy as an inalienable right).) Transgender identity is an "excruciatingly private and
intimate" detail about oneself and is thus protected by the right to privacy. (*Powell v. Schriver*
(2d Cir. 1999) 175 F.3d 107, 111–112.) And students do not waive their reasonable expectation

---

[1] Cal. Dep't of Educ., Frequently Asked Questions, https://tinyurl.com/y54447xf

Superintendent Enfield and Members of the Chino Valley School Board
July 20, 2023
Page 2

of privacy simply by expressing their gender identity in school. (*C.N. v. Wolf* (C.D. Cal. 2005) 410 F.Supp.2d 894, 903 (holding that student had reasonable expectation of privacy in their sexuality, despite expressing their sexual orientation in school, protecting their sexuality from disclosure to their parents).) Infringements on privacy rights can only be justified by compelling state interests and must be narrowly tailored to serve those interests. (*Lopez-Valenzuela v. Arpaio* (9th Cir. 2014) 770 F.3d 772, 780.)

In addition to infringing upon student privacy, forced "outing" of students to their parents is very likely to result in significant emotional, mental, and even physical harm and subject students to discriminatory harassment. There are numerous applications of this policy that could violate the law, including: (1) where parents have threatened to harm the student if the student identifies as a gender different from the one assigned at birth,[2] and (2) when a student's family relationships are so fraught that the student expresses a significant likelihood that they may commit self-harm or suicide if their gender identity was disclosed to their parents.[3]

Recognizing the significant harms that transgender students may suffer from being "outed" to their parents against their will, the California Department of Education recommends that schools "consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family." The California Department of Education further instructs, "schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents," subject to "rare exceptions."[4] The guidelines recommend disclosure of a student's status to parents only in "those very rare circumstances where a school believes there is a specific and compelling 'need to know'" and that the school give the student advance notice before informing the parents.[5]  Board Policy 5020.1 contradicts this guidance in almost every respect.

---

[2] *Cf.* Stacy Chen, *Oklahoma School Shuts Down for 2 Days After Parents Threaten Transgender 7th Grader*, ABC News (Aug. 15, 2018), https://tinyurl.com/43ek5z28.
[3] *See* Ashley Austin et al., *Suicidality Among Transgender Youth: Elucidating the Role of Interpersonal Risk Factors*, 37 J. Interpersonal Violence 5 (2020).
[4] Cal. Dep't of Educ., Frequently Asked Questions, https://tinyurl.com/y54447xf; *see also* Cal. Dep't of Educ., Legal Advisory, https://tinyurl.com/3unt8xds (citing FAQ).
[5] *Id.*

Superintendent Enfield and Members of the Chino Valley School Board
July 20, 2023
Page 3

My office has a substantial interest in protecting the legal rights of children in California schools and protecting such children from trauma and exposure to violence. I will not hesitate to take action as appropriate to vigorously protect students' civil rights.

Sincerely,

ROB BONTA
Attorney General

cc:    Tony Thurmond, California Superintendent of Public Instruction

**EXHIBIT D**



**California Department of Education**
**News Release**

Release: #23-55                                    Contact: Communications
July 21, 2023                                      E-mail: communications@cde.ca.gov
                                                   Phone: 916-319-0818

# ICYMI: State Superintendent Tony Thurmond Forcibly Removed from CVUSD Board Meeting for Taking Stand to Protect LGBTQ Students from Forced "Outing"

CHINO—State Superintendent of Public Instruction Tony Thurmond was invited by students and traveled to Chino Valley Unified School District (CVUSD) on Thursday, July 20, to speak against a policy before the board that would out an LGBTQ+ student to their parents even if the student is not yet ready to share that information. Students had reached out to the Superintendent to request help due to feeling bullied and mistreated. Thurmond took the mic to oppose the policy as antithetical to how trans students should be supported in our schools. His remarks were abruptly interrupted, and he was berated by the CVUSD Board President and then forcibly escorted out of the meeting by security.

After the meeting, Thurmond shared with reporters: "The actions of this board are deeply troubling—and I'm not talking about being thrown out of a public meeting—I am talking about the blatant disregard for student privacy and safety. Forced outing policies harm everyone—students, parents and guardians, families, and school staff. What CVUSD has done may be in violation of state law. We will be working closely with the State Attorney General's office to verify and enforce California law.

"Choosing when to come out and to whom is a deeply personal decision that every LGBTQ+ young person has the right to make for themselves. This policy is taking away a student's ability to seek comfort, safety, and security in our schools and from trusted adults and peers. As educators and education leaders, we should always be putting students first and doing all we can so they can learn and thrive."

Superintendent Thurmond noted that while some parents and guardians are advocates and allies, not all are or ever will be. Like all young people, LGBTQ+ youth have the right to decide when and how to share their personal details about who they are or who they love, including with their parents and guardians, families, friends, and others at school. LGBTQ+ youth and their parents—not politicians—should decide when to have these conversations.

Thurmond has been at the forefront of fighting for inclusive education for California students. He has fought for budget funding to secure 10,000 new mental health clinicians for California schools and has been actively working with the Legislature and Governor Gavin Newsom to pass Assembly Bill 1078 ⬀ (Jackson), legislation he is sponsoring that would impose fines on any school district that withholds books or instructional materials for discriminatory means. Recently, Thurmond secured commitments from textbook publishers to diversify instructional materials and work with his task force on inclusive education. He sent a joint letter with the Governor and Attorney General (DOCX) to local educational agencies cautioning against book bans and outlining legal mandates they are required to follow to preserve freedom and ensure access to diverse perspectives and curricula. The joint letter follows guidance issued from Thurmond's department addressing this topic.

On the legislative front this year, Thurmond is also sponsoring Senate Bill 760, All-Gender Restrooms (Newman), which requires all K–12 schools in California to provide appropriate and equitable access to all-gender restrooms for students to use during school hours, and Assembly Bill 5, The Safe and Supportive Schools Act (Zbur), which requires all K–12 schools in California to provide training to support LGBTQ+ pupils. Thurmond also hosted a ceremony on June 1, 2023, marking the first time the Progress Pride Flag was raised above the California Department of Education in honor of Pride Month.

# # # #

**Tony Thurmond — State Superintendent of Public Instruction**
**Communications Division, Room 5602, 916-319-0818, Fax 916-319-0100**

Last Reviewed: Friday, July 21, 2023

**CERTIFICATE OF SERVICE**

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***
USDC Court Case No.: 3:23-cv-00768-BEN-WVG

    I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

•    **Notice of Related Case in Support of Plaintiffs' Motion for a Preliminary Injunction, and in Opposition to the Defendants' Motions to Dismiss.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

| | |
|---|---|
| Thomas Prouty, Deputy General Counsel<br>Len Garfinkel<br>California Department of Education<br>1430 "N" Street, Suite 5319<br>Sacramento, CA 95814<br>Tel: 916-319-0860; Fax: 916-322-2549<br>E-Mail: tprouty@cde.ca.gov<br>E-Mail: lgarfinkel@cde.ca.gov<br>**Attorneys for CDE Defendants** | Daniel R. Shinoff, Esq.<br>Artiano Shinoff<br>3636 Fourth Avenue, Suite 200<br>San Diego, CA 92103<br>Tel: 619-232-3122<br>E-Mail: Dshinoff@as7law.com<br>E-Mail: nlay@as7law.com<br>**Attorneys for EUSD Defendants** |

_____  **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__  **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__  **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

    I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

    Executed on August 29, 2023, at Rancho Santa Fe, California.

Kathy Denworth