Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>        Defendants. | Case No.: 3:23-cv-0768-BEN-WVG<br><br>**Third Notice of Supplemental Authority in Support of Plaintiffs' Motion for a Preliminary Injunction, and in Opposition to the Motions to Dismiss**<br><br>Judge:          Hon. Roger T. Benitez<br>Courtroom:   5A<br>Hearing Date:  August 30, 2023<br>Hearing Time:  10:00 a.m. |

## THIRD NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs Elizabeth Mirabelli and Lori Ann West bring to this Court's attention supplemental authority in support of their motion for a preliminary injunction (ECF No. 5) and their opposition to the motions to dismiss (ECF Nos. 17 & 25).

## I. *People of the State of California v. Chino Valley Unified School District*, No. CIVSB2317301 (Cal. Super. Ct., Sep. 6, 2023)

On September 6, 2023, San Bernardino County Superior Court Judge Thomas S. Garza issued a temporary restraining order, in an action brought by California Attorney General Rob Bonta, precluding the Chino Valley Unified School District from implementing a Board Policy that notifies parents if their children request to be treated as a gender incongruent with their sex, or request to use opposite-sex facilities. *See* Ex. A. With respect to the TRO itself, the trial court signed California's proposed order without substantive modification. *Id*. However, the corresponding Minute Order notes that "[f]indings stated on the record by the Court." *See* Ex. B. Thus, Plaintiffs also submit the transcript of the hearing. *See* Ex. C at pp.12:21-14:11, 27:19-29:20. The Order to Show Cause hearing on a preliminary injunction is set for Friday, October 13, 2023.

The Superior Court's order, of course, has no precedential value. *See* 9 Bernard E. Witkin, *California Procedure* § 507 (6th ed. 2023). This is especially the case with respect to a temporary restraining order, which is not a merits-based adjudication. *Compare* Ex. C at pp.27:25-26, 29:10-11 (Judge Garza: "Based on what is before me at this time," and "out of an abundance of caution, I'm going to grant the TRO"); *with Landmark Holding Grp., Inc. v. Superior Ct.*, 193 Cal. App. 3d 525, 528 (1987) ("All that is determined is whether the TRO is necessary to maintain the status quo pending the noticed hearing on the application for preliminary injunction.").

However, the fact that the State of California sought and obtained a temporary restraining order against a school district in this context establishes: (1) that, contrary to their position in this case, they are effectively enforcing their "non-binding"

guidance; and (2) that the CDE Defendants are therefore necessary parties in this action. *See, e.g.,* ECF No. 28 at § III, pp.13-20 (discussing how CDE has withheld funding on unilateral determination that school districts were violating gender identity anti-discrimination laws); ECF No. 36 at Ex. D, p.42 (with respect to Chino Valley Unified School District, CDE stating: "We will be working closely with the State Attorney General's office to verify and enforce California law.").

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: September 11, 2023       By: _____

Charles S. LiMandri
Paul M. Jonna
Mark D. Myers
Jeffrey M. Trissell
Milan L. Brandon II
Attorneys for Plaintiffs

THIRD NOTICE OF SUPP. AUTHORITY ISO PLAINTIFFS'
MOTION FOR A PRELIM. INJ. & OPPOSING THE MOTIONS TO DISMISS

**EXHIBIT A**

1   ROB BONTA
    Attorney General of California
2   MICHAEL L. NEWMAN
    Senior Assistant Attorney General
3   LAURA L. FAER (SBN 233846)
    JAMES F. ZAHRADKA II (SBN 196822)
4   Supervising Deputy Attorneys General
    EDWARD NUGENT (SBN 330479)
5   GARY D. ROWE (SBN 165453)
    ALEXANDER SIMPSON (SBN 235533)
6   XIYUN YANG (SBN 315187)
    DELBERT TRAN (SBN 323993)
7   Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
8   San Francisco, CA 94102-7004
    Telephone: (415) 229-0110
9   E-mail: Delbert.Tran@doj.ca.gov
    *Attorneys for* The People of the State of California

*Fee Exempt Pursuant to Government Code § 6103*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

SEP 06 2023

BY _____
        DEBRA PEDROSA, DEPUTY

10   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11   **COUNTY OF SAN BERNARDINO**

12

13

14   THE PEOPLE OF THE STATE OF
     CALIFORNIA, EX REL. ROB BONTA,
15   ATTORNEY GENERAL OF THE STATE
     OF CALIFORNIA,
16
                                    Plaintiff,
17
          v.
18
19   CHINO VALLEY UNIFIED SCHOOL
     DISTRICT,
20
                                    Defendant.
21
22
23

Case No.    CIV SB   2 3 1 7 3 0 1

[PROPOSED] TEMPORARY
RESTRAINING ORDER; [PROPOSED]
ORDER TO SHOW CAUSE RE:
PRELIMINARY INJUNCTION;
[PROPOSED] ORDER GRANTING
APPLICATION TO SEAL OR REDACT
DECLARATIONS AND LEAVE TO FILE
DECLARATION UNDER PSEUDONYM

Date: 9/6/2023
Time: 8:30 a.m.
Dept: S 2 7
Judge: Hon. Thomas Garza
Trial Date:
Action Filed: 8/28/2023

24        Based upon the Court's review of the People of the State of California's Ex Parte

25   Application for Temporary Restraining Order and Order to Show Cause re: Preliminary

26   Injunction; the Memorandum of Points and Authorities in Support of Ex Parte Application for

27   Temporary Restraining Order (TRO) and Order to Show Cause (OSC) re Preliminary Injunction;

28

                                        1

1  the Request for Judicial Notice in Support of the Ex Parte Application for TRO and OSC re

2  Preliminary Injunction; the Memorandum of Points and Authorities in Support of Application to

3  Seal or Redact Declarations; the accompanying declarations and exhibits; and upon sufficient

4  cause being shown thereby, the Court hereby FINDS and ORDERS as follows:

5                                    **TEMPORARY RESTRAINING ORDER**

6         The Court finds Plaintiff, the People of the State of California, has demonstrated a

7  likelihood that it will prevail on the merits of its Complaint, and that the relative balance of harms

8  to both Plaintiff and Defendant require the Court to issue interim relief pending the determination

9  of the Order to Show Cause as to Why a Preliminary Injunction Should Not Issue Against

10  Defendant.

11         It is **FURTHER ORDERED** that, pending the hearing on the Order to Show Cause re:

12  Preliminary Injunction, Defendant and its agents, employees, assigns, and all persons acting in

13  concert with it are restrained and enjoined from adopting, implementing, enforcing, or otherwise

14  giving effect to: (1) CVUSD Board Policy 5020.1, subdivisions 1.(a) and (b) of the Policy in full;

15  (2) subdivision 1.(c) of the Policy, insofar as it applies to transgender or gender nonconforming

16  students' requests to change their name, pronouns, sex or gender on unofficial records; and (3)

17  subdivision 5 of the Policy, insofar as it applies to transgender or gender nonconforming students

18  (a) requesting to be treated as a gender other than the student's biological sex or gender listed on

19  the student's birth certificate or any other official records; or (b) accessing sex-segregated school

20  programs or activities that do not align with the student's biological sex or gender listed on the

21  student's birth certificate or any other official records.

