1   LEN GARFINKEL State Bar No. 114815
    General Counsel
2   BRUCE YONEHIRO, State Bar No. 142405
    Assistant General Counsel
3   CHRISTOPHER MANDARANO, State Bar No. 263625
    Deputy General Counsel
4   California Department of Education
    1430 N Street, Room 5319
5   Sacramento, California 95814
    Telephone: 916-319-0860
6   Facsimile: 916-322-2549
    Email: cmandarano@cde.ca.gov
7   Attorneys for Defendants Tony Thurmond in his official capacity as State
    Superintendent of Public Instruction and State Board of Education Members in their
8   official capacities

9   *(Defendants Tony Thurmond in his official capacity and State Board of Education
    Members in their official capacity are Governmental Parties Exempt from the Provisions
10  of FRCP 7.1)*

11

12              **UNITED STATES DISTRICT COURT**

13              **SOUTHERN DISTRICT OF CALIFORNIA**

14

15  ELIZABETH MIRABELLI, an individual,    )   Case No. 3:23-cv-0768-BEN-KSC
    and LORI ANN WEST, an individual,      )
16                                         )   STATE-LEVEL DEFENDANTS'
                                           )   MEMORANDUM OF POINTS AND
17         Plaintiffs,                     )   AUTHORITIES IN SUPPORT OF
                                           )   MOTION FOR JUDGMENT ON THE
18         v.                              )   PLEADINGS
                                           )
19  MARK OLSON, Superintendent of EUSD,    )   (FRCP §§ 12(c)
    et al.,                                )
20                                         )   Hearing Date: January 8, 2023
           Defendants.                     )   Time:          10:30 a.m.
21                                         )   Courtroom:     5A
                                           )   Judge:         Hon. Roger T. Benitez
22  _____  )

23

24

25

26

27

28

Case No. 3:23-cv-0768-BEN-KSC                    MPA for Rule 12 (c) Motion

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i.

TABLE OF AUTHORITIES ..........................................................................ii.

I.　　INTRODUCTION  ...............................................................................1

II.　　FACTUAL BACKGROUND .............................................................. 1

　A.　Summary of Complaint ................................................................... 1

　B.　CDE and SBE .................................................................................3

III.　LEGAL STANDARD ..........................................................................3

IV.　　ARGUMENT  ....................................................................................4

　A.　The First Cause of Action Under the First Amendment's Free Speech Clause Fails to State a Claim Against the State Defendants  .........................................4

　B.　The Second and Third Causes of Action Under the First Amendment's Free Exercise of Religion Clause Fail to State a Cause of Action Against the State Defendants.................................................................... 10

　　1.　The FAQs do not substantially burden religion .............................10

　　2.　The FAQs are neutral and generally applicable, and thus subject to rational basis review. .................................................... 11

　　　a.　The FAQs are neutral. ................................................... 11

　　　b.　The FAQs are generally applicable............................................. 11

　C.　The Fourth Cause of Action for Declaratory Relief Fails to State a Claim..... 13

V.　　CONCLUSION ................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2005)................................................................3, 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................4

*Bols v. Newsom*,
   515 F. Supp. 3d 1120 (S.D. Cal. 2021) ......................................3

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020)...............................................................8

*C.N. v. Wolf*,
   410 F. Supp. 2d 894 (C.D. Cal. 2005) ........................................8

*Cafasso, U.S. ex rel. v. General Dynamics C4Systems, Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...................................................3

*California Parents for the Equalization of Educational Materials v.
   Torlakson*,
   973 F.3d 1010 (9th Cir. 2020) .................................................10

*Chavez v. U.S.*,
   683 F.3d 1102 (9th Cir. 2012) ...................................................3

*Csutoras v. Paradise High School*,
   12 F.4th 960 (9th Cir. 2021) ....................................................11

*Employment Division, Department of Human Resources of Oregon v.
   Smith*,
   494 U.S. 872 (1990)..................................................................11

*Fields v. Palmdale School District*,
   427 F.3d 1197 (9th Cir. 2005) ...................................................6

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) .....................................................3

*Foote v. Town of Ludlow*,
   2022 WL 18356421 (D. Mass. 2022) ........................................7

