Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice**
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>        Defendants. | Case No.: 3:23-cv-0768-BEN-WVG<br><br>**Plaintiffs' Ex Parte Application for an Order to Show Cause re: Civil Contempt of Court and/or Clarification of the Preliminary Injunction Order**<br><br>Judge:      Hon. Roger T. Benitez<br>Courtroom:  5A |

**TO:  THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Elizabeth Mirabelli and Lori Ann West, by and through counsel, will and hereby do apply to the Court for an order to show cause re: civil contempt, and/or clarification of the Court's preliminary injunction order entered on the docket on September 14, 2023, as ECF No. 42. Plaintiffs seek civil contempt sanctions as against the EUSD Defendants for violating the Court's preliminary injunction order by not reinstating them in their regular job duties (EUSD Board President Mark Olson, Board Vice President Frank Huston, Board Clerk Joan Gardner, Board Member Doug Paulson, Board Member Zesty Harper, Superintendent Luis Rankins-Ibarra, Assistant Superintendent John Albert, Integrated Student Services Director Trent Smith, Integrated Student Supports Director Tracy Schmidt, Rincon Middle School Principal Steve White).

Alternatively, to the extent that the Court views its order as insufficiently clear for a civil contempt finding, Plaintiffs request a clarifying order requiring EUSD to bring Plaintiffs back to work. In either eventuality, Plaintiffs also request that the Court order the EUSD Defendants to pay their reasonable attorneys' incurred in attempting to compel EUSD to comply with the Court's order.

This Application is made on the grounds that the Court ordered EUSD "to restrain any governmental employee or entity from taking any adverse employment actions thereupon against Plaintiffs Mirabelli or West, until further Order of this Court." ECF No. 42 at p.36. In so doing, the Court noted that Plaintiffs were suffering irreparable harm from "hav[ing] involuntarily been placed on administrative leave from their teaching positions." *Id.*, pp.29-30. Yet over two months later, neither Mrs. Mirabelli nor Mrs. West have been allowed to safely return to work.

This Application is supported by the accompanying Memorandum of Points and Authorities, by the declarations of Paul M. Jonna, Esq., Elizabeth Mirabelli, and Lori

1  Ann West, and by such further argument and evidence that may be adduced at any

2  hearing on this matter.

3

4                                        Respectfully submitted,

5                                        LiMANDRI & JONNA LLP

6

7  Dated: December 6, 2023          By: _____

8                                        Charles S. LiMandri
                                         Paul M. Jonna
9                                        Mark D. Myers
                                         Jeffrey M. Trissell
10                                       Milan L. Brandon II
                                         Attorneys for Plaintiffs
11                                       Elizabeth Mirabelli & Lori Ann West

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  INTRODUCTION ......................................................................... 7

3  PROCEDURAL HISTORY ........................................................... 8

4      A.   Pre-Preliminary Injunction History ..................................... 8

5      B.   Post-Preliminary Injunction History ................................... 9

6      C.   Ramp Up to this Contempt Application ............................. 12

7  LEGAL STANDARD ................................................................. 14

8  ARGUMENT ............................................................................ 15

9      I.   An Inability to Teach is Irreparable Harm .......................... 15

10     II.   Endless Investigations Constitute Adverse Action ............. 16

11     III.  Colleague Harassment Constitutes Adverse Action ........... 18

12  CONCLUSION ......................................................................... 20

13

14

15

## TABLE OF AUTHORITIES

16  CASES:

17  *Burlington N. & Santa Fe Ry. Co. v. White,* .....................................................17
18     548 U.S. 53 (2006)

19  *Cal. Dep't of Soc. Servs. v. Leavitt,* ................................................................ 14
20     523 F.3d 1025 (9th Cir. 2008)

21  *Chalk v. U.S. Dist. Ct. Cent. Dist. of California,* ......................................... 16
22     840 F.2d 701 (9th Cir. 1988)

23  *Dahlia v. Rodriguez,* ..................................................................................... 16
24     735 F.3d 1060 (9th Cir. 2013)

25  *Forever 21, Inc. v. Ultimate Offprice, Inc.*, ................................................... 15
26     No. 2:10-CV-05485, 2013 WL 4718366 (C.D. Cal. Sept. 3, 2013)

27  *FTC v. Affordable Media, LLC,* .................................................................... 15
28     179 F.3d 1228 (9th Cir. 1999)

