ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
Jack M. Sleeth Jr., Esq. (SBN 108638)
jsleeth@as7law.com
3636 Fourth Avenue, Suite 200
San Diego, California  92103
Telephone: 619-232-3122
Facsimile: 619-232-3264

Attorneys for Defendant School Employees

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual , <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al. <br><br> Defendants. | Case No.: 23CV0768 BEN VET <br><br> **AMENDED DEFENDANT SCHOOL EMPLOYEES' OPPOSITION TO MOTION FOR CONTEMPT AND RESPONSE TO REQUEST FOR CLARIFICATION** <br><br> Judge: Hon. Roger T. Benitez <br> Courtroom: 5A <br> Hearing Date: January 10, 2024 <br> Hearing Time: 10:00 a.m. |

Defendants oppose the motion for contempt, but concur with the request for clarification of the Court's Order.

**A. Clarification of the Court's Order Would Be Helpful.**

The Court ordered the Defendants not to enforce against the Plaintiffs the policy of protecting students gender identity from their parents at the student's request and not to retaliate against either of them.

The Escondido Union School District Defendants, the State Defendants, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, and those who gain knowledge of

1

**AMENDED DEFENDANT SCHOOL EMPLOYEES' OPPOSITION TO MOTION**   **23CV0768 BEN VET**
**FOR CONTEMPT AND RESPONSE TO REQUEST FOR CLAIRIFCATION**
{AS7 Law San Diego/001290/000012/PL/S0568385.DOCX}

ARTIANO SHINOFF

1      this injunction order, or know of the existence of this

2      injunction order, are enjoined from enforcing against

3      Plaintiffs Mirabelli or West, EUSD AR 5145.3 or the

4      associated official policy described in the California

5      Department of Education's FAQs page on gender identity-

6      related disclosures by teachers to parents, and are to restrain

7      any governmental employee or entity from taking any adverse

8      employment actions thereupon against Plaintiffs Mirabelli or

9      West, until further Order of this Court.

10  Order Granting Motion for Preliminary Injunction, ECF No. 42 at p.36.

11     After the Court entered that order — in what seems to be direct opposition to the

12  Court's order — the California Attorney General threatened to sue the District if it does

13  not protect the privacy of students who wish to keep their gender identity secret from

14  their parents.  Dec. of Rankins-Ibarra, p. 2:7-12.  The Order did not address the

15  application of the policy with other teachers, whether religious or secular, or how the

16  District should respond to a student request to keep their gender identity confidential if

17  that student is in one of the Plaintiff's classes.

18     The District is unsure how to comply with State law, but absolutely sure how to

19  comply with the Court's Order.  The District does not require the two Plaintiffs to

20  comply with the State's required policy.  Dec. of Rankins-Ibarra, pp. 2:26 – 3:7.  This

21  confusion, the potential inconsistent policy position, the very strong emotional political

22  positions taken on both sides in this controversy, and the State's threats, have created

23  substantial disruption in the operation of the District.  The District is unsure how to treat

24  other teachers who assert religious beliefs in opposition to the policy, unsure how to

25  keep student gender-identity confidential as required by the State, and unsure how to

26  enforce the states policy of protecting student gender identity.  Clarification of the

27  Court's Order would very helpful.

28  / / /

*ARTIANO SHINOFF*

**AMENDED DEFENDANT SCHOOL EMPLOYEES' OPPOSITION TO MOTION**      **23CV0768 BEN VET**
**FOR CONTEMPT AND RESPONSE TO REQUEST FOR CLAIRIFCATION**
{AS7 Law San Diego/001290/000012/PL/S0568385.DOCX}

**A. Contempt Requires Clear and Convincing Evidence Not Present Here.**

To establish civil contempt, the moving party must demonstrate by clear and convincing evidence that the alleged contemnor violated a specific and definite court order by failing to take "take all reasonable steps within the party's power to comply." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Plaintiffs have not met that burden.  There is no evidence that would even approach the "clear and convincing" standard.  Actually, there is not any evidence any Defendant violated the order or any part of the order.

Contempt is not appropriate for many reasons.  Neither the District nor any of the Defendants have retaliated against the Plaintiff in violation of the Court's Order. Dec. of Rankins-Ibarra, p. 1:24-27.  More importantly, Plaintiffs have not identified a Defendant who they contend violated the Order.  The Plaintiffs' employer — the District --  is not a party.  The alleged delayed investigation was not delayed by the District, or any individual Defendant, but by the nature of the investigation.

