1  ROB BONTA
   Attorney General of California
2  DARRELL W. SPENCE
   Supervising Deputy Attorney General
3  KEVIN L. QUADE
   Deputy Attorney General
4  EMMANUELLE S. SOICHET
   Deputy Attorney General
5  State Bar No. 290754
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone:  (415) 510-4426
7   Fax:  (415) 703-5843
    E-mail:  Emmanuelle.Soichet@doj.ca.gov
8  *Attorneys for Defendant*
   *Attorney General Rob Bonta*
9
                IN THE UNITED STATES DISTRICT COURT
10
             FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11

12

13

14 | **ELIZABETH MIRABELLI, an** | 3:23-cv-0768-BEN-VET
   | **individual, and LORI ANN WEST,** |
15 | **an individual,** |

16 |                    Plaintiffs, | **ATTORNEY GENERAL BONTA'S**
   |                                 | **NOTICE OF MOTION AND**
17 |         **v.**                 | **MOTION TO DISMISS**
   |                                 | **COMPLAINT; MEMORANDUM**
18 |                                 | **OF POINTS AND AUTHORITIES**
   | **MARK OLSON, in his official** |
19 | **capacity as President of the EUSD** | Date:      April 1, 2024
   | **Board of Education, et al.,**  | Time:      10:30 a.m.
20 |                                 | Dept:      5A
   |                    Defendants.  | Judge:     The Honorable Roger T.
21 |                                 |            Benitez
   |                                 | Action Filed:      April 27, 2023
22

23

24 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25

26      PLEASE TAKE NOTICE that on April 1, 2024, at 10:30 a.m. at the United

27 States District Court, Southern District of California, Edward J. Schwartz United

28 States Courthouse, 221 West Broadway, San Diego, California 92101, Courtroom

---

5A, 5th floor, Defendant Attorney General Rob Bonta will and does hereby move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction.  This motion is made following the conference of counsel that took place on February 15, 2024.

The motion is based upon the Notice, the Memorandum of Points and Authorities, the pleadings and papers filed herein, the Request for Judicial Notice filed concurrently, and any argument the Court may hear.

Dated:  February 23, 2024                     Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
KEVIN QUADE
Deputy Attorney General

/s/ Emmanuelle S. Soichet
EMMANUELLE S. SOICHET
Deputy Attorney General
*Attorneys for Defendant Attorney General Rob Bonta*

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................1

Background...................................................................................2

    I.    Factual Background ................................................2

    II.   Procedural Background............................................3

Legal Standard .............................................................................4

Argument ....................................................................................5

    I.    Plaintiffs Lack Constitutional Standing to Sue The Attorney General, And Thus The Court Lacks Subject Matter Jurisdiction ....... 5

        A.   Plaintiffs Have Failed to Allege Any Past Injury Traceable to The Attorney General .................................5

        B.   Plaintiffs Have Failed to Allege Any Injury Traceable to Attorney General Bonta Based on His Enforcement of State Law .......................................................................9

            1.   EUSD's Policy is not required under State law, and the Attorney General has never threatened EUSD with enforcement should EUSD fail to enforce its Policy................................................................ 10

            2.   Plaintiffs have not alleged any injury caused by the Attorney General's alleged actions, and any such inferred injury is purely speculative.............................. 12

    II.   The Attorney General Should be Dismissed as a Defendant Because He Enjoys Eleventh Amendment Immunity from Suit ........ 14

Conclusion ................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Coal. to Defend Affirmative Action v. Brown*
674 F.3d 1128 (9th Cir. 2012) ............................................................... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*
511 U.S. 375 (1994) ................................................................................. 4

*LSO, Ltd. v. Stroh*
205 F.3d 1146 (9th Cir. 2000) ........................................................ *passim*

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ......................................................................... 5, 13

*Nat'l Audubon Soc'y, Inc. v. Davis*
307 F.3d 835 (9th Cir. 2002) ................................................................ 15

*Peace Ranch, LLC v. Bonta*
__ F.4th __, No. 22-16063 (9th Cir. Feb. 13, 2024) ............................ 14

*People v. Chino Valley Unified School District* (*Chino Valley*)
No. CIV SB 2317301 (Cal. Super. Ct., San Bernardino County,
Aug. 28, 2023) ................................................................................ *passim*

*Snoeck v. Brussa*
153 F.3d 984 (9th Cir. 1998) ................................................................ 15

*Southern Pac. Transp. Co. v. Brown*
651 F.2d 613 (9th Cir. 1980) ................................................................ 15

