1  Charles S. LiMandri, SBN 110841
    cslimandri@limandri.com
2  Paul M. Jonna, SBN 265389
    pjonna@limandri.com
3  Mark D. Myers, SBN 235719
    mmyers@limandri.com
4  Jeffrey M. Trissell, SBN 292480
    jtrissell@limandri.com
5  Milan L. Brandon II, SBN 326953
    mbrandon@limandri.com
6  LiMANDRI & JONNA LLP
7  P.O. Box 9120
    Rancho Santa Fe, CA 92067
8  Telephone: (858) 759-9930
    Facsimile: (858) 759-9938
9

Thomas Brejcha, *pro hac vice**
    tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
    pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-VET <br><br> **Memorandum of Points & Authorities in Support of Plaintiffs' Motion for Leave to Amend the Complaint and Proceed Pseudonymously** <br><br> Judge:            Hon. Roger T. Benitez <br> Courtroom:      5A <br> Hearing Date:  July 22, 2024 <br> Hearing Time:  10:30 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARD ............................................................................................... 4

    A.    Standard for Leave to Amend the Complaint ..................................... 4

    B.    Standard for Leave to Proceed Pseudonymously ................................ 4

ARGUMENT ............................................................................................................ 5

    I.    Motion for Leave to Amend the Complaint ......................................... 5

        A.    Defendants Will Suffer No Prejudice ....................................... 5

        B.    The Other Amendment Factors Are Equally
            Inapposite ................................................................................. 6

    II.    Motion for Leave to Proceed Pseudonymously ................................. 8

        A.    The Severity of the Threatened Harm to Plaintiffs ................... 9

        B.    The Reasonableness of the Plaintiffs' Fears ............................ 11

        C.    The Vulnerability of the Plaintiffs to Retaliation ..................... 12

        D.    The Prejudice to Defendants ................................................... 13

        E.    The Public Interest ................................................................. 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Adan v. Insight Investigation, Inc.*, ............................................................. 6
    No. 3:16-cv-2807, 2017 WL 1387243 (S.D. Cal. Apr. 18, 2017)

*Al Otro Lado, Inc. v. Nielsen*, ................................................................ 12
    No. 3:17-cv-2366, 2017 WL 6541446 (S.D. Cal. Dec. 20, 2017)

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, ....................................... 4
    465 F.3d 946 (9th Cir. 2006)

*Bd. of Trustees of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, ..... 5
    No. 3:09-cv-465, 2010 WL 760452 (N.D. Cal. Mar. 4, 2010)

*Bonin v. Calderon*, ................................................................................ 6
    59 F.3d 815 (9th Cir. 1995)

*Bortz v. JPMorgan Chase Bank, N.A.*, ...................................................... 6
    No. 3:21-cv-618, 2012 WL 4819575 (S.D. Cal. Oct. 15, 2021)

*Choice, Inc. of TX v. Graham*, .............................................................. 13
    226 F.R.D. 545 (E.D. La. 2005)

*Coleman v. Quaker Oats Co.*, .................................................................. 5
    232 F.3d 1271 (9th Cir. 2000)

*D.T. v. Christ*, .................................................................................... 8
    552 F. Supp. 3d 888 (D. Ariz. 2021)

*DCD Programs, Ltd. v. Leighton*, ..................................................... 4, 5, 6
    833 F.2d 183 (9th Cir. 1987)

*Doe 1 v. Madison Metro. Sch. Dist.*, ......................................................... 8
    399 Wis. 2d 102 (2021)

*Doe v. Ayers*, .................................................................................... 15
    789 F.3d 944 (9th Cir. 2015)

*Doe v. Boulder Valley Sch. Dist.*, ........................................................... 13
    No. 1:11-cv-2107, 2011 WL 3820781 (D. Colo., Aug. 30, 2011)

*Doe v. Butte Cnty. Prob. Dep't*, ............................................................ 12
    No. 2:20-cv-2248, 2020 WL 7239583 (E.D. Cal. Dec. 9, 2020)

# TABLE OF AUTHORITIES

## CASES

*Doe v. Clark Cnty. Sch. Dist.*, ............................................................................. 12
    No. 2:15-cv-793, 2016 WL 4432683 (D. Nev. Aug. 18, 2016)

*Doe v. Dolton Elementary Sch. Dist. No. 148*, .......................................................... 13
    694 F. Supp. 440 (N.D. Ill. 1988)

*Doe v. Heritage Acad., Inc.*, .................................................................................. 12
    No. 2:16-cv-3001, 2017 WL 6001481 (D. Ariz. June 9, 2017)

*Doe v. I.N.S.*, ...................................................................................................... 9
    867 F.2d 285 (6th Cir. 1989)

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, ................................. 10, 12, 14
    596 F.3d 1036 (9th Cir. 2010)

*Doe v. Madison Sch. Dist. No. 321*, ..................................................................... 9, 11
    147 F.3d 832 (9th Cir. 1998)

*Doe v. Madison Sch. Dist. No. 321*, .......................................................................... 9
    177 F.3d 789 (9th Cir. 1999)

