Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,

        Plaintiffs,

    v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

        Defendants.

Case No.: 3:23-cv-0768-BEN-VET

**Reply to the CDE Defendants in Support of Plaintiffs' Motion for Leave to Amend the Complaint and Proceed Pseudonymously**

Judge:        Hon. Roger T. Benitez
Courtroom:    5A
Hearing Date:  July 10, 2024
Hearing Time:  10:30 a.m.

# REPLY TO THE CDE DEFENDANTS

In opposition to Plaintiffs' motion for leave to file an amended complaint, the CDE Defendants argue prejudicial delay, futility, and that pseudonymity is unwarranted. ECF No. 124. For the reasons explained below, and in Plaintiffs' replies to both EUSD and the AG, these arguments all fail.[1]

## I.   Leave to Amend Was Not Prejudicially Delayed

In their opposition, the CDE Defendants primarily argue that granting leave to amend to add class-action allegations would cause them prejudice because of the significance of the change. *See* ECF No. 124, pp.9:10-13:8. But like both the Attorney General and the EUSD Defendants, the CDE Defendants offer no specifics.

Instead, the CDE Defendants spend 3.5 pages summarizing cases before nonspecifically arguing that the proposed Second Amended Complaint "represents a fundamental alteration of the nature of this case and would cause undue prejudice … because it seeks, to transform the current case into an entirely new lawsuit by injecting complex, class allegations," which will also "trigger the necessity for the State defendants to engage in voluminous, late discovery." ECF No. 124, p.9:17-24. The CDE next argues that there is insufficient time to finalize discovery. ECF No. 124, pp.12:27-13:8. But, in the absence of specifics, it remains ambiguous to Plaintiffs what *actual* additional discovery the CDE still needs.

As explained in Plaintiffs' motion or leave to amend, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). Thus, "[a]bsent prejudice …, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). And the "party opposing amendment bears the burden of showing prejudice." *Id*. (quotations omitted); *Pizana*

---

[1] Because the CDE's and the Attorney General's arguments on pseudonymity overlap significantly, they are addressed jointly in the reply to the Attorney General's opposition, and Plaintiffs incorporate that discussion by reference.

1  *v. SanMedica Int'l LLC*, 345 F.R.D. 469, 483 (E.D. Cal. 2022).

2      Here, converting this action into a class action will not introduce significant new
3  legal theories (only FERPA), *EEOC v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp.
4  3d 1099, 1103 (S.D. Cal. 2020), and the CDE Defendants have had plenty of time to
5  engage in discovery. Any time wasted was their own doing. *See* ECF No. 124-1 (CDE
6  waited 145 days before serving written discovery). In any event, any alleged prejudice
7  could, of course, simply be mitigated by a continuance of the deadlines—which
8  Plaintiffs do not oppose in principle. *See Scosche Indus., Inc. v. S&T Montgomery*
9  *Distrib., Inc.*, No. 2:22-cv-9030, 2023 WL 9420517, at *1 (C.D. Cal. Aug. 15, 2023);
10 *Novak v. Boeing Co.*, No. 8:09-cv-1011, 2010 WL 11465404, at *2 (C.D. Cal. Nov. 23,
11 2010).

12     ## II.   FUTILITY IS NO BASIS TO DENY LEAVE TO AMEND

13     Under the Rule 12(b)(6) standard, a party can oppose leave to amend on the
14 basis of futility. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).
15 Here, the CDE makes three primary arguments. *See* ECF No. 124, pp.13:9-19:10.

16     First, like the AG, the CDE argues that LSUSD lacks standing to sue them
17 because "no facts alleged describe any instance in which CDE or the SBE have
18 threatened LSUSD with enforcement, much less any other legal action." ECF No.
19 124, p.18:20-22. This, of course, is absurd. The CDE has sued the Rocklin Unified
20 School District for adopting a Parental Notification Policy. ECF No. 118-3, ¶¶331-32.
21 In light of the constitutional rights at stake, LSUSD has standing to seek pre-
22 enforcement relief before it too is sued. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th
23 Cir. 2022); *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024).

