LEN GARFINKEL State Bar No. 114815
General Counsel
PAUL GANT, State Bar No. 159844
Assistant General Counsel
VIRGINIA CALE, State Bar No. 258557
Deputy General Counsel
CHRISTOPHER MANDARANO, State Bar No. 263625
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, California 95814
Telephone: 916-319-0860
Facsimile: 916-322-2549
Email: cmandarano@cde.ca.gov
Attorneys for Defendants Tony Thurmond in his official capacity as State
Superintendent of Public Instruction

*(Defendant Tony Thurmond in his official capacity is a Governmental Party Exempt from the Provisions of FRCP 7.1)*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELIZABETH MIRABELLI, et al. | Case No. 3:23-cv-0768-BEN-VET |
| Plaintiffs, | DEFENDANT SPI'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| MARK OLSON, et al. | |
| Defendants. | (FRCP §§ 12 (b) and (c) |
|  | Hearing Date: November 4, 2024 |
|  | Time: 10:30 a.m. |
|  | Courtroom: 5A |
|  | Judge: Hon. Roger T. Benitez |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .........................................................................................ii

I.      INTRODUCTION ............................................................................................ 1

II.     FACTUAL BACKGROUND............................................................................ 1

A. Summary of Complaint..................................................................................... 1

B. The State Superintendent of Public Instruction and the CDE .........................2

III.    LEGAL STANDARD ...................................................................................... 3

IV.     ARGUMENT.................................................................................................... 4

A. The Plaintiffs Lack Standing ........................................................................... 4

B. The Teachers' First Cause of Action Under the First Amendment's Free Speech Clause Fails to State a Claim Against the SPI (Fed. R. Civ. P. 12(c) as to Mirabelli and West; Fed. R. Civ. P. 12(b)(6) as to Roe and Boe)................................. 8

C. The Teachers' Second and Third Causes of Action and the Parents' Sixth and Eighth Causes of Action Under the First Amendment's Free Exercise of Religion Clause Fail to State a Claim Against the SPI (Fed. R. Civ. P. 12(c)) as to Mirabelli and West; Fed. R. Civ. P. 12(b)(6) as to Roe and Boe, and Poes and Does) ................... 15

    1.    The FAQs do not substantially burden religion. ...................................... 15

    2.    The FAQs are neutral and generally applicable, and thus subject to rational basis review. ........................................................................................... 20

        a.    The FAQs are neutral. ................................................................... 20

        b.    The FAQs are generally applicable. ............................................. 20

D. The Parents' Seventh Cause of Action under the Substantive Due Process Clause Fails to State a Claim against the SPI (Fed. R. Civ. P. 12(b)(6) .............................. 21

E. The Parents' Sixth and Eighth Causes of Action under the Free Exercise Clause and Seventh Cause of Action under the Substantive Due Process Clause Fail to Join Necessary Parties (the responsible school districts) (Fed. R. Civ. P. 12(b)(7)) ........ 22

    1.    The Court Cannot Accord Complete Relief Without the Poe and Doe school districts ................................................................................................... 22

    2.    The absence of the Poe and Doe children's school districts impairs the protection of their interests........................................................................ 23

V.      CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2005)................................................................................3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................3

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020)..........................................................................13

*C.N. v. Wolf*,
    410 F. Supp. 2d 894 (C.D. Cal. 2005) ................................................13

*Cafasso, U.S. ex rel. v. General Dynamics C4Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ..............................................................3

*California Parents for the Equalization of Educational Materials v. Torlakson*,
    973 F.3d 1010 (9th Cir. 2020) ............................................................15

*Chavez v. U.S.*,
    683 F.3d 1102 (9th Cir. 2012) ..............................................................3

*Csutoras v. Paradise High School*,
    12 F.4th 960 (9th Cir. 2021) ...............................................................16

*Employment Division, Department of Human Resources of Oregon v. Smith*,
    494 U.S. 872 (1990)..............................................................................20

*Fields v. Palmdale School District*,
    427 F.3d 1197 (9th Cir. 2005) ............................................................11

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ................................................................3

*Foote v. Town of Ludlow*,
    2022 WL 18356421 (D. Mass. 2022) ..................................................12

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ......................................................................... 9, 10

*Grimm v. Gloucester County School Board*,
   972 F.3d 586 (4th Cir. 2020) ........................................................ 11, 12

*Guam v. Guerrero*,
   290 F.3d 1210 (9th Cir. 2002) ............................................................. 20

*Johnson v. Poway Unified School District*,
   658 F. 3d 954 (9th Cir. 2011) ............................................................. 10

*Kadrmas v. Dickinson Public Schools*,
   487 U.S. 450 (1988) ............................................................................. 12

*Kennedy v. Bremerton*,
   142 S. Ct. 2407 (2022) .......................................................................... 9

*Magana v. Com. of Northern Mariana Islands*,
   107 F. 3d 1436 (9th Cir. 1997) .............................................................. 8

*McNeil v. Sherwood Sch. Dist.*,
   918 F.3d 700 (9th Cir. 2019) .............................................................. 11

*Meyer v. Nebraska*,
   262 U.S. 390 (1923) ............................................................................. 10

*Nguon v. Wolf*,
   517 F. Supp. 2d 1177 (C. D. Cal. 2006) .............................................. 13

*Parents for Privacy v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) .................................................. 11, 20, 21

*Parham v. JR*,
   442 U.S. 584 (1979) ............................................................................. 11

*Pickering v. Board of Education of Township High School District 205,*
   *Will County*,
   391 U.S. 563 (1968) ............................................................................. 10

*Pierce v. Society of Sisters*,
   268 U.S. 510 (1925) ............................................................................. 10

*Prescott v. Rady Children's Hospital San Diego*,
    265 F. Supp. 3d 1090 (S.D. Cal. 2017)........................................................ 14

*Regino v. Staley*,
    2023 WL 4464845 (E.D. Cal.)............................................................... 10, 12

*Sabra v. Maricopa County Community College Dist.*,
    44 F.4th 867 (9th Cir. 2022) .................................................................... 15

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) .................................................................. 20

*Troxel v. Glanville*,
    530 U.S. 57 (2000)..................................................................................... 11

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) .................................................................................. 12

*West v. Atkins*,
    487 U.S. 42 (1988)....................................................................................... 8

**Federal Statutes**

42 U.S.C.
    § 1983............................................................................................................ 8

Cal. Educ. Code
    § 218.3(B) ................................................................................................... 13
    § 218.3(G) ................................................................................................... 13

# California Statutes

Cal. Educ. Code

§ 200...................................................................................................13
§ 201(a)..............................................................................................13
§ 201(b)..............................................................................................13
§ 215(a)(3)(D)....................................................................................13
§ 218(c)(1)(I).....................................................................................13
§ 218.3(b)(3)(A).................................................................................13
§ 219(c)(1)..........................................................................................13
§ 220...................................................................................................13
§ 220...................................................................................................13
§ 234.1(a)............................................................................................13
§ 33000.................................................................................................3
§ 33000.5..............................................................................................3
§ 33004.................................................................................................3
§ 33010.................................................................................................3
§ 33111.................................................................................................3
§ 33303.................................................................................................3

# Other Authorities

Fed. R. Civ. P.

