1 | Rob Bonta
Attorney General of California
2 | Darrell W. Spence
Supervising Deputy Attorney General
3 | Emmanuelle S. Soichet
Deputy Attorney General
4 | Kevin L. Quade
Deputy Attorney General
5 | State Bar No. 285197
  1300 I Street, Suite 125
6 | P.O. Box 944255
  Sacramento, CA 94244-2550
7 | Telephone: (916) 210-7693
  Fax: (916) 324-8835
8 | E-mail: Kevin.Quade@doj.ca.gov
*Attorneys for Defendant*
9 | *Attorney General Rob Bonta*

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

14 

15 | **ELIZABETH MIRABELLI, an individual, et al.,**

16 | Plaintiffs,

17 | **v.**

18 

19 | **MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**

20 | Defendants.

21 

| 3:23-cv-00768-BEN-VET |
| --- |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ATTORNEY GENERAL BONTA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Date:        November 4, 2024
Time:        10:30 a.m.
Dept:        5A
Judge:       The Hon. Roger T. Benitez
Action Filed:    April 27, 2023

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................... 1

Background ....................................................................................................... 3

    I.     Procedural Background and Factual Allegations .................................. 3

         A.    The First Two Complaints and the Court's Dismissal of
              the Attorney General .................................................................. 3

         B.    The Operative Second Amended Complaint ............................. 4

    II.    Roles and Responsibilities of the State Defendants ............................ 8

Legal Standard ................................................................................................. 9

Argument .......................................................................................................... 9

    I.     Plaintiffs Have Not Established Standing to Sue the Attorney
        General .................................................................................................. 9

         A.    Background Law on Standing ..................................................... 9

         B.    The Teacher Plaintiffs Lack Standing ..................................... 11

              1.    Plaintiffs' derivative theory of liability ......................... 11

              2.    The Attorney General has disavowed any
                   enforcement against EUSD .............................................. 13

              3.    The Teacher Plaintiffs have not plausibly alleged
                   facts showing that Attorney General enforcement
                   against EUSD is likely ..................................................... 14

         C.    The Parent Plaintiffs Lack Standing ....................................... 16

              1.    The Parent Plaintiffs have not plausibly alleged that
                   they have been or will be hindered in the exercise
                   of their constitutional rights ............................................ 16

              2.    The Parent Plaintiffs have not plausibly alleged
                   injuries that are fairly traceable to any conduct of
                   the Attorney General ....................................................... 19

    II.    The Attorney General Is Immune from Suit Under the Eleventh
        Amendment ......................................................................................... 21

Conclusion ..................................................................................................... 24

i

Memo. of Points and Auth. in Support of Attorney General Bonta's Mot. To Dismiss Second
Amended Complaint (3:23-cv-00768-BEN-VET)

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. Wright*
   468 U.S. 737 (1984) ................................................................................ 10, 16

*Association des Eleveaurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013) ......................................................................22, 23

*Cal. Trucking Ass'n v. Bonta*
   996 F.3d 644 (9th Cir. 2021) ............................................................................ 15

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) .......................................................................................... 10

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) ................................................................................ 10, 13

*Coal. to Defend Affirmative Action v. Brown*
   674 F.3d 1128 (9th Cir. 2012) .......................................................................... 21

*Fields v. Palmdale Sch. Dist.*
   427 F.3d 1197 (9th Cir. 2005) .......................................................................... 17

*Frank v. Gaos*
   586 U.S. 485 (2019) ........................................................................................ 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994) .......................................................................................... 9

*Lopez v. Candaele*
   630 F.3d 775 (9th Cir. 2010) ....................................................................*passim*

*Los Angeles Cnty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992) ............................................................................ 24

*LSO, Ltd. v. Stroh*
   205 F.3d 1146 (9th Cir. 2000) ............................................................... 13, 14, 20

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ..................................................................................... 9, 10

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*McNeil v. Sherwood Sch. Dist. 88J*
    918 F.3d 700 (9th Cir. 2019) ................................................................ 17

*Mecinas v. Hobbs*
    30 F.4th 890 (9th Cir. 2022) ................................................... 22, 23, 24

*Nat'l Audubon Soc'y, Inc. v. Davis*
    307 F.3d 835 (9th Cir. 2002) ........................................................ 21, 22

*O'Shea v. Littleton*
    414 U.S. 488 (1974) ............................................................................ 14

*Ollier v. Sweetwater Union High Dist.*
    768 F.3d 843 (9th Cir. 2014) .............................................................. 14

*Parents for Privacy v. Barr*
    949 F.3d 1210 (9th Cir. 2020) ............................................................ 17

*People v. Chino Valley Unified School District*
    No. CIV SB 2317301 (Cal. Super. Ct., S.B. Cnty., Aug. 28, 2023) .......... *passim*

*Rincon Band of Mission Indians v. Sam Diego Cnty.*
    495 F.2d 1 (9th Cir. 1974) .................................................................. 16

*Snoeck v. Brussa*
    153 F.3d 984 (9th Cir. 1998) .............................................................. 21

*Southern Pac. Transp. Co. v. Brown*
    651 F.2d 613 (9th Cir. 1980) .............................................................. 21

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ............................................................................ 10

*Thomas v. Anchorage Equal Rights Com'n*
    220 F.3d 1134 (9th Cir. 2000) ............................................... 10, 15, 21

*Valley Forge Christian Coll. v. Ams. United for Separation of Church*
    *& State*
    454 U.S. 464 (1982) .............................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

Page

*Warren v. Fox Family Worldwide, Inc.*
    328 F.3d 1136 (9th Cir. 2003)..............................................................9

*Washington Env't Council v. Bellon*
    732 F.3d 1131 (9th Cir. 2013)........................................................10, 11

*Ex parte Young*
    209 U.S. 123 (1908) .........................................................21, 22, 23

**STATUTES**

Cal. Stat., Chapter 95
    § 5 ..........................................................................................12
    § 6 ..........................................................................................12

California Code of Regulations, Title 5
    § 4650 ......................................................................................8
    § 4663-64 ..................................................................................8

California Education Code
    § 220.3 ...................................................................................12
    § 220.5 ...................................................................................12
    § 33000 .....................................................................................8
    § 33000.5 ...................................................................................8
    § 33004 .....................................................................................8
    § 33010 .....................................................................................8
    § 33030 .....................................................................................8
    § 33031 .....................................................................................8
    § 33032 .....................................................................................8
    § 33111 .....................................................................................8
    § 33303 .....................................................................................8
    § 33308.5(a) ...............................................................................23
    § 33315(a)(1)(F) ...........................................................................8

