ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
Jack Sleeth Jr., Esq. (SBN 108638)
jsleeth@as7law.com
Lauren Cambronero, Esq. (SBN 336555)
lcambronero@as7law.com
3636 Fourth Avenue, Suite 200
San Diego, California  92103
Telephone: 619-232-3122
Facsimile: 619-232-3264

Attorneys for EUSD Defendants

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, | Case No.: 3:23-cv-0768-BEN-VET |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** [FED. R. CIV. P. 12 (b)(1) and 12(b)(6)] |
| v. | |
| MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al. | Judge:     Hon. Roger T. Benitez<br>Dept.:      5A<br>Date:       November 4, 2024<br>Time:      10:30 a.m. |
| Defendants. | Action Filed:  April 27, 2023 |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**Table of Contents**

I.  INTRODUCTION ................................................................................................ 6

II.  PERTINENT FACTS ......................................................................................... 6

III.  LEGAL STANDARD ......................................................................................... 7

IV.  ANALYSIS .......................................................................................................... 8

    A.  Plaintiff Teachers Roe And Boe Have No Standing ............................. 8

        1.  New Teachers Jane Roe and Jane Boe Have No Actual Injury or Threat of Potential Future Injury ........................................................ 8

    B.  Plaintiff West Fails to State a Claim under Title VII Cause of Action Discrimination and Failure to Accommodate ....................................... 9

    C.  West's Fifth Cause of Action for Retaliation under Title VII Fails ................................... 11

        1.  West Cannot Establish a Causal Link or That She Was Subjected to Any Adverse Employment Action .................................................. 11

    D.  Escondido Union School District's Policies Are Consistent with State and Federal Law .......................................................................... 12

        1.  Federal Law Protects Against Discrimination Because of Gender Identity ........... 12

        2.  California Protects Against Discrimination Because of Gender Identity .............. 13

            a.  California Constitution Protects Privacy……………………………14

            b.  Statutes Protect Against Discrimination and Harassment ………………13

        3.  The California Department of Education Requires the Policy ............................. 14

        4.  Plaintiffs' Assertion of Parents' Rights Misstates the Law .................................. 15

    E.  The Regulation Does Not Violate the Teacher Plaintiffs' Right to Free Speech ............... 16

        1.  First, The Regulation Does Not Require Any Lie ................................................. 16

    F.  A Teacher's Speech in the Classroom Is Not Protected Speech ......................... 18

    G.  Teacher Plaintiffs' Speech Is Government Speech .......................................... 20

    H.  The Policy Does Not Violate the Teacher Plaintiffs' Religion ............................ 20

        1.  The School's Policy Does Not Burden Teacher Plaintiffs' Religion ................... 21

        2.  The School's Policy Is Neutral and Applied Generally .......................................... 22

        3.  The Policy Meets the Strict Scrutiny Test ........................................................... 23

V.  CONCLUSION .................................................................................................. 24

ARTIANO SHINOFF

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS      3:23-cv-0768-BEN-VET

{AS7 Law San Diego/001290/000012/PL/S0584197.DOCX}

## Cases

*Associated Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ....................................................................................8

*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 359................13

*Apache Stronghold v. United States,* 38 F.4th 742, 770 (9th Cir. 2022).....................21

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)...............................................................7,8

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990 ........................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)........................................7,8

*Blau v. Fort Thomas Public School Dist.* (6th Cir. 2005) 401 F.3d 381, 395–396 ...................................................................................................................15

*Borden v. Sch. Dist. of East Brunswick,* 523 F.3d 153, 171 (3d Cir. 2008)................20

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1204 (10th Cir. 2007).................................................................................................................20

*Bureerong v. Uvawas*, 922 F.Supp. 1450, 1462 (C.D. Cal. 1996) ...............................7

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996) .........................7

*Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002).............................8

*Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 527 (9th Cir.1992) .....................11

*Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) ...........................................................................................................................7

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi*"), 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) .............................................21,22

*Connick v. Myers,* 461 U.S. 138 (1983) ......................................................................18

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ..................................11

*Demers v. Aaustin*, 746 F.3d 402, 411-13 (9th Cir. 2014). .........................................19

*Dep't of Fair Emp't and Hous. v. Cathy's Creations, Inc.*, No. BCV-18-102633, 2022 WL 18232316, at *13 (Cal. Super. Dec. 27, 2022).........................16

*Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) ..........................................................22

*Evans-Marshall v. Board of Educ.*, 624 F.3d 332 (6th Cir. 2010) ..............................19

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) ..........................15

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) ...................................13

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) .....................................................18,19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND                    **3:23-cv-0768-BEN-VET**
SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS
{AS7 Law San Diego/001290/000012/PL/S0584197.DOCX}

ARTIANO SHINOFF

*Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643...........................22

*Heller v. EBB Auto Co*., 8 F.3d 1433, 1440 (9th Cir. 1993) ..........................................9

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps*., Council 31,U.S.138 S. Ct. 2448, 2463 (2018)..........................................................................................................16

*Johnson v. Poway Unified School Dist.* (9th Cir. 2011) 658 F.3d 954, 966 ...............19

*Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 Fed.Appx. 492, 493 (9th Cir. 2009) .................................................................................................................................13

*Kennedy v. Bremerton School District* (2022) U.S.142 S.Ct. 2407, 2421, 2422 ............................................................................................................................21

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ................7

*Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007)....................................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ..........................................7,8

