Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice**
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-VET <br><br> **Plaintiffs' Opposition to Defendants' Motions to Dismiss** <br><br> Judge: Hon. Roger T. Benitez <br> Courtroom: 5A <br> Hearing Date: November 4, 2024 <br> Hearing Time: 10:30 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

FACTUAL & PROCEDURAL BACKGROUND.....................................1

    A.    History of California's Adoption of Parental Exclusion
        Policies .............................................................................1

    B.    History of California's Enforcement of Parental Exclusion
        Policies ........................................................................... 2

    C.    The Plaintiffs: Teachers and Parents.....................................3

LEGAL STANDARD ..............................................................................3

    A.    Law of the Case Doctrine ....................................................3

    B.    Failure to State a Claim Under Rule 12(b)(6) ...................... 4

    C.    Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) ......................5

    D.    Failure to Join Necessary Party Under Rule 12(b)(7)...........................5

ARGUMENT.............................................................................................. 6

    I.    Plaintiffs Have Standing Under Rule 12(b)(1) ..................... 6

        A.    Background Legal Principles.......................................... 6

        B.    Teacher Plaintiffs Have Standing to Sue the EUSD
            and the CDE: The Threat of Enforcement Is Not
            Imaginary or Speculative. ..........................................7

            1.    Plaintiffs Roe and Boe Have Pre-Enforcement
                Standing...........................................................7

            2.    Plaintiffs Mirabelli and West Have Pre-
                Enforcement Standing ................................... 8

        C.    Teacher Plaintiffs Have Standing to Sue the AG:
            Plaintiffs Have Adequately Pleaded that the AG
            Believes Parental Exclusion Is Prescribed by California
            Law. ...........................................................................10

            1.    AG Bonta's Disavowal Does Not Moot This
                Action...........................................................10

            2.    The CVUSD Litigation Is Not Relevantly
                Distinguishable. ............................................12

    D.    Parent Plaintiffs Have Standing to Sue the CDE and AG ................................................................................ 13

        1.    Parent Plaintiffs Have Pleaded Actual Injury. ............... 13

        2.    Parent Plaintiffs Have Pleaded Causation. .................... 15

    E.    The AG Is Not Protected by Sovereign Immunity ..................... 17

II.    Plaintiffs Have Pleaded Adequate Claims, Rule 12(b)(6) ................... 18

    A.    Plaintiff West's Failure to Accommodate Claim Is Well Pleaded .............................................................................. 18

    B.    Plaintiff West's Retaliation Claim Is Adequately Pleaded. ..................................................................................... 19

    C.    Plaintiffs' Constitutional Claims Are Adequately Pleaded. ..................................................................................... 20

        1.    The Parental Rights Claims Are Adequately Pleaded. .................................................................. 20

        2.    The Free Exercise Claims Are Adequately Pleaded. .................................................................. 21

        3.    The Free Speech Claims Are Adequately Pleaded. .................................................................. 23

III.    All Necessary Parties Have Been Joined, Rule 12(b)(7) ..................... 23

    A.    Complete Relief Can Be Granted Without Joining School Districts. ............................................................................ 24

    B.    The School Districts Have No Legally Cognizable Interest. ....................................................................................... 25

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis*
  600 U.S. 570 (2023) ...................................................................8

*Allen v. Wright*
  468 U.S. 737 (1984) ...................................................................6

*Alto v. Black*
  738 F.3d 1111 (9th Cir. 2013) ..................................................25

*Am.-Arab Anti-Discrimination Comm. v. Thornburgh*
  970 F.2d 501 (9th Cir. 1991) ....................................................12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...................................................................4

*Askins v. DHS.*
  899 F.3d 1035 (9th Cir. 2018) ...................................................4

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*
  33 F.4th 1107 (9th Cir. 2022) ...................................................9

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013) ...............................................17, 18

*Babbitt v. United Farm Workers Nat'l Union*
  442 U.S. 289 (1979) ...................................................................8

*Bacon v. Woodward*
  104 F.4th 744 (9th Cir. 2024) ..................................................23

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................4

*Bell v. Boise*
  709 F.3d 890 (9th Cir. 2013) ....................................................11

*Bennett v. Spear*
  520 U.S. 154 (1997) ..................................................................16

*Berger-Rothberg v. New York*
  803 F. Supp. 2d 155 (E.D.N.Y. 2011) .......................................20

*Berry v. Dep't of Soc. Servs.*
  447 F.3d 642 (9th Cir. 2006) ....................................................22

# TABLE OF AUTHORITIES

2 CASES (CONT.)

3 *Biden v. Nebraska*
4  600 U.S. 477 (2023) ............................................................. 9

5 *Blanchette v. Conn. Gen. Ins. Corps.*
  419 U.S. 102 (1974) ............................................................. 6

6 *Butt v. California*
7  4 Cal. 4th 668 (1992) ........................................................ 24

8 *Calif. Trucking Ass'n v. Bonta*
9  996 F.3d 644 (9th Cir. 2021) ............................................. 8

10 *Christianson v. Colt Indus. Operating Corp.*
  486 U.S. 800 (1988) ........................................................... 4

11 *Clapper v. Amnesty Int'l USA*
12  568 U.S. 398 (2013) ......................................................... 16

13 *Const. Party of Penn. v. Aichele*
14  757 F.3d 347 (3d Cir. 2014) ............................................ 10

15 *Courthouse News Serv. v. Planet*
  750 F.3d 776 (9th Cir. 2014) ............................................. 5

16 *Culinary Workers Union, Loc. 226 v. Del Papa*
17  200 F.3d 614 (9th Cir. 1999) .......................................... 17

18 *Dahlia v. Rodriguez*
19  735 F.3d 1060 (9th Cir. 2013) ........................................ 19

20 *Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956 (9th Cir. 2018) ........................................... 15

21 *DaVinci Aircraft, Inc. v. United States*
22  926 F.3d 1117 (9th Cir. 2019) ........................................... 5

23 *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*
24  276 F.3d 1150 (9th Cir. 2002) ........................................... 5

25 *Dawson v. Entek Int'l*
  630 F.3d 928 (9th Cir. 2011) ............................................ 20

26 *Desert Citizens Against Pollution v. Bisson*
27  231 F.3d 1172 (9th Cir. 2000) ......................................... 16

28

# TABLE OF AUTHORITIES

**CASES (CONT.)**

*Emma C. v. Eastin*
  985 F. Supp. 940 (N.D. Cal. 1997) ................................................. 25

*Est. of Bride v. Yolo Techs., Inc.*
  112 F.4th 1168 (9th Cir. 2024) ...................................................... 5

*Everett H. v. Dry Creek Joint Elementary Sch. Dist.*
  No. 2:13-cv-889, 2016 WL 5661775 (E.D. Cal. Sept. 30, 2016) .................... 25

*FBI v. Fikre*
  601 U.S. 234 (2024) ................................................................ 11

*FEC v. Cruz*
  596 U.S. 289 (2022) ................................................................ 14

*Fields v. Palmdale Sch. Dist.*
  427 F.3d 1197 (9th Cir. 2005) ..................................................... 14

*Fields v. Palmdale Sch. Dist.*
  447 F.3d 1187 (9th Cir. 2006) ................................................. 14, 21

*Fikre v. FBI*
  35 F.4th 762 (9th Cir. 2022) ...................................................... 12

*Foothills Christian Church v. Johnson*
  No. 22-cv-950, 2023 WL 4042580 (S.D. Cal. June 15, 2023) ...................... 18

*Fraternal Ord. of Police Newark Lodge No. 12 v. Newark*
  170 F.3d 359 (3d Cir. 1999) ....................................................... 22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC) Inc.*
  528 U.S. 167 (2000) ............................................................ 11, 16

*Geraghty v. Jackson Loc. Sch. Dist.*
  No. 5:22-cv-2237, 2024 WL 3758499 (N.D. Ohio Aug. 12, 2024) ................... 23

*Groff v. DeJoy*
  600 U.S. 447 (2023) ................................................................ 20

*Gunnell v. Utah Valley State Coll.*
  152 F.3d 1253 (10th Cir. 1998) .................................................... 20

*Heller v. EBB Auto Co.*
  8 F.3d 1433 (9th Cir. 1993) ....................................................... 19

## CASES (CONT.)

*In re Packaged Seafood Prods. Antitrust Litig.*
635 F. Supp. 3d 1061 (S.D. Cal. 2022)................................................................4

