ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
Jack M. Sleeth Jr, Esq. (SBN 108638)
jsleeth@as7law.com
Lauren J. Cambronero, Esq. (SBN 336555)
lcamberonero@as7law.com
3636 Fourth Avenue, Suite 200
San Diego, California 92103
Telephone: 619-232-3122
Facsimile: 619-232-3264

Attorneys for EUSD Defendants

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.<br><br>Defendants. | Case No.: 23CV0768 BEN WVG<br>Judge: Hon. Roget T. Benitez<br><br>**EUSD DEFENDANTS' OPPOSITION TO PLAINTIFFS' CLASS-WIDE MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Date: November 4, 2024**<br>**Time: 10:30 a.m.**<br>**Courtroom: 5A** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

# Table of Contents

I. INTRODUCTION ..................................................................................5

II. PLAINTIFFS' REQUEST FOR CLASS-WIDE PRELIMINARY INJUNCTION IS PREMATURE ...........................................................................................8

III. PLAINTIFFS' REQUEST FOR CLASS-WIDE PRELIMINARY INJUNCTION IS OVERBROAD ........................................................................................9

IV. LEGAL STANDARD FOR PRELIMINARY INJUNCTION .......................10

V. ARGUMENT......................................................................................11

    A. TEACHER PLAINTIFFS' HAVE NOT DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS1

        1. The Policy Does Not Violate the Plaintiffs' Religion ...............11

        2. The School's Policy Does Not Burden Plaintiffs' Religion.......11

        3. The School's Policy Is Neutral and Applied Generally ............12

        4. The Policy Also Meets the Strict Scrutiny Test ........................14

    B. Plaintiffs' Speech at School Is Not Protected Speech .........................15

        1. A Teacher's Speech in the Classroom Is Not Protected Speech15

        2. Plaintiffs' Speech Is Curricular Speech....................................18

    C. PLAINTIFFS HAVE NOT PROVEN IRREPARABLE HARM, THE BALANCE OF EQUITIES DOES NOT TIP IN PLAINTIFFS' FAVOR AND THE PUBLIC INTEREST IS NOT SERVED BY GRANTING CLASS-WIDE PRELIMINARY INJUNCTIVE RELIEF ...........................................19

VI. CONCLUSION ..................................................................................20

ARTIANO SHINOFF

**EUSD DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

## Cases

*All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) .................10

*Apache Stronghold v. United States,* 38 F.4th 742, 770 (9th Cir. 2022).....................11

*Borden v. Sch. Dist. of East Brunswick*, 523 F.3d 153, 171 (3d Cir. 2008)................18

*Bostock v. Clayton County* (2020) 590 U.S. 644. .......................................................14

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1204 (10th Cir. 2007)............................................................................................................................18

*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869–870 ..................................................................................................................................8

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) .......................................................10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi*"), 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) .............................................12

*Connick v. Myers,* 461 U.S. 138 (1983) ......................................................................16

*Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974) ...............................................10

*Demers v. Aaustin*, 746 F.3d 402, 411-13 (9th Cir. 2014.) .......................................17

*Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) ..........................................................12

*Evans-Marshall v. Board of Educ.*, 624 F.3d 332 (6th Cir. 2010) .............................17

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ........................................................16

*Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 651 (10th Cir.2006) ...........................................................................................................17

*In re A.K.* (Cal. Ct. App., Apr. 27, 2023, No. B313263) 2023 WL 3114009, at *2..........................................................................................................................8

*Johnson v. Poway Unified School Dist.* (9th Cir. 2011) 658 F.3d 954, 966 ......17,18,19

*Kennedy v. Bremerton School District* 597 U.S. 507, 525 (2022) .............................11

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ..........19

*Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007)..................................18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ..................................................11

*Mabe v. San Bernardino County, Dept. of Public Social Services* (9th Cir. 2001) 237 F.3d 1101, 1106.............................................................................................8

*Mayer v. Monroe County Community School Corp.*, 474 F.3d 477,479 (7th Cir. 2007)............................................................................................................................18

**EUSD DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)..........................................10

*Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999) ..............................12,14

*Nat. Center for Immigrants Rights, Inc. v. Immigration and Naturalization Service*, 743 F.2d 1365, 1371-72 (9th Cir. 1984)........................................19

*Nken v. Holder*, 556 U.S. 418, 435 (2009) ...............................................19

