ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN: 248011)
Supervising Deputy Attorney General
JENNIFER A. BUNSHOFT (SBN: 197306)
KEVIN L. QUADE (SBN: 285197)
EMMANUELLE S. SOICHET (SBN: 290754)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-4426
 Fax: (415) 703-5843
 E-mail: Emmanuelle.Soichet@doj.ca.gov
*Attorneys for Defendant Attorney General
Bonta*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**DEFENDANT BONTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**<br><br>Date: November 4, 2024<br>Time: 10:30 a.m.<br>Dept: 5a<br>Judge: The Honorable Roger T. Benitez<br><br>Action Filed: April 27, 2023 |

# TABLE OF CONTENTS

**Page**

Introduction ...............................................................................................1

Background...............................................................................................2

Legal Standard ........................................................................................2

Argument ...................................................................................................3

    I.    Plaintiffs Are Not Likely to Succeed on the Merits of their
        Claims.............................................................................................3

        A.   Plaintiffs Have Not Demonstrated a Justiciable Claim
             Against the Attorney General..................................................3

        B.   Plaintiffs' Facial Challenge Fails ...........................................3

        C.   Plaintiffs Have Not Demonstrated a Cognizable Claim
             Upon Which Relief Could be Granted ....................................4

             1.   Parent Plaintiffs have not shown a likelihood of
                success on the merits of their substantive due
                process claim ...................................................................4

                a.   Substantive due process does not require
                     schools to notify parents of a student's
                     gender identity .......................................................4

                b.   Parent Plaintiffs' arguments that student-
                     privacy policies violate their substantive due
                     process rights fail..................................................7

                 c.   Student-privacy policies survive review,
                     whether rational basis or strict scrutiny
                     applies.......................................................................9

             2.   Plaintiffs' free exercise of religion claims fail on
                their merits.....................................................................10

                a.   Plaintiffs have not demonstrated a cognizable
                     burden on their religion.......................................10

                  b.   Student-privacy policies are subject to, and
                     survive, rational basis review ..............................11

                    (1)   Student-privacy policies are neutral
                         and generally applicable............................11

                    (2)   The Court should reject Plaintiffs'
                         hybrid rights theory...................................13

                  c.   Student-privacy policies would satisfy strict
                       scrutiny...................................................................15

              3.   Teacher Plaintiffs' free speech claim fails on its
                merits.............................................................................15

                a.   Teacher Plaintiffs' speech is not
                       constitutionally protected....................................16

                  b.   The government's interests outweigh
                       Teacher Plaintiffs' speech rights .........................18

i

II.   The Remaining Preliminary Injunction Factors Weigh Against Issuance of an Injunction ...................................................................19

    A.   Plaintiffs Cannot Establish Irreparable Harm ...........................19

    B.   The Balance of Equities Weighs Against an Injunction ...........19

III.  Plaintiffs Seek An Injunction That Is Unenforceable, Unworkable, and Outside the Scope of Their Claims ......................19

IV.   Any Injunction Must Be Limited To The Named Plaintiffs ...............21

    A.   A Class-Wide Injunction Requires Provisional Class Certification ...............................................................................21

    B.   Plaintiffs Cannot Establish an Entitlement to Class Certification ...............................................................................21

        1.   The proposed classes are not ascertainable ....................22

        2.   Plaintiffs fail to meet the requirements of Rule 23 ........22

            a.   Plaintiffs lack evidence to support provisional class certification .............................22

            b.   Plaintiffs cannot demonstrate commonality or typicality ........................................................24

            c.   A class cannot be certified under Rule 23(b) ........24

Conclusion ..............................................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Legion v. Am. Humanist Ass'n*
    588 U.S. 29 (2019) .........................................................................11

*Am. Acad. of Pediatrics v. Lungren*
    16 Cal.4th 307 (1997) ..................................................................10

*Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*
    503 F.3d 256 (3rd Cir. 2007) ......................................................5, 9

*Blair v. Appomattox Cnty. Sch. Bd.*
    2024 WL 3165312 (W.D. Va. June 25, 2024) ..................................6

*C.F. v. Lashway*
    2017 WL 2574010 (W.D. Wash. June 14, 2017) ...........................22

*C.R. v. Eugene School Dist. 4J*
    853 F.3d 1142 (9th Cir. 2016) ........................................................5

*Caribbean Marine Serv. Co. v. Baldrige*
    844 F.2d 668 (9th Cir. 1988) ........................................................19

*Church of Lukumi Babalu Aye v. City of Hialeah*
    508 U.S. 520 (1993) .....................................................................12

*Citizens for Parental Rights v. San Mateo Cnty. Bd. of Educ.*
    51 Cal. App. 3d 1 (1975) ........................................................14, 15

*Combs v. Homer-Ctr. Sch. Dist.*
    540 F.3d 231 (3d Cir. 2008) .........................................................14

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) .......................................................................21

*Coomes v. Edmonds Sch. Dist. No. 15*
    816 F.3d 1255 (9th Cir. 2016) .................................................17, 18

*Desrochers v. City of San Bernardino*
    572 F.3d 703 (9th Cir. 2009) ........................................................16

**TABLE OF AUTHORITIES**
**(continued)**

*Dodge v. Evergreen Sch. Dist. #114*
 56 F.4th 767 (9th Cir. 2022)...................................................................16, 17

*Doe by & through Doe v. Boyertown Area Sch. Dist.*
 897 F.3d 518 (3rd Cir. 1980) ...........................................................................9

*Doe v. Del. Valley Reg'l High Sch. Bd. of Ed.*
 2024 WL 706797 (D.N.J. Feb. 21, 2024) ........................................................6

*Doe v. San Diego Unified Sch. Dist.*
 19 F.4th 1173 (9th Cir. 2021)...............................................................11, 12, 13

*Dousa v. Dep't of Homeland Sec'y*
 2020 WL 434314 (S.D. Cal. Jan. 28, 2020)...................................................14

*Drakes Bay Oyster Co. v. Jewell*
 747 F.3d 1073 (9th Cir. 2014)........................................................................19

*Emp't Div. v. Smith*
 494 U.S. 872 (1990)........................................................................................11

*Fields v. Palmdale Sch. Dist.*
 427 F.3d 1197 (9th Cir. 2005)........................................................................6, 9

*Foote v. Town of Ludlow*
 2022 WL 18356421 (D. Mass. Dec. 14, 2022) .............................................6, 7

*Foothills Christian Church v. Johnson*
 2023 WL 4042580 (S.D. Cal. June 15, 2023).................................................11

*Fulton v. City of Philadelphia*
 593 U.S. 522 (2021)........................................................................10, 11, 15

*Garcetti v. Ceballos*
 547 U.S. 410 (2006)........................................................................................18

*Garcia v. Google. Inc.*
 786 F.3d 733 (9th Cir. 2015) (en banc) ........................................................2, 3

*Gen. Tel. Co. of S.W. v. Falcon*
 457 U.S. 147 (1982)........................................................................................22

*Gonzaga Univ. v. Doe*
  536 U.S. 273 (2002)....................................................................8

*Grimm v. Gloucester Cnty. Sch. Bd.*
  972 F.3d 586 (4th Cir. 2020), (Aug. 28, 2020)................................7

*Guillory v. Am. Tobacco Co.*
  2001 WL 290603 (N.D. Ill. Mar. 20, 2001).....................................22

*Hardwick v. Fruitridge School District*
  54 Cal. App. 696 (1921)............................................................14

*Hawkins v. Comparet-Cassani*
  251 F.3d 1230 (9th Cir. 2001).....................................................22

*Hernandez v. Cnty. of Monterey*
  305 F.R.D. 132 (N.D. Cal. 2015) ..................................................22

