LEN GARFINKEL, State Bar No. 114815
General Counsel
PAUL GANT, State Bar No. 159844
Assistant General Counsel
VIRGINIA CALE, State Bar No. 258557
Deputy General Counsel
CHRISTOPHER MANDARANO, State Bar No. 263625
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, California 95814
Telephone: 916-319-0860
Facsimile: 916-322-2549
Email: cmandarano@cde.ca.gov
Attorneys for Defendants Tony Thurmond in his official capacity as State
Superintendent of Public Instruction and State Board of Education Members in their
official capacities

*(Defendants Tony Thurmond in his official capacity and State Board of Education
Members in their official capacity are Governmental Parties Exempt from the Provisions
of FRCP 7.1)*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARK OLSON, in his official capacity as President of EUSD Board of Education, et al.,<br><br>        Defendants. | Case No. 3:23-cv-0768-BEN-VET<br><br>DEFENDANT TONY THURMOND'S AND STATE BOARD OF EDUCATION MEMBERS' OPPOSITION TO PLAINTIFFS' MOTION FOR A CLASS-WIDE PRELIMINARY INJUNCTION<br><br>Hearing Date:    November 4, 2024<br>Time:               10:30 a.m.<br>Courtroom:       5A<br>Judge:Hon.       Roger T. Benitez |

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................i

TABLE OF AUTHORITIES .................................................................................ii

I.      INTRODUCTION ..........................................................................................1

II.     LEGAL STANDARD ....................................................................................2

III.    ARGUMENT....................................................................................................2

  A. Class-Wide Injunctive Relief is Improper Without Certification ................2

  B. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims..............4

  1. The Parent and Teacher Plaintiffs Lack Standing .........................................4

   a. New Evidence Regarding Escondido Union School District's Independent Action in Adopting AR 5145.3 Undermines Plaintiff Teachers' Standing against the State Education Defendants due to lack of causation ................4

   b. Teacher Plaintiffs Fail to Establish Injury ...............................................5

   c. Parents Doe and Poe Lack Standing ........................................................6

  2. The Student Privacy Protections Addressed in the CDE's Non-Binding Guidance do not Violate Fourteenth Amendment Parental Rights...................6

  3. Neither the CDE nor the SBE have Violated Plaintiffs' Free Exercise Rights.9

  4. Neither the CDE nor the SBE have Violated Plaintiff Teachers' Free Speech Rights.................................................................................................11

   a. Individual Gender Identity is Not a Matter of Public Concern .............11

   b. Student Privacy Protections are Essential to Education .......................14

   c. The State has a Significant Interest in Protecting Student Privacy ........15

  C. Plaintiffs Have Not Demonstrated Irreparable Harm ...............................17

  D. The Balance of Equities and Public Interest Favor Denying Relief..........17

IV.     CONCLUSION..............................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*American Family Assn. v. City and County of San Francisco*,
  277 F.3d 1114 (9th Cir. 2022) ...................................................................... 9

*Bennett v. Spear*,
  520 U.S. 154 (1997) ..................................................................................... 4

*Berry v. Department of Social Services*,
  447 F.3d 642 (9th Cir. 2006) ...................................................................... 10

*Blair v. Appomattox County Sch. Bd.*,
  2024 WL 4464845 (W.D. Va.) ....................................................................... 7

*Brokaw v. Mercer County*,
  235 F.3d 1000 (7th Cir. 2000) ....................................................................... 8

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*,
  508 U.S. 520 (1993) ..................................................................................... 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................. 4, 6

*Connick v. Myers*,
  461 U.S. 138 (1983) ..................................................................................... 12

*Dodge v. Evergreen School District*,
  56 F.4th 767 (9th Cir. 2022) ....................................................................... 15

*Doe v. Boyerstown Area School District*,
  897 F.3d 518 (3d Cir. 2018) .......................................................................... 9

*Doe v. Delaware Valley Regional High School Bd. of Educ.*,
  2024 WL 70697 (D.N.J.) ............................................................................... 7

*Doe v. Horne*,
  115 F.4th 1083 (9th Cir. 2024) ..................................................................... 8

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ....................................................................... 2

*Easyriders Freedom FIGHT v. Hannigan,*
    92 F.3d 1486 (9th Cir. 1996) ...................................................................3

*Employment Division v. Smith,*
    494 U.S. 872 (1990)..................................................................10, 11

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021)..................................................................10, 11

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006)..........................................................12, 13, 15

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) ...................................................................2

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001) .................................................................2

*Grimm v. Gloucester County Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020) ...................................................................7

*Harper v. Poway Unified Sch. Dist.,*
    445 F.3d 1166 (9th Cir. 2006) ...............................................................18

*Hecox v. Little,*
    104 F.3d 1061 (9th Cir. 2024) .................................................................7

*J.L. v. Cissna,*
    341 F. Supp. 3d 1048 (N.D. Cal. 2018)..................................................3

*Janus v. AFSCME,*
    585 U.S. 878 (2018)................................................................................13

*Johnson v. Poway Unified School District,*
    658 F.3d 954 (9th Cir. 2011) ..........................................................13, 14

