1  ROB BONTA
   Attorney General of California
2  DARRELL W. SPENCE
   Supervising Deputy Attorney General
3  EMMANUELLE S. SOICHET
   Deputy Attorney General
4  KEVIN L. QUADE
   Deputy Attorney General
5  State Bar No. 285197
    1300 I Street, Suite 125
6    P.O. Box 944255
    Sacramento, CA 94244-2550
7    Telephone:  (916) 210-7693
    Fax:  (916) 324-8835
8    E-mail:  Kevin.Quade@doj.ca.gov
   *Attorneys for Defendant*
9  *Attorney General Rob Bonta*

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

14

15  **ELIZABETH MIRABELLI, an**         3:23-cv-00768-BEN-VET
    **individual, et al.,**

16                        Plaintiffs,   **ATTORNEY GENERAL BONTA'S**
                                        **REPLY TO PLAINTIFFS'**
                                        **OPPOSITION TO MOTION TO**
17             v.                       **DISMISS SECOND AMENDED**
                                        **COMPLAINT**
18
    **MARK OLSON, in his official**     Date:        November 4, 2024
19  **capacity as President of the EUSD** Time:       10:30 a.m.
    **Board of Education, et al.,**     Dept:        5A
20                                      Judge:       The Hon. Roger T. Benitez
                        Defendants.     Action Filed:     April 27, 2023
21

22

23

24

25

26

27

28

# INTRODUCTION

In their opposition to Attorney General Bonta's motion to dismiss, Plaintiffs maintain that this Court has jurisdiction to hear their constitutional claims against him. But the allegations in the Second Amended Complaint (SAC) fail to plausibly connect the Attorney General to Plaintiffs' purported constitutional injuries. These injuries, which are alleged to flow from restrictions on school staff's nonconsensual disclosure of students' private gender identity information, are neither directly caused by the Attorney General nor indirectly attributable to his conduct. While the Attorney General has generalized power to enforce state law and has exercised his enforcement authority in the narrow context of a district policy that compelled staff to disclose gender identity information, the allegations before the Court here do not plausibly demonstrate that the Attorney General has or will do anything with respect to Plaintiffs' individual school districts that could render him derivatively connected to the alleged constitutional injuries. The Attorney General should again be dismissed from this lawsuit.

# ARGUMENT

## I. PLAINTIFFS HAVE NOT ESTABLISHED STANDING TO SUE THE ATTORNEY GENERAL

Both the Teacher and Parent Plaintiffs assert that they have standing to sue the Attorney General. ECF No. 162 at 22-29.[1] To establish standing, a plaintiff must demonstrate: (1) a concrete and particularized injury in fact; (2) a causal connection or fair traceability between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The traceability and redressability components have significant overlap and essentially act as "two facets of a single causation requirement." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984).

---

[1] For clarity, the Attorney General will use the stamped page numbers at the top of the page for citations to ECF filings.

As explained in the motion to dismiss, Plaintiffs have not alleged that the Attorney General plays any direct role in their asserted constitutional injuries. Rather, their theory of liability against the Attorney General is wholly derivative—*i.e.*, the Attorney General possesses enforcement power that may be utilized against a local school district, which, in turn, will result in the district directly violating Plaintiffs' rights. Necessarily then, to establish standing against the Attorney General—particularly, the traceability and redressability components—Plaintiffs cannot simply rely on the fact that the Attorney General has the authority to enforce state law. They must instead demonstrate a "realistic danger" or "credible threat" that the Attorney General will exercise his enforcement power against Plaintiffs' individual school districts in a manner that is likely to cause those districts to inflict the constitutional injuries alleged in the SAC. *See Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010); *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-56 (9th Cir. 2000). They have not done so.

