LEN GARFINKEL State Bar No. 114815
General Counsel
BRUCE YONEHIRO, State Bar No. 142405
Assistant General Counsel
REBECCA P. FEIL. State Bar No. 273064
Deputy General Counsel
CHRISTOPHER MANDARANO, State Bar No. 263625
Deputy General Counsel
California Department of Education
1430 N Street, Room 5319
Sacramento, California 95814
Telephone: 916-319-0860
Facsimile:  916-322-2549
Email: rfeil@cde.ca.gov

Attorneys for Defendants Tony Thurmond in his official capacity as State Superintendent of Public Instruction and State Board of Education Members in their official capacities

*(Defendants Tony Thurmond in his official capacity and State Board of Education members in their official capacity are governmental parties exempt from the provisions of FRCP 7.1)*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARK OLSON, Superintendent of Child Poe's school district, et al.,<br><br>    Defendants. | Case No. 3:23-cv-0768-BEN-VET<br><br>REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT SSPI'S MOTION TO DISMISS<br><br>Hearing Date:   November 4, 2024<br>Time:           10:30 a.m.<br>Courtroom:      5A<br>Judge:          Hon. Roger T. Benitez |

## I. ARGUMENT

### A. The Law of the Case Doctrine is Inapplicable

The SSPI and SBE Defendants' previous motion to dismiss Plaintiffs Mirabelli and West's claims under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) based on Eleventh Amendment immunity, and EUSD's motion to dismiss under Rule 12(b)(6) for failure to state a claim under the First Amendment's free speech and free exercise clauses, were denied. Dkt. 25, 42 at 31-33; Dkt. 7, 17, 42 at 26-27.

The law of the case doctrine holds that a court's decision on a legal issue should govern the same issue in later stages of the case. *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016). However, the issue must have been decided either explicitly or by necessary implication. *United States v. Lummi Indian Tribe,* 235 F.3d 443, 452-53 (9th Cir. 2020).2010), and a party must have had a full and fair opportunity to litigate the issue. *Arizona v. California*, 460 U.S. 605, 619 (1983).

The doctrine does not apply here. The court's order denying the motions to dismiss did not address whether Plaintiffs sufficiently pled First Amendment claims against the SSPI and SBE Defendants that would survive a Rule 12(b)(6) motion as to the merits of the CDE's FAQs. *See also* Dkt. 42 at 30:16-17 (noting that the State Defendants did not argue the merits of *EUSD's* policy). Moreover, the court's concerns focused on EUSD's policy, which does not apply to the CDE FAQs. EUSD's policy imposed limitations on the staff to be trained and addressed teacher discipline. Dkt. 42 at 26-27. The CDE's FAQs do not limit the staff to whom they apply or address teacher discipline. Dkt. 1, Exh. 26.

Plaintiffs incorrectly argue that the SSPI and SBE Defendants' First Amendment arguments are largely repetitive of prior filings (citing Dkt. 53) that the court already rejected. Dkt. 162 at 20:20-22. Dkt. 53 is the SSPI and SBE Defendants' motion for judgment on the pleadings, which the court denied as moot due to the filing of the First Amended Complaint (FAC), without addressing the merits. Dkt. 113. The court's initial order (Dkt. 42) and later orders (Dkt. 114) did not address the merits of the First

Amendment claims against the SSPI and SBE Defendants. Moreover, since the court's initial denial of the motions to dismiss (Dkt. 42), Plaintiffs have amended their complaint twice (Dkt. 80 and 133), adding new parties and claims, making the law of the case doctrine inapplicable.

### B. Free Exercise

Plaintiffs fail to adequately address the SSPI and SBE Defendants' argument that the Rocklin Unified School District ("RUSD") case does not indicate that the CDE FAQs are binding. Plaintiffs do not dispute that the CDE never referenced the FAQs in the RUSD case, that the CDE applied state discrimination law (not the FAQs) as required by law, and that the CDE's action did not enforce any rule in the FAQs. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1394 (9th Cir. 1994) ("[W]hen the challenged government action is neither regulatory, proscriptive, nor compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden.").

Plaintiffs ignore, and thus concede, the SSPI and SBE Defendants' argument that EUSD's grant of a religious accommodation to Mirabelli and West on the pronouns policy shows that EUSD made its own independent decision, demonstrating the non-binding nature of the CDE FAQs.