22

23                                                          SO ORDERED.

24  Dated: 9/6/23

25                                                          Hon. **Thomas Garza**
                                                            San Bernardino Superior Court

26

27

28

2

**ORDER TO SHOW CAUSE**

It is hereby **ORDERED** that Defendant Chino Valley Unified School District (CVUSD) is ordered to show cause in writing ~~on or before September ___, 2023,~~ as to why a preliminary injunction should not issue restraining and enjoining Defendant and its agents, employees, assigns, and all persons acting in concert with it from adopting, implementing, enforcing, or otherwise giving effect to: (1) CVUSD Board Policy 5020.1, subdivisions 1.(a) and (b) of the Policy in full; (2) subdivision 1.(c) of the Policy, insofar as it applies to transgender or gender nonconforming students' requests to change their name, pronouns, sex or gender on unofficial records; and (3) subdivision 5 of the Policy, insofar as it applies to transgender or gender nonconforming students (a) requesting to be treated as a gender other than the student's biological sex or gender listed on the student's birth certificate or any other official records; or (b) accessing sex-segregated school programs or activities that do not align with the student's biological sex or gender listed on the student's birth certificate or any other official records.

Defendant is to file any papers in opposition ~~not later than~~ *according to local rules.* ~~, 2023.~~

The Attorney General is to file any reply papers not ~~later than~~ *according to local rules.* ~~, 2023.~~

Hearing on the Order to Show Cause re: Preliminary Injunction is hereby set for October 13 , 2023, in Department S27.

**SO ORDERED.**

Dated: 9/6/23

Hon. **Thomas Garza**
San Bernardino Superior Court

[Proposed] TRO; [Proposed] OSC re: Prelim. Inj.; [Proposed] Order Granting App. to Seal

1  ORDER GRANTING APPLICATION TO SEAL OR REDACT DECLARATIONS, AND

2  GRANTING LEAVE TO FILE DECLARATION UNDER PSEUDONYM

3      Having considered Plaintiff's Application to Seal or Redact Documents and to Submit

4  Declarations Using Pseudonyms, it is **ORDERED** that Plaintiff's Application is **GRANTED**: (1) the

5  unredacted declarations of Chris R., Andrea McFarland, Gregory Crow, and Kristi Hirst shall be

6  sealed; (2) the portions of the publicly filed versions of the declarations of Chris R., Andrea

7  McFarland, Gregory Crow, and Kristi Hirst describing minor students shall be redacted; and (3)

8  Plaintiff may use a pseudonym to submit the Declaration of Chris R. (a minor) in support of the

9  Attorney General's Ex Parte Application for Temporary Restraining Order and Order to Show Cause

10 Re: Preliminary Injunction.

11                                                    **SO ORDERED.**

12 Dated: 9/6/23

13                                                    Hon. **Thomas Garza**
                                                      San Bernardino Superior Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**EXHIBIT B**



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
**San Bernardino District**
**247 West 3rd St**
**San Bernardino, CA 92415**
**www.sb-court.org**

# PORTAL MINUTE ORDER

Case Number: CIVSB2317301                                                Date: 9/6/2023

Case Title:  **The People of the State of California, Ex Rel. et al**
**-v-**
**Chino Valley Unified School District**

| Department S27 - SBJC | Date: 9/6/2023 | Time: 8:30 AM | Ex Parte Hearing - Predisposition |
|---|---|---|---|

Judicial Officer: Thomas S Garza
Judicial Assistant: Debra Pedrosa
Court Reporter: Charlona Quidor
Court Attendant: Cesar Lepe

**Appearances**
Attorney Alexander Simpson, Attorney James F Zahradka II, Attorney Delbert K Tran present for Plaintiff Rob Bonta, The People of the State of California, Ex Rel.
Attorney Anthony P De Marco, Attorney William A Diedrich present for Defendant Chino Valley Unified School District

**Proceedings**
Stip and appointment of pro tem reporter filed
The People of the State of California, Ex Rel.'s Ex parte Application for temporary restraining order is heard.

Court finds notice of the hearing on ex parte application was given to the opposing party.
Ex parte application argued.

**Court Finds:**
The People of the State of California, Ex Rel.'s Ex parte Application for temporary restraining order is granted.
Findings stated on the record by the Court.

Order Filed Re: granting TRO; granting application to seal

**Hearings**
Order to Show Cause - Predisposition set for 10/13/2023 at 8:30 AM in Department S27 - SBJC
Preliminary Injunction

9:41 AM

== Minute Order Complete ==

**EXHIBIT C**

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                  FOR THE COUNTY OF SAN BERNARDINO
 3   DEPARTMENT S-27              HONORABLE THOMAS S. GARZA, JUDGE
 4    PEOPLE OF THE STATE OF        )
      CALIFORNIA, EX REL. ROB BONTA, )
 5    ATTORNEY GENERAL OF THE STATE OF )
      CALIFORNIA                    )
 6                                  )  Case No. CIVSB2317301
              Plaintiff,           )
 7                                  )
     -vs-                           )
 8                                  )
     CHINO VALLEY UNIFIED SCHOOL    )
 9   DISTRICT,                      )
                                    )
10            Defendant.            )
                                    )
11
                REPORTER'S TRANSCRIPT OF ORAL PROCEEDINGS
12
                   WEDNESDAY, SEPTEMBER 6TH, 2023
13
14   APPEARANCES:
15   FOR THE PLAINTIFF:          OFFICE OF THE ATTORNEY GENERAL
                                 BY:  DELBERT TRAN
16                               Deputy Attorney General
                                 455 Golden Gate Avenue
17                               Suite 11000
                                 San Francisco, CA 94102
18
                                 OFFICE OF THE ATTORNEY GENERAL
19                               BY:  ALEX SIMPSON
                                 Attorney at Law
20                               600 West Broadway
                                 Suite 1800
21                               San Diego, CA 92101
22
     FOR THE DEFENDANT:          ATKINSON & ANDELSON
23                               BY:  TONY DE MARCO & WILLIAM
                                 DIEDRICH
24                               Attorneys at Law
25
26
                                                     Page 1
```

```
 1            SAN BERNARDINO, CALIFORNIA; WEDNESDAY, SEPTEMBER 6TH, 2023

 2                            MORNING SESSION

 3    DEPARTMENT S-27                    HON. THOMAS S. GARZA, JUDGE

 4    APPEARANCES:

 5                 (DELBERT TRAN, Deputy Attorney General,

 6                 representing the Plaintiffs; ALEX

 7                 SIMPSON, Attorney at Law, representing

 8                 the Plaintiffs; TONY DE MARCO, Attorney

 9                 at Law, representing the Defendants;

10                 WILLIAM DIEDRICH, Attorney at Law,

11                 representing the Defendants.)