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1860 (2021)................................................................12

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)..................................................................5

*Grabowski v. Arizona Board of Regents*,
    69 F.4th 1110 (9th Cir. 2023) ...................................................9

*Grimm v. Gloucester County School Board*,
    972 F.3d 586 (4th Cir. 2020) ..............................................6, 7

*Guam v. Guerrero*,
    290 F.3d 1210 (9th Cir. 2002) ................................................11

*Hecox v. Little*,
    79 F.4th 1009 (9th Cir. 2023) ..................................................6

*Johnson v. Poway Unified School District*,
    658 F. 3d 954 (9th Cir. 2011) ..................................................5

*Kadrmas v. Dickinson Public Schools*,
    487 U.S. 450 (1988)..................................................................7

*Kennedy v. Bremerton*,
    142 S. Ct. 2407 (2022)..............................................................5

*Magana v. Com. of Northern Mariana Islands*,
    107 F. 3d 1436 (9th Cir. 1997) ................................................4

*McNeil v. Sherwood Sch. Dist.*,
    918 F.3d 700 (9th Cir. 2019) ...................................................6

*Meyer v. Nebraska*,
    262 U.S. 390 (1923)..................................................................6

*Nguon v. Wolf*,
    517 F. Supp. 2d 1177 (C. D. Cal. 2006) ..................................8

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ...........................................6, 11

*Parham v. JR*,
    442 U.S. 584 (1979)..................................................................6

*Pickering v. Board of Education of Township High School District 205,*
   *Will County,*
   391 U.S. 563 (1968)............................................................5

*Pierce v. Society of Sisters,*
   268 U.S. 510 (1925)...........................................................6

*Prescott v. Rady Children's Hospital San Diego,*
   265 F. Supp. 3d 1090 (S.D. Cal. 2017) ................................9

*Prince v. Massachusetts,*
   321 U.S. 158 (1944)...........................................................9

*Regino v. Staley,*
   2023 WL 4464845 (E.D. Cal.).......................................6, 7

*Rosenfeld v. JP Morgan Chase Bank, N.A.,*
   732 F. Supp. 2d 952 (N.D. Cal. 2010)..............................13

*Sabra v. Maricopa County Community College Dist.,*
   44 F.4th 867 (9th Cir. 2022) ...........................................10

*Stormans, Inc. v. Wiesman,*
   794 F.3d 1064 (9th Cir. 2015) .........................................11

*Troxel v. Glanville,*
   530 U.S. 57 (2000).............................................................6

*U.S. Dept. of J. v. Reporters Com. for Freedom of Press,*
   489 U.S. 749 (1989)...........................................................8

*Washington v. Glucksberg,*
   521 U.S. 702 (1997)...........................................................7

*West v. Atkins,*
   487 U.S. 42 (1988).............................................................4

**California Cases**

*Cleveland v. Taft Union High School Dist.,*
   76 Cal.App.5th 776 (2022) ................................................9

*Jonathan L. v. Superior Court,*
   165 Cal.App.4th 1074 (2008) ............................................9

*In re Marilyn H.*,
   5 Cal.4th 295 (1993) ................................................................ 9

*In re Roger S.*,
   19 Cal.3d 921 (1977) ............................................................... 9

**Federal Statutes**

42 U.S.C.
   § 1983 .............................................................................. 1, 4

**California Statutes**

Cal. Educ. Code
   § 200 ................................................................................... 8
   § 201(a) ................................................................................ 8
   § 201(b) ................................................................................ 8
   § 215(a)(3)(D) ....................................................................... 8
   § 218(c)(1)(I) ........................................................................ 8
   § 218.3(b)(3)(A), (B), (G) ...................................................... 8
   § 219(c)(1) ............................................................................ 8
   § 220 ................................................................................... 8
   § 220 ................................................................................... 8
   § 234.1(a) ............................................................................. 8
   § 33000 ................................................................................ 3
   § 33000.5 ............................................................................. 3
   § 33004 ................................................................................ 3
   § 33007-33009.7 .................................................................. 3
   § 33010 ................................................................................ 3
   § 33111 ................................................................................ 3
   § 33303 ................................................................................ 3