4

PLAINTIFFS' EX PARTE APPLICATION FOR AN OSC RE: CIVIL CONTEMPT OF COURT
AND/OR CLARIFICATION OF THE PRELIMINARY INJUNCTION ORDER

# TABLE OF AUTHORITIES

**CASES:**

*Gompers v. Buck's Stove & Range Co.*, ......................................................... 14
   221 U.S. 418 (1911)

*Groff v. DeJoy,* ............................................................................................ 18
   600 U.S. 447 (2023)

*Gunnell v. Utah Valley State Coll.,* .............................................................. 18
   152 F.3d 1253 (10th Cir. 1998)

*HISC, Inc. v. Franmar Int'l Importers, Ltd.*, ................................................ 14
   No. 3:16-CV-0480, 2022 WL 104730 (S.D. Cal. Jan. 11, 2022)

*In re Crystal Palace Gambling Hall, Inc.*, .................................................... 15
   817 F.2d 1361 (9th Cir. 1987)

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, ........................... 15
   10 F.3d 693 (9th Cir. 1993)

*L.W. v. Skrmetti,* .......................................................................................... 19
   83 F.4th 460 (6th Cir. 2023)

*Light v. Dep't of Parks & Recreation,* ........................................................... 18
   14 Cal. App. 5th 75 (4th Dist., Div. 1, 2017)

*McComb v. Jacksonville Paper Co.*, .............................................................. 14
   336 U.S. 187 (1949)

*Regal Knitwear Co. v. NLRB,* ........................................................................ 14
   324 U.S. 9 (1945)

*Regents of the Univ. of California v. Aisen*, ................................................... 14
   No. 15-CV-1766, 2016 WL 4681177 (S.D. Cal. Sept. 7, 2016)

*Rhodes v. Napolitano,* ................................................................................... 17
   656 F. Supp. 2d 174 (D.D.C. 2009)

*SEC v. Hickey*, .............................................................................................. 15
   322 F.3d 1123 (9th Cir. 2003)

1

# TABLE OF AUTHORITIES

2

### CASES:

3

*Shillitani v. United States,* ........................................................... 14

4
        384 U.S. 364 (1966)

5

*United States v. United Mine Workers*, ....................................... 15

6
        330 U.S. 258 (1947)

7

*United States v. Bright,* ............................................................... 15

8
        596 F.3d 683 (9th Cir. 2010)

9

*Velikonja v. Gonzales,* ................................................................. 16

10
        466 F.3d 122 (D.C. Cir. 2006)

11

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, ..................... 15

12
        689 F.2d 885 (9th Cir. 1982)

13

### STATUTES, RULES & REGULATIONS:

14

Cal. Code Regs., tit. 5, § 4630(b) ................................................. 10

15

Cal. Code Regs., tit. 5, § 4631 .................................................. 9, 17

16

Cal. Code Regs., tit. 5, § 4631(e) ................................................. 19

17

Cal. Ed. Code § 87623(c) .............................................................. 17

18

CivLr 83.1 ................................................................................. 8, 14

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

It has been over six months since Plaintiffs Elizabeth Mirabelli and Lori Ann West have been allowed to work, and over two and a half months since this Court entered its preliminary injunction order in Plaintiffs' favor. Immediately after that order was issued, Plaintiffs inquired about how they would be allowed to safely return to work. For Mrs. Mirabelli, she had requested to go on voluntary administrative leave in light of her serious fears for her personal safety. For Mrs. West, EUSD placed her on involuntary administrative leave when an internal grievance complaint was filed against her.

In the two and a half months since this Court issued its order, EUSD has slow-walked taking any action to ensure Plaintiffs' safety, emboldening Rincon Middle School personnel to even hold a protest against them, and has continued to insist that Mrs. West remain on administrative leave while it investigates patently frivolous and serial complaints. Back in October, Plaintiffs drafted and were about to file this contempt application. But based on EUSD's representations, they held back, hoping that the parties could agree on how to bring Plaintiffs back to work.

Since that time, however, EUSD has continually pushed back the timeline, promising results within a week, and then granting itself a unilateral extension. Enough is enough. With no movement on the part of EUSD to comply with this Court's preliminary injunction order, and only after multiple explicit warnings that a contempt application would be forthcoming, Plaintiffs are now forced to file this ex parte application for civil contempt.