**B. Plaintiff Mirabelli's Declaration Does Provide Evidence of Contempt**

Plaintiff Mirabelli's declaration does not provide evidence of any named defendant retaliating against her.  It does prove she requested to be placed on paid leave of absence before the Court issued the Order, and that the District accommodated that request.  It shows that teachers and students said things, some inappropriate and some protected political opinions.  It shows she was hurt by the comments and wanted to go on leave.  It proves she is not ready to return to work.  Dec. of Mirabelli, p. 5:16-18.  After the Order was issued, there is evidence that people marched on the streets, picketed and protested.  She does not provide any legal method the District could use to stop a peaceful protest off campus.

Plaintiff Mirabelli requested paid leave of absence before the Court issued the Order and the District accommodated her request.  After the Court issued its order, she again requested leave as an accommodation, and again, the District agreed.  The District has told her she can return to work whenever she wants.  Dec. of McGuire, p. 2:4-5.

3

1   The Assistant Superintendent met with Plaintiff Mirabelli and her counsel to
2   develop an agreement for her to return to work. *Id.* at 2:2-3.  She was concerned about
3   people protesting. *Id.* at 2:3.   He explained the situation and the District offered a plan
4   to provide her with security.  She is able to return to work whenever she is ready.  She
5   has not requested to return to work after that meeting. *Id.* at 2:6-7.  Moreover, she says
6   she is not now medically ready to return to work. Dec. of Mirabelli, p. 5:16-18.

7   The evidence she provides of comments made to her by students and teachers all
8   occurred before she went out on leave of absence and before the Court issued its order.
9   She requested the District protect her from all comments before she would return to
10  work.  But most of the conduct of teachers and students that she found hurtful are
11  outside the District's power to control, because those people have First Amendment
12  rights to oppose the position the Plaintiffs have taken, as long as they do not create a
13  disruption with their speech.   "It can hardly be argued that either students or teachers
14  shed their constitutional rights to freedom of speech or expression at the schoolhouse
15  gate." *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506
16  (1969).   She even went so far as to ask the District to issue a policy against discussing
17  the case on campus.  Dec. of Paul Jona, Ex 5.  That would be a violation of the First
18  Amendment and an illegal prior restraint.

19  She does not provide evidence of adverse conduct by any Defendant, or of
20  conduct any Defendant could legally stop, that occurred after the Order was issued.  The
21  only thing she says about conduct after the order was issued is that, "The school
22  community does not accept or even accommodate my sincere Christian beliefs. I believe
23  this is due to a lack of impartiality and neutrality on behalf of EUSD leadership, and a
24  failure to enforce Board Policy 1325 on the promotion of controversial issues."  Dec.
25  of Mirabelli, p. 5:4-7.  Her belief is not evidence of conduct by any named defendant in
26  violation of the Order. She also says the investigation into her complaints took a long
27  time and the District had great difficulty determining how it could meet her demands to
28  ensure no student or staff member expressed something she would object to. She does

ARTIANO SHINOFF

not identify any physical threat. All of her concerns are around comments and posters before the Order was issued and her fear of more comments if she returns. But she has been informed that she may return to work at any time.

### C.    Plaintiff West's Declaration Does Not Provide Evidence of Contempt

Plaintiff West was placed on paid leave of absence pending an investigation into allegations she made racial remarks in class. Dec. of Rankins-Ibarra, p. 3:26-4:2. She questions the validity of the complaint made by a student because the comments were made several years ago. That complaint requires an investigation, even if the validity of the complaint is doubted.

But it is entirely possible that these events triggered a memory in the student that persuaded them to bring forward a valid complaint. Nevertheless, there is only speculation, rather than evidence, that any named Defendants did anything to encourage the student to complain.

There has been some difficulty completing the investigation because of issues with scheduling of witnesses. The complaining party has agreed to extend the time for the investigation. Dec. of Rankins-Ibarra, p. 4:5-6.