*Steckman v. Hart Brewing, Inc.*
143 F.3d 1293 (9th Cir. 1998) ................................................................ 8

*Valley Forge Christian Coll. v. Ams. United for Separation of Church*
*& State*
454 U.S. 464 (1982) ................................................................................. 5

*Virginia House of Delegates v. Bethune-Hill*
139 S. Ct. 1945 (2019) ............................................................................. 5

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Warren v. Fox Family Worldwide, Inc.*
  328 F.3d 1136 (9th Cir. 2003) ................................................................ 4

*Wash. Env't Council v. Bellon*
  732 F.3d 1131 (9th Cir. 2013) ................................................................ 6

*Ex parte Young*
  209 U.S. 123 (1908) ....................................................................... 14, 15

STATUTES

California Education Code § 33308.5 .................................................. 7, 16

U.S. CONSTITUTIONAL PROVISIONS

First Amendment ................................................................... 1, 3, 8, 10

Eleventh Amendment ........................................................... 2, 14, 15, 16

Article III .............................................................................. 5, 14, 16

Article VI ....................................................................................... 14

**INTRODUCTION**

This case involves a dispute between the Escondido Union School District (EUSD) and two of its teachers over a religious accommodation they seek to a local district policy.  At issue is the district's antidiscrimination policy regarding transgender and gender non-conforming students, which Plaintiffs Elizabeth Mirabelli and Lori Ann West allege violates their First Amendment rights to free speech and free exercise.  Plaintiffs have made clear that they do not challenge any state law in their lawsuit and expressly allege that no state law required EUSD to adopt the challenged policy.  However, responding to this Court's directive to amend their complaint to add California Attorney General Rob Bonta as a defendant, Plaintiffs have now tried to muddy the waters with factual allegations about state-level actions in an effort to shoehorn the Attorney General into this local dispute.  This effort is not enough, as Plaintiffs have failed to allege a justiciable controversy against the Attorney General in what, ultimately, just remains a case between them and EUSD.

Specifically, the Attorney General moves to dismiss the first amended complaint because Plaintiffs have failed to meet the constitutional requirements for standing to bring suit against the Attorney General.  Plaintiffs have alleged no past injury traceable to the Attorney General, as they allege no state involvement in the adoption or enforcement of EUSD's policy.  Plaintiffs have also failed to allege any actual, ongoing injury attributable to the Attorney General during the course of this litigation.  While they suggest the Attorney General is a "driving force" behind EUSD's policy and point to numerous recent actions he has taken statewide to protect transgender students, they ignore the simple fact that the challenged Policy is not required by state law.  The Attorney General has never suggested it is, nor has he threatened EUSD if it did not enforce its own policy.  And, even if he had, any suggestion by Plaintiffs that this caused them harm—after they had already secured a preliminary injunction against EUSD—or that it will somehow lead

1

EUSD to defy future Court orders is purely speculative, and thus insufficient to confer standing.

Finally, Plaintiffs' claims are barred by Eleventh Amendment sovereign immunity, which the Attorney General enjoys here because he has no direct connection to enforcement of any state law at issue in this case.

For these reasons, the Court should grant the motion and dismiss all claims against Attorney General Bonta.

## BACKGROUND

### I.   FACTUAL BACKGROUND

Plaintiffs Elizabeth Mirabelli and Lori Ann West (Plaintiffs) are middle school teachers in the Escondido Union School District (EUSD).  ECF No. 80 (First Amended Complaint or FAC) at ¶¶ 20-21.  In August 2020, EUSD administrators adopted a district policy regarding discrimination on the basis of gender identity. *Id.* ¶¶ 118-119.  That policy, known as AR 5145.3, requires all EUSD staff to use gender non-conforming students' preferred pronouns and names.  *Id.* ¶ 119; *see* FAC, Ex. 3 (Policy).  It also, among other requirements, prohibits staff from disclosing a gender non-conforming student's status "to individuals who do not have a legitimate need for the information" without the student's consent.  *Id.* ¶ 132, Ex. 3 at 5 (EUSD "shall only disclose the information to others with the student's prior consent, except when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being."); Ex. 4 at 7.