*Doe v. Mechanicsburg Sch. Bd. of Educ.*, ............................................................... 12
    518 F. Supp. 3d 1024 (S.D. Ohio 2021)

*Doe v. Princeton Univ.*, ......................................................................................... 15
    No. 3:19-cv-7853, 2019 WL 5587327 (D.N.J. Oct. 30, 2019)

*Doe v. Stegall*, ............................................................................................. 9, 11, 12
    653 F.2d 180 (5th Cir. 1981)

*Does 1-10 v. Univ. of Washington*, ......................................................................... 13
    No. 2:16-cv-1212, 2018 WL 3417017 (W.D. Wash. July 13, 2018)

*Does 1-11 v. Bd. of Regents of Univ. of Colorado*, ..................................................... 14
    100 F.4th 1251, 1268 (10th Cir. 2024)

*Does I thru XXIII v. Advanced Textile Corp.*, ....................................................*passim*
    214 F.3d 1058 (9th Cir. 2000)

*Duncan v. Bonta*, ................................................................................................... 2
    83 F.4th 803 (9th Cir. 2023)

# TABLE OF AUTHORITIES

## CASES

*Eberling v. R.M. Sterling Mortg. Servs., Inc.*, ........................................................ 5
    No. 8:10-cv-1831, 2011 WL 13130857 (C.D. Cal. May 16, 2011)

*Eminence Capital, LLC v. Aspeon, Inc.*, ........................................................ 4, 5, 6
    316 F.3d 1048 (9th Cir. 2003)

*Foman v. Davis*, ........................................................................................................ 4
    371 U.S. 178 (1962)

*Guthrey v. California Dep't of Corr. & Rehab.*, ...................................................... 14
    No. 1:10-cv-2177, 2012 WL 2499938 (E.D. Cal. June 27, 2012)

*Heather K. by Anita K. v. City of Mallard*, .............................................................. 12
    887 F. Supp. 1249 (N.D. Iowa 1995)

*Hecox v. Little*, .......................................................................................................... 8
    479 F. Supp. 3d 930 (D. Idaho 2020)

*Hologram USA, Inc. v. Pulse Evolution Corp.*, ........................................................ 6
    No. 2:14-cv-772, 2015 WL 316900 (D. Nev. Jan. 13, 2015)

*Int'l Partners for Ethical Care Inc. v. Inslee*, ........................................................ 13
    No. 3:23-cv-5736, 2023 WL 7017765 (W.D. Wash. Oct. 25, 2023)

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*, ............................................................. 10, 12
    77 F. Supp. 3d 990 (N.D. Cal. 2015)

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, ...................................... 8
    78 F.4th 622 (4th Cir. 2023)

*Kaltenbach v. Hilliard City Sch.*, ............................................................................... 8
    No. 2:23-cv-187, 2023 WL 3023020 (S.D. Ohio Apr. 20, 2023)

*L.W. v. Skrmetti*, ........................................................................................................ 8
    83 F.4th 460 (6th Cir. 2023)

*Lozano v. City of Hazelton*, ...................................................................................... 15
    496 F. Supp. 2d 477 (M.D. Pa. 2007)

*Martin v. Ward*, ........................................................................................................ 14
    No. 1:18-cv-4617, 2021 WL 1186749 (N.D. Ga. Mar. 30, 2021)

# TABLE OF AUTHORITIES

## CASES

*Meriwether v. Trustees of Shawnee State Univ.*, ..........................................................8
    No. 1:18-cv-753, 2019 WL 2392958 (S.D. Ohio Jan. 30, 2019)

*Morongo Band of Mission Indians v. Rose,* ...................................................................5
    893 F.2d 1074 (9th Cir. 1990)

*Nissou-Rabban v. Cap. One Bank (USA), N.A.*, ............................................................7
    285 F. Supp. 3d 1136 (S.D. Cal. 2018)

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, ..............................................8
    83 F.4th 658 (8th Cir. 2023)

*Parsons v. Ryan*, ...........................................................................................................7
    754 F.3d 657 (9th Cir. 2014).

*Poe v. Labrador*, ......................................................................................................8, 14
    No. 1:23-cv-269, 2023 WL 8935065 (D. Idaho Dec. 26, 2023)

*Publius v. Boyer-Vine*, ........................................................................................11, 14, 15
    321 F.R.D. 358 (E.D. Cal. 2017)

*Ray v. AdaptHealth Corp.*, ............................................................................................7
    No. 1:22-cv-898, 2023 WL 6850426 (M.D.N.C. Oct. 16, 2023)

*Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*, ............................................................3
    No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022)

*Sonoma Cnty. Ass'n of Retired Employees of Sonoma Cnty.*, .......................................5
    708 F.3d 1109 (9th Cir. 2013)

*State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*, ...........11
    No. 18-1806, 2021 WL 1929365 (D. Del. May 13, 2021)