24     The CDE next argues that granting leave to amend would be futile because the
25 Poe and Doe Families, and LSUSD, are not properly joined to this case under Fed. R.
26 Civ. P. 20. *See* ECF No. 124, pp.18:25-19:10. According to the CDE, "[t]he proposed
27 claims by the [new] plaintiffs arise from distinct and unrelated incidents involving
28 different school districts and administrators." ECF No. 124, p.18:3-4. This is not

what is pleaded. Rather, the proposed complaint pleads that "it must be concluded that the State is the driving force behind local school districts' violations of Plaintiffs' constitutional rights." ECF No. 118-3, ¶338. Based on the facts pleaded, this is a perfectly plausible conclusion. *See* ECF No. 118-3, ¶¶128, 146, 151, 186, 339 (all school districts pointing to the CDE's "guidance" as the basis for their policies); *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) ("Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties.").

Moreover, under Rule 20, "permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Here, there is ultimately a single dispositive question—interpretation of Parental Rights under the Fourteenth Amendment—which can and should be efficiently resolved in a single lawsuit. *See, e.g.*, *Tenn. v. Cardona*, No. 2:24-cv-72, 2024 WL 3019146, at *30-31 (E.D. Ky. June 17, 2024) (Department of Education rules reinterpreting Title IX violated Parental rights). Although Plaintiffs' other constitutional claims (Freedom of Speech and Free Exercise of Religion) can succeed regardless of their Parental Rights claims, if they succeed on that claim, it will resolve the rest altogether.

Third, the CDE argues that adding LSUSD as a plaintiff would be futile because, as a political subdivision of California, it lacks standing to sue another political subdivision of California. ECF No. 124, pp.13:19-16:20. This argument also fails. As a general rule, "subordinate political entities, as 'creatures' of the state, may not challenge state action as violating the entities' rights" under the federal constitution. *Star-Kist Foods, Inc. v. Cnty. of Los Angeles*, 42 Cal. 3d 1, 5 (1986); *see also San Diego Unified Port Dist. v. Gianturco*, 457 F. Supp. 283, 290 (S.D. Cal. 1978). Under this rule,

political subdivisions lack "standing" to sue their state. *S. Lake Tahoe v. Calif. Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980).

The decisions the CDE cites do not deprive LSUSD of standing, however, because LSUSD need not seek relief directly under the U.S. Constitution. It can seek equitable relief as recognized in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326-28 (2015) (distinguishing between direct rights of action under the Supremacy Clause and claims in equity, under *Ex parte Young*, 209 U.S. 123 (1908)). Here, LSUSD need not challenge state law *in gross*, but can pre-emptively assert federal law as a defense to imminent enforcement action against itself. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 262 (2011) (Kennedy, J., concurring) (citing *Ex parte Young*, 209 U.S. at 165-66) (recognizing the availability of such a remedy).

*Ex parte Young* does not by itself confer standing. *See Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1108 (9th Cir. 1999) (noting that if state's subdivision could establish standing, *Ex parte Young* would allow a suit for declaratory relief). Standing is separately established based on officials' threats of imminent enforcement action against school districts. *See* ECF No. 118-3, Proposed SAC ¶¶3, 19-20, 186; *Peace Ranch, LLC v. Bonta*, 93 F.4th 484, 487 (9th Cir. 2024) (discussing pre-enforcement standing). LSUSD, like other California school districts, can sue and be sued in its own name. *Sato v. Orange Cnty. Dept. of Educ.*, 861 F.3d 923, 933 (9th Cir. 2017). The Attorney General and the CDE have issued warnings to all school districts to not take the actions that LSUSD is taking, and both have actually sued other school districts. ECF No. 118-3, ¶¶327-49 & Exs.37-40. When LSUSD is itself sued, it will unquestionably have standing to assert federal Constitutional law as a defense. It therefore has standing now to assert that defense pre-emptively, as authorized by *Ex parte Young. See Va. Off. for Prot. & Advoc.*, 563 U.S. at 256-58 (holding that *Ex parte Young* applied to state agency suing state officials).