12(b)(6)................................................................................................3
12(c)................................................................................................3, 24

# Federal Constitutional Provisions

U.S. Constitution First Amendment  .................................................*passim*

# State Constitutional Provisions

Cal. Const., Article I

§ 1.....................................................................................................13

Cal. Const. Article IX

§ 2.......................................................................................................2

# I.    INTRODUCTION

Plaintiff teachers and parents object to their school districts' policies relating to students' gender identity on free speech, free exercise of religion, and substantive due process grounds.  Plaintiffs name the State Superintendent of Public Instruction ("SPI"), head of the California Department of Education ("CDE"), and each member of the State Board of Education ("SBE") in their official capacities as defendants.  However, the Second Amended Complaint (SAC) fails to allege facts to support that the SPI has deprived any of these Plaintiffs of any of their constitutional rights.

The SAC suffers from multiple defects.  All plaintiffs lack standing as to all claims because they cannot show a concrete likelihood of future harm.  The free speech claim fails because this case involves government speech, not protected private speech, and the CDE's nonbinding FAQs are rationally related to protecting transgender students' rights to privacy, freedom from discrimination, and health and safety.  The free exercise claims fail because the CDE's nonbinding FAQs do not substantially burden religion, are neutral and generally applicable, and survive rational basis scrutiny as stated above.  The substantive due process claim fails because parents do not have a fundamental right to be informed of their students' gender identity at school.  And all of the parents' claims fail because plaintiffs have failed to join necessary parties -- the responsible school districts.

Accordingly, the SPI is entitled to judgment on the pleadings in his favor as to the claims and parties indicated herein, and dismissal without leave to amend as to the claims and parties indicated herein.

# II.    FACTUAL BACKGROUND

## A. Summary of Complaint

The Second Amended Complaint or SAC (Dkt. 133) alleges as follows: EUSD enacted an administrative regulation requiring that teachers: (1) refer to transgender or gender-nonconforming students by their preferred names and pronouns and (2) decline to disclose to parents, without the student's permission, whether a student had decided to

"socially transition" and present at school as a different gender.  Plaintiff teachers Mirabelli and West, devout Christians, sought and received a religious accommodation from EUSD related to the use of student-preferred names and pronouns, permitting them to refer to students by their last names,[1]  but EUSD denied them a religious accommodation related to disclosure to parents.  Plaintiff teachers Roe and Boe, devout Christians, have not sought a religious accommodation from EUSD.

Parent Plaintiffs the Poes and Does, devout Christians, have transgender students attending unnamed school districts in Fresno County and Los Angeles County, respectively.  They allege that their school districts have not been forthcoming with them about their students' gender identity.

As to the SPI, Plaintiffs allege primarily that the CDE posted FAQs addressing gender identity issues on its website.  Plaintiffs allege that these FAQs are not a formal agency interpretation.  SAC, Dkt. 133, p. 62, ¶ 254.  Further, in their Opposition to EUSD's Motion to Dismiss, Plaintiffs explicitly conceded that the "FAQ page is *non-binding. . .*" Dkt. 10, pg. 22, n. 11 (emphasis supplied).[2]  And in the SAC, plaintiff Mrs. Doe states her view of the FAQs: "That's not law, that's FAQs on a website."  SAC, Dkt. 133, pp. 37-38, ¶ 148.

There are no factual allegations made against the members of the SBE, either with respect to the FAQs or otherwise.  Plaintiffs make no factual allegations that the SBE ever acted or voted on the FAQs, much less any EUSD policy or regulation or any policy or regulation of the unnamed Fresno County and Los Angeles County school districts.

### B. The State Superintendent of Public Instruction and the CDE

The SPI is a constitutionally elected officer.  Cal. Const. art. IX, § 2.  While the SPI is the secretary and acts as executive officer of the SBE, he is not a voting member.

---

[1] Therefore, it appears that any request for relief related to Escondido's preferred names and pronouns policy or CDE's FAQ 8 on use of preferred names and pronouns is moot.  It is unclear if other plaintiffs challenge FAQ 8.  If they do, their claims fail for the reasons stated herein.

[2] The court may consider concessions made in plaintiffs' response to a motion to dismiss as well as in response to any pleading or motion.  *Cordova v. Imperial County Narcotics Task Force*, 2022 WL 84409 at *4 (S.D. Cal.).

Cal. Educ. Code § 33004; see also Cal. Educ. Code §§ 33000, 33000.5, 33010. The SPI executes the policies decided upon by the SBE. Cal. Educ. Code § 33111. The SPI is also the ex officio Director of Education of the CDE. Cal. Educ. Code § 33303.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states that "After the pleadings are closed -- but early enough not to delay trial – a party may move for judgment on the pleadings." In deciding a motion brought under Fed. R. Civ. P. 12(c), the court applies the same standards applicable to a motion to dismiss for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011). That is, judgment on the pleadings is appropriate when, even if all material facts are taken as true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The complaint must contain sufficient factual matter, accepted as true, to plausibly -- not merely possibly -- allow the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2005); *Chavez v. U.S.*, 683 F.3d 1102, 1108-1109 (9th Cir. 2012). The court need not accept legal conclusions as true. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(1) motion asserts jurisdictional defenses, including plaintiffs' lack of standing. A Rule 12(b)(1) motion mounts a facial or factual challenge to jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (explaining differences). Reserving their right to present a factual attack later if necessary, the SPI brings a facial challenge, because the jurisdictional failures are apparent from the face of the Complaint and undisputed facts evidenced in the court record. In assessing such challenges, courts determine whether the complaint states sufficient factual matter to plausibly allow the reasonable inference that the defendant is liable. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying the rule in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) to a motion to dismiss under Fed. R. Civ. P. 12(b)(1)); *Lacano Investments, LLC*

*v. Balash*, 765 F.3d 1068, 1071-1072 (9th Cir. 2014) (conclusory allegations disregarded); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (plaintiff has burden of "clearly" alleging "facts demonstrating each element" for Article III standing). Furthermore, a plaintiff is required to demonstrate standing for each claim they seek to press and for each form of relief that they seek. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

A Rule 12(b)(6) motion "tests the legal sufficiency" of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The motion is granted if there is no cognizable legal theory to grant relief or sufficient facts to support such a theory. *Balistreri v. Pac. Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990). The complaint must state sufficient factual matter to plausibly (not merely possibly) allow the reasonable inference that the defendant is liable. *Ashcroft,* 556 U.S. at 678-79. While well-pleaded factual allegations are accepted, a court need not accept conclusory factual allegations, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A Rule 12(b)(7) motion challenges the failure to join a party under Rule 19.