California Government Code
    § 12510 .....................................................................................9
    § 12550 .....................................................................................9
    § 12560 .....................................................................................9

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................ 13

Eleventh Amendment ................................................. 2, 21, 22, 23

California Constitution Privacy Clause ............................................ *passim*

California Consttitution, Article V
    § 13 ............................................................................ 8, 9

California Consttitution, Article IX
    § 2 ................................................................................ 8
    § 7 ................................................................................ 8

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ............................................................... 9

**OTHER AUTHORITIES**

Assembly Bill No. 1955 .................................................. 12, 13

v

**INTRODUCTION**

This Court previously dismissed Attorney General Rob Bonta from this case after receiving assurances that the Attorney General would not exercise his enforcement power against Escondido Union School District (EUSD) in light of a preliminary injunction issued in favor of Plaintiffs Mirabelli and West.  This disavowal of enforcement against EUSD vitiated any possible argument that these teachers' constitutional injuries, which allegedly occurred at the local school district level, could be fairly traced to the Attorney General.

Plaintiffs have now amended their complaint for a second time, adding two additional EUSD Teacher Plaintiffs, as well as new Parent Plaintiffs who speculate that state-level policy concerning student privacy might cause their school districts to violate their constitutional rights to free exercise of religion and to direct the upbringing of their children.  The Second Amended Complaint (SAC), however, again fails to allege facts that plausibly demonstrate a likelihood of any actual or threatened conduct by the Attorney General that could lead to the various Plaintiffs' claimed injuries.

As to the Teacher Plaintiffs, the Attorney General's disavowal of enforcement against EUSD remains dispositive.  Because Plaintiffs' theory of standing against the Attorney General is wholly derivative—requiring that the Attorney General exercise some enforcement authority against a school district, which will cause that district to violate Plaintiffs' rights—the Teacher Plaintiffs must establish a threshold likelihood that the Attorney General will initiate or threaten to initiate enforcement action.  As this Court recognized in its prior dismissal, the Attorney General's continued assurance that he will not initiate such action against EUSD means that the Teacher Plaintiffs cannot possibly connect their feared constitutional injuries to him.

Moreover, even aside from the Attorney General's disavowal, the SAC fails to allege facts that plausibly show a likelihood of future action against the Teacher

1

Plaintiffs' district.  The only instance of Attorney General enforcement in this area alleged in the SAC is *People v. Chino Valley Unified School District*, a case in which the Attorney General brought a challenge under the California Constitution's Privacy Clause to a school district's policy that *mandated* that school employees disclose students' private gender identity information to their parents without the student's consent.  Here, by contrast, EUSD had adopted a policy that *barred* school employees from such disclosure, and the SAC does not allege that EUSD has or is contemplating the type of mandatory disclosure policy that triggered the enforcement action in *Chino Valley*.  Thus, the Teacher Plaintiffs have not plausibly alleged that their feared injuries are traceable to the Attorney General.

The Parent Plaintiffs likewise fail to establish standing.  They cannot show a cognizable injury because, as the SAC unequivocally states, they are currently fully aware of their children's purported gender incongruence.  The Parent Plaintiffs do not allege that they are currently unable to make decisions on where their children are schooled, or to guide their children on issues of gender in a manner consistent with their faith.  To the extent the Parent Plaintiffs fear future non-disclosure from their schools, the absence of such notification will not tangibly interfere with their ability to exercise their constitutional rights.

In any event, even if the Parent Plaintiffs had alleged cognizable injuries, they could not fairly trace those injuries to any conduct of the Attorney General.  Like the Teacher Plaintiffs, the Parent Plaintiffs have not alleged facts plausibly demonstrating a likelihood that the Attorney General will initiate or threaten enforcement against their respective school districts.  Accordingly, nothing in the SAC plausibly indicates that the Attorney General will take any action that could be said to derivatively cause the Parent Plaintiffs' claimed constitutional injuries.

In addition, the Attorney General must be dismissed from this lawsuit for a separate and independent reason apart from standing: he is immune from suit under the Eleventh Amendment.  Though a state official can be sued for prospective

declaratory and injunctive relief, the official must have some direct enforcement authority that is plausibly connected to the plaintiff's constitutional injuries.  Here again, although the SAC alleges one instance in which the Attorney General has exercised enforcement authority against a school district, that action occurred in the context of a mandatory disclosure policy.  It has no bearing on the present dispute because Plaintiffs have not alleged that their school districts plan to adopt this type of policy or to violate California law in any other way.  Since the Attorney General cannot intervene in local education policy absent clear violations of state law, the SAC fails to adequately connect Plaintiffs' asserted constitutional injuries to any power or conduct of the Attorney General.

Plaintiffs have again failed to establish that this Court has jurisdiction to hear claims against the Attorney General.  He should be dismissed.  Simply put, the Attorney General is not (and has never been) a proper defendant in this lawsuit.

# BACKGROUND

## I.   PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

### A.   The First Two Complaints and the Court's Dismissal of the Attorney General

In April 2023, Plaintiffs Mirabelli and West filed this suit against various EUSD defendants, the California Superintendent of Public Instruction, and members of the California State Board of Education.  ECF No. 1.  The complaint alleged that EUSD's policy of prohibiting employees from disclosing students' private gender identity and expression information without consent violated Mirabelli and West's constitutional rights to free speech and free exercise of religion.  *Id.* at ¶¶ 217-80.  In September 2023, the Court granted Plaintiffs' motion for preliminary injunction and denied motions to dismiss filed by those defendants.  ECF No. 42.

On January 29, 2024, Plaintiffs filed their first amended complaint, adding Attorney General Bonta and Governor Newsom as defendants, but otherwise

restating identical claims.  ECF No. 80.  On February 23, 2024, the Attorney
General and Governor filed motions to dismiss, arguing in part that they had not
caused or had any connection to Plaintiffs' injuries, which stemmed exclusively
from EUSD's local policy. ECF Nos. 95, 96.