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477,479-80 (7th Cir. 2007) .................................................................................................................................20

*Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999) ...............................................22,23

*North Coast Women's Care Medical Group, Inc. v. Superior Court*  44 Cal.4th 1145, 1158(2008)...............................................................................................23

*Patricia H. Berkeley. Unified Sch. Dist.*, 830 F.Supp. 1288, 1290 (C.D. Cal. 1993)...............................................................................................................................13

*Peterson v. Hewlett-Packard C*o., 358 F.3d 599, 603 (9th Cir. 2004)..........................9

*Pickering v. Board of Educ.*, 391 U.S. 563 (1968 .................................................18,19

*Pinard v. Clatskanie Sch. Dist*. 6J, 467 F.3d 755, 767 (9th Cir. 2006)......................12

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)....................................................13

*Regino v. Staley* (E.D. Cal., Mar. 9, 2023, No. 223CV00032JAMDMC) ...................15

*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 626).......................................23

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995)...........................................................................................................................19,20

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).................................................................................................................................8

*Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000) ........................................13

*Stormans, Inc. v. Wiesman* 794 F.3d 1064, 1082 (9th Cir. 2015) ..........................21,22

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999)............9

ARTIANO SHINOFF

4

*Taking Offense v. State,* 66 Cal. App. 5th 696, 709 (2021)............................................16

*Tiano v. Dillard Dep't Stores, Inc*., 139 F.3d 679, 681 (9th Cir. 1998). ........................9

*Tinker v. Des Moines Ind. Comm'ty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ................18

*Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)....................20

**Statutes**

20 U.S.C. § 1681.................................................................................12,13

California Education Code Section 49602, subd. (e) ...................................................14

California Education Code Section 220 .......................................................................14

Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 ...............................12

**Other Authorities**

Executive Order 14021 ...............................................................................................12

**Rules**

Federal Rule of Civil Procedure 12(b)(1).................................................................7,24

Federal Rule of Civil Procedure 12(b)(6).................................................................7,24

**Regulations**

Administrative Regulation 5145.3.......................................................6,15,16,17

California Code of Regulations Title 5, Section 4600 .................................................12

5

## I.  INTRODUCTION

Elizabeth Mirabelli ("Mirabelli") and Lori Ann West ("West") have now expanded the operative Second Amended Class Action Complaint ("SAC") to include as follows: two Title VII Claims by Lori West against newly-added Defendant Escondido Union School District ("EUSD"), two new teachers Jane Roe and Jane Boe (collectively with Mirabelli and West "Teacher Plaintiffs") who are asserting the same three 42 U.S.C. section 1983 Free Speech and Free Exercise of Religion claims against the EUSD Defendants and the State Defendants,  two class action claims on behalf of the Teacher Plaintiffs and Parent Plaintiffs, two sets of Parent Plaintiffs John and Jane Poe and John and Jane Doe, who assert the same three 42 U.S.C 1983 free exercise of religion and parental rights claims against the State Level Defendants.

EUSD and EUSD School Employees seek to dismiss on the grounds that Teachers Jane Roe and Jane Boe lack standing. Moreover, West's Title VII for religious creed discrimination and failure to accommodate and retaliation against EUSD fails to state a cause of action as to both causes of action because Plaintiff cannot establish any adverse employment action nor causation. Lastlly, Teacher Plaintiffs' First, Second, and Third Claims fail because the school policies do not violate the Plaintiffs' rights of speech or religion.

## II.  PERTINENT FACTS

Plaintiffs allege in 2020, Escondido Union School District ("EUSD") enacted Administrative Regulation 5145.3, expanding upon its Board Policy 5145.3, which they allege "required certificated EUSD staff to unquestioningly accept a students' transgender or gender nonconforming self-identification, begin referring to transgender or gender nonconforming students by their preferred names and pronouns, and hide that information from parents or caretakers, among other requirements." SAC p. 43 ¶ 179-180.  They attach the AR as Exhibit 3.  They contend:

> EUSD's policies state that "revealing a student's transgender status to individuals who do not have a legitimate need for the information, without the student's consent" is prohibited, and "parents or caretakers" were, according to EUSD, individuals who "do not have a legitimate need for the information," irrespective of the age of the student or the specific facts of the situation.

SAC, p. 6. ¶8,

ARTIANO SHINOFF

1    They allege that the policy prohibits teachers from respecting parents' wishes. "According to

2    EUSD, 'we shall use a student's preferred name and pronoun based upon student request,' and so 'a

3    parent [is not] allowed to override a student's request for different pronouns/alternate names.'" SAC,

4    ¶ 10, p. 6:19-22. Ex. 5.

5    The school district policy is attached to the Complaint as **Exhibit 2** and the Regulation is

6    attached as **Exhibit 3**.  The school district policy seeks to protect the privacy of students who seek to

7    keep their gender identity confidential. SAC, Ex. 4.  The Teacher Plaintiffs allege that policy violates

8    their right to free speech and their religion.

9    ### III.    LEGAL STANDARD

10    A motion challenging a plaintiff's lack of standing is properly brought under Rule 12(b)(1).

11    *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). Standing addresses

12    whether the plaintiff is the proper party to bring a matter to the Court for adjudication. *Id*. Standing is

13    not a mere pleading requirement, but rather an indispensable part of the plaintiff's case, and therefore

14    the plaintiff bears the burden of establishing each element of standing. *Lujan v. Defenders of Wildlife*,

15    504 U.S. 555, 561 (1992); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

16    A motion to dismiss under Rule 12(b)(6) is proper when there is either a lack of a cognizable

17    legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v.