*Isaacson v. Mayes*
84 F.4th 1089 (9th Cir. 2023).............................................................................7

*Italian Colors Rest. v. Becerra*
878 F.3d 1165 (9th Cir. 2018) ...........................................................................6

*Janus v. AFSCME, Council 31*
585 U.S. 878 (2018)..........................................................................................23

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*
78 F.4th 622 (4th Cir. 2023) ...........................................................................14

*Kennedy v. Bremerton Sch. Dist.*
443 F. Supp. 3d 1223 (W.D. Wash. 2020)........................................................22

*Kennedy v. Bremerton Sch. Dist.*
597 U.S. 507 (2022) ..........................................................................................22

*Kentucky v. Yellen*
54 F.4th 325 (6th Cir. 2022)..............................................................................11

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014)..............................................................................5

*Light v. Dep't of Parks & Recreation*
14 Cal. App. 5th 75 (2017) ...............................................................................20

*Long v. Van de Kamp*
961 F.2d 151 (9th Cir. 1992) .............................................................................18

*Lopez v. Candaele*
630 F.3d 775 (9th Cir. 2010)...........................................................6, 8, 11, 12

*Love v. United States*
915 F.2d 1242 (9th Cir. 1989) .............................................................................4

*Lowe v. Monrovia*
775 F.2d 998 (9th Cir. 1985)...............................................................................5

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) ............................................................................................6

# TABLE OF AUTHORITIES

**CASES (CONT.)**

*Lujan v. Nat'l Wildlife Fed'n*
  497 U.S. 871 (1990) ................................................................. 6

*Lumpkin v. Brown*
  109 F.3d 1498 (9th Cir. 1997) ............................................... 22

*McGinest v. GTE Serv. Corp.*
  360 F.3d 1103 (9th Cir. 2004) ............................................... 19

*Mecinas v. Hobbs*
  30 F.4th 890 (9th Cir. 2022) ................................. 16, 17, 18

*Mendia v. Garcia*
  768 F.3d 1009 (9th Cir. 2014) ............................................... 16

*Mitchell v. Brown*
  No. 2:14-cv-2993, 2015 WL 3993149 (E.D. Cal. June 30, 2015) ..... 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
  31 F.4th 651 (9th Cir. 2022) ................................................... 9

*Opuku-Boateng v. California*
  95 F.3d 1461 (9th Cir. 1996) ................................................. 18

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*
  551 U.S. 701 (2007) ............................................................... 12

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*
  95 F.4th 501 (7th Cir. 2024) ................................................. 14

*Peace Ranch, LLC v. Bonta*
  93 F.4th 482 (9th Cir. 2024) ................................................. 13

*Porter v. Martinez*
  68 F.4th 429 (9th Cir. 2023) ................................................. 14

*Radu v. Shon*
  62 F.4th 1165 (9th Cir. 2023) ................................................. 4

*Renee v. Duncan*
  686 F.3d 1002 (9th Cir. 2012) ............................................... 16

*Roberts v. Fairbanks*
  947 F.3d 1191 (9th Cir. 2020) ................................................. 6

**CASES (CONT.)**

Rosemere Neighborhood Ass'n v. EPA
   581 F.3d 1169 (9th Cir. 2009) ................................................................ 11

Rowe v. Educ. Credit Mgmt. Corp.
   559 F.3d 1028 (9th Cir. 2009) ................................................................ 5

Safe Air for Everyone v. Meyer
   373 F.3d 1035 (9th Cir. 2004) ................................................................ 5

Seattle Pac. Univ. v. Ferguson
   104 F.4th 50 (9th Cir. 2024) ................................................................ 14

Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care
   968 F.3d 738 (9th Cir. 2020) ........................................... 6, 10, 16, 17

Small v. N.Y. City Dep't of Educ.
   650 F. Supp. 3d 89 (S.D.N.Y. 2023) ................................................ 20

Sprint Telephony PCS, L.P. v. Cnty. of San Diego
   311 F. Supp. 2d 898 (S.D. Cal. 2004) ................................................ 1

Starr v. Baca
   652 F.3d 1202 (9th Cir. 2011) ................................................................ 5

State Bd. of Educ. v. Honig
   13 Cal. App. 4th 720 (1993) ................................................................ 7

Susan B. Anthony List v. Driehaus
   573 U.S. 149 (2014) ................................................................ 7, 8

Tatel v. Mt. Lebanon Sch. Dist.
   No. 2:22-cv-837, 2024 WL 4362459 (W.D. Pa. Sept. 30, 2024) ................ 21

Thomas v. Anchorage Equal Rts. Comm'n
   220 F.3d 1134 (9th Cir. 2000) ................................................................ 7

Thomas v. Bible,
   983 F.2d 152 (9th Cir. 1993) ................................................................ 4

Tiedemann v. von Blanckensee
   72 F.4th 1001, 1008 (9th Cir. 2023) ................................................ 12

Tingley v. Ferguson
   47 F.4th 1055 (9th Cir. 2022) ........................................... 7, 8, 14

PLTS.' OPP. TO DEFS.' MOTS. TO DISMISS

# TABLE OF AUTHORITIES

2    **CASES (CONT.)**

3   *Trans World Airlines, Inc. v. Hardison*
4       432 U.S. 63 (1977) ............................................................................... 18

5   *Union Gospel Mission of Yakima Wash. v. Ferguson*
      No. 23-2606, 2024 WL 3755954 (9th Cir. Aug. 12, 2024) .......................... 7, 10

6   *United States v. Alexander*
7       106 F.3d 874 (9th Cir. 1997) ........................................................................ 4

8   *Velikonja v. Gonzales*
9       466 F.3d 122 (D.C. Cir. 2006) ..................................................................... 19

  *Vlaming v. W. Point Sch. Bd.*
10      302 Va. 504 (2023) ...................................................................................... 23

11   *Waln v. Dysart Sch. Dist.*
12      54 F.4th 1152 (9th Cir. 2022) ........................................................................ 5

13   *Wash. Env't Council v. Bellon*
14      732 F.3d 1131 (9th Cir. 2013) ..................................................................... 16

15   *Washington v. Daley*
      173 F.3d 1158 (9th Cir. 1999) ..................................................................... 25

16   *Wilderness Soc., Inc. v. Rey*
17      622 F.3d 1251 (9th Cir. 2010) ..................................................................... 15

18   *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*
19      680 F. Supp. 3d 1250 (D. Wyo. 2023) ........................................................ 15

20   *Wilson v. Stocker*
      819 F.2d 943 (10th Cir. 1987) ..................................................................... 12

21   *Wisconsin v. Yoder*
22      406 U.S. 205 (1972) .................................................................................... 21

23   *Wolford v. Lopez*
24      116 F.4th 959 (2024) ............................................................................. 11, 13

25   *Wood v. Fla. Dep't of Educ.*
      No. 4:23-cv-526, 2024 WL 1536749 (N.D. Fla. Apr. 9, 2024) ...................... 23

26   *W. Virginia v. EPA*
27      597 U.S. 697 (2022) .................................................................................... 12

28

# TABLE OF AUTHORITIES

**STATUTES, RULES & REGULATIONS**

42 U.S.C. § 1983 .................................................................... 9, 18

42 U.S.C. §§ 2000e(j) ................................................................ 18

42 U.S.C. § 2000e-2(a)(1) ........................................................... 18

42 U.S.C. § 2000e-3(a) ............................................................... 19

2013 Cal. Stat., ch. 85 (AB 1266) ................................................... 1

2024 Cal. Stat., ch. 95 (AB 1955) ................................................... 3

Cal. Code Regs. tit. 5, § 4670(a) ................................................... 3

Cal. Code Regs. tit. 5, § 4670(a)(3) ............................................... 25

Cal. Code Regs. tit. 5, § 4902 ..................................................... 24

Cal. Educ. Code § 250 .............................................................. 24

Cal. Educ. Code § 24214.5 .......................................................... 10

Cal. Educ. Code § 26812 ............................................................ 10

Cal. Educ. Code § 33031 ............................................................ 24

Cal. Educ. Code § 33316(a) ......................................................... 24

Cal. Educ. Code § 33316(b) ......................................................... 24

Cal. Educ. Code § 33316(c) ......................................................... 24

Cal. Educ. Code § 33316(d) ......................................................... 24

Cal. Educ. Code §§ 33301-33303 ...................................................... 7