*North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1158...................................................................................14

*Parents for Privacy v. Barr* (9th Cir. 2020) 949 F.3d 1210)...........................8

*Parents for Privacy v. Dallas School District No. 2* (D. Or. 2018) 326 F.Supp.3d 1075, 1099...............................................................................8

*Peterson v. Hewlett-Packard Co.* (9th Cir. 2004) 358 F.3d 599, 606. .................7

*Pickering v. Board of Educ.*, 391 U.S. 563 (1968).............................16,17,18

*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 626. ..........................14

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995).....................................................................................................18,19

*Stormans, Inc. v. Wiesman* (9th Cir. 2015) 794 F.3d 1064, 1082. ...............12,13

*Tinker v. Des Moines Ind. Comm'ty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ................16

*Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) ..................................10

*University of Texas v. Camenish*, 451 U.S. 390, 395 (1981) ...........................10

*Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)....................18

*Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) ...........................10

*Yakus v. United States,* 321 U.S. 414, 440 (1944)......................................19

*Zepeda v. United States Immigration and Naturalization Service*, 753 F.2d 719, 727-28 (9th Cir. 1985)....................................................................9,10

**Statutes**

Title 42 United States Code Section 1983 ..................................................16

California Penal Code Section 11164.........................................................8

Education Code Section 49602, subd. (e)..............................................8,15

California Welfare & Institution Code Section 300 ......................................8

**EUSD DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

ARTIANO SHINOFF

## I.    INTRODUCTION

Plaintiffs Mirabelli and West initially filed this lawsuit, contending their religious beliefs forbid them from misleading or lying to parents. With their latest operative Second Amended complaint, Plaintiffs have expanded the scope of this lawsuit into a sweeping class action against California state officials and agencies with new legal claims and adding additional parties, including the Attorney General, Escondido Union School District (EUSD), and two sets of pseudonymously named parents from unknown school districts and two pseudonymously named teachers from Escondido Union School District. Defendants currently do not know the identities of these latter parties.

After Plaintiffs filed their Second Amended Complaint on August 13, 2024, Plaintiffs filed their Motion for Class-Certification and Motion for Summary Judgment three days later, which included a request for a preliminary injunction as an alternative form of relief to their request for a permanent injunction. ECF No. 137; *see also* Mem. of Points & Authorities, at 47-48, 50 (ECF No. 137-1) (requesting a preliminary class-wide injunction); *Id.* at 7-8 (setting forth the standard for a preliminary injunction). Defendant Bonta requested the Court continue the hearing on these two motions until the resolution of all Defendants' motions to dismiss and to allow Defendants the opportunity to respond to the complaint and conduct discovery. Def CDE's Ex Parte Mot. To Continue (ECF Nos. 141, 142.)

The Court granted Defendant Bonta's ex parte to continue Plaintiffs' Motions for Summary Judgment and Motion for Class Certification. ECF No. 144. Plaintiffs filed an Ex Parte Motion for Reconsideration (ECF No. 145), but it was also denied in its entirety. ECF No. 151. Despite the Court's clear orders on the matter, Plaintiffs have ignored the Court's order altogether by filing another  separate motion for class-wide preliminary injunction to "enjoin Defendants from requiring or allowing ***any*** California school district to apply Parental Exclusion Policies when confronted with a religious objection by a parent (Claims 6 & 8, and Subclass 4), or when confronted with a religious objection by a teacher (Claim 2 and Subclass 2)." Pls.' Not. of Mot. And Mtn For a Class-Wide Prelim. Inj. at 10 (ECF No. 153) (emphasis

added). The motion requests this Court to order EUSD Defendants to not apply, implement, or enforce Constitutional provisions, state laws, and policies or regulations, that:

> "(a): permit or require any EUSD employee to mislead the parent or guardian of a minor child attending EUSD schools about their child's gender presentation at school, whether by (i) directly lying to the parent, (ii) preventing the parent from accessing educational records of the child, or (iii) using a different set of preferred pronouns/names when speaking with the parents than is being used at school;
>
> (b): permit or require any EUSD employee to participate in the social gender transition of a minor child by using a preferred name and preferred pronouns to refer to that child that do not match the child's legal name and natal pronouns, **absent notification to the child's parent or legal guardian**;
>
> (c): permit or require any EUSD employee to participate in the social gender transition of a minor child by using a preferred name and preferred pronouns to refer to that child that do not match the child's legal name and natal pronouns, **absent consent of the child's parent or legal guardian;**
>
> (d): require any EUSD employee to participate in the social gender transition of a minor child by using a preferred name and preferred pronouns to refer to that child that do not match the child's legal name and natal pronouns, and conceal that social gender transition from the child's parents, over the employee's conscientious or religious objection.