*In re Est. of Ferdinand Marcos Hum. Rts. Litig.*
  94 F.3d 539 (9th Cir. 1996).........................................................19

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Ed.*
  622 F. Supp. 3d 118 (D. Md. 2022)................................................6

*Johnson v. Poway Unified Sch. Dist.*
  658 F.3d 954 (9th Cir. 2011)..................................................15, 17

*Kissinger v. Bd. of Trs. of Ohio State Univ., Coll. of Veterinary Med.*
  5 F.3d 177 (6th Cir. 1993)...........................................................14

*LA All. for Hum. Rts. v. Cnty. of Los Angeles*
  14 F.4th 947 (9th Cir. 2021).........................................................20

*Lane v. Franks*
  573 U.S. 228 (2014)...................................................................16

*Mahanoy Area Sch. Dist. v. B.L.*
  594, U.S. 180 (2021)....................................................................8

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
  571 F.3d 873 (9th Cir. 2009)..........................................................3

*Martinez v. Brown*
    2011 WL 1130458 (S.D. Cal. Mar. 25, 2011) .....................................21, 23, 24

*McNeil v. Sherwood Sch. Dist. 88J*
    918 F.3d 700 (9th Cir. 2019)..............................................................................6

*Meyer v. Nebraska*
    262 U.S. 390 (1923)...........................................................................................5

*Meyer v. Portfolio Recovery Assocs., LLC*
    707 F.3d 1036 (9th Cir. 2012)...........................................................................21

*New York v. Ferber*
    58 U.S. 747 (1982)............................................................................................9

*Ngoun v. Wolf*
    517 F. Supp.2d 1177 (C.D. Cal. 2007)............................................................10

*Norbert v. City & Cnty. of San Francisco*
    10 F.4th 918 (9th Cir. 2021).............................................................................21

*Norwood v. Harrison*
    413 U.S. 455 (1973)...........................................................................................5

*Nunez v. Davis*
    169 F.3d 1222 (9th Cir. 1999).........................................................................18

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
    810 F.3d 631 (9th Cir. 2015).............................................................................20

*Parents for Priv. v. Barr*
    949 F.3d 1210 (9th Cir. 2020)...............................................................*passim*

*Parham v. J.R.*
    442 U.S. 584 (1979)...........................................................................................7

*Pettus v. Cole*
    49 Cal. App. 4th 402 (1996)............................................................................16

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*
    391 U.S. 563 (1968)..............................................................................15, 16, 18

*Pierce v. Society of Sisters*
268 U.S. 510 (1925)...............................................................................5

*Poway Unified Sch. Dist. v. Sup. Ct.*
62 Cal. App. 4th 1496 (1998)............................................................10

*Regino v. Staley*
2023 WL 4464845 (E.D. Cal. July 11, 2023) ................................6, 7

*Reno v. Flores*
507 U.S. 292 (1993).............................................................................10

*Runyon v. McCrary*
427 U.S. 160 (1976).............................................................................5

*Senne v. Kansas City Royals Baseball Corp.*
315 F.R.D. 523 (N.D. Cal. 2016) ......................................................22

*Sherbert v. Verner*
374 U.S. 398 (1963)............................................................................10

*Stormans, Inc. v. Wiesman*
794 F.3d 1064 (9th Cir. 2015).............................................11, 12, 13

*Tandon v. Newsom*
141 S. Ct. 1294 (2021)........................................................................12

*Taylor v. Vt. Dep't of Educ.*
313 F.3d 768 (2d Cir. 2002)...............................................................8

*Tingley v. Ferguson*
47 F.4th 1055 (9th Cir. 2022).......................................12, 13, 14, 19

*Troxel v. Granville*
530 U.S. 57 (2000)..............................................................................5

*United States v. Salerno*
481 U.S. 739 (1987)............................................................................4

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011)............................................................................24

**TABLE OF AUTHORITIES**
**(continued)**

*We The Patriots USA v. Conn. Off. of Early Childhood Dev.*
76 F.4th 130 (2d Cir. 2023)............................................................14

*Willey v. Sweetwater Cnty. Sch. Dist. #1 Bd. of Trust.*
2023 WL 9597101 (D. Wyo., Dec. 18, 2023)............................17, 18

*Winter v. Nat. Res. Def. Couns., Inc.*
555 U.S. 7 (2008)..........................................................................2

*Wolin v. Jaguar Land Rover N. Am., LLC*
617 F.3d 1168 (9th Cir. 2010)......................................................24

*Zepeda v. INS*
753 F.2d 719 (9th Cir. 1983)........................................................21

*Zinser v. Accufix Rsch. Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001)...............................................24, 25

STATUTES

20 U.S.C.
§ 1232g(a)(1)(A)...........................................................................8
§ 1232g(a)(4)(A)...........................................................................8

Cal. Code Regs., Title 5, §§ 4900-4965 ...............................................20

Cal. Educ. Code
§ 220..........................................................................................20
§ 51101(a)(1) ..............................................................................12
§ 51101(a)(3) ..............................................................................12

Cal. Gov. Code § 11135...................................................................20

Cal. Stat., Chapter 95 .....................................................................20

CONSTITUTIONAL PROVISIONS

First Amendment ......................................................................*passim*

Eleventh Amendment.........................................................................3

Page

Fourteenth Amendment ........................................................................3, 4, 5

Cal. Const. Article 1, § 1 ......................................................................2, 3, 10

**COURT RULES**

Fed. R. Civ. P. 7(b)(1)(C) ...........................................................................22

Fed. R. Civ. P. 23...............................................................1, 21, 22, 23

Fed. R. Civ. P. 23(a) ...........................................................................22, 24

Fed. R. Civ. P. 23(a)(2)..............................................................................24

Fed. R. Civ. P. 23(b) ...................................................................................24

Fed. R. Civ. P. 23(b)(1)(A) .................................................................24, 25

Fed. R. Civ. P. 23(b)(2)........................................................................24, 25

Fed. R. Civ. P. 64(d) ...................................................................................21

Fed. R. Civ. P. 65(d) ...................................................................................21

**OTHER AUTHORITIES**

CDE, *Fingertip Facts on Education in California*,
    https://www.cde.ca.gov/ds/ad/ceffingertipfacts.asp....................................20, 23

Def. Bonta's Opp. to Pls.' Mot. for Preliminary Injunction (3:23-cv-00768-BEN-VET)

# INTRODUCTION

Having added new parties and claims totally unconnected to their original lawsuit, Plaintiffs now move for a preliminary injunction without sufficient legal or factual support. Plaintiffs repeatedly urge the Court to simply "expand" the existing injunction exempting Plaintiffs Mirabelli and West from one of their school district's policies regarding student gender identity. But even if the existing injunction were proper, its reasoning does not support a statewide injunction on new claims brought by new plaintiffs against a non-existent, unwritten statewide "policy" that supposedly forces school districts to adopt policies that prohibit school staff from disclosing a student's gender identity to parents. Moreover, the "expanded" injunction Plaintiffs seek—which would require the Attorney General (AG) to affirmatively monitor and control the speech of more than 500,000 school staff statewide, whom he does not employ—bears no resemblance to the Court's previous order or Plaintiffs' own claims, and is unworkable.

As a threshold matter, Plaintiffs have not fixed (and cannot fix) the jurisdictional deficiencies that are fatal to their claims. *See* ECF 156. Even if they could, they cannot meet the high bar for mandatory injunctions in the Ninth Circuit. This is because Plaintiffs have failed to show a likelihood of success on any of their claims, whether as facial challenges or as applied to Plaintiffs. Nor have they shown irreparable harm caused by the Attorney General. And the balance of harms tips against an injunction, when considering the serious risks to student well-being that forced-disclosure policies cause.