*Kennedy v. Bremerton,*
    597 U.S. 507 (2022)..............................................................................10

*Lewis v. Continental Bank Corp.,*
    494 U.S. 472 (1990)................................................................................4

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................................4

*Lyng v. Northwest Indian Cemetery Protective Assn.*,
    485 U.S. 448 (1988).................................................................................9

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) ..............................................................2

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ............................................................14

*Meyer v. Nebraska*,
    262 U.S. 390 (1923).............................................................................7

*Munaf v. Geren*,
    553 U.S. 674 (2008).............................................................................2

*Nguon v. Wolf*,
    517 F. Supp. 2d 1177 (C.D. Cal. 2007) .....................................16, 17

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ...................................................7, 8, 11

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...........................................................3, 4

*Pickering v. Board of Education*,
    391 U.S. 563 (1968)......................................................................10, 12

*Pierce v. Society of Sisters*,
    268 U.S. 510 (1925).............................................................................7

*Regino v. Staley*,
    2023 WL 4464845 (E.D. Cal.).............................................................7

*Sabra v. Maricopa County Community College Dist.*,
    44 F.4th 867 (9th Cir. 2022) ..............................................................9

*Saleh v. Titan Corp.*,
    353 F. Supp. 2d 1087 (S.D. Cal. 2004) ..............................................2

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...............................................................................4

*Snyder v. Phelps*,
    562 U.S. 443 (2011)...........................................................................14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..................................................................................4

*Tingley v. Ferguson*,
    47 F.4th 1055 ........................................................................................16

*Troxel v. Granville*,
    530 U.S. 57 (2000)..................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................3

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)..................................................................................9

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)...............................................................................2, 17

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972)................................................................................11

*Zepeda v. U.S. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ...............................................................2, 3

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................3

**California Cases**

*Leibert v. Transworld Systems, Inc.*,
    32 Cal. App. 4th 1693 (1995) ...............................................................16

*Sipple v. Chronicle Publishing Co.*,
    154 Cal. App. 3d 1040 (1984) .........................................................16, 17

*Vo v. Garden Grove*,
    115 Cal. App. 4th 425 (2004) ...............................................................17

**Federal Statutes**

20 U.S.C.
    § 1232g(b)...............................................................................................14

Family Educational Rights and Privacy Act.................................................14

**California Statutes**

Cal. Educ. Code
    § 200-202 ..................................................................................... 9
    § 220 ..................................................................................... 9, 18

**Other Authorities**

Fed. R. Civ. P.
    12(h)(3) ..................................................................................... 3, 4
    23 ..................................................................................... 1, 2
    23(b)(1)(A) ..................................................................................... 3
    23(b)(2) ..................................................................................... 3

First Amendment..............................................................................*passim*

Fourteenth Amendment ......................................................... 3, 6, 7, 8

California Constitution................................................................ 11, 16, 18

California Constitution Article I, § 1 .......................................... 16, 17

U.S. Constitution Article III.............................................................. 4

# I.   INTRODUCTION

Plaintiffs seek to enjoin the State Superintendent of Public Instruction ("SPI") and members of the State Board of Education ("SBE") from enforcing non-binding guidance issued by the California Department of Education ("CDE")—guidance that neither the SPI, SBE, nor CDE compel local districts to follow.  Plaintiff teachers and parents in local school districts, with their own distinct policies, cannot show that these non-binding, web-based FAQs have caused them any harm, as the guidance imposes no mandates on local districts.  For this, and the following reasons, Plaintiffs' motion should be denied.

First, Plaintiffs' request for class wide injunctive relief is procedurally improper. Without Rule 23 certification, such relief is unavailable.  Further, variation in school district policies across California makes uniform relief impracticable, as local districts retain full discretion over their administrative regulations including student privacy policies.

Second, Plaintiffs are unlikely to succeed on the merits.  They lack standing, as they fail to demonstrate imminent harm, causation, or redressability.  Plaintiffs also misunderstand the distinct roles of the SBE and CDE—the SBE had no involvement with the non-binding guidance.  New evidence demonstrates no causal link between Escondido Union School District's ("EUSD") privacy policies and either state entity. The plaintiff teachers' free speech claims fail as they involve government speech and are not subject to the same protections as private speech.  The CDE's guidance, designed to protect transgender students, is rationally related to legitimate state interests. The free exercise claims also fail because the FAQs do not impose mandates or burden religion and survive rational basis review.  Lastly, the substantive due process claims fail, as there is no constitutional right for parents to be informed of their child's gender identity.

Third, Plaintiffs misinterpret the balance of equities and public interest. California has a significant interest in protecting student privacy, especially for transgender students.  Plaintiffs' claims lack evidence and they readily concede the

CDE's guidance is non-binding. With no demonstrated harm and the state's legitimate privacy concerns, the balance of equities favors denying injunctive relief. Accordingly, the State Education Defendants respectfully request that the Court deny Plaintiffs' motion for a class wide preliminary injunction.