### A. The Teacher Plaintiffs

#### 1. The Attorney General's disavowal of enforcement against EUSD severs the causation components of standing

The Teacher Plaintiffs initially claim that the Attorney General's disavowal of any enforcement against EUSD is not dispositive on the question of standing. ECF No. 162 at 22-24. They argue that the scope of the Attorney General's prior disavowal is "ambiguous," potentially applying only to the district's treatment of Plaintiffs Mirabelli and West. *Id.* at 22-23. But there is no ambiguity. As stated in the motion to dismiss, the Attorney General will not initiate enforcement action against EUSD for policies pertaining to disclosure of students' gender identity while the Court's preliminary injunction is in force. *See* ECF No. 156-1 at 20. Should the Teacher Plaintiffs ultimately prevail on their constitutional claims and obtain a permanent injunction, the Attorney General will not initiate enforcement against the district in compliance with that injunction. *Id.*

In the face of this commitment, the Teacher Plaintiffs argue that the Court "should not countenance" a disavowal of enforcement that covers all EUSD teachers. ECF No. 162 at 23. They invoke the principle of voluntary cessation, arguing that "unless the AG unequivocally states that he agrees with" the merits of their claims, his disavowal of enforcement against EUSD should have no effect. *Id.* at 23-24. Under this principle, a defendant's voluntary cessation of challenged conduct ordinarily does not deprive a court of jurisdiction "because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019).

The voluntary cessation concept has no application here. Unlike the scenario where a defendant obtains dismissal and may resume purportedly injurious conduct, dismissal of the Attorney General based on his disavowal here will not end the Teacher Plaintiffs' ability to vindicate their asserted constitutional rights.[2] The disavowal of enforcement against EUSD will remain in effect for the duration of this litigation and potentially after depending on the ultimate outcome. Unless and until this case is dismissed in its entirety or the Teacher Plaintiffs' constitutional claims are denied on their merits, the Attorney General will not initiate enforcement action against EUSD. Properly understood, the Attorney General's disavowal is not a mere litigation tactic, but rather, a good-faith commitment to honor the substance of the earlier-issued preliminary injunction. Because this disavowal removes the prospect of Attorney General enforcement in EUSD, the Teacher Plaintiffs cannot show the necessary causal component of their derivative theory of standing. As this Court earlier held, the Attorney General's disavowal is dispositive. *See* ECF No. 114 at 6-8 (ordering dismissing the Attorney General).

---

[2] Indeed, the Attorney General was previously dismissed based on a disavowal of enforcement and the litigation persisted.

### 2. The Teacher Plaintiffs have not plausibly alleged Attorney General conduct fairly traceable to their alleged constitutional injuries

Even if the Attorney General had not disavowed enforcement against EUSD, the Teacher Plaintiffs have not alleged facts that plausibly demonstrate the requisite likelihood of such enforcement. *See* ECF No. 156-1 at 20-22. The Teacher Plaintiffs disagree, arguing that the Attorney General's past litigation against Chino Valley Unified School District for its forced-disclosure policy—the only example of Attorney General enforcement cited in the SAC—plausibly alleges "'the Attorney General's interpretation of [the law].'" ECF No. 162 at 24 (quoting *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489 (9th Cir. 2024)); *see People v. Chino Valley Unified Sch. Dist.* (*Chino Valley*), No. CIV SB 2317301 (Cal. Super. Ct., S.C. Cnty., Aug. 28, 2023). From this instance of enforcement, the Teacher Plaintiffs claim to have plausibly shown that the Attorney General "interprets the Privacy Clause of the California Constitution to preclude school staff from informing parents about the school's socially transitioning of their child absent affirmative consent of the child." ECF No. 162 at 24-25.

In fact, *this specific allegation of enforcement* demonstrates only that the Attorney General interprets state law to prohibit across-the-board forced-disclosure policies, and to allow home to exercise his enforcement authority against *districts* that adopt such policies. Contrary to the Teacher Plaintiffs' arguments, the *Chino Valley* litigation says nothing about the Attorney General's understanding of the lawfulness of other policies, the lawfulness of conduct by individual school staff, or his ability to intervene in a way that effects such conduct. The utility of Plaintiffs' lone allegation of enforcement is thus limited to district liability for policies that compel staff to disclose private student information without consent (forced disclosure).