Plaintiffs also fail to address the SSPI and SBE Defendants' argument that a free exercise claim in the government employment context should be analyzed using a modified *Pickering* test. Plaintiffs cite *Bacon v. Woodward,* 104 F.4th 744 (9th Cir. 2024), but that case did not address the issue. While *Bacon* applied strict scrutiny, neither party raised the issue of using a modified *Pickering* test. The use of the *Pickering* test makes sense because a public employee's free exercise rights are not entitled to more protection than their free speech rights. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 542-43 (2022).

///

///

### C. Free Speech

As outlined in the motion to dismiss, government speech that protects transgender students' privacy is lawful. To the extent Plaintiffs argue that protecting transgender students' privacy conflicts with the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g(b), they are mistaken. While FERPA grants parents the right to request access to their children's written educational records, it does not require schools to disclose a student's verbal assertions about gender identity. See, e.g., Dkt. 112, p. 38, Dkt. 137-3, p. 93.

### D. Parent Rights

Plaintiffs incorrectly argue that the court's prior Order (Dkt. 42) resolves the issue of whether the rights of the new parent Poe and Doe plaintiffs' rights have been violated. The prior Order did not address a situation such as that of the Poes and Does in which the parents are aware of their children's transgender identity and have taken and continue to take the steps at home that they feel are appropriate.

### E. The Plaintiffs Cannot Establish Standing

1. The Teacher Plaintiffs have not established injury in fact or imminent harm.

Plaintiffs rely on a case brought under the Uniform Complaint Process ("UCP") to establish standing, involving RUSD's forced outing policy. This ignores key differences between the policies here, the CDE's role in the UCP process, and Plaintiffs' own allegations. Plaintiffs have named the SSPI and SBE members based on the CDE's FAQs and Legal Advisory, alleging they create enforceable policies prohibiting schools from disclosing a student's gender non-conformity to parents. See, e.g., Dkt. 133 ¶¶ 12, 86, 125, 143, 254, 262-63, 311-14. However, the CDE's lawsuit against RUSD was not based on the CDE's FAQs or Legal Advisory. Dkt. 153-4, Ex. 28. The CDE did not attempt to make RUSD adopt a policy like EUSD's AR 5145.3. Instead, after a properly filed UCP complaint, the CDE investigated, determined RUSD had a discriminatory policy against transgender and gender non-conforming students, and issued corrective action to refrain from implementing the policy without mandating any replacement.

When RUSD ignored the corrective action, the CDE sued to enforce it under its authority in Title 5, California Code of Regulations section 4670. Id. at ¶¶ 24, 25, 41.

The CDE's FAQs impose no enforceable law on Plaintiffs, and the CDE has neither enforced nor threatened enforcement of these FAQs or its Legal Advisory, which were published over eight years ago, assuming Plaintiffs' claim of a 2016 publication date is correct. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000). Moreover, the CDE acts solely against LEAs, not individual teachers, and thus cannot initiate actions against Plaintiffs. "Even in the First Amendment context, a plaintiff must show a credible threat of enforcement," *Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (citing *Lopez v. Candaele*, 630 F.3d 775, 786; *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155).

Plaintiffs' attempt to attribute the Teacher Plaintiffs' allegations against EUSD as "past enforcement" of the FAQs and Legal Advisory fails for two reasons. First, the SSPI cannot act against the Teacher Plaintiffs, as the CDE is not their employer, and the FAQs and Legal Advisory do not create enforceable obligations against teachers. Second, their allegations against EUSD for not providing an accommodation are not equivalent to the "past prosecution or enforcement" needed to establish a credible threat of future prosecution and standing. *Lopez v. Candaele*, 630 F.3d at 786-87.

### 2. The Court can Consider Declarations Submitted in This Case Which Contradict the Pleadings.

Plaintiffs' opposition asserts that the allegations in the SAC should be all that is considered in this motion, notwithstanding representations they have made to this Court. However, it is proper for this Court to consider matters properly subject to judicial notice which contradict the allegations in the SAC, including the declarations of Mirabelli and West made under penalty of perjury and filed in this case. *Daniels-Hall v. Natl. Educ. Assn.*, 629 F.3d 992, 998 (9th Cir. 2010). As courts lose jurisdiction over a case if either party "plainly lack a continuing interest," the declarations by Mirabelli and West, which establish that neither is currently teaching at EUSD, are both relevant and dispositive as

to their lack of standing in this case. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 170 (2000).