12                 (Charlona Quidor, Court Reporter, C.S.R.

13                 No. 13426.)

14

15            THE COURT:  People of the State of California versus

16    Chino Valley Unified School District.  Appearances please.

17            MR. TRAN:  Good morning.  Deputy Attorney General

18    Delbert Tran on behalf of the People of the State of

19    California.

20            THE COURT:  Good morning, Mr. Tran.

21            MR. SIMPSON:  Alex Simpson on behalf of the People of

22    the State of California.

23            THE COURT:  Good morning, Mr. Simpson.

24            MR. DE MARCO:  Tony De Marco of Atkinson and Andelson

25    on behalf of Chino Valley Unified School District.

26            THE COURT:  Good morning, Mr. De Marco.
```

Atkinson-Baker, A Veritext Company
(818) 551-7300                         www.veritext.com

```
1          MR. DIEDRICH:  William Diedrich of Atkinson and
2    Andelson on behalf of Chino Valley Unified School District.
3          THE COURT:  Mr. Diedrich, good morning to you.
4    Gentleman, if you wanted you're welcome to be seated.  I don't
5    intend to go too long with it.  In any event, Mr. De Marco,
6    Mr. Diedrich, as you may know, the plaintiff in this matter,
7    the People of the State of California have filed an ex-party
8    for relief seeking an injunction specifically as it relates to
9    Chino Valley Unified School District's policy 5020.1 regarding
10   disclosures on behalf of its students, and fortunately notice
11   was given as we have both of you gentleman here.  And I have a
12   nice phone book of an opposition to the plaintiff's ex-parte
13   hearing as well as a reply I received, counsel, that both of
14   which I have not fully read.  So I'll need you to help me in
15   summarizing some of your positions.
16          Continuing, in addition to the Court receiving this
17   request for ex-parte relief in the form of a temporary
18   restraining order and hopes of a preliminary injunction as well
19   as the complaint reflects some declaratory relief with respect
20   to this case.  The Court has also received, and hopefully
21   Mr. Diedrich and you Mr. De Marco have received plaintiff's
22   request for judicial notice and the declarations attended with
23   their motion together with this request for sealing or
24   confidentiality with respect to the case.  So all of those
25   issues are before the Court as well.  Understanding where we
26   are at this point the Court with respect to a temporary
```

Page 3

1   restraining order would be balancing the interest of both

2   parties and concern with the interest on behalf of each party

3   and what harm if any might be visited upon a granting of a

4   temporary restraining order.  With respect to the probability

5   of success, which is another meter of granting temporary

6   restraining orders based on what has been presented to the

7   Court thus far within the form of legal authority.  And I would

8   refer the parties to the following:  The Court has been

9   referenced in accordance with the complaint.  The California

10  Constitution specifically Article I Section 7, regarding equal

11  protection; Article I section 1, addressing rights of privacy;

12  Government Code Section 11135, regarding discrimination; and

13  Education Code Section 200 as well as 201, regarding the rights

14  of students in public schools.  Based on that understanding

15  that as far as I know at this point, there's no contention that

16  education is a fundamental right in California that hopefully

17  both parties are in agreement that they would want and seek

18  what is in the best interest of the students, and in that

19  respect would wish to avoid unsafe environments of

20  discrimination, abuse, and both physical as well as mental

21  harassment.

22      What this policy is as the Court understands it, appears

23  to intend is to have a mandatory duty on behalf of the Chino

24  Unified School District's teachers to disclose to the students'

25  parents whether or not in school the students identify

26  themselves differently than what their birth certificate may

Atkinson-Baker, A Veritext Company
(818) 551-7300                    www.veritext.com

```
1    disclose in terms of their gender or their gender identity.  In
2    that regard, that is where again the declarations upheld by the
3    Court with respect to what the plaintiff has provided in the
4    form of both teachers' declarations, students who have used
5    pseudo names for their protection and the concerns that while
6    it appears abundantly clear parents, have very important rights
7    on behalf of their children and safeguarding and protecting
8    their children, but nonetheless, the students have rights as
9    well.  And unfortunately, this is not a perfect world, and
10   whether or not the family at home is aware of these students
11   identifying as something different than what their birth
12   certificate may disclose is the concern that whether there's
13   simple disagreement or a lack of understanding at home.  It's
14   more than that.  Where there's also a concern of actual
15   physical violence for the parents as against some of their
16   children that they don't agree with that disclosure of a
17   change, and that's not even taking into account that what these
18   students have to encounter realistically at school with
19   bullying, which is an ongoing problem at many schools.  So
20   having said that since I've been able to read the moving
21   ex-parte, Mr. De Marco or Mr. Diedrich, what would you like the
22   Court to know in particular?  I have not had the opportunity to
23   get through all of your opposition.
24        MR. DE MARCO:  Your Honor, I'm sure you're looking
25   forward to it as well.  First of all, thank you for your
26   deliberate review of the moving papers.  I would submit our
```

Page 5

```
1    opposition is going to be educational as well.  It's a
2    complicated case, and the state has from the onset of this case
3    which was midweek last week been in a big hurry.  They wanted
4    us to be in trial on this TRO last Thursday.  The district is
5    requesting more time, a full hearing on the merits, a full
6    presentation in his honor explaining in depth with expert
7    testimony the critical role that not just teachers but
8    professional educators in general have in ensuring a safe
9    environment for students to push reset a little bit because the
10   moving papers in my humble opinion are a little bit off base
11   starting with the premise that parents are most likely going to
12   be harming students.  I think that's not where -- a place to
13   start.  We're talking about students, your Honor, not just
14   adults which some students are 18 and over, up to 21 years
15   depending on the services provided.  We're talking about
16   children who could be 4-and-a-half or 5 years old.  There's a
17   range from TK through 12th grade that this school district
18   serves, and the plaintiff the estate in this case is alleging
19   that there's a blanket right to privacy that applies equally
20   from age 4-and-a-half or 5 all the way to 12th grade.  And the
21   district respectfully disagrees.
22        The professional educators of Chino Unified really only
23   have one mission, and that is to benefit the educational
24   environment of their students.  Safety is a priority.  A warm
25   and nurturing environment is a priority, and parents are part
26   of that educational community.  When asserting this blanket
```

Page 6