Cal. Gov't. Code
   §§ 11120-11133 ................................................................... 3

**Other Authorities**

Fed. R. Civ. P.
   12(b)(6) ............................................................................... 3
   12(c) ................................................................................ 3, 13

**Federal Constitutional Provisions**

U.S. Constitution First Amendment ...............................................*passim*

**State Constitutional Provisions**

Cal. Const. Article I
§ 1.............................................................................................8

Cal. Const. Article IX
§ 2.............................................................................................3
§ 7.............................................................................................3

# I.   INTRODUCTION

In their Section 1983 lawsuit against their employer Escondido Unified School District ("EUSD"), Plaintiff teachers Mirabelli and West have also named as defendants the State Superintendent of Public Instruction ("SPI"), head of the California Department of Education ("CDE"), and each member of the State Board of Education ("SBE") in their official capacities.  However, the Complaint fails to allege facts to support that any of these officials have deprived Plaintiffs Mirabelli and West of their First Amendment rights to free speech and free exercise of religion.

The free speech claim (First Cause of Action) fails because this case involves government speech that is not entitled to protection, parents do not have a fundamental right to disclosure of their students' gender identity, and the CDE's nonbinding FAQs are rationally related to protecting student privacy, freedom from discrimination, and health and safety.  The free exercise claims (Second and Third Causes of Action) fail because the CDE's nonbinding FAQs do not substantially burden religion in that they do not address religion at all, the FAQs are neutral and generally applicable, and they survive rational basis scrutiny as stated above.  Finally, the Fourth Cause of Action for declaratory relief as to the CDE's FAQs fails because it is a remedy, not an independent cause of action.

Accordingly, the state defendants are entitled to judgment in their favor on all causes of action.

## II.   FACTUAL BACKGROUND

### A.   Summary of Complaint

The Complaint (Dkt. 1) alleges as follows: EUSD enacted an administrative regulation requiring that teachers: (1) refer to transgender or gender-nonconforming students by their preferred names and pronouns and (2) EUSD required that teachers decline to disclose to parents, without the student's permission, whether a student had decided to "socially transition" and present at school as a different gender.  Plaintiffs sought and received a religious accommodation related to the use of student-preferred

names and pronouns, permitting them to refer to students by their last names,[1] but EUSD denied them a religious accommodation related to disclosure to parents.

The sole factual allegation as to any State-level Defendant in the 64-page Complaint is that the CDE posted FAQs addressing gender-identity issues on its website. Dkt. 1, p. 46, ¶ 189, ll. 20-23. Not only do Plaintiffs assert in the Complaint that these FAQs are not a formal agency interpretation, *id*., but in their Opposition to EUSD's Motion to Dismiss, Plaintiffs explicitly conceded that the "FAQ page is *non-binding*. . .." Dkt. 10, pg. 22, n. 11 (emphasis supplied).

There are no factual allegations made against the members of the SBE, either with respect to the FAQs or otherwise. Plaintiffs make no factual allegations that the SBE ever acted or voted on the FAQs, much less any EUSD policy or regulation.

Plaintiffs do not mention the State-level Defendants in the narrative of any of the first three causes of action. Dkt 1, pp. 53-63. The heading for each of these causes of action states that it is made against "all defendants" but they contain no mention of the CDE or SBE or the CDE's FAQs whatsoever. At every opportunity in each of these causes of action, the complaint makes allegations solely as to EUSD's "Parental Exclusion Policies." See Dkt. 1, ¶¶ 150, 227-229, 231, 234-235, 237, 247-248, 251, 254-256, 266, 270, 273, 275, 276-278, 282, 284. And at every opportunity in each of these causes of action, the complaint seeks relief solely as to EUSD's "Parental Exclusion Policies." Dkt. 1, ¶¶ 238, 257, 279, 285.

The only cause of action that specifically references any State-level Defendant is the Fourth Cause of Action seeking a declaration that the CDE's FAQs 6 and 7 on disclosure of gender identity violate the Constitution. Complaint, Dkt. 1, p. 63. As to the State-level Defendants, the only remedy sought in the Complaint is such a declaration. See Dkt. 1, p. 64, ll. 7-9.