Plaintiffs hope that no finding of civil contempt will be needed because EUSD will comply before any such hearing. But in the event that EUSD does not comply, Plaintiffs request a civil contempt finding and a further order to comply. Alternatively, to the extent that the Court views its order as insufficiently clear for a civil contempt finding, Plaintiffs request a clarifying order requiring EUSD to bring

Plaintiffs back to work. In any eventuality, Plaintiffs also request an order to EUSD to pay their reasonable attorneys' fees in bringing this application. *See* CivLr 83.1.

## PROCEDURAL HISTORY

### A.   Pre-Preliminary Injunction History

Plaintiffs Elizabeth Mirabelli and Lori Ann West initiated this federal civil rights action on April 27, 2023. ECF No. 1, Compl. As explained in their complaint, the Escondido Union School District ("EUSD") adopted a policy requiring school personnel to participate in a student's social transition to a new gender and to withhold any information about this social transition from the student's parents. *Id*. This violated Plaintiffs' moral and religious views, so they requested—but were denied—an exemption. *Id*.

After Plaintiffs filed this suit, they experienced immediate retaliation and harassment from EUSD personnel. *See* ECF No. 5-3, 1st Mirabelli Decl.; ECF No. 5-4, 1st West Decl. In light of this hostile work environment, Plaintiff Mirabelli requested to be placed on administrative leave until it could be remedied. She has been absent from school since May 5, 2023. ECF No. 5-3, ¶¶12-11, 18-20; *see* Jonna Decl., ¶¶2-3 & Ex. 1, Email chain between counsel (May 1-5, 2023); Ex. 2, Letter from Jonna to Shinoff (May 25, 2023). She also filed administrative complaints with EUSD, seeking, among other things, an investigation into how hateful posters were allowed to be plastered inside her classroom (classrooms are locked without an employee present). ECF No. 5-3, ¶8; Jonna Decl., Ex. 6.

For her part, Plaintiff West wanted to remain teaching despite bullying by her fellow teachers. ECF No. 5-4, ¶¶17-18. Nevertheless, EUSD forced her to go on administrative leave, beginning on May 18, 2023, allegedly in response to complaints filed by students. ECF No. 8, 2d West Decl., ¶¶2-10; ECF No. 18-3, 3d West Decl., ¶¶3-7; *see* Jonna Decl., ¶¶6-7 & Ex. 3, Email chain between counsel (May 18, 2023); Ex. 4, Letter from Jonna to Shinoff (May 25, 2023).

///

## B. Post-Preliminary Injunction History

On Thursday, September 14, 2023, the Court granted Plaintiffs' motion for a preliminary injunction. ECF No. 42. In most relevant part, the Court's order states that EUSD is "to restrain any governmental employee or entity from taking any adverse employment actions thereupon against Plaintiffs Mirabelli or West, until further Order of this Court." ECF No. 42 at pp.35-36.

In response to the Preliminary Injunction order, on Monday, September 18, 2023, Plaintiffs sent a letter to EUSD to negotiate their return to work. Plaintiffs' letter noted that Mrs. Mirabelli requested leave because of the severe retaliation and harassment that she felt. Thus, Plaintiffs requested an update on what specific steps EUSD would take to ensure that Mrs. Mirabelli would be safe upon her return. For Mrs. West, Plaintiffs' letter noted that she strongly desired to return to work and requested an update on why the administrative investigation had yet to conclude. On June 29, 2023, EUSD had conducted investigative interviews with both Plaintiff Mirabelli and Plaintiff West, and estimated the conclusion of its investigations within 30 days.[1] The letter concluded with a request that the parties agree to a date in October when Plaintiffs could return to work. Jonna Decl., ¶¶10-12 & Ex. 5, Letter from Jonna to Shinoff (Sep. 18, 2023).

Plaintiffs received no response for over a week. Thus, on Tuesday, September 26, 2023, Plaintiffs' counsel called to discuss the matters in the letter. That call was not particularly productive, but led Plaintiffs to re-send their letter with a few more emails, including a reiterated request for information as to the investigation into Plaintiff West. *See* Jonna Decl., ¶14 & Ex. 6, Email chain between counsel (Sep. 26,

---

[1] California regulations, and EUSD specific policies, require investigations to be completed within 60 days, unless the complainant agrees to an extension, and the investigee is notified that an extension has been granted. Cal. Code Regs., tit. 5, § 4631; Jonna Decl., Ex. 30, AR 1312.3. However, EUSD specific policies state that when a complaint is made against a District employee, EUSD shall "investigate and attempt to resolve the complaint to the satisfaction of the parties involved within 30 days." Jonna Decl., Ex. 28, AR 1312.1(2).