Plaintiff West is on paid administrative leave for reasons completely unrelated to the Court's Order. A student formally complained about racial remarks West made and the District put her on leave pending an investigation into allegations. *Id.* Plaintiffs' counsel argues that complaint is suspect, but whether or not that is true, the District cannot ignore a complaint of racial discrimination from a student. The standard procedure is to place the accused person on leave and investigate. More likely is the fact the controversy brought some memories to the forefront in the minds of some students and produced this complaint. Nevertheless, placing a teacher on paid administrative leave pending an investigation into allegations of racist remarks in class is routine.

Plaintiffs' citation to the Education Code for the proposition that the investigation should have been done in 90 working days is misleading. That statute, Education Code section 87623, only applies to college teachers, not elementary school teachers, and the

5

ARTIANO SHINOFF

provisions for extensions in the statute were omitted.  Nevertheless, there is no evidence that the length of the investigation was illegal, and no evidence that the length of the investigation was extended as a retaliation in violation of the Court's Order.

Finally, on technical grounds, a contempt order would be improper for lack of certainty.  Plaintiffs speculated, but do not identify any Defendant who took any action against either Plaintiff, nor do they offer any evidence that any Defendant took any action to retaliate against either Plaintiff.  Plaintiffs argue they are afraid for their safety, but there is no evidence of any physical threat, or any indication of the likelihood of any physical harm to either plaintiff.

The conduct Plaintiffs describe by students and other teachers is largely protected speech. Although a complicated area of law, speech by a teacher acting as a citizen on an issue of public concern is protected speech. *Kennedy v. Bremerton School District*, 142 S.Ct. 2407, 2424 (2022).  Speech by students is also protected unless it is disruptive or violates the rights of others.  "[T]he conduct of students in the school setting, including their speech, may be restricted if either [1] it might reasonably [lead] school authorities to forecast substantial disruption of or material interference with school activities" or [2] it collides with the rights of other students to be secure and to be let alone." *Chen Through Chen v. Albany Unified School District*, 56 F.4th 708, 716–717, (9th Cir. 2022) cert. denied sub nom. *Epple v. Albany Unified School District* (2023) 143 S.Ct. 2641. (Internal quotations omitted.)

Plaintiffs may find the comments to be hurtful, but they are largely protected speech.  They were not sufficiently severe or pervasive to constitute harassment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Plaintiffs argue they are entitled to know about discipline of teachers or students, but, to the extent that the District has issued discipline to a student or teacher for their conduct against the Plaintiffs, that discipline is protected by privacy rights so that Plaintiffs are not entitled to be informed about that discipline.  "Our precedents demand that we 'engage in the delicate task of weighing competing interests' to determine whether the government may properly

ARTIANO SHINOFF

1   disclose private information." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999).

2       Plaintiffs are clearly unhappy with the intense controversy surrounding this issue,

3   which is not only local, but is arising in school districts across the Country. The

4   Defendants are unhappy with the controversy too.

5       **B.  Qualified Immunity Bars Attorney Fees**

6       Plaintiffs are seeking attorney fees.  But attorney fees are not appropriate in this

7   case.  These individual Defendants are entitled to qualified immunity.

8       **C. The Legal Issue Is a Novel Issue of First Impression**

9       The issue of students' rights to privacy for gender-identity issues is a novel issue.

10  It has only recently arisen and there was no case law when the decisions were made to

11  enforce the policy.  These individual Defendants believed they were complying with

12  state law in all their actions when they applied the advice from the Department of

13  Education.  Moreover, another federal court has ruled the other way on this issue.

14  *Regino v. Staley* (E.D. Cal., Mar. 9, 2023, No. 223CV00032JAMDMC) 2023 WL

15  2432920, at *1.  It was certainly not clear to the individual Defendants they might be

16  accused of contempt because of issues outside their control, such as the legal protests.

17  There is certainly no settled law on the issue.

18      **D.  Qualified Immunity Applies Where the Law Is Not Clear**

19      Qualified immunity applies to cases like this.   Qualified immunity seeks to

20  guarantee that public officials who are subjected to suit are on notice that their actions

21  were unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002). In order to make a determination

22  regarding qualified immunity, a court may first determine that, given the facts alleged

23  and, in the light most favorable to the plaintiff, the official's conduct violated the

24  plaintiff's constitutional right. *Saucier v. Katz*, 533 U.S. 194, 195 (2001). If a

25  constitutional right was violated, then it must be determined that the right was clearly

26  established. This determination rests upon the specific context of the case, and not a broad

27  general proposition. *Id*. Moreover, the court must inquire whether it would be clear to a

28  reasonable official that his or her conduct was unlawful in the given situation. *Id*. In

ARTIANO SHINOFF

7

1   *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court held that a court may determine
2   which prong of the analysis should be addressed first in light of the circumstances.