Mirabelli and West allege a common religious belief that "God immutably creates each person as male or female" and that "rejection of one's biological sex is a rejection of the image of God within that person." *Id.* at ¶¶ 96, 104.  They "also believe that they cannot affirm as true those ideas and concepts that they believe are not true, nor can they aid and abet the deception of others."  *Id.* at ¶ 97.  They also share a religious belief "that the parent-child relationship was ordained by God and

1  that parents have the ultimate right and responsibility to care for and guide their
2  children." *Id.* at ¶¶ 83, 92.

3      After the Policy was announced, Mirabelli and West requested a religious
4  accommodation from EUSD regarding (1) the Policy's requirement that they use
5  students' preferred names and pronouns, and (2) the prohibition on disclosure of
6  this information to the students' parents or guardians. *Id.* at ¶¶ 135, 180-187.
7  EUSD and Plaintiffs then began a religious accommodation process that included
8  multiple meetings and follow-up communications between Mirabelli, West, their
9  lawyers, a mediator, and EUSD staff and counsel. *Id.* at ¶¶ 189-191, 202-208.
10  Ultimately, EUSD and Plaintiffs agreed to an accommodation on Plaintiffs' request
11  regarding use of students' preferred names and pronouns. *Id.* at ¶ 210.  But they
12  did not reach an agreement on an accommodation regarding disclosure of students'
13  gender non-conforming status to parents. *Id.* at ¶¶ 211, 218.

14  **II.   PROCEDURAL BACKGROUND**

15      In April 2023, Plaintiffs filed suit against various EUSD defendants, the
16  California Department of Education, the California Superintendent of Public
17  Instruction, and members of the California State Board of Education.  ECF No 1 at
18  ¶¶ 23-46.  Plaintiffs' complaint alleged that the Policy violates Plaintiffs' First
19  Amendment rights to free speech and free exercise. *Id.* at ¶¶ 217-280.  Plaintiffs
20  also sought a declaration that the "conclusions" in a "Frequently Asked Questions"
21  guidance webpage posted by the California Department of Education (and referred
22  to as the "FAQ page") "violate the U.S. Constitution." *See id.* at ¶¶ 189, 285.  The
23  complaint did not specify which Constitutional provision the FAQ page violated.
24  *Id.* at ¶ 285.

25      In September 2023, the Court granted Plaintiffs' motion for preliminary
26  injunction and denied motions to dismiss filed by the defendants.  ECF No. 42.  The
27  California Department of Education then filed a motion for judgment on the
28  pleadings.  ECF No. 53.

3

Following a hearing on that motion held on January 8, 2024, the Court ordered Plaintiffs to add "the Attorney General and the State of California."  ECF No. 72. Plaintiffs then requested clarification of that order, acknowledging that sovereign immunity prevented the addition of the State, and also seeking to expand their free speech and free exercise claims to include a new challenge to the FAQ page and an accompanying legal advisory.  *See* ECF No. 77, Ex. A (proposed FAC) at ¶¶ 265, 266, 268-270, 271-273, 283, 285-293, 296, 301, 305-313 (expanding the causes of action).  The Court ultimately rejected Plaintiffs' request to expand their claims to challenge the FAQ page and the legal advisory.  ECF No. 79.

On January 29, 2024, Plaintiffs filed their first amended complaint, adding Attorney General Bonta and Governor Newsom as defendants, and stating the same claims that were asserted in the original complaint.  ECF No. 80.  (Governor Newsom is also filing a motion to dismiss.)

Throughout their amended complaint, Plaintiffs repeatedly allege that the challenged Policy is a locally adopted policy "*not* required by any provision in California law," including by the FAQ page, which is nonbinding guidance that does not have the effect of law.  FAC ¶¶ 131, 192, 219 (emphasis in original), 222. As such, Plaintiffs state unequivocally that they "do not contend that any provision of California law . . . violates the U.S. Constitution."  *Id.* at ¶ 219.  Rather, they expressly state, "[t]his lawsuit concerns solely whether EUSD's own Parental Exclusion Policies violate the Constitution."  *Id.*

## LEGAL STANDARD

The party asserting federal subject matter jurisdiction bears the burden of establishing its existence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or based upon extrinsic evidence.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

1

**ARGUMENT**

**I.    PLAINTIFFS LACK CONSTITUTIONAL STANDING TO SUE THE ATTORNEY GENERAL, AND THUS THE COURT LACKS SUBJECT MATTER JURISDICTION**

Plaintiffs' claims against the Attorney General should be dismissed in their entirety because Plaintiffs have failed to allege any past, present or future concrete injury traceable to the Attorney General sufficient to confer standing to sue him.