*T.F. v. Kettle Moraine Sch. Dist.*, ................................................................................2
    No. 2021-cv-1650, 2023 WL 6544917 (Wis. Cir. Ct., Waukesha Cnty, Oct. 3, 2023)

*Tapia v. Jurupa Unified Sch. Dist.*, .............................................................................7
    No. 5:23-cv-00789 (C.D. Cal. May 3, 2023)

*Tingley v. Ferguson*, .....................................................................................................7
    47 F.4th 1055 (9th Cir. 2022)

# TABLE OF AUTHORITIES

## CASES

*United States v. Terraciano*, ....................................................... 11
    492 F. Supp. 3d 1082 (E.D. Cal. 2020)

*United States v. Webb*, ....................................................................6
    655 F.2d 977 (9th Cir. 1981)

## CASES

28 U.S.C. § 2201.................................................................... 3, 7

42 U.S.C. § 1983.................................................................... 3, 6

Fed. R. Civ. P. 15(a)(2) ......................................................... 4, 5

Fed. R. Civ. P. 16(b) ................................................................. 5

Fed. R. Civ. P. 23(b)(2) ............................................................. 7

Fed. R. Civ. P. 5.2(a)(3) .......................................................... 12

S.D. Cal. CivLR 15.1(b) ............................................................ 5

## OTHER AUTHORITIES

Assembly Bill 1955 (2023-2024 Reg. Sess.) ................................... 1

Schwarzer et al., *Federal Civil Procedure Before Trial* § 8:1518 (2009) .....................5

Sen. Com. on Educ., Analysis of Assem. Bill No. 1955 ............................................2
    (2023-2024 Reg. Sess.) (May 29, 2024)

# INTRODUCTION

Last year, this Court held that Parental Exclusion Policies which exclude parents from decisionmaking regarding their gender incongruent children create "a trifecta of harm"—harming students, parents, and teachers—and "conflict[] with knowledgeable medical opinion." ECF No. 42, Order Granting Preliminary Injunction, at 35. Beyond being absurdly unwise, as this Court noted, such policies are unconstitutional: "A parent's right to make decisions concerning the care, custody, control, and medical care of their children is one of the oldest of the fundamental liberty interests that Americans enjoy." *Id.* at 2. Thus, as the Court noted at the hearing, a policy that gives parents information only if they need to know it is "absolutely frivolous"—*parents always need to know.* ECF No. 39, Hearing Transcript, at 93.

In response, the California Attorney General ("AG") ordered a school district to withdraw its Parental Notification Policies on the basis that they violate the Privacy Clause of Cal. Const. art. I, § 1. When the school district refused, the AG filed suit. *See* ECF No. 36. Shortly thereafter, the California Department of Education ("CDE") ordered a school district to withdraw its Parental Notification Policies for the same reason, was told no, and filed suit. *See* ECF No. 112.

To maintain their freedom to prosecute and persecute school districts, both the AG and the CDE will go to any length to avoid and undermine this Court's rulings. For his part, the AG's counsel stated in open court that he will "disavow any enforcement action against [the Escondido Union School District] EUSD for any actions that EUSD takes in compliance with this Court's order." ECF No. 111 at 17. Then, as soon as the Court granted the AG's motion to dismiss, ECF No. 114, various California Assemblymembers introduced Assembly Bill 1955 (2023-2024 Reg. Sess.). As stated in that bill, no teacher can be required to inform parents about their child's gender transition, nor may any school district adopt a policy requiring teachers to do so. According to the legislators, each of these statements "does not

constitute a change in, but is declaratory of, existing law"—namely the Privacy Clause of the California Constitution. And, as shown in the legislative history, the first listed supporter of the bill is Attorney General Bonta. *See* Sen. Com. on Educ., Analysis of Assem. Bill No. 1955 (2023-2024 Reg. Sess.), at 8 (May 29, 2024).

For the CDE's part, at the preliminary injunction hearing, in attempting to extricate itself from this case, its counsel argued that "the plaintiffs have not pointed to one instance where there's been a loss of funding from a local school district or there's any kind of repercussions from not following these FAQ's. There's [sic] no facts here that would actually establish that." ECF No. 39 at 124. After this Court was not convinced and kept them in the case, the CDE went forward and did exactly that. ECF No. 112. Upon a review of this procedural history, "[i]f the protection of the people's fundamental rights wasn't such a serious matter," California's evasions and finger-pointing "would be laughably absurd." *See Duncan v. Bonta*, 83 F.4th 803, 808 (9th Cir. 2023) (Bumatay, J., dissenting). But the constitutional rights at issue in this case are a serious matter, as is the potential for harm to real children—such as Child Poe and Child Doe—the children of new parent plaintiffs seeking leave to join this action pseudonymously.