Additionally, "the Supreme Court has long recognized that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing." *Olean*

*Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (discussing class actions) (en banc). An individualized standing inquiry is only needed when the plaintiff seeks "money damages." *Id.* (colleting cases). *See also, e.g.*, *Biden v. Neb.*, 600 U.S. 477, 489 (2023) ("If at least one plaintiff has standing, the suit may proceed."); *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1120 (9th Cir. 2022) ("The Attorney General's challenge fails because the third seller, whose standing he does not contest, has standing to seek declaratory relief.").

Thus, even under the cases that the CDE cites, where a political subdivision joins a lawsuit with another party who does have standing, this issue is moot:

> In the court below, CalTrans also claimed immunity under the Eleventh Amendment and asserted that the Port District lacked standing…. While there are broad dicta that a political subdivision may never sue its maker on constitutional grounds, we doubt that the rule is so broad. We need not resolve this question, however, because the court below granted the ATAA the status of an intervenor as of right. If the ATAA has standing, then we have jurisdiction to hear the case.

*San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1310 n.7 (9th Cir. 1981) (cleaned up); *accord S. Lake Tahoe*, 625 F.2d at 233 (plaintiffs failed the "threshold question" of "whether *at least one plaintiff* has standing.") (emphasis added); *In re Nutrisport*, No. ADV. 04-90269, 2005 WL 6483307, at *2 (S.D. Cal. Oct. 26, 2005) (following *San Diego Unified Port Dist.*). And where the Subclasses are created for convenience purposes (instead of due to conflicts of interest), the proposed representatives need not have been able to bring a lawsuit on their own. *See* 3 Newberg & Rubenstein on Class Actions § 7:32 (6th ed. 2024).

Here, of course, in addition to LSUSD, both the Parent Plaintiffs and Teacher Plaintiffs seek declaratory relief on the issue of Parental Rights, and the Teacher Plaintiffs seek declaratory relief on the issue of FERPA. ECF No. 118-3, ¶¶368(c), 371-72, 495-96. As the CDE has noted, when the declaratory relief that those plaintiffs seek is encompassed within other causes of action, it is "superfluous" to repeat it for them

1  in another stand-alone claim. *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.
2  Supp. 2d 952, 975 (N.D. Cal. 2010).

3       Finally, it is true that the Ninth Circuit at one time applied the rule cited by the
4  CDE to bar Supremacy Clause/preemption challenges. *City of South Lake Tahoe v. Cal.*
5  *Tahoe Reg'l Plan. Agency*, 625 F.2d 231 (9th Cir. 1980). But the Ninth Circuit already
6  began to back away from that blanket per se rule just a year later. *See San Diego Unified*
7  *Port Dist.*, 651 F.2d at 1309 n.7 ("While there are broad dicta that a political subdivision
8  may never sue its maker on constitutional grounds, we doubt that the rule is so broad.")
9  (citation to *South Lake Tahoe* omitted). And the lack of *any* positive circuit citation to
10 *South Lake Tahoe* for its blanket rule for over *twenty years* provides ample evidence that
11 the Ninth Circuit sees the Supreme Court's subsequent development of standing
12 doctrine to have hollowed out whatever conceptual force *South Lake Tahoe* may once
13 have had.

14      It is little wonder, then, that Ninth Circuit judges have repeatedly called for en
15 banc reconsideration of *South Lake Tahoe* and its aged progeny to expressly overturn its
16 broad standing rule—one long since implicitly abandoned and irreconcilable with three
17 decades of Supreme Court standing jurisprudence since *Lujan*. *E.g.*, *San Juan*
18 *Capistrano v. Calif. Pub. Utilities Comm'n*, 937 F.3d 1278, 1282 (9th Cir. 2019) (Nelson,
19 J., concurring) (discussing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)). That includes
20 in the specific context of public school districts. *See Indian Oasis-Baboquivari Unified*
21 *Sch. Dist. No. 40 v. Kirk*, 91 F.3d 1240, 1245, 1250 (9th Cir. 1996) (Reinhardt, J.,
22 dissenting), *vacated on reh'g en banc*, 109 F.3d 634 (9th Cir. 1997). In the words of one of
23 the giants on the Ninth Circuit shortly after *Lujan* lent newfound rigor to standing
24 analysis:

25      [A] per se bar on standing can[not] be reconciled with *Lujan* or literally
26      dozens of other modern standing cases. Rather than attempting to reach a
        decision that is consistent with controlling Supreme Court caselaw, and
27      sound constitutional principles, the majority opts for simply asserting a
        mechanical answer based on ***a single discredited Ninth Circuit opinion***
28      [*South Lake Tahoe*]. It stubbornly and mistakenly reiterates that the appeal

is governed by *South Lake Tahoe*, a case that is indefensible on its merits but more important has been implicitly but unequivocally overturned by *Seattle School District* as necessarily recognized by the subsequent Ninth Circuit decision in *Board of Natural Resources.*

*Id.* at 1250 (Reinhardt, J., dissenting) (emphasis added). It is clear Judge Reinhardt was right even nearly three decades ago; after all, the very year after *Lujan* was decided, the Ninth Circuit in *Board of Natural Resources* expressly noted that a school district has standing to sue a state official. *Bd. of Nat. Res. v. Brown*, 992 F.2d 937, 942 (1993) (citing *Wash. v. Seattle Sch. Dist. No.* 1, 458 U.S. 457, 467 (1982)). And nothing in subsequent Ninth Circuit published cases undermines his conclusion.

Expressly overturning the blanket rule in *South Lake Tahoe* would align the Ninth Circuit with the vast majority of sister circuits on the question as to whether state subunits can have standing to sue state agencies. Only two other circuits—the Sixth and the Tenth—*ever* have shared the Ninth Circuit's view as articulated in that case. *See* Kathleen S. Morris, *The Case for Local Constitutional Enforcement*, 47 Harv. C.R.-C.L. L. Rev. 1, 18-19 (2012); Brian P. Keenan, Note, *Subdivisions, Standing and the Supremacy Clause: Can a Political Subdivision Sue Its Parent State Under Federal Law?*, 103 Mich. L. Rev. 1899, 1903-04 (2005). And the Tenth Circuit no longer agrees with the Ninth Circuit that the rule finds its origin in standing principles. *See Kerr v. Polis*, 20 F.4th 686, 692-99 (10th Cir. 2021) (en banc). It seems that the main impediment to the Ninth Circuit following suit by expressly overturning *South Lake Tahoe* is that it has not yet had a proper vehicle to do so in a Supremacy Clause case. *See San Juan Capistrano*, 937 F.3d at 1283 (Nelson, J., concurring) ("To be clear, this case does not warrant en banc review because all circuit courts and the Supreme Court bar due process claims.").

But the Ninth Circuit need not even do so. Supreme Court authority, of course, controls over inconsistent Circuit precedent when "the reasoning or theory of our [Ninth Circuit] prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Coria v. Garland*, 96 F.4th 11192, 1195 (9th Cir. 2024); *see Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[W]here

intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority, … district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). Thus, In light of this developing area of law, where the Supreme Court's discussion of *Ex parte Young* is inconsistent with stale Circuit precedent, and LSUSD has standing as a co-plaintiff with others, it would be appropriate to allow LSUSD to litigate this issue so that, if it so desires, the en banc Ninth Circuit can take another look at whether to retain its rule barring Supremacy Clause claims by political subdivisions. *See Va. Off. for Prot. & Advoc.*, 563 U.S. at 256 ("Although respondents argue that VOPA's status as a state agency changes the calculus, there is no warrant in our cases for making the validity of an *Ex parte Young* action turn on the identity of the plaintiff."); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 53 (2021) (Thomas, J., concurring) (discussing equitable doctrine of "negative injunction").

## CONCLUSION

Plaintiffs respectfully request that the Court grant in full their motion for leave to file a Second Amended Complaint and for leave to have the new individual plaintiffs proceed pseudonymously.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: July 1, 2024          By:  _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Milan L. Brandon II
Attorneys for Plaintiffs