## IV.    ARGUMENT

### A. The Plaintiffs Lack Standing

A plaintiff must have Article III standing, which they have the burden to show, to establish a case or controversy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, plaintiffs must (1) have suffered a concrete injury in fact; (2) which is traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision in the plaintiff's favor. *Id*. at 560-561. A plaintiff must clearly allege facts which demonstrate each of the three elements. *Warth v. Seldin*, 422 U.S. 490, 518 (1974). Standing must be established as to each of the claims asserted in a complaint. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

The SAC adds two new "classes" of plaintiffs, with the original three causes of action from the initial complaint and the FAC converted to "teacher class action" claims,

and three new causes of action for purported "parent class action" claims. However, these new plaintiffs are not in the same position as the originally named two plaintiffs, and neither new group of plaintiffs have alleged sufficient facts to establish Article III standing. All new plaintiffs lack actual injury, and the parent plaintiffs lack both other elements of standing. In addition, the original plaintiffs, Mirabelli and West, no longer have standing due to change in their circumstances. The new class action claims should therefore all be dismissed for lack of subject matter jurisdiction.

### 1. The Parent Plaintiffs Have Not Plausibly Alleged a Concrete Injury, Causation, or Redressability (Fed. R. Civ. P. 12(b)(1)

Plaintiffs Poe and Doe are the parents of transgender children who attended unidentified schools in Fresno County and Los Angeles County, and are proposed representatives of Subclasses 3 and 4. SAC, Dkt. 133, ¶¶ 35-38. These parent plaintiffs are aware of their children's gender nonconformity. SAC, Dkt. 133, ¶¶ 117-118, 125; 132-135, 137, 139. The SAC does not identify the schools attended by the Poe and Doe children, the language of the policies followed by these districts, nor how any relief against the SPI would remedy any potential injury to them.

A "concrete" injury sufficient to establish the first prong of standing is an injury that actually exists. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). The parent plaintiffs claimed "injury" by the SPI is that their First and Fourteenth Amendment rights were violated by unnamed schools not informing them that their transgender children were using different pronouns or names at school, the CDE's FAQs interfering with their purported right to direct the upbringing of their children, and the CDE's FAQs violating their First Amendment right to free exercise of religion. SAC, Dkt 133, ¶¶ 459, 482, 493. However, the only facts set out in the SAC establish that (1) the parents were aware of their children expressing gender nonconformity or questioning their gender identity, (2) their children explored their transgender identities online and outside of school, and (3) the children's friends and their friends' parents knew they were transgender. Significantly, there are no facts alleged that the schools the Doe child attended were using their preferred names and pronouns, nor that any of the unidentified

schools either of the children attended had any policies in place regarding the disclosure or nondisclosure of pupil gender identity to parents.  See, e.g., SAC, Dkt 133, ¶¶ 147, 151, 153.  Additionally, the Poe parents have now enrolled their transgender child in an online homeschooling program, not an in-person public school.  SAC, Dkt. 133, ¶ 126.  In other words, the parent plaintiffs *know* their children are transgender, they have admittedly taken the steps they believe are appropriate to respond to that and "parent" their children, and their children found affirmance of their gender identity with friends and online.  There is no "injury" to establish standing for the parent plaintiff causes of action. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410 (2013).

Further, even if the allegations in the SAC could establish an "injury" as to these parent plaintiffs and the three causes of action they allege, any such injury is not traceable to any action by the SPI.  The failure to identify the schools or the policies purportedly followed by the schools make it impossible for the parent plaintiffs to establish that they were based on the CDE's FAQs, or even that any information was withheld because of any policy or the FAQs on their own, as opposed to the anti-discrimination statutes referenced in the FAQs.  The lack of any allegations in the complaint to show that the purported injury is fairly traceable to conduct of the SPI or the CDE generally means the parent plaintiffs cannot establish standing. *California v. Texas*, 593 U.S. 659, 669 (2021).

The parent plaintiffs seek to invalidate and restrain enforcement of the CDE's FAQs and Legal Opinion, and for attorney's fees and costs. SAC, Dkt. 133, ¶¶ 460-461; 483-484; 494-495. However, this requested relief will not redress the alleged injury to these plaintiffs, as the anti-discrimination laws, upon which the FAQ relies, will remain in place, and the unnamed local educational agencies the plaintiffs' children attended will not be required to change any policies they have, whether or not the FAQs remain on the CDE's website. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976).  "Relief that does not remedy the injury suffered cannot bootstrap

a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Environment* 523 U.S. 83, 107 (1998).

The parent plaintiffs cannot establish even one of the three required elements of Article III standing to maintain causes of action six, seven, and eight of the SAC, and those claims should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. Proc 12(b)(1).

2. The Newly Added EUSD Teacher Plaintiffs Lack Standing Because They Have Not Alleged Actual Injury (Fed. R. Civ. P. 12(b)(1))

Plaintiffs Jane Roe and Jane Boe are EUSD teachers and "proposed representatives of Subclasses 1 and 2." SAC, Dkt 133, ¶¶ 33-34. Significantly, there are very few factual allegations specific to these teacher plaintiffs in the SAC beyond alleging that they teach middle school in EUSD and are against EUSD's policy, allegedly due to their religious beliefs. SAC, Dkt. 133, ¶¶ 109-111. Roe alleges she had a transgender student in her classes in 2023-2024, Boe alleges she had a transgender student in her classes in 2022-2023, and both allege generally that they have complied with EUSD's policy thus far. SAC, Dkt. 133, ¶¶ 112-113. Plaintiff Boe alleges that it is "likely" she will have a transgender student in her class this year, yet does not know that she does, nor does she allege that any such potential pupil will request that their transgender status be kept from their parents. SAC, Dkt. 133, ¶ 113.  There is no allegation that either of these new teacher plaintiffs have requested a religious accommodation from EUSD.