On May 10, 2024, following a hearing, the Court granted both motions,
dismissing the Attorney General and Governor from the case for lack of
jurisdiction.  ECF No. 114.  As to the Attorney General, the Court explained that,
although it had come into the hearing with a tentative decision to deny the motion, a
disavowal of enforcement against EUSD made by counsel for the Attorney General
had altered the analysis. *Id.* at 6.  The Court considered this disavowal
"dispositive" as to its jurisdiction to hear the EUSD teachers' claims against the
Attorney General. *Id.*

**B.    The Operative Second Amended Complaint**

On August 8, 2024, the Court partially granted Plaintiffs' motion to amend
their complaint a second time.  ECF No. 130.  Like the earlier complaints, the
Second Amended Complaint Plaintiffs filed on August 13, 2024 asserts
constitutional claims against the EUSD Defendants, the California Superintendent
of Public Instruction, and members of the California State Board of Education,
while re-adding Attorney General Bonta (but not Governor Newsom) as a
defendant in his official capacity.  ECF No. 133 (SAC) at ¶¶ 51-65.

On behalf of Mirabelli and West, as well as two additional EUSD teachers,
Jane Roe and Jane Boe, the SAC reasserts free speech and free exercise of religion
claims against EUSD's specific prohibition on nonconsensual disclosure, as well as
a basket of alleged state-level policy and conduct collectively labeled "the State's
Parental Exclusion Policies." *See* SAC at ¶ 325.  Specifically, the Teacher
Plaintiffs claim that alleged restrictions on their ability to disclose the private
gender identity information of their students violate their right to speak on matters

4

Memo. of Points and Auth. in Support of Attorney General Bonta's Mot. To Dismiss Second
Amended Complaint (3:23-cv-00768-BEN-VET)

of public concern and their right exercise of their religious beliefs. *Id.* at ¶¶ 346-60, 361-80, 381-400.

The SAC also adds two sets of Parent Plaintiffs, John and Jane Poe and John and Jane Doe, who assert free exercise of religion and substantive due process parental rights challenges against the state-level Defendants. SAC at ¶¶ 437-61, 462-84, 485-95. The Poe Plaintiffs live in Fresno County and are parents to a 14-year-old child who started high school in the 2024-25 academic year. *Id.* at ¶ 115. While attending a public middle school in Fresno County, Child Poe began identifying as transgender and using a male name and pronouns at school. *Id.* at ¶ 117. The Poe Plaintiffs had no knowledge of their child's transgender identity. *Id.* In September 2023, after Child Poe attempted suicide and was admitted to an inpatient psychiatric program for adolescents, the Poe Plaintiffs learned that their child was identifying as a boy. *Id.* at ¶ 119. The Poe Plaintiffs and Child Poe later openly discussed the child's transgender status, as well as the fact that the child was expressing that status at school. *Id.* at ¶ 120.

The Poe Plaintiffs later placed their child in an online homeschooling program, before ultimately enrolling Child Poe in a public charter school. SAC at ¶ 122-23. When Child Poe was later re-admitted to a psychiatric program, Jane Poe contacted an administrator at the charter school and inquired whether Child Poe had been presenting as a male at school. *Id.* at ¶ 125. The administrator responded with a lengthy email, essentially stating that the school could not share information on a student's gender identity, even if that gender identity was expressed openly at school. *Id.* at ¶ 125. The administrator's email block-quoted large portions of the California Department of Education's (CDE) FAQ guidance on student privacy. *Id.* The Poe Plaintiffs immediately pulled Child Poe from the public charter school, reenrolling in the online homeschooling program. *Id.* at ¶ 126. They allege that they will not enroll Child Poe or their two younger children in a public school for

fear that the school will withhold gender identity information from them.  *Id.* at ¶¶ 126-27.

The Doe Plaintiffs live in Los Angeles County with their 14-year-old child.  SAC at ¶ 128.  Child Doe is a ninth grader at an unspecified public school in Los Angeles.  *Id.*  Since fifth grade, Child Doe has expressed as a transgender male identity.  *Id.* at ¶¶ 129-53.  That year, in April 2021, Jane Doe first learned of Child Doe's transgender identity when the child was referred to by a male name and pronouns in a conversation with another parent.  *Id.* at ¶ 133.  The Doe Plaintiffs allege being distressed by this new information, but, after engaging with various resources, decided not to confront Child Doe and instead employed a strategy of "watchful waiting."  *Id.* at ¶¶ 134-35.  However, after starting middle school in August 2021, Child Doe began to reflect more masculine preferences in clothing and activities, before ultimately providing the Doe Plaintiffs with a note that declared, "I am trans." *Id.* at ¶¶ 137-39.  A day later, the Doe Plaintiffs told Child Doe that they did not agree that the child was a boy and that they did not agree with a social transition to a male gender identity.  *Id.* at ¶ 140.

When Child Doe continued to exhibit masculine choices in clothing, Jane Doe contacted the child's school to inquire whether Child Doe was being treated as a boy at school.  SAC at ¶ 142-43.  The principal responded in a short email, stating that the school "support[ed] our LGBTQ students and follow[ed] state Education Code."  *Id.* at ¶ 143.  The response also included a hyperlink to CDE's FAQ guidance webpage concerning student privacy.  *Id.*  When the Doe Plaintiffs later found a noted confirming that Child Doe was expressing a transgender male identity openly at school, they met with the principal and accused Child Doe's teachers of failing to honestly communicate with them.  *Id.* at ¶¶ 146-47.  The principal explained that when a student asks to be referred to by a new name and pronouns, the school was required to protect the rights of the student, including keeping that information from the student's parents if the student so requests.  *Id.* at

6

¶ 148.  When Jane Doe pushed back, the principal displayed CDE's FAQ webpage on student privacy and explained that the school was required to follow the guidance.  *Id.*  In subsequent conversations in 2023, Child Doe disclaimed a transgender identity to Mrs. Doe.  *Id.* at ¶¶ 150-51.  However, the Doe Plaintiffs, in observing Child Doe's classmates and speaking with another parent in February 2024, have come to suspect that Child Doe may still be expressing a transgender male identity at school, and they fear that the child's school will not inform them of such information.  *Id.* at ¶¶ 153-54.

Both the Teacher and Parent Plaintiffs allege similar religious beliefs that are purportedly hindered by policies that bar nonconsensual disclosure of a child's gender identity information.  *See* SAC ¶¶ 155-75.  These include that "God immutably creates each person as male or female; these two distinct, complementary sexes reflect the image of God."  *Id.* at ¶ 157; *accord id.* at ¶¶ 96-102, 107, 111, 442, 469.  Plaintiffs further assert a belief that the relationship between parents and children was "created by God," and the ability of parents to raise and guide their children should not be usurped.  *Id.* at ¶¶ 96-102, 107, 111, 443, 470.