18    Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Basic federal pleading standards require a

19    plaintiff to provide "fair notice" of the claims asserted and the "grounds" on which they rest. *Bell

20    Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

21    In deciding a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the

22    light most favorable to the plaintiff and accepts all well-pled factual allegations as true to determine

23    whether the plaintiff can prove any set of facts to support a claim for relief. *Cahill v. Liberty Mut. Ins.

24    Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).   However, "a court considering a motion to dismiss can

25    choose to begin by identifying pleadings that, because they are no more than conclusions, are not

26    entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court need not

27    accept as true "unreasonable inferences, unwarranted deductions of fact, or conclusory legal

28    allegations cast in the form of factual allegations." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1462

ARTIANO SHINOFF

7

(C.D. Cal. 1996). Nor should a court assume that the plaintiff can prove facts different from those alleged. *Associated Gen. Contractors of Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.

Instead, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 545 (The Court may properly dismiss a claim where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible").

## IV.   ANALYSIS

### A.   Plaintiff Teachers Roe And Boe Have No Standing

In order to establish standing to sue under Article III of the Constitution, a plaintiff must, at a minimum, show that: (1) she has suffered an "injury in fact— an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical"; (2) there exists "a causal connection between the injury and the conduct complained of"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotation marks omitted). When a plaintiff seeks injunctive and declaratory relief, the plaintiff must also demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a significant likelihood that he will again be wronged in a similar way." *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002) (internal quotations and citations omitted). A plaintiff must do more than demonstrate only a past injury. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

#### 1.   New Teachers Jane Roe and Jane Boe Have No Actual Injury or Threat of Potential Future Injury

The SAC includes two new teachers employed by EUSD, Jane Roe and Jane Boe. They are also "proposed representatives of Subclasses 1 and 2." SAC, p. 11 ¶ 33-34. Plaintiffs Jane Roe and Jane Boe have no standing to support an alleged injury or threat of potential future injury.

The allegations relevant to new teachers Jane Boe and Jane Roe are sparse. In fact, there are no allegations or facts to support their alleged injury. Jane Roe has never discussed *any* child's gender

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS            3:23-cv-0768-BEN-VET
{AS7 Law San Diego/001290/000012/PL/S0584197.DOCX}

with his or her parents. SAC, p. 30, ¶ 112.  Neither Plaintiffs Roe or Boe have alleged that any student requested they withhold their status from their parents or that any parent of their students questioned them of their child's gender or gender non-conforming status.

Further, it is unlikely that Plaintiff Jane Boe or Jane Roe could demonstrate such injury.  Jane Boe does not even have any transgender students in her class. The last time she had a transgender student in her class was during the 2022-2023 school year. SAC, p. 30, ¶ 112.  She has not had a transgender student in  two years.

Plaintiffs Roe and Boe can only speculate as to whether they will have a transgender or gender non-conforming student who requests they withhold their status from their parents or guardians in future class years. They cannot show that the threat of future injury is actual and imminent. Whether Plaintiff Roe and Boe will have students who identify as transgender or gender non-conforming is entirely speculative.

**B.    Plaintiff West Fails to State a Claim under Title VII Cause of Action Discrimination and Failure to Accommodate**

West brings a cause of action for religious creed discrimination under Title VII in the SAC. Claims under Title VII for religious discrimination may be asserted under various theories, the most common being disparate treatment and failure to accommodate. See *Peterson v. Hewlett-Packard C*o., 358 F.3d 599, 603 (9th Cir. 2004). Here, the theory is for failure to accommodate her religious beliefs.

Claims under Title VII for failure to accommodate religion are accordingly analyzed under a burden-shifting framework. See *Heller v. EBB Auto Co*., 8 F.3d 1433, 1440 (9th Cir. 1993).  First, the employee must plead a prima facie case of failure to accommodate religion. *Sutton v. Providence St. Joseph Med. Ctr*., 192 F.3d 826, 830 (9th Cir. 1999). A plaintiff must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606.

Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably

ARTIANO SHINOFF

the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano v. Dillard Dep't Stores, Inc*., 139 F.3d 679, 681 (9th Cir. 1998).

Here, EUSD initiated good food efforts to accommodate West's religious beliefs through meetings with EUSD district personnel. On November 15, 2022, EUSD held separate religious accommodation meetings with Plaintiffs West and Mirabelli. SAC, p. 61 ¶ 250.

During this process, EUSD came to an agreement with Mirabelli and West for them to refer to all students using their last names and without using gendered pronouns. SAC, p. 61 ¶ 253. As for the privacy policy, EUSD counsel Daniel R. Shinoff explained in correspondence to Mirabelli and West's counsel that the CDE stated: "Schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the students family…" SAC, Ex 7 p. 158. EUSD relied on the CDE for guidance on this issue and followed state law. *Id*.