Cal. Educ. Code §§ 41330-41344.6 ................................................... 24

Cal. Gov. Code § 11135 ............................................................. 24

Fed. R. Civ. P. 12(b)(1) ....................................................... 1, 5, 6, 9

Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 4, 5, 18

Fed. R. Civ. P. 12(b)(7) ...................................................... 1, 5, 6, 23

Fed. R. Civ. P. 19(a)(1)(A) ........................................................ 5, 24

Fed. R. Civ. P. 19(a)(1)(B) ........................................................ 25

Fed. R. Civ. P. 19(a)(1)(B)(i) ...................................................... 5

# TABLE OF AUTHORITIES

## Statutes, Rules & Regulations (Cont.)

Fed. R. Civ. P. 54(b) ............................................................................... 4

## Other Authorities

2 Karen L. Stevenson & James E. Fitzgerald,
   Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial § 9:161 (2024)............6

7 Charles Alan Wright & Arthur R. Miller,
   Federal Practice & Procedure § 1609 (3d ed. 2024)...........................................6

# INTRODUCTION

All three sets of separately represented Defendants have filed motions to dismiss. All argue that the various Plaintiffs lack standing (Rule 12(b)(1)); the CDE and EUSD further argue that Plaintiffs fail to state claims for relief (Rule 12(b)(6)); and the CDE finally argues that the Parent Plaintiffs failed to join necessary school districts (Rule 12(b)(7)). Many of these arguments have already been briefed by the parties ad nauseum and addressed by the Court multiple times. For the same reasons as before, the Court should reject them. *See* Dkt. No. 42, Prelim. Inj. Ord.; Dkt. No. 114, Ord. re Mot. to Dismiss FAC; Dkt. No. 130, Ord. re Leave to File SAC.[1] As Judge Judith N. Keep explained, this type of regurgitation of the same arguments over and over may be *technically* allowed by the rules, but "it is a waste of judicial resources" and "sloppy at least." *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004). Below, Plaintiffs primarily address any new arguments. With respect to arguments already rejected by the Court, Plaintiffs cite to the Court's prior orders and rest on their prior briefing to support the Court's prior conclusions.

# FACTUAL & PROCEDURAL BACKGROUND

## A.    History of California's Adoption of Parental Exclusion Policies

On January 1, 2014, California law was modified to require schools to allow students to participate in sex-segregated activities based on their gender identity. 2013 Cal. Stat., ch. 85 (AB 1266) (amending Cal. Educ. Code § 221.5(f)). In response, the California Department of Education ("CDE") considered issuing a legal advisory on the rights of transgender students. In January 2016, it published that advisory, divided into two parts: a Legal Advisory and a Frequently Asked Questions page. *See* Dkt. 133, SAC, ¶¶308-10 & Ex.26. At the same time, the FAQ page linked to the California School Boards Association's ("CSBA") model policies (Model BP 5145.3 and AR 5145.3). *See id.*, Ex.26. Both the CDE and CSBA stated that a school must immediately socially gender transition a child upon and based on his or her request and may not

---

[1] Page number citations are to the ECF stamp at the top of the page.

reveal the social transition to the child's parents. *See id.*, Exs.3 & 26.

Around August 2020, the Escondido Union School District ("EUSD") Superintendent received an updated version of AR 5145.3 from the CSBA, and decided to accept the CSBA's recommended policy. *See id.* at ¶¶179-80, & Exs. 2 & 3. This was the first time that EUSD had updated its policies to include the CDE's advice regarding transgender students' privacy rights. *See id.* Believing the guidance was mandatory, the Superintendent adopted the new AR 5145.3. *See id.* at ¶¶251-54. The new AR 5145.3 provided that a student's gender transitioning is "the student's private information" that cannot be revealed to "parents/guardians" absent exigent circumstances. *Id.* at ¶180 & Ex.3, p.18; *see also id.* at ¶¶181-91 & Ex.4.

**B.      History of California's Enforcement of Parental Exclusion Policies**

On July 20, 2023, the Chino Valley Unified School District ("CVUSD") considered whether to adopt BP 5020.1, a Parental Notification Policy requiring schools to notify a child's parents when a child requests school personnel to use opposite-sex facilities or pronouns. Dkt. 133, SAC, ¶317. Shortly thereafter, California Attorney General Bonta ("AG" or "AG Bonta") sued CVUSD, alleging that BP 5020.1 violated both equal protection principles (both constitutional and statutory), and the Privacy Clause of the California Constitution. He also immediately applied for a temporary restraining order. *Id.* at ¶318. In his briefing, analogizing to reproductive rights, AG Bonta explained that minors have "autonomy" privacy rights in their gender identity because "[a] student's gender identity will … implicate the student's control over their personal bodily integrity, [and] serious long-term consequences in determining their life choices…." *Id.* at ¶319 (cleaned up).

Similarly, on September 6, 2023, the Rocklin Unified School District ("RUSD") adopted a Parental Notification Policy. The next day, a teacher filed a complaint with the CDE. After investigating, the CDE issued a Final Investigation Report in which it ordered RUSD to rescind its policy as a violation of student privacy rights. When RUSD refused to comply, the CDE filed suit, citing its authority to order school

districts to comply with the law. *See id.* at ¶¶320-21; Cal. Code Regs. tit. 5, § 4670(a).

Lastly, in July 2024, California enacted a new statute creating Education Code sections which state that (1) teachers "shall not be required to disclose any information related to a pupil's … gender identity … to any other person without the pupil's consent"; and (2) school districts "shall not enact or enforce any policy … that would require an employee or a contractor to disclose any information related to a pupil's … gender identity … to any other person without the pupil's consent[.]" As stated in the statute, these are allegedly codifications of existing law. Dkt. 133, SAC, ¶324; 2024 Cal. Stat., ch. 95 (AB 1955) (creating Cal. Educ. Code §§ 220.1, 220.3, 220.5).

## C. The Plaintiffs: Teachers and Parents

The Plaintiffs are a coalition of teachers and parents seeking class-wide injunctive relief on behalf of all teachers and parents. Plaintiffs Jane Boe and Jane Roe are both full-time teachers employed by EUSD. Plaintiff Lori Ann West is a retired EUSD teacher and current substitute teacher for school districts throughout San Diego County. Plaintiff Elizabeth Mirabelli is an EUSD teacher currently on medical leave. As Christians, both Protestants and Catholics, all have moral/ideological and religious objections to California's Parental Exclusion Policies. Dkt. 133, SAC, ¶¶93-114.

Plaintiffs Mr. and Mrs. Poe, as well as Mr. and Mrs. Doe, are parents of gender incongruent students attending California public schools. Their daughters have begun identifying as boys and have used male pronouns and a male preferred name at school. All four parents have found their school districts directly lying to them about their child's gender presentation based on directives from the CDE. All four parents, as Christians and Catholics, have moral/ideological and religious objections to California's Parental Exclusion Policies. *Id.* at ¶¶115-54.

## LEGAL STANDARD

### A. Law of the Case Doctrine

Under the law of the case doctrine, a court should generally not "reconsider[] an issue that has already been decided *by the same court*, or a higher court in the

identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (emphasis added). "The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion." *Id.* Thus, "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case." *Askins v. DHS*, 899 F.3d 1035, 1042 (9th Cir. 2018); *see* Fed. R. Civ. P. 54(b). "[T]he law-of-the-case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Radu v. Shon*, 62 F.4th 1165, 1176 (9th Cir. 2023) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal marks omitted).

As a guide to discretion, the law of the case doctrine counsels against reopening an issue unless "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *In re Packaged Seafood Prods. Antitrust Litig.*, 635 F. Supp. 3d 1061, 1067 (S.D. Cal. 2022) (quoting *Alexander*, 106 F.3d at 876).

## B. Failure to State a Claim Under Rule 12(b)(6)

To "survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard under Rule 12(b)(6) is quite strict. "Dismissal is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (quoting *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989)). The court "take[s] all factual allegations in the complaint as true and 'construe[s] the pleadings in the light most favorable to the nonmoving party.'" *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175

(9th Cir. 2024) (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009)). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1160 (9th Cir. 2022) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

## C. Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

A complaint over which there is a "lack of subject-matter jurisdiction" is subject to a motion to dismiss. Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction can be challenged either "facially" or "factually," i.e., based on the face of the complaint or upon asking the court to make disputed factual determinations. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 & n.3 (9th Cir. 2014); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack under Rule 12(b)(1) is treated similarly to a pleading challenge under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In contrast, with a factual attack, the court is "free to hear evidence regarding jurisdiction, and to rule on that issue prior to trial, resolving factual disputes where necessary." *Lowe v. Monrovia*, 775 F.2d 998, 1003 (9th Cir. 1985).