*Id*. at p. 4-5(ECF No. 153)(emphasis added.)

The prior injunction granted by this Court specifically requested EUSD Defendants not take any adverse action against Plaintiffs Mirabelli and West under Board Policies 0410 and 5145.3 and AR 5145.3. (ECF No 42.) It also prohibited the CDE Defendants from interfering, including by taking action against the EUSD Defendants, with Mirabelli and West's ability to communicate with transgender or gender diverse students in accordance with the Court's order. (*Id*.) The overbroad relief requested in Plaintiffs' instant Motion for a class-wide preliminary injunction is a far cry from the previous injunction. It now demands teachers not be permitted or required to respect a student's preferred names or pronouns, unless they have

notified their parent/guardian and received their consent.

This Court must recognize that a state-wide injunction at this stage is premature. At this stage in the litigation, Defendants have not even answered Plaintiffs' Second Amended Complaint, and no exchange of discovery has taken place as to the newest parties. It is inconceivable how the Court could find that Plaintiffs have met the stringent legal standard based on the limited facts before the Court. Before the Court issues a **statewide** injunction against a state statute going into effect January 1, 2025, and other related statutes protecting students, consideration should be given to the type of facts the parties have not yet developed through discovery.

The central feature of the original complaint was two teachers' religious objection to the requirement not to tell parents that their child is transitioning to a different gender when the student is afraid of the reaction of their parent. That raises a conflict between the state's interest in protecting gender transitioning students from the potential hostility of a parent, balanced against the religious rights of teachers and now parents. The parties have not yet done any discovery with respect to the new parties, so facts are missing. How many transitioning students are there, how many transitioning students are afraid of a parent, and how serious is the concern? Are students' fears abstract, or do parents ever harm their own children? What evidence did the Legislature have when passing the statute?

Like most constitutional issues, this case involves conflicting rights which must be carefully balanced. To balance the constitutional issues at stake in this case, ample facts about the circumstances are necessary. The first issue is the various rights at issue. The rights here are:

(1) First Amendment right of free exercise of religious of teachers who object to a narrow part of a policy intended to protect gender questioning students who are afraid of their parents. Employee religious rights are usually addressed on a case-by-case basis with accommodation. (*Peterson v. Hewlett-Packard Co.* (9th Cir. 2004) 358 F.3d 599, 606.) And the teacher's right to practice religion is balanced against their contrary duty to immediately call Child Protective Services if they suspect the student's fear is a sign of

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

ARTIANO SHINOFF

abuse.  (Cal. Penal Code § 11164, et seq.)

(2) The privacy rights of transitioning students afraid of their parents.  The students' real issue is not privacy, but fear.  Although a student's right of privacy is relatively weaker (See *Parents for Privacy v. Dallas School District No. 2* (D. Or. 2018) 326 F.Supp.3d 1075, 1099, aff'd sub nom. *Parents for Privacy v. Barr* (9th Cir. 2020) 949 F.3d 1210), a students' fear they may be harmed by a parent is real. Parents do harm children. (See, e.g., *In re A.K.* (Cal. Ct. App., Apr. 27, 2023, No. B313263) 2023 WL 3114009, at *2.)

(3) The rights of parents who want to know what their children are doing at school.  That right is strong, but not absolute; the state can remove children from the home if the parents are abusive.  (Welf. & Inst. Code, § 300; *Mabe v. San Bernardino County, Dept. of Public Social Services* (9th Cir. 2001) 237 F.3d 1101, 1106.) A pregnant minor can require the school to keep her secret from her parents.  (Ed. Code, § 49602, subd. (e).)

(4) the right/duty of the state and the school district to protect students from harm.  (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869–870.)

Given the need for further discovery on these novel and complex issues, the preliminary injunction is premature, overbroad, and  should not be granted.  Thus, EUSD Defendants join in any Co-Defendants' Oppositions to the motion and request this Court continue the hearing on Plaintiffs' Motion for Class-Wide Preliminary Injunction on the basis that it is premature and/or deny it in its entirety as overbroad and Plaintiffs cannot meet their burden.