Even if the Court were inclined to grant Plaintiffs some additional injunctive relief, it should deny the requested injunction, which suffers from multiple scope issues and is simply unworkable. Finally, Plaintiffs' request for statewide, class-wide relief should be denied outright because they have not and cannot meet their burden to establish a class under Federal Rule of Civil Procedure 23. For these reasons, the Court should deny the motion.

## BACKGROUND

In their Motion, Plaintiffs argue that the non-binding guidance issued by the California Department of Education (CDE) and the Attorney General's interpretation of the California Constitution's Privacy Clause—what they call the State's so-called "Parental Exclusion Policies"—have "forced" local school districts to adopt policies that prevent disclosure of a student's gender identity to parents absent student consent, which, in turn, allegedly violate Plaintiffs' constitutional rights. ECF 153-1 (MPA) at 1-2; *see* ECF 133 (SAC) ¶¶ 325, 350-493. Plaintiffs seek a statewide injunction that would prohibit the AG—who does not control the actions of school district employees—from "permit[ting]" or "requir[ing]" any school employee in California "to participate in the social transition of a minor child" without parental and consent. ECF 153 at 2. Plaintiffs also seek to enjoin the AG from "permit[ing]" or "requir[ing]" any school employee from "mislead[ing]" any parent in California, by "lying," "preventing" access to student records, or "using a different set of preferred pronouns/names when speaking with the parents than is being used at school." *Id.*

## LEGAL STANDARD

A party seeking a preliminary injunction must establish that: (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008). If a movant fails to establish a likelihood of success, the court generally need not consider the other *Winter* factors. *Garcia v. Google. Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

Because Plaintiffs' proposed injunction would go beyond preserving the status quo and would require the AG "take affirmative action" to monitor school districts and staff, it constitutes a mandatory injunction, and, as a result, Plaintiffs have a "doubly demanding" burden to establish that the law and facts "clearly favor" their

2

position. *See Id.* at 740; *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

## ARGUMENT

### I. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

Plaintiffs' claims against the AG challenge the State's so-called "parental exclusion policies," specifically the AG's purported interpretation of the California Constitution's Privacy Clause. ECF 153-1 at 15; SAC at 121. But as explained in his motion to dismiss, there is no such uniform State-level "policy" that regulates disclosure of student gender identity—much less is there one dictated by the AG. ECF 156-1 at 19-20, 23-24. Rather, school districts in California are responsible for and have flexibility in crafting and adopting their own policies, many different species of which can comply with State and federal law. *Id.* The lack of a mandatory State-level "policy" attributable to the AG is fundamentally fatal to Plaintiffs' claims, both for justiciability and in substance, and alone is sufficient for the Court to deny their motion for preliminary injunction. But, assuming arguendo that they could raise a challenge against the AG based on the broad legal principles mentioned in a legal alert—principles that might be included in policies adopted by local school districts—such student-privacy policies would pass constitutional muster. *See* SAC, Ex. 39, at 389 (legal alert citing "numerous feasible" policies).

### A. Plaintiffs Have Not Demonstrated a Justiciable Claim Against the Attorney General

As explained in the AG's pending motion to dismiss, Plaintiffs' claims against the AG cannot succeed because Plaintiffs lack standing to sue him, and the AG is immune from suit under the Eleventh Amendment. *See* ECF 156-1 at 15-27.[1]

### B. Plaintiffs' Facial Challenge Fails

Plaintiffs bring facial challenges under the First and Fourteenth Amendments. ECF 153-1 at 15:4-12; ECF 133 (SAC) at 121:9-12. A facial challenge is "the most

---

[1] The AG incorporates by reference all arguments in his motion to dismiss (ECF 156) demonstrating Plaintiffs' failure to establish jurisdiction to sue him.

1  difficult challenge to mount successfully, since the challenger must establish that no

2  set of circumstances exists under which the Act would be valid." *United States v.*

3  *Salerno*, 481 U.S. 739, 745 (1987). But the student-privacy policies Plaintiffs

4  challenge permit disclosure of gender-identity information to parents in a number of

5  circumstances, such as where: (1) a student consents; (2) there is a compelling need

6  for disclosure to protect the student's well-being; and (3) state or federal law

7  requires parental notification in a particular context. Thus, even if Plaintiffs'

8  underlying legal theories were valid (which they are not), because the policies

9  permit disclosure in the circumstances above, there would be no constitutional

10  violation in those circumstances, and Plaintiffs cannot meet their burden of showing

11  that "no set of circumstances" exists under which a student-privacy policy would be

12  valid. Hence, the facial challenge has no likelihood of success, and cannot support a

13  statewide injunction. *See Salerno*, 481 U.S. at 745.

### C. Plaintiffs Have Not Demonstrated a Cognizable Claim Upon Which Relief Could be Granted

#### 1. Parent Plaintiffs have not shown a likelihood of success on the merits of their substantive due process claim

17  Parent Plaintiffs allege the AG has violated their parental rights under the Due

18  Process Clause of the Fourteenth Amendment. But parents do not have a

19  fundamental right to require schools and school staff to notify them of their child's

20  gender identity. And even if they did, a parental notification policy that permits

21  disclosure with student consent, or without consent when there is a compelling need

22  to do so to protect the student's well-being, or where otherwise required by law,

23  withstands constitutional scrutiny.

##### a. Substantive due process does not require schools to notify parents of a student's gender identity

25  Parent Plaintiffs' substantive due process claim is based on a legal theory

26  related to the right to control their child's upbringing that is foreclosed by any

27  Ninth Circuit or Supreme Court case law. There is no substantive due process right

28  that forbids school districts from adopting a policy to protect transgender and

4

gender nonconforming students from forced outing or being potentially placed in harm's way by parental disclosure without their consent, absent compelling need for disclosure or where it is otherwise required by law.

The Due Process Clause of the Fourteenth Amendment generally "protects an individual's fundamental rights to liberty and bodily autonomy." *C.R. v. Eugene School Dist. 4J*, 853 F.3d 1142, 1154 (9th Cir. 2016). The U.S. Supreme Court has repeatedly made clear that parental substantive due process rights have "limited scope" in the educational context. *Norwood v. Harrison,* 413 U.S. 455, 461 (1973); *Runyon v. McCrary*, 427 U.S. 160, 177 (1976). In *Runyon*, the Court rejected the claim that parental rights permitted schools to discriminate against students, stating that parental rights to direct the upbringing of their children—in the school context—are limited to the facts of *Pierce v. Society of Sisters* 268 U.S. 510, 534-35 (1925) (right to send child to private school) and *Meyer v. Nebraska* 262 U.S. 390, 397, 403 (1923) (right to provide instruction in languages other than English at private school). *Runyon*, 427 U.S. at 177. It has stressed that those precedents do not afford parents a constitutional right to a "private school education unfettered by reasonable government regulation." *Id*. at 163, 177-78. Thus, the rights recognized in *Pierce* and *Meyer* do not support creating a parental right to force public school staff to notify parents of a student's gender identity, absent consent.[2]

Further, there is no infringement of a parental right where, as here, the student-privacy policies do not require or prohibit any action by parents, in contrast to the laws at issue in *Meyer* and *Pierce. See, e.g., Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*, 503 F.3d 256, 263-64 (3rd Cir. 2007) (clinics' distribution of contraception to minors without parental consent did not infringe on

---

[2] Plaintiffs' reliance on in *Troxel v. Granville*, 530 U.S. 57 (2000), is misplaced, because that case "concerned a state government's interference with a mother's decision about the amount of visitation" rights, and "did not address the extent of parents' rights to direct the policies of the public schools that their children attend." *Parents for Priv. v. Barr*, 949 F.3d 1210, 1230 (9th Cir. 2020). Similarly, Plaintiffs fail to identify any history or tradition of a parental substantive due process right to know the gender identity of their student at school.