## II.    LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that should not be granted as a matter of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008). To obtain such relief, plaintiffs must demonstrate: (1) a likelihood of success on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Because the likelihood of success on the merits is a threshold inquiry, when a plaintiff fails to establish this, the court need not consider the remaining factors. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)

## III.    ARGUMENT

### A. Class-Wide Injunctive Relief is Improper Without Certification

Plaintiffs seek to bind hundreds of non-party school districts without first obtaining class certification, violating procedural norms. "Relief cannot be granted to a class before an order has been entered determining that class treatment is proper." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 (9th Cir. 1983) citing *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974). Courts have consistently rejected attempts to bind putative class members before certification. See *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004) (denying injunctive relief to putative class members as they are "not parties prior to class certification"); *Gomez v. Vernon*, 255 F.3d 1118, 1129-1130 (9th Cir. 2001) (limiting relief to the least intrusive means); *M.R. v. Dreyfus*, 697 F.3d 706, 738-739 (9th Cir. 2012) (upholding a preliminary injunction, but limiting relief to named plaintiffs, with class-wide relief contingent on Rule 23 certification).

In *Zepeda*, the plaintiffs sought a class-wide preliminary injunction to stop the INS from engaging in certain immigration enforcement practices. The Ninth Circuit vacated the injunction, limiting relief to the named plaintiffs and explained:

> Under Federal Rule of Civil Procedure 65(d), an injunction binds only "the parties to the action, their officers, agents, servants, employees, and attorneys, and ... those persons in active concert or participation with them who receive actual notice of the order...." The district court must, therefore, tailor the injunction to affect only those persons over which it has power. *Id.* at 727.

Plaintiffs' reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), and *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) is misplaced. In *Wal-Mart*, the Supreme Court emphasized that Rule 23(b)(2) injunctive relief requires uniform conduct applicable to all class members, which is lacking here. The individual claims of the EUSD teachers' First Amendment rights and the Doe and Poe parents' Fourteenth Amendment claims do not share commonality with other putative class members, making uniform relief inappropriate. Unlike *Parsons*, which involved a system-wide policy, plaintiffs here seek relief across hundreds of independent school districts, each with distinct policies. *Zinser* is similarly inapplicable, as it involved Rule 23(b)(1)(A) product liability and the need to avoid inconsistent standards, a concern not relevant to plaintiffs' claims across diverse districts.

Similarly, plaintiffs' reliance on *J.L. v. Cissna,* 341 F. Supp. 3d 1048 (N.D. Cal. 2018) and *Easyriders Freedom FIGHT v. Hannigan,* 92 F.3d 1486 (9th Cir. 1996) is unpersuasive. *Cissna* involved a situation where relief for named plaintiffs required extension to the entire class, which is not the case here. *Easyriders* concerned a statewide, blanket enforcement policy, necessitating uniform injunctive relief for all class members. In contrast, plaintiffs seek to impose relief on hundreds of districts with differing policies, without any evidence of a uniform, statewide policy justifying such broad relief.

Even when provisional certification is granted, it requires clear evidence of Rule 23(a) compliance, including numerosity, commonality, typicality, and adequacy of

representation. *Parsons*, 754 F.3d at 674. As described above, Plaintiffs have not met this burden. Without certification, this Court cannot issue a preliminary injunction affecting non-parties, including public school districts and the millions of students they serve. Plaintiffs' request for class-wide relief must therefore be denied.

**B. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims**

**1.    The Parent and Teacher Plaintiffs Lack Standing**

Standing is a jurisdictional requirement under Article III of the U.S. Constitution and must be maintained throughout all stages of litigation. It requires: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Injury-in-fact must be concrete, particularized, and actual or imminent, not hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Plaintiffs must show their injury is "fairly traceable" to the defendant's actions, not to third parties. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Causation requires the harm to result directly from the defendant's action, not from third parties. *Bennett v. Spear*, 520 U.S. 154, 167 (1997)., And "it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, standing should be revisited if new evidence undermines it. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990). And, when subject-matter jurisdiction is lacking, Rule 12(h)(3) requires dismissal. *Clapper*, 568 U.S. at 409.

**a.    New Evidence Regarding Escondido Union School District's Independent Action in Adopting AR 5145.3 Undermines Plaintiff Teachers' Standing against the State Education Defendants due to lack of causation**

The alleged harm to plaintiff teachers—EUSD's adoption of AR 5145.3—is not traceable to any action by CDE or SBE. Plaintiffs argue that CDE and the Attorney General aggressively enforced policies, compelling EUSD to adopt parental exclusion measures, but these claims are contradicted by EUSD's verified discovery responses. EUSD adopted AR 5145.3 in August 2020 based on California School Boards Association (CSBA) guidance. See Mandarano Declaration, ¶¶ 4-5. EUSD confirmed

no communications occurred with CDE or SBE during the development or implementation of the policy. Mandarano Dec., ¶¶ 3,7.