This being the case, the Teacher Plaintiffs' derivative standing allegations are fatally flawed. Nothing in the SAC gives any indication that EUSD has

5

contemplated or actually adopted a forced disclosure policy. Again, these Plaintiffs must plausibly allege facts tending to show a "realistic danger" or "credible threat" of Attorney General enforcement in the district that might reasonably connect him to their asserted constitutional injuries. *Lopez*, 630 F.3d at 785; *accord Arizona v. Yellen*, 34 F.4th 841, 848-49 (9th Cir. 2022). Yet there are no allegations before the Court that the Attorney General has pursued enforcement against any other type of local disclosure policy or against districts with no policy at all. Thus, whether because of the Attorney General's disavowal of enforcement or the absence of allegations showing that such enforcement is realistic, the Teacher Plaintiffs cannot demonstrate the lynchpin causal connection needed to establish standing against the Attorney General.

## B. The Parent Plaintiffs

### 1. The Parent Plaintiffs have not plausibly alleged cognizable injuries to their constitutional rights

As to injury in fact, the Parent Plaintiffs initially argue that this Court cannot engage in "cart-before-the-horse reasoning" by considering the merits of their constitutional claims when assessing whether they have sufficiently pled cognizable injuries. ECF No. 162 at 26 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022)). But Plaintiffs' asserted injuries are violations of their constitutional rights. The scope and any limitations on those rights is intrinsically intertwined with the analysis of whether they have plausibly alleged actionable injuries.

As explained in the motion to dismiss, they have not done so. *See* ECF No. 162 at 22-24. The Parent Plaintiffs claim that their constitutional injuries flow from infringement on their "right to determine how their child's gender incongruence *is addressed*" and that they have a protected right to "decide whether it is [in] their child's best interest to allow the school to socially transition their child." ECF No. 162 at 26. While a parent unquestionably has a substantive due process right to direct the upbringing of their child and make intimate decisions for them (as well as

Att. Gen. Bonta's Reply to Plaintiffs' Opp. to Mot. To Dismiss Second Amended Complaint
(3:23-cv-00768-BEN-VET)

a related religious exercise right to the extent such decision-making relates to the parent's religious beliefs), a parent does not have a protected constitutional right to dictate a school's administration, operations, policy, or curriculum. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1231, 1233-39 (9th Cir. 2020); *accord Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005) (once a parent exercises their right to choose their child's school, their right to control the child's education is "substantially diminished"). In the context of school administration, these Plaintiffs' rights are thus far more limited than they claim.

*Parents for Privacy* is particularly instructive. In that case, the Ninth Circuit considered substantive due process and free exercise challenges brought by parents against a school policy that allowed transgender students to use bathrooms, locker rooms, and showers that matched their gender identity. *Parents for Privacy*, 949 F.3d at 1217-18. The parents alleged interference with their fundamental right to direct the upbringing of their children, specifically, the right to shield their children from exposure to opposite-sex students in private settings, and to raise and teach their children "traditional modesty," consistent with their sincerely held religious beliefs. *Id.* at 1230, 1234. The Ninth Circuit rejected these arguments, holding that the parents had no protected right to dictate or override school policies concerning administration of the learning environment. *Id.* at 1230-32. Though the parents had a fundamental right to instill traditional modesty in their children, as well as engage with them on topics like gender identity, this right did not extend to parental control over how the school elected to treat its students or foster the school environment. *Id.* Were that the case, the Court explained, uniform school administration would be impossible, requiring accommodation of differing and contradicting personal, moral, and religious concerns of every parent. *Id.* at 1233 (citing *Fields*, 427 F.3d at 1206).