### 3. The Parent Plaintiffs Claimed Injury is not Caused by any Action of the SSPI.

In their opposition, Plaintiffs describe the Parent Plaintiffs' injury as their children being allowed to socially transition at school. Dkt. 162, p. 14:26-28. None of the Defendants control how a child expresses their gender, and the FAQs and Legal Advisory do not address whether a child should be allowed to present themselves in a certain way. The SAC frames the Parent Plaintiffs' claims as arising from policies preventing LEAs from disclosing a student's gender nonconformity to parents, not from schools failing to stop students from expressing a different gender at school. Dkt. 133, ¶¶ 339(c)-(d), 444, 471, 490. This claimed "injury" is outside the SAC's scope and is not traceable to the CDE's FAQs or Legal Advisory. The Parent Plaintiffs are dealing with their children's transitions outside of school, and the fact that their children are transgender and wish to express themselves accordingly is not something a judgment against Defendants can redress. Next, the Parent Plaintiffs claim their injury stems from an inability to rely on information provided, but this "injury" is not alleged in the SAC. Dkt. 133, p. 109-121:3. The cases cited by Plaintiffs are distinguishable. *Davidson v. Kimberly-Clarke Corp.*, 889 F.3d 956 (9th Cir. 2018), involved alleged false advertising. *Id.* at 970-71. In contrast, here the Parent Plaintiffs already know their children are transgender, so they do not need to be informed by the school. *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010), involved statutory rights to information under laws like the Freedom of Information Act, but that case found no such statutory right. Id. at 1259-60.

Plaintiffs also rely on *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs*., 680 F. Supp. 3d 1250, 1270 (D. Wyo. 2023), to argue the Poe Parents suffered "informational injury" from not being told their child was presenting as a boy at school. However, *Willey* involved a district-specific policy, and the Poe Parents have not sued

their child's LEA or specified the LEA's policy. Without knowing the current policy, it is unclear how the Poe Parents' knowledge of their child's status would affect the situation, making the mootness argument in *Willey* irrelevant. *Id*. at 1271.

As for redressability, Plaintiffs misconstrue SSPI's argument. The issue is not that another State agency will enforce the FAQs and Legal Advisory, but that they do not create mandates. Even if SSPI were enjoined from enforcing them, nothing would change, as SSPI is not enforcing them. LEAs would still be required to protect students' privacy rights and provide an environment free from discrimination, including for gender non-conforming students.

Plaintiffs' reliance on *Skyline* is also misplaced. *Skyline* involved a direct mandate by the Department of Managed Health Care, which required insurers to add abortion coverage immediately, resulting in clear redressable harm. *Skyline Wesleyan Church v. Cal. Dept. Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020). Here, there was no such directive or immediate implementation. The FAQs and Legal Advisory have been on the CDE's website since at least 2016, and LEAs vary in how they apply them. If CDE deleted its FAQs, LEAs could still have policies like EUSD's, or none at all, but they would still be required to protect transgender and gender non-conforming students' rights.

**F. The Plaintiffs Fail to Join Necessary Parties—The Leas**

The LEAs are indispensable parties in this litigation because they are the entities directly responsible for implementing and enforcing the challenged gender identity policies. Under Federal Rule of Civil Procedure 19(a), a party is "necessary" if complete relief cannot be accorded among existing parties in their absence. Since Plaintiffs allege that their harm stems from LEA-level actions—namely, the withholding of information about students' gender identity—the court would be unable to fully resolve the issue or provide effective relief without LEAs. Entities with primary control over the conduct at issue must be joined as parties to enable a comprehensive and

enforceable judgment. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002).

Moreover, LEAs have a significant and protected interest in their local policy-making authority, as granted under California Education Code § 35160. Local control over educational policy is fundamental, particularly when addressing policies that affect students district-wide. Where systemic issues arise, local districts are essential participants in crafting enforceable remedies, as substantial control over education is deeply rooted in local governance and cannot be overlooked under *Milliken v. Bradley*, 418 U.S. 717, 742 (1974). Excluding the LEAs from this case risks inconsistent enforcement and legal uncertainty across almost a thousand unique LEAs across the state of California, compromising both their autonomy and the enforceability of any court order.

## II.  CONCLUSION

For the reasons stated, the SSPI respectfully requests that the Court grant his Motion to Dismiss.

Dated: October 28, 2024

LEN GARFINKEL
General Counsel
PAUL GANT
Assistant General Counsel

By:   /s/ Christopher Mandarano
CHRISTOPHER MANDARANO
Deputy General Counsel
Attorney for SSPI