```
 1   right to privacy that 4-and-a-half-year-olds, 5-years-olds all
 2   the way through 12th graders might have, the state forgets one
 3   compelling government interest which is making sure that
 4   parents' rights are also respected.  There's interveners in
 5   this case who I think are also filing documentation that
 6   explains the role of parents, but from the view of an educator,
 7   it's a team.  It's not separate and apart.
 8        When you read the legislative intent behind parents'
 9   rights, we go into detail in our brief, your Honor.  You'll
10   read that parents are fundamentally part of the education team,
11   and we're dealing with not private information anymore.  When
12   you read where policy 5020.1, mere conversations are not going
13   to trigger parent notification.  A student who goes to a
14   teacher and says I'm confused about my body.  I don't feel
15   comfortable with my body.  I might want to go by a different
16   name, change my pronouns.  That doesn't trigger a parent
17   notification.  Instead, it's only when that student says I want
18   to change my name.  I want everybody to call me by my chosen
19   name.  I want it to be perhaps bullying, an impairment of my
20   educational environment, if anyone uses my dead name which is
21   referred to by the name assigned by the parents.  They have
22   that right under state law, and we have to follow that.  When a
23   student says, I want access to segregated athletics.  I was
24   born as a boy; I identify as a girl.  I want to be on the
25   girls' volleyball team.  The state through the school district
26   has to follow that direction, and it's only when there's these
```

Page 7

Hearing Department
September 6, 2023

```
1    public over actions by the student that the parent notification
2    policy is triggered.
3         So in our brief, we go into detail about how many people
4    have to know about this transition in order for it to go well.
5    Teachers and other staff have to know.  Parent volunteers in
6    the classroom on a regular basis, and it is regular.  They have
7    to know.  Office staff have to know.  The district has a
8    dedicated coordinator who still assists with transition plans.
9    She's got a declaration in our responsive pleadings so many
10   people have to know all the way to the bus driver who has to
11   insure this safe learning environment for children.  Everybody
12   has to know about the gender transition, yet the state is going
13   to take the position that there is a blanket right to privacy
14   under the California Constitution.  Everybody in that school
15   community will know about this social transition except for the
16   parents if the state prevails on this TRO.  From the
17   perspective of professional educators, we need those parents.
18   We need those parents to be part of a successful transition.
19   We quote studies and law review articles on points.  They're
20   worth the full read, your Honor.  There's an incredible amount
21   of new law, new social science out there that's informing the
22   professional educators on how to do their job, and the experts
23   agree that parents need to be involved.
24        So hypothetically, if a student is transitioning and
25   says, I want to use the girls' locker room or the boys' locker
26   room, depending on the situation, I want a different name to be
```

Page  8

```
 1    used.  I want your protections.  I want to socially transition.
 2    I want a safe learning environment.  Under the parent
 3    notification policy, a professional educator, most likely the
 4    principle is going to call that parent and have a conversation
 5    with that parent and learn from that parent.  Is the parent
 6    supportive?  Does the parent already know?  Is there potential
 7    for harm or abuse in the school or in the home rather, and
 8    they're going to work with that parent to incorporate them into
 9    the social transition just like science says that they should.
10    In the event that the student expresses, I don't want you to
11    tell my dad.  He'll kill me.  This happens in the school
12    setting.  There's a mandated reporter requirement for all
13    school district staff.  If you form a reasonable belief of harm
14    or neglect within a home, you're required by law to report
15    that.  It's in the Penal Code.  It's a misdemeanor not to do
16    it.  It's a crime not to make that report.
17         The district has been very clear.  If there is a report
18    made because of a reasonable belief of abuse or neglect,
19    there's no parent notification.  The district has been clear
20    that if the information provided by the student is within a
21    counseling session, and the student's age 12 or older, there's
22    a counseling privilege in the education code.  That information
23    would not trigger a parent notification so when we get to the
24    competing rights that you referenced, your Honor, and you're
25    right on.  And this is exceedingly complicated.  The Fifth
26    Circuit is the only federal court that I've seen confronted
```

Page 9

1    head on.  It was in a 1983 case, section 1983 case, and the

2    Court says, when you're out publicly, you don't have that right

3    to privacy that you're claiming.  This wasn't confidential

4    information anymore.  It was public.  So when the school

5    district in that case told the parents about the sexual

6    orientation of the student, it didn't trigger section 1983, but

7    we have to get back to this balance.  This requires a

8    legislative fix.  It's unfair for your Honor to be in this

9    position.  It's unfair for the school district to be in this

10   position, and candidly when you read some of the guidance from

11   the State of California, it's not even fair to the California

12   Department of Education.  A lot of this was triggered.  It's a

13   wide revision to the policy.  Well, when state law education

14   code was changed to allow students and require schools to

15   recognize social transitions by using sex segregated

16   facilities, changing names, et cetera, there was guidance that

17   came out from the State of California.

18        Now, that statute had nothing to do with privacy

19   interest, yet in the guidance from the state, they put in there

20   right in the middle sandwiched between other information that

21   was addressed in the statutes that parents may not have the

22   right to know because it may violate the constitutional rights

23   to privacy.  When you take a deeper look at the law, your

24   Honor, you're going to see.  It's all over the map, but the one

25   thing that's obvious is there is no clear state law saying how

26   it applies.

                                                      Page 10

```
 1              So getting back to federal and state laws requiring
 2      parent involvement, the state right now is arguing that parents
 3      have absolutely no right to this information even though it's
 4      public, everywhere on campus.  We're not talking about a small
 5      group of friends who will know about this.  We're not talking
 6      about a student and a medical service provider.  We're talking
 7      about the entire school community has to be put on notice about
 8      this social transition.  Use the chosen name of the student.
 9      Don't mis-gender or mis-pronoun the student.  Everybody has to
10      know that or we risk a complaint for bullying, discrimination,
11      et cetera.  If a parent under state law, if a parent comes to
12      the campus and says I would like to look at the file for my
13      child, state and federal law require the school district to
14      comply with that request.  Within that file, if the student has
15      changed their name or their pronouns, there's going to be
16      records all over the place.  That's going to be in that
17      student's cumulative file.  If a parent asks to go into a
18      classroom, by law, state law, the parent has to be allowed into
19      the classroom.  It's because the state legislature when
20      actually probably promulgating a statute on point and said they
21      have that right in the state of California of being in the
22      classroom.  That means they're going to be in the classroom
23      with their student using a chosen name and being referred to by
24      their chosen pronouns.
25              So what the state is actually arguing is the school safe
26      guarantee that you refer to, the constitutional right to
```

Atkinson-Baker, A Veritext Company
(818) 551-7300                          www.veritext.com