---

[1] Therefore, it appears that any request for relief related to Escondido's preferred names and pronouns policy or CDE's FAQ 8 on use of preferred names and pronouns is moot.

**B.     CDE and SBE**

The California Constitution provides for a State Board of Education.  Cal. Const. Art. IX, § 7.  The members are appointed by the Governor.  Cal. Educ. Code §§ 33000, 33000.5.  SBE members are state officials appointed to a board that is mandated by the California state constitution and are tasked with state-level duties.  See *Bols v. Newsom*, 515 F. Supp. 3d 1120, 1135 (S.D. Cal. 2021).  Individual members of the SBE are not authorized to act alone, and all acts of the SBE must be approved by a majority vote of its members.  Cal. Educ. Code § 33010.  The SBE acts in accordance with the provisions of the Bagley-Keene Open Meeting Act. Cal. Educ. Code §§ 33010; 33007-33009.7; Cal. Gov't. Code §§ 11120-11133.

The SPI is a constitutionally elected officer.  Cal. Const. art. IX, § 2.  The SPI is the secretary and acts as executive officer of the SBE, but is not a voting member.  Cal. Educ. Code § 33004; see also Cal. Educ. Code §§ 33000, 33000.5, 33010.  The SPI executes the policies decided upon by the SBE. Cal. Educ. Code § 33111.  The SPI is also the ex officio Director of Education of the CDE. Cal. Educ. Code § 33303.

**III.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) states that "After the pleadings are closed -- but early enough not to delay trial – a party may move for judgment on the pleadings." In deciding a motion brought under Fed. R. Civ. P. 12(c), the court applies the same standards applicable to a motion to dismiss for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6).  *Cafasso, U.S. ex rel. v. General Dynamics C4Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).  That is, judgment on the pleadings is appropriate when, even if all material facts are taken as true, the moving party is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The complaint must contain sufficient factual matter, accepted as true, to plausibly -- not merely possibly -- allow the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2005); *Chavez v. U.S.*, ///

683 F.3d 1102, 1108-1109 (9th Cir. 2012).  The court need not accept legal conclusions as true.  *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.  ARGUMENT

### A. The First Cause of Action Under the First Amendment's Free Speech Clause Fails to State a Claim Against the State Defendants

The First Amendment to the U.S. Constitution states in relevant part, "Congress shall make no law . . . abridging the freedom of speech . . . . "  The vehicle for bringing a constitutional claim such as a First Amendment claim is Section 1983.  *Magana v. Com. of Northern Mariana Islands*, 107 F. 3d 1436, 1441 (9th Cir. 1997).  To establish a claim under Section 1983, a plaintiff must plausibly allege that a federal constitutional right was violated and the alleged violation was committed by a person acting under color of state law.  42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here the only "state action" alleged is that the CDE published FAQs.[2]  With respect to disclosure of students' gender identity, the FAQs state as follows:

> [FAQ 6:]
> A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home. Revealing a student's gender identity or expression to others may compromise the student's safety. Thus, preserving a student's privacy is of the utmost importance. The right of transgender students to keep their transgender status private is grounded in California's antidiscrimination laws as well as federal and state laws.  Disclosing that a student is transgender without the student's permission may violate California's antidiscrimination law by increasing the student's vulnerability to harassment and may violate the student's right to privacy.

> [FAQ 7:]
> . . . [S]chools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents. In those very rare circumstances where a school believes there is a specific and compelling "need to know," the school should inform the student that the school intends to disclose the student's transgender status, giving the student the opportunity to make that disclosure her or himself. Additionally, schools must take measures to ensure that any disclosure is made in a way that reduces or eliminates the risk of re-disclosure and protects the transgender student from harassment and discrimination. Those measures could include providing counseling to the student and the student's family to facilitate the family's acceptance and support of the

---

[2] The FAQs are attached to the Complaint, Dkt. 1, at Exhibit 26.

student's transgender status. Schools are not permitted to disclose private student information to other students or the parents of those students.