2023). A few days later, EUSD responded. EUSD's letter identified no specific steps it would take to ensure Mrs. Mirabelli's safety, and instead generically stated that EUSD would enforce its prohibitions on retaliation and harassment. Jonna Decl., ¶16 & Ex. 7, Letter from Shinoff to Jonna (Sep. 28, 2023).

EUSD's letter did not address the investigation into Mrs. West, so Plaintiffs followed up via email. On Friday, September 29, 2023, EUSD confirmed that there was no finding of wrongdoing by Mrs. West with respect to the initial complaints. But on Monday, October 2, 2023, EUSD explained that a *new* complaint had been filed against Mrs. West. The complaint was filed by a former student *after* the Court's preliminary injunction order, concerning activity that occurred *years prior*,[2] and concerned highly inflammatory and implausible assertions. Despite its suspicious character, EUSD required that Mrs. West remain on administrative leave. Jonna Decl., ¶¶18-19 & Ex. 8, Email chain between counsel (Sep. 28-Oct. 2, 2023).

In follow up to this, on October 5, 2023, Plaintiffs requested clarification regarding when the investigation into Ms. West would be completed, and explained that, due to her health, Mrs. Mirabelli could not return to work without adequate safeguards. Jonna Decl., ¶21 & Ex. 9, Email chain between counsel (Oct. 5-6, 2023). On Wednesday, October 11, 2023, counsel for EUSD—both Mr. Basel and Mr. Daniel Shinoff—conducted a second investigative interview with Ms. West. Jonna Decl., ¶23 & Ex. 10, Email chain between counsel (Oct. 6-12, 2023).

///

///

///

///

///

---

[2] *But see* Cal. Code Regs., tit. 5, § 4630(b) ("An investigation of alleged unlawful discrimination, harassment, intimidation or bullying shall be initiated by filing a complaint not later than six months from the date" the activity occurred or was discovered); *see also* Jonna Decl., Ex. 30, AR 1312.3.

On Friday, October 13, 2023, Plaintiffs discovered that a protest against them was being organized to occur at Rincon Middle School.



Jonna Decl., Ex. 11, Protest Flyer (Oct. 13, 2023).

As shown in the last line above, the protest was being organized via "REMIND." That is a smartphone application used by teachers to communicate with students and parents. Jonna Decl., ¶27.[3] As stated in the flyer, individuals could send a text message to be joined to the application. Once joined, they could see the organizers of the protest and everybody involved. Jonna Decl., ¶27. Unsurprisingly, Plaintiffs discovered that Rincon Middle School personnel were involved in the protest. Jonna Decl., ¶28 & Exs. 12-13.

Plaintiffs immediately brought the flyer to EUSD's attention, and requested that EUSD investigate the protest and take affirmative action to ensure the safety of Mrs. Mirabelli and Mrs. West. Jonna Decl., ¶31 & Ex. 14, Email chain between counsel (Oct. 13, 2023).

---

[3] *See* Emily McDonnell, *What is Remind?*, Remind.com, https://help.remind.com/hc/en-us/articles/201342445-What-is-Remind.

### C.   RAMP UP TO THIS CONTEMPT APPLICATION

In the last of three emails sent on October 13, 2023, Plaintiffs stated that if EUSD continued to equivocate, they would be forced to seek further relief from the Court, including ***specifically civil contempt sanctions.*** Plaintiffs stated that they would seek relief from the Court if they did not receive satisfactory answers ***by October 18, 2023.*** *See* Jonna Decl., ¶33 & Ex. 14, Email chain between counsel (Oct. 13, 2023). On October 18, 2023, EUSD again responded with a vague, equivocal response, no date for Mrs. West to return to work, and a request for another meeting about Mrs. Mirabelli. Jonna Decl., ¶34 & Ex. 15, Email chain between counsel (Oct. 18, 2023).