3       Here, it is indisputable that the issue is anything but clear, particularly when
4   another court has issued the opposite ruling.  These individual Defendants are entitled
5   to qualified immunity.

6       **E.  Attorney Fees are Damages Barred by Qualified Immunity**

7       Qualified immunity bars damages, including attorney fees and costs. *C.F. v.*
8   *Capistrano Unified School Dist.* (C.D. Cal. 2009) 656 F.Supp.2d 1190, 1199, aff'd sub
9   nom. *C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th Cir. 2011) 654 F.3d
10  975.  In that case, the court analyzed a similar issue and held that "the qualified
11  immunity defense also bars claims for costs and attorneys' fees." Ibid.

12      In that matter, the Court granted part of the Defendants' Motion for Summary
13  Judgment, ruling the Defendants were entitled to qualified immunity. Plaintiffs then
14  sought attorney fees after they were granted an injunction. The Court held that qualified
15  immunity protects defendants from liability for attorney fees as well as claims for costs.
16  The Ninth Circuit approved the analysis.  "Although Farnan sought only nominal
17  damages, the attorney's fees and costs for which Corbett could be liable absent the
18  protection of qualified immunity undoubtedly would be considerable after more than
19  three years of litigation*." C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th
20  Cir. 2011) 654 F.3d 975, 984.

21      The trial court in *C.F. v. Capistrano Unified School Dist.* relied on a similar case,
22  out of the Eleventh Circuit, which also held that costs, expenses and attorneys' fees are
23  barred by qualified immunity.

24      A question has been presented in this appeal about whether
25      the monetary damages which the defense of qualified
26      immunity bars include plaintiffs' claims for costs, expenses of
27      litigation, and attorneys' fees.7 The answer is "yes." We hold
28      that, for qualified immunity purposes, the term "damages"

8

1   includes costs, expenses of litigation, and attorneys' fees

2   claimed by a plaintiff against a defendant in the defendant's

3   personal or individual capacity.

4   *D'Aguanno v. Gallagher* (11th Cir. 1995) 50 F.3d 877, 881.  The court reached that

5   conclusion based in part on an analysis of the purpose of qualified immunity.

6   The policy that supports qualified immunity—especially

7   removing for most public officials the fear of personal

8   monetary liability — would be undercut greatly if

9   government officers could be held liable in their personal

10   capacity for a plaintiff's costs, litigation expenses, and

11   attorneys' fees in cases where the applicable law was so

12   unsettled that defendants, in their personal capacity, were

13   protected from liability for other civil damages.

14   *D'Aguanno v. Gallagher*, supra, at 881.

15   The *D'Aguanno* Court also relied on legislative history and policy to reach its

16   conclusion:

17   Because section 1988, especially when read in the light of its

18   legislative history, requires no award of costs, litigation

19   expenses, or attorneys' fees from defendants in their personal

20   capacity and because the policy underlying qualified

21   immunity would in no way be advanced by the award of such

22   costs and fees against defendants in their personal capacity,

23   we hold that such awards, even in actions for injunctive and

24   declaratory relief, are barred when the defendant's conduct

25   meets the objective good faith standard encompassed by the

26   qualified immunity doctrine.

27   *Ibid*.

28   / / /

ARTIANO SHINOFF

9

Because these individual Defendants could not have known that complying with the advice from the State on the issue of student gender-identify-privacy was against federal law, they are entitled to the defense of qualified immunity, it follows that, under the controlling case law, Plaintiffs' are not entitled to recover any damages, which includes costs, expenses of litigation, and attorneys' fees claimed by Plaintiffs. That bar applies equally to this motion for contempt where the individual have not done anything that is in violation of clearly settled law.

Dated: December 27, 2023          ARTIANO SHINOFF

By: _____

Daniel R. Shinoff
Jack M. Sleeth Jr.
Attorneys for Defendant School Employees

ARTIANO SHINOFF