Article III of the United States Constitution confines the jurisdiction of federal courts "to the resolution of cases and controversies."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982).  To establish standing necessary for a justiciable case or controversy, a plaintiff must demonstrate: (1) a concrete and particularized injury in fact; (2) a causal connection between the injury and defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Here, Plaintiffs past injuries are not traceable to the Attorney General since they involve a purely local dispute between Plaintiffs and EUSD over a policy that Plaintiffs concede is not required by state law.  In addition, any allegations of future harm by the Attorney General based on his actions to enforce state law against other school districts with categorically different forced-disclosure policies are simply too hypothetical and speculative to establish a credible risk of imminent harm.

**A.    Plaintiffs Have Failed to Allege Any Past Injury Traceable to the Attorney General**

The Attorney General is aware the Court has determined that Plaintiffs have alleged an actual, concrete, and particularized injury in that they requested and were partially denied a religious accommodation from the Policy adopted by EUSD.  *See* FAC ¶¶ 184, 187, 189-191; 202-215; *see also* ECF No. 42 at p. 35:16-19 (Plaintiffs "are compelled to violate the parent's rights by forcing plaintiffs to conceal

5

information they feel is critical for the welfare of their students – violating plaintiffs' religious beliefs"). But whatever injury stems from the Policy is not traceable to the Attorney General.

To satisfy the causality element for constitutional standing, Plaintiffs must show that their injury is "causally linked or fairly traceable" to the Attorney General's alleged misconduct. *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013). "The line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Id.* (citations and quotes omitted).

As alleged, EUSD administrators alone enacted the challenged Policy in 2020, alone provided staff trainings regarding its interpretation, and alone drafted internal Q&A guidance and implementing forms. FAC ¶¶ 118-130, 133-136, 152, 155-156. The district alone fielded complaints of Policy violations and alone negotiated with Plaintiffs over a possible religious accommodation from the Policy's requirements. *Id.* ¶¶ 120, 189-191, 202-211. Notably, Plaintiffs have not alleged that the Attorney General has had any involvement in EUSD's adoption or enforcement of the Policy, at any stage, whether against Plaintiffs or others. This point is dispositive for standing purposes because Plaintiffs' alleged constitutional injuries, as they describe and articulate them in their Complaint, flow entirely and exclusively from EUSD's Policy.

Perhaps Plaintiffs theoretically could have alleged an injury traceable to the Attorney General had the Attorney General actively required EUSD to adopt the Policy as a matter of state law in 2020. *See e.g.*, *LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) (plaintiff alleged sufficient injury to name the California Department of Alcoholic Beverage Control as the defendant in suit challenging state regulation based on the agency's enforcement of the regulation against its third-party licensees). In fact, EUSD essentially made this argument when it previously submitted to the Court that the California Department of Education's FAQ guidance mandated adoption of its Policy challenged in this lawsuit. *See* ECF

No. 16 at 5-7 (asserting the Policy is "consistent" with various state laws, but "require[d]" by the guidance); ECF No. 42 at 9, 31.

But Plaintiffs have made no such allegation and, more importantly, such arguments are unequivocally wrong.  Plaintiffs, the Attorney General, and the California Department of Education and State Board of Education defendants all agree that EUSD's current Policy is not required by any California law, whether enforced by the Attorney General or other State officials.  *See* FAC ¶¶ 219 ("As stated above, it is clear that EUSD's Parental Exclusion Policy, as documented in AR 5145.3, is not required by any provision in California law"), 247, 283.  This includes the California Department of Education's 2016 legal advisory and FAQs guidance, which is the only state "policy" identified in the lawsuit and which, as a matter of undisputed state law, is non-binding.  *See* Cal. Educ. Code § 33308.5 (all Department of Education guidance is non-binding); FAC ¶¶ 131, 192, 221 (alleging the guidance is non-binding); *see also* ECF No. 53 at 10 (State Board of Education and California Department of Education stating that the FAQs are non-binding and "do not require Plaintiffs or EUSD to do anything").  And, as the complaint makes clear, because no state law requires the Policy, no state law is challenged in the lawsuit.  *Id.* ¶ 219.