The Poe Family and the Doe Family are both dealing with gender identity issues in their young daughters. The parents want to be involved in their daughters' lives and guide them to make the best decisions all around. But, pointing to the CDE's guidance, the school districts say no. *No information will be forthcoming*. "Through its policy of disregarding parental wishes on a medical or health related decision and with how fast questioning one's gender can arise, [Child Poe] and [Child Doe] are at real risk of being harmed by the current [California] policy." *See T.F. v. Kettle Moraine Sch. Dist.*, No. 2021-cv-1650, 2023 WL 6544917 (Wis. Cir. Ct., Waukesha Cnty, Oct. 3, 2023). But the Poe Family and the Doe Family are not alone. There are approximately 50,000 transgender children in the State of California. Each of these students deserves the guidance of their parents. As one court put it:

"whether the District likes it or not, that constitutional right includes the right of a parent to have an opinion and to have a say in what a minor child is called and by what pronouns they are referred." *Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-cv-4015, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022).

Recognizing that gender incongruent children need the involvement and advice of their parents, school districts across the State have considered rescinding their Parental Exclusion Policies and passing Parental Notification Policies. To date, ten school districts have taken steps to do so, but this momentum was stopped first by the AG's and CDE's lawsuits, and now has been stopped by the new proposed AB 1955. This puts school districts in a bind, as federal constitutional and statutory rights preempt contrary state law, but the AG has twice issued press releases instructing local school districts to not follow the reasoning of this Court's order, but to instead follow the guidance of the CDE. Thus, the Lakeside Union School District ("LSUSD") seeks declaratory relief confirming both that the First and Fourteenth Amendments to the U.S. Constitution and the Family Educational Rights and Privacy Act ("FERPA") preempt any state law duty to hide information from parents.

Thus, Plaintiffs respectfully move for leave of court to add two sets of Parent Plaintiffs—Mr. and Mrs. Poe and Mr. and Mrs. Doe—asserting 42 U.S.C. § 1983 claims. Plaintiffs also move for leave of court to add Plaintiff LSUSD, asserting 28 U.S.C. § 2201 claims for declaratory relief. Plaintiffs also move for leave to add two additional Teacher Plaintiffs (employed by EUSD), Jane Roe and Jane Boe, who will join Plaintiffs Mirabelli's and West's 42 U.S.C. § 1983 claims. Plaintiff West also requests leave to add her Title VII claim against new Defendant EUSD. Finally, Plaintiffs request leave to recast this action as a class action against the CDE Defendants and Attorney General Bonta. Because of the severe retaliation that Plaintiffs Mirabelli and West experienced when they first brought this action, the new individual plaintiffs all seek leave to proceed pseudonymously.

# LEGAL STANDARD

### A.      Standard for Leave to Amend the Complaint

Under Fed. R. Civ. P. 15(a)(2), leave to amend before trial is to be granted freely, when justice so requires. The policy favoring amendment is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal"). Whether the amendment would add claims or parties has no bearing on this liberal policy. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Ordinarily this means leave will be granted in the absence of factors such as undue delay, bad faith, dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendment, or undue prejudice to the non-moving party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In addition, amendment need not be permitted where doing so would be an exercise in futility. *AmerisourceBergen Corp.*, 465 F.3d at 951.

### B.      Standard for Leave to Proceed Pseudonymously

Use of pseudonyms in civil actions is allowed where "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("*Advanced Textile Corp.*"). In making this determination, courts in the Ninth Circuit examine: (1) "the severity of the threatened harm"; (2) "the reasonableness of the anonymous party's fears"; (3) "the anonymous party's vulnerability to such retaliation"; (4) "the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice"; and (5) "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Id.*

///

///

///

## ARGUMENT

### I.   MOTION FOR LEAVE TO AMEND THE COMPLAINT

As stated above, under Fed. R. Civ. P. 15(a)(2), leave to amend before trial is to be granted freely when justice so requires. *Eminence Capital*, 316 F.3d at 1051. The "prejudice" factor is the "touchstone of the Rule 15(a)(2) inquiry" and "carries the greatest weight." *Id.* at 1052. Other factors include undue delay, a bad faith or dilatory motive, and futility. *Id.* Here, the Proposed Second Amended Complaint is attached as Exhibit 1 to the declaration of Paul M. Jonna, an amended summons is attached as Exhibit 2, and a redline version showing the changes from the First Amended Complaint is attached as Exhibit 3. *See* S.D. Cal. CivLR 15.1(b). A review of the Proposed SAC and the relevant case law shows that granting leave to amend is appropriate.

### A.   Defendants Will Suffer No Prejudice

The party opposing amendment bears the burden of demonstrating prejudice. *DCD Programs*, 833 F.2d at 187. Denial of leave to amend is only justified if the prejudice is "substantial." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). To meet this burden, the defendants must show "strong evidence" of reasons to deny amendment. *Sonoma Cnty. Ass'n of Retired Employees of Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).

If some prejudice to a defendant is shown, it should be balanced against prejudice to the plaintiff if leave to amend is denied. *Bd. of Trustees of the Automotive Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, No. 3:09-cv-465, 2010 WL 760452, at *3 (N.D. Cal. Mar. 4, 2010) (citing Schwarzer et al., *Federal Civil Procedure Before Trial* § 8:1518 (2009)). Because this motion is timely under the scheduling order, Rule 16(b)'s "good cause" standard need not be satisfied. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Eberling v. R.M. Sterling Mortg. Servs., Inc.*, No. 8:10-cv-1831, 2011 WL 13130857, at *2 (C.D. Cal. May 16, 2011).