A concrete injury sufficient to establish standing can be one that is imminent, but mere allegations of possible future injury are not sufficient. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). The new teacher plaintiffs do not allege that they have actually had to withhold a pupil's transgender status from parents, nor that they have any pupils this year who are both (1) transgender or gender nonconforming and (2) requesting that their parents not be told. Any potential "injury" is therefore purely speculative, and insufficient to establish standing for these new teacher plaintiffs. ///

3.   Mirabelli and West Cannot Show Actual, Imminent Harm (Fed. R. Civ. P. 12(b)(1))

For a plaintiff seeking prospective relief, "the plaintiff must establish a sufficient likelihood of future injury" to meet the first prong of Article III standing. *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S., 367, 381 (2024). A plaintiff's belief that the government is acting illegally is insufficient to show injury in fact. *Id.* Here, plaintiffs Mirabelli and West can no longer establish a likelihood of future injury, as neither are currently teaching at EUSD, or teaching at all. Dkt. 137-6, ¶ 49; Dkt 137-7, ¶ 2 (the court can take judicial notice of these matters in the court record). The mere potential that they may at some future date (1) teach a class, (2) have a transgender pupil, and (3) the pupil will not be "out" to their parents and plaintiffs will be unable to share their gender nonconformity with the pupil's parents, is too attenuated to establish actual, concrete injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983). "Past exposure [. . .] does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). Mirabelli and West can no longer show concrete injury, and therefore do not have standing to maintain causes of action one through three.

### B. The Teachers' First Cause of Action Under the First Amendment's Free Speech Clause Fails to State a Claim Against the SPI (Fed. R. Civ. P. 12(c) as to Mirabelli and West; Fed. R. Civ. P. 12(b)(6) as to Roe and Boe)

The First Amendment to the U.S. Constitution states in relevant part, "Congress shall make no law…abridging the freedom of speech… "The vehicle for bringing a constitutional claim such as a First Amendment claim is Section 1983. *Magana v. Com. of Northern Mariana Islands*, 107 F. 3d 1436, 1441 (9th Cir. 1997). To establish a claim under Section 1983, a plaintiff must plausibly allege that a federal constitutional right was violated and the alleged violation was committed by a person acting under color of state law. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

///

///

Here the "state action" alleged is that the CDE published FAQs.[3]  With respect to disclosure of students' gender identity, the FAQs state as follows:

> [FAQ 6:]
>      A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home. Revealing a student's gender identity or expression to others may compromise the student's safety. Thus, preserving a student's privacy is of the utmost importance. The right of transgender students to keep their transgender status private is grounded in California's antidiscrimination laws as well as federal and state laws.  Disclosing that a student is transgender without the student's permission may violate California's antidiscrimination law by increasing the student's vulnerability to harassment and may violate the student's right to privacy.

> [FAQ 7:]
> . . . [S]chools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents. In those very rare circumstances where a school believes there is a specific and compelling "need to know," the school should inform the student that the school intends to disclose the student's transgender status, giving the student the opportunity to make that disclosure her or himself. Additionally, schools must take measures to ensure that any disclosure is made in a way that reduces or eliminates the risk of re-disclosure and protects the transgender student from harassment and discrimination. Those measures could include providing counseling to the student and the student's family to facilitate the family's acceptance and support of the student's transgender status. Schools are not permitted to disclose private student information to other students or the parents of those students.

>      A transgender student's right to privacy does not restrict a student's right to openly discuss and express their gender identity or to decide when or with whom to share private information. A student does not waive his or her right to privacy by selectively sharing this information with others.

First, Plaintiffs are not entitled to First Amendment, free speech clause protection in this circumstance.  A government agency such as EUSD is entitled to establish the rules for its employees' communication about students' gender identity.  Public school employees are paid in part to speak on the Government's behalf and convey its intended messages.  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022).

In cases implicating the free speech rights of government employees, the Supreme Court directs courts to proceed in two steps.  *Garcetti v. Ceballos*, 547 U.S. 410, 418

---

[3] The FAQs are attached to the SAC, Dkt. 133, at Exhibit 26.

(2006); *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563 (1968).  First, if the employee speaks pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the First Amendment Free Speech clause will generally not shield the employee from the government employer's control and discipline.  For constitutional purposes, such speech is the government's own speech.  *Garcetti*, 547 U.S. at 421; see also *Johnson v. Poway Unified School District*, 658 F. 3d 954, 957 (9th Cir. 2011); *cert. denied*, 566 U.S. 906 (2012).  On the other hand, if an employee speaks as a citizen on a matter of public concern, Free Speech clause concerns may be implicated, and courts should proceed to a second step.  *Garcetti*, 547 U.S. at 423.  At the second step, courts balance the employee's speech interests and the interests of the government employer.  *Garcetti*, 547 U.S. at 417.

Here, at the first step, any teacher communications about students' transgender status are pursuant to their official duties as employees of EUSD.  EUSD's policy does not suggest that teachers should be speaking broadly or generally, as citizens, on transgender issues.  And even if they were binding, the CDE FAQs do not suggest that either.  Thus, we do not reach the second step because the teachers are not entitled to First Amendment protection.

Second, Plaintiffs cannot establish that FAQs 6 and 7 compelled the teachers to violate any fundamental constitutional right of unidentified EUSD parents.  Parents do not have a constitutional right to be informed of their child's transgender identity (or to give consent before a school may refer to a transgender child by their preferred name or pronouns).  *Regino v. Staley*, 2023 WL 4464845 at *3 (E.D. Cal.); *Blair v. Appomattox County School Board*, 2024 WL 3165312 at *6 (W.D. Va.); *Doe v. Delaware Valley Regional High School Board of Education*, 2024 WL 70697 at *11 (D.N.J.).  Parents *do* have a fundamental right to choose their child's educational forum.  *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).  But having chosen an educational forum, parents do not have a fundamental right to dictate matters

such as curriculum or school policies. *Fields v. Palmdale School District*, 427 F.3d 1197, 1200 (9th Cir. 2005), *opinion affirmed and amended in part on denial of rehearing*, 447 F.3d 1187 (9th Cir. 2006); see also *McNeil v. Sherwood Sch. Dist.*, 918 F.3d 700, 711 (9th Cir. 2019). As the Ninth Circuit explained in *Fields*:

> Schools cannot be expected to accommodate the personal, moral or religious concerns of every parent. Such an obligation would not only contravene the educational mission of the public schools, but also would be impossible to satisfy. *Fields*, 427 F.3d at 1206.