SAC additionally seeks to convert this lawsuit into a class action against the state-level Defendants.  SAC at ¶¶ 328-45.  Plaintiffs propose four separate sub-classes:  (1) teachers who object on ideological or conscience grounds to restrictions on their ability to disclose students' private gender identity information; (2) teachers who object on religious grounds to restrictions on their ability to disclose students' private gender identity information; (3) parents or legal guardians who object on ideological grounds to restrictions on teachers' ability to disclose their students' private gender identity information to parents; and (4) parents or legal guardians who object on religious grounds to restrictions on teachers' ability to disclose their students' private gender identity information to parents.  *Id.* at ¶ 329.

7

## II.   ROLES AND RESPONSIBILITIES OF THE STATE DEFENDANTS

The various State Defendants named in the SAC are all part of distinct entities with different roles and responsibilities in the operation of California government. The California State Board of Education is a multi-member board explicitly provided for in the California Constitution.  Cal. Const. Art. IX, § 7.  The Board's members are appointed by the Governor.  Cal. Educ. Code §§ 33000, 33000.5.  The Board is charged with evaluating the educational needs and conditions of the State and determining state-wide education policy by adopting rules and regulations that govern K-12 public schools.  Cal. Educ. Code §§ 33030, 33031, 33032.  All acts of the Board must be approved by a majority of its members, with no individual member empowered to exercise the Board's authority alone.  Cal. Educ. Code § 33010.

The California Superintendent of Public Instruction is a constitutionally elected officer.  Cal. Const. Art. IX, § 2.  The Superintendent acts as administrative secretary and executive director the State Board of Education, but is not a member and has no power to exercise the Board's authority.  Cal. Educ. Code § 33004. However, the Superintendent is charged with executing the state-wide education rules and regulations adopted by the Board.  Cal. Educ. Code § 33111.  The Superintendent is also the state official in charge of the CDE.  Cal. Educ. Code § 33303.  CDE, under the direction of the Superintendent, is charged with operating a system for assessing complaints pertaining to, among other things, unlawful discrimination, harassment, intimidation, or bullying against protected groups within the State's education system.  Cal. Educ. Code § 33315(a)(1)(F).  Upon a finding of such unlawful conduct at the local level, California regulations authorize CDE to directly intervene and order corrective action.  Cal. Code Regs. tit. 5, §§ 4650, 4663-64 (2020).

The California Attorney General is the State's chief law officer.  Cal. Const. Art. V, § 13.  It is the Attorney General's constitutional duty to "see that the laws of

8

Memo. of Points and Auth. in Support of Attorney General Bonta's Mot. To Dismiss Second Amended Complaint (3:23-cv-00768-BEN-VET)

the State are uniformly and adequately enforced." *Id.*  The Attorney General is also

the head of the California Department of Justice.  Cal. Gov. Code § 12510.  The

Attorney General plays a supervisory role over certain public officials, including

county district attorneys and sheriffs, whom the Attorney General may assist in or

direct the discharge of their duties or, in appropriate circumstances, take over

certain duties.  *See* Cal. Gov. Code §§ 12550, 12560.  No state law, however,

authorizes the Attorney General to direct the actions of the State Board of

Education or CDE, or to dictate education policy at the state or local level.

## LEGAL STANDARD

The party asserting federal subject matter jurisdiction bears the burden of

establishing its existence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994).  A jurisdictional challenge under Rule 12(b)(1) may be made

either on the face of the pleadings or based upon extrinsic evidence.  *Warren v. Fox

Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT ESTABLISHED STANDING TO SUE THE ATTORNEY GENERAL

Plaintiffs' claims against the Attorney General should be dismissed in their

entirety because the SAC again fails to plausibly allege sufficient bases for standing

against the Attorney General.

#### A.   Background Law on Standing

Article III of the United States Constitution confines the jurisdiction of federal

courts "to the resolution of cases and controversies."  *Valley Forge Christian Coll.

v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982).  To

establish standing, a plaintiff must demonstrate: (1) a concrete and particularized

injury in fact; (2) a causal connection between the injury and defendant's conduct;

and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan

v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

9

To demonstrate injury, a plaintiff must make a "clear showing" of injury in fact that is actual and concrete, not conjectural or hypothetical.  *Lujan*, 504 U.S. at 560; *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).  "Abstract injury is not enough."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  Where prospective injunctive and declaratory relief is sought, an alleged threatened injury must be "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations and citations omitted).  For pre-enforcement review, a threat of enforcement must be sufficiently imminent to satisfy the injury-in-fact requirement.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *accord Lopez*, 630 F.3d at 785 (requiring a showing of "realistic danger" and a "credible threat" of enforcement).  However, neither the mere existence of a proscriptive statute nor a generalized threat of prosecution suffices.  *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).  Moreover, "general threat[s] by officials to enforce those laws which they are charged to administer" does not create the necessary injury in fact.  *Lopez*, 630 F.3d at 787.

To satisfy the causality element for Article III standing, a plaintiff must show that their alleged injury is "fairly traceable" to the defendant's alleged misconduct, and not the result of some third party's conduct.  *Lujan*, 504 U.S. at 560-61; *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).  The line of causation must be more than attenuated and any links in the causal chain must remain plausible, rather than hypothetical or tenuous.  *Bellon*, 732 F.3d at 1142.

As to redressability, the Supreme Court has identified significant overlap between this inquiry and traceability, explaining that the two components of standing essentially act as "two facets of a single causation requirement."  *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984).  Still, redressability is distinct in so far as it examines the "connection between the alleged injury and requested judicial relief."  *Bellon*, 732 F.3d at 1146.  A plaintiff need not show absolute certainty, but must

10

Memo. of Points and Auth. in Support of Attorney General Bonta's Mot. To Dismiss Second Amended Complaint (3:23-cv-00768-BEN-VET)

1    plausibly demonstrate a "substantial likelihood that the injury will be redressed by a

2    favorable judicial decision.  *Id.*

3        **B.    The Teacher Plaintiffs Lack Standing**

4        As explained, the Teacher Plaintiffs allege that restrictions on their ability to

5    disclose to parents the private transgender identity information of their students

6    infringes on their rights to free speech and free exercise of religion.  *See* SAC at

7    ¶¶ 346-60, 361-80, 381-400.  With respect to claims against the Attorney General,

8    however, these plaintiffs have not plausibly alleged that any of their purported

9    constitutional injuries are fairly traceable to any actual or likely conduct by the

10   Attorney General.

11       **1.    Plaintiffs' derivative theory of liability**

12       Initially, it bears emphasis that the SAC does not clearly articulate how the

13   Attorney General might be responsible for Plaintiffs' alleged constitutional injuries.

14   Plaintiffs do not (and cannot) allege that the Attorney General has or is likely to

15   exercise any enforcement power against any individual Plaintiff.  The Attorney

16   General does not, for instance, directly discipline teachers who disclose private

17   student information or act in any way that bars a parent from learning such

18   information about their child.