On March 1, 2023. Plaintiffs employment counsel Norman Grissom communicated their concerns with the application of the "Privacy Policy". SAC, Exhibit 8. This correspondence specifically stated:

> As for the Privacy Policy, as stated in my clients' initial religious accommodation letters, they do not seek a general exemption from the Privacy Policy such that they could gossip about a student's transgender identity with all parties. However, they are very concerned about interfering with parental rights and what to do if confronted by a parent. Thus, they have the following two questions:
>
> (1) What if a parent directly asks my clients to reveal a student's gender identity? In other words, how must my clients respond if the parent directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at school to address her using a male name or male pronouns?" In that context, instead of merely avoiding the topic, must my clients expressly deny that the student is being treated by the school as transgender?
> Or would they be permitted to admit that the parent's suspicions are true? **Or does EUSD envision some middle ground, such as the teacher being required to say: "I have been directed not to tell you if your child is using a different name and pronoun."** Could EUSD assign an administrator to sit in on parent-teacher conferences to respond to parents about any transgender issues?

SAC, Exhibit 8, p. 2.

As noted in the correspondence, Mirabelli and West's *own counsel* requested a "middle ground" by means of accommodating them to not to directly address any parent concerns. EUSD

modified Plaintiff Mirabelli and West's request and explained they would not directly address parent concerns relating to gender identification or equity laws/regulations, and instead refer parents to the school principal for further guidance. SAC, Exhibit 9. Thus, Plaintiff's cannot meet its burden in establishing that West was discriminated against and EUSD failed to engage in reasonable efforts to accommodate her.

### C.    West's Fifth Cause of Action for Retaliation under Title VII Fails

A retaliation claim under Title VII must allege facts that adequately satisfy the following elements: (1) the plaintiff engaged in a protected activity under Title VII; (2) the defendant subjected her to an adverse employment action; and (3) the plaintiff's protected activity and the adverse action were causally linked. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008).

Wests alleges she was subjected to the following adverse employment actions: personnel "leaving pro-LGBT pamphlets on her desk, subscribing her email to pro-LGBT organizations, confronting her about her religious beliefs, organizing various protests of her, and filing of a frivolous complaint against her with EUSD." SAC p. 107, ¶ 426. Plaintiff further alleges she was placed on paid administrative leave.

### 1.    West Cannot Establish a Causal Link or That She Was Subjected to Any Adverse Employment Action

As an initial matter, "[a]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)

West fails to allege how EUSD was the cause or had control over the alleged conduct of unknown individuals leaving pamphlets on her desk and subscribing her email to pro-LGBT organizations, the latter of which can be done from any computer worldwide. West's allegation that EUSD personnel was responsible is entirely conclusory and speculative with no supporting factual basis.

Moreover, the SAC describes students confronting her and organizing protests. SAC p. 107, ¶ 426. Courts have "long held that students in public schools do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" See *Chandler v. McMinnville Sch. Dist.*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND
SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS
{AS7 Law San Diego/001290/000012/PL/S0584197.DOCX}

3:23-cv-0768-BEN-VET

978 F.2d 524, 527 (9th Cir.1992) (quoting *Tinker*, 393 U.S. at 506, 89 S.Ct. 733). Plaintiff alleges Rincon Middle School principal was apprised of the actions "but took no action to end it". SAC p. 108 ¶ 430. Here, Plaintiffs fail to allege when and what actions were brought to the principal's attention such that his inactions can be causally linked to West's protected activity.

Moreover, courts have also expressly recognized that the state charges school officials with the daily administration of public education, that this "responsibility carries with it the inherent authority to prescribe and control conduct in the schools," *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 767 (9th Cir. 2006) citing *LaVine*, 257 F.3d at 988 (quoting *Karp*, 477 F.2d at 174), and that "the determination of what manner of speech in [schools] is inappropriate properly rests with the school board, rather than with the federal courts." *Hazelwood*, 484 U.S. at 267, 108 S.Ct. 562(internal citation omitted).

Second, EUSD placed West on leave following complaints made by students. SAC p. 70 ¶ 286. The California Code of Regulations Title 5 (5 CCR), Section 4600 et seq. requires school districts, among other things, to adopt and publish procedures referred to as the Uniform Complaint Procedures (UCP) that provide for prompt and equitable resolution of complaints alleging discrimination, harassment, intimidation, and/or bullying on the basis of a protected characteristic. West was returned to work following the completion of the investigations. Thus, there was no causal link of West being placed on paid administrative leave due to her seeking a religious accommodation.

### D.    Escondido Union School District's Policies Are Consistent with State and Federal Law

#### 1.    Federal Law Protects Against Discrimination Because of Gender Identity

In March 2021, President Biden issued "Executive Order 14021 on Guaranteeing an Educational Environment Free From Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity."

> It is the policy of my Administration that all students should be guaranteed an educational environment free from discrimination on the basis of sex, including discrimination in the form of sexual harassment, which encompasses sexual violence, and including discrimination on the basis of sexual orientation or gender identity. For students attending schools and other educational institutions that receive Federal financial assistance, this guarantee is codified, in part, in Title IX of the Education

ARTIANO SHINOFF

Amendments of 1972, 20 U.S.C. 1681 et seq., which prohibits discrimination on the basis of sex in education programs or activities receiving Federal financial assistance.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") prohibits discrimination based on sex in education programs and activities that receive federal financial assistance. Title IX states "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . . " 20 U.S.C. § 1681, subd. (a).