## D. Failure to Join Necessary Party Under Rule 12(b)(7)

A party must be joined in an action if "in that [party's] absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). In addition, a party must be joined if it claims an interest in the action and resolving the action in its absence will "as a practical matter impair or impede the [party's] ability to protect the interest." *Id.* at subd. (a)(1)(B)(i). Under a Rule 12(b)(7) motion to dismiss, the court "must determine: (1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in equity and good conscience the suit should be dismissed." *Roberts v. Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020) (quoting *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002)). If the absent party can be joined, then the Rule 12(b)(7) motion "will be treated as a

motion to compel joinder." *See* 2 Karen L. Stevenson & James E. Fitzgerald, Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial § 9:161 (2024); *accord* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1609 (3d ed. 2024) ("the court will order the absentee brought into the action").

# ARGUMENT

## I. PLAINTIFFS HAVE STANDING UNDER RULE 12(B)(1)

### A. Background Legal Principles

"To satisfy the irreducible constitutional minimum for standing, a plaintiff must establish three elements: (1) injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020) ("*Skyline*") (internal marks omitted). The last two factors tend to merge. "[A]lthough traceability and redressability are separate inquiries, they were initially articulated as 'two facets of a single causation requirement.'" *Id.* at 749 n.8 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

"The injury requirement does not force a plaintiff to 'await the consummation of threatened injury to obtain preventive relief.'" *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

"The 'unique standing considerations' in the First Amendment context 'tilt dramatically toward a finding' of standing when a plaintiff brings a pre-enforcement challenge." *Tingley v. Ferguson*, 47 F.4th 1055, 1066-67 (9th Cir. 2022) (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)). In that context, a plaintiff can bring a challenge "when he has alleged (1) an intention to engage in a course of conduct

arguably affected with a constitutional interest, but (2) proscribed by a statute, and (3) there exists a credible threat of prosecution thereunder.'" *Union Gospel Mission of Yakima Wash. v. Ferguson*, No. 23-2606, 2024 WL 3755954, at *2 (9th Cir. Aug. 12, 2024) (unpublished) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014)) (cleaned up). In addressing the third prong, the court further "consider[s]: [a] whether the plaintiff has a 'concrete plan' to violate the law, [b] whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and [c] whether there is a 'history of past prosecution or enforcement.'" *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

**B.    Teacher Plaintiffs Have Standing to Sue the EUSD and the CDE: The Threat of Enforcement Is Not Imaginary or Speculative.**

***1.    Plaintiffs Roe and Boe Have Pre-Enforcement Standing.***

To begin, both EUSD and CDE argue that Teacher Plaintiffs Jane Roe and Jane Boe lack standing due to lack of injury. Dkt. 157-1, pp.8:9-9:12 (EUSD); Dkt. 150-1, p.13:7-27 (CDE).[2] EUSD argues that "[n]either Plaintiffs Roe or Boe have alleged that any student requested they withhold their [transgender] status from their parents or that any parent of their students questioned them of their child's gender or gender non-conforming status." Dkt. 157-1, p.9:1-3. EUSD further notes that Plaintiff Boe did "not even have any transgender students in her class" during the 2023-2024 school year. *Id.* at p.9:4-7. Thus, "[w]hether Plaintiff Roe and Boe will have students who identify as transgender or gender non-conforming is entirely speculative." *Id.* at p.9:11-12. The CDE similarly argues that "[t]he new teacher plaintiffs do not allege that they

---

[2] The CDE Defendants filed two separate motions to dismiss. *See* Dkt. Nos. 149 & 150. However, the motions are practically identical and the separate CDE Defendants are not relevantly distinct. *See* Cal. Educ. Code §§ 33301-33303 (the CDE is administered by the State Board of Education and the State Superintendent); *State Bd. of Educ. v. Honig*, 13 Cal. App. 4th 720, 737 (1993) (State Board is "ultimate governing and policy making body" which can order the State Superintendent to take action). Thus, Plaintiffs treat the motions as essentially a single motion.

have actually had to withhold a pupil's transgender status from parents, nor that they have any pupils this year who are both (1) transgender or gender nonconforming and (2) requesting that their parents not be told." Dkt. 150-1, p.13:23-27.

However, it is irrelevant whether any student directly asked Plaintiffs Roe and Boe to withhold their gender identity from their parents. Both EUSD's and the CDE's Parental Exclusion Policies provide that teachers must obtain affirmative permission from students *before* discussing their gender identity with anybody—including the student's parents. Dkt. 133, SAC, ¶180 & Ex.3, ¶187 & Ex.4, ¶¶313-15 & Ex.26-B. Thus, the baseline under the policy is that Plaintiffs Roe and Boe are required to deceive parents *unless told otherwise*.

Further, Plaintiffs Roe and Boe have previously had transgender students and expect to have such students in the future. Dkt. 133, SAC, ¶¶112-13. And EUSD has denied a religious accommodation to other teachers due to the CDE's mandate. Dkt. 133, SAC, ¶273. In this context, with a "history of past enforcement against parties similarly situated to the plaintiffs," there is standing. *See Calif. Trucking Ass'n v. Bonta*, 996 F.3d 644, 654 (9th Cir. 2021) (quoting *Lopez*, 630 F.3d at 786-87; *accord 303 Creative LLC v. Elenis*, 600 U.S. 570, 583 (2023) ("Colorado has a history of past enforcement against nearly identical conduct"). The fear of enforcement, chilling Plaintiffs' rights, is not "imaginary or speculative," *Susan B. Anthony List*, 573 U.S. at 165 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)), especially in light of "[t]he unique standing considerations in the First Amendment context." *Tingley*, 47 F.4th at 1066 (internal marks omitted).[3]

### 2. *Plaintiffs Mirabelli and West Have Pre-Enforcement Standing*

Beyond Teacher Plaintiffs Roe and Boe, the CDE further argues that Teacher Plaintiffs Lori West and Elizabeth Mirabelli lack standing to bring their 42 U.S.C.

---

[3] Although there is no need to amend, Plaintiffs Roe's and Boe's forthcoming discovery responses make clear that they do indeed have gender diverse students in their classes for the 2024-2025 school year.

§ 1983 claims against it. Dkt. 150-1, p.14:1-17. Because the CDE is protected by sovereign immunity, Plaintiffs can only seek prospective injunctive and declaratory relief against it. This argument does not address Plaintiffs Mirabelli and West's standing to sue EUSD—whether under Title VII or 42 U.S.C. § 1983—claims for which both Mirabelli and West seek damages. *See* Dkt. 133, SAC, Prayer ¶E.

First, "the Supreme Court has long recognized that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc). An individualized standing inquiry is only needed when the plaintiff seeks "money damages." *Id.* (collecting cases). Thus, if Plaintiffs Roe and Boe have standing to sue the CDE (which they do), then an inquiry into whether Plaintiffs Mirabelli and West also have standing to sue the CDE is irrelevant. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) ("If at least one plaintiff has standing, the suit may proceed."); *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1120 (9th Cir. 2022) ("The Attorney General's challenge fails because the third seller, whose standing he does not contest, has standing to seek declaratory relief.").

Second, to make this argument, the CDE does not cite to the complaint, but rather declarations submitted by Plaintiffs Mirabelli and West which note that neither one is currently teaching at EUSD, for various reasons. Dkt. 150-1, p.14:1-17 (citing Dkt. 137-6, Mirabelli Decl., ¶49; Dkt. 137-7, West Decl., ¶2). However, the CDE is expressly bringing a facial challenge, Dkt. 150-1, p.9:22-23, so the Court should ignore the cited evidence. *See Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In any event, even looking at those declarations, they make clear that Plaintiffs Mirabelli and West need at least declaratory relief because they intend to keep teaching in the California public education system as soon as they are able. *See* Dkt. 137-6, Mirabelli Decl., ¶49; Dkt. 137-7, West Decl., ¶2.[4]

---

[4] With respect to Plaintiff West, she is not currently working as a substitute teacher because she cannot do so until 180 calendar days after her retirement. *See* Cal. Educ.