## II.  PLAINTIFFS' REQUEST FOR CLASS-WIDE PRELIMINARY INJUNCTION IS PREMATURE

This Court has already denied Plaintiffs' Motion for a Class-Wide Preliminary Injunction. As part of its Motion for Summary Judgment, Plaintiffs also requested the Court enter a class-wide preliminary injunction on their prospective claims as an alternative form of relief to their request for a permanent injunction. ECF No. 137, at 4; see also Mem. of Points & Authorities, at 47-48, 50 (ECF No. 137-1) (requesting a preliminary class-wide injunction); id. at 7-8 (setting forth the standard for a preliminary injunction). Defendant Bonta filed an ex parte motion to continue the hearing on the motions which was granted. Order Grant'g Def.

Bonta's Ex Parte Mot. to Continue Hrg. at 1 (ECF No. 144). Despite Plaintiffs filing an ex parte application for reconsideration (ECF No. 145), the Court again denied their request in full. Minute Order, ECF No. 151.

Additionally, all Defendants have filed their respective Motions to Dismiss the Second Amended Complaint. Since the parties are still on the pleadings stage, Defendants have not had the opportunity to conduct meaningful written discovery, depose any parties, including Plaintiffs Mirabelli or West, learn the identities of the newest Plaintiff parties, or retain experts as necessary.

Plaintiffs also fail to demonstrate any urgency. As argued in EUSD Defendants' and their co-Defendants' pending Motions to Dismiss, there are pending standing and jurisdiction issues. For example, EUSD Defendants contend the newest Teacher Plaintiffs Jane Roe and Jane Poe have no actual injury or threat of potential future injury. Do they have transgender students during the 2024-2025 school year? Have they received questions from parents regarding the gender of their children? Have the additional Plaintiff teachers sought a religious accommodation from EUSD? There is no information or evidence set forth to demonstrate any irreparable injury for such extraordinary relief.

As for the original Plaintiff teachers Mirabelli and West, the preliminary injunction ordered by this Court is still in effect. Thus, this Court should not order such drastic statewide measures without affording all Defendants the opportunity to conduct further fact discovery.

## III. PLAINTIFFS' REQUEST FOR CLASS-WIDE PRELIMINARY INJUNCTION IS OVERBROAD

In the absence of class certification, a preliminary injunction may properly cover only the named plaintiffs. *Nat. Center for Immigrants Rights, Inc. v. Immigration and Naturalization Service*, 743 F.2d 1365, 1371-72 (9th Cir. 1984); see also *Zepeda v. United States Immigration and Naturalization Service*, 753 F.2d 719, 727-28 (9th Cir. 1985). A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court. *Zepeda*, 753 F.2d at 727.

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

This limitation is consistent with the traditional rule that injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, rather than to enjoin all possible breaches of the law. *Id*. at 728 n. 1 citing *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974). An injunction should be no more burdensome to the defendant than necessary to provide complete relief to plaintiffs. *Id*. citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). This is particularly true when a preliminary injunction is involved because a preliminary injunction can only be employed for the limited purpose of maintaining the status quo. *Id*. citing *University of Texas v. Camenish*, 451 U.S. 390, 395 (1981).

Here, no class has been certified yet and the requested relief goes beyond maintaining the status quo. Any preliminary injunction can only apply to the named Plaintiffs yet Plaintiffs' proposed injunctive relief applies to thousands of employees throughout the state of California– a broad group of persons and schools districts who are not before the Court. Therefore, this Court should also deny it on grounds for being overbroad.

## IV.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION

Plaintiffs seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm without injunctive relief, (3) that the balance of harms tips in their favor, and (4) that a preliminary injunction is in the public interest. *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). Courts in the Ninth Circuit evaluate these factors through a "sliding scale approach." *Id*. So, for example, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id*.

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). Moreover, courts require the moving party to carry her burden of persuasion by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) ("A preliminary injunction 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") Moreover, mere

10

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

ARTIANO SHINOFF

allegations are not sufficient. The plaintiff must produce evidence at the preliminary injunction stage. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Since [the elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.")

Here, Plaintiffs have not demonstrated they are substantially likely to succeed on the merits or that the new parties Jane Poe and Jane Roe will be irreparably harmed, that the balance tips in their favor, or that it is in the public interest.