5

parental rights because it was "devoid of any form of constraint or compulsion" and minor was able to talk with her parents before taking the pills she had requested). In fact, parents are free to ask a student about their gender identity or preferred pronouns, and to have any conversation they desire with their students.

The Ninth Circuit has repeatedly held that a parent has no substantive due process right to control the administration, policies, curriculum, or operations of their child's school. *See Parents for Priv.*, 949 F.3d at 1231; *McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 711 (9th Cir. 2019); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204-1207 (9th Cir. 2005), *amended on denial of reh'g en banc*, 447 F.3d 1187 (9th Cir. 2006). That is so even where a school's chosen policy conflicts with their beliefs about how best to raise their child. *See, e.g.*, *Parents for Priv.*, 949 F.3d at 1231 (parents have no constitutional right to override school policy allowing students to use facilities associated with their gender identity).

District courts have applied this clear rule to dismiss in a number of recent challenges to school districts policies or practices respecting transgender and gender nonconforming students' identities, holding that parents did not have a substantive due process right to be notified of their student's gender identity by the school district. *See, e.g., Regino v. Staley*, 2023 WL 4464845, at *3-4 (E.D. Cal. July 11, 2023), *appeal docketed,* No. 23-1601 (9th Cir. July 21, 2023); *Foote v. Town of Ludlow*, 2022 WL 18356421, at *5, 9 (D. Mass. Dec. 14, 2022), *appeal docketed*, No. 23-1069 (1st Cir. Jan. 17, 2023); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Ed.*, 622 F. Supp. 3d 118, 130 (D. Md. 2022), *vacated and remanded based on lack of standing*, 78 F.4th 622 (4th Cir. 2023), *cert. denied sub nom. Jane Parents 1 v. Montgomery Cnty. Bd. of Ed.*, 144 S. Ct. 2560 (2024); *Blair v. Appomattox Cnty. Sch. Bd.*, 2024 WL 3165312 at *6 (W.D. Va. June 25, 2024), *appeal docketed*, No. 24-1682 (4th Cir. July 24, 2024); *Doe v. Del. Valley Reg'l High Sch. Bd. of Ed.*, 2024 WL 706797 at *11 (D.N.J. Feb. 21, 2024).

### b. Parent Plaintiffs' arguments that student-privacy policies violate their substantive due process rights fail

To support their parental rights argument, Parent Plaintiffs primarily rely upon this Court's prior order granting plaintiffs Mirabelli and West's motion for preliminary injunction based on their original Free Exercise claim. ECF 42 at 14-17. But there were no parent plaintiffs or parental rights claims in the case at that time. *See id.* at 21 (noting the issue of parental rights "is not resolved here").

Parent Plaintiffs also appear to rely on inapposite parental rights related to a child's medical care or treatment, including psychological treatment.[3] ECF 153-1 at 15 n.3. Such parental rights are irrelevant here because student-privacy policies do not have anything to do with medical care or treatment. Honoring a student's request to use different pronouns or a preferred first name does not constitute medical "care" or "treatment" by a district. *See, e.g.*, Decl. of Darlene Tando (Tando Decl.) ¶ 34; *Foote*, 2022 WL 18356421 at *5 ("Plaintiffs have failed to adequately allege that Defendants provided medical or mental health treatment . . . simply by honoring their requests to use preferred names and pronouns at school"); *Regino*, 2023 WL 4464845 at *3 (rejecting similar allegation). Having a gender nonconforming or transgender identity is not, in itself, a medical condition. *See, e.g.*, Tando Decl. ¶¶ 16; 31; *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594-95 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (while gender dysphoria is a mental health disorder suffered by some gender nonconforming individuals, being transgender is "not a psychiatric condition, and implies no impairment in judgment, stability, reliability, or general social or vocational capabilities"). And even for those individuals with gender dysphoria, the mere fact that social transition has recognized benefits for their well-being does not render it medical treatment giving

---

[3] Parent Plaintiffs' reliance on *Parham v. J.R.*, 442 U.S. 584, 604 (1979) is misplaced. There, the Court addressed parental rights in context of child's institutionalization in a state mental hospital, finding that "it was error to hold unconstitutional the State's procedures for admitting a child for treatment to a state mental hospital." *Id.* at 620.

rise to a parental substantive due process right. *See* Tando Decl. at ¶¶ 34-36. Because the so-called policies do not implicate medical interventions by the government, Plaintiffs' reliance on cases addressing medical care is unavailing.

In addition, Parent Plaintiffs' reliance on the Family Educational Rights and Privacy Act (FERPA) to support their parental rights claim is misplaced because they have not asserted a claim under FERPA,[4] constitutional rights are not synonymous with statutory rights, and even if they were, student-privacy policies do not conflict with FERPA. Under FERPA, parents must be afforded "the right to inspect and review" their child's education records and school districts must "establish appropriate procedures for the granting *of a request by parents*" to access these records. 20 U.S.C. § 1232g(a)(1)(A) (emphasis added).[5] Student-privacy policies do not implicate this right of access to education records upon request, which still governs any request from parents for their child's education records. It is thus not surprising that Plaintiffs have not actually alleged that their schools refused them access to any of their student's education records protected by FERPA. Thus, FERPA's provisions are irrelevant to the constitutional parental rights claim.[6]

_____

[4] Nor could they because FERPA does not permit a private cause of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276, 287, 290 (2002); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 783 (2d Cir. 2002).

[5] FERPA defines "education records" as "records, files, documents, and other materials" containing information directly related to a student that "are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

[6] It is unclear what applicable legal arguments Parent Plaintiffs make when they argue that students maintain some rights to free speech or expression at school, where parents have delegated control of their child to school officials under the doctrine of *in loco parentis*. ECF 153-1 at 12. Plaintiffs cite *Mahanoy Area Sch. Dist. v. B.L.*, 594, U.S. 180 (2021), but that case is inapt because it involved a school policy that violated a student's free speech rights off-campus, where the school did not stand *in loco parentis*. *Id.*at 183-193. No similar facts, claim, or school policy is at issue here.
In addition, their argument that youth have a right to have "decisions made by their parents rather than the state" is fundamentally flawed. It is students—not districts—who make the decision to socially transition at school and when to inform their parents. Decl. of Maria Al-Shamma (Al-Shamma Decl.) ¶ 35. And, of course, students remain free to tell their parents at any time in the time and manner they choose, rather than school staff forcing them to do so in the time and manner chosen by staff. *Id.* at ¶¶ 28, 36; *cf. Anspach*, 503 F.3d 256, 263-64.

### c.    Student-privacy policies survive review, whether rational basis or strict scrutiny applies

Because there is no fundamental parental right to forced disclosure of Plaintiffs' children's gender identity, there need only be a "reasonable relation to a legitimate state interest" to justify a student-privacy policy. *Fields*, 427 F.3d at 1208 (applying rational basis review to parental substantive due process claim). The State has a legitimate, and even compelling, interest in protecting transgender and gender-nonconforming students from bullying and harassment, and in fostering a safe and supportive school environment where students are not outed before they are ready. *See, e.g., New York v. Ferber*, 58 U.S. 747, 756 (1982) (state interest in "safeguarding the physical and psychological well-being of a minor" is compelling); *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 528 (3rd Cir. 1980) (policy served compelling state interest in not discriminating against transgender students); *see also*, *Parents for Priv.*, 949 F.3d at 1238 ("[T]he Student Safety Plan is rationally related to the legitimate purpose of protecting student safety and well-being, and eliminating discrimination on the basis of sex and transgender status"); *Fields*, 427 F.3d at 1209. This includes an interest in protecting these students from the harms, such as a heightened risk of suicide, that can result when school staff "forcibly out" students without their consent and before they are ready. Al-Shamma Decl. ¶¶ 25, 31-34 (detailing emotional and education harms faced by transgender or gender-nonconforming youth rejected by family, including harassment, homelessness, and self-harm); ¶¶ 37-38, 40-41 (detailing risk of students not reporting harassment, bullying, or thoughts of self-harm at school because of fear of being outed to parents); Tando Decl. ¶¶ 50, 53-54; Decl. of Gloria Cruz (Cruz Decl.) ¶ 3.