Despite plaintiffs' claim that CDE's guidance was mandatory, the evidence shows EUSD's actions were based on local decisions, not state mandates. For example, in her discovery responses Plaintiff Mirabelli admits that she has "never communicated with any CDE employee related to gender identity, transgender students, or AR 5145.3." Mandarano Dec., ¶ 9. Similarly, Plaintiff West confirms that she has no documents that evidence any communication with the SBE. Mandarano Dec. ¶10. Absent a showing of the causal link between the CDE guidance and the EUSD regulation, Plaintiffs cannot pursue claims against the state-level defendants and this lack of traceability notably undermines their likelihood of success on the merits with regard to the present motion.

Simply put, absent evidence connecting the CDE or SBE to the alleged harm to any teacher at EUSD—much less to teachers across the *entire* state of California, plaintiffs cannot meet the threshold for injunctive relief, and their motion should be denied. Plaintiffs' failure to connect the SBE to any alleged harm is especially conspicuous—the SAC does not contain a single, substantive allegation against the SBE--further showcasing the disconnect between Plaintiffs' claims and any action by the state education defendants.

### b.     Teacher Plaintiffs Fail to Establish Injury

The new teacher plaintiffs Roe and Boe lack standing because they do not allege non-speculative injury. They do not allege that they have actually had to withhold a pupil's transgender status from parents, nor that they have any pupils this year who are both transgender and requesting that their parents not be told. Teacher plaintiffs Mirabelli and West lack standing because they cannot establish a likelihood of *future* injury, as neither is currently teaching at EUSD, or teaching at all. Dkt. 137-6, ¶ 49; Dkt. 137-7, ¶ 2.

///
///

### c.    Parents Doe and Poe Lack Standing

Plaintiff Parents Poe and Doe lack standing against the CDE and SBE because they have not shown a concrete, particularized injury directly traceable to the actions of these state-level defendants.  Their claims rely on speculative harm tied to potential future disclosures or non-disclosures of their child's gender identity, decisions made by local school districts—not the state defendants.  Moreover, the parents are already aware of their children's transgender identity and have taken steps they feel are appropriate, while their children have found affirmance from friends and online.  No injury exists to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  Even if an injury were alleged, the complaint lacks any claim that it is fairly traceable to the state defendants' actions.  Notwithstanding the plaintiffs' lack of standing, we address below plaintiffs' arguments on the merits to clarify why the CDE's non-binding guidance is legally sound.

### 2.    The Student Privacy Protections Addressed in the CDE's Non-Binding Guidance do not Violate Fourteenth Amendment Parental Rights

Parent Plaintiffs claim that the non-binding CDE FAQ and Legal Advisory violate their Fourteenth Amendment right to direct their children's upbringing, however this assertion misunderstands the limited scope of parental rights and the significant governmental interest in protecting student privacy and well-being. While parents have certain rights under the Fourteenth Amendment, these rights are not absolute and must yield to significant state interests:

> . . .[O]nce parents make the choice as to which school their children will attend, their fundamental right to control the education of their children is, at the least, substantially diminished. The constitution does not vest parents with the authority to interfere with a public school's decision as to how it will provide information to its students or what information it will provide, in its classrooms or otherwise. *Fields v. Palmdale School Dist.* (9th Cir. 2005) 427 F.3d 1197, 1206.

This includes the authority to implement policies protecting student privacy and promoting well-being, especially for vulnerable populations like transgender and gender-nonconforming students. Public schools, as extensions of the state, have responsibilities

beyond academic instruction, including ensuring student safety and privacy. See *Hecox v. Little*, 104 F.3d 1061, 1079 (9th Cir. 2024) (in school context, recognizing responsibility to protect transgender students from discrimination based on their gender identity). "[A]ccommodating the different "personal, moral, or religious concerns of every parent" would be "impossible" for public schools, because different parents would often likely, as in this case, prefer opposite and contradictory outcomes." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1233 (9th Cir. 2020). The Supreme Court has affirmed that parental rights do not override legitimate state policies in the promulgation of "reasonable regulations" for operating public schools. *Meyer v. Nebraska,* 262 U.S. 390, 402 (1923).

Plaintiffs' reliance on *Troxel v. Granville*, 530 U.S. 57 (2000), and *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), to expand Fourteenth Amendment parental rights and prevent California's public schools from enforcing student privacy protections is a misinterpretation of the law. While *Troxel* recognized parental rights in the "care, custody, and control" of children, it made clear these rights are "not absolute," particularly in public education. *Troxel,* 530 U.S. at 65. *Pierce* addressed parental choice in private education, not public school policies. Neither case supports the broad parental authority plaintiffs claim to dictate school privacy safeguards.

Being transgender is not a medical condition.  *Grimm v. Gloucester County Sch. Bd.*, 972 F.3d 586, 612 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021). Nor is social transition "a medical intervention." Declaration of Dr. Christine Brady ("Brady Dec."), Ph.D., Pg. 38, ¶ 157. Moreover, parents do not have a constitutional right to be informed of their child's transgender status. *Regino v. Staley,* 2023 WL 4464845 at *3 (E.D. Cal.); *Blair v. Appomattox County Sch. Bd.*, 2024 WL 4464845 at *6 (W.D. Va.); *Doe v. Delaware Valley Regional High School Bd. of Educ.,* 2024 WL 70697 at *11 (D.N.J.)