As such, the "actually pleaded injuries" highlighted in the opposition that concern the Parent Plaintiffs' direction of their children's interactions in school, *see*

7

ECF No. 162 at 26-27, are clearly foreclosed by precedent. Within the school environment, these Plaintiffs do not have a right to override school policies intended to provide a safe and respectful space for transgender or gender-nonconforming students to learn. The Parent Plaintiffs have an unchallenged right to determine what is best for their children and to direct their upbringing, including by choosing their school, but once these parents decide to send their children to a particular school, they have no substantive due process or religious exercise right to control school policy with respect to their children or others. *Parents for Privacy*, 949 F.3d at 1230-33; *Fields*, 427 F.3d at 1206. The Parent Plaintiffs' allegations of constitutional rights to the contrary thus cannot constitute viable injuries for purposes of standing.

The Parent Plaintiffs argue that they have a "right to know what is happening behind school doors" and that non-disclosure interferes with their right to make intimate decisions for their children. ECF No. 162 at 25-26. But this conception of interference is just another way of arguing that parents, in order to facilitate their constitutional rights, can dictate school administrative policy. Indeed, the Parent Plaintiffs' understanding of their constitutional rights has no discernable limit. Any information about a student's behavior at school might logically impact how a parent exercises their right to control the upbringing of that child. By the Parent Plaintiffs' understanding, schools would be constitutionally obligated, so as to avoid interference with a parent's rights, to provide information on, for example, whether and who a student is dating, who a student is friends with, whether the student is wearing makeup, or whether the student is studying or playing sports at recess.

In any case, as explained in the motion to dismiss, the allegations in the SAC make clear that these Plaintiffs face no actual impediment to exercise of their parental and religious rights. *See* ECF No. 156-1 at 24. The parents are fully aware of their children's gender incongruence and, in fact, have been freely exercising

8

their right to school choice and to impart their moral religious beliefs on their children.  *See* SAC at ¶¶ 120, 122-24, 126, 135, 139-41, 149-51.  No additional disclosure is needed for the Parent Plaintiffs to engage with their children or to direct the important decisions in their lives.

The Parent Plaintiffs counter that such arguments would mean "parents could *never* have standing" to challenge student privacy policies because standing requires some evidence that a parent's child is gender incongruent.  ECF No. 162 at 26 (citing *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 626 (4th Cir. 2023)).  But even if true, this is no basis to confer standing where none otherwise exists.  The Supreme Court has "long rejected that kind of 'if not us, who?' argument."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024); *accord United States v. Richardson*, 418 U.S. 166, 179-80 (1974).

> **2.    The Parent Plaintiffs have not plausibly alleged Attorney General conduct fairly traceable to their alleged constitutional injuries**

Even if the Parent Plaintiffs could establish cognizable constitutional injuries, they have not plausibly alleged a causal connection between those injuries and any conduct of the Attorney General.  Though they insist that the SAC alleges "'a direct chain of causation,'" ECF No. 162 at 29, this argument immediately falls apart.  Like the Teacher Plaintiffs, the Parent Plaintiffs rest their causation showing on a single instance of Attorney General enforcement, the *Chino Valley* lawsuit concerning a forced-disclosure policy.  *See* ECF No. 162 at 29 ("the AG sued a school district for not complying with the Privacy Clause").  As explained above, however, this allegation substantiates nothing more than the Attorney General's belief that forced-disclosure policies are unlawful and that he may exercise his enforcement power against districts with such policies.

The Parent Plaintiffs here fail to identify their respective school districts, let alone allege that those districts have contemplated or enacted the type of forced-disclosure policy that could plausibly trigger Attorney General intervention.  The

Attorney General has no alleged history of enforcement against districts with other types of student privacy policies, or with no policies at all. Necessarily then, nothing in the SAC tends to show a "realistic danger" or "credible threat" that the Attorney General will exercise his enforcement authority in these parents' respective districts, potentially establishing a causal connection that could substantiate their derivative theory of standing. *Yellen*, 34 F.4th at 848-49; *Lopez*, 630 F.3d at 785.