```
1    privacy under the State Constitution can be overcome under
2    their argument by state laws allowing parents in the classroom
3    or state law allowing parents to review files.  If it is this
4    bright line, constitutional rule that the state is arguing it
5    is, then how can it be overcome by a parent's request to look
6    at records?  The fact of the matter is parents have a
7    fundamental right to be part of that education team, and in
8    Chino Valley Unified -- and your Honor, there's other school
9    districts adopting the same policy.
10            In Chino Valley Unified, the board has said, yes, we
11   agree with you that state guidance that was referred to that we
12   based our old policy on, we now realize that it's just guidance
13   and based on faulty premises.  We want to bring parents into
14   the social transition.  So the moving papers by the state, they
15   create this circular argument.  It's repeated in their reply
16   brief.  I'm referring to their reply brief that I read this
17   morning.  At page 7, they affirm that the state of California
18   and by the way, the Chino Valley Unified School District is an
19   arm of the state of California.  We have the same obligations
20   the states refer to.  The district and the state have an
21   obligation to protect the safety of students.  They call it in
22   essence a compelling state interest, and they say it's
23   discrimination for you to isolate transgender and
24   gender-nonconforming students.  But those are the students
25   we're trying to protect.  Those are the students we're trying
26   to make sure parents know about.  We can't actually protect
```

1    them without identifying them.  We can't incorporate those

2    parents, as the experts recommend, into the educational

3    environment and let them know about the social transition and

4    gauge whether there's a potential for harm in the house unless

5    we talk to them.  It's this circular argument because they have

6    really no evidence of discrimination.  If there was a

7    discrimination complaint, there's an administrative process to

8    investigate.  It's controlled by state law, and it can be

9    appealed all the way to the state of California.  They have no

10   evidence that parents are harming their students, Chino Valley

11   students when they're at home.  There's simply no evidence of

12   that, yet we're not allowed to talk about this with parents to

13   figure out if there's evidence of it.  It's frustrating for the

14   professional educators to be told they cannot incorporate

15   students in this one little aspect of a major transition in

16   that student's life.  I think I addressed everything that I

17   intended to address, your Honor.  We just categorically reject

18   the premise that because all parents are violent and are going

19   to abuse their children, we shouldn't be able to talk to any

20   parents without student consent.

21          THE COURT:  Thank you, Mr. De Marco.  Before I hear

22   from plaintiff, a couple of points I wanted to address briefly

23   that you've raised, and I think it's a matter of perspective.

24   Besides taking a different view of the same situation, I agree

25   with you, first of all, that this really is a legislative

26   matter that ultimately probably is going to have to be

Page 13

1    addressed one way or the other if not through higher courts or
2    as I've had it referred to another set of eyes of viewing
3    whatever decision I make today.  Be that as it may.  The
4    concern that I have in going back to some of the evidence that
5    has been provided to the Court thus far is with respect to the
6    July 20th, 2023 school board hearing, and in that regard,
7    understanding that each individual certainly including parents
8    and certainly including school board members have a right to
9    their opinions.  The concern of the terms I saw used in
10   reference to this policy are concerning to me.  For example,
11   there was reference by the school board at the meeting that
12   these students were under a delusion or suffering from a mental
13   illness.  There is no empirical evidence that reflects or has
14   been provided to the Court supporting that position for someone
15   identifying themselves as something different.  That's a
16   concern, and just taking the law that I have referred to that
17   was provided in the plaintiff's complaint and applying what
18   expressly reflects gender identity, transgender, all the
19   different categories that we have with the LGBTQ categories
20   that first, I don't know what the purpose of this policy is.
21   That's not addressed.  I don't know why this policy came up to
22   single out this class of individuals.  That's one concern.
23   Also, what does this policy advance for the educational
24   pursuits of its students?  You've referenced some safety
25   issues, and I would agree with you not all parents are going to
26   be violent with their kids if they disagree with them.  But as

Page 14

Hearing on Defendant's
September 6, 2023

```
1    you've referenced while there is a mandatory duty on behalf of
2    educators to disclose if they observe first hand that students
3    have been injured and that's a medical issue.  And clearly
4    that's a problem.  Why do we have to go there to have there to
5    be intervention?  You're asking for these kids to expose
6    themselves and be at risk of physical and emotional harm before
7    there's intervention, and that's a concern.  And finally how
8    does this policy protect and safeguard the students?  That's
9    not addressed, and that's a further concern.  So those are some
10   thoughts I'll leave you with for now, Mr. De Marco.  Mr. Tran
11   or Mr. Simpson, would you like to be heard?
12             MR. TRAN:  Yes, your Honor.
13             THE COURT:  Please go ahead.
14             MR. TRAN:  This policy needs to be addressed now.  I
15   think the district has argued that more time needs to be had to
16   address the policy, but as your Honor understands, because
17   there's an order to show cause for a preliminary
18   injunction hearing that will give that full opportunity, the
19   reason why a temporary restraining order should issue now is
20   because the policy's forced disclosure provisions are already
21   harming students and will continue to harm students with each
22   day it remains in effect.
23        As Your Honor understands from the ex-parte application
24   materials, the declarations, and the evidences, students have
25   already been outed under the policy.  One teacher has already
26   testified that on August 4th a potential forced disclosure may
```

Page 15

```
 1   have already resulted in that mandatory reporting that your
 2   Honor just referenced that there may have already been physical
 3   harm caused by the policy, but in addition to the physical
 4   harms, there are two additional types of harm the policy
 5   causes.  It causes students to be afraid of the forced
 6   disclosure and withdraw and be unable to express themselves and
 7   their identity.  We appreciate the district's acknowledgment
 8   that it's important for students and the schools to participate
 9   in accomodation for these students, but the very effect of this
10   policy, as one teacher put it, was to make them go underground.
11   Multiple students have already reported that they are
12   considering deleting all gender identity accommodations because
13   they are afraid of the forced disclosure and even greater
14   consequences they will receive from it so by its own terms, the
15   district is undermining its intended aims to benefit these
16   students.  And the third harm is the stigma, the discriminatory
17   statements, and the effect of this policy.  In its text and its
18   context, this policy singles out transgender students and them
19   alone for this burden.
20        Now, the district referenced other needs such as
21   reporting bullying or affects that might injure students, but
22   other neutral policies that the school has already addresses
23   them.  Indeed within 5020.1, there are other provisions that
24   address reporting for bullying more generally, and if that's
25   the case, there's absolutely no need for this additional policy
26   that singles out just this particular class of students.
```

Page 16

```
 1            Now one thing I want to emphasize is that in their
 2      opposition papers, this district does not contend the equal
 3      protection violations that the people have pointed out.  They
 4      cannot defend because there is no defense for the statements
 5      that the board made on July 20th, the statements that your
 6      Honor referenced where a board member called transgender
 7      identity a delusion or mental illness, but in addition
 8      statements by the board president calling policies protecting
 9      students things that pervert them or a statement by the board
10      president saying that the policy was needed so that quote
11      non-affirming action should be given to these students or the
12      expressed statement of one board member who said that the
13      purpose of the policy was quote to put a stop to
14      transgenderism.  The board could not have made its intent
15      anymore clear.  This is a discriminatory policy that targets an
16      already marginalized group of students.
17            Further, the district raised the concern that this policy
18      is trying to benefit parents and actions of the school, but the
19      district's arguments create a false dichotomy.  This is not a
20      case about whether parents are informed or not informed.
21      Before the creation of the policy, there were numerous ways for
22      which policies and parents could be informed about their
23      students' transgender identities in which schools could partner
24      with the parents.  Before the existence of a policy, schools
25      could disclose this information to parents with the students'
26      consent.  Before the creation of the policy, schools could
```

Page 17