A transgender student's right to privacy does not restrict a student's right to openly discuss and express their gender identity or to decide when or with whom to share private information. A student does not waive his or her right to privacy by selectively sharing this information with others.

First, Plaintiffs are not entitled to First Amendment free speech clause protection in this circumstance. A government agency such as EUSD is entitled to establish the rules for its employees' communication about students' gender identity. Public school employees are paid in part to speak on the Government's behalf and convey its intended messages. *Kennedy v. Bremerton*, 142 S. Ct. 2407, 2423 (2022). In cases implicating the free speech rights of government employees, the Supreme Court directs courts to proceed in two steps. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563 (1968). First, if the employee speaks pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the First Amendment Free Speech clause will generally not shield the employee from the government employer's control and discipline. For constitutional purposes, such speech is the government's own speech. *Garcetti*, 547 U.S. at 421; see also *Johnson v. Poway Unified School District*, 658 F. 3d 954, 957 (9th Cir. 2011); *cert. denied*, 566 U.S. 906 (2012). On the other hand, if an employee speaks as a citizen on a matter of public concern, Free Speech clause concerns may be implicated, and courts should proceed to a second step. *Garcetti*, 547 U.S. at 423. At the second step, courts balance the employee's speech interests and the interests of the government employer. *Garcetti*, 547 U.S. at 417.

Here, at the first step, any teacher communications about students' transgender status are pursuant to their official duties as employees of EUSD. EUSD's policy does not suggest that teachers should be speaking broadly or generally, as citizens, on transgender issues. And even if they were binding, the CDE FAQs do not either. Thus,

///

///

we do not reach the second step because the teachers are not entitled to First Amendment protection.

Second, Plaintiffs cannot establish that FAQs 6 and 7 compelled the teachers to violate any fundamental parental constitutional right. Parents do not have a constitutional right to be informed of their child's transgender identity (or to give consent before a school may refer to a transgender child by their preferred name or pronouns). *Regino v. Staley*, 2023 WL 4464845 at *3 (E.D. Cal.). Parents *do* have a fundamental right to choose their child's educational forum. *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925). But having chosen an educational forum, parents do not have a fundamental right to dictate matters such as curriculum or school policies. *Fields v. Palmdale School District*, 427 F.3d 1197, 1200 (9th Cir. 2005), *opinion affirmed and amended in part on denial of rehearing*, 447 F.3d 1187 (9th Cir. 2006); see also *McNeil v. Sherwood Sch. Dist.*, 918 F.3d 700, 711 (9th Cir. 2019). As the Ninth Circuit explained in *Fields*:

> Schools cannot be expected to accommodate the personal, moral or religious concerns of every parent. Such an obligation would not only contravene the educational mission of the public schools, but also would be impossible to satisfy. *Fields*, 427 F.3d at 1206.

While the Supreme Court did state in *Troxel v. Glanville*, 530 U.S. 57, 65 (2000) that parents have a fundamental right to direct their child's care, custody or control, the Ninth Circuit has emphasized that *Troxel* did not establish a parent's right to dictate the actions or inactions of a public school system. See *Parents for Privacy v. Barr*, 949 F.3d 1210, 1230 (9th Cir. 2020) (*Troxel* "did not address the extent of parents' rights to direct the policies of the public schools that their children attend.").

Nor do parents have a fundamental right to disclosure of their students' gender identity on the grounds that referring to a student by their chosen name and pronouns is "medical care." Parents do have specific rights with respect to directing their children's medical care. *Parham v. JR*, 442 U.S. 584, 603 (1979). And some transgender individuals can experience gender dysphoria, i.e., emotional distress related to not being

able to express their true gender identity. *Grimm v. Gloucester County School Board*, 972 F.3d 586, 612 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Hecox v. Little*, 79 F.4th 1009, 1016 (9th Cir. 2023).  However, importantly, being transgender itself is not a medical or psychiatric condition.  *Grimm,* 972 F.3d at 594, 612-613[3]; *Foote v. Town of Ludlow*, 2022 WL 18356421 at *5 (D. Mass. 2022).