On the date of the protest, October 20, 2023, a second flyer was distributed. That flyer mocked Mrs. Mirabelli's "extreme stress" and "anxiety" caused by her hostile Rincon Middle School work environment and EUSD's parental exclusion policies. Jonna Decl., ¶36 & Ex. 16, Protest Flyer (Oct. 20, 2023). The next Monday, October 23, 2023, counsel for Plaintiffs and EUSD held a telephone conference. On that call, Plaintiffs explained that their contempt papers were ready to be filed, but agreed to delay filing them for one week as a matter of professional courtesy. Jonna Decl., ¶38 & Ex. 17, Email chain between counsel (Oct. 23, 2023).

However, the next day, Tuesday, October 24, 2023, EUSD sent Plaintiffs another letter, stating that another investigative interview would occur on Monday, October 30, 2023, necessarily meaning that the investigation would not be completed that week. Jonna Decl., ¶40 & Ex. 18, Letter from Shinoff to Jonna (Oct. 24, 2023); Ex. 19, Email chain between counsel (Oct. 24-25, 2023). The next Tuesday, EUSD confirmed this, stating that numerous additional witnesses needed to be interviewed. But EUSD assured Plaintiffs that they would likely be able to return to work at the beginning of the next trimester, November 27, 2023. Jonna Decl., ¶¶43-44 & Ex. 20, Email chain between counsel (Oct. 24-25, 2023).

///

On Wednesday, November 9, 2023, Plaintiffs sent a list of concerns to EUSD regarding Mrs. Mirabelli's return to work. Jonna Decl., ¶¶46-49 & Ex. 21, Email chain between counsel (Nov. 8, 2023); Ex. 22, Email chain between counsel (Nov. 8-14, 2023). Then, on November 15, 2023, EUSD sent Plaintiffs a letter stating that a return to work on November 27, 2023, beginning with the next trimester was not feasible. Jonna Decl., ¶¶51 & Ex. 23, Letter from Shinoff to Jonna (Nov. 15, 2023).

In response to that letter, Plaintiffs have repeatedly tried to follow up with EUSD about the return to work of Mrs. Mirabelli and Mrs. West, and received no substantive response. Jonna Decl., ¶¶53-54 & Ex. 24, Email chain between counsel (Nov. 15, 2023). In Plaintiff's email, they specifically demanded (1) a response with respect to Mrs. Mirabelli's health and safety concerns; and (2) a detailed update regarding the administrative investigation into Mrs. West. Jonna Decl., ¶¶56-57 & Ex. 25, Email chain between counsel (Nov. 16, 2023).

EUSD responded stating that they had never received the correspondence regarding Mrs. Mirabelli's concerns, and ignored the request for information regarding the investigation into Mrs. West. With respect to Mrs. West, Plaintiffs then responded as follows:

> I am demanding an update regarding Lori. As you know, we previously informed you that continuing to deprive Lori of her ability to return to work based on highly suspect (fabricated) allegations is a violation of the court's preliminary injunction order. We drafted contempt papers but held off on filing them to wait and see how this new "investigation" proceeded. You have provided no update whatsoever. We also were in the process of amending the complaint to add Title VII claims, but we held off in good faith. ***If we do not receive a full and complete update regarding Lori's status before Thanksgiving, then we will assume it is necessary to address these issues further with Judge Benitez first thing the week of 11/27.***

Jonna Decl., ¶¶59-57 & Ex. 26, Email chain between counsel (Nov. 16-17, 2023) (emphasis added).

///

1    Plaintiffs have since received no response from EUSD regarding these matters.
2    Jonna Decl., ¶62. In light of EUSD's refusal to take meaningful action to protect
3    Mrs. Mirabelli and Mrs. West, their refusal to bring them safely back to work, and the
4    deteriorating situation, Plaintiffs now bring this ex parte application for an order to
5    show cause re: civil contempt.

6                                    **LEGAL STANDARD**

7    "There is no question that courts have inherent power to enforce compliance
8    with their lawful orders through civil contempt." *Cal. Dep't of Soc. Servs. v. Leavitt*,
9    523 F.3d 1025, 1033 (9th Cir. 2008) (quoting *Shillitani v. United States*, 384 U.S. 364,
10   270 (1966)); *see also* CivLR 83.1 (noting that failure to comply with the court's orders
11   may subject a party to sanctions). "A party to the original action may invoke the
12   Court's power by initiating a proceeding for civil contempt." *HISC, Inc. v. Franmar*
13   *Int'l Importers, Ltd.*, No. 3:16-CV-0480, 2022 WL 104730, at *2 (S.D. Cal. Jan. 11,
14   2022) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444–45 (1911)).