To be clear, the Attorney General has never previously taken the position, whether in legal filings or public statements, that the California Department of Education's FAQ guidance is binding.  Nor did the Attorney General sue another school district for failing to "follow" the guidance, despite Plaintiffs' assertion to the contrary.  *See* FAC ¶¶ 240, 247.  In *People v. Chino Valley Unified School District* (*Chino Valley*), No. CIV SB 2317301 (Cal. Super. Ct., San Bernardino County, Aug. 28, 2023), the Attorney General sued the school district for adopting a "forced-disclosure" policy on the basis that the policy violated California constitutional and statutory protections for student privacy, equal protection, and against discrimination.  Request for Judicial Notice (RJN) Ex. 1 at ¶¶ 109-129.  The

7

FAQ guidance did not serve as a basis for those legal claims.  Rather, that lawsuit references the California Department of Education's guidance in a single background allegation related to the general risks of discrimination and harassment experienced by transgender and gender non-conforming students.  *Id.* at ¶ 37.  In that allegation, the Attorney General expressly stated the guidance was a recommendation only: "[r]ecognizing these risks, the California Department of Education has issued statewide guidance since at least 2014, *generally recommending* that school officials and staff members not 'out' students to their parents or guardians against the students' wishes."  *Id.* (emphasis added).  Any allegation by Plaintiffs that the Attorney General sued Chino Valley Unified School District for failing to follow the FAQ guidance—or any inference that FAQ is enforceable state law binding on EUSD—is demonstrably false on its face and must be disregarded.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").  Again, this is a dispositive point for the standing analysis because the only purported connection between state law and EUSD's injury-causing Policy is premised on the erroneous legal assumption—advanced by defendant EUSD and directly refuted by allegations in the complaint—that the FAQs are binding state law.[1]

Ultimately, Plaintiffs' alleged injury is based on the sole ground that the Policy adopted in 2020 violates their First Amendment rights to free speech and

---

[1] Moreover, such an inference seems to rest on a mistaken understanding that school districts face only two choices: to "follow" the FAQ page or violate state law.  The reality is that there is not only one policy on this topic that complies with state law.  As noted by the Attorney General in recent guidance, local districts have the flexibility under state law to craft individually tailored policies to account for multiple concerns and needs, with the understanding that there are legal guideposts in state law related to privacy, equality, and discrimination that schools must abide by.  RJN Ex. 5 at 2 (noting "numerous feasible and effective alternatives to forced disclosure policies exist").  For that reason, the FAQ page itself does not mandate a specific policy, linking instead to a "model" policy it states was developed by a third party and that the California Department of Education merely "recommended [be] reviewed" by school districts.  RJN Ex. 2 at 2; RJN Ex. 3 at 10 (noting the policy "*can* be adopted").

free exercise.  FAC ¶¶ 217-280.  The Policy EUSD chose to adopt was not mandated by state law, nor did the Attorney General have any involvement in its adoption or enforcement.  Because Plaintiffs' past injury is not traceable to any action by the Attorney General or any challenged state law for which the Attorney General has the responsibility to enforce, it is insufficient to confer standing against him here.

### B.  Plaintiffs Have Failed to Allege Any Injury Traceable to Attorney General Bonta Based on His Enforcement of State Law

To the extent that Plaintiffs now seek to add the Attorney General to their dispute with EUSD on the theory that he is a "driving force" behind EUSD's defense of its Policy or that he is exerting pressure on EUSD by threatening to sue the district if it does not maintain its Policy, this is both factually unsupported and legally insufficient.  As explained below, any such allegations rely on pure speculation and are insufficient to demonstrate a direct causal connection between the Attorney General's conduct and any hypothetical injury to Plaintiffs, and thus cannot establish standing to sue the Attorney General.

The Ninth Circuit's decision in *LSO* squarely addresses the question of whether and when a plaintiff has standing to sue a state agency that is the alleged "driving force" behind a third party's action that directly caused the plaintiff's injury.  *See LSO, Ltd. v. Stroh*, 205 F.3d 1146.  In *LSO*, the Court allowed an organization seeking to hold an erotic art and trade show to sue the California Department of Alcoholic Beverage Control based on that agency's alleged attempted to prevent its licensees (a convention center and hotels) from hosting the art exhibition on their premises.  *Id.* at 1150.  It was undisputed that a state regulation prohibited the exhibition from occurring on the licensees' premises.  *Id.* at 1151.  Ahead of the exhibition, agency officials took a number of actions to threaten enforcement of this regulation against its licensees, including sending targeted letters to and meeting with the affected licensees, and repeatedly speaking

with the convention center director about the exhibition and warning that the convention center "faced a threat of disciplinary action" if it allowed the art exhibition to proceed. *Id.* When the convention center then barred the art exhibition based on fear of agency sanctions, plaintiff sued the agency, claiming the regulation violated its First Amendment rights. *LSO*, 205 F.3d at 1152, 1158. On appeal, the Ninth Circuit rejected the agency's argument that it had not injured plaintiff, holding that the plaintiff had sufficiently alleged a particularized injury stemming from the agency's actions because the agency censored plaintiff's exhibition "by applying pressure and threats to a necessary conduit: the licensees whose facilities LSO must rent in order to hold its shows." *Id.* at 1153.