Here, there is no cognizable prejudice. Under the Court's scheduling order, ECF No. 108, this case is still in its infancy. A motion for leave to amend is due no later than June 7, 2024 and the fact discovery cutoff will not occur until October 15, 2024, leaving the parties plenty of time to engage in discovery. The amendments, moreover, do not significantly expand the scope of this case because this case is primarily legal, not factual. Even the addition of new plaintiffs and some new claims is not likely to require significant additional discovery.

## B.   The Other Amendment Factors Are Equally Inapposite

As stated above, delay, a bad faith or dilatory motive, and futility can also warrant denial of leave to amend. *Eminence Capital*, 316 F.3d at 1052. However, mere delay, even if lengthy, is an insufficient reason to deny leave to amend. *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). With respect to futility, it can justify denial of leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). But denial based on futility is "rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Bortz v. JPMorgan Chase Bank, N.A.*, No. 3:21-cv-618, 2012 WL 4819575, at *5 (S.D. Cal. Oct. 15, 2021).

Here, there has not been any undue delay, and there is no evidence of bad faith on Plaintiffs' part. As stated above, the parties are still in the early stages of discovery, with the discovery cutoff still several months away. *See Adan v. Insight Investigation, Inc.*, No. 3:16-cv-2807, 2017 WL 1387243, at *2 (S.D. Cal. Apr. 18, 2017) (holding that six-month delay in seeking leave to amend did not amount to undue delay, because the case was still in its early stages). "A strong presumption against a finding of undue delay exists when a case is still in discovery." *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-cv-772, 2015 WL 316900, at *3 (D. Nev. Jan. 13, 2015) (citing *DCD Programs*, 833 F.2d at 187-88).

With respect to futility, Plaintiffs believe that the addition of new 42 U.S.C. § 1983 claims on behalf of parents—whether under Substantive Due Process or the

Free Exercise of Religion—is amply supported by this Court's prior rulings. *See* ECF No. 42. With respect to the new Title VII claims, other cases have successfully prosecuted similar claims on behalf of teachers objecting to Parental Exclusion Policies. *See Tapia v. Jurupa Unified Sch. Dist.*, No. 5:23-cv-00789 (C.D. Cal. May 3, 2023) (settled on May 13, 2024). And with respect to the 28 U.S.C. § 2201 declaratory relief claims, Plaintiff LSUSD simply seeks a judicial determination of its duties and obligations, similar to how the Court will already be determining the rights of the individual plaintiffs.

Lastly, with respect to the class action allegations, courts regularly allow plaintiffs to expand their individual claims into a class action. *See, e.g.*, *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1145 (S.D. Cal. 2018); *Ray v. AdaptHealth Corp.*, No. 1:22-cv-898, 2023 WL 6850426 (M.D.N.C. Oct. 16, 2023). Here, Plaintiffs seek to prosecute a Rule 23(b)(2), which is tailormade for civil rights cases: "Although we have certified many different kinds of Rule 23(b)(2) classes, the primary role of this provision has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). As a result of those class action allegations, Plaintiffs seek to re-introduce Attorney General Bonta as a defendant, whom the court dismissed "without prejudice." ECF No. 114 at 8. But the Court only did so because AG Bonta's "disavow[al of] any enforcement action *against EUSD*" was "dispositive." ECF No. 114 at 6 (emphasis added). AG Bonta cannot disavow enforcement of the Privacy Clause of the California Constitution against all school districts.

*          *          *

In light of the fact that this case is in its early stages, and because leave to amend should be granted with "extreme liberality," this Court should grant Plaintiffs' motion for leave to file a Second Amended Complaint.

///

///

## II.   MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

In the context of minors dealing with gender identity issues, the Ninth Circuit has unequivocally stated that "[p]seudonymous filing would be appropriate in this context to 'preserve privacy in a matter of sensitive and highly personal nature.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1070 (9th Cir. 2022) (quoting *Advanced Textile Corp.*, 214 F.3d at 1068). This is in line with cases across the country. *See, e.g.*, *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622 (4th Cir. 2023); *L.W. v. Skrmetti*, 83 F.4th 460, 490 (6th Cir. 2023); *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 664 (8th Cir. 2023); *Doe 1 v. Madison Metro. Sch. Dist.*, 399 Wis. 2d 102, 125 (2021); *Kaltenbach v. Hilliard City Sch.*, No. 2:23-cv-187, 2023 WL 3023020, at *2 (S.D. Ohio Apr. 20, 2023); *see also Meriwether v. Trustees of Shawnee State Univ.*, No. 1:18-cv-753, 2019 WL 2392958, at *2 (S.D. Ohio Jan. 30, 2019) (collecting cases: "Several courts … have held that an individual's transgender identity can carry enough of a social stigma to overcome the presumption in favor of disclosure.").