While the Supreme Court did state in *Troxel v. Glanville*, 530 U.S. 57, 65 (2000) that parents have a fundamental right to direct their child's care, custody or control, the Ninth Circuit has emphasized that *Troxel* did not establish a parent's right to dictate the actions or inactions of a public school system. See *Parents for Privacy v. Barr*, 949 F.3d 1210, 1230 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 894 (2020) (*Troxel* "did not address the extent of parents' rights to direct the policies of the public schools that their children attend."). In *Parents for Privacy*, the court emphasized that "Plaintiffs fail to cite any Supreme Court authority showing that parents' substantive due process rights under the Fourteenth Amendment encompass a right to direct the curriculum, administration or policies of public schools." *Id*. at 1232. Specifically, the court found that the Fourteenth Amendment "does not provide a fundamental parental right to determine the bathroom policies of the public schools to which parents may send their children." *Id*. at 1217-1218.

Nor do parents have a fundamental right to disclosure of their students' gender identity on the grounds that referring to a student by their chosen name and pronouns is "medical care." Parents do have specific rights with respect to directing their children's medical care. *Parham v. JR*, 442 U.S. 584, 603 (1979). And some transgender individuals can experience gender dysphoria, i.e., emotional distress related to not being able to express their true gender identity. *Grimm v. Gloucester County School Board*, 972 F.3d 586, 612 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Karnoski v. Trump*, 926 F.3d 1180, 1187 n. 1 (9th Cir. 2019). However, importantly, being

transgender itself is not a medical or psychiatric condition. *Grimm,* 972 F.3d at 594, 612-613; *Foote v. Town of Ludlow*, 2022 WL 18356421 at *5 (D. Mass. 2022); *Doe v. Boyertown Area School District*, 276 F. Supp. 3d 324, 367 (E.D. Penn. 2017), *aff'd*, 897 F.3d 518 (3d Cir. 2018), *cert. denied,* 139 S. Ct. 2636 (2019).

Addressing a person using their preferred names and pronouns is not medical care. As the court stated in *Foote*:

> Addressing a person using their preferred name and pronouns simply accords the person the basic level of respect expected in a civilized society generally, and, more specifically, in Massachusetts public schools where discrimination on the basis of gender identity is not permitted . . . This is true regardless of a person's age, provided the individual does not have a fraudulent purpose for using a new preferred name or pronouns. *Foote*, 2022 WL 18356421 at *5.

See also *Regino v. Staley*, 2023 WL 4464845 at *3 (rejecting as conclusory the allegation that permitting social transitioning at school constitutes medical treatment). The court should disregard any such conclusory allegations in the SAC. *Ashcroft*, 556 U.S. at 678.

In summary, this case bears a much closer resemblance to cases involving parent challenges to curriculum and other public school policy decisions than to cases involving "care, custody or control" generally, or medical care specifically. The Supreme Court has made clear that parental rights are not absolute or unlimited, *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944), and that courts must proceed with utmost care when considering establishing new substantive due process rights. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

Because they do not implicate a fundamental right, even if they were mandatory (which they are not), FAQs 6 and 7 are subject to rational basis review, that is, whether the FAQs at issue are reasonably related to a legitimate government purpose. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458 (1988). *Washington v. Glucksberg*, 521 U.S. at 722.

It is appropriate for the state educational agency to provide guidance to local educational agencies on educational matters. Here, the CDE has a legitimate interest in

providing guidance that is protective of student rights to privacy, safety and health, and freedom from discrimination as guaranteed by the California constitution as well as state and federal statutes.[4]

A student has a legally protected privacy interest under the California Constitution as to information about the student's gender identity. *C.N. v. Wolf*, 410 F. Supp. 2d 894, 903 (C.D. Cal. 2005); see Cal. Const., Art. I, §1. A student retains a reasonable expectation of privacy in their gender identity with respect to non-disclosure to their parents at home, even if open about their gender identity at school. *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1191 (C. D. Cal. 2006) ("It does not follow that disclosure in one context necessarily relinquishes the privacy right in all contexts.").

And California's Education Code recognizes gender identity and gender expression as protected characteristics in its anti-discrimination laws and, as such, transgender and gender nonconforming students cannot be singled out for different, adverse treatment solely on account of their protected characteristics. Cal. Educ. Code § 220.

Similarly, federal law protects transgender persons from discrimination based on their gender identity. See *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020) (discrimination based on transgender status is sex discrimination under Title VII); *Hecox v. Little*, 104 F.3d 1061, 1079 (9th Cir. 2024) (discrimination based on transgender status

---

[4] California law emphasizes the rights of LGBTQ students. Educ. Code § 200 (schools must provide all students with equal rights regardless of gender identity); Educ. Code § 201(a) (all students have the right to participate fully and be free from discrimination); Educ. Code § 201(b) (schools must combat sexism); Educ. Code § 215(a)(3)(D) (LEAs must adopt policies on suicide prevention that specifically address the needs of LGBTQ students); Educ. Code § 217(a) (per Assembly Bill 1955 passed in 2024, the CDE must develop and update resources with strategies to increase support for LGBTQ students); Educ. Code § 218(c)(1)(I) (CDE must provide resources to support LGBTQ students including policies to protect privacy); Educ. Code § 218.3(b)(3)(A), (B), (G) (CDE must develop an online training for staff about LGBTQ students, including creating safe and supportive learning environments, identifying students subject to or at risk of lack of acceptance at home, and protecting privacy); Educ. Code § 219(c)(1) (the SSPI shall convene an advisory task force to identify needs of LGBTQ students and make recommendations to address their well-being including their mental health and feelings of safety and support); Educ. Code § 220 (students are protected from discrimination based on gender identity); Educ. Code § 234.1(a) (LEAs must adopt policies that prohibit discrimination based on gender identity).

is a form of sex-based discrimination); see also *Prescott v. Rady Children's Hospital San Diego*, 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017) (discrimination on the basis of gender identity is discrimination based on sex for purposes of the Affordable Care Act); 34 C.F.R. § 106.10 (under Title IX, discrimination based on sex includes discrimination based on gender identity).