19       As to the Teacher Plaintiffs, the SAC provides extensive allegations about

20   EUSD's non-disclosure policy and the religious accommodation process that

21   Plaintiffs Mirabelli and West invoked.  SAC at ¶¶ 213-77.  But even if these local

22   EUSD policies and procedures resulted in cognizable constitutional injuries for the

23   Teacher Plaintiffs against EUSD, the SAC does not allege facts that could establish

24   that the Attorney General forced EUSD to adopt its policy, or that the Attorney

25   General was even aware of the policy when it was adopted.  Nor does the SAC

26   allege that the Attorney General played any role in the enforcement of EUSD's

27   policy.  Moreover, to the extent the Teacher Plaintiffs allege that EUSD's

28   purportedly injurious policy flows from controlling state-level policy, the only

11

actual state-level policy alleged to have any direct bearing is the FAQ guidance on student privacy published by CDE.  *See* SAC at ¶¶ 254-55; *see also id.* at ¶¶ 308-15.  But again, the SAC does not allege that the Attorney General played any role in development or enforcement of CDE's legal guidance.  In fact, as the SAC acknowledges, per California statute, this legal guidance is nonbinding.  SAC at ¶ 295 (quoting Cal. Educ. Code § 33308.5(a)).

Apart from citing these policies, the SAC makes various references to the Privacy Clause of the California Constitution.  *See* SAC at ¶¶ 256, 313, 316, 318-19.  In doing so, the SAC seemingly attempts to connect the Attorney General to the Plaintiffs' constitutional claims by citing *People v. Chino Valley Unified School District*, No. CIV SB 2317301 (Cal. Super. Ct., S.B. Cnty., Aug. 28, 2023), an instance where the Attorney General initiated litigation against a school district under the Privacy Clause.  *Id.* at ¶¶ 317-19.  But in *Chino Valley*, unlike this case, the Attorney General sued after the district adopted a policy that required school officials to disclose student's gender identity information to parents.  *Id.* at ¶ 317; *see* ECF No. 143 at 5-7, 10, 17 (hearing transcript of Court recognizing difference between policies that bar disclosure without student consent (like EUSD's) and policies that require disclosure in all case, regardless of consent).  The SAC also references legal guidance issued by the Attorney General, which essentially parallels the Attorney General's litigation position (with respect to mandatory disclosure policies) from the *Chino Valley* case.  SAC at ¶¶ 322-23.  This is the sum total of Plaintiffs' allegations about the Attorney General's purportedly relevant conduct.[1]

---

[1] The SAC also references Assembly Bill No. 1955, which was signed into law on July 15, 2024.  SAC at ¶ 324.  That legislation, which goes into effect January 1, 2025, added new provisions to the Education Code that will prohibit school districts from enacting policies that require employees to disclose information about a student's sexual orientation, gender expression, or gender identity without student consent.  *See* 2024 Cal. Stat., ch. 95, §§ 5, 6; *see also* Cal. Educ. Code §§ 220.3, 220.5.  But this new legislation does not set forth any particular enforcement role or obligation for the Attorney General, nor does it give

(continued...)

12

From all of this, it appears that Plaintiffs' theory of standing against the Attorney General is wholly derivative. Their claims turn on multi-step supposition, first requiring that the Attorney General exercise his general power to enforce state law (here, the Privacy Clause) against a local school district, which, in turn, will cause the district to enforce local policies that violate Plaintiffs' constitutional rights. In that sense, Plaintiffs' theory of standing is similar to a traditional pre-enforcement challenge (where a plaintiff fears imminent direct enforcement by the defendant), but even one more step further removed. *See e.g., LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-56 (9th Cir. 2000) (plaintiff adequately pled standing to assert a First Amendment challenge against a state agency where agency threatened to exercise its enforcement power against a third-party convention center if the convention center permitted plaintiff to display certain erotic art).

As such, to establish standing against the Attorney General, Plaintiffs must, at the threshold, plausibly allege a "realistic danger" that Attorney General enforcement against their individual school districts is "certainly impending." *Clapper*, 568 U.S. at 409; *Lopez*, 630 F.3d at 785. The allegations in the SAC fail to satisfy this pleading burden, for the reasons explained in the following subsections.

## 2. The Attorney General has disavowed any enforcement against EUSD

As alleged in the SAC, all four Teacher Plaintiffs work at middle schools within EUSD. SAC at ¶¶ 31-34, 94-96, 103-04, 109-10. This Court's preliminary injunction prohibits EUSD from enforcing its non-disclosure policy against Plaintiffs Mirabelli and West during the pendency of this case. ECF No. 42. This

---

the Attorney General any supervisory authority over CDE. Moreover, because Assembly Bill No. 1955 essentially codified the Attorney General's pre-existing litigation position under the Privacy Clause in the *Chino Valley* matter—*i.e.*, that mandatory disclosure policies violate California law—the SAC's perfunctory citation to this legislation does not meaningfully alter the analysis with respect to the Attorney General's enforcement power and Plaintiffs' standing.

order was issued well before the Attorney General became a party to this case, and the Attorney General has disavowed any enforcement against EUSD in light of the injunction.  Indeed, this Court previously dismissed the Attorney General from this lawsuit, implicitly finding that this "dispositive" disavowal deprived the Court of jurisdiction to hear Mirabelli and West's claims against the Attorney General.  ECF No. 114 at 6-8.