In evaluating Title IX claims, federal courts look to Title VII cases for guidance. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992); *Patricia H. Berkeley. Unified Sch. Dist.*, 830 F.Supp. 1288, 1290 (C.D. Cal. 1993). In *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000), the Ninth Circuit, relying on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), reasoned that "'sex' under Title VII encompasses both sex—that is, the biological difference between men and women—and gender." It explained that while earlier cases distinguished between "sex" and "gender," the Supreme Court in *Price Waterhouse* abandoned that distinction and held that Title VII bars discrimination based on both an individual's sex and failure to conform to socially-constructed gender expectations. *Id.* In *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 Fed.Appx. 492, 493 (9th Cir. 2009), the Ninth Circuit reaffirmed that "it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men or women."

### 2.   California Protects Against Discrimination Because of Gender Identity

#### a.   California Constitution Protects Privacy

The right to privacy is protected by Article 1, section 1, of the California Constitution.  That privacy right applies to children and permits the child to keep significant secrets from a parent.  For example, the California Supreme Court has held that a child's privacy rights include the right to obtain an abortion without state notification of their parents. *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 359.

#### b.   Statutes Protect Against Discrimination and Harassment

The Education Code protects a range of private information provided to a school counselor,

ARTIANO SHINOFF

even to the extent of prohibiting disclosure to parents in some circumstances.

> Notwithstanding the provisions of this section, a school counselor shall not disclose information deemed to be confidential pursuant to this section to the parents of the pupil when the school counselor has reasonable cause to believe that the disclosure would result in a clear and present danger to the health, safety, or welfare of the pupil.

Ed. Code § 49602, subd. (e).

Students are protected against gender-identity discrimination by the Education Code. "No person shall be subjected to discrimination on the basis of … gender, gender identity, gender expression, . . . sexual orientation, . . . in any program or activity conducted by an educational institution . . . ." Ed. Code, § 220. "All pupils have the right to participate fully in the educational process, free from discrimination and harassment." Ed. Code, § 201.

> No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code, including immigration status, in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid.

Ed. Code, § 220.

### 3.   The California Department of Education Requires the Policy

The California Department of Education ("CDE") provides a website with Frequently Asked Questions ("FAQ") on the subject of school policies related to gender identity. The guidance from the CDE is the source of the school district's policy. That policy is consistent with the CDE instruction to preserving the privacy of a student's gender identity, even against the inquiry of a parent:

> **1.    May a student's gender identity be shared with the student's parents, other students, or members of the public?**
>
> A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home. **Revealing a student's gender identity or expression to others may compromise the student's safety. Thus, preserving a student's privacy is of the utmost importance. The right of transgender students to keep their transgender status private is grounded in California's antidiscrimination laws as well as federal and state laws.**

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND                3:23-cv-0768-BEN-VET
SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS
{AS7 Law San Diego/001290/000012/PL/S0584197.DOCX}

ARTIANO SHINOFF

> Disclosing that a student is transgender without the student's permission may violate California's antidiscrimination law by increasing the student's vulnerability to harassment and may violate the student's right to privacy.

CDE FAQ No. 6; SAC. Exhibit 26-B, ¶ 6, p. 5/12. (Emphasis added.)

> The California Department of Education specifically prohibits schools from sharing a student's gender preference with the student's parents in some rare circumstances. Pursuant to the above protections, schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. **With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents.** In those very rare circumstances where a school believes there is a specific and compelling "need to know," the school should inform the student that the school intends to disclose the student's transgender status, giving the student the opportunity to make that disclosure her or himself.

CDE FAQ No. 7; SAC. Exhibit 26-B, ¶ 7, p. 6/12. (Emphasis added.)

### 4.   Plaintiffs' Assertion of Parents' Rights Misstates the Law

The Ninth Circuit Court of Appeals has explained that parents are vested with the right to choose where their children obtain an education. But, "once parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the least, substantially diminished. *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) Parents are not vested with the power to determine how a school "will provide information to its students or what information it will provide, in its classrooms or otherwise." *Id.* (emphasis added). The Ninth Circuit then adopted the Sixth Circuit's position on this right:

> Perhaps the Sixth Circuit said it best when it explained, "While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally 'committed to the control of state and local authorities.'"

*Id.* (quoting *Blau v. Fort Thomas Public School Dist.* (6th Cir. 2005) 401 F.3d 381, 395–396).

But, notwithstanding the importance of parents' rights, one Federal District Court has denied an injunction against a very similar policy sought by a parent who contended she had a right to be informed of her child's gender identity.  "Plaintiff asks this Court to enjoin enforcement of school

15

ARTIANO SHINOFF

district regulation AR 5145.3, which broadly covers nondiscrimination and harassment as it applies to the school district's transgender students."   *Regino v. Staley* (E.D. Cal., Mar. 9, 2023, No. 223CV00032JAMDMC) 2023 WL 2432920, at *1.   "For the reasons set forth below, the Court DENIES Plaintiff's motion." *Id.*

**E.     The Regulation Does Not Violate the Teacher Plaintiffs' Right to Free Speech**

**1.     First, The Regulation Does Not Require Any Lie**

A compelled speech claim has three elements. "[A] party must establish (1) speech, (2) that is compelled by governmental action, and (3) to which the speaker objects. [citation]. If the three elements are satisfied, strict scrutiny is triggered." *Dep't of Fair Emp't and Hous. v. Cathy's Creations, Inc.*, No. BCV-18-102633, 2022 WL 18232316, at *13 (Cal. Super. Dec. 27, 2022) (citing *Taking Offense v. State,* 66 Cal. App. 5th 696, 709 (2021).   "Compelling individuals to mouth support for views they find objectionable violates [the First Amendment's] cardinal constitutional command, and in most contexts, any such effort would be universally condemned."   *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps*., Council 31, 585 U.S. 878 (2018).