**C. Teacher Plaintiffs Have Standing to Sue the AG: Plaintiffs Have Adequately Pleaded that the AG Believes Parental Exclusion Is Prescribed by California Law.**

As stated above, standing requires satisfaction of three elements: "(1) injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Skyline*, 968 F.3d at 746. In the First Amendment pre-enforcement context, the plaintiff must show "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but (2) proscribed by a statute, and (3) there exists a credible threat of prosecution thereunder." *Union Gospel Mission*, 2024 WL 3755954, at *2 (cleaned up) (quoting *Susan B. Anthony List*, 573 U.S. at 160).

The AG argues that there is no credible threat of enforcement (i.e., the Teacher Plaintiffs' injuries cannot be traced to him) because: (1) the AG has disavowed an enforcement action against EUSD, Dkt. 156-1, pp.19:19-20:18; and (2) there is not a history of past enforcement because the *Bonta v. CVUSD* action is distinguishable. Dkt. 156-1, pp.20:19-22:12. Both arguments fail.

### 1. *AG Bonta's Disavowal Does Not Moot This Action.*

First, AG Bonta's disavowal is ambiguous. The referenced disavowal occurred at the April 29, 2024, hearing when Attorney Soichet stated: "[W]e're ready to make—to disavow any enforcement action against EUSD for any actions that EUSD takes in compliance with this Court's order." Dkt. 111, pp.15:25-16:3. But Attorney Soichet later clarified that the AG won't take any enforcement action "if they continue to do what they're doing pursuant to [the Court's] order." *Id.*, p.19:17-25. And as the Court noted following that hearing, EUSD has not rescinded its Parental Exclusion Policies—it has simply been enjoined from applying them *against Plaintiffs Mirabelli and West. See* Dkt. 114, Ord. re Mot. to Dismiss FAC, p.6:13-18 (citing Dkt. 65-1, ¶3:

Code §§ 26812, 24214.5.

Declaration of EUSD Superintendent testifying that AG threatened enforcement action if EUSD applied reasoning of the Court's order to other teachers).[5]

To the extent the AG seeks to expand its disavowal to all EUSD teachers (or simply expand it to Plaintiffs Roe and Boe), the Court should not countenance this. It is well recognized that if the "Defendant disavows enforcement of the law in the relevant respect, Plaintiffs' challenge in this regard may become moot." *Wolford v. Lopez*, 116 F.4th 959, 992 (2024); *accord Kentucky v. Yellen*, 54 F.4th 325, 340 (6th Cir. 2022) (pre-enforcement action is moot when "a prosecutor credibly disavows that he will enforce a challenged statute"). But "a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., (TOC) Inc.*, 528 U.S. 167, 189 (2000)). "The 'heavy burden' lies with the party asserting mootness," including "a government entity that voluntarily ceases allegedly illegal conduct." *Bell v. Boise*, 709 F.3d 890, 898-99 (9th Cir. 2013) (quoting *Friends of the Earth*, 528 U.S. at 189); *accord Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1173-75 & n.4 (9th Cir. 2009).

Thus, for a disavowal to be adequate, "the government's disavowal must be more than a mere litigation position." *Lopez*, 630 F.3d at 788. And the government has not met its burden where it "remains practically and legally free to return to its old ways." *Fikre v. FBI*, 35 F.4th 762, 772 (9th Cir. 2022) (internal marks omitted). Perhaps most importantly, where the "injury stems from a system-wide policy," courts do not "do not require [a] 'whack-a-mole' approach to mootness." *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008 (9th Cir. 2023). Merely "dropp[ing] charges"

---

[5] "In that conversation, the lawyers for the Attorney General told me if the District did not protect the gender identity of students when the student requested it, even to the extent of not telling the parents their student was contemplating changing their gender identity, the Attorney General's Office would consider action against the District for discrimination on behalf of the student or students. They said they had determined the Order of this Court was very narrow and applied only to enforcing the Policy and Regulation against the two Plaintiffs in this case."

against a specific party is inadequate. *Lopez*, 630 F.3d at 788. the government must unequivocally agree with the plaintiff's interpretation of the law. *W. Virginia v. EPA*, 597 U.S. 697, 720 (2022); *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007).[6]

Here, Plaintiffs seek declaratory (and injunctive) relief that any policy whereby children are socially transitioned at their schools without parental consent or knowledge violates the U.S. Constitution and FERPA. *See* Dkt. 133, Prayer ¶¶B, C. Until and unless this is not happening at any school in California, or until and unless the AG unequivocally states that he agrees with Plaintiffs, their claims are not mooted by a disavowal of enforcement against them specifically.

### 2. *The CVUSD Litigation Is Not Relevantly Distinguishable.*

Second, AG Bonta argues that the *Bonta v. CVUSD* action is not relevant evidence of a past history of enforcement because it is distinguishable from this action. Dkt. 156-1, pp.18:7-23. The AG implies that there is a relevant distinction between why EUSD's and CDE's Parental Exclusion Policies are legally *required*, but why CVUSD's Parental Notification Policies are legally *prohibited*, but he never explicitly states what that would be. *See id.*

At the standing stage, the Court may not go "down th[e] rabbit hole" of making a merits determination of what California law actually requires—"an inquiry that [would] unavoidably tangle standing with the merits." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489 (9th Cir. 2024). Rather, what matters is "whether [the plaintiff] plausibly alleged … the Attorney General's interpretation of [the law]." *Id.*; *accord Wolford*, 116 F.4th at 991. Here, Plaintiffs pleaded that the AG Bonta interprets the Privacy Clause of the California Constitution to preclude school staff from informing

---

[6] *See also Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991) (disavowing enforcement against specific plaintiffs as "administratively inefficient" was inadequate); *Wilson v. Stocker*, 819 F.2d 943, 947 n.3 (10th Cir. 1987) (disavowal mentioning only some but not all of the plaintiff's desired activity is insufficient).

parents about the school's socially transitioning of their child absent affirmative consent of the child. *See* Dkt. 133, ¶¶2-3, 317-19, Ex.38, p.3, Ex. 39, pp.2-3. As stated above, he has not disavowed that he believes as much, and even if he had never filed the *Bonta v. CVUSD* action, it would remain plausible that such is his interpretation of the Privacy Clause.[7]

### D. Parent Plaintiffs Have Standing to Sue the CDE and AG

Both the CDE and the AG next argue that Parent Plaintiffs John and Jane Poe (Fresno County) and John and Jane Doe (Los Angeles County) lack standing to seek declaratory and injunctive relief. *See* Dkt. 150-1, pp.11:8-13:6 (CDE); Dkt. 156-1, pp.22:13-27:2 (AG). Both the CDE and AG argue lack of injury and lack of causation (traceability/redressability), and both arguments fail.

#### 1. *Parent Plaintiffs Have Pleaded Actual Injury.*

The AG begins by arguing that Parent Plaintiffs have no constitutional right to know what is happening behind school doors—that their constitutional rights are not implicated at all. Dkt. 156-1, pp.22:22-24:7 (citing *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005) ("*Fields I*")). This argument ignores this Court's holding that a Parental Exclusion Policy is "foreign to federal constitutional and statutory law," Dkt. 42, Prelim. Inj. Ord., p.18:3, as well as the Ninth Circuit's admonition that "[m]aking intimate decisions and controlling the state's dissemination

---

[7] The AG cites the July 10, 2024 hearing transcript for the proposition that the Court "recognized a difference" between Parental Exclusion and Parental Notification. *See* Dkt. 156-1, p.18:16-18 (citing Dkt. No. 143, pp.5-7, 10, 17). The cited discussion concerned how free speech jurisprudence applies to forbidding teachers to speak versus compelling them to speak, and therefore is inapposite. Rather, it seems that the AG is attempting to imply in its briefing that Parental Notification Policies implicate equal protection concerns in a way that Parental Exclusion Policies do not. Whether or not that is true is irrelevant to whether both *also* implicate a potential violation of the Privacy Clause. *See* Dkt. 98-1 at pp.91:10-94:24, 135:21-137:23. This is the only possible distinction since Parental Notification policies generally contain an exemption if the school has specific information that providing notice to parents would lead to harm to a child. *See* Dkt. 36 at p.22, ¶69.

of information regarding intimate matters are two entirely different subjects," and schools may "not interfere with the right of the parents to make intimate decisions." *Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1189 (9th Cir. 2006) ("*Fields II*").