## V.      ARGUMENT

### A.     TEACHER PLAINTIFFS' HAVE NOT DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1.      The Policy Does Not Violate the Plaintiffs' Religion

Teacher Plaintiffs' second and third claims for relief are captioned the same: "Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Generally Applicable due to Comparable Exemptions (Teacher Class Action) and Not Generally Applicable due to Discretionary Exemptions (Teacher Class Action). There are several legal issues.  Does EUSD's Policy actually burden the Plaintiffs' religious beliefs? If so, does a policy designed to prevent discrimination and harassment  and prevent student harm incidentally burden religion and thus violate the free exercise clause of the Constitution? Stated more broadly, can a religious belief serve to permit discrimination and potential harm to a student?

#### 2.      The School's Policy Does Not Burden Plaintiffs' Religion

Plaintiffs claim the school's Policy prohibited the free exercise of their religion. Under the First Amendment, Plaintiffs must "show[ ] that a government entity has burdened [their] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton School District* 597 U.S. 507, 525 (2022). General applicability requires, among other things, that the laws be enforced evenhandedly. *Id*. at 527; see also *Apache Stronghold v. United States,* 38 F.4th 742, 770 (9th Cir. 2022) ("[A] law is not

11

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

ARTIANO SHINOFF

'generally applicable' if the law 'impose[s] burdens only on conduct motivated by religious belief' in a 'selective manner.'" (second brackets in original) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 543, (1993)); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015).

First, EUSD policy does not actually burden the Plaintiffs' free exercise of their religious beliefs. They allege the Policy requires them to "ensure that parents did not find out" a students' preferred name and pronoun without the student's permission. SAC, p. 5-7, ¶¶ 7-12.

This is misleading. If a student showed any concerns about telling their parents of their gender identity, it is handled on a case-by-case basis, where the District would work with students to help resolve any concerns they had about telling their parents, explain the importance of their parents' awareness of their preferred identity in order for them to have that supportive network at home, and focus on working on working with the student to make that communication less stressful. Dec. of Schmidt, ¶¶ 3-6. (ECF No. 12-1.) These are the types of issues that can be fully fleshed out after the parties can conduct further meaningful discovery.

### 3. The School's Policy Is Neutral and Applied Generally

The right to exercise one's religion freely, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted).

A neutral law of general application need not be supported by a compelling government interest even when "the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ("*Lukumi*"), 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Such laws need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999). For laws that are not neutral or not generally applicable, strict scrutiny applies. See *Lukumi*, 508 U.S. at 531–32, 113 S.Ct. 2217 ("A law failing to satisfy these requirements must be justified by a compelling

governmental interest and must be narrowly tailored to advance that interest.").

The tests for "[n]eutrality and general applicability are interrelated, and ... failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id*. at 531, 113 S.Ct. 2217.

The mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability. See *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 651 (10th Cir.2006) ("Consistent with the majority of our sister circuits, ... we have already refused to interpret *Smith* as standing for the proposition that a secular exemption automatically creates a claim for a religious exemption.") *Stormans, Inc. v. Wiesman* (9th Cir. 2015) 794 F.3d 1064, 1082.

The Plaintiffs contentions remain the same from the original complaint in arguing that the Policy is not neutral and not applied generally in two ways. First, they argue it does not apply to some employees. "As outlined above, the policies apply to approximately 1,000 certificated teachers, but do not apply to more than 115 credentialed administrative staff, 740 classified support staff, or 17,000 students." SAC, p.97, ¶ 370. But that is not true. Neither the Policy (Ex. 2) nor the Regulation (Ex. 3) excludes any adult or student. "The Regulation broadly applies to all acts relate to school activity or to school attendance occurring with a district school . . ." SAC, Ex. 2. It is true that the District provided training to teachers first, but that was because teachers are on the front line of communication with parents. Dec. of Schmidt, ¶ 2 (ECF No. 12-1). The District provided training to all staff generally and additional one-on-one training to office staff who would be directly dealing with changes in the records. *Id*. at 2. The Policy is generally applicable in that it prohibits all discrimination without reference to motivation. The Policy requiring respect for gender diverse students applies to everyone and EUSD did not exclude other employees from the Policy.