There is also a compelling governmental interest in protecting students' privacy as to their bodily autonomy, even with respect to their parents. *See, e.g.*, Cal. Const. Art. 1, §1; *Poway Unified Sch. Dist. v. Sup. Ct.*, 62 Cal. App. 4th 1496,

1505 (1998) ("[M]inors, as well as adults, possess a right of privacy under the California Constitution"); *Ngoun v. Wolf*, 517 F. Supp.2d 1177, 1191 (C.D. Cal. 2007) (student had "[c]onstitutionally protected privacy right with respect to disclosure of her sexual orientation" by school administrators to her parents); *Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307 (1997) (pregnant minor has protected privacy interest under California Constitution in deciding whether to terminate pregnancy).

Even if strict scrutiny applies here (and it does not), a policy of guarding against forced outing absent consent, legal obligation, or regard for student well-being would meet that standard as well. *Reno v. Flores,* 507 U.S. 292, 301-02 (1993) (government infringement on "fundamental" right must be narrowly tailored to serve a compelling state interest). Such a policy would be narrowly tailored in furtherance of the State's compelling interest in protecting students because it would prevent the disclosure of information that may lead to harm, while allowing disclosure with a student's consent and, absent consent, where there is either a compelling need for disclosure to protect a student's well-being, or where it would otherwise be required by law. Thus, Parent Plaintiffs' claim for violation of substantive due process fails.

### 2. Plaintiffs' free exercise of religion claims fail on their merits

#### a. Plaintiffs have not demonstrated a cognizable burden on their religion

Plaintiffs' Free Exercise Clause claim fails at the threshold because Plaintiffs cannot show that a student-privacy policy burdens the free exercise of their religion. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021); *Sherbert v. Verner*, 374 U.S. 398, 405 (1963). Plaintiffs have not alleged cognizable harm to their religious practices that is traceable to the AG. Both the Teacher Plaintiffs and Parent Plaintiffs merely state that they have "moral/ideological and religious objections" to student-privacy policies, ECF 153-1 at 5, 6, but they fail to

demonstrate how such policies meaningfully burden their ability to practice their religion in a concrete way. *See* ECF 156 at 11-21. Mere indignation is not a sufficient burden or harm to form the basis of a lawsuit under the Free Exercise Clause. *See Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 82 (2019) (Gorsuch, J., concurring); *Foothills Christian Church v. Johnson*, 2023 WL 4042580, at *15 (S.D. Cal. June 15, 2023).

Moreover, the Parent Plaintiffs have not shown that any student-privacy policy is currently interfering or likely to interfere in the future with their ability to practice their religion with regard to their children's gender identity. They are already aware of their children's gender incongruence and have been making school-choice decisions, as well as engaging with their children in ways that are consistent with their religious and moral beliefs. *See, e.g.,* SAC at ¶¶ 120-26, 135-41, 149-51. Therefore, they have failed to allege any meaningful burden on the exercise of their moral and religious direction of their children on issues of gender.

### b. Student-privacy policies are subject to, and survive, rational basis review

#### (1) Student-privacy policies are neutral and generally applicable

Even if the Court were to find a cognizable burden on Plaintiffs' exercise of religion, a student-privacy policy nevertheless would be subject only to deferential rational basis review. Governmental restrictions that incidentally burden religious activity are not discriminatory—and as such are subject to rational basis review—if they are neutral and of general applicability. *Emp't Div. v. Smith*, 494 U.S. 872, 878-82 (1990); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 (9th Cir. 2015); *see also Fulton*, 593 U.S. at 532-34 (declining to overturn *Smith*).

Plaintiffs do not and cannot argue that student-privacy policies are not neutral. Such a policy neither targets nor has a purpose of suppressing religion, *Church of Lukumi Babalu Aye v. City of Hialeah* (*Lukumi*), 508 U.S. 520, 533-34 (1993); *Doe*,

11

19 F.4th at 1177, and it applies across-the-board, regardless of anyone's religious or secular beliefs or practices, *Stormans*, 794 F.3d at 1077. Thus, these policies do not "restrict practices *because of* the religious motivations of those performing the practices." *Tingley v. Ferguson*, 47 F.4th 1055, 1067, 1085 (9th Cir. 2022).

Nor does a student-privacy policy violate principles of general applicability. A law is not generally applicable if it selectively prohibits "conduct motivated by religious belief, but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest." *Stormans*, 794 F.3d at 1079; *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("[c]omparability is concerned with the risks various activities pose," as measured "against the asserted government interest that justifies the regulation at issue").

In attempting to show that student-privacy policies are not generally applicable, Plaintiffs point to allowances for parents to observe or assist in their child's classroom, or to access their child's school records. ECF 153-1 at 8-9. But these allowances are not comparable exceptions to student-privacy policies; in fact, they are not exceptions at all, but rather are unrelated State laws that provide alternative means for parents to be involved in a student's education and, through such involvement, learn of a child's gender identity at school *despite* a student-privacy policy. *See, e.g.*, Cal. Educ. Code § 51101(a)(1), (3). And although Plaintiffs contend that these unrelated laws might "force[]" a student "to deceive another student's parents," ECF 153-1 at 9, they do not explain or provide any evidence on how this occurs in theory or in practice.

Plaintiffs also contend that student-privacy policies would not be generally applicable because they have "a mechanism for 'individualized exemptions'" whereby disclosure without a student's consent is permissible if there is a "legitimate need" (SAC at ¶ 388) for it. ECF 153-1 at 7-8. But "[t]he mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability." *Stormans*, 794 F.3d at 1082. Rather, an

exemption must necessarily lead to a "formal and discretionary mechanism for individual exceptions," *Tingley*, 47 F.4th at 1088 (citing *Fulton*, 593 U.S. at 533-34), based on a "an open-ended, purely discretionary standard," *Stormans*, 794 F.3d at 1081. Plaintiffs fail to meet this standard. Student-privacy policies that allow for disclosure of a student's gender identity when necessary to protect the student's well-being—such as in cases of bullying, self-harm, in-school violence, or a medical emergency—are tied to "objective criteria" that prevent school officials from having "unfettered discretion" to determine whether to disclose or not. *Stormans*, 794 F.3d at 1081-82; *cf. also Doe*, 19 F.4th at 1180. Further, rather than undermining a student-privacy policy's overarching goals of promoting student safety and well-being, it would *further* those objectives because it would permit disclosure of a student's gender identity in circumstances where doing is necessary to maintain the student's health and safety.

In summary, student-privacy policies are neutral and generally applicable. Therefore, they are subject to rational basis review, which they easily pass: a policy that preserves the privacy of students' gender identity—where they wish it to remain private—is undoubtedly related to the government's interest in furthering students' well-being and preserving their integrity.