Plaintiffs' position overlooks the clear limitations on parental control in public education, as established by recent precedent. In *Parents for Privacy*, the Ninth Circuit

upheld a school policy allowing transgender students to use restrooms and locker rooms consistent with their gender identity, rejecting parental objections. The court ruled that the Constitution does not give parents authority over school policies, especially when those policies protect transgender students' privacy and dignity. 949 F.3d at 1232. Similarly, the CDE's non-binding FAQ and Legal Advisory encourage schools to respect transgender students' privacy, including by not disclosing their gender identity to parents without consent. While advisory, this guidance promotes the same inclusive, safe environment upheld in Parents for Privacy. Just as in that case, Plaintiffs cannot extend their Fourteenth Amendment parental rights to control school policies that safeguard transgender students' privacy and well-being.

Moreover, empirical evidence shows that transgender students are at greater risk of depression, anxiety, and suicide when their gender identity is forcibly disclosed to unsupportive parents. Studies demonstrate the significant harm transgender youth face when "outed" to families that reject their identity. Forcing the disclosure of a student's gender identity to unsupportive parents can lead to increased "…anxiety, depression, suicidal ideation, suicide attempts, and health care avoidance." Brady Dec. Pg. 5, ¶ 65 This underscores the state's significant interest in protecting students' mental health by maintaining confidentiality. Where children may face harm, the government's interest in protecting them outweighs parental rights, particularly where the threat comes from the parents themselves. *Brokaw v. Mercer County,* 235 F.3d 1000, 1019 (7th Cir. 2000).

Accordingly, the state's significant interest in safeguarding the privacy of transgender and gender-nonconforming youth is especially strong due to the potential harm they may face if their gender identity is disclosed to unsupportive parents. The Ninth Circuit has noted that "[a]ttempts to 'cure' transgender individuals by forcing their gender identity into alignment with their birth sex are harmful and ineffective." *Doe v. Horne*, 115 F.4th 1083, 1092 (9th Cir. 2024). *See also* Brady Dec. Pg. 6, ¶24 ("Efforts to try to change a person's gender identity through therapy have been shown to be ineffective and harmful.") The non-binding guidance in the CDE FAQ and Legal

Advisory align with the state's duty to prevent discrimination and ensure a supportive environment, as intended by the Legislature, see e.g., California Education Code § 200-202, 220, while simultaneously supporting the discretion school officials have in establishing policies at the local educational agency level that protect *all* students--even when parents disagree.

Because there is no fundamental right involved, rational basis review applies. *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997), and the nonbinding guidance satisfied that standard. Protecting transgender students from discrimination has even been found to be a compelling interest. *Doe v. Boyerstown Area School District*, 897 F.3d 518, 529 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2636 (2019).

### 3. Neither the CDE nor the SBE have Violated Plaintiffs' Free Exercise Rights.

Plaintiff teachers and parents argue that the CDE's web-based guidance violates their First Amendment right to freely exercise their religion by compelling teachers to conceal students' gender identities from parents and assist them in gender non-conforming students' "social transition." This argument fails under well-established legal principles. The non-binding CDE FAQs do not actually operate so as to substantially burden religion. It is not enough that Plaintiffs are offended. *Sabra v. Maricopa County Community College Dist.,* 44 F.4th 867, 890 (9th Cir. 2022).

The CDE FAQs do not require the teachers to adopt or affirm a belief regarding gender identity that is contrary to their own religious beliefs, nor do they penalize the teachers for having views contrary to the FAQs. See, e.g., *Lyng v. Northwest Indian Cemetery Protective Assn*., 485 U.S. 448 (1988) (no individual right to dictate content of government's internal procedures); *American Family Assn. v. City and County of San Francisco*, 277 F.3d 1114, 1123-1124 (9th Cir. 2022) (no substantial burden where contested government action is non-coercive). And the fact that EUSD granted Mirabelli and West a religious accommodation as to pronouns, contrary to CDE's nonbinding guidance shows that EUSD made its own decisions independent of CDE's

FAQs. *Compare* SAC, Dkt. 133, p. 66, ¶ 172 (EUSD's decision) *with id.*, Exh. 26 (CDE's nonbinding guidance).

As demonstrated in the section below, the teachers' speech regarding students' gender identity is government speech not entitled to protection. The Ninth Circuit has held that a free exercise argument relating to government speech should be analyzed using a modified *Pickering* test that balances the employer's interest in free exercise against the government employer's interest in efficient and effective provision of services. *Berry v. Department of Social Services*, 447 F.3d 642, 648-650 (9th Cir. 2006). This makes sense because a public employee's free exercise rights are not entitled to greater protection than their free speech rights. *Kennedy v. Bremerton*, 597 U.S. 507, 542-543 (2022). Plaintiffs' free exercise claim here fails this modified Pickering test.

As to the parent plaintiffs, the CDE FAQs do not coerce them in any way, and the parents may still instruct their children on their religious beliefs on gender and sexuality, and indeed they allege they have done just that. See, e.g., SAC, Dkt. 133, p. 36, ¶ 140.