Indeed, as explained in the motion, the Parent Plaintiffs' factual and legal allegations evidence no connection to conduct of the Attorney General whatsoever. *See* ECF No. 156-1 at 25; *see also* ECF No. 133 (SAC) at ¶¶ 125, 129, 143, 148, 154 (allegations that school administrators cited only CDE's FAQs as basis for non-disclosure); *id.* at ¶¶ 437-61, 462-84, 485-95 (no references to Attorney General in causes of action). The Parent Plaintiffs respond that such arguments constitute mere finger-pointing. ECF No. 162 at 28. But the allegations in the SAC are what they are. The Parent Plaintiffs make no attempt to demonstrate how the Attorney General could be responsible for their alleged harms, even explicitly omitting the Attorney General from a request that "the CDE Defendants" be enjoined prevent alleged irreparable harm. *See* SAC at ¶¶ 459, 482, 493. This theme continues in the opposition, with the Parent Plaintiffs arguing that "schools always merely point to the AG and CDE" as a basis for non-disclosure, but citing allegations in the SAC that only reference CDE's FAQ guidance. *See* ECF No. 162 at 29 (citing SAC at ¶¶ 125, 143, 148). In short, there is simply nothing in the SAC that allows for a plausible inference that the Attorney General has done or will do anything that can be fairly traced down to the Parent Plaintiffs' feared constitutional injuries.

## II. THE ATTORNEY GENERAL IS IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT

As to Eleventh Amendment immunity, Plaintiffs correctly recognize that the question of a state official's requisite "connection" to enforcement under *Ex parte*

*Young*, 209 U.S. 123 (1908) largely overlaps with the traceability and redressability components of standing.  ECF No. 162 at 29 (citing *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022)).  As explained above and in the motion to dismiss, however, Plaintiffs cannot establish these causality requirements.

Plaintiffs go on to read this Court's prior order addressing Eleventh Amendment immunity as "recogniz[ing] that the AG is never protected from sovereign immunity because of his duty under the California Constitution to enforce all laws."  ECF No. 162 at 30.  But the Court made no such sweeping pronouncement.  *See* ECF No. 114 at 6.  Indeed, this understanding of Eleventh Amendment immunity with respect to the Attorney General cuts directly against circuit precedent.  *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (Immunity applied because no specific enforcement connection shown between Attorney General and challenged California statute).

To be sure, this Court, in dicta, referred to *Association des Eleveaurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) and stated that the Attorney General's actions in other student privacy cases, including *Chino Valley*, was "sufficient to overcome Bonta's immunity arguments."  ECF No. 114 at 6.  As explained in the motion, however, the Attorney General's invocation and enforcement of the California right to privacy in other cases does not establish that he can freely exercise similar enforcement against the pertinent school districts in this case.  *See* ECF No. 156-1 at 29-30.  Unlike *Harris*, where the challenged statute explicitly provided for prosecutorial enforcement that covered the Attorney General, the allegations in the SAC give no indication that Plaintiffs' respective districts are violating the law in a manner that could connect to the Attorney General's state-law enforcement power.

## CONCLUSION

The Attorney General should be dismissed from this lawsuit.

Dated:  October 28, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
EMMANUELLE S. SOICHET
Deputy Attorney General

KEVIN L. QUADE
Deputy Attorney General
*Attorneys for Defendant Attorney*
*General Rob Bonta*

# CERTIFICATE OF SERVICE

Case Name:   **Mirabelli et al. v. Olson, et al.**          No.   **3:23-cv-00768-BEN-VET**

I hereby certify that on <u>October 28, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ATTORNEY GENERAL BONTA'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 28, 2024</u>, at Sacramento, California.


| Kevin L. Quade | */s/ Kevin L. Quade* |
|:---:|:---:|
| Declarant | Signature |