```
1    disclose this information to the parents even if the student
2    did not wish to do so if there was a compelling need to do so
3    in order to protect the students' wellbeing.  Before the
4    policy, students could bring this up to parents in the time and
5    matter they chose.  Before this policy, school personnel could
6    encourage students to bring this up with their parents in the
7    timely manner they chose, and before the creation of this
8    policy, schools create counseling and support services to allow
9    students to have the tools to initiate these conversations.
10       Indeed, Exhibit 5 of the request for judicial notice from
11   the People's papers show the preexisting policy already
12   provided support and counseling services for students who
13   wanted to initiate these conversations with their parents.  And
14   this policy was in effect for at least 6 years, and there was
15   no evidence of any harm to any student under the many ways in
16   which schools could partner with parents.  So this is a false
17   dichotomy to claim that the People are somehow asserting
18   absolute secrecy.  The previous policy already provided many
19   ways for which students and parents could work together.
20   `        Next, the district claims that there are limitations to
21   forced disclosure provisions, but those limitations are
22   contradicted by the clear text of those policies.  The district
23   claims, for instance, that informal conversations or requests
24   between the student and the teacher would not trigger mandatory
25   discloser.  That's not what the policy says.  The policy says
26   that forced disclosure is required when a school personnel
```

Page 18

```
1     quote becomes aware that a student is requesting to be treated
2     as a different gender identity; that includes informal
3     conversations in the classroom.  No matter the district's
4     representation, it's the rule of the policy and its text that
5     will affect how teachers behave.  And as already mentioned
6     before, it was already mentioned in these forced disclosures.
7          Now, as the district claims, they have claimed an
8     exception on their child abuse neglect reporting act, and as
9     your Honor pointed out, that provides no protection.  It
10    already exposes the student to that harm, and one student
11    harmed is already one student too many.  We cannot wait to act
12    after a fact when a disclosure has already resulted to
13    potential violence, and we want to be clear.  The People agree
14    that not all parents will harm their students.  But the sad
15    evidence shows that some may, and we cannot gamble for the
16    safety of our students.  As testified in the declaration of Dr.
17    Christine Brady, a Stanford Clinical Psychologist, 1 in 10
18    transgender individuals have experienced violence from
19    immediate family members, and nearly 1 in 6 have been kicked
20    out or forced to run away from their homes because they are
21    transgender.  Only 37 percent of LGBT youth in California found
22    their homes to be supportive environments.  As related studies
23    show, individuals who experience paternal rejection because of
24    their sexual orientation were 8 times more likely to have
25    suicidal thoughts.  The evidence is clear that this policy
26    exposes them to these great dangers, and that's a reality that
```

Page 19

```
1    students have testified to.  A declaration from a current
2    teacher pointed out that a student was afraid because a student
3    pointed out that their parent has expressed hostility towards
4    the LGBT community, had an aggressive personality.  In the
5    students own words, they did not feel safe.
6         Next, the district focuses on the privacy argument, but
7    if your Honor reviews Supreme Court decisions in Hill as well
8    as Lundgren, the Court's guidance there is very clear that
9    minors have a fundamental right to their core identity.  As
10   stated in Hill on page 30, the right to privacy protected in
11   our constitution protects the ability for individuals to
12   establish their identity.  It is the very being behind gender
13   identity, the very ability to express who they are.
14        Further, the district sites a Fifth Circuit case that is
15   simply not persuasive.  It addresses only the 14th Amendment
16   rights under the Federal Constitution, but as the California
17   Supreme Court explained in Lundgren, the California
18   Constitution goes further than the Federal Constitution in
19   protecting privacy.  It's expressly protected, and it goes
20   further than federal cases have.  The district also argues that
21   there's no expectation of privacy because students are asking
22   others at school to respect their gender identity, but as the
23   case sited by the People have pointed out the fact that one may
24   be public about one thing in one context does not render it a
25   lack of privacy in all context.  As the US Supreme Court
26   held in freedom of press as well as the California Supreme
```

Page 20

```
1    Court held in Hill, in Hill, the Court emphasized that people
2    play multiple social roles, and the right of privacy exists to
3    protect exposure to even those closest to them.  So the courts
4    have already addressed this issue, and they have already
5    recognized that parents have a privacy right especially when it
6    concerns something so important to them.
7            Finally, the district claims that there is no evidence of
8    discrimination, but as your Honor acknowledged, the evidence is
9    clear in the record.  We have statements from before us.  We
10   have the text of the policy, and we have the effects of that
11   policy upon these students.  As one student explained, the
12   effect of the policy is to shut them in the closet, forever
13   afraid to express who they are, and that undermines all the
14   goals the district claims they are seeking to achieve.  It
15   undermines the ability to recognize and provide accommodations
16   because students are no longer willing to be open about this.
17   As a teacher testified, the students in his LGBT club used to
18   be open about their identities.  They used to advocate for
19   LGBT, and they no longer do so with the passage of these laws.
20           I want to finally add that the district's reference to
21   the studies do not support their claims.  The studies they
22   refer to are actually the legislative findings on Education
23   Code 51101 which is a statute generally required parental
24   involvement in things like the student's progression in grades,
25   whether or not they need to be held back because of their
26   academic performance, and those studies only reference that
```

Page 21

```
 1    academic involvement and say nothing about the harms of forced
 2    disclosure due to gender identity.
 3         The board has simply provided no evidence to support this
 4    discriminatory policy, and the board's attempts to cast a
 5    benign interest behind it, simply fail under our constitutional
 6    scrutiny.  Under Connerly, the mere presentation of a benign
 7    interest is entitled to little or no weight.  There has to be
 8    evidence for it, and the school provided none.  The evidence
 9    here only shows harm to their students.  And for those reasons,
10    the Court should issue a temporary restraining order and issue
11    an order to show cause as to why preliminary injunction should
12    not issue against the forced disclosure provision.
13         THE COURT:  Thank you, Mr. Tran, and before I hear
14    further from Mr. De Marcos -- I'm sure he wishes to be heard,
15    and we do need to move along.  As I mentioned, we have a jury
16    trial that will be commencing before too long.  Mr. Tran,
17    understanding that you've raised some compelling points, most
18    of which the Court agrees with, yet as Mr. De Marco has pointed
19    out, we do have this somewhat of a catch-22 if the students
20    wish to be identified differently than perhaps their birth
21    certificate or their early life may have reflected.  If there
22    is truly this disclosure to all the different school personnel
23    that Mr. De Marco referenced to, how is it that the students
24    are going to be in a bubble so to speak on school campus and
25    then change their identity once they go somewhere else in terms
26    of the exposure?
```

Page 22