Addressing a person using their preferred names and pronouns is not medical care. As the court stated in *Foote*:

> Addressing a person using their preferred name and pronouns simply accords the person the basic level of respect expected in a civilized society generally, and, more specifically, in Massachussetts public schools where discrimination on the basis of gender identity is not permitted . . . This is true regardless of a person's age, provided the individual does not have a fraudulent purpose for using a new preferred name or pronouns. *Foote*, 2022 WL 18356421 at *5.

See also *Regino v. Staley*, 2023 WL 4464845 at *3 (rejecting as conclusory the allegation that permitting social transitioning at school constitutes medical treatment).

In summary, this case bears a much closer resemblance to cases involving parent challenges to curriculum and other public school policy decisions than to cases involving "care, custody or control" generally, or medical care specifically.

Because they do not implicate a fundamental right, even if they were mandatory (which they are not), the FAQs 6 and 7 are subject to rational basis review, that is, whether the FAQs at issue are reasonably related to a legitimate government purpose. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458 (1988). *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997).

It is appropriate for the state educational agency to provide guidance to local educational agencies on educational matters.  Here, the CDE has a legitimate interest in providing guidance that is protective of student rights to privacy, safety and health, and

---

[3] Transgender students are entitled to protection from harmful stereotyping that they are confused, or that they are mistaken, or that their status is temporary.  *Protecting Transgender Youth after Bostock:  Sex Classifications, Sex Stereotypes, and the Future of Equal Protection*, 132 Yale L.J. 1149, 1190-1196 (2023).

freedom from discrimination as guaranteed by the California constitution and state and federal statutes.[4]

A student has a legally protected privacy interest under the California Constitution with respect to information about the student's gender identity. *C.N. v. Wolf*, 410 F. Supp. 2d 894, 903 (C.D. Cal. 2005); see Cal. Const., Art. I, §1. A student retains a reasonable expectation of privacy in their gender identity with respect to non-disclosure to their parents at home, even if open about their gender identity at school. *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1191 (C. D. Cal. 2006) ("It does not follow that disclosure in one context necessarily relinquishes the privacy right in all contexts."); *U.S. Dept. of J. v. Reporters Com. for Freedom of Press*, 489 U.S. 749, 770 (1989) (simply because "an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.")

And California's Education Code recognizes gender identity and gender expression as a protected characteristic in its anti-discrimination laws and, as such, transgender and gender nonconforming students cannot be singled out for different, adverse treatment solely on account of their protected characteristics. Cal. Educ. Code § 220.

Similarly, federal law protects transgender persons from discrimination based on their gender identity. See *Bostock v. Clayton County*, 140 S. Ct. 1731, 1747 (2020)

---

[4] California law emphasizes the rights of LGBTQ students. Educ. Code § 200 (schools must provide all students with equal rights regardless of gender identity); Educ. Code § 201(a) (all students have the right to participate fully and be free from discrimination); Educ. Code § 201(b) (schools must combat sexism); Educ. Code § 215(a)(3)(D) (LEAs must adopt policies on suicide prevention that specifically address the needs of LGBTQ students); Educ. Code § 218(c)(1)(I) (CDE must provide resources to support LGBTQ students including policies to protect privacy); Educ. Code § 218.3(b)(3)(A), (B), (G) (Per Assembly Bill 5 passed in 2023, CDE must develop an online training for staff about LGBTQ students, including creating safe and supportive learning environments, identifying students subject to or at risk of lack of acceptance at home, and protecting privacy); Educ. Code § 219(c)(1) (Per Senate Bill 857 passed in 2023, the SSPI shall convene an advisory task force to identify needs of LGBTQ students and make recommendations to address their well-being including their mental health and feelings of safety and support); Educ. Code § 220 (students are protected from discrimination based on gender identity); Educ. Code § 234.1(a) (LEAs must adopt policies that prohibit discrimination based on gender identity).

(discrimination based on gender identity is sex discrimination under Title VII); *Grabowski v. Arizona Board of Regents*, 69 F.4th 1110, 1113 (9th Cir. 2023) (discrimination on the basis of gender identity is sex discrimination under Title IX); see also *Prescott v. Rady Children's Hospital San Diego*, 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017) (discrimination on the basis of gender identity is discrimination based on sex for purposes of the Affordable Care Act).