15   For prudential reasons, "[t]he Supreme Court teaches that when questions
16   arise as to the interpretation or application of an injunction order, a party should seek
17   clarification or modification from the issuing court." *Regents of the Univ. of California*
18   *v. Aisen*, No. 15-CV-1766, 2016 WL 4681177, at *1 (S.D. Cal. Sept. 7, 2016). This is
19   particularly appropriate in the context of disobedience and civil contempt. *See, e.g.,*
20   *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) ("Yet if there were
21   extenuating circumstances or if the decree was too burdensome in operation, there
22   was a method of relief.... Respondents could have petitioned the District Court for a
23   modification, clarification or construction of the order."); *Regal Knitwear Co. v.*
24   *NLRB*, 324 U.S. 9, 15 (1945) ("If defendants enter upon transactions which raise
25   doubts as to the applicability of the injunction, they may petition the court granting it
26   for a modification or construction of the order.").

27   To establish civil contempt, the moving party must demonstrate by clear and
28   convincing evidence that the alleged contemnor violated a specific and definite court

order by failing to take "take all reasonable steps within the party's power to comply." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). If the moving party successfully makes such a showing, "the burden shifts to the contemnor to demonstrate why they were unable to comply." *Forever 21, Inc. v. Ultimate Offprice, Inc.*, No. 2:10-CV-05485, 2013 WL 4718366, at *2 (C.D. Cal. Sept. 3, 2013) (citing *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

"The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Dual-Deck*, 10 F.3d at 695 (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). Nonetheless, "a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *Dual-Deck*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)) (alteration in original). Moreover, "substantial compliance" is a valid defense to a finding of civil contempt. *Vertex*, 689 F.2d at 891.

When a court finds a party in civil contempt, it has "broad equitable power to order appropriate relief in civil contempt proceedings." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). "Appropriate sanctions may be imposed to coerce the contemnor into compliance with the court's order, to compensate the complainant for losses sustained as a result of the contemptuous behavior, or both." *Forever 21*, 2013 WL 4718366, at *3, (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947) and *United States v. Bright*, 596 F.3d 683, 696–97 (9th Cir. 2010)).

## ARGUMENT

### I.   AN INABILITY TO TEACH IS IRREPARABLE HARM

On September 14, 2023, this Court entered a preliminary injunction in Plaintiffs' favor, ordering EUSD "to restrain any governmental employee or entity from taking any adverse employment actions thereupon against Plaintiffs Mirabelli or West, until further Order of this Court." ECF No. 42 at p.36. At the hearing,

1  Plaintiffs' counsel argued that "[o]ur clients have a right to engage in their chosen
2  profession… This is their profession. This is their vocation. They love their students.
3  They want to get back to work, and they don't want to violate their faith, and they
4  have every right to do that under the law we cited." ECF No. 39 at pp.116-17.

5          Thus, in line with this, the Court's preliminary injunction order noted that
6  "without an injunction, it is certain that plaintiffs will continue to suffer present and
7  future irreparable constitutional harm due to the existence of the state and EUSD
8  policies and the fact that plaintiffs have involuntarily been placed on administrative
9  leave from their teaching positions." ECF No. 42 at pp.29-30. Yet over two months
10 later, neither Mrs. Mirabelli nor Mrs. West have been allowed to safely return to
11 work.

12         The mere fact that EUSD is continuing to pay Plaintiffs is no excuse. The
13 Court's preliminary injunction order made clear that denying Plaintiffs the right to
14 pursue their chosen profession is, *itself*, irreparable harm. *See id.* Indeed, "monetary
15 loss" is only the beginning of the analysis—not the end. A teacher suffers irreparable
16 harm when precluded from "utiliz[ing] his skills, training or experience," and having
17 "no student contact." *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701,
18 709 (9th Cir. 1988).

19   **II.   ENDLESS INVESTIGATIONS CONSTITUTE ADVERSE ACTION**

20         The Court's injunction against "adverse action" also, *directly*, requires EUSD
21 to bring Plaintiffs back to work. Again, the Ninth Circuit has made clear that, in the
22 right "circumstances, placement on administrative leave can constitute an adverse
23 employment action." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013). With
24 respect to Mrs. West, when the employer engages in an endlessly "lengthy
25 investigation," that "place[s] a cloud over [a] career," that is adverse employment
26 action. *See Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006) (citing
27 *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *accord Rhodes v.*
28 *Napolitano*, 656 F. Supp. 2d 174, 185 (D.D.C. 2009) ("The length and scope of this

16

PLAINTIFFS' EX PARTE APPLICATION FOR AN OSC RE: CIVIL CONTEMPT OF COURT
AND/OR CLARIFICATION OF THE PRELIMINARY INJUNCTION ORDER

investigation and the tone of the Letter of Counseling might have deterred a reasonable employee from engaging in protected activity, and the adverse actions alleged in plaintiff's complaint therefore meet the 'material adversity' standard").