Here, Plaintiffs' complaint fails to allege the type of direct, causal connection between the injury-causing conduct of EUSD and the actions of the Attorney General that *LSO* requires for standing. Plaintiffs have identified three actions by the Attorney General: (1) the enforcement action in the *Chino Valley* case, FAC ¶¶ 240-241, RJN Ex. 1; (2) the issuance of two guidance documents to school districts statewide, FAC ¶¶ 243-244, RJN Exs. 4, 5; and (3) a conversation with EUSD in which lawyers from the Attorney General's office allegedly stated that they "would consider" enforcement against EUSD "if [it] did not protect the gender identity of students when the student requested it." FAC ¶ 245. But each of these factual allegations, on their face, fail to demonstrate what Plaintiffs must establish for standing—that the Attorney General has conveyed, through words or action, that the Policy challenged in this case is mandatory, and EUSD's failure to enforce it will subject the school district to punitive enforcement such that the Attorney General can be held liable for Plaintiffs' alleged injuries.

### 1. EUSD's Policy is not required under state law, and the Attorney General has never threatened EUSD with enforcement should EUSD fail to enforce its Policy

Critically, the Attorney General has never suggested to EUSD—and Plaintiffs have not so alleged—that the district must maintain the challenged Policy or face

10

enforcement for violating state law.  As explained above, Plaintiffs have explicitly (and correctly) alleged in their complaint that EUSD's Policy is not required by state law.  *See* FAC ¶¶ 219, 247, 283.  To the contrary, the Policy is not the only possible gender identity policy that complies with state law.  In fact, the Attorney General has made clear in the guidance documents that Plaintiffs themselves cite that school districts have the flexibility in drafting policies around student gender identity to balance multiple interests at issue, including medical needs of students. RJN Ex. 5 at 2.  This fact stands in stark contrast to *LSO*, where there was only one way to comply with state law (i.e., do not display erotic art) and where agency officials specifically told licensees in no uncertain terms that plaintiffs' intended art exhibit was unlawful and would lead to sanctions against the licensees if they allowed the event to take place.  *LSO*, 205 F.3d at 1153-54.

This explains why none of the actions that Plaintiffs have highlighted here rise to the level of a threat and are not comparable to the regulatory threats at issue in *LSO*.  For instance, unlike the targeted letters sent to the involved licensees after their meeting with agency officials in *LSO*, the guidance documents here contained general information sent to all school districts in California regarding the legality forced-disclosure policies, which are a categorically different type of policy than EUSD's Policy.[2]  RJN Ex. 4 (Sept. 26, 2023 letter titled "Guidance Regarding Forced Disclosure Policies Concerning Gender Identity"); RJN Ex. 5 ("Forced Disclosure Policies re: Transgender and Gender Nonconforming Students").  While one guidance letter did refer to this lawsuit, it did so to distinguish this matter from

---

[2] While EUSD's Policy has a default position of protecting a student's non-conforming gender identity from disclosure, a forced-disclosure policy (the impetus for the Attorney General's guidance) has the opposite default position of requiring school staff to notify a student's parents and guardians whenever a student requests to use a pronoun or name different than that on their birth certificate or official records, without the student's consent and regardless of the impact on a student's health or well-being.  *See* FAC ¶ 239; RJN Ex. 5 at 1.  As a result, forced-disclosure policies necessarily implicate different legal concerns than student-protective policies—namely infringement of privacy, equal protection and antidiscrimination protections—and do so for all gender non-conforming students within those districts.

the forced-disclosure policy in *Chino Valley*—and not to suggest that EUSD or any other school district would face enforcement if they failed to adopt and enforce a policy like EUSD's. *See* RJN Ex. 4 at 2.