Thus, within the Ninth Circuit, numerous courts have allowed the plaintiffs in cases dealing with minor gender incongruence to proceed pseudonymously. *See, e.g.*, *Poe v. Labrador*, No. 1:23-cv-269, 2023 WL 8935065, at *19 (D. Idaho Dec. 26, 2023) ("all plaintiffs in this case are proceeding under pseudonyms"); *Hecox v. Little*, 479 F. Supp. 3d 930, 946 n.3 (D. Idaho 2020) ("Plaintiffs Jean, John, and Jane Doe have been granted permission to proceed under pseudonyms."); *D.T. v. Christ*, 552 F. Supp. 3d 888, 892 n.5 (D. Ariz. 2021) ("The Court notes that all of the Plaintiffs are proceeding in this case under pseudonyms to protect them from harassment stemming from their transgender status.").

As stated above, adjudication of a motion for leave to proceed pseudonymously involves consideration of five factors: (1) "the severity of the threatened harm"; (2) "the reasonableness of the anonymous party's fears"; (3) "the anonymous party's vulnerability to such retaliation"; (4) "the precise prejudice at each stage of

the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice"; and (5) "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Advanced Textile Corp.*, 214 F.3d at 1068. Here, each of the new Plaintiffs is submitting a declaration identifying the reasons why pseudonymity is appropriate. For the reasons stated therein and below, this Court should grant the new individual plaintiffs leave to proceed pseudonymously.

### A.   The Severity of the Threatened Harm to Plaintiffs

The Ninth Circuit has approved the use of pseudonyms where a plaintiff faces even "a *risk* of retaliatory physical *or* mental harm" if his identity becomes known. *Advanced Textile Corp.*, 214 F.3d at 1068 (emphasis added) (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). Courts also permit pseudonymity "in order to protect family." *Id.* at 1070 (citing *Doe v. I.N.S.*, 867 F.2d 285, 286 (6th Cir. 1989)).

***First,*** with respect to physical harm, *Stegall*, cited approvingly by the Ninth Circuit in *Advanced Textile Corp.*, is illustrative. There, various pseudonymous students sued challenging prayer and Bible readings in public schools. The Fifth Circuit affirmed pseudonymity because of "local newspaper reports of public reaction to the lawsuit voiced at a Rankin County School Board meeting," which criticized the plaintiffs' motivation. *Stegall*, 653 F.2d at 183 n.6., 186. Those criticisms were not true threats, but rather hyperbolic comments such as "God is fixing to come back. He'll show them," and "[w]e have got to band together and whop this evil thing." *Id.*

The dissent in *Stegall* noted that "the remark smacks more of fulmination than of serious intent to harm," *id.* at 187 n.1 (Gee, J., dissenting), but the majority found that the risk of physical harm to children was sufficient. *Id.* at 186; *accord Advanced Textile Corp.*, 214 F.3d at 1070 (citing *Doe v. Madison Sch. Dist. No. 321*, 147 F.3d 832, 834 n.1 (9th Cir. 1998), *vacated on other grounds*, 177 F.3d 789 (9th Cir. 1999) (en banc)). And later, the Ninth Circuit confirmed that a "true threat" under the First

Amendment is not needed to justify pseudonymity. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1044 n.6 (9th Cir. 2010) ("*Kamehameha*").

Here, in response to the initiation of this lawsuit, as stated in Plaintiff Mirabelli's declaration, one student discussed bringing a baseball bat to class, and another said that his friend was planning to jump off the P.E. building. ECF No. 5-3 at ¶11. Other students verbally harassed her, calling her "homophobic" or a "hater," or made statements such as:"You hate gays," "You are an old hag," and "You are against trans people." ECF No. 5-3 at ¶10. For her part, Plaintiff West was confronted by staff members who spoke to her "brusquely and harshly." ECF No. 5-4 at ¶5.

On the other side, students have accused this lawsuit of "slaughtering trans kids," and stated that it "will result in the death of trans children." ECF No. 59-1 at 76. Thus, in their protest flyer, they stated: "WE CANT [sic] LET THEM GET AWAY WITH THIS!!!!!!" ECF No. 59-1 at 62. The evidence supplied by Plaintiffs Mirabelli and West, showing a need to protect both new plaintiffs and transgender minors, is far more severe than that accepted by numerous other courts, and so the threatened harm factor favors pseudonymity.

***Second,*** physical retaliation is not the only basis for pseudonymity. Rather, "social stigmatization" is "among the 'most compelling' reasons for permitting anonymity. This is consistent with the Ninth Circuit's instruction in *Advanced Textile* that anonymity is permitted where the subject matter of a case is 'sensitive and highly personal,' and where disclosing a party's identity threatens to subject them to 'harassment, ... ridicule or personal embarrassment.'" *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 994 (N.D. Cal. 2015) (quoting *Advanced Textile Corp.*, 214 F.3d at 1067-68). Here, there are two types of non-physical harm at issue: the publication of private medical information and private religious beliefs. Because this information must be made public as part of this suit, the only way to protect Plaintiffs' privacy is by sealing their names.