Protecting students from emotional, psychological, and physical harm is a strong government interest. *Globe Newspaper Co. v. Superior Court of Norfolk County*, 457 U.S. 596, 607 (1982) (states have a strong interest in protecting the lives and health of children within their borders). Protecting the psychological well-being of transgender youth is a legitimate state interest. *Tingley v. Ferguson*, 47 F.4th 1055, 1078 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 33 (2023). As the District Court stated in *Regino*, 2023 WL 4464845 at *4:

> . . . [T]he Defendant has demonstrated a legitimate state interest in creating a zone of protection for transgender students and those questioning their gender identity from adverse hostile reactions, including, but not limited to, domestic abuse and bullying; this is in line with the Regulation's general purpose to combat discrimination and harassment against students.

Even if this case merited strict scrutiny, which it does not, courts have described the government's interest in protecting LGBTQ persons from discrimination as compelling. See, e,g, *Doe v. Boyertown Area School District*, 897 F.3d at 529 (school district had compelling interest in protecting transgender students from discrimination).

As California's legislature has declared, "Choosing when to 'come out' by disclosing an LGBTQ+ identity, and to whom, are deeply personal decisions, impacting health and safety as well as critical relationships, that every LGBTQ+ person has the right to make for themselves." Assembly Bill (AB) 1955, approved by the Governor on July 15, 2024, effective January 1, 2025, § 2(b). Teachers are in a unique position of "trust" with their students. *Johnson v. Poway Unified School District*, 658 F.3d at 968. If transgender students fear that their teachers will reveal chosen name and pronoun use at school to parents without student consent, the students may be reluctant to request chosen names and pronoun use at school. As the legislature has declared, "LGBTQ+

pupils have the right to express themselves freely at school without fear, punishment, or retaliation, including that teachers or administrators might 'out' them without their permission."  AB 1955, § 2(f).

Thus, FAQs 6 and 7 bear a rational relationship to these legitimate government purposes of promoting the protection of student rights to privacy, freedom from discrimination, and safety and well-being.  The guidance in these FAQs helps LEAs protect student safety, ensure a supportive school environment where students feel accepted and valued, prevent discrimination against transgender students, and protect student privacy.

**C. The Teachers' Second and Third Causes of Action and the Parents' Sixth and Eighth Causes of Action Under the First Amendment's Free Exercise of Religion Clause Fail to State a Claim Against the SPI (Fed. R. Civ. P. 12(c)) as to Mirabelli and West; Fed. R. Civ. P. 12(b)(6) as to Roe and Boe, and Poes and Does)**

1.  The FAQs do not substantially burden religion.

The First Amendment provides in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const., amend. I.  The Plaintiffs bear the burden of demonstrating an actual infringement of their religion.  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. at 524.  That is, to state a claim under the Free Exercise Clause, a plaintiff must show that the challenged state action substantially burdens the plaintiff's exercise of their religion.  *California Parents for the Equalization of Educational Materials v. Torlakson*, 973 F.3d 1010, 1019-20 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2583 (2021) (curriculum that parents claimed to be offensive to their religious briefs did not penalize, interfere with, or otherwise burden religious exercise); *Sabra v. Maricopa County Community College Dist.*, 44 F.4th 867, 809 (9th Cir. 2022);   Being offended by government actions that address religion in some way does not suffice; the government's action must actually operate as a burden on the plaintiff's practice of their religion. *Id.*

The free exercise clause does not require the government to conduct its internal affairs in ways that comport with the religious beliefs of individual citizens.  It does not

afford an individual a right to dictate the conduct of the government's internal procedures. *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439, 448 (1988). Rather, plaintiffs must show a direct or indirect pressure to abandon religious beliefs or affirmatively act contrary to those beliefs. *Lyng*, 485 U.S. at 450. There is no substantial burden where the contested action is non-coercive. See *American Family Association v. City and County of San Francisco*, 277 F.3d 1114, 1123-1124 (9th Cir. 2022) (Board of Supervisors' resolution urging TV stations not to run anti-gay ads did not substantially burden religious groups' free exercise of religion where the resolution was non-mandatory.)

CDE's FAQs 6 and 7 that provide guidance to local educational agencies regarding the issue of disclosure of students' gender identity do not impose a substantial burden on the plaintiffs' practice of their religion. First, the FAQs are not binding, and there has been no interaction whatsoever between the State Education Defendants and teacher Plaintiffs, EUSD, parent plaintiffs or the parent plaintiffs' unnamed school districts. The FAQs do not require Plaintiffs or school districts to do anything, nor do they prohibit Plaintiffs or EUSD from doing anything.[5]

The SPI has continued to emphasize, in hearings in this action for forward-looking relief only as to them, that that in their view the FAQs are non-binding, and that while school districts are bound by the text of the statutes mentioned in the FAQs, they are not bound by the guidance in the FAQs as to how to apply those statutes in particular circumstances. See Dkt. 39, transcript of August 30, 2023, hearing at p. 6, ll. 17-22 and p. 4, ll. 1-14; Dkt. 75, transcript of January 8, 2024, hearing, at p. 6, ll. 12-16 and p. 8, ll. 2-4.

Plaintiffs allege that school districts have referenced the FAQs. Dkt. 133, p. 7, ¶ 12 and p. 62, ¶ 54 (EUSD); p. 32-33, ¶ 125 (Poes' school district); and p. 33, ¶ 129, p. 36, ¶ 143 and p. 37, ¶ 148 (Does' school district). But the facts alleged do not plausibly

---

[5] See, e.g., *Csutoras v. Paradise High School*, 12 F.4th 960, 967-968 (9th Cir. 2021) (U.S. Department of Education "Dear Colleague" guidance letter did not create binding obligations on school district).

support that these LEAs believed and continue to believe they are bound by the FAQs. For example, CDE's FAQ 8 states: "If a student so chooses, district personnel shall be required to address the student by a name and the pronouns consistent with the student's gender identity…". SAC, Dkt. 133, Exh. 26.  Plaintiffs Mirabelli and West allege in the SAC that EUSD granted them a religious accommodation from EUSD's preferred names and pronouns policy.  "EUSD acknowledged that Mrs. Mirabelli and Mrs. West could comply with the preferred names and pronouns policy by referring to transgender or gender diverse students using their last names without using any pronouns."  Dkt. 133, p. 66, ¶ 272.  Clearly, EUSD chose its own path, basing its choices as to whether to grant or deny religious accommodations to Mirabelli and West on considerations other than CDE's FAQs (which of course do not reference religion, religious practice, or religious accommodation at all).