The addition of two new Teacher Plaintiffs in the SAC does not change this analysis.  The pertinent school district (EUSD) remains the same.  The Attorney General has not contemplated or actually engaged in any enforcement action against EUSD, and has already disavowed doing so while this Court's preliminary injunction is in effect.  Should the Teacher Plaintiffs ultimately succeed in this lawsuit against the remaining Defendants and obtain a permanent injunction, the Attorney General will not initiate enforcement against EUSD for compliance with that injunction.  This unchanged position on EUSD enforcement renders the Teacher Plaintiffs unable to plausibly allege a "realistic danger" that the Attorney General has or will do anything that, in turn, will cause their employer to violate their constitutional rights.  *See LSO*, 205 F.3d at 1154.  This Court need go no further than its prior dismissal with respect to the Teacher Plaintiff claims.[2]

### 3.    The Teacher Plaintiffs have not plausibly alleged facts showing that Attorney General enforcement against EUSD is likely

Even apart from the Attorney General's express disavowal of enforcement against EUSD, nothing in the SAC plausibly alleges a likelihood that the Attorney General will do anything to the district that could render the Teacher Plaintiffs' feared constitutional injuries fairly traceable to him.  Again, the only allegation of

---

[2] The fact that this case is styled as a class action, with potential ramifications beyond EUSD, does not alter the standing analysis.  Courts have long recognized that, in the class action context, at least one named plaintiff purporting to represent a class must establish the requisite case or controversy with the defendant for jurisdiction in federal court.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *accord Frank v. Gaos*, 586 U.S. 485, 492 (2019); *Ollier v. Sweetwater Union High Dist.*, 768 F.3d 843, 865 (9th Cir. 2014).  No named plaintiff here has done so.

14

1   actual enforcement by the Attorney General pertains to his litigation in the *Chino*
2   *Valley* matter, a case concerning a distinct mandatory disclosure policy.  SAC at
3   ¶¶ 317-19.  Thus, to the extent any Attorney General enforcement policy can be
4   deciphered from this one alleged instance, it is only that the Attorney General may
5   pursue action under the Privacy Clause where a district adopts a mandatory
6   disclosure policy.  *See Lopez*, 630 F.3d at 786-87 (allegations of a specific type of
7   enforcement in the past tends to show a likelihood of similar future enforcement).

8   And yet, the SAC makes no factual allegations that EUSD is contemplating or
9   likely to adopt the type of mandatory-disclosure policy that might trigger Attorney
10   General enforcement.  In fact, the opposite is true.  The allegations in the SAC
11   clearly demonstrate that EUSD has attempted to safeguard the privacy of its
12   students by adopting a policy that prohibits its employees from disclosing gender
13   identity information absent circumstances that establish a legitimate need for
14   disclosure.  *See* SAC at ¶¶ 179-98.  Plaintiffs make no allegation that this policy
15   violates California law or that the district is violating state law in any other manner.
16   In other words, nothing in the SAC gives any indication that intervention or
17   enforcement by the Attorney General as to EUSD is remotely likely.

18   Absent such specific allegations, Plaintiffs cannot trace their alleged
19   constitutional injuries to the Attorney General.  Without plausible factual
20   allegations showing a likelihood that the Attorney General will take some action
21   that effectively dictates EUSD's treatment of its employees, Plaintiffs' theory of
22   standing against the Attorney General is necessarily reduced to bare allegations
23   about the existence of a state law (the Privacy Clause) and the Attorney General's
24   general power to enforce state law.  Such allegations are insufficient to establish
25   standing.  *Thomas*, 220 F.3d at 1139.  As explained by the Ninth Circuit, simply
26   identifying a state law that could theoretically have some injurious effect if
27   enforced against a plaintiff does not confer pre-enforcement standing.  *Id.*; *accord*
28   *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 652 (9th Cir. 2021).  Likewise,

15

allegations concerning the general enforcement power of a state official or even non-specific threats to enforce a challenged state law are inadequate to establish standing. *Lopez*, 630 F.3d at 787; *Rincon Band of Mission Indians v. Sam Diego Cnty.*, 495 F.2d 1, 4 (9th Cir. 1974).

Accordingly, even if Plaintiffs alleged that the Attorney General had made "general threats" to enforce the Privacy Clause against school districts outside the context of mandatory-disclosure policies (the SAC does not), such allegations would not show the requisite likelihood of Attorney General intervention with EUSD's internal policies and decision-making, let alone that the Attorney General's conduct could be reasonably said to cause EUSD to violate the Teacher Plaintiffs' rights. The SAC thus fails to adequately plead that the Teacher Plaintiffs' feared constitutional injuries can be fairly traced to the Attorney General.[3]

### C.   The Parent Plaintiffs Lack Standing

The Parent Plaintiffs similarly claim that restrictions on school employees' ability to disclose their students' transgender identity information violates their constitutional rights, specifically, the right to free exercise of religion and due process right to direct the upbringing of their children. SAC at ¶¶ 437-61, 462-84, 485-95. But, like the Teacher Plaintiffs, these Plaintiffs cannot demonstrate standing to pursue their claims against the Attorney General.

#### 1.   The Parent Plaintiffs have not plausibly alleged that they have been or will be hindered in the exercise of their constitutional rights

Initially, as to injury in fact, the Parent Plaintiffs allege that their religious faith teaches that the "parent-child relationship was ordained by God" and that they

---

[3] Plaintiffs' failure to plausibly allege that their local injuries are fairly traceable to the Attorney General also necessarily rendered their claims non-redressable for standing purposes. *See Allen*, 468 U.S. at 753 n.19 (explaining that the traceability and redressability components of standing essentially act as "two facets of a single causation requirement"). Any order barring the Attorney General from enforcing state privacy law against EUSD would have no tangible effect on the Teacher Plaintiffs' rights because the Attorney General is not the source, derivative or otherwise, of the alleged constitutional injuries.

16

must "be actively involved in all significant decision-making by their children, including gender transition." SAC at ¶¶ 443, 470. In doing so, the Parent Plaintiffs appear to frame their allegations of constitutional injury around how school non-disclosure policies affect their relationships with their children outside of the school environment.