Teacher Plaintiffs' Free Speech claim hinges upon the assertion that Regulation requires them to lie.   But that is not true.   It is not true that the Policy or the Regulation requires anyone to lie.   Nor does it require the Teacher Plaintiffs to "mouth support" for views they find objectionable.

On the face of AR 5145.3, there is no requirement for anyone to lie.   The entire Regulation is attached to the Complaint as Exhibit 3.   It is a long Regulation, but the pertinent part says:

> To ensure that transgender and gender-nonconforming students are afforded the same rights, benefits, and protections provided to all students by law and Board policy, the district shall address each situation on a case-by-case basis, in accordance with the following guidelines:
>
> 1. Right to privacy: A student's transgender or gender-nonconforming status is his/her private information and the district will only disclose the information to others with the student's prior written consent, except when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being. In the latter instance, the district shall limit disclosure to individuals reasonably believed to be able to protect the student's well-being. Any district employee to whom a student discloses his/her transgender or gender-nonconforming status

ARTIANO SHINOFF

shall seek the student's permission to notify the compliance officer. If the student refuses to give permission, the employee shall keep the student's information confidential, unless he/she is required to disclose or report the student's information pursuant to this procedure, and shall inform the student that honoring the student's request may limit the district's ability to meet the student's needs related to his/her status as a transgender or gender-nonconforming student. If the student permits the employee to notify the compliance officer, the employee shall do so within three school days.

As appropriate given the physical, emotional, and other significant risks to the student, the compliance officer may consider discussing with the student any need to disclose the student's transgender or gender-nonconformity status to his/her parents/guardians and/or others, including other students, teacher(s), or other adults on campus. The district shall offer support services, such as counseling, to students who wish to inform their parents/guardians of their status and desire assistance in doing so.

EUSD AR 5145.3, SAC Ex. 3.

As applied, the school did not require anyone to lie, either. Teacher Plaintiffs allege the school provided training, and nowhere in that training is there any requirement to lie. Teacher Plaintiffs attached as Exhibit 4 to the Complaint a transcript of training provided by the school to the teachers. It does not include any requirement to state any fact that is false, i.e. to lie. There is a requirement to protect the privacy rights of students who wish to keep private their name and pronoun as they make the decisions related to gender-identity transition. Teacher Plaintiffs allege they were instructed,

If a suspicious parent asks a teacher about whether their child has socially transitioned at school, the teacher must simply respond that "the inquiry is outside of the scope of the intent of their interaction" and that they can only discuss "information regarding the student's behavior as it relates to school, class rules, assignments, etc." (Ex. 9, pp.2-4.) Even if a parent expresses concern, teachers are specifically "directed to refrain from elaborating on their personal beliefs" regarding the child's gender confusion. (Ex. 9, p.2.)

SAC. p. 4:1-7, citing from Exhibit 9.

The instruction to say a subject is outside of the scope of the discussion is not an instruction to lie. It is not an instruction to state an opinion. It is an instruction to refer the question to the appropriate administrator.

17

### F.   A Teacher's Speech in the Classroom Is Not Protected Speech

Arguendo, if the Court decides the school district's Regulation, as applied, imposes some obligation on the Teacher Plaintiffs' speech, that speech is *not* protected. "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

There is no doubt that a public-school teacher has certain First Amendment rights of freedom of speech or expression. *Pickering v. Board of Educ.*, 391 U.S. 563 (1968); *Tinker v. Des Moines Ind. Comm'ty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ["[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."]. But the free speech rights of public employees, including teachers, are not unlimited. Those rights have been restricted under the test established in *Pickering* and clarified in *Connick v. Myers,* 461 U.S. 138 (1983), and *Garcetti*, supra, 547 U.S. at p. 418.

The *Pickering* test provides a public employee with First Amendment protections only if (1) the employee is speaking as citizen, (2) on a matter of public concern, and (3) the public entity has no adequate justification for treating the employee differently from any other member of the general public. *Garcetti*, supra, 547 U.S. at 418.

The *Garcetti* case clarified the first prong of the *Pickering* test -- whether a public employee is speaking as a citizen. In *Garcetti*, an assistant district attorney wrote a memo to his supervisor recommending dismissal of a particular criminal case because the affidavit police used to obtain a critical search warrant was inaccurate. *Garcetti*, supra, 547 U.S. at 414. The assistant D.A. was criticized by his supervisors for writing the memo and demoted. *Id*. at 415. He then sued his employer under 42 U.S.C. § 1983 for retaliation in violation of his First Amendment rights. *Id*. The Garcetti court upheld the use of the *Pickering* test to determine the public employee's free speech rights in the workplace. *Garcetti*, 574 U.S. at 418.