In any event, this type of cart-before-the-horse reasoning has been rejected by the Ninth Circuit. *Tingley*, 47 F.4th at 1067 ("standing to bring First Amendment claims, however, 'in no way depends on the merits' of those claims"); *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 62 (9th Cir. 2024). ("We held that, although the plaintiff's claims were ultimately without merit, he had standing to seek injunctive relief."). Rather, "[f]or standing purposes, [the court must] accept as valid the merits of [plaintiffs'] legal claims." *FEC v. Cruz*, 596 U.S. 289, 298 (2022); *accord Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023) (standing "depend[s] on the relief that federal courts are *capable* of granting").

Next, both the AG and CDE argue that Parent Plaintiffs are suffering no injury because they have already learned of their child's gender incongruence. *See* Dkt. 156-1, p.24:8-26; Dkt. 150-1, pp.11:16-12:9. As an initial matter, if Parent Plaintiffs did not (yet) know their child was gender incongruent (for example, the Poe Family's younger children), the AG and CDE would argue that would not have standing because there would be no risk of harm to them. *See* Mot. to Dismiss, *Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:23-cv-1941, ECF No. 22-1 at pp.17-18 (E.D. Cal. Oct. 7, 2024) (citing *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 626 (4th Cir. 2023)); *see also Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 503 (7th Cir. 2024). Thus, under the AG's and CDE's reasoning, parents could *never* have standing in cases challenging dangerous Parental Exclusion Policies.

In addition, this argument ignores the actually pleaded injuries. Parent Plaintiffs plead that they have the right to determine how their child's gender incongruence *is addressed*. Dkt. 133, SAC, ¶¶170, 469-71. That means Parent Plaintiffs should get to decide whether it is their child's best interest to allow the school to socially transition their child. *See* Dkt. 133, SAC, ¶173. Parents do not merely have the right "to impart

moral and religious direction to their children on issues of gender." Dkt. 156-1, p.24:21-22. Lastly, Parent Plaintiffs' injury is broader than just not being told about, or consenting to, their children's schools' decision to socially transition their children. Rather, since their children's schools have repeatedly lied to them, Dkt. 133, ¶¶121-25, 142-54, Plaintiffs' injury includes their "inability to rely on the validity of the information" provided. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018); *see also Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258-59 (9th Cir. 2010) (discussing history of "informational injury" doctrine).[8]

Presently, Doe Parents are not sure whether their child is identifying as transgender. Dkt. 133, ¶¶151-54. But even if she has currently desisted, Plaintiffs have standing to remedy the informational injury of their schools lying to them. *See Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 680 F. Supp. 3d 1250, 1270 (D. Wyo. 2023) ("Defendants' argument the case is moot is without merit…. The Policy's inapplicability is the result of a third party's request [the child], which could change at any time, triggering the Policy.").

## 2. *Parent Plaintiffs Have Pleaded Causation.*

Next, both the AG and the CDE argue that there is inadequate traceability and redressability between the Parent Plaintiffs' injuries and their actions. Dkt. 156-1, pp.25:1-27:2 (AG); Dkt. 150-1, pp.12:10-13:2 (CDE). With respect to traceability, "[a] plaintiff must show that its 'injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Skyline*, 968 F.3d at 748 (quoting *Mendia v. Garcia*, 768 F.3d 1009, 1012

---

[8] The CDE also argues that Plaintiffs fail to allege that Child Doe's school was using her preferred name/pronouns, that Child Poe is not currently attending public school, and that neither child's school "had any policies in place regarding the disclosure or nondisclosure of pupil gender identity to parents." *See* Dkt. 150-1, pp.11:27-12:4. The Doe Parents do plead that they knew that the school was using their child's preferred pronouns, Dkt. 133, SAC, ¶147; the Poe Parents do plead that they want to return their child to public schools, *id.*, ¶126; and all schools stated that their policy is to follow the CDE's mandatory FAQ page. *Id.*, ¶¶125, 143, 148.

(9th Cir. 2014)) (some internal marks omitted). "Purely 'self-inflicted injuries' are insufficient," *id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415-18 (2013)), but "[w]e do not … 'require the defendant's action to be the sole source of injury.'" *Id.* (quoting *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013)).

"To establish redressability, a plaintiff must show that 'it is likely, as opposed to merely speculative, that its injury will be redressed by a favorable decision.'" *Skyline*, 968 F.3d at 749 (quoting *Friends of the Earth*, 528 U.S. at 181) (brackets omitted). "It is not necessary to show 'a guarantee that the plaintiff's injuries will be redressed." *Id.* (quoting *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012)) (brackets omitted). "[R]edressability is lacking 'if the injury complained of is 'the result of the independent action of some third party not before the court.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)) (brackets omitted). "But a plaintiff *does* have standing when the defendant's actions produce injury through their 'determinative or coercive effect upon the action of someone else.'" *Id.* (quoting *Bennett*, 520 U.S. at 169).

The AG begins by pointing the finger at the CDE, stating that the "factual allegations specific to the Poe and Doe families" have their schools referencing the CDE's FAQ page. Dkt. 156-1, pp.25:7-26:6. But the Court cannot limit itself to those paragraphs, but "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (quoting *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000))—including the allegations regarding the AG's enforcement of the Privacy Clause of the California Constitution. *See* Dkt. 133, SAC, ¶¶2-3, 317-19, Ex.38, p.3, Ex. 39, pp.2-3. Unsurprisingly, the CDE makes the flip-side of same argument. According to the CDE, "[t]he parent plaintiffs seek to invalidate and restrain enforcement of the CDE's FAQs and Legal Opinion," but "this requested relief will not redress the alleged injury to these plaintiffs, as the anti-discrimination laws, upon which the FAQ relies [and which the AG enforces], will remain in place." Dkt. 150-1, p.12:20-24.

On traceability, "there is a direct chain of causation" here. *Skyline*, 968 F.3d at 748. The CDE first interpreted the Privacy Clause to require Parental Exclusion Policies and stated as much in its FAQ page. Relying on that interpretation, the AG sued a school district for not complying with the Privacy Clause. And relying on both the FAQ page and the lawsuit, school districts statewide have adopted Parental Exclusion Policies. *See* Dkt. 133, SAC, ¶¶308-27. And on redressability, "we need not be *certain* how [school districts] would respond" so long as a "predictable effect of an order granting the relief [plaintiffs] seek[] is that at least one [school district] would be willing" not to apply Parental Exclusion Policies. *Skyline*, 968 F.3d at 750 (emphasis in original). Here, schools always merely point to the AG and CDE. *See* Dkt. 133, ¶¶125, 143, 148. The only thing that these arguments establish is that to slay the Lernaean Hydra, both the CDE and the AG must be parties to this litigation.[9]

### E. The AG Is Not Protected by Sovereign Immunity

The AG lastly argues that he is immune from suit under sovereign immunity. Dkt. 156-1, pp.27:3-30:16. Of course, this Court rejected this argument previously. *See* Dkt. 114, Ord. re Mot. to Dismiss FAC, p.6:2-13 (citing *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943-44 (9th Cir. 2013)). The sovereign immunity analysis is essentially the same as the standing analysis. "The question of whether there is the requisite 'connection' between the sued official and the challenged law implicates an analysis that is 'closely related—indeed overlapping'— with the traceability and redressability inquiry." *Mecinas*, 30 F.4th at 903 (quoting *Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (per curiam)). Thus, if there is standing here (which there is), then sovereign immunity provides no additional protection.

---

[9] The AG also argues that there is no reason to believe that he would sue the Parent Plaintiffs' school districts because the *Bonta v. CVUSD* action only dealt with a Parental Notification Policy, not a Parental Exclusion Policy. *See* Dkt. 156-1, pp.26:16-27:2. As stated above, this purported distinction is not relevant. *See* § I.C.2.

The AG spends most of his briefing on this point distinguishing the facts of *Harris* and *Mecinas*. Dkt. 156-1, pp.28:12-29:6. But as this Court recognized, *Harris* practically recognized that the AG is never protected from sovereign immunity because of his duty under the California Constitution to enforce all laws. *See Harris*, 729 F.3d at 943-44; *accord Foothills Christian Church v. Johnson*, No. 22-cv-950, 2023 WL 4042580, at \*11-12 (S.D. Cal. June 15, 2023); *Mitchell v. Brown*, No. 2:14-cv-2993, 2015 WL 3993149, at \*4 (E.D. Cal. June 30, 2015). In any event, for the reasons stated above, the *Bonta v. CVUSD* action—and the AG's amicus briefs, *see* Dkt. 98-1 at pp.135-37—more than create an adequate "threatened enforcement by the Attorney General." *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam).