Second, they contend the Policy has discretionary exceptions. SAC. p. 100, ¶¶ 388-392. They argue that EUSD's policies invite its staff to decide which reasons determine when compliance is worthy of solicitude, such as when teachers believed that individuals had a "legitimate need for the information" (SAC, Ex. 4). This misconstrues EUSD's presentation

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

ARTIANO SHINOFF

to its staff. It was explained as part of the "Rights of Gender Diverse Students" that there were various actions which could constitute discrimination and/or harassment depending on the circumstances. One of those instances would be revealing a student's transgender status to individuals who do not have a legitimate need, without the student's consent. That is not an "exception" but is part of a consistent policy against *intentional* discrimination against a student because of gender identity.

There must be some difference based upon circumstances. A child who does not what their parent to know of their transition because they will be disappointed, is different from a child who is afraid their parent will beat them. That requires the teacher to involve counseling. That is not an "exception;" it is a different circumstance. In every case where the child is afraid, the teacher must not tell the parent, and must get administration and counselling involved.

There are no exceptions in the application of the Policy and the Policy is applied generally, consequently, the Policy need only survive rational basis review. *Miller v. Reed,* 176 F.3d 1202, 1206 (9th Cir.1999). The school's Policy of respecting a student's privacy and gender identity, and keeping their gender identity private upon request, is rationally related to the purpose of preventing discrimination and harassment and protecting student's from harm.

### 4. The Policy Also Meets the Strict Scrutiny Test

The Policy requires all staff to protect the privacy of students, consistent with their Constitutional right to privacy, to protect the student's safety and emotional security. That is a compelling interest. The state has a compelling interest "of the highest order" in eradicating sex discrimination. *Roberts v. United States Jaycees* (1984) 468 U.S. 609, 626. The Supreme Court found that discrimination on the basis of "sex" includes discrimination on the basis of sexual orientation or transgender status. *Bostock v. Clayton County* (2020) 590 U.S. 644. The California Supreme Court also recognized that the state has a compelling interest "in ensuring full and equal access to medical treatment irrespective of sexual orientation." *North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1158. The governmental purpose of protecting at-risk students from harm is a compelling governmental

{AS7 Law San Diego/001290/000012/PL/S0585565.DOCX}

interest and the Policy of protecting the student's privacy, even from the parents in rare instances, is narrowly tailored, meeting the strict scrutiny test.

The Policy and Regulation are narrowly tailored. There is no alternative method of meeting the requirement to keep the student's gender identity private when the student does not want a parent to know except the careful referral to experts with the purpose of assisting the student to work through the process of informing their parents.

Moreover, EUSD Defendants have a compelling interest to protect students from harm. There are statutory examples in which schools are required to keep other sensitive information from parents, such as an abortion. Education Code section 49602, subd. (e) states: "Notwithstanding the provisions of this section, a school counselor shall not disclose information deemed to be confidential pursuant to this section to the parents of the pupil when the school counselor has reasonable cause to believe that the disclosure would result in a clear and present danger to the health, safety, or welfare of the pupil." (Ed. Code, § 49602, subd. (e).)

It is a fact that not all parents are supportive of a student's transgender status. It is also a fact that there is a real possibility where parents do harm children. What happens then?

**B.**     **Plaintiffs' Speech at School Is Not Protected Speech**

      **1.**     **A Teacher's Speech in the Classroom Is Not Protected Speech**

As an initial matter, Teacher Plaintiffs Jane Poe and Jane Roe have not brought forth any allegations or evidence as to what accommodations they requested from the District (if any), what communications they had with transgender students and their parents (if any), what questions they received from parents about their children's transgender status (if any), or what communications they had administrators or District personnel regarding the policy (if any). Thus, the preliminary injunction should not be granted, if at all, until these issues can be fully resolved during the pleadings stage and/or developed during the discovery phase.

Nonetheless, EUSD reiterates its argument that a teacher's speech when using names and pronouns is not protected speech. "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First

ARTIANO SHINOFF

Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

There is no doubt that a public-school teacher has certain First Amendment rights of freedom of speech or expression. *Pickering v. Board of Educ.*, 391 U.S. 563 (1968); *Tinker v. Des Moines Ind. Comm'ty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ["[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."].  But the free speech rights of public employees, including teachers, are not unlimited.  Those rights have been restricted under the test established in *Pickering* and clarified in *Connick v. Myers,* 461 U.S. 138 (1983), and *Garcetti*, supra, 547 U.S. at p. 418.