### (2) The Court should reject Plaintiffs' hybrid rights theory

To invoke a higher level of scrutiny, Plaintiffs argue that student-privacy policies would "burden parents' right to direct the *religious* upbringing of their children." ECF 153-1 at 10; *accord* SAC ¶ 490. This "hybrid rights" theory, in which a "Free Exercise claim is brought in conjunction with a claim alleging a separate constitutional violation for the same communicative activity," has been "effectively repudiated" in the Ninth Circuit. *Dousa v. Dep't of Homeland Sec'y*, 2020 WL 434314, at *11 (S.D. Cal. Jan. 28, 2020) (citing *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) (noting the hybrid rights theory has been "widely criticized" and declining to "allow[] a plaintiff to bootstrap a free

13

exercise clause in this manner”)); *see also Tingley*, 47 F.4th at 1089 (declining to adopt a hybrid rights theory); *Parents for Priv.*, 949 F.3d at 1236-38 (“The extent to which the hybrid rights exception truly exists, and what standard applies to it, is unclear.”). Other circuits have likewise repudiated the hybrid rights theory.[7]

Plaintiffs’ hybrid-rights argument references *Hardwick v. Fruitridge School District*, 54 Cal. App. 696, 710 (1921), for the proposition that they may “object to [*their*] *own* ‘children being coerced by school authorities into taking part’” in classroom “‘exercises contrary to the teachings they have received from their parents on that subject.’” ECF 153-1 at 10. But that case is inapposite because here there is no allegation or evidence that any student has been forced or coerced into violating their religious beliefs or teachings regarding students’ gender identity. Indeed, Plaintiffs’ only allegations regarding purported coercion relate to the effect that CDE’s guidance may have on “local school districts”—not individual students. SAC at ¶¶ 448, 475. And that guidance centers the *students’* choices about whether they desire to have information about *their own* gender identity, expression, names, pronouns, and status disclosed. *Cf.* Al-Shamma Decl. ¶ 35 (social transition occurs at school only when a student requests it). Further, unlike the compulsory social dancing program in *Hardwick*, which lacked a compelling state interest, *see Citizens for Parental Rights v. San Mateo Cnty. Bd. of Educ.*, 51 Cal. App. 3d 1, 19 n.20 (1975), here, student-privacy policies indisputably serve a compelling interest in protecting student privacy, safety, and well-being. *See supra* § I(C)(i)(c).

Finally, even if a hybrid rights exception did exist, it would not apply here. Plaintiffs’ Substantive Due Process claims have no merit, *see supra* § I(C)(1), so they cannot “bootstrap” application of strict scrutiny to their Free Exercise claim by pleading these other claims. *See Parents for Priv.*, 949 F.3d at 1237.

_____

[7] *E.g., We The Patriots USA v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 159 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024); *Combs v. Homer-Ctr. Sch. Dist.*, 540 F.3d 231, 247 (3d Cir. 2008); *Kissinger v. Bd. of Trs. of Ohio State Univ., Coll. of Veterinary Med.*, 5 F.3d 177, 180 (6th Cir. 1993).

### c. Student-privacy policies would satisfy strict scrutiny

Even if strict scrutiny were to apply, a student-privacy policy would pass constitutional muster because it "advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 541. Such a policy satisfies that standard because it is narrowly tailored to meeting the State's compelling interests in protecting students from physical, psychological, and emotional harm, including bullying, harassment, or child abuse on account of their gender identity; and respecting students' privacy regarding their gender identity. *See supra* § I(C)(i)(c). Granting exceptions to school personnel for other reasons, or incorporating a system in which parents may opt out of application of a school policy as applies to their children, could destabilize the school environment, would place students in danger of harassment, bullying, or harm, and would not be administrable. *See* e.g., Al-Shamma Decl. ¶¶ 25, 31-34, 37-38, 40-41; Tando Decl. ¶¶ 50, 53-54; Cruz Decl. ¶ 3. These potential harms are not theoretical. *Id.*

### 3. Teacher Plaintiffs' free speech claim fails on its merits

The Teacher Plaintiffs likewise cannot establish a viable claim that a student-privacy policy—whether state or local—violates their right to free speech. When a public employee claims that the government has violated their speech rights, courts apply a multi-step inquiry to determine whether the speech at issue is constitutionally protected, and if so, whether that speech was a substantial or motivating factor for an actual or threatened adverse employment action. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011); *see Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968). Upon such a showing, a court then balances the interests of the public employee and the government, determining whether there are legitimate administrative needs for the government employer to suppress certain speech that outweigh the plaintiff's First Amendment rights. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776-77 (9th Cir. 2022); *see Pickering*, 391 U.S. at 568.

#### a. Teacher Plaintiffs' speech is not constitutionally protected

A public employee's speech is constitutionally protected if they spoke on a matter of public concern and in their private capacity as a citizen, rather than a public employee. *Dodge*, 56 F.4th at 777. As to public concern, a plaintiff must establish that their speech is fairly related to any matter of political, social, or other concern to the community, or addresses a subject of legitimate news interest. *Lane v. Franks*, 573 U.S. 228, 241 (2014). While matters of public concern are defined broadly, courts must look to the "'content, form, and context of a given statement, as revealed by the whole record.'" *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

Here, the speech at issue is a teacher's nonconsensual disclosure of a student's gender identity information to the student's parents. ECF 153-1 at 27. The Teacher Plaintiffs allege that such disclosures constitute speech on a topic of public concern "[b]ecause 'gender identity' is perhaps the preeminent 'controversial' issue of the day." *Id.* But this wholly ignores the all-important content of the speech: While speech concerning the teachers' views on gender identity issues or policies might relate to matters of public concern, the contemplated disclosure of gender identity information here relate solely to the private and personal information of students. *See Pettus v. Cole*, 49 Cal. App. 4th 402, 444-45 (1996) (recognizing "sexual orientation and conduct" are personal matters covered by the right to privacy). Whether or not a student identifies as transgender or requests that their school address them with a different name or pronouns is not a matter of "concern to the community" or "subject of legitimate news interest." *Lane*, 573 U.S. at 241; *see Desrochers*, 572 F.3d at 709 ("the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest").

The Teacher Plaintiffs also fail to establish that their desired disclosures constitute private speech. A public employee speaks in a personal capacity "if he

ha[s] no official duty to make the questioned statements, or if the speech [i]s not the product of performing the tasks he was paid to perform." *Dodge*, 56 F.4th at 778 (cleaned up). The inquiry is a practical one, requiring assessment of scope and content of the plaintiff's job responsibilities. *Johnson*, 658 F.3d at 966. Where the speech at issue "'owes its existence'" to the plaintiff's government employment, the speech is that of a public employee, not a citizen. *Id.* (citation omitted).

The disclosures at issue here are indisputably attributable to the Teacher Plaintiffs' position as teachers. Indeed, as this Court preliminarily concluded, these Plaintiffs "duties as teachers [include] the duty to communicate with a student's parents from time to time about the student's school performance." ECF 42 at 22. When the Teacher Plaintiffs interface with parents about their student's performance and behavior in the school environment and only learns of the same through interaction in that environment, the teachers are "'speaking as the government'" and, thus, subject to regulation of the content of their communications. *Johnson*, 658 F.3d at 970 (citation omitted); *see Willey v. Sweetwater Cnty. Sch. Dist. #1 Bd. of Trust.*, 2023 WL 9597101, at *8-9 (D. Wyo., Dec. 18, 2023) (dismissing teacher's free speech challenge to restrictions on gender-identity-related communications with parents because "communicating with parents about a student's progress is part of a teacher's official duties").

To the extent the Teacher Plaintiffs argue that this inquiry is limited to instructional speech to students ("curricular speech"), their argument is squarely foreclosed by circuit precedent, *see Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1264 (9th Cir. 2016) (teacher who conveyed to parents disagreement with school policy spoke in her official capacity). Such an analysis wholly abandons the "practical" considerations that have long guided the assessment of a public employee's job responsibilities. *See Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). As this Court and others have recognized, communication with parents fits well within the Teacher Plaintiffs' official job responsibilities. ECF 42 at 22; *see*

*Coomes*, 816 F.3d at 1264; *Willey*, 2023 WL 9597101, at *8-9.