Because there is no substantial burden on free exercise, this claim fails.

Further, the CDE FAQs reference neutral, generally applicable laws that, even if they substantially burden religious practices, do not violate the Free Exercise Clause, and they survive rational basis review. *Employment Division v. Smith*, 494 U.S. 872, 878-79 (1990). In *Smith*, the Supreme Court held that individuals cannot use their religious beliefs to avoid complying with generally applicable laws, even when such laws impose an incidental burden on religious exercise. The CDE's FAQ and Legal Advisory are neutral on their face and do not single out or target religious beliefs; they simply provide guidance to schools on respecting student privacy rights.

Plaintiffs also claim that the guidance triggers strict scrutiny under *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), by allowing for individualized exemptions. This claim is baseless. The CDE's guidance does not create exemptions or grant discretionary authority to accommodate religious or secular considerations. Unlike *Fulton*, where the city provided discretionary exceptions for foster care agencies, the CDE's guidance

applies equally to all public-school students in California without individualized determinations, making it "generally applicable" under *Smith*. Furthermore, unlike the laws in *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993), which were designed to target and suppress religious practices, the CDE's guidance does not single out any religious group, but instead applies uniformly to protect student privacy—a significant government interest recognized by both the California Constitution and the California Education Code.

Plaintiffs' reliance on *Wisconsin v. Yoder*, 406 U.S. 205 (1972) is also misplaced. In Yoder Amish parents sought to completely withdraw their children from the public school system to preserve their religious way of life. In contrast, this case involves policies that ensure a respectful and protective environment for all students, not a withdrawal from public education. The mere fact that these policies may conflict with Plaintiffs' religious views does not render them unconstitutional. *Parents for Privacy*, 949 F.3d at 1232. The CDE's non-binding guidance, rooted in provisions of the California Constitution and statutory authority, serves the significant government interest of protecting transgender students from harm or discrimination. *Fulton*, 593 U.S. at 533.

### 4. Neither the CDE nor the SBE have Violated Plaintiff Teachers' Free Speech Rights.

#### a. Individual Gender Identity is Not a Matter of Public Concern

Plaintiffs' assertion that the compelled use of a student's chosen name or pronouns constitutes a violation of teachers' free speech rights misunderstands the fundamental nature of public employee speech protections. Under the First Amendment, public employees, including teachers, do not enjoy unlimited free speech rights within the workplace. In cases involving speech as part of their official duties, courts determine whether (1) the speech at issue is a matter of public concern and, (2) if so, whether the government employer's interest in workplace efficiency outweighs the employee's right to free speech. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Here, the inquiry stops after the first step.

Recognizing a student's gender identity is not a matter of public concern but a private, personal issue limited to the individual student and does not inform the general public about the school district's operations. Speech on private matters does not receive the same level of protection as public concern speech. See *Connick v. Myers*, 461 U.S. 138, 147 (1983) ("[W]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices."). Plaintiff teachers' free speech rights are not implicated, because any teacher communication about students' transgender status must occur pursuant to their official duties; they are not speaking broadly and generally as citizens on transgender issues.

Research shows that the use of affirming names and pronouns with gender non-conforming youth contribute to mental health outcomes that mirror their cisgender peers. A recent study found that using the correct name and pronouns reduced rates of depression, suicidal ideation, and suicide attempts among transgender youth." Brady Dec. Pg. 10, ¶41-42. Accordingly, by using pronouns that affirm a student's expressed gender identity, the educator acts in conformity with his duty to safeguard students' well-being in the classroom.

Moreover, when public employees speak pursuant to their official duties, their speech is not protected under the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). As the Supreme Court explained in *Garcetti*, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline" *Id.* at 421. In the case of a teacher using a student's pronouns or chosen name, these actions are clearly part of the teacher's professional duties, facilitating effective interaction with their students in an educational setting. As plaintiffs point out, the main task of educators is to instruct. And while respecting a student's expressed preferences regarding their gender identity may not directly relate to the subject matter being taught, it plays an essential role in fostering a supportive

teacher-student relationship and respectful classroom environment—integral components of effective pedagogy.

The Ninth Circuit in *Johnson v. Poway Unified School District,* 658 F.3d 954 (9th Cir. 2011), reaffirmed the principle in *Garcetti* by holding that the speech of public employees, when made in furtherance of their official duties, constitutes speech on behalf of the employer. Specifically, the court found that when a teacher "goes to work and performs the duties he is paid to perform, he speaks not as an individual, but as a public employee, and the school district is free to take legitimate and appropriate steps to ensure that its message is neither garbled nor distorted." *Id.* at 957 (internal quotation marks omitted) (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995)). Thus, school policies requiring teachers to respect students' chosen names, pronouns, and expressed wishes for privacy are aligned with the school's significant interest in fostering an inclusive and respectful educational environment. Similarly, the CDE's non-binding guidance refers to relevant state constitutional and statutory authority to protect students' privacy, while supporting gender-affirming practices such as the use of names and pronouns consistent with a student's expressed gender identity, without imposing mandates on local districts.