```
 1              MR. TRAN:  Your Honor, as Dr. Brady testified, this is
 2    a natural process in a student's understanding of their gender
 3    identity where most students actually in fact do eventually
 4    disclose their identities to their parents at the ages around
 5    20, but they need this space to be able to explore their
 6    identity without the fear of reprisal that might happen, to be
 7    able to have the vocabulary to engage their families and to do
 8    so in terms of their own choosing.  If your Honor is asking
 9    specifically about the reasonable expectation of privacy
10    required under Hill, again I think the Hill analysis looks at
11    the circumstances, and the Court in Lundgren specifically
12    rejected arguments that perhaps because parents might become
13    aware in one or two contexts that the privacy right is
14    overridden.  Here where the forced disclosure provision applies
15    regardless of whether a student is open to everyone at school,
16    regardless of whether they are open to one or two teachers at
17    school.
18              THE COURT:  Therein lies another concern.  What
19    oversight Mr. De Marco - And I'll let you make other points if
20    you wish -- is there expected to be and safeguards that
21    everyone is on board and is aware before there is contact to
22    the parents?
23              MR. DE MARCO:  Did you want me to address that now or
24    add that to the list?
25              THE COURT:  Add it to the list.  Anything else
26    Mr. Tran?
```

Page 23

1          MR. TRAN:  Yes, your Honor, we referenced the case, we

2    cited the Hill case.  There is multiple roles.  There's

3    paternal involvement in schools.  This is a case by case

4    analysis often, and the policy before the enactment of the

5    forced disclosure provision allowed for consideration of that.

6    As your Honor will both see from the text and the previous

7    policy in Exhibit 5, the request for judicial notice, that

8    previous policy allowed for that individualized assessment,

9    whereas the broad sweep of the policy here violates privacy as

10   explained in Lundgren.

11         THE COURT:  Very well.  Thank you.  Mr. De Marco,

12   you're up.

13         MR. DE MARCO:  Your Honor, this is not surprising to

14   you.  I had some differences of opinion with Mr. Tran.  I'm

15   going to need a minute.  I'll start where he left off.  The

16   Hill case doesn't support the state.  It doesn't.  They want it

17   to, but it doesn't.  And the Lundgren doesn't support the state

18   either.  They want it to, but they don't support their case

19   because those all deal with an individual trying to keep

20   something private.  And our board policy only affects students

21   that want official changes to their name and gender, to have

22   access to sex-segregated facilities, to play in sex-segregated

23   sports consistent with their gender identity.  There's nothing

24   confidential about it.  You're isolating parents and saying

25   you're the only people that are part of our education family

26   that we're not going to tell about this.

Page 24

1          THE COURT:  And aren't you presuming that all parents

2    are oblivious?

3          MR. DE MARCO:  Not at all, your Honor, not at all.  As

4    a matter of fact, this is not in any declaration, but I would

5    offer based on the information, there's been 15 instances so

6    far this school year of students making the commitment to the

7    social transition, telling administration at the school site

8    that they want to make the social transition.  The

9    administration provides the paternal notification required by

10   5020.1, the district's coordinator for 5020.1 among other

11   things, but Dr. Hunt gets involved in this process and

12   standardizes it throughout the district so that every student

13   speaking of the supports that exist, every student gets the

14   supports of the district office.  So this is not delegated to

15   school site staff to coordinate the entire transition plan.

16   The interactive process occurs with the support of a district

17   office educator.  That's her job.  That's the support center

18   available.  So when the Hill case talks about the totality of

19   the circumstances, the notorious actions and commitment of the

20   student to socially transition have to be one of the

21   circumstances that we take into account.  If this was a

22   confidential communication and no action item, as we call them,

23   was requested, nothing official -- I'm just talking about

24   whether I am transgender or gender-nonconforming.  I'm not

25   comitting to a social transition -- then that doesn't trigger

26   the parent notification.  And we've been clear with staff.  If

                                                    Page 25

```
 1    you violate the parent notification policy, that could subject
 2    you to progressive intervention or progressive discipline it
 3    needs to be called, but progressive intervention.  So we're
 4    having the training and establishing safeguards in case staff
 5    does not follow the policy correctly.  I'm just reading from
 6    the brief, your Honor, but I know you haven't had the time to
 7    read yet.  This is our opposition.  The state did a very good
 8    job of quoting some of the data with respect to this one
 9    community within our school.  Transgender and
10    gender-nonconforming students in particular suffer from
11    psychological, emotional, and physical harassment and abuse.
12    86 percent of transgender youth reported suicidal thoughts, and
13    56 percent of transgender youth reported a previous suicide
14    attempt, yet professional educators aren't allowed to tell
15    parents about that.  Professional educators who are going
16    through training and have for years on how to handle the most
17    delicate communication.  We're talking about if your child gets
18    raped in a school district.  That's kind of confidential.
19    That's a major life activity that's affected you.  The
20    professional educators communicate with parents.
21          In respect to an abortion case, Lundgren, a very small
22    group.  It wasn't notorious like we're talking about, but we're
23    supposed to exclude the parents from the team that is supposed
24    to protect the children.  There's a talk about intent.  And I'm
25    not going to read my whole brief to you, your Honor, but I
26    would please ask that you refer to our brief.  I think it was
```

Atkinson-Baker, A Veritext Company
(818) 551-7300                    www.veritext.com

1    specifically at page 9 and 10.  It talks about what the

2    policy's stated intent was.  And you asked, your Honor, and it

3    was brought up by the state.  What about some of the comments

4    made by members of the public and about some of the comments

5    made by members of the board of education?  And when you get

6    into the social sciences, your Honor, which I trust that you

7    will, you will see that there are evolving ways of describing

8    what has sometimes been called gender dysphoria as a medical

9    condition, and that's why child psychiatrists agree that having

10   a supportive home environment and drawing those parents into

11   the social transition is critical to the overall success of the

12   child.  The main place that they might be doing that for

13   8 hours a day plus extra curricular activities is at school.

14   We need the parents to be involved in that.

15        The equal protection claim, it is addressed.  It's really

16   a derivative of their discrimination claims.  We've rebutted

17   all of that in our documentation.  They talk about student

18   consent was required; that's true.  It was based on faulty

19   guidance from the state of California, which was not supported

20   by law.  There will be a legislative fix as noted in our

21   request for judicial notice.  Governor Newson said there needed

22   to be a fix.  Leading experts on constitutional law states an

23   unanswered question.  So when they have to establish likelihood

24   of success on the merits, it's not the merits of the TRO that

25   they have to establish the likelihood of success.  It's on

26   either the OSC regarding the injunction or your full trial that

                                                    Page 27