Protecting students from emotional, psychological, and physical harm is a strong government interest. *Jonathan L. v. Superior Court,* 165 Cal.App.4th 1074, 1104 (2008) (there is "no dispute that the child's safety is a compelling governmental interest"); *In re Marilyn H.,* 5 Cal.4th 295, 307 (1993) (the "welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect"); *In re Roger S.*, 19 Cal.3d 921, 928 (1977) (noting that a parental right can be limited "'if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens'"); *Cleveland v. Taft Union High School Dist.,* 76 Cal.App.5th 776, 799 (2022) (duty of care to protect students from harm by third parties).

Coming out is an intensely personal decision.  Outing -- revealing a person's gender identity to a third party without the individual's consent -- can be harmful.  If transgender students fear that chosen name and pronoun use at school will be revealed to parents without student consent, they may be reluctant to request chosen names and pronoun use at school.[5]  As the U.S. Supreme Court observed, "[i]t is the interest of youth itself, and of the whole community, that children be both safeguarded from abuses and given opportunities for growth into free and independent well-developed . . . citizens." *Prince v. Massachusetts,* 321 U.S. 158, 165 (1944).

---

[5] It is important for transgender youth to have their gender recognized and validated as chosen name use is associated with decreased depressive symptoms and suicidal ideation among transgender youth.  *Challenges Facing LGBTQ Youth*, 24 Geo. Journal of Gender and Law 417, 434 (2023).

Thus, FAQs 6 and 7 bear a rational relationship to these legitimate government purposes of promoting the protection of student rights to privacy, safety and well-being, and freedom from discrimination. These FAQs protect student safety, ensure a supportive school environment where students feel accepted and valued, prevent discrimination against transgender students, and protect student privacy.

**B.   The Second and Third Causes of Action Under the First Amendment's Free Exercise of Religion Clause Fail to State a Cause of Action Against the State Defendants**

1.   The FAQs do not substantially burden religion.

The First Amendment provides in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const., amend. I. To state a claim under the Free Exercise Clause, a plaintiff must show that the challenged state action substantially burdens the plaintiff's exercise of their religion. *Sabra v. Maricopa County Community College Dist.*, 44 F.4th 867, 809 (9th Cir. 2022); *California Parents for the Equalization of Educational Materials v. Torlakson*, 973 F.3d 1010, 1019-20 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2583 (2021). Being offended by government actions that address religion in some way does not suffice; the government's action must actually operate as a burden on the plaintiff's practice of their religion. *Id.*

CDE's FAQs 6 and 7 that provide guidance to local educational agencies regarding the issue of disclosure of students' gender identity do not impose a substantial burden on the plaintiff teachers' practice of their religion. The FAQs do not reference or address religion or religious practice at all. The FAQs are not binding, and there has been no interaction whatsoever between the state defendants and either Plaintiffs or EUSD. The FAQs do not require Plaintiffs or EUSD to do anything, nor do they

///
///
///
///

prohibit Plaintiffs or EUSD from doing anything.[6]  The free exercise claims fail for that reason alone.

## 2. The FAQs are neutral and generally applicable, and thus subject to rational basis review.

Even if FAQs 6 and 7 somehow substantially burden Plaintiffs' exercise of religion, because they are both neutral and generally applicable, they are subject to rational basis review.  In *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990), the Supreme Court stated that strict scrutiny does not apply to state action that substantially burdens religious conduct if it is (1) neutral and (2) generally applicable.  If the state action is neutral and generally applicable, the government need only show that it is rationally related to a legitimate state purpose.  See *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015); *Guam v. Guerrero,* 290 F.3d 1210, 1215 (9th Cir. 2002).

### a. The FAQs are neutral.

The FAQs are neutral in that they do not target religiously motivated conduct on their face or in practice.  See *Students for Privacy v. Barr*, 949 F. 3d at 1235 (policy permitting transgender students to use bathroom and locker room corresponding to their gender identity was neutral in that it made no reference to any religious practice, conduct, belief or motivation).  There are no facts to support that the FAQs' intent was to prevent religious conduct.  Rather, as stated in the preamble to the FAQs (and as demonstrated throughout the FAQs), they serve goals such as protecting student rights to privacy and safety and freedom from discrimination.  Dkt. 1, Exh. 26, p. 1.