Indeed, for just this reason, as stated above, California and EUSD regulations generally require administrative investigations to conclude within 60 days, Cal. Code Regs., tit. 5, § 4631; Jonna Decl., Ex. 30, AR 1312.3, and EUSD has set its own, shorter, 30 day timeline. Jonna Decl., Ex. 28, AR 1312.1(2). Further, when placed on involuntary paid leave, California postsecondary education teachers are entitled to have the investigation concluded within 90 working days—approximately 18 weeks. *See* Cal. Ed. Code § 87623(c). Although not directly applicable here, the analogy is apt. Yet Mrs. West has been on involuntary leave *for 28 weeks*.

Here, the issue is two-fold. EUSD's initial investigation based on a complaint filed in early May took until late September to be resolved—approximately *five* months. *But see* Cal. Code Regs., tit. 5, § 4631. And literally the week after it was resolved, a new complaint was filed, in early October, that has yet to be resolved over two months later. EUSD has a duty to investigate each and every complaint filed—no matter how retaliatory or frivolous, *see id.*—but the nature of their investigation should be commensurate with the frivolousness of the complaint. In other words, there is no requirement that EUSD keep Mrs. West on administrative leave pending its investigation.

The complaint at issue here was filed shortly after this Court's preliminary injunction order, by a student who was in Mrs. West's eighth grade P.E. class back in the 2018-2019 school year. (Thus, the student would be a high school Senior currently). Apparently, according to that complainant, Mrs. West had a habit of making racist comments in front of her class, including using specific racially derogatory terms. Oddly, the complainant did not bother to note Mrs. West's supposed racism until after this Court's preliminary injunction order, nobody else has ever accused Mrs. West of racism—in her thirty years of teaching—and even

from the two hundred or more students she would have taught in the 2018-2019 school year, no others have accused her of making racist comments. West Decl., ¶¶ 3-6.

To be sure, the content of the allegations is notable for its seriousness. If a teacher has a habit of using anti-black[4] racist terms, she should be not be teaching. But the extremeness of the allegations is equally the proof of their falsity. No teacher could use racist terms and remain teaching—with glowing reviews from nearly all of her students and peers—for thirty years. West Decl., ¶¶ 7-8. Rather, if tolerated, the complainant's strategy would be a fairly easy end-run around this Court's preliminary injunction order, with serial complaints filed just as the prior ones were resolved as unfounded. This cannot be.

### III.   Colleague Harassment Constitutes Adverse Action

With respect to Mrs. Mirabelli, EUSD's refusal to do *anything* to protect her from co-worker harassment, retaliation, or bullying is also adverse action against her. Under both California and federal law, "[w]orkplace harassment … may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for … retaliation cases." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 92 (4th Dist., Div. 1, 2017); *see Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) ("[C]o-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim."). Indeed, just this past summer, the Supreme Court stated unequivocally that "Title VII would be at war with itself" if co-worker "bias or hostility to a religious practice or a religious accommodation" was tolerated. *Groff v. DeJoy*, 600 U.S. 447, 472 (2023).

For over two months, Plaintiff Mirabelli has tried working with EUSD to get back to work, to no avail. While EUSD sometimes states that it will be

---

[4] Mrs. West is herself a person of color, so the alleged racism is specifically against African-American students. West Decl., ¶ 2.

18

Plaintiffs' Ex Parte Application for an OSC re: Civil Contempt of Court and/or Clarification of the Preliminary Injunction Order

accommodating, it has yet to agree to any specific actions to protect her. Every step, so far, has been an uphill battle, with three or more inquiries from Plaintiff's counsel on a specific topic before EUSD even acknowledges receipt of the inquiry (or states that it was somehow lost). *See* Mirabelli Decl., ¶ 12.