As for the conversation between EUSD and the Attorney General's office, Plaintiffs effectively concede the purpose of the call was "to explain the same" information as the legal guidance to EUSD. *See* FAC ¶ 245. During that call, however, they allege lawyers for the Attorney General stated that the Attorney General "would consider" enforcement against EUSD if it "did not protect the gender identity of students when the student requested it." *Id.* But the statements attributed to the Attorney General's office are at most vague and hypothetical: "considering" enforcement is vastly different from pursuing it. And, when read in context with the guidance the call was describing, such statements can be understood as conveying that the Attorney General *might* enforce state law *if* EUSD were to adopt a forced-disclosure policy—which EUSD has not shown any intention to do. Again, unlike the clear statements in *LSO*, nothing in the content of this interaction gives any indication that EUSD's challenged Policy was mandatory under state law or that the district would be subject to enforcement for failing to enforce this specific Policy. Without such clear and concrete factual allegations that establish actual conduct by the Attorney General that is responsible for EUSD continuing to enforce its allegedly injurious Policy, as required by *LSO*, Plaintiffs' allegations amount to nothing more than vague and conditional allusions to potential future enforcement of state law, predicated on a hypothetical change in EUSD policy.[3]

### 2. Plaintiffs have not alleged any injury caused by the Attorney General's alleged actions, and any such inferred injury is purely speculative

---

[3] Moreover, there is no allegation that EUSD could not challenge state law on its own should the Attorney General threaten to enforce state law against it—a critical point in *LSO*. *See LSO*, 205 F.3d at 1154 (finding persuasive that none of the state agency's licensees "would be likely to litigate this issue").

Even if the Attorney General's alleged actions could be construed as a threat to EUSD, Plaintiffs have not alleged (and cannot show) that EUSD has heeded or will heed the threat, causing Plaintiffs injury.  Thus, any purported injury to Plaintiffs based on the Attorney General's alleged actions is purely speculative.

The Supreme Court has long cautioned that, when a plaintiff's asserted injury arises from the government's regulation of a third party, standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (quotation marks and citation omitted).  This is because, in this circumstance, causation "hinge[s] on the response of the regulated" and thus the elements of standing depend on the choices of independent actors. *Id.*  In *LSO*, the Ninth Circuit found that the plaintiff had surmounted this causation hurdle and had properly alleged an injury directly traceable to the state agency because the facts clearly showed the agency's threats caused the convention center to take action in compliance with the threat, barring plaintiff's art exhibition and effectively choking its ability to hold the event. *LSO*, 205 F.3d at 1153.

No such injury directly attributable to the Attorney General's actions has been alleged here.  It is unclear what harm could even be alleged.  EUSD defended its Policy in mediation and then repeatedly in motions before the Court long before the Attorney General issued a single piece of guidance or took action in *Chino Valley*. ECF Nos. 16, 17.  To the extent Plaintiffs ask this Court to infer from the allegations that EUSD's continued defense of the Policy in litigation since September 2023 is attributable to the Attorney General, such an inference is rank speculation.  There are countless reasons a party may choose to continue litigating after an initial adverse order, not least of which here may be the district's own desire to enforce its Policy.

Moreover, there is no indication (or allegation even) that the Attorney General's forced-disclosure guidance or conversation with EUSD will at some unspecified time in the future cause EUSD to defy the Court's preliminary

13

injunction order or a final judgment.  Should Plaintiffs prevail on their free exercise claim, the starting assumption must be that EUSD will comply with the Court's decision.  Plaintiffs have not alleged otherwise, nor has EUSD given any indication in any submission before this Court that it does not intend to comply with Court orders.  It is doubly speculative and ignores basic principles of federalism to assume that any such defiance would be attributable to the Attorney General, particularly given that federal constitutional rights are supreme to state law.[4]  *See* U.S. Const. art. VI; *see also* RJN Ex. 1 (*Chino Valley* complaint raising state law causes of action), Ex. 5 at 1-3 (guidance discusses only state law).  Regardless, Article III here requires Plaintiffs to have standing to sue at the time of filing and not in some hypothetical future.  *Peace Ranch, LLC v. Bonta*, __ F.4th __, No. 22-16063 *8 (9th Cir. Feb. 13, 2024).

Because Plaintiffs cannot trace any actual and concrete injury to any of the Attorney General's alleged actions, they lack standing to sue and their claims should be dismissed.

## II.   THE ATTORNEY GENERAL SHOULD BE DISMISSED AS A DEFENDANT BECAUSE HE ENJOYS ELEVENTH AMENDMENT IMMUNITY FROM SUIT

Separate and apart from standing concerns, Plaintiffs' attempt to haul the Attorney General into court is barred by the Eleventh Amendment because the Attorney General does not have any direct connection to or responsibility for enforcement of any policy or law directly challenged in this lawsuit.