Courts "within the Ninth Circuit[] have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records." *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1083 n.1 (E.D. Cal. 2020); *see State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*, No. 18-1806, 2021 WL 1929365, at *10 n.16 (D. Del. May 13, 2021) ("concerns about the protection of their medical privacy may be addressed by using pseudonyms"). Here, as the court stated, "you don't have to have a medical degree to understand that" "a social transition is a medical decision." ECF No. 49 at 63. Thus, the gender transition details of the Parent Plaintiffs' children and the Teacher Plaintiffs' students warrant pseudonymity.

Further, "the private and sensitive nature of religious beliefs supports justifying anonymity." *Publius v. Boyer-Vine*, 321 F.R.D. 358, 363 (E.D. Cal. 2017) (citing *Madison Sch. Dist.*, 147 F.3d at 834 n.1; *Stegall*, 653 F.2d at 186). Indeed, "religion is perhaps the quintessentially private matter." *Stegall*, 653 F.2d at 186. Thus, where a "suit—challenging a government activity—forces Plaintiffs to reveal their [religious] beliefs about a particularly sensitive topic that could subject them to considerable harassment," that justifies proceeding pseudonymously. *Publius*, 321 F.R.D. at 363. Here, although the new Parent Plaintiffs' and Teacher Plaintiffs' religious beliefs are not particularly unprecedented, they are religious beliefs generally kept private to avoid accusations of bigotry and hate—warranting pseudonymity.

## B. The Reasonableness of the Plaintiffs' Fears

Next, the court must analyze whether "a reasonable person would believe that the threat might actually be carried out." *Advanced Textile Corp.*, 214 F.3d at 1071. The plaintiff is "not required to *prove* that the defendants [or third-party] intend to carry out the threatened retaliation," and therefore it is irrelevant that the "plaintiffs' evidence of threatened retaliation [i]s prospective and conjectural and based in large part on hearsay and innuendo." *Id.* (cleaned up; italics added); *accord*

*SFBSC Mgmt.*, 77 F. Supp. 3d at 995. To determine reasonableness, the court "must consider the surrounding context and other listeners' reactions to the threats." *Kamehameha*, 596 F.3d at 1044-45. Thus, where the government itself does not dismiss the threats, and neither do members of the public, that militates in favor of reasonableness. *Id.*

Here, as stated above, a regular anthem of those advocating for minors' gender transitions is that any scrutiny of those decisions will lead to a rash of suicides. *See* ECF No. 59-1 at 62. Regardless of the merit of this assertion, because the government believes it, it supports anonymity. At the very least, a threat of child bullying is present in this case, and child bullying is often cited as a sufficient basis for pseudonymity. *See, e.g.*, *Doe v. Mechanicsburg Sch. Bd. of Educ.*, 518 F. Supp. 3d 1024, 1027 (S.D. Ohio 2021).

### C.     The Vulnerability of the Plaintiffs to Retaliation

In looking to the vulnerability analysis, "[v]ulnerability is established by the party's dependence on anonymity to avoid retaliatory harm." *Al Otro Lado, Inc. v. Nielsen*, No. 3:17-cv-2366, 2017 WL 6541446, at *5 (S.D. Cal. Dec. 20, 2017). There are three key categories of plaintiffs that deserve heightened protection as especially vulnerable: prisoners, migrants subject to deportation, and children. *Advanced Textile Corp.*, 214 F.3d at 1068 (citing *Stegall*, 653 F.3d at 186).

These categories are considered per se vulnerable under federal law. Here, Child Poe and Child Doe are minor children, and so would normally only be identified in court filings through their initials. Fed. R. Civ. P. 5.2(a)(3). As a general rule, this justifies pseudonymity for their parents, *see, e.g.*, *Heather K. by Anita K. v. City of Mallard*, 887 F. Supp. 1249, 1256 (N.D. Iowa 1995),[1] and continued

---

[1] *See also, e.g.*, *Doe v. Butte Cnty. Prob. Dep't*, No. 2:20-cv-2248, 2020 WL 7239583, at *7 (E.D. Cal. Dec. 9, 2020); *Doe v. Heritage Acad., Inc.*, No. 2:16-cv-3001, 2017 WL 6001481, at *10 (D. Ariz. June 9, 2017); *Doe v. Clark Cnty. Sch. Dist.*, No. 2:15-cv-793, 2016 WL 4432683, at *15 (D. Nev. Aug. 18, 2016).

pseudonymity when a child reaches adulthood. *See, e.g., Doe v. Boulder Valley Sch. Dist.*, No. 1:11-cv-2107, 2011 WL 3820781, at *2 (D. Colo., Aug. 30, 2011). And this general rule has even been specifically applied in the context of gender incongruent minors. *See Int'l Partners for Ethical Care Inc. v. Inslee*, No. 3:23-cv-5736, 2023 WL 7017765, at *1 (W.D. Wash. Oct. 25, 2023) ("Plaintiff parents in this case wish to proceed under pseudonyms. As to the Plaintiff parents who have transgender children (1A, 1B, 2A, 2B, 3A, and 3B), their identities track their children's identities, which means their children's identities can be readily surmised. The potential harm to transgender children if their identities are exposed can be severe as they could be exposed to retaliation by peers and the public. The transgender children's particular vulnerability makes these Plaintiff parents' fear of harm reasonable.").