Plaintiffs' suggestion that the CDE's actions with respect to Rocklin Unified School District (RUSD) show that the FAQs have an unconstitutionally coercive effect on LEAs that burdens Plaintiffs' free exercise lacks merit.  SAC, Dkt. 133, pp. 79-80, ¶¶ 320-321.  Under state law, the CDE is required to establish a Uniform Complaint Procedure to address, among other things, complaints of discrimination based on a protected characteristic (which includes gender identity).  Cal. Educ. Code §§ 33315(a)(1)(F); 220.  The CDE received a complaint that RUSD had a policy that required teachers to disclose a student's change of identity at school without parent consent, and the CDE investigated.  See Cal. Educ. Code § 33315(a)(5); Title 5, California Code of Regulations (5 CCR) § 4650(a)(5).  As required by law, the CDE applied the law to the facts, and in so doing found that RUSD's policy was discriminatory in violation of Cal. Educ. Code § 220.  The CDE issued corrective actions (to inform the school community that RUSD would not implement the policy).  5 CCR § 4664(a)(6).  When RUSD did not comply, the CDE brought a writ action in state court to compel compliance.  5 CCR § 4670.  In the meantime, the legislature passed AB 1955,

establishing Cal. Educ. Code § 220.5 that, effective January 1, 2025, invalidates a policy such as RUSD's "unless otherwise required by state or federal law."

Plaintiffs cannot allege that the CDE's investigation report as to RUSD mentions the FAQs at all, and it does not. Dkt. 112 (court can take judicial notice of this matter in the court record). Plaintiffs do not allege that the CDE has taken any action in EUSD or the Doe or Poe school districts regarding their policies relating to gender identity.

LEAs remain required to investigate complaints of discrimination based on a protected characteristic, and to self-impose corrective actions if appropriate. Cal. Educ. Code § 33315(a)(6); 5 CCR § 4631(e)(3). The CDE remains required to address appeals from such LEA decisions or directly investigate as appropriate, and issue corrective actions in either instance as appropriate. Cal. Educ. Code §§ 33315(a)(4-6); 5 CCR §§ 4633(g)(3), 4650, 4664(a)(6).

As to the *teacher* plaintiffs, the SAC does not plausibly allege that the FAQs interfere with their ability to practice their religion. The FAQs do not require the teacher plaintiffs to adopt or affirm a belief regarding gender identity that is contrary to their own religious beliefs. They do not penalize the teacher plaintiffs for having views contrary to those in the FAQs. The FAQs are a support to LEAs in creating their own internal procedures. The fact that the FAQs may be offensive to the teacher plaintiffs does not constitute a substantial burden on the teacher plaintiffs' free exercise of religion.

The Ninth Circuit has suggested that in the government employment context, a free exercise of religion claim should be analyzed using a modified *Pickering* test, balancing the employee's interest in free exercise of religion against the government employer's interest in the efficient and effective provision of services. *Berry v. Department of Social Services,* 447 F.3d 642, 648-650 (9th Cir. 2006) (employer's interest in avoiding Establishment Clause violation outweighed employee's interest); *Lumpkin v. Brown*, 109 F.3d 1498, 1501 (9th Cir. 1997), *cert. denied*, 522 U.S. 995 (1997) (city's interest in integrity of its anti-discrimination policies outweighed human

rights commissioner's interest in making anti-gay public statements); see also *Barr v. Tucker*, 662 F. Supp. 3d 1353, 1369-1370 (S.D. Ga. 2023) (substitute teacher properly removed because of concern about how she would support students or parents that identify as gay). The fact that this case involves a government employment context makes it even more clear that the FAQs do not place a burden on the teachers' private exercise of religion.

Of course, the State Education Defendants are not the Plaintiff teachers' employer. The CDE issued FAQs to help support LEAs in addressing the issue. The CDE and the LEAs have a significant interest in protecting the well-being of LGBTQ students and respecting their right to choose whether, when and how to come out to their parents. CDE's interest in supporting the LEAs in considering "student-centered" policies on gender-identity disclosure in a government employment context outweighs plaintiff teachers' internal discomfort with the concept of transgender or their desire to inform parents of students' change of gender identity at school because of the parent-child bond.

As to the *parent* plaintiffs, the SAC does not plausibly allege that the FAQs coerce them to believe or act contrary to their religious views. The FAQs do not ask the parents to affirm views contrary to their own views on gender or sexuality, disavow views on these matters that their religion espouses, or otherwise affirmatively act in violation of their own religious beliefs. The parents may still instruct their children on their religious beliefs on gender and sexuality. The FAQs do not prevent the parents from discussing these topics with their children and teaching them as they wish. Indeed, the parent plaintiffs allege they have done precisely that. See, e.g., SAC, Dkt. 133, p. 36, ¶ 140 (The Does told their child that they did not agree with their child's gender transition).

Because the FAQs do not substantially burden Plaintiffs' free exercise of religion, these claims fail.

2.  The FAQs are neutral and generally applicable, and thus subject to rational basis review.

Even if FAQs 6 and 7 somehow substantially burden Plaintiffs' exercise of religion, they are subject to rational basis review because they are both neutral and generally applicable.  In *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990), the Supreme Court stated that strict scrutiny does not apply to state action that substantially burdens religious conduct if it is (1) neutral and (2) generally applicable.  If the state action is neutral and generally applicable, the government need only show that it is rationally related to a legitimate state purpose.  See *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015); *Guam v. Guerrero,* 290 F.3d 1210, 1215 (9th Cir. 2002).

a.  The FAQs are neutral.

The FAQs are neutral in that they do not target religiously motivated conduct on their face or in practice.  See *Students for Privacy v. Barr*, 949 F. 3d at 1235 (policy permitting transgender students to use bathroom and locker room corresponding to their gender identity was neutral in that it made no reference to any religious practice, conduct, belief or motivation).  There are no facts to support that the FAQs' intent was to prevent religious conduct.  Rather, as stated in the preamble to the FAQs (and as demonstrated throughout the FAQs), they serve goals such as protecting student rights to privacy and safety and freedom from discrimination.  Dkt. 133, Exh. 26, p. 1.

The FAQs are neither aimed at religion nor driven by the Plaintiff's religious beliefs.  See *Bates v. Pakseresht*, 2023 WL 7546002 at *7 (D. Or.)  As the court stated in *Bates*, persons may have non-LGBTQ-affirming views that are not based on religion, and religious persons may have neutral or pro-LGBTQ -affirming views. *Id.* at *9.  A rule regarding nondisclosure of gender identity would not endorse a secular viewpoint over a religious viewpoint. *Id.*

b.  The FAQs are generally applicable.