Indeed, this understanding of the claims is consistent with well-established limitations on a parent's rights with respect to their child's schooling. Although a parent has a substantive due process right to direct the upbringing of their child and impart the teaching or guidance the parent deems appropriate (including guidance consistent with the parent's exercise of their religious beliefs), a parent is not constitutionally entitled to interfere with the administrative policy and operations of their child's school. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020); *McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 711 (9th Cir. 2019). When it comes to schooling, a parent may choose their child's educational forum without state interference, but once that decision is made, the parent's fundamental right to control that education is "substantially diminished." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005). A parent thus has no constitutional right to dictate how a school operates its learning environment, even where a school policy intended to foster that environment conflicts with the parent's religious faith. *See Parents for Privacy*, 949 F.3d at 1231 (though parents are entitled to freely inform their children about sex and gender identity, parents have no constitutional right to override school's creation of tolerant educational environment that permits students to use bathrooms and locker rooms associated with their gender identity); *see also id.* at 1233-39 (rejecting free exercise challenge to bathroom and locker room policy brought by parents asserting interference with their right to teach their children traditional modesty, as required by their faith).

Accordingly, in assessing injury in fact for purposes of standing, the Parent Plaintiffs' alleged injuries are properly understood as limited to the purported

17

interference that a non-disclosure policy would have on their ability to engage with their children on issues of gender and to provide parental direction consistent with their religious beliefs.  *See* SAC at ¶ 154 ("Mr. and Mrs. Doe wish to be involved in every part of Child Doe's life.").  The Parent Plaintiffs allege that denial of information about their children's gender identity has the effect of denying them the ability to redirect their children away from the State's claimed "ideological beliefs" about gender.  *See id.* at ¶¶ 456, 479.

However, even if the premise of these constitutional claims—that a school's failure to disclose gender identity information to otherwise uninformed parents can tangibly interfere with the constitutionally protected parent-child relationship—is assumed, the facts alleged in this case make clear that the Parent Plaintiffs are not currently suffering or likely to suffer future interference with their constitutional rights.  According to the SAC, the Parent Plaintiffs are aware of all the information needed to freely exercise their parental rights.  The Poe and Doe parents have learned of their children's gender incongruence and have been making constitutionally protected school-choice decisions, as well as engaging with their children consistent with their religious and moral beliefs.  *See* SAC at ¶¶ 120, 122-24, 126, 135, 139-41, 149-51.  Necessarily then, even if their respective school districts decline to provide notification concerning their children's gender identity moving forward, this non-disclosure will not meaningfully affect the Parent Plaintiffs' ability to exercise their constitutional rights to impart moral and religious direction to their children on issues of gender, which the Parent Plaintiffs have done and can continue to do without interference.  In other words, because the Parent Plaintiffs are fully aware of their children's gender incongruence, they have failed to plead a concrete injury to their constitutional rights stemming from speculative non-disclosure in the future.

**2.    The Parent Plaintiffs have not plausibly alleged injuries that are fairly traceable to any conduct of the Attorney General**

Even if the Parent Plaintiffs have plausibly alleged that a school's lack of notification about their children's gender identity is injurious to their constitutional rights, these Plaintiffs cannot plausibly allege that such injuries are fairly traceable *to the Attorney General*.

The SAC's factual allegations specific to the Poe and Doe families make no reference to the Attorney General or any action he has taken in the education sphere. Rather, the only state-level policy identified as purportedly playing a role in burdening the Parent Plaintiffs' constitutional rights is *CDE*'s FAQ guidance on student privacy. As detailed in the SAC, when both families inquired about their children's gender expression at school, they each received responses from school administrators that explicitly cited the FAQs as a basis for non-disclosure. *See* SAC at ¶¶ 125, 129, 143, 148, 154. As explained above, the Attorney General plays no role in the promulgation or enforcement of CDE's legal guidance, and the SAC includes no allegation to the contrary. In short, the Parent Plaintiffs' past experiences with non-disclosure and fears of future non-disclosure have no alleged connection to anything the Attorney General has done or will do.

This failure to connect the Attorney General to the Parent Plaintiffs' claims is made apparent by the dearth of allegations pertaining to the Attorney General in the Parent Plaintiffs' actual claims for relief. *See* SAC at ¶¶ 437-61, 462-84, 485-95. Apart from two bare references to the Privacy Clause (that do not cite Attorney General enforcement), these claims focus extensively and exclusively on CDE's Legal Advisory and FAQs. *See id.* at ¶¶ 445-48, 472-75, 491. The Parent Plaintiffs stress that CDE's guidance purportedly creates mandatory compliance obligations, thus having "'determinative or coercive effect upon the action' of local school districts." *Id.* at ¶¶ 445, 448, 472, 475 (quoting *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020)). And, at the

19

conclusion of their claims, the Parent Plaintiffs assert that they will suffer irreparable harm to their constitutional rights "unless the CDE Defendants are enjoined." *See* SAC at ¶¶ 459, 482, 493. The Attorney General is not mentioned. The Parent Plaintiffs' religious and parental rights injuries, as expressly pled in the SAC, have no asserted connection to any conduct of the Attorney General whatsoever.

Yet, even putting aside the absence of any express allegations regarding the Attorney General's conduct, the Parent Plaintiffs' claims suffer from the same traceability defect as the Teacher Plaintiffs' claims. As explained above, since the Attorney General does not exercise direct enforcement authority against any individual parent seeking disclosure of their child's private information, the only way in which the Attorney General could be deemed responsible for the Parent Plaintiffs' asserted injuries is through a derivative chain of causation—i.e., taking some action that causes a school district to violate the Parent Plaintiffs' rights. *See LSO*, 205 F.3d at 1154.

As with the teacher claims, the SAC is devoid of factual allegations that plausibly demonstrate a likelihood that the Attorney General will do anything to cause the Parent Plaintiffs' school districts to violate their rights. Indeed, the SAC fails to even identify the specific districts where the Poe and Doe children have or plan to attend, let alone provide specific details concerning the disclosure policies within those districts. Critically, there are no allegations that these unnamed districts have adopted or are contemplating adopting the type of mandatory disclosure policy that, based on the SAC's lone historical allegation (*Chino Valley*), might conceivably trigger actual or threatened intervention by the Attorney General. Absent such allegations, there is no possible causal link between the Parent Plaintiffs' feared constitutional injuries and any conduct of the Attorney General. Like the teacher claims, these parent allegations amount to nothing more than invocations of the Attorney General's inherent power to enforce state law.

20

And such allegations are unquestionably insufficient to establish standing.  *Thomas*, 220 F.3d at 1139; *Lopez*, 630 F.3d at 787.

## II.   THE ATTORNEY GENERAL IS IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT

The Attorney General should be dismissed from this action for a reason separate and independent from the lack of standing: Plaintiffs' claims against the Attorney General are barred by the Eleventh Amendment.  The SAC fails to allege facts demonstrating that the Attorney General's power to enforce state law has any tangible connection to Plaintiffs' alleged injuries.