In clarifying the definition of "citizen" under the first prong of the Pickering test, the *Garcetti* court explained that the focus should not be on the content of the speech, but on the role the speaker occupied when the speech was made. *Garcetti,* supra, 574 U.S. at 421. Using that standard, Court held

18

ARTIANO SHINOFF

that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.*

Teacher Plaintiffs incorrectly contend they are discussing matter of public concern so that their discussion is protected, citing *Demers v. Aaustin*, 746 F.3d 402, 411-13 (9th Cir. 2014.) But *Demers v. Aaustin* does not apply. Its analysis only applies to post-secondary education -- colleges and universities. And it recognizes the difference between universities and high schools education. "Further, the degree of freedom an instructor should have in choosing what and how to teach will vary depending on whether the instructor is a high school teacher or a university professor." *Demers v. Austin*, supra, at 413.

The *Garcetti* court expressly left open the question of whether its gloss on the *Pickering* test should be applied to the world of public academia, where there are different free speech concerns, such as academic freedom. *Id*. at 425. To that end, the *Garcetti* court noted: "There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." Id.

Such "academic freedom" concerns are not present at the high-school level. For example, in *Evans-Marshall v. Board of Educ.*, 624 F.3d 332 (6th Cir. 2010), the Sixth Circuit explained that "'academic freedom' … does not readily apply to in-class curricular speech at the high school level" but applies more at the university level. *Evans-Marshall*, supra, 624 F.3d at 343-344.

The Ninth Circuit has agreed with the Sixth Circuit, noting that *Garcetti's* "'academic freedom' carve-out applied to teachers at public colleges and universities, not primary and secondary school teachers." *Johnson v. Poway Unified School Dist.* (9th Cir. 2011) 658 F.3d 954, 966.

In *Johnson*, a schoolteacher hung banners expressing religious phrases in his math classroom; the school instruct him to remove them. *Johnson*, supra, at 958-959. "When Bradley Johnson, a high school calculus teacher, goes to work and performs the duties he is paid to perform, he speaks not as an individual, but as a public employee, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Johnson*, supra at 957,

19

ARTIANO SHINOFF

citing, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995).

Primary and secondary schools hire teachers for their ability to convey the school district's curriculum, not for their academic publications, as might occur at the university level. And teachers may not introduce their own views on a particular subject, but "must stick to the prescribed curriculum not only the prescribed subject matter, but also the prescribed perspective on that subject matter." *Mayer v. Monroe County Community School Corp.*, 474 F.3d 477,479 (7th Cir. 2007). This is because "the school system does not regulate teachers' speech as much as it hires that speech. Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary." *Id.*; see also, *Borden v. Sch. Dist. of East Brunswick,* 523 F.3d 153, 171 (3d Cir. 2008) (holding under Pickering-based analysis that school could prohibit faculty participation in student-initiated prayer); *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007) (holding under a Pickering-based analysis that a school board did not infringe the rights of a teacher when it ordered him to remove religious material from a classroom bulletin board); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1204 (10th Cir. 2007); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007); *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477,479-80 (7th Cir. 2007) (applying Pickering-based test and holding that "the [F]irst [A]mendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system").

### G.    Teacher Plaintiffs' Speech Is Government Speech

There can be no doubt that Teacher Plaintiffs' objections to speaking, or refraining from speaking as the Regulation required, was speech in the scope of their duties as a teacher.  It was not spoken as a private citizen, but was "government speech," required by the school district Regulation. When Teacher Plaintiffs go to work and perform the duties they are paid to perform, they speak not as individuals, but as public employees, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Johnson*, *supra* at 957, citing, *Rosenberger v. Rector & Visitors of the Univ. of Va*., 515 U.S. 819, 833 (1995).

### H.    The Policy Does Not Violate the Teacher Plaintiffs' Religion

Teacher Plaintiffs' second and third claims for relief are captioned: "Violation of Free Exercise

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EUSD AND SCHOOL EMPLOYEE DEFENDANTS' MOTION TO DISMISS

3:23-cv-0768-BEN-VET

{AS7 Law San Diego/001290/000012/PL/S0584197.DOCX}

ARTIANO SHINOFF

Clause of First Amendment to U.S. Constitution: Not Generally Applicable due to Comparable Exemptions and due to Categorical Exemptions." Each claim is similar.

**ISSUES**: Does the school's policy actually burden the Teacher Plaintiffs' religious beliefs? If so, does a policy designed to prevent discrimination and harassment that incidentally burdens religion violate the free exercise clause of the Constitution? Stated more broadly, can a religious belief serve to permit racial discrimination against gender non-conforming students?

### 1.      The School's Policy Does Not Burden Teacher Plaintiffs' Religion

Teacher Plaintiffs claim the school's policy prohibited the free exercise of their religion. U.S. Const. amend. I. Under this guarantee, Plaintiffs must "show[ ] that a government entity has burdened [their] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton School District* 597 U.S. 507, 527 (2022). General applicability requires, among other things, that the laws be enforced evenhandedly. *Id*. at 2423; see also *Apache Stronghold v. United States,* 38 F.4th 742, 770 (9th Cir. 2022) ("[A] law is not 'generally applicable' if the law 'impose[s] burdens only on conduct motivated by religious belief' in a 'selective manner.'" (second brackets in original) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 543, (1993)); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015).

First, the school's policy does not actually burden the Teacher Plaintiffs' free exercise of their religious beliefs.  They allege the policy requires them to lie when they must not disclose to the parent a students' preferred name and pronoun without the student's permission.   SAC p. 51, ¶¶ 208-211.