## II. Plaintiffs Have Pleaded Adequate Claims, Rule 12(b)(6)

Plaintiffs have brought 42 U.S.C. § 1983 claims alleging violations of the Free Speech Clause, the Free Exercise Clause, and Substantive Due Process. Plaintiff West has also brought two Title VII claims. The CDE and EUSD both argue that none of these claims are adequately pleaded. *See* Dkt. 150-1, pp.14:18-30:10 (CDE); Dkt. 157-1, pp.9:13-24:8 (EUSD). The Court should reject these arguments as it has done before.

### A. Plaintiff West's Failure to Accommodate Claim Is Well Pleaded

Title VII prohibits an employer from discriminating against an employee by failing to reasonably accommodate the employee's religious practices or observances. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1). In other words, it is "unlawful 'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'" *Opuku-Boateng v. California*, 95 F.3d 1461, 1467 (9th Cir. 1996) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)). To establish a prima facie claim for failure to accommodate, a plaintiff must present evidence that: "(1) [s]he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer threatened [her] with or subjected [her] to discriminatory treatment, including

discharge, because of [her] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

EUSD argues that Plaintiff West withdrew her request for an accommodation from having to deceive parents. According to EUSD, Plaintiff West solely requested that if a parent directly asks her whether their child is transgender, that she be allowed to refer that parent to EUSD administration. Dkt. 157-1, pp.10:12-11:5 (citing Dkt. 133, SAC, Exs.8-9). That is not a fair reading of the Complaint. The cited letters sought clarification of what EUSD was offering. Plaintiff West has always maintained a request to not deceive parents. Dkt. 133, SAC, ¶¶241-78, 291-93 & Ex.28.

### B. Plaintiff West's Retaliation Claim Is Adequately Pleaded.

Title VII also prohibits an employer from retaliating against an employee for seeking a religious accommodation. 42 U.S.C. § 2000e-3(a). In response, EUSD argues: (1) that some of the retaliation by colleagues was inadequately severe, and (2) that the placement on leave was not plausibly causally connected to protected activity. Dkt. 157-1, pp.11:6-12:18.

First, with respect to EUSD's placement of Plaintiff West on leave, of course, "placement on administrative leave can constitute an adverse employment action." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013); *accord Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006) (per curiam). And the leave was directly triggered by teachers and students filing patently frivolous and pretextual complaints against Plaintiff West. *See* Dkt. 133, SAC, ¶¶20, 286.[10] EUSD argues that these complaints broke any chain of causation because it had to investigate them. *See* Dkt. 157-1, p.12:12-18. But there was no reason whatsoever that EUSD had to put Plaintiff West on

---

[10] With respect to the pleading that the complaints were pretextual, "very little evidence is necessary to raise a genuine issue of fact regarding… motive; any indication of discriminatory motive may suffice," *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (cleaned up), and the causal link between requesting an accommodation and retaliation can be inferred *solely* from temporal proximity. *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).

administrative leave. That was EUSD allowing itself to be the bludgeon wielded by bad-faith actors filing pretextual complaints against Plaintiff West.

Second, with respect to the colleague harassment, EUSD's refusal to do anything to protect her from co-worker harassment, retaliation, or bullying is also adverse action. Under both California and federal law, "[w]orkplace harassment … may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for … retaliation cases." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 92 (2017) (ellipses in original); *see Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) ("[C]o-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim."); *Berger-Rothberg v. New York*, 803 F. Supp. 2d 155, 164-65 (E.D.N.Y. 2011); *Small v. N.Y. City Dep't of Educ.*, 650 F. Supp. 3d 89, 101-02 (S.D.N.Y. 2023). Indeed, just this past summer, the Supreme Court stated unequivocally that "Title VII would be at war with itself" if co-worker "bias or hostility to a religious practice or a religious accommodation" was tolerated. *Groff v. DeJoy*, 600 U.S. 447, 472 (2023).[11]

## C. Plaintiffs' Constitutional Claims Are Adequately Pleaded.

Both EUSD and the CDE next argue that Plaintiffs' constitutional claims are inadequately pleaded. *See* Dkt. 157-1, pp.12:19-24:8 (EUSD); Dkt. 150-1, pp.14:18-27:28 (CDE). These arguments are largely cut-and-paste from prior briefing, *see* Dkt. 17 (EUSD), Dkt. 53 (CDE), and have already been rejected by the Court. *See* Dkt. Nos. 42, 114. They warrant only a very minimal response.

### 1. The Parental Rights Claims Are Adequately Pleaded.

First, with respect to Substantive Due Process, as noted by this Court last year,

---

[11] EUSD also argues that although Plaintiff West states that Rincon Middle School Principal Steve White was apprised of the retaliation, Plaintiff fails to allege with particularity when and how he was apprised of it. Dkt. 157-1, p.12:1-4 (citing Dkt. 133, SAC, ¶430). But without any citation saying that Plaintiff West needed to include those specific details—which could be easily added—there is no need to amend.

"elevating a child's gender-related choices to that of paramount importance, while excluding a parent from knowing of, or participating in, that kind of choice, is as foreign to federal constitutional and statutory law as it is medically unwise." Dkt. 42, Prelim. Inj. Ord., p.18:1-4. And as the Ninth Circuit has cautioned, it is irrelevant that these kinds of decisions are being made behind the schoolhouse door because "[m]aking intimate decisions and controlling the state's dissemination of information regarding intimate matters are two entirely different subjects," and schools may "not interfere with the right of the parents to make intimate decisions." *Fields II*, 447 F.3d at 1191.

The CDE argues that the parents are not injured because they do not have the right to know whether their schools are socially transitioning their children (let alone to decide the issue), that they know already know that their children struggle with gender incongruence, and that they retain the ability to tell their children their own views on gender theory. *See* Dkt. 150-1, pp.25:16-25, 27:21-28. As explained by this Court, that is simply not the case. Dkt. 42, Prelim. Inj. Ord., pp.14:26-18:4. There is nothing new cited by either EUSD or the CDE warranting a further response. In contrast, the law continues to develop in Plaintiffs' favor. *See, e.g.*, *Tatel v. Mt. Lebanon Sch. Dist.*, No. 2:22-cv-837, 2024 WL 4362459, at *32 (W.D. Pa. Sept. 30, 2024) ("*Tatel III*").

### 2. The Free Exercise Claims Are Adequately Pleaded.

Next, with respect to the Free Exercise of Religion, strict scrutiny is triggered: (1) because of the violation of parental rights to direct the religious upbringing of children, *Wisconsin v. Yoder*, 406 U.S. 205, 231 (1972); (2) because "an undefined *ad hoc* determination of whether the parent receiving gender-related information has a legitimate reason to be informed … is the very definition of a discretionary exemption," Dkt. 42, Prelim. Inj. Ord., p.27:1-3; and (3) because "[a] government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" Dkt. 42, Prelim. Inj. Ord., p.25:21-23.

Here, although EUSD's argument is a complete rehash, the CDE makes newly

nuanced arguments. *See* Dkt. 150-1, pp.21:10-27:19. First, the CDE argues that the FAQs do not burden Plaintiffs' religion because they are non-binding—as evidenced by the CDE citing solely equal protection provisions in its prosecution against RUSD. Dkt. 150-1, pp.21:13-25:27. This is both misleading and circular. It is misleading because, like the AG, the CDE believes that parental notification violates *both* equal protection principles and the Privacy Clause of the California Constitution. The CDE did not rest solely on equal protection principles as it now implies. *Compare* Dkt. 150-1, p.23:22-24, *with* Dkt. 133, SAC ¶¶320-21 (citing Dkt. 112 at pp.28, 39, RUSD Complaint discussing privacy interests). Further, it is circular because if the CDE is suing school districts for violating provisions of California law by notifying parents of their child's gender congruence, it does not matter which specific aspect of California law is allegedly implicated—Plaintiffs' religion is still burdened.