The *Pickering* test provides a public employee with First Amendment protections only if (1) the employee is speaking as citizen, (2) on a matter of public concern, and (3) the public entity has no adequate justification for treating the employee differently from any other member of the general public. *Garcetti*, supra, 547 U.S. at 418.

The *Garcetti* case clarified the first prong of the *Pickering* test -- whether a public employee is speaking as a citizen. In *Garcetti*, an assistant district attorney wrote a memo to his supervisor recommending dismissal of a particular criminal case because the affidavit police used to obtain a critical search warrant was inaccurate. *Garcetti*, supra, 547 U.S. at 414. The assistant D.A. was criticized by his supervisors for writing the memo and demoted. *Id*. at 415. He then sued his employer under 42 U.S.C. § 1983 for retaliation in violation of his First Amendment rights. *Id*. The *Garcetti* court upheld the use of the *Pickering* test to determine the public employee's free speech rights in the workplace. *Garcetti*, 574 U.S. at 418.

In clarifying the definition of "citizen" under the first prong of the Pickering test, the *Garcetti* court explained that the focus should not be on the content of the speech, but on the role the speaker occupied when the speech was made. *Garcetti,* supra, 574 U.S. at 421. Using that standard, Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.*

Plaintiffs incorrectly contend they are discussing matter of public concern so that their

ARTIANO SHINOFF

discussion is protected, citing *Demers v. Aaustin*, 746 F.3d 402, 411-13 (9th Cir. 2014.)  But *Demers v. Aaustin* does not apply. Its analysis only applies to post-secondary education—colleges and universities. And it recognizes the difference between universities and high school education.  "Further, the degree of freedom an instructor should have in choosing what and how to teach will vary depending on whether the instructor is a high school teacher or a university professor." *Demers v. Austin*, *supra*, at 413.

The *Garcetti* court expressly left open the question of whether its gloss on the *Pickering* test should be applied to the world of public academia, where there are different free speech concerns, such as academic freedom. *Id*. at 425. To that end, the *Garcetti* court noted: "There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." Id.

Such "academic freedom" concerns are not present at the high-school level. For example, in *Evans-Marshall v. Board of Educ.*, 624 F.3d 332 (6th Cir. 2010), the Sixth Circuit explained that "'academic freedom' … does not readily apply to in-class curricular speech at the high school level" but applies more at the university level. *Evans-Marshall*, supra, 624 F.3d at 343-344.

The Ninth Circuit has agreed with the Sixth Circuit, noting that *Garcetti's* "'academic freedom' carve-out applied to teachers at public colleges and universities, not primary and secondary school teachers." *Johnson v. Poway Unified School Dist.* (9th Cir. 2011) 658 F.3d 954, 966.

In *Johnson*, a schoolteacher hung banners expressing religious phrases in his math classroom; the school instructed him to remove them. *Johnson*, *supra*, at 958-959. "When Bradley Johnson, a high school calculus teacher, goes to work and performs the duties he is paid to perform, he speaks not as an individual, but as a public employee, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled

17

nor distorted." *Johnson*, *supra*, at 957, citing, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995).

Primary and secondary schools hire teachers for their ability to convey the school district's curriculum, not for their academic publications, as might occur at the university level. And teachers may not introduce their own views on a particular subject, but "must stick to the prescribed curriculum not only the prescribed subject matter, but also the prescribed perspective on that subject matter." *Mayer v. Monroe County Community School Corp.*, 474 F.3d 477,479 (7th Cir. 2007). This is because "the school system does not regulate teachers' speech as much as it hires that speech. Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary." *Id.*; see also, *Borden v. Sch. Dist. of East Brunswick,* 523 F.3d 153, 171 (3d Cir. 2008) (holding under *Pickering*-based analysis that school could prohibit faculty participation in student-initiated prayer); *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 700 (4th Cir. 2007) (holding under a *Pickering*-based analysis that a school board did not infringe the rights of a teacher when it ordered him to remove religious material from a classroom bulletin board); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,1204 (10th Cir. 2007); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007); *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477,479-80 (7th Cir. 2007) (applying *Pickering*-based test and holding that "the [F]irst [A]mendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system").