      **b.**   **The government's interests outweigh Teacher Plaintiffs' speech rights**

Even if the Teacher Plaintiffs could establish that disclosure of private student information to parents constitutes protected speech, the legitimate administrative needs of schools to be able to regulate such speech outweigh the teachers' First Amendment rights. *Pickering*, 391 U.S. at 568. As the Ninth Circuit has explained, "[t]he employer's interest outweighs the employee's [speech rights] . . . if the employee's speech . . . 'has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Nunez v. Davis*, 169 F.3d 1222, 1228 (9th Cir. 1999) (citation omitted).

The Teacher Plaintiffs' proposed speech would be detrimental to their ability to effectively educate all students in their classrooms, as well as their district's efforts to further the education process by creating a safe and supportive learning environment. Feeling supported by educators positively impacts students' academic performance, educational aspirations, attendance, and psychological well-being. Tando Decl. ¶ 65(a)-(c), (e). In fact, a student-teacher relationship built on trust and support is an indispensable aspect of effective education. *See* SAC at ¶ 171.

Disclosure of a student's gender identity by a teacher, over a student's objection, destroys this critical component of the education environment. Where a student's teacher is unwilling to abide by a student's request for privacy on such a personal issue, it follows that the student is less likely to trust in and connect with that teacher in a way that maximizes the student's educational experience. *See e.g.*, Al-Shamma Decl. ¶¶ 38, 41. The contemplated forced disclosures of private student information are thus highly likely to disrupt both the Teacher Plaintiffs' ability to effectively do their jobs and their district's ability to provide a safe, respectful, and inclusive learning environment.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS WEIGH AGAINST ISSUANCE OF AN INJUNCTION

### A.   Plaintiffs Cannot Establish Irreparable Harm

Plaintiffs rely on their purported constitutional injuries to establish irreparable harm. ECF 153-1 at 32. But because they have not, in fact, established an imminent injury attributable to the AG, they also fail to establish any irreparable harm with respect to their claims against him. *See Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (to establish irreparable injury, plaintiff must show "immediate threatened harm").

### B.   The Balance of Equities Weighs Against an Injunction

Under the *Winters* factors, "when the government is a party, the last two factors [balance of equities and public interest] merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, the balance of equities does not tip in Plaintiffs' favor. Plaintiffs again rely solely on presumptions stated in the Court's prior order that are based on constitutional interests that are not applicable to their vastly expanded claims now, where they fail to establish any harm caused by the AG.  *See* ECF 153-1 at 32. At the same time, they disregard the interests of students who do not consent to having their gender identity disclosed to their parents because they do not feel safe or ready to do so, as well as the tangible risks to their physical, psychological, and emotional safety and dignity that would result from forced disclosure of their gender identity. *See supra* § I(C)(i)(c); *see also Tingley*, 47 F.4th at 1078 (state has compelling interest in affirming the equal dignity and worth of LGBT people).

## III. PLAINTIFFS SEEK AN INJUNCTION THAT IS UNENFORCEABLE, UNWORKABLE, AND OUTSIDE THE SCOPE OF THEIR CLAIMS

It is well-established that a court "should not issue an unenforceable injunction." *In re Est. of Ferdinand Marcos Hum. Rts. Litig.*, 94 F.3d 539, 545 (9th Cir. 1996). Plaintiffs' proposed injunction is completely unenforceable, requiring

the AG—who does not employ, regulate, or in any way legally control the more than 300,000 individual teachers and 250,000 other staff working at schools in California—to somehow monitor and police all of their interactions with the parents of the 5.8 million students in the State to ensure that staff never "mislead" or "lie" to parents about a student's gender identity or use the students' preferred pronouns. ECF 153-1 at 2; *see, e.g.*, CDE, *Fingertip Facts on Education in California,* https://www.cde.ca.gov/ds/ad/ceffingertipfacts.asp.

Second, a preliminary injunction is inappropriate—and constitutes an abuse of discretion—if the injunctive relief is "based on claims not pled in the complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633, 636 (9th Cir. 2015); *see LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021) (district court abused its discretion when it "granted relief based on claims that Plaintiffs did not allege"). Here, the proposed injunction exceeds the scope of Plaintiffs' claims and alleged injuries because it would enjoin enforcement of half a dozen laws not challenged in the lawsuit. *See* ECF 153 at 1-2 (seeking to enjoin Assembly Bill 1955, Assembly Bill 1266, "Cal. Educ. Code §§ 220, 220," Cal. Gov. Code § 11135, and Cal. Code Regs., tit. 5, §§4900-4965, and unidentified "other provision[s] of California law" and "regulations"). This includes AB 1955, which is not the subject of Plaintiffs' claims or their prayer for relief, and regulates policies that are categorically different than those that have allegedly injured Plaintiffs.[8] *See id.*; *see also* SAC ¶¶ 324-325, 350-493, p. 121; Tr. of July 11, 2024 Hearing at 6:15; 7:20-28; 8:22-23; 9:16-21.

///

///

---

[8] AB 1955 prohibits school districts from requiring that staff disclose the sexual orientation, gender expression, or gender identity of students to others without consent, unless otherwise required by state or federal law. See 2024 Cal. Stat., ch. 95. Plaintiffs have not shown their schools would have adopted policies prohibited by AB 1955, such that their injuries or claims could have any connection to the currently inoperative law. Regardless, AB 1955 would still survive a constitutional challenge for the same reasons discussed above.

# IV. ANY INJUNCTION MUST BE LIMITED TO THE NAMED PLAINTIFFS

For the reasons discussed above, the Court should deny Plaintiffs' motion for preliminary injunction. But, even if the Court were inclined to grant the motion, any injunctive relief should be limited to the named Plaintiffs only.

## A. A Class-Wide Injunction Requires Provisional Class Certification

An "injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see also* Fed. R. Civ. P. 64(d) (injunction limited to parties); *see also Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021). Injunctive relief must be narrowly tailored, "particularly" at the preliminary injunction stage. *Zepeda*, 753 F.2d at 728 n.1. While courts have recognized certain instances where class-wide relief is necessary in order to give the named plaintiffs relief, this limited exception does not apply here because there is nothing about the relief Plaintiffs request *for themselves* that requires an injunction covering *other* parents and teachers. Notably, remedying Plaintiffs' alleged harms does not require wholesale alteration of policies in every school district across the State. *Id.* Indeed, to the extent Plaintiffs are granted an injunction, that relief will follow them wherever they go, in whatever district they work or send their children to. *See* Fed. R. Civ. P. 65(d).

## B. Plaintiffs Cannot Establish an Entitlement to Class Certification

A plaintiff seeking provisional class certification for a class-wide preliminary injunction must satisfy the ordinary requirements of Federal Rule of Civil Procedure 23. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012). Rule 23 requires a plaintiff to "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims and defenses, and adequacy of representation . . . ." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court must analyze "Rule 23 evidence rigorously" to

21

ensure that the moving party has meet their burden. *Martinez v. Brown*, 2011 WL

1130458, at *8 (S.D. Cal. Mar. 25, 2011); *see Gen. Tel. Co. of S.W. v. Falcon*, 457

U.S. 147, 161 (1982) (class actions "may only be certified if the trial court is

satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

satisfied").