Plaintiffs' reliance on *Janus v. AFSCME*, 585 U.S. 878 (2018), is misplaced. *Janus* dealt with public sector union fees and political speech—a clear matter of public concern. In contrast, using a student's chosen name or pronouns involves individual dignity and privacy, not public debate. Plaintiffs fail to show how these private interactions between staff and students raise any public concern. Gender identity is deeply personal, and teachers, speaking as employees, are properly regulated to ensure a safe, nondiscriminatory environment. Plaintiffs' argument conflates privacy with public discourse, ignoring both legal precedent and student privacy rights. While gender identity may be controversial in society, teacher-parent communications concern individual students, not public debate. The context and purpose of such speech, not content alone, define public concern. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954,

965 (9th Cir. 2011). Teacher-parent communications typically address academic performance, not public discourse. *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

### b.    Student Privacy Protections are Essential to Education

Plaintiffs claim that privacy protections in the CDE FAQ and Legal Advisory are unnecessary because protecting student privacy, particularly gender identity, is not a teacher's duty. This misrepresents the role of educators, who are in a unique "position of trust" with students. *Johnson v. Poway Unified Sch. Dist*., 658 F.3d 954, 968 (9th Cir. 2011), cert. denied, 566 U.S. 906 (2012). Maintaining confidentiality about a student's gender identity is part of this role, ensuring student welfare in line with statutory and case law obligations.

Plaintiffs attempt to rely on *Meriwether v. Hartop,* 992 F.3d 492, 508 (6th Cir. 2021) to argue that protecting student privacy infringes on teachers' First Amendment rights. However, *Meriwether* is distinguishable, as it involved a university professor refusing to use a student's pronouns in a broader societal debate on gender identity. In contrast, K-12 schools are responsible for the physical and emotional safety of students, and protecting their privacy is a key part of that duty. Unlike the public debate in *Meriwether*, privacy in the K-12 context is a private matter directly tied to student welfare.

Similarly, Plaintiffs' reliance on the Family Educational Rights and Privacy Act ("FERPA") is misplaced. While FERPA, 20 U.S.C. § 1232g(b), grants parents the right to request access to their children's written educational records, nothing in the statute requires schools to disclose a student's verbal assertions about their gender identity. Nor does FERPA mandate informing parents of the content of their children's written records absent a formal request for access. The protections provided by FERPA apply specifically to educational records, and Plaintiffs' attempt to extend these provisions to verbal disclosures is unsupported by the statute.

Perhaps most importantly, empirical data and relevant clinical research support the necessity of privacy protections for transgender students. "Unconsented disclosure

increases the possibility of a forced disclosure of a student's transgender or gender nonconforming identity to potentially unaccepting family members, which not only causes psychological distress to the student, but also increases the risk of trauma, physical abuse, homelessness and long term negative mental health outcomes." Brady Dec. Pg. 37, ¶149. Moreover, for many gender non-conforming students, the school is a more accepting environment than their home. As Dr. Brady notes, "I have patients who feel that their school is their safe haven because the school conscientiously uses the patient's authentic name and pronouns. In contrast, the patients' parents are often misgendering them. School is a place where the hurt and anxiety they experience at home cannot touch them. My patients' experiences reflect national data." Brady Dec. Pgs. 11-12, ¶¶51-52.

      **c.    The State has a Significant Interest in Protecting Student Privacy**

      Plaintiffs' argument that "Parental Exclusion Policies" serve no legitimate administrative or efficiency interest is flawed and their reliance on *Dodge v. Evergreen School District,* 56 F.4th 767 (9th Cir. 2022) is misguided. *Dodge* concerns speech by teachers on matters of public concern, such as political and ideological speech where the government employer's primary interest is in preventing disruption to services. In *Dodge*, the court emphasized that the more political or controversial the speech, the more disruption must be proven by the government employer to justify limiting that speech. *Id*. at 782. This does not apply here, as the speech at issue—teachers' use of a student's preferred name and pronouns and protecting student privacy—relates to performing their professional duties in the educational context, not to matters of public concern. Unlike in *Dodge*, where the speech was political, teachers in this case are managing their classrooms and maintaining the trust of vulnerable students, a function clearly within their job duties under *Garcetti v. Ceballos,* 547 U.S. 410 (2006).

      Plaintiffs' arguments about "administrative efficiency" and disruption distract from the real issue. The state's interest lies in protecting the privacy and welfare of its students, especially those from vulnerable or unsupportive homes. If educators disclose a

student's gender identity without consent, students may feel pressured to hide their identity, causing psychological harm and forcing them into the closet. Brady Dec. Pg. 14, ¶67. Accordingly, the CDE's non-binding guidance aligns with this significant state interest, as well as with privacy protections guaranteed by the California Constitution and Education Code that impose a duty on schools to protect all students, especially those who may face severe psychological or physical harm if their gender identity is disclosed to unsupportive parents or guardians without their consent.   See *Tingley v. Ferguson*, 47 F.4th 1055, 1078 (9th Cir. 2022, *cert. denied*, 144 S. Ct. 33 (2023) (protecting the psychological well-being of transgender youth is a legitimate state interest).