```
 1    will happen with experts.  The likelihood of success is murky
 2    for this.  It is undecided under the law, and they're asking
 3    you to legislate from the bench and say children 4-and-a-half
 4    to 12 or 11, I'm going to follow the state law on counseling
 5    privilege and say parents have a right to notification.  And 12
 6    and up, that's confidential, and I'm not going to allow the
 7    parent notification.  I suggested that to your Honor because
 8    that's what's already in the law for the counseling privilege.
 9    They're asking you to do something similar or to say all
10    students regardless of age, regardless of needs, including
11    special needs, all students should be treated exactly the same
12    because of their constitutional right to privacy.
13         I had a couple more because I know you want to hear from
14    me as much as possible.  It's why we shouldn't do ex-parte
15    stuff on constitutional issues when you have a jury trial
16    pending if I may.  Actually, your Honor, I think I may have
17    addressed everything I intended to address.  Do you have any
18    questions?
19              THE COURT:  There's always questions, Mr. De Marco.
20    Without going down the philosophical road that is not going to
21    be ultimately decided today, but as I mentioned, this is round
22    one of a case that is going to ultimately need legislative
23    guidance to help the Court.  And I have full expectation that
24    there will be other courts reviewing whatever happens from
25    either side, perhaps starting from today's ruling.  Based on
26    what is before me at this time, and I appreciate the time and
```

Page 28

```
 1    the arguments from counsel.  It would be based on what I have
 2    before me presently that the purposes and the policy that's in
 3    question to the Court appear to be too broad and too general,
 4    and that there is really no stated clear purpose that has been
 5    addressed, that I'm aware of, other than a reference that all
 6    parties are in agreement, both sides.  They want parental
 7    support and parental involvement with the students.  That's not
 8    the issue.
 9          The concern is how do we safeguard these students that
10    identify as LGBTQ, and in my view, it's a situation that is
11    singling out a class of protected individuals differently than
12    the rest of the students.  And whether it be, for example, just
13    for if let's say a student were raised under one religion and
14    then decides to change that religion on their own at whatever
15    age.  You started at 4-and-a-half.  And I don't know that we
16    have 4-and-a-half-year-olds thinking about those things, but
17    when they are older and you referenced that there were adults,
18    some over the age of 20.  And with that in mind, it's again
19    whatever the class of protected umbrella students are.
20    Students are students, and whatever makeup that they comprise,
21    it strikes me that you are singling out a group that is exposed
22    to a clear and present danger under Education Code Section
23    49602 which is the exception where if we do have to alert the
24    parents to protect the students for a medical issue for
25    example, that by all means that must be done.  But here I do
26    have the concerns I share with Mr. Tran that if you're going to
```

Page 29

```
1    be doing conduct that is reacting to something that happens
2    later after a student may have been harmed or after a student
3    has not been ready, as Mr. Tran put it, to share with their
4    parents their views and their identity that that exposes them
5    again to potential harm.  Understanding there may be many
6    loving and caring parents that don't care one way or the other
7    as long as their students are healthy, happy, and doing well in
8    school.  But that aside, unfortunately, that's not going to be
9    the reality.  There will be parents that don't take kindly to
10   those disclosers so out of an abundance of caution, I'm going
11   to grant the TRO that the People have requested and set a
12   hearing within 30 days, counsel, to again allow both sides to
13   fully brief and provide the Court with further authority and
14   hear whatever additional evidence counsel wishes to present to
15   the Court.  Let me check with my staff to see where we are with
16   a hearing on that.  Counsel, I'm going to especially set the
17   matter for Friday October 13th, Friday the 13th.  For that
18   hearing here in department S-27, counsel would be guided by our
19   local rules with respect to the briefing, for any additional
20   briefing counsel may wish to present.
21            MR. DE MARCO:  Would that include page limits, your
22   Honor?
23            THE COURT:  Please don't ask for more page limits, Mr.
24   De Marco.
25            MR. DE MARCO:  I'm not.
26            THE COURT:  Thank you.  Mr. Tran, Mr. Simpson, any
```

Page 30

1    questions or comments?

2              MR. TRAN:  No, your Honor, thank you.

3              THE COURT:  All right.  Mr. De Marco, Mr. Diedrich

4    anything further?

5              MR. DE MARCO:  Just a couple questions, your Honor,

6    understanding that you'll issue a written restraining order, I

7    would appreciate it if you would at least reflect on the

8    district's opposition.  I know you haven't had a chance to read

9    it yet.  If that changes anything, we're available to come

10   back.

11             THE COURT:  With that thought in mind, while I will

12   consider everything submitted by both parties, this is a

13   temporary restraining order.  It's not final yet.

14             MR. DE MARCO:  Understood.

15             THE COURT:  We'll address those points as we move

16   forward.

17             MR. DE MARCO:  Thank you for your time.

18             THE COURT:  All right.  Everyone please take care.

19

20             (Hereto the foregoing proceedings were concluded for

21   the day.)

22

23

24

25

26

Atkinson-Baker, A Veritext Company
(818) 551-7300                    www.veritext.com

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                 FOR THE COUNTY OF SAN BERNARDINO

 3    DEPARTMENT S-27              HONORABLE THOMAS S. GARZA, JUDGE

 4    PEOPLE OF THE STATE OF            )
      CALIFORNIA EX REL. ROB BONTA,     )
 5    ATTORNEY GENERAL OF THE STATE OF  )
      CALIFORNIA                        )   Reporter's Certificate
 6                                      )   Case No. CIVSB2317301
              Plaintiff,                )
 7                                      )
      -vs-                              )
 8                                      )
      CHINO VALLEY UNIFIED SCHOOL       )
 9    DISTRICT,                         )
                                        )
10              Defendant.              )
                                        )
11
12    STATE OF CALIFORNIA        )
                                 )  ss.
13    COUNTY OF SAN BERNARDINO   )

14

15         I, Charlona Quidor, Court Reporter of the

16    of the State of California, do hereby certify under penalty of

17    perjury that the foregoing pages 1 through 30, comprise a full,

18    true, and correct transcript of the proceedings held in the

19    above-entitled matter on Wednesday, September 6th, 2023.

20         Dated this 11th day of September 2023.

21

22

23

24                              Charlona Quidor, CSR No. 13426
                                Court Reporter
25

26
```

Page 32

**CERTIFICATE OF SERVICE**

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***
USDC Court Case No.: 3:23-cv-00768-BEN-WVG

     I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

•     **Third Notice of Supplemental Authority in Support of Plaintiffs' Motion for a Preliminary Injunction, and in Opposition to the Motions to Dismiss.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

| | |
|---|---|
| Thomas Prouty, Deputy General Counsel | Daniel R. Shinoff, Esq. |
| Len Garfinkel | Artiano Shinoff |
| California Department of Education | 3636 Fourth Avenue, Suite 200 |
| 1430 "N" Street, Suite 5319 | San Diego, CA 92103 |
| Sacramento, CA 95814 | Tel: 619-232-3122 |
| Tel: 916-319-0860; Fax: 916-322-2549 | E-Mail: Dshinoff@as7law.com |
| E-Mail: tprouty@cde.ca.gov | E-Mail: nlay@as7law.com |
| E-Mail: lgarfinkel@cde.ca.gov | **Attorneys for EUSD Defendants** |
| **Attorneys for CDE Defendants** | |

\_\_\_\_    **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

\_X\_    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

\_X\_    **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

     I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

     Executed on September 11, 2023, at Rancho Santa Fe, California.

                            _____
                            Kathy Denworth