### b. The FAQs are generally applicable.

The FAQs are generally applicable in that the guidance is offered equally to all local educational agencies, all schools, and all school employees, regardless of religion.  See *Students for Privacy v. Barr*, 949 F. 3d at 1236 (policy permitting transgender

---

[6] See, e.g., *Csutoras v. Paradise High School*, 12 F.4th 960, 967-968 (9th Cir. 2021) (U.S. Department of Education "Dear Colleague" guidance letter did not create binding obligations on school district).

students to use bathroom and locker room corresponding to their gender identity was generally applicable in that it did not place demands on exclusively religious practices or conduct).  But while FAQ 7 indicates that there will be circumstances in which school staff determine that parents have a need to know, as explained below,  that does not change the fact that the FAQ is generally applicable.  FAQ 7 states in relevant part:

> With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents. In those very rare circumstances where a school believes there is a specific and compelling "need to know," the school should inform the student that the school intends to disclose the student's transgender status, giving the student the opportunity to make that disclosure her or himself.

Plaintiffs may cite to *Fulton v. City of Philadelphia*, 141 S. Ct. 1860 (2021), in which a City's contractual nondiscrimination requirement was found to be not generally applicable because the City had the power to waive it in any case, but refused to waive it when requested to do so for religious reasons.  However, *Fulton* is distinguishable.

General applicability for purposes of the Free Exercise clause addresses whether a state rule or policy in question applies generally to all of its subjects -- not whether application of the rule or policy always (or only sometimes) results in alleged infringement of a person's religious exercise.  In *Fulton*, the challenged government rule was a City's contractual provision requiring all contractors to refrain from discrimination.  That rule might or might not result in infringement, depending on the contractor's particular beliefs.  But the problem in *Fulton* was that sometimes, at the complete discretion of the government, that entire "rule" could simply be waived and not applied to a particular contractor.  So, the "rule" was not generally applicable, because the discretionary waiver could make it disappear.  Here, the alleged "rule" (in reality, non-binding guidance) is the FAQs that are a guidance statement to guide all local educational agencies (LEAs).  Plaintiffs may point to FAQ 7's recognition set forth above that sometimes it may not be appropriate to withhold information from parents; however, that recognition is an integral part of the guidance itself, not a provision that allows LEAs to waive a rule, or exempt anyone.  No one is exempt from the guidance, it

is simply that in some cases application of the guidance may not result in non-disclosure to parents.  That does not mean the guidance/policy/rule is not generally applicable.  It still "applies," it just may not have an objectionable effect to these plaintiffs in every case.  But plaintiffs cannot rely on that fact to subject this neutral and generally applicable guidance (that makes no reference to religion and was issued with only secular interests in mind) to strict scrutiny.  Indeed, it would be unreasonable to subject the FAQs to stricter scrutiny under the Free Exercise clause simply because the FAQs would not always suggest non-disclosure to parents (the very thing that these plaintiff-teachers claim infringes on the exercise of their religion).

For all of the same reasons described above with respect to the First Amendment free speech claim, the FAQs survive rational basis scrutiny.

## C.   The Fourth Cause of Action for Declaratory Relief Fails to State a Claim

The fourth cause of action states that it is for "declaratory relief."  However, declaratory relief is a remedy, not an independent cause of action.  *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (dismissing claim for declaratory relief on that basis).  Therefore, the state defendants are entitled to judgment on the fourth cause of action.

## V.   CONCLUSION

For the above reasons, the State-level Defendants respectfully request that the court grant judgment in their favor on all claims against them, pursuant to Fed. R. Civ. P. 12(c).


Dated: November 13, 2023                    Respectfully submitted,
                                            LEN GARFINKEL
                                            General Counsel
                                            BRUCE YONEHIRO
                                            Assistant General Counsel


                                    By:    /s/ Len Garfinkel
                                            LEN GARFINKEL
                                            General Counsel
                                            Attorney for State-level Defendants