The October 20, 2023 protest ended up being fairly limited in size—but not so limited was the fear and emotional anguish it caused. Mirabelli Decl., ¶ 13. Moreover, EUSD has never substantively responded to how (without teacher supervision) or why (with teacher involvement) students were allowed into her classroom to post hateful posters. Nor has EUSD ever explained why the staff against whom Plaintiffs lodged complaints (for example, the band teacher who filmed the protest video lodged with this Court), were not themselves put on administrative leave. Mirabelli Decl., ¶¶ 2-11. Yet under California regulations, based on Mrs. Mirabelli's administrative complaints, a final report, in writing was due to be "sent to the complainant within 60 days." Cal. Code Regs., tit. 5, § 4631(e).

It is patently unreasonable for EUSD to insist that Mrs. Mirabelli come back when it has done absolutely nothing to ensure that she is neither harassed nor bullied—either by colleagues or students who lack the mental development to always appreciate the consequences of their actions. *Compare* ECF No. 5-3, ¶11 (student discussing "carrying a baseball bat to protect her homosexual brother"); *with L.W. v. Skrmetti*, 83 F.4th 460, 488 (6th Cir. 2023) (reversing preliminary injunction against states' ban on gender transition for minors because states could reasonably believe that minors lack the meaningful ability to consent to transition). Like above, EUSD has developed a fairly easy end-run around this Court's preliminary injunction order.[5]

---

[5] In light of the severity of the harassment and bullying directed at Plaintiff Mirabelli, she is currently receiving medical care. *See* Jonna Decl., Ex. 9 at pp.2-3, Email chain between counsel (Oct. 5-6, 2023). More recently, Mrs. Mirabelli has also experienced a secondary issue. *See* Mirabelli Decl., ¶ 14. But Plaintiffs have been unable to

## CONCLUSION

In light of the parties' impasse, Plaintiffs respectfully request that the Court issue an order to show cause re: why the EUSD defendants should not be held in civil contempt of court. Alternatively, to the extent that the Court views its order as insufficiently clear for a civil contempt finding, Plaintiffs request a clarifying order requiring EUSD to bring Plaintiffs back to work. In either eventuality, Plaintiffs also request that the Court order the EUSD Defendants to pay their reasonable attorneys' incurred in attempting to compel EUSD to comply with the Court's order. Plaintiffs' bills can be submitted to the Court along with a supplemental short memorandum.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: December 6, 2023          By: _____
                                      Charles S. LiMandri
                                      Paul M. Jonna
                                      Mark D. Myers
                                      Jeffrey M. Trissell
                                      Milan L. Brandon II
                                      Attorneys for Plaintiffs
                                      Elizabeth Mirabelli & Lori Ann West

---

identify this issue for EUSD, which refuses to take their calls or engage in any meaningful discussion.

## CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***
USDC Court Case No.: 3:23-cv-00768-BEN-WVG

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **Plaintiffs' Ex Parte Application for an Order to Show Cause re: Civil Contempt of Court and/or Clarification of the Preliminary Injunction Order;**
- **Declaration of Paul M. Jonna, Esq., in Support of Plaintiffs' Ex Parte Application for an Order to Show Cause re: Civil Contempt of Court and/or Clarification of the Preliminary Injunction Order;**
- **Declaration of Elizabeth Mirabelli in Support of Plaintiffs' Ex Parte Application for an Order to Show Cause re: Civil Contempt of Court and/or Clarification of the Preliminary Injunction Order;**
- **Declaration of Plaintiff Lori Ann West in Support of Plaintiffs' Ex Parte Application for an Order to Show Cause re: Civil Contempt of Court and/or Clarification of the Preliminary Injunction Order;**
- **[Proposed] Order to Show Cause Why the EUSD Defendants Should Not Be Held in Contempt of Court for Failing to Comply With the September 14, 2023 Preliminary Injunction Order.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Thomas Prouty, Deputy General Counsel
Len Garfinkel
California Department of Education
1430 "N" Street, Suite 5319
Sacramento, CA 95814
Tel: 916-319-0860; Fax: 916-322-2549
E-Mail: tprouty@cde.ca.gov
E-Mail: lgarfinkel@cde.ca.gov
**Attorneys for CDE Defendants**

Daniel R. Shinoff, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: Dshinoff@as7law.com
E-Mail: nlay@as7law.com
**Attorneys for EUSD Defendants**

____ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_X_ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

_X_ (**BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on December 6, 2023, at Rancho Santa Fe, California.

Kathy Denworth