The Eleventh Amendment generally bars federal lawsuits brought against a state.  "It does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).  For the *Ex*

---

[4] For this same reason, any future injury to Plaintiffs caused by EUSD's hypothetical decision to defy a final judgment would not likely be redressed by granting them relief against the Attorney General.  *Contra* ECF No. 42 at 32.

*parte Young* exception to apply, the official must have "some connection" with enforcement of the challenged act. *Ex parte Young*, 209 U.S. at 157; *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (finding action for injunctive and declaratory relief against California Governor and Secretary of Resources barred by Eleventh Amendment "as there is no showing that they have the requisite enforcement connection" to challenged ballot proposition). Without such a connection, suit against an official "would be equivalent to suit against the state and would violate the Eleventh Amendment." *Southern Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980).

The nexus required to overcome Eleventh Amendment immunity "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quoting *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The relevant inquiry then is "whether a named state official has direct authority and practical ability to enforce the challenged statute." *Nat'l Audubon Soc'y*, 307 F.3d at 846.

Despite bending over backwards to shoehorn the Attorney General into their existing legal claims, Plaintiffs have failed to identify any direct connection between the Attorney General and an enforceable state law or policy actually at issue in this case. That is because—as Plaintiffs themselves maintain—this case remains at its core a local dispute between EUSD and Plaintiffs over the scope of EUSD's Policy, which is not required by any state law enforced by the Attorney General. *See* FAC ¶ 219 (reiterating that the Policy "is *not* required by any provision in California law" and that "[t]his lawsuit concerns solely whether EUSD's own Parental Exclusion Policies violate the Constitution").

Again, the only state "policy" identified in Plaintiffs' complaint is the California Department of Education 2016 legal alert and accompanying FAQs page. But the California Department of Education issued the FAQ guidance, not the

Attorney General.  Moreover, Plaintiffs and all the State defendants agree that this guidance is non-binding, as a matter of undisputed state law.  *See* Cal. Educ. Code § 33308.5 (all Department of Education guidance is non-binding); FAC ¶¶ 131, 192, 221; ECF No. 53 at 10.  The Attorney General has no enforcement power over any non-binding guidance, which is, by definition, not enforceable law.  *See* FAC ¶ 192 ("This type of Legal Advisory or FAQ page is not a formal agency interpretation subject to any judicial deference. *See Am. Nurses Assn. v. Torlakson*, 57 Cal. 4th 570, 588 (2013).")

Plaintiffs nonetheless try to have it both ways, conceding on the one hand that the guidance is non-binding while on the other hand alleging that Defendant Attorney General has enforced it in the *Chino Valley* matter.  FAC ¶ 247 (alleging the Attorney General "is currently suing another school district for not following the State's 2016 Legal Advisory and FAQs on gender identity"); *see id.* ¶ 241 (alleging the complaint in *Chino Valley* "specifically refers to" the guidance).  As discussed above, any allegation that the Attorney General has prosecuted a school district for failing to follow this guidance is demonstrably false on its face, and should be disregarded.  *See* FAC ¶ 240; RJN Ex. 1 at ¶¶ 37, 109-129.  Again, any allegation or inference that this guidance is binding erroneously presumes that there is only one way to follow state law and that all other policies violate it.

Because the Attorney General does not have a direct connection to or enforcement responsibility over any challenged law at issue in this lawsuit, he enjoys Eleventh Amendment immunity and should be dismissed from suit.

## CONCLUSION

For the reasons set forth above, Plaintiffs have failed to satisfy the requirements for Article III injury against Attorney General Bonta, who also enjoys Eleventh Amendment immunity from suit.  As a result, Attorney General Bonta should be dismissed as a Defendant from this lawsuit.

Dated:  February 23, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
KEVIN QUADE
Deputy Attorney General

/s/ Emmanuelle S. Soichet
EMMANUELLE S. SOICHET
Deputy Attorney General
*Attorneys for Attorney General Bonta*

SA2024300204
44074342.docx

17

# CERTIFICATE OF SERVICE

Case Name:   **Mirabelli et al. v. Olson, et al.**      No.   **3:23-cv-0768-BEN-VET**

I hereby certify that on <u>February 23, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ATTORNEY GENERAL BONTA'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 23, 2024</u>, at San Francisco, California.

|  |  |
|---|---|
| Monali Dholakia | /s/: Monali Dholakia |
| Declarant | Signature |

SA2024300204
44074161.docx