Here, the harm which Plaintiffs Mirabelli and West suffered flowed primarily from the school environment—it was caused by students and other teachers. Thus, because Child Poe is continuing to attend a California public school, she is particularly vulnerable. And even though Child Doe is homeschooled, she remains especially vulnerable, justifying pseudonymity because she is suffering the stigma of exclusion. *See Doe v. Dolton Elementary Sch. Dist. No. 148*, 694 F. Supp. 440, 446-48 (N.D. Ill. 1988) (rejecting availability of "homebound education" for student with severe illness because of the "stigma" of exclusion).

### D.   The Prejudice to Defendants

There are two types of orders regarding pseudonymity: (1) those in which a plaintiff's name is shielded from the public; and (2) those in which the plaintiff's name is even shielded from the opposing party. *See Choice, Inc. of TX v. Graham*, 226 F.R.D. 545, 547 (E.D. La. 2005) (permitting the plaintiffs "to withhold their identity from the Court and the defendants"); *cf. also Does 1-10 v. Univ. of Washington*, No. 2:16-cv-1212, 2018 WL 3417017, at *2 (W.D. Wash. July 13, 2018) ("The court, therefore, grants Doe Plaintiffs' request for a protective order with respect to

Interrogatory No. 1 because that interrogatory seeks the identity of 'all Plaintiffs'");
*Poe v. Labrador*, No. 1:23-cv-269, 2023 WL 8935065, at *19 (D. Idaho Dec. 26, 2023)
(granting statewide injunction because identities of plaintiffs were shielded from
defendants); *Martin v. Ward*, No. 1:18-cv-4617, 2021 WL 1186749, at *9 (N.D. Ga.
Mar. 30, 2021) (collecting cases on anonymous depositions). In both, the main issue
of prejudice is whether pseudonymity will frustrate discovery. *See Kamehameha*, 596
F.3d at 1045 n.7.

Here, there is no need for the Defendants to know the true identities of the
new individual plaintiffs. This case turns primarily on the law. The only discovery
Defendants could possibly need would be to test the sincerity of Plaintiffs' religious
beliefs. But even such discovery should be carefully delimited. *See Guthrey v.
California Dep't of Corr. & Rehab.*, No. 1:10-cv-2177, 2012 WL 2499938, at *9-12
(E.D. Cal. June 27, 2012) (invoking party's privacy rights in religious beliefs to limit
discovery); *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1268 (10th
Cir. 2024) ("a government policy that requires an intrusive inquiry into the validity
of religious beliefs violates" the First Amendment); *Publius*, 321 F.R.D. at 365 (on
the basis of religious privacy, permitting pseudonymity during discovery including
anonymous depositions).

However, if the Court believes that the Defendants should be given access to
the new Plaintiffs' identities, then either an attorneys'-eyes-only protective order is
appropriate, or an order limiting access to those identities to specific personnel
within the various defendant organizations. *See Advanced Textile Corp.*, 214 F.3d at
1070 (discussing use of protective orders to limit harm).

### E.    The Public Interest

Lastly, the public interest inquiry concerns whether pseudonymity (1) will
frustrate "public scrutiny of the important issues in this case" and (2) will promote
"seeing this case decided on the merits." *Advanced Textile Corp.*, 214 F.3d at 1072.
As a general matter, public scrutiny of the issues is not "significantly obstruct[ed]"

where the issues are primarily legal—such as in constitutional cases. *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (cleaned up); *accord Publius*, 321 F.R.D. at 366.[2] The main issue, rather, is whether denying pseudonymity will deny a merits-based resolution by "chill[ing]" a plaintiff's "willingness to challenge … violations of their rights." *Advanced Textile Corp.*, 214 F.3d at 1072 ("[P]ermitting plaintiffs to use pseudonyms will serve the public's interest in this lawsuit by enabling it to go forward.").

In this context, as stated above, many cases stand for the proposition that pseudonymity in transgender rights cases is appropriate. They generally have determined that the threat of chilling litigation warrants pseudonymity.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for leave to amend and for leave for the new Plaintiffs to proceed pseudonymously in this case.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: June 7, 2024          By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Milan L. Brandon II
Attorneys for Plaintiffs

[2] *See, e.g.*, *Doe v. Princeton Univ.*, No. 3:19-cv-7853, 2019 WL 5587327, at *5 (D.N.J. Oct. 30, 2019) ("When a case raises questions that are purely legal there is an atypically weak public interest in the identity of the litigants."); *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 513 (M.D. Pa. 2007) ("The subject matter of this litigation is primarily constitutional law, and the identities of the particular plaintiffs are not as important to the outcome of the litigation as the legal arguments they raise.").