The question of general applicability addresses whether a law treats religious observers unequally.  *Students for Privacy v. Barr*, 949 F. 3d at 1235.  The FAQs are

generally applicable in that the guidance is offered equally to all local educational agencies, all schools, and all school employees, regardless of religion. The guidance does not place any demands on exclusively religious persons or conduct.  See *Students for Privacy v. Barr*, 949 F. 3d at 1236 (policy permitting transgender students to use bathroom and locker room corresponding to their gender identity was generally applicable).  The guidance does not address whether or when teachers should be disciplined.  While FAQ 7 indicates that there will be circumstances in which school staff determine that parents have a need to know, that does not change the fact that the FAQ is generally applicable.

Plaintiffs do not and cannot allege that the SPI has "applied" the FAQs in such a way as to grant exceptions for non-religious reasons but deny them for religious reasons. In fact, Plaintiffs do not and cannot plausibly allege that the SPI has "applied" the FAQs at all, given that they are simply non-binding school guidance for the school districts that directly serve students.  Plaintiffs do not and cannot allege that the SPI has established, granted or denied any exceptions to the FAQs.

For all of the reasons above, and because the free exercise claim involves government speech, rational basis review applies.  And for all of the same reasons described above with respect to the free speech claim, the FAQs survive rational basis scrutiny.

### D. The Parents' Seventh Cause of Action under the Substantive Due Process Clause Fails to State a Claim against the SPI (Fed. R. Civ. P. 12(b)(6)

In the section on the First Cause of Action above, the SPI explained why FAQs 6 and 7 do not compel the EUSD teacher plaintiffs to violate any fundamental parental constitutional right.  That same analysis applies with equal force here.  The Poes and Does do not have a fundamental right to be informed of their students' gender identity at school, and accommodating a student's social transition at school is not medical care triggering any right to parental involvement.  Furthermore, the Poes and Does are aware of their students' transgender identity. See SAC, Dkt. 133, p. 9, ¶ 24, l. 26 (the students' "continue to persist in a transgender identity.").

### E. The Parents' Sixth and Eighth Causes of Action under the Free Exercise Clause and Seventh Cause of Action under the Substantive Due Process Clause Fail to Join Necessary Parties (the responsible school districts) (Fed. R. Civ. P. 12(b)(7))

Under Fed. R. Civ. P. 19(a)(1)(A), a person must be joined if, without them, "the court cannot accord complete relief among the existing parties." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (complete relief could not be accorded without party to lease). Fed. R. Civ. P. 19(a)(1)(B) necessitates joinder if the absent party can claim an interest related to the subject of the action and is so situated that disposing of the action in their absence may either (1) impair or impede their ability to protect that interest or (2) leave any of the existing parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *Dawavendewa,* 276 F.3d at 1156-1158 (party to lease was also necessary under this rule). A party is necessary if it satisfies either Rule 19(a)(1)(A) or Rule 19(a)(1)(B). *Dawavendewa,* 276 F.3d at 1156; see also *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (Secretary of Interior was necessary under both prongs in dispute between coal company and Indian tribe).

The SAC's omission of the Poe and Doe children's unnamed school districts whose administrators allegedly acted on their interpretation of CDE website documents does not satisfy the requirements of Fed. R. Civ. P. 19. Without these parties, the court cannot ensure complete relief under Fed. R. Civ. P. 19(a)(1)(A), nor can it protect the absent school districts' interests or prevent the risk of inconsistent obligations under Fed. R. Civ. P. 19(a)(1)(B).

#### 1. The Court Cannot Accord Complete Relief Without the Poe and Doe school districts

The CDE is not the entity that provides educational services to the Poe and Doe children. School districts are generally responsible for providing an education to students residing within the district's jurisdictional boundaries. Cal. Educ. Code § 48200. School districts are responsible for the overarching implementation of educational policies within their jurisdiction, including those related to student welfare and parental notification. See Cal. Educ. Code § 35160 (providing school districts

substantial discretionary control over educational policies, so long as consistent with law); §44808 (outlining the responsibilities of school districts regarding the safety and conduct of pupils while on school property);  *Dawson v. East Side Union High School Dist*., 28 Cal.App.4th 998, 1019 (1994) (noting the broad discretion vested in school districts to tailor policies to meet the unique needs and circumstances of their local communities).

By failing to name at least one district staff or administrator from the Poe and Doe school districts in their official capacity, plaintiffs arbitrarily ignore the fact that these districts are integral in enforcing or revising the disputed policies.  For example, even if the court were to permanently enjoin the CDE from publishing the nonbinding FAQs in their present form, the local school districts could continue to implement their own contested policies or simply choose to interpret them differently, thereby undermining any relief granted to parents Poe and Doe.  Complete relief cannot be accorded without the presence of these parties who have a significant administrative and ministerial role in the matter at issue.  Indeed, the absence of the school districts could leave the Poe and Doe parents without any consistent or effective remedy, as the school districts -- not the CDE -- are the entities that interpret and ultimately enforce their parental notification policies.

### 2.  The absence of the Poe and Doe children's school districts impairs the protection of their interests

Here, the unnamed school districts have a direct and substantial interest in the litigation because the outcome will impact whether and how they can use the nonbinding guidance in the FAQs in formulating their own policies and applying them to particular factual scenarios within their own schools.  The Ninth Circuit has held that a party's interest is sufficiently significant to warrant joinder when the outcome of the litigation could have a direct effect on the party's legal rights or duties. *Wilbur v. Locke,* 423 F.3d 1101, 1113 (9th Cir. 2005) (State could not adequately represent interest of Tribe). Here, if the court rules on the constitutionality or interpretation of the CDE's FAQs in the absence of the Poe and Doe children's respective school districts, the districts' ability

to protect their own policy interests would be significantly impaired. The SPI would not adequately represent the interests of the school districts because it is the school districts who formulate their own policies in serving their own students. The absent school districts may also face challenges if they are later sued based on the court's ruling without having had the opportunity to present their arguments in the initial litigation. Proceeding without these school districts would impair their ability to protect their interests and create complications for implementing any court-ordered relief. "Courts are particularly sensitive to the risk of inconsistent obligations when the interests of absent parties are closely related to the subject of the litigation." *Dawavendewa,* 276 F.3d at 1156.

## V.    CONCLUSION

For the above reasons, the SPI respectfully requests that the court grant judgment in his favor pursuant to Fed. R. Civ. P. 12(c) as to the claims and parties indicated herein, and grant the SPI's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (6) and (7) as to the claims and parties indicated herein.


Dated: August 27, 2024                    Respectfully submitted,


                                By:    /s/ Christopher Mandarano
                                       Attorneys for the State Education Defendants