The Eleventh Amendment generally bars federal lawsuits brought against a state.  "It does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).  For the *Ex parte Young* exception to apply, the official must have "some connection" with enforcement of the challenged act.  *Ex parte Young*, 209 U.S. at 157; *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (finding action for injunctive and declaratory relief against California Governor and Secretary of Resources barred by Eleventh Amendment "as there is no showing that they have the requisite enforcement connection" to challenged ballot proposition).  Without such a connection, suit against an official "would be equivalent to suit against the state and would violate the Eleventh Amendment." *Southern Pac. Transp. Co. v. Brown,* 651 F.2d 613, 615 (9th Cir. 1980).

The nexus required to overcome Eleventh Amendment immunity "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quoting *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  The relevant

inquiry is "whether a named state official has direct authority and practical ability to enforce the challenged statute." *Nat'l Audubon Soc'y*, 307 F.3d at 846.

Here, Plaintiffs have not alleged that the Attorney General has any plausible connection to their asserted injuries, let alone the type of "direct" authority to inflict their feared injuries that *Ex parte Young* requires. As explained above, Plaintiffs' theory of constitutional harm is wholly derivative, requiring that the Attorney General exercise some enforcement power under state law in a manner that causes a third-party school district to do something that violates Plaintiffs' rights. By failing to allege that the Attorney General has or will do anything that directly violates their constitutional rights, Plaintiffs have effectively conceded that the Attorney General's enforcement power in this context does not cover them.

Various Ninth Circuit cases illustrate this principle in action. In *Association des Eleveaurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013), which concerned a challenge by producers of foie gras to a California law that barred sale of the product, the Court held that the California Governor was entitled to Eleventh Amendment immunity because his only alleged connection to the law was his general duty to enforce state law. *Id.* at 943. The California Attorney General, by contrast, was held to be sufficiently connected for purposes of *Ex parte Young*. *Id.* The Court highlighted a provision of the challenged law that expressly authorized enforcement by district attorneys and city attorneys. *Id.* Because, under the California Constitution, the Attorney General is empowered to step into the shoes of local prosecutors where state law is not being adequately enforced, the Court held that the Attorney General had the requisite "direct authority" through this enforcement power to inflict the plaintiffs' injuries. *Id.* at 943-44.

More recently, in *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022), a case in which voters and political groups challenged an Arizona law that dictated the order of candidate names on ballots, the Ninth Circuit held that the Arizona Secretary of

1   State was sufficiently connected to the challenged law to overcome Eleventh

2   Amendment immunity.  *Id.* at 894, 904-04.  Though the Secretary had argued that

3   she was not responsible for issues concerning the printing of ballot, which occurred

4   at the local level, the Court explained that the Secretary nevertheless played a direct

5   and controlling role in the process by promulgating a statewide manual on election

6   procedures which local officials were required to follow.  *Id.* at 903-04.

7       The present case is distinguishable.  Unlike *Harris* and *Mecinas*, where the

8   Ninth Circuit identified clear ways in which an official's powers and conduct could

9   be traced down to the plaintiffs' asserted injuries, the SAC does not allege facts

10  demonstrating that the Attorney General is capable of infringing on the individual

11  Plaintiffs' constitutional rights.  *See Mecinas*, 30 F.4th at 903 (the question of

12  "connection" under *Ex parte Young* is "'closely related—indeed overlapping'—

13  with the traceability and redressability inquiry").  The Attorney General does not,

14  for instance, directly enforce local education policy and is not alleged to have the

15  direct power to punish Plaintiffs for exercise of their purported constitutional rights.

16  *See Harris*, 729 F.3d at 943-44.  Nor have Plaintiffs plausibly alleged that the

17  Attorney General has or will do anything to directly dictate the actions of others

18  that will violate Plaintiffs' rights.  *See Mecinas*, 30 F.4th at 903-04.  As explained,

19  the CDE guidance—from which Plaintiffs explicitly allege that local non-disclosure

20  policies like EUSD's are derived, *see* SAC at ¶ 315—is itself non-binding and not

21  enforced by the Attorney General, *see* Cal. Educ. Code § 33308.5(a).

22      As noted, Plaintiffs have alleged that the Attorney General previously initiated

23  enforcement (*Chino Valley*) and published consistent legal guidance in the narrow

24  context of districts that adopt mandatory disclosure policies.  SAC at ¶¶ 317-19,

25  322-23.  But such activity does not evidence the requisite connection to the dispute

26  *in this case*.  Indeed, were that true, *Ex parte Young*'s connection requirement

27  would be meaningless, capable of satisfaction through any evidence of an official's

28  enforcement of state law, even if that state law were irrelevant to the case at issue.

1  Simply pointing to other, unrelated instances in which an official has exercised
2  enforcement power has the same logical force as merely referencing the official's
3  "generalized duty to enforce state law." *See Mecinas*, 30 F.4th at 903-04; *Eu*, 979
4  F.2d at 704.

5      The fact that the Attorney General has exercised his enforcement power
6  against a district that violated California law by adopting a mandatory disclosure
7  policy does not establish that he is capable or will sue school districts in other
8  contexts, especially where, as here, there is no likelihood that the pertinent school
9  district will adopt such a policy.  Indeed, the SAC does not allege that any of the
10  Plaintiffs' school districts have violated or are currently violating California law.
11  The Attorney General does not have the power to intervene in local education
12  policy where there are no indications that a district is violating the law.  Plaintiffs
13  have thus failed to adequately plead the type of connection between the Attorney
14  General's enforcement powers and their asserted injuries that is necessary to
15  override the Eleventh Amendment's protection.  The Attorney General is immune
16  from suit.

17                        **CONCLUSION**

18      Because Plaintiffs have failed to establish that the Court has jurisdiction to
19  hear claims against the Attorney General, he should be dismissed from this lawsuit.

20
21
22
23
24
25
26
27
28

24

Memo. of Points and Auth. in Support of Attorney General Bonta's Mot. To Dismiss Second
Amended Complaint (3:23-cv-00768-BEN-VET)

Dated:  September 30, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
EMMANUELLE S. SOICHET
Deputy Attorney General

KEVIN L. QUADE
Deputy Attorney General
*Attorneys for Defendant Attorney*
*General Rob Bonta*

25