> Mrs. Mirabelli and Mrs. West remain committed—in light of their faith—to prevent transgender students from being bullied or harassed. They have no intention to, and will not, harass or tolerate harassment of transgender or gender diverse students. **But a requirement that Mrs. Mirabelli and Mrs. West actively deceive parents and hide their child's gender confusion from them, and a strict prohibition against Mrs. Mirabelli and Mrs. West even responding to questions from parents about gender identity, will never be acceptable**.

SAC p. 52, ¶ 215.

But it is not a lie to avoid answering a question, in that very rare situation where a child does not want their parent to know their gender identity is different.  It is not a lie to refer a parent's question

ARTIANO SHINOFF

to an administrator or limit the subject matter to education issues.  The California Department of Education does not think it is a lie: "With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents."  CDC FAQ # 7, SAC Ex. 26, 6/12.

## 2.    The School's Policy Is Neutral and Applied Generally

The right to exercise one's religion freely, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted).

A neutral law of general application need not be supported by a compelling government interest even when "the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi*"), 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Such laws need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999).  For laws that are not neutral or not generally applicable, strict scrutiny applies. See *Lukumi*, 508 U.S. at 531–32, 113 S.Ct. 2217 ("A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.").

The tests for "[n]eutrality and general applicability are interrelated, and ... failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id*. at 531, 113 S.Ct. 2217. The mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability. See *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 651 (10th Cir.2006) ("Consistent with the majority of our sister circuits, ... we have already refused to interpret *Smith* as standing for the proposition that a secular exemption automatically creates a claim for a religious exemption.")  *Stormans, Inc. v. Wiesman* (9th Cir. 2015) 794 F.3d 1064, 1082.

The Teacher Plaintiffs contend the policy is not neutral and not applied generally in two ways. First, they argue it does not apply to some employees.  "As outlined above, the policies apply to approximately 1,000 certificated teachers, but do not apply to more than 115 credentialed administrative staff, 740 classified support staff, or 17,000 students."  SAC p.97, ¶ 370.  But that is

22

not true. Neither the Policy (Ex. 2) nor the Regulation (Ex. 3) excludes any adult or student. "The Regulation broadly applies to all acts relate to school activity or to school attendance occurring with a district school . . ." SAC Ex. 2.  It is true that the District provided training to teachers that it did not provide to custodians, but that was because teachers are on the front line of communication with parents.  The policy requiring respect for gender diverse students applies to everyone.

Second, they contend the policy has discretionary exceptions. SAC p. 100  ¶ 388.   But the discretion only applies to issues related to discipline.  The staff was told that refusing to address the student by the name and the pronoun consistent with their gender identity was one of the discriminatory or harassing actions that could subject the person to discipline. SAC Ex. 4, p. 6. Teacher Plaintiffs argued that "harassment" had elements that required discretion to analyze.  SAC p. 100-101 ¶¶ 390-391.  That is not an exception to the policy requiring respect for the student's gender identity or respect for the student's privacy. It is an exception to discipline for a person who violated the policy based upon circumstances. Similarly, the policy did not cover "inadvertent slips or honest mistakes." SAC p. 101, ¶391.  That also is not an "exception" but is part of a consistent policy against *intentional* discrimination against a student because of gender identity.

There are no exceptions in the application of the policy and the policy is applied generally, consequently, the policy need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999).  The school's policy of respecting a student's privacy and gender identity, and keeping their gender identity private upon request, is rationally related to the purpose of preventing discrimination and harassment.

### 3.    The Policy Meets the Strict Scrutiny Test

The Policy requires all staff to protect the privacy of students, consistent with their Constitutional right to privacy, to protect the student's safety and emotional security. That is a compelling interest. The state has a compelling interest "of the highest order" in eradicating sex discrimination. *Roberts v. United States Jaycees* (1984) 468 U.S. 609, 626. The Supreme Court found that discrimination on the basis of "sex" includes discrimination on the basis of sexual orientation or transgender status. *Bostock v. Clayton County* (2020) 590 U.S. 644, 669. The California Supreme Court also recognized that the state has a compelling interest "in ensuring full and equal access to

1   medical treatment irrespective of sexual orientation." *North Coast Women's Care Medical Group, Inc.*

2   *v. Superior Court* (2008) 44 Cal.4th 1145, 1158. The governmental purpose of protecting at-risk

3   students from harm is a compelling governmental interest and the Policy of protecting the student's

4   privacy, even from the parents in rare instances, is narrowly tailored, meeting the strict scrutiny test.

5       The Policy and Regulation are narrowly tailored. There is no alternative method of meeting

6   the requirement to keep the student's gender identity private when the student does not want a parent

7   to know except the careful referral to experts with the purpose of assisting the student to work through

8   the process of informing their parents.

9   ## V.   CONCLUSION

10       Based upon the foregoing, it is respectfully requested that this Court sustain Defendants EUSD

11   and EUSD School Employees' motion to dismiss Plaintiff Jane Boe and Jane Roe from this suit under

12   Federal Rule of Civil Procedure 12(b)(1), to dismiss West's Fourth and Fifth Title VII Claims under

13   Federal Rule of Civil Procedure 12(b)(6), and to dismiss Teacher Plaintiffs' First, Second, and Third

14   Claims under Federal Rule of Civil Procedure 12(b)(6).

16   Dated: September 30, 2024        ARTIANO SHINOFF

18   By: _____
19       Daniel R. Shinoff
    Jack Sleeth Jr.
20       Lauren Cambronero
    Attorneys for EUSD Defendants

ARTIANO SHINOFF