Second, the CDE argues that even if strict scrutiny would normally be triggered, in the government employee context (i.e., for the teachers only, not the parents), the review is limited to *Pickering* balancing. Dkt. 150-1, pp.24:21-25:15 (citing *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 649-50 (9th Cir. 2006); *Lumpkin v. Brown*, 109 F.3d 1498, 1501 (9th Cir. 1997)). This is not quite right. The Supreme Court interestingly implied that *Pickering* balancing does not apply in the Free Exercise context. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 545 (2022) (Thomas, J., concurring). Some lower courts have applied *Pickering* balancing in the Free Exercise context, while others have fashioned an intermediate scrutiny standard. *Fraternal Ord. of Police Newark Lodge No. 12 v. Newark*, 170 F.3d 359, 366 n.7 (3d Cir. 1999) (Alito, J.).

But the Ninth Circuit has been silent. In *Berry* and *Lumpkin*, all the court did was refuse to apply a standard more stringent than *Pickering* in a *Free Speech case* under the plaintiff's argument that religious speech should receive more protection than secular speech. *Berry*, 447 F.3d at 649-50; *Lumpkin*, 109 F.3d at 1501; *accord Kennedy v. Bremerton Sch. Dist.*, 443 F. Supp. 3d 1223, 1233 n.1 (W.D. Wash. 2020) (declining to apply *Pickering* to the Free Exercise claim). More recently, the Ninth Circuit has had no

problem applying strict scrutiny to a Free Exercise claim brought by government employees. *See Bacon v. Woodward*, 104 F.4th 744, 750-53 (9th Cir. 2024). Thus, until there is more guidance from the Ninth Circuit or the Supreme Court, the traditional strict scrutiny analysis should apply.

### 3. *The Free Speech Claims Are Adequately Pleaded.*

With respect to the Teacher Plaintiffs' free speech claims, Plaintiffs make two arguments. First, Plaintiffs argue that under the traditional *Connick-Pickering-Garcetti* framework, their speech about gender identity is protected. *See Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 563-74 (2023). Second, Plaintiffs argue that they cannot be forced to violate the law, either by violating parents' Substantive Due Process rights or FERPA. *See Janus v. AFSCME, Council 31*, 585 U.S. 878, 908 (2018) ("the employer may insist that the employee deliver any *lawful* message" (emphasis added)).

Previously, the Court was skeptical of the first argument, but accepted the second one. *See* Dkt. 42, Prelim. Inj. Ord., p.23:7-14. In response, the CDE argues that Parental Rights are not implicated and that Plaintiffs' have no traditional compelled speech claim because all of the speech at issue is government speech. Dkt. 150-1, pp.14:18-21:9. There is nothing new here, and the CDE completely ignores Plaintiffs' FERPA argument. Thus, there is no need for further briefing, and with respect to Plaintiffs' first argument, Plaintiffs incorporate the preliminary injunction briefing by reference. As explained therein, the case law continues to develop in Plaintiffs' favor. *E.g.*, *Geraghty v. Jackson Loc. Sch. Dist.*, No. 5:22-cv-2237, 2024 WL 3758499, at *11 (N.D. Ohio Aug. 12, 2024) (teachers cannot be required to use preferred pronouns); *Wood v. Fla. Dep't of Educ.*, No. 4:23-cv-526, 2024 WL 1536749, at *9-17 (N.D. Fla. Apr. 9, 2024) (teachers cannot be prohibited from using preferred pronouns).

## III.  ALL NECESSARY PARTIES HAVE BEEN JOINED, RULE 12(B)(7)

Lastly, the CDE argues that the Poe Family's and the Doe Family's local school districts are necessary parties and so should be joined to this action. Dkt. 150-1, pp.28:1-30:10. There is no need to order their joinder.

**A.    Complete Relief Can Be Granted Without Joining School Districts.**

First, according to the CDE, the school districts are necessary because without them "the court cannot accord complete relief among existing parties." Dkt. 150-1, pp.28:22-29:18 (citing Fed. R. Civ. P. 19(a)(1)(A)). Without citing anything in the Complaint or any evidence, the CDE argues that "plaintiffs arbitrarily ignore the fact that these districts are integral in enforcing or revising the disputed policies," *id.*, and that even if the CDE were enjoined, "the local school districts could continue to implement their own contested policies." *Id.*

This misrepresents the CDE's role in the California education system. According to the California Supreme Court, "[l]ocal districts are the State's agents for local operation of the common school system, and the State's ultimate responsibility for public education cannot be delegated to any other entity." *Butt v. California*, 4 Cal. 4th 668, 681 (1992) (collecting historical cases). "The State itself bears the ultimate authority and responsibility to ensure that its district-based system of common schools provides basic equality of educational opportunity." *Id.* at 685. Because the public education system is a matter of statewide concern, the CDE is tasked with providing training to local school officials, Cal. Educ. Code § 33316(d), and with apportioning and distributing state funds to local school districts. *See id.* at §§ 33316(a), (c), 41330-41344.6. The CDE is also tasked with issuing regulations to implement various provisions of the California Education Code. *See id.* at §§ 33031, 33316(b).

In distributing state education funds, the CDE may not disperse them if the local agency is violating *any aspect* of California law. Cal. Educ. Code § 250; Cal. Gov. Code § 11135.[12] Moreover, a school district may not choose to forgo state education funds in exchange for not complying with California law. If a school district does so, the CDE

---

[12] *See also* Cal. Code Regs. tit. 5, § 4902 ("[T]he Superintendent of Public Instruction is responsible for providing leadership to local agencies to ensure that the requirements of the following nondiscrimination laws and their related regulations are met in educational programs that receive or benefit from state or federal financial assistance and are under the jurisdiction of the State Board of Education[.]")

will sue them and seek an order compelling compliance with its directives. *See* Dkt. 133, SAC, ¶¶320-21 (citing Cal. Code Regs. tit. 5, § 4670(a)(3) as basis for lawsuit against RUSD). Thus, there is no need to join local school districts. *See, e.g.*, *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, No. 2:13-cv-889, 2016 WL 5661775, at *7 (E.D. Cal. Sept. 30, 2016) (denying CDE's motion for summary judgment based on Rule 19, citing CDE's independent obligation to ensure local compliance with IDEA using appropriate enforcement mechanisms); *Emma C. v. Eastin*, 985 F. Supp. 940, 948 (N.D. Cal. 1997) (complaint adequately alleged that CDE "failed to monitor [the district's] compliance with state and federal laws").

## B.    The School Districts Have No Legally Cognizable Interest.

Second, the CDE argues, the school districts are necessary because they have an interest in this case. Dkt. 150-1, pp.29:19-30:10 (citing Fed. R. Civ. P. 19(a)(1)(B)). According to the CDE, the school districts "have a direct and substantial interest in the litigation because the outcome will impact whether and how they can use … the FAQs." *Id*. In other words, all the CDE argues is that if local school districts favor Parental Exclusion Policies, then they have an interest in fighting to defeat judicial precedent undermining it. *Id*. To begin, only "legally cognizable interests" are relevant—not a mere vaguely described interest in the subject matter of this case. *See Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013). Further, "[a]s a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Id*. (quoting *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999)). Here, there is no reason to believe that the AG and CDE will not be able to adequately defend the state's Parental Exclusion Policies.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the various Defendants' motions to dismiss in full.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: October 21, 2024          By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-WVG

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **Plaintiffs' Opposition to Defendants' Motions to Dismiss.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell W. Spence, Supervising Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-mail: Darrell.Spence@doj.ca.gov
**Attorneys for Attorney General Ron Bonta**

Len Garfinkel, Esq., General Counsel
Bruce Yonehiro, Assistant General Counsel
Paul Gant, Assistant General Counsel
Christopher Mandarano, Esq., Deputy Gen. Counsel
Virginia Cale, Deputy General Counsel
California Department of Education
1430 "N" Street, Suite 5319
Sacramento, CA 95814
Tel: 916-319-0860; Fax: 916-322-2549
E-Mail: lgarfinkel@cde.ca.gov
E-Mail: byonehiro@cde.ca.gov
E-Mail: pgant@cde.ca.gov
E-Mail: cmandarano@cde.ca.gov
E-Mail: vcale@cde.ca.gov
**Attorneys for State Defendants**

Daniel R. Shinoff, Esq.
Gil Abed, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: Dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: gabed@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
**Attorneys for EUSD Defendants**

Emmanuelle Soichet, Esq.
Kevin L. Quade, Esq.
Deputy Attorney General
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov
**Attorneys for Governor Gavin Newsom and Attorney General Ron Bonta**

___X___ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

___X___ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on October 21, 2024, at Rancho Santa Fe, California.

_____
Kathy Denworth