## 2. Plaintiffs' Speech Is Curricular Speech

There can be no doubt that Plaintiffs' objection to speaking, or refraining from speaking as the Regulation required, related to speech within the scope of their duties as a teacher in the school setting when referring to students. Examples such as calling on a student in class, answering their questions, and taking attendance does not constitute speech as a private citizen, but is "government speech," required by the school district Policy. When Plaintiffs go to work and perform the duties they are paid to perform, they speak not as individuals, but as public

18

employees, and the school district is free to "take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Johnson*, supra at 957, citing, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995).

## C. PLAINTIFFS HAVE NOT PROVEN IRREPARABLE HARM, THE BALANCE OF EQUITIES DOES NOT TIP IN PLAINTIFFS' FAVOR AND THE PUBLIC INTEREST IS NOT SERVED BY GRANTING CLASS-WIDE PRELIMINARY INJUNCTIVE RELIEF

Plaintiff cannot obtain a preliminary injunction unless the balance of equities tips in plaintiff's favor. *Winter*, 555 U.S. at 20. In this case, however, the balance of equities tips in defendants' favor. Balancing the equities requires consideration of the relative inconvenience or hardship to the parties resulting from a decision to grant or deny injunctive relief. See *Yakus v. United States,* 321 U.S. 414, 440 (1944).

When weighing the plaintiffs hardship, a court must consider the public's interest in a school's performance of its statutory duties and legitimate governmental interests. The balance of hardships strongly favors EUSD Defendants and thus the public's interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009) (assessing the harm to the opposing party and weighing the public interest merge when the Government is the opposing party). Plaintiffs' overbroad preliminary injunction would harm both EUSD's ability to perform necessary operational and educational functions and the public's interest. School districts serve an important function in supporting their transgender students and employees by protecting them against nondiscrimination, harassment, and harm. Such drastic relief should not be rushed when Defendants have not had adequate opportunity to engage in fact-finding. Given the limited and sparse information thus far, Plaintiffs have not met their burden in establishing they will suffer irreparable harm.

Their proposed injunction is further burdensome because they have not sued under their true names. Thus far, counsel for Defendants have been unable to ascertain the identities and circumstances of the additional teacher and Parent Plaintiffs that have sued under pseudonyms.

"Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." *Winter*, 508 F.3d 7, 886; *Lamb-*

ARTIANO SHINOFF

*Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)("[a]n overbroad injunction is an abuse of discretion"). The only named Defendants here are the California Department of Education, the Attorney General, the Escondido Union School District Superintendents, Board of Education, and district personnel. Plaintiffs' proposed preliminary injunction alleges it is "class-wide" yet the relief sought seeks to enjoin not only EUSD but every school district across the state of California.

Plaintiffs are not seeking to maintain the status quo through a preliminary injunction. Rather, they are seeking a mandatory injunction asking this Court to order Defendants to adopt new guidelines and undertake new procedures and require additional steps through consent and notification between parents and staff. Simply put, they now request this Court to invalidate all Constitutional provisions, statutes, and policies that permit or require all employees and teachers in California education to abide by a student's preferred names and pronouns *unless they notify the parent and receive their consent*. This is simply an attempt to get around AB 1955 and incorporate the "Parental Notification Policies" brought forth by the Chino Valley Unified School District, Murrieta Valley Unified School District, and others in an attempt to forcibly out students and put them in harm's way.

In the event the Court is inclined to grant Plaintiffs' overbroad and premature Motion, Defendants request that this Court order Plaintiffs to give security in an amount to pay the costs and damages sustained by any of the Defendants found to be wrongfully restrained. Fed. R. Civ. P. 65(c).

## VI.    CONCLUSION

It may be that the State is concerned with the possibility that a parent might harm a child if the parent opposes the child transitioning. That concern may be real or exaggerated. The issue calls for a diligent review of expert opinion and the history of student transitioning. That discovery has not been done. Given the need for further discovery on these novel and complex issues, the preliminary injunction is premature and should not be granted. EUSD Defendants join in any Co-Defendants' Oppositions to the motion and request this Court continue the hearing on Plaintiffs' Motion for Class-Wide Preliminary Injunction on the

basis that it is premature and/or deny it in its entirety on the grounds that it is overbroad, and Plaintiffs cannot meet their burden.

Dated: October 21, 2024

ARTIANO SHINOFF

By: _____
Daniel R. Shinoff
Jack M. Sleeth Jr
Lauren Cambronero
Attorneys for EUSD Defendants

**EUSD DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**