### 1. The proposed classes are not ascertainable

Plaintiffs' moving papers do not define the proposed class or subclasses they

seek to certify. *See generally* ECF 153-1 at 32-35. For this reason alone, Plaintiffs'

request for provisional certification should be denied. *See Hawkins v. Comparet-*

*Cassani*, 251 F.3d 1230, 1238-39 (9th Cir. 2001) (district court is not "to bear the

burden of constructing subclasses" or otherwise correcting Rule 23(a) problems;

rather, the burden is on plaintiffs) (citing *U.S. Parole Comm'n v. Geraghty*, 445

U.S. 388, 408 (1980)); *see also* Fed. R. Civ. P. 7(b)(1)(C) ("[a] request for a court

order must be made by motion. The motion must . . . state the relief sought.").[9]

### 2. Plaintiffs fail to meet the requirements of Rule 23

#### a. Plaintiffs lack evidence to support provisional class certification

Even if the proposed classes were ascertainable, as a threshold matter, it bears

emphasis that Plaintiffs have utterly failed to provide the actual factual evidence

needed for the "'rigorous'" Rule 23 analysis that this Court must conduct. *See*

---

[9] To the extent Plaintiffs seek provisional certification of the putative classes identified in their prior class certification motion, those class definitions also fail as a matter of law. *See* ECF 136 at 13 (seeking certification of class of all "individuals who *desire* to participate in California's public education system . . . without having to subject themselves to Parental Exclusion Policies") (emphasis added). "If a class definition includes a requirement that cannot be proven directly, and that depends instead upon each putative class member's feelings and beliefs, then there is no reliable way to ascertain class membership." *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 563 (N.D. Cal. 2016); *see Guillory v. Am. Tobacco Co.*, 2001 WL 290603, at *3 (N.D. Ill. Mar. 20, 2001) (rejecting a class of individuals who "desire to" participate in a program because the class definition depended on subjective criteria and relied upon the subjective "desires" of individual class members); *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 151-52 (N.D. Cal. 2015) ("a class is generally not ascertainable if membership in the class is based on subjective criteria, such as states of mind"); *C.F. v. Lashway*, 2017 WL 2574010, at *4 (W.D. Wash. June 14, 2017) ("the word 'desire' does not allow the Court to determine, based on objective criteria, who is included in the proposed class").

22

*Martinez*, 2011 WL 1130458, at *8 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622-23 (1997)). In fact, as to the Parent Plaintiffs, the only information offered regarding the policies in their unidentified school districts constitutes inadmissible hearsay. *See* ECF 153-6 at 38, 44, 53, 56-57, 65-66. This lack of facts deprives this Court of the ability to thoroughly assess whether Plaintiffs have carried their Rule 23 burden. *See Martinez*, 2011 WL 1130458, at *8.

As to both commonality and typicality, for instance, Plaintiffs baldly allege that because they seek declaratory and injunctive relief, these components of the inquiry are automatically satisfied. ECF 153-1 at 34. But this is incorrect. Indeed, this Court declined to certify a statewide class in a case where both declaratory and injunctive relief were sought. *Martinez*, 2011 WL 1130458, at *9-10. There, a plaintiff submitted 126 declarations from inmates at 17 California prisons regarding prison conditions as they related to Native American religious practice, but lacked evidence concerning 13 other prisons and also non-traditional settings. *Id.* Absent such evidence, the Court refused to assume that the plaintiff's claims were typical of religious claims from Native American inmates in all correctional settings. *Id.*

So too here. Plaintiffs have submitted a handful of declarations expressing the individual experiences and religious views of four teachers in EUSD and two sets of parents (two families) in Fresno and Los Angeles counties (two school districts). *See* ECF 153-6. This Court cannot, on this record, assume that these Plaintiffs' individual constitutional claims are typical of all claims by the hundreds of thousands of members in their proposed subclasses.[10] Putative class members' individual claims will turn on the unique specifics of not only their own beliefs, but also the particular policies and procedures adopted by their respective school districts. *See Martinez*, 2011 WL 1130458, at *10. Here, Plaintiffs' limited allegations and meager evidentiary showing render this Court unable to make the

---

[10] Plaintiffs allege there are "approximately 1,000 school districts" in California. SAC at ¶ 3; *Cf.* CDE, *Fingertip Facts*, *supra* at § III (1,019 districts, 319,004 teachers, and 5.8 million students).

requisite finding of typicality pursuant to Rule 23(a).

### b. Plaintiffs cannot demonstrate commonality or typicality

Even if Plaintiffs had offered sufficient admissible evidence, the inherent individualized nature of their claims renders it impossible for them to demonstrate the commonality and typicality needed for a statewide class action. Rule 23(a)(2) requires a plaintiff to demonstrate the existence of a "common contention" that is of "such a nature that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff must show that other putative class members "have the same or similar injury," "the action is based on conduct which is not unique to the named plaintiffs," and "other class members have been injured by the same . . . conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Here, the putative class members are dissimilar because they have varying personal beliefs, they are subject to varying local district policies, and the factual circumstances surrounding their children/students varies. This inherent variation is fatal to Plaintiffs' request for statewide class certification.

### c. A class cannot be certified under Rule 23(b)

Plaintiffs argue that "provisional class certification is appropriate in this context under both Rule 23(b)(2) and Rule 23(b)(1)(A)." ECF 153-1 at 23. A Rule 23(b)(2) class "is appropriate only where the defendants have acted consistently toward the putative class *and* where the putative class is amenable to uniform group remedies." *See Martinez*, 2011 WL 1130458, at *11. A Rule 23(b)(1)(A) class may be certified if separate actions "would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001).

Here, the AG has not acted consistently toward the putative class—the AG has taken enforcement action against one district, but not others. *See* ECF 153-2 at ¶ 22.

And, because the putative class members each present a unique set of facts, and are subject to varying local district policies (and not a uniform statewide policy), the proposed classes are not amenable to uniform remedies pursuant to Rule 23(b)(2). As for Rule 23(b)(1)(A), Plaintiff cannot establish that separate lawsuits will result in incompatible standards of conduct for the AG.[11] As the AG's disavowal of enforcement against EUSD for its compliance with the Court's order in this case demonstrates, the AG can and will treat each school district as required by each particular circumstance.

## CONCLUSION

For the reasons discussed above, the Court should deny Plaintiffs' Motion.

Dated: October 21, 2024                    Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
JENNIFER A. BUNSHOFT
KEVIN L. QUADE
Deputy Attorney General

/s/ Emmanuelle S. Soichet
EMMANUELLE S. SOICHET
Deputy Attorney General
*Attorneys for Defendant Attorney General Rob Bonta*

---

[11] A Rule 23(b)(1)(A) class also fails because Plaintiffs seek damages. ECF 133 at 121:20; *Zinser*, 253 F.3d at 1193 (no Rule 23(b)(1)(A) class for damages).

# CERTIFICATE OF SERVICE

Case Name:  **Mirabelli et al. v. Olson, et al.**      No.   **3:23-cv-00768-BEN-VET**

I hereby certify that on <u>October 21, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **DEFENDANT BONTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**

2. **APPENDIX OF DECLARATIONS SUBMITTED IN SUPPORT OF DEFENDANT BONTA'S OPPOSITION TO MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTION**

3. **OBJECTION TO FIRST DECLARATION OF JANE POE**

4. **OBJECTION TO THE SECOND DECLARATION OF JANE POE**

5. **OBJECTION TO DECLARATION OF JOHN POE**

6. **OBJECTION TO DECLARATION OF JOHN DOE**

7. **OBJECTION TO THE FIRST DECLARATION OF JANE DOE**

8. **OBJECTION TO THE SECOND DECLARATION OF JANE DOE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 21, 2024</u>, at Los Angeles, California.

| J. Sissov | */s/ J. Sissov* |
|:---:|:---:|
| Declarant | Signature |

SA2024300204
67180332.docx