Additionally, plaintiffs' argument that no legitimate privacy interest exists for students using preferred names or pronouns at school rests on a misapplication of California privacy law. While cases such as *Sipple v. Chronicle Publishing Co.*, 154 Cal. App. 3d 1040, 1047 (1984) and *Leibert v. Transworld Systems, Inc.,* 32 Cal. App. 4th 1693, 1701-02 (1995) involved instances where privacy expectations were diminished because information had become widely known, those cases are not analogous here. The privacy interests of minors—especially transgender and gender-nonconforming students—are significantly heightened due to the sensitive and personal nature of their gender identity. Under Article I, Section 1 of the California Constitution, students retain a right to privacy in matters such as their gender identity, even within a school setting.

Plaintiffs' reliance on *Nguon v. Wolf,* 517 F. Supp. 2d 1177 (C.D. Cal. 2007), is misplaced. *Nguon* involved the public disclosure of a student's sexual orientation as part of a disciplinary proceeding, where such disclosure was legally required to justify the student's suspension. The court upheld the disclosure in that narrow context, noting it was not a gratuitous or purposeless disclosure but mandated by the disciplinary process. *Id.* at 1195 (C.D. Cal. 2007). In contrast, the present case involves no legal requirement for school staff to disclose a student's expressed gender identity to parents and, as a result the CDE's guidance, consistent with state law, seeks to protect the privacy of

vulnerable students. Furthermore, neither *Vo v. Garden Grove*, 115 Cal. App. 4th 425, 448 (2004), nor *Sipple* support the broad claim that students forfeit their privacy rights simply because their gender identity is known within the school community. Unlike those cases, the CDE's non-binding guidance addresses situations where students wish to keep their gender identity confidential to avoid psychological or physical harm. Unfortunately, many transgender or gender-nonconforming students face extreme harm when forcibly "outed" to unsupportive parents, whose concerns may be more aligned with enforcing their own religious beliefs than safeguarding their children's well-being and identity.

## C. Plaintiffs Have Not Demonstrated Irreparable Harm

Courts have routinely held that irreparable harm must be "likely," not merely speculative. *Winter,* 555 U.S. at 22. However, plaintiffs fail to provide any concrete evidence of imminent harm. For plaintiffs Mirabelli and West, it is immediately apparent that they face no threat of harm since neither is actively teaching at EUSD. Dkt. 137-6, ¶ 49; Dkt 137-7, ¶ 2. Similarly, the pseudonymously named teachers present no facts showing either actual injury or the likelihood of harm. SAC, Dkt. 133, ¶¶ 33-34. Additionally, the Poe and Doe parents fail to explain how, despite already being aware of their children's gender nonconformity, they experienced a concrete injury resulting from the non-binding FAQs. For example, they do not demonstrate how any statement in the FAQs interferes with their right to direct their children's upbringing or violates their right to freely exercise their religion. SAC, Dkt 133, ¶¶ 459, 482, 493.

## D. The Balance of Equities and Public Interest Favor Denying Relief

Granting plaintiffs' sweeping request for injunctive relief would undermine long-established state constitutional and statutory protections that safeguard student privacy and promote non-discrimination. California's Privacy Clause (Cal. Const. art. I, § 1) and anti-discrimination laws (e.g., Cal. Educ. Code § 220). CDE-related, nonbinding guidance are designed to protect vulnerable students, particularly transgender youth, from severe psychological and physical harm if their gender identity is disclosed without

consent. Plaintiffs have not shown that the alleged injuries of a few individuals are common or typical of all parents and teachers across nearly one thousand diverse school districts. Enjoining these protections statewide would recklessly disregard local control over student privacy policies and eviscerate students' privacy rights enshrined in the California Constitution and statutory law.

The Ninth Circuit has recognized that public schools may restrict speech that infringes upon LGBTQ students' right to be left alone. *Harper v. Poway Unified Sch. Dist.,* 445 F.3d 1166, 1178 (9th Cir. 2006), *vacated as moot*, 549 U.S. 1262 (2007). Additionally, the free exercise clause does not permit one group to compel others to follow its religious precepts. *Id.* at 1189. Regarding the Doe parents' claims, they described transgender content as "propaganda," a term suggesting deception, and expressed disagreement with their child's gender perception and social transition. Complaint, Dkt. 133, ¶¶ 134, 140. This underscores the significant interest the state maintains concerning the unconsented disclosure of a student's gender identity to non-supportive parents. The balance of equities thus favors denying Plaintiffs' claims for injunctive relief.

## IV. CONCLUSION

Plaintiffs have failed to demonstrate a likelihood of success on the merits, irreparable harm, or that the balance of equities and public interest favor injunctive relief. For these reasons, the SSPI and SBE members respectfully request that this Court deny plaintiffs' motion for a preliminary injunction.

Dated: October 21, 2024        LEN GARFINKEL
General Counsel
PAUL GANT
Assistant General Counsel

By:    /s/ Christopher Mandarano
CHRISTOPHER MANDARANO
Deputy General Counsel
Attorney for State-level Defendants