Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-VET <br><br> **Reply Memorandum in Support of Plaintiffs' Motion for a Class-Wide Preliminary Injunction** <br><br> Judge:  Hon. Roger T. Benitez <br> Courtroom:  5A <br> Hearing Date:  December 2, 2024 <br> Hearing Time:  9:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

REPLY ARGUMENT...........................................................3

   I.    Plaintiffs Are Likely to Succeed on the Merits ....................3

       A.   Plaintiffs Have Standing.............................................3

       B.   Parental Exclusion Policies Violate Free Exercise Rights. .................................................................... 4

           1.   Plaintiffs' Free Exercise Rights are Burdened. ................ 4

           2.   The Individualized Exemptions Trigger Strict Scrutiny. .......................................................... 4

           3.   The Comparable Exemptions Trigger Strict Scrutiny. ..........................................................5

           4.   The Intrusion on Parental Rights Triggers Strict Scrutiny ........................................................ 6

           5.   Parental Exclusion Policies Fail Strict Scrutiny. ...............7

       C.   Parental Exclusion Policies Violate Parental Liberty Rights. .................................................................... 8

           1.   Gender Identity and Race Are Not Analogous. ............... 8

           2.   Parents Get to Decide What Treatment their Children Receive. ............................................. 9

           3.   Parents' Rights Do Not End at Deciding "Treatment." ...................................................10

       D.   Parental Exclusion Policies Violate Teachers' Free Speech Rights. ........................................................10

           1.   Gender Identity is a Matter of Public Concern.............. 11

           2.   Parental Exclusion Policies Are Unnecessary for Education. ............................................... 11

           3.   There Is No Legitimate State Administrative or Efficiency Interest Requiring Parental Exclusion Policies .......................................12

       E.   The Scope of the Requested Relief is Feasible and Proper.....................................................................12

i

1.   Plaintiffs Primarily Request an As-Applied Injunction, but a Facial One Is Also Appropriate. ...................................... 12

2.   Plaintiffs Request a Prohibitory Injunction, but a Mandatory One Is Also Appropriate ..................... 13

3.   The Requested Injunction is Based on the Complaint and is Administratively Feasible. ................ 13

II.   The Other Injunction Factors Favor Plaintiffs .................................... 14

III.   Class-Wide Relief is Appropriate ........................................................ 15

A.   No Ascertainability Requirement Applies Here. ..................... 15

B.   Common Issues Predominate Here. .......................................... 16

IV.   The Court Should Dispense with a Bond Requirement ...................... 17

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ......................................................................... 9

*Al Otro Lado, Inc. v. McAleenan,*
   423 F. Supp. 3d 848 (S.D. Cal. 2019)........................................... 15

*Am. Nurses Ass'n v. Torlakson,*
   57 Cal. 4th 570 (2013)................................................................... 14

*Anspach v. Philadelphia Dep't of Pub. Health,*
   503 F.3d 256 (3d Cir. 2007) ..................................................... 9, 10

*B.K. v. Snyder,*
   922 F.3d 957 (9th Cir. 2019)........................................................ 16

*Bacon v. Woodward,*
   104 F.4th 744 (9th Cir. 2024)......................................................... 6

*Baird v. Bonta,*
   81 F.4th 1036 (9th Cir. 2023) ....................................................... 14

*Bellotti v. Baird,*
   443 U.S. 622 (1979) ................................................................... 2, 8

*Betschart v. Oregon,*
   103 F.4th 607 (9th Cir. 2024)....................................................... 13

*Brokaw v. Mercer Cnty.,*
   235 F.3d 1000 (7th Cir. 2000) ....................................................... 8

*Calif. Ass'n of Sch. Psychologists v. Superintendent of Pub. Educ.,*
   No. 3:93-cv-2891, 1994 WL 224433 (N.D. Cal. May 17, 1994)....................... 14

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
   321 F.3d 878 (9th Cir. 2003) ........................................................ 17

*Coomes v. Edmonds Sch. Dist. No. 15,*
   816 F.3d 1255 (9th Cir. 2016) ...................................................... 11

*Coppel v. SeaWorld Parks & Ent., Inc.,*
   347 F.R.D. 338 (S.D. Cal. 2024) .................................................. 15

*Danville Christian Acad., Inc. v. Beshear,*
   141 S. Ct. 527 (2020) ..................................................................... 7

1

# TABLE OF AUTHORITIES—Cont.

2

## CASES (CONT.)

3

*Deanda v. Becerra*,

4
  96 F.4th 750 (5th Cir. 2024) ................................................. 9

5

*Dodge v. Evergreen Sch. Dist. #114*,
  56 F.4th 767 (9th Cir. 2022)................................................ 10

6

*Empl't Div. v. Smith*,

7
  494 U.S. 872 (1990)............................................................ 7

8

*Espinoza v. Mont. Dep't of Revenue*,

9
  591 U.S. 464 (2020)............................................................ 7

10

*Everett H. v. Dry Creek Joint Elementary Sch. Dist.*,
  No. 2:13-cv-889, 2016 WL 5661775 (E.D. Cal. Sept. 30, 2016) ...................... 14

11

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,

12
  82 F.4th 664 (9th Cir. 2023) ............................................... 5, 6, 13

13

*Fields v. Palmdale Sch. Dist.*,

14
  447 F.3d 1187 (9th Cir. 2006) .............................................. 8, 12

15

*Fulton v. Philadelphia*,

16
  593 U.S. 522 (2021)........................................................ 5, 7, 9

*Geraghty v. Jackson Loc. Sch. Dist.*,

17
  No. 5:22-cv-2237, 2024 WL 3758499 (N.D. Ohio Aug. 12, 2024) ............. 11, 12

18

*Hill v. NCAA*,

19
  7 Cal. 4th 1 (1994) .......................................................... 5

20

*Hodgson v. Minnesota*,
  497 U.S. 417 (1990) .......................................................... 2

21

*In re Facebook, Inc. Internet Tracking Litig.*,

22
  956 F.3d 589 (9th Cir. 2020) ................................................. 5

23

*In re Victor Techs. Sec. Litig.*,

24
  102 F.R.D. 53 (N.D. Cal. 1984), *aff'd*, 792 F.2d 862 (9th Cir. 1986)........15, 16

*In re Yahoo Mail Litig.*,

25
  308 F.R.D. 577 (N.D. Cal. 2015)............................................ 15

26

*Johnson v. Poway Unified Sch. Dist.*,

27
  658 F.3d 954 (9th Cir. 2011) ................................................ 11

28

# TABLE OF AUTHORITIES—Cont.

## Cases (Cont.)

*Junior Sports Mags. Inc. v. Bonta,*
    80 F.4th 1109 (9th Cir. 2023) .............................................................. 14

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ............................................................................ 11

*Mahanoy Area Sch. Dist. v. B.L.,*
    594 U.S. 180 (2021) ............................................................................ 12

*Mann v. Cnty. of San Diego,*
    907 F.3d 1154 (9th Cir. 2018) ............................................................... 9

*Martinez v. Brown,*
    No. 3:08-cv-565, 2011 WL 1130458 (S.D. Cal. Mar. 25, 2011) ........ 16

*Masterpiece Cakeshop v. Colorado C.R. Comm'n,*
    584 U.S. 617 (2018) .............................................................................. 9

*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) .............................................................. 11

*Meyer v. Nebraska,*
    262 U.S. 390 (1923) .............................................................................. 8

*Miller v. Reed,*
    176 F.3d 1202 (9th Cir. 1999) .............................................................. 7

*Moore v. E. Cleveland,*
    431 U.S. 494 (1977) ............................................................................ 10

*N.D. v. Reykdal,*
    102 F.4th 982 (9th Cir. 2024) ............................................................. 13

*Norwood v. Harrison,*
    413 U.S. 455 (1973) .............................................................................. 8

*Obergefell v. Hodges,*
    576 U.S. 644 (2015) .............................................................................. 9

*Parents for Priv. v. Barr,*
    949 F.3d 1210 (9th Cir. 2020) .............................................................. 7

*Parham v. J.R.,*
    442 U.S. 584 (1979) .......................................................................... 2, 5

v

Reply Memo. ISO Plts.' Mtn. for Class-Wide Prelim. Inj.

# TABLE OF AUTHORITIES—Cont.

## Cases (Cont.)

*Pierce v. Soc'y of Sisters*,
  268 U.S. 510 (1925) ....................................................................................1, 9

*Pilz v. Inslee*,
  No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023).............................. 7

*Pope v. Cnty. of San Diego*,
  719 F. Supp. 3d 1076 (S.D. Cal. 2024) ........................................................... 9

*Ricard v. Geary Cnty. Unified Sch. Dist. 475*,
  No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022)....................... 3, 8

*Risto v. Screen Actors Guild*,
  No. 2:18-cv-7241, 2020 WL 5518600 (C.D. Cal. Sept. 14, 2020) ................. 15

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  592 U.S. 14 (2020)......................................................................................... 14

*Runyon v. McCrary*,
  427 U.S. 160 (1976) ......................................................................................... 8

*Schall v. Martin*,
  467 U.S. 253 (1984). ....................................................................................... 1

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ......................................................................................... 4

*Taking Offense v. State*,
  66 Cal. App. 5th 696 (2021).............................................................................11

*Tandon v. Newsom*,
  593 U.S. 61 (2021) ....................................................................................... 5, 6

*Tennessee. v. Cardona*,
  No. 2:24-cv-72, 2024 WL 3019146 (E.D. Ky. June 17, 2024)........................... 8

*Texas v. Johnson*,
  491 U.S. 397 (1989) .......................................................................................11

*Thomas v. Review Bd. of Ind.*,
  450 U.S. 707 (1981)......................................................................................... 4

*Thompson v. Oklahoma*,
  487 U.S. 815 (1988) ....................................................................................... 1

vi

# TABLE OF AUTHORITIES—Cont.

## CASES (CONT.)

*Troxel v. Granville,*
    530 U.S. 57 (2000) ................................................... 13

*Truth v. Kent Sch. Dist.,*
    542 F.3d 634 (9th Cir. 2008) ..................................... 3

*United States v. Swisher,*
    811 F.3d 299 (9th Cir. 2016)...................................... 11

*Vlaming v. W. Point Sch. Bd.,*
    302 Va. 504 (2023) .................................................. 11

*Wallis v. Spencer,*
    202 F.3d 1126 (9th Cir. 2000) ........................... 2, 8, 15

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................ 16

*Waln v. Dysart Sch. Dist.,*
    54 F.4th 1152 (9th Cir. 2022) .................................... 5

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972)............................................... 3, 4

*Zinser v. Accufix Rsch. Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ................................... 16

## STATUTES, RULES, & CONSTITUTIONAL PROVISIONS

20 U.S.C. § 1232g.......................................................... 6

42 U.S.C. § 1983............................................................ 3

2024 Cal. Stat., ch. 95, § 2(g) ...................................... 13

Cal. Educ. Code § 250.................................................. 14

Cal. Educ. Code § 51100. .............................................. 5

Cal. Educ. Code § 51101(a)(1) ...................................... 6

Cal. Educ. Code § 51101(a)(3) ...................................... 6

Cal. Educ. Code § 51101(a) .......................................... 6

Cal. Gov. Code § 11135................................................ 14

vii

# TABLE OF AUTHORITIES—Cont.

## Statutes, Rules, & Constitutional Provisions (Cont.)

Fed. R. Civ. P. 23(a) ............................................................. 15, 16

Fed. R. Civ. P. 23(b)(1)(A) ..................................................... 15, 16

Fed. R. Civ. P. 23(b)(2) .......................................................... 15, 16

U.S. Const., art. VI ..................................................................... 8

viii

Reply Memo. ISO Plts.' Mtn. for Class-Wide Prelim. Inj.

# INTRODUCTION

In response to Plaintiffs' motion for a class-wide preliminary injunction, Dkt.153, the various Defendants' opposition briefs make one thing absolutely clear: California is determined to "elevat[e] a child's gender-related choices to that of paramount importance, while excluding a parent from knowing of, or participating in, that kind of choice." ECF No. 42, p.18:4. The AG strongly objects that "[i]t is students—not districts—who make the decision to socially transition at school and when to inform their parents," Dkt.165, p.18:26-27, and State law "centers the *students'* choices about whether they desire to have information about *their own* gender identity, expression, names, pronouns, and status disclosed." Dkt.165, p.24:14-16 (emphasis in original).[1] But the Supreme Court has explained, "[c]hildren, by definition, are not assumed to have the capacity to take care of themselves." *Schall v. Martin*, 467 U.S. 253, 265 (1984). Rather, children need "a caring, nurturing parent making decisions on behalf of a child who is not quite ready to take on the fully rational and considered task of shaping his or her own life." *Thompson v. Oklahoma*, 487 U.S. 815, 825 n.23 (1988) (plurality).

By their nature, "juveniles, unlike adults, are always in *some* form of custody." *Schall*, 467 U.S. at 265 (emphasis added). While children have "rights," those rights "are only meaningful as they are exercised by agents acting with the best interests of their principals in mind." *Thompson*, 487 U.S. at 825 n.23 (plurality). Thus, children "are assumed to be subject to the control of their parents," and only "if parental control falters, the State must play its part as *parens patriae*." *Schall*, 467 U.S. at 265. Children are *always* under somebody's control—either their parents or the State—and absent cause, California may not make children "the mere creature of the state" without cause. *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925).

---

[1] All page citations are to the ECF stamp. Plaintiffs are submitting a corrected version of Appendix 2 of the Appendix of Evidence, which includes corrected versions of Exhibits 36-41. There is no prejudice to Defendants because all exhibits have long already been in their possession.

The CDE makes a similarly egregious logical error. According to the CDE, California's policies "address[] situations where students wish to keep their gender identity confidential to avoid psychological or physical harm." Dkt.166, p.24:3-5. But it is well-established that "a state has *no interest whatever* in protecting children from parents unless it has some reasonable evidence that the parent is unfit and the child is in imminent danger." *Wallis v. Spencer*, 202 F.3d 1126, 1142 n.14 (9th Cir. 2000) (emphasis added). So what evidence does the CDE cite? Studies which allegedly stand for the proposition that transgender children with unsupportive parents have poorer mental health outcomes. Dkt.166, p.15:14-18, 23:27-28:11 (citing Brady Decl., ¶¶24, 51-52, 65, 149). Even if this were true (which Plaintiffs dispute, *see* Rebuttal Anderson Decl., ¶¶66-72), the argument fails as a matter of law: "The statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition." *Parham v. J.R.*, 442 U.S. 584, 603 (1979).

If a parent refuses to allow his child to socially transition, the child is not without any recourse. When a minor's autonomy privacy rights are involved (such as access to abortion), the Supreme Court has explained that a State must provide for a judicial bypass procedure if a parent refuses to consent. *Bellotti v. Baird*, 443 U.S. 622, 643 (1979) (plurality). But what the State cannot do is put the cart before the horse and bypass the parents without even providing them notice. *See Hodgson v. Minnesota*, 497 U.S. 417, 445 (1990) (Opinion of Stevens, J., joined by O'Connor, J.); *id.* at 496 (Kennedy, J., concurring, joined by Rehnquist, White, Scalia, JJ.).

Finally, the CDE gives away the game with perhaps the most astonishing sentence in this entire litigation so far: "many transgender or gender-nonconforming students face extreme harm when forcibly 'outed' to unsupportive parents, *whose concerns may be more aligned with enforcing their own religious beliefs than safeguarding their children's well-being and identity*." Dkt.166, p.24:6-9 (emphasis added). Just like the government has no interest in protecting children from their parents absent actual

evidence of unfitness, it has no authority "to 'save' a child from … his [religious] parents." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).

Reviewing the voluminous opposition papers, there is very little that is new. The arguments are the same as presented previously, but with the thin patina of more polished writing, a few better case citations, and some expert declarations. But it doesn't take much digging to get below the surface and realize that the rule of decision has not changed:

> [T]he [State's] claimed interest is an impermissible one because it is intended to interfere with the parents' exercise of a constitutional right to raise their children as they see fit. And whether the [State] likes it or not, that constitutional right includes the right of a parent to have an opinion and to have a say in what a minor child is called and by what pronouns they are referred.

*Ricard v. Geary Cnty. Unified Sch. Dist. 475*, No. 5:22-cv-4015, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022). The Court should grant Plaintiffs' motion in full.

**REPLY ARGUMENT**

## I.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.  Plaintiffs Have Standing.

To begin, all Defendants repeat their standing arguments from their motions to dismiss. *See* Dkt.164, p.9:9-16 (EUSD); Dkt.165, p.13:20-23 (AG); Dkt.166, pp.11:6-13:13 (CDE). For the most part, these arguments fail for the same reasons as stated in Plaintiffs' opposition to those motions. Dkt.162, pp.18:1-29:12.

However, EUSD further argues that Roe and Boe have not informally requested accommodations. Dkt.164, p.15:19-25. But "exhaustion is not required for claims brought under 42 U.S.C. § 1983," *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 643 (9th Cir. 2008).[2] For its part, the CDE cites to "new evidence" in the form of EUSD's discovery responses confirming that it did not communicate directly with the CDE about AR 5145.3 *See* Dkt.166, pp.11:21-12:18 (citing Dkt.166-1, Mandarano Decl., Exs.

---

[2] Moreover, in light of the discrimination and harassment to which EUSD staff have subjected Plaintiffs Mirabelli and West, no reasonable person would also seek one.

A, D.) But EUSD has stated multiple times that it adopted the CDE's guidance believing it was mandatory; the absence of communications is therefore unsurprising. *See* App'x Exs.14-16; Dkt.157-1, p.14:19.

Lastly, to argue that there is no likelihood that he will enforce California's Privacy Clause against parents or teachers here, and therefore no standing, the AG stresses the allegedly singular nature of the *Bonta v. CVUSD* litigation. He argues that the Parental Notification Policy there was problematic because of its "across-the-board" nature, implying it had no exceptions. Dkt.168, p.5:17-26. Yet, in his own letter to all school districts—warning them against adopting a similar policy—the AG acknowledged that CVUSD's policy had "exceptions" for student safety. *See* Dkt.133, SAC, Ex.38, at pp.375, 380; App'x Ex.23, BP 5020.1, ¶6 (stating that the policy does not supersede standard protections for student safety). The AG cannot now argue that CVUSD's policy was problematic because it did not contain legally required exceptions.

**B.    Parental Exclusion Policies Violate Free Exercise Rights.**

**1.    *Plaintiffs' Free Exercise Rights are Burdened.***

To begin, all Defendants argue that that Parental Exclusion Policies do not burden Plaintiffs' religious rights because the policies are actually congruent with the teachers' faith, Dkt.164, p.12:5-16 (EUSD), and because the policies do not restrict Plaintiffs' religious practice. Dkt.165, pp.20:22-21:14 (AG); Dkt.166, p.16:13-17:14 (CDE). The AG and CDE argue that mere offense is inadequate, and the CDE adds that Parents can still talk to their children about gender identity. *Id.* But Teachers losing their jobs and Parents losing a free public education are both significant burdens, not mere offense, *see, e.g.*, *Thomas v. Review Bd. of Ind.*, 450 U.S. 707, 718 (1981); *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), and Parents want more than to simply be able to talk to their children—they want to direct their activities. *See Yoder*, 406 U.S. at 232.

**2.    *The Individualized Exemptions Trigger Strict Scrutiny.***

Next, because Parental Exclusion Policies are derived from the Privacy Clause

4

Reply Memo. ISO Plts.' Mtn. for Class-Wide Prelim. Inj.

of the California Constitution, individualized exemptions are necessarily built into them. *Hill v. NCAA*, 7 Cal. 4th 1, 40 (1994) (privacy analysis). Defendants argue that the discretion available here is inadequate because it is cabined to disclosure when necessary for "student safety and well-being," Dkt.165, pp.22:23-23:13 (AG), or deny that there is any discretion at all. *See* Dkt.164, pp.13:25-14:17 (EUSD); Dkt.166, pp.17:24-18:2 (CDE); *but see* App'x Ex.17, AR 5145.3, p.17 ("legitimate need for the information"); App'x Ex.20, FAQ Page, p.5 ("need to know"). The AG's argument is the most nuanced, but it is wrong on three fronts. *First*, factually, disclosure is not limited to the context of "student safety and well-being." The CDE and EUSD use the generic phrases "need to know" and "legitimate need" because they match the Privacy analysis's "countervailing interest" standard. *See Hill*, 7 Cal. 4th at 40; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020).

*Second*, the AG's "assertion that *Fulton* was only concerned with 'unfettered' discretion, is overly narrow." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 687-88 (9th Cir. 2023) ("*FCA*") (en banc) (citing *Fulton v. Philadelphia*, 593 U.S. 522 (2021)). The AG's pre-*FCA* panel decisions that required "unfettered discretion" have since been rejected by the en banc Ninth Circuit. *See* Dkt.165, p.23:4-9. *Third*, even if parental notification were limited to situations when it would improve "student safety and well-being," as a matter of law, *parental notification will always do that*—unless the government has specific evidence saying otherwise. *Parham*, 442 U.S. at 602; Cal. Educ. Code § 51100.

### 3.   *The Comparable Exemptions Trigger Strict Scrutiny.*

The comparable exemptions also trigger strict scrutiny. In this context, comparability boils down to the statement that religious exemptions must receive (at least) the same treatment as the most favored secular exemptions. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021); *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022). Again, Defendants cite to outdated caselaw, this time for the proposition that the number of secular exemptions must be "substantial." Dkt.165, p.22:7-11 (AG);

5

Reply Memo. ISO Plts.' Mtn. for Class-Wide Prelim. Inj.

Dkt.164, p.13:5-10 (EUSD). But the Supreme Court could not have been clearer: strict scrutiny applies "whenever [the State] treat[s] *any* comparable secular activity more favorably than religious exercise." *FCA*, 82 F.4th at 688 (quoting *Tandon*, 593 U.S. at 62 (emphasis in original)). "It is no answer that a State treats some comparable … activities as poorly as or even less favorably than the religious exercise at issue." *Tandon*, 593 U.S. at 62.

Here, numerous provisions in the federal or state law create de facto exemptions to California's policy of giving children the unfettered right to decide to whom their social transition at school is revealed. These include parents' statutory right to "observe the classroom or classrooms in which their child is enrolled" and the right to "provid[e] assistance in the classroom with the approval, and under the direct supervision, of the teacher." Cal. Educ. Code § 51101(a)(1), (3). This also includes FERPA and its California analog. *See* 20 U.S.C. § 1232g; Cal. Educ. Code § 51101(a). The AG cannot dispute that these statutes—which de facto allow for parental notification of a child's gender identity—are relevantly comparable, so he resorts to stating that Plaintiffs "do not explain or provide any evidence on how this occurs in theory or in practice." Dkt.165, p.22:21-22.

But the answer is rather simple. Parents have a right to sit in class. Cal. Educ. Code § 51101(a)(1). This right undermines, rather than furthers, the State's interest in giving children the right to decide to whom their social transition at school is revealed. Because this is a secular statute that undermines that interest for secular reasons, when a religious objector requests to undermine that interest for religious reasons, a religious exemption must be granted. *Bacon v. Woodward*, 104 F.4th 744, 751-52 (9th Cir. 2024).

### 4. *The Intrusion on Parental Rights Triggers Strict Scrutiny*

The AG next argues that the Ninth Circuit has rejected the "hybrid rights theory" where strict scrutiny is triggered through an infringement on both religious and parental rights. Dkt.165, pp.23:19-24:28. This overstates the caselaw. At its inception, the Supreme Court identified two hybrid rights theories: free exercise and

6

Reply Memo. ISO Plts.' Mtn. for Class-Wide Prelim. Inj.

free speech, and free exercise and parental rights. *Empl't Div. v. Smith*, 494 U.S. 872, 881-82 (1990). The circuits have struggled to interpret this language, but the Ninth Circuit has held it applies so long as "the non-free-exercise claim [is] 'colorable.'" *Fulton*, 593 U.S. at 603-05 (Alito, J., concurring) (explaining different approaches); *see Miller v. Reed*, 176 F.3d 1202, 1207-08 (9th Cir. 1999).

More recently, the Supreme Court has reaffirmed as an "'enduring American tradition' … the rights of parents to direct 'the religious upbringing' of their children." *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 486 (2020). And when a hybrid free exercise-parental rights case was presented to them, the Supreme Court did not reject it on the merits, but on the procedural basis that lower courts needed to pass on the argument first. *See Danville Christian Acad., Inc. v. Beshear*, 141 S. Ct. 527, 528 (2020); *see also id.* at 529-30 (Gorsuch, J., dissenting); *cf. Pilz v. Inslee*, No. 22-35508, 2023 WL 8866565, at *4 (9th Cir. Dec. 22, 2023) (Collins, J., concurring).

The AG cites a case where the Ninth Circuit rejected an attempt to argue hybrid free exercise and parental rights by parents who sought to prohibit a school from allowing transgender students to use opposite-sex restrooms and lockers rooms. *Parents for Priv. v. Barr*, 949 F.3d 1210, 1236-38 (9th Cir. 2020). But the overarching conceptual problem in that case was that the parents were not seeking *an exemption for their own children*, but attempted to modify school-wide policy (i.e., they rejected the offer to allow their own children to change in the nurse's office). *See id.* at 1219. Here, in contrast, each parent is concerned with *their own child* and has a "colorable" claim for violation of their right to direct the upbringing of their own child.

### 5.    *Parental Exclusion Policies Fail Strict Scrutiny.*

Finally turning to strict scrutiny,[3] Defendants argue that Parental Exclusion Policies are narrowly tailored to meet the compelling interest of protecting students

---

[3] The CDE argues that, for teachers, *Pickering* balancing applies (not strict scrutiny), in both the Free Exercise and Free Speech contexts. Dkt.166, p.17:3-11. As explained in opposition to the motions to dismiss, this is incorrect. Dkt.162, pp.34:13-35:4. In any event, as explained below, *Pickering* balancing comes out in Plaintiffs' favor.

from harm, Dkt.166, pp.15:11-16:10, 18:14-17 (CDE), or protecting their privacy rights.
Dkt.164, pp.14:18-15:2 (EUSD), or both. Dkt.165, pp.19:1-20:18, 25:1-14 (AG). This is
self-evidently false. Regarding harm, absent concrete evidence, the State has no interest
in protecting children from their parents, *Wallis*, 202 F.3d at 1142 n.14; *accord Brokaw
v. Mercer Cnty.*, 235 F.3d 1000, 1019 (7th Cir. 2000), and that concrete evidence is how
the interest would become narrowly tailored. *Ricard*, 2022 WL 1471372, at *8. As for
minors' privacy rights, the U.S. Constitution obviously supersedes the California
Constitution, *see* U.S. Const., art. VI; and even if the same privacy rights appeared in
the U.S. Constitution, they could only ever trump parental rights when the right would
expire within a few months (i.e., ability to obtain an abortion). *Bellotti*, 443 U.S. at 642,
644 n.23, 650 (plurality).

## C. Parental Exclusion Policies Violate Parental Liberty Rights.

With respect to the right of parents to direct the upbringing of their children, it
is indisputable that decisions regarding identity are at the core of that right. *See
Tennessee. v. Cardona*, No. 2:24-cv-72, 2024 WL 3019146, at *30-31 (E.D. Ky. June 17,
2024). And the Ninth Circuit has explained that, although parents may not seek to
modify curriculum school-wide, "[m]aking intimate decisions and controlling the
state's dissemination of information regarding intimate matters" is different, and
schools may "not interfere with the right of the parents to make intimate decisions."
*Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1191 (9th Cir. 2006) ("*Fields II*").

### 1. *Gender Identity and Race Are Not Analogous.*

While the CDE argues the plainly false proposition that parental rights end at
the schoolhouse door, which needs no rebuttal, *see* Dkt.166, pp.13:16-14:18, the AG
takes a more nuanced approach. The AG first cites two cases in which the Supreme
Court held that states could discriminate against, or outright prohibit, private schools
that refuse to admit African-Americans. *See* Dkt.165, p.15:6-19 (citing *Runyon v.
McCrary*, 427 U.S. 160, 176-77 (1976); *Norwood v. Harrison*, 413 U.S. 455, 461-62
(1973)). Although both cases state that *Meyer v. Nebraska*, 262 U.S. 390 (1923) and

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925), do not apply, neither one meaningfully explains why, and the AG is apparently implying that attendance at a race-segregated school relates to forming a child's "identity" in a similar way to permitting their parents to decide how their gender confusion will be addressed.

But the best explanation of these cases is that "[i]n *Obergefell v. Hodges*, 576 U.S. 644 (2015), the majority made a commitment. It refused to equate traditional beliefs about [sex and identity], which it termed 'decent and honorable,' *id.*, at 672, with racism, which is neither." *Fulton*, 593 U.S. at 616 (Alito, J., concurring) (citation cleaned up). The Supreme Court has never called racism "decent and honorable" and has repeatedly rebuffed sky-falling rhetoric about the potential for racial discrimination as a basis for crushing traditional religious beliefs. *See, e.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 635 (2018) (comparing traditional beliefs to racism was evidence of hostility).

### 2.    *Parents Get to Decide What Treatment their Children Receive.*

The AG next cites a Third Circuit case which rejected a parental rights claim after a government clinic gave a minor an abortifacient. *Anspach v. Philadelphia Dep't of Pub. Health*, 503 F.3d 256 (3d Cir. 2007). The reasoning there was that the girl sought out the drug, and there was no "manipulative, coercive, or restraining conduct by the State." *Id.* at 266. Here, presumably, the AG implies that Plaintiffs' children are seeking out a social transition themselves, voluntarily. Other circuits, however, have rejected this reasoning in the exact same context, *see Deanda v. Becerra*, 96 F.4th 750, 758 (5th Cir. 2024) (access to contraception), and the Ninth Circuit agrees that parents have a right to notice before any treatment is provided—it has not adopted the Third Circuit's approach. *Pope v. Cnty. of San Diego*, 719 F. Supp. 3d 1076, 1085 (S.D. Cal. 2024) (citing *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018)). Moreover, socially transitioning a child based on her request is one thing; lying to her parents when they ask about it is another. The latter is definitely "manipulative,

1    coercive, or restraining conduct by the State." *Anspach*, 503 F.3d at 266.[4]

2    **3.**   ***Parents' Rights Do Not End at Deciding "Treatment."***

3    Both the AG and CDE also argue that a social transition is not medical or

4 psychological treatment. Dkt.165, pp.17:8-18:3; Dkt.166, pp.14:19-22. That's incorrect.

5 *See* Rebuttal Anderson Decl., ¶¶33-40. But it is also irrelevant. The core issue here is

6 that the government may not "standardiz[e] its children" in contravention to the core

7 values of their parents. *Moore v. E. Cleveland*, 431 U.S. 494, 506 (1977). The issue here

8 is not solely about making psychological treatment decisions.

9    The AG also argues that Plaintiffs' view of Substantive Due Process "has no

10 discernable limit" and would require schools "to provide information on, for example,

11 whether and who a student is dating, who a student is friends with, whether the

12 student is wearing makeup, or whether the student is studying or playing sports at

13 recess." Dkt.168, p.8:16-24. But Plaintiffs are not asking the schools to provide them

14 information regarding their child, but to not engage in the active intervention of

15 *requiring all staff* to use opposite-sex pronouns and an opposite-sex name for their

16 children without their knowledge or consent. That is radically different.

17    **D.**   **Parental Exclusion Policies Violate Teachers' Free Speech Rights.**

18    For Plaintiffs' free speech claim, the parties agree that proper framework is the

19 three-prong analysis requiring that Plaintiffs' speech be: (1) about an issue of legitimate

20 public concern, (2) not necessary for the performance of actual job duties, (3) not

21 necessary to restrict for the effective administrative operation of the government.

22 *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776-83 (9th Cir. 2022).

23

---

24 [4] The AG also argues that FERPA is irrelevant because "Plaintiffs have not actually

25 alleged that their schools refused them access to any of their student's education records protected by FERPA." Dkt.165, p.18:4-16. But Plaintiffs don't know what they

26 don't know. What they do know is that the CDE advises schools to keep records of student's transgender identity separate from all other student records to prevent

27 accidental disclosure to the student's family. *See* App'x Ex. 20, FAQ #7, pp.5-6 (ECF

28 No. 153-3 at pp.240-41). Defendants should be enjoined from implementing that.

### 1. *Gender Identity is a Matter of Public Concern.*

On the first prong, Defendants argue that the *context* of the speech makes it not a matter of public concern. Defendants argue that discussing one's *views* on gender identity would be speech of public concern, but not speech from teachers to parents about specific students. Dkt.165, p.26:11-25; Dkt.166, pp.19:1-7, 20:18-21:2. But the *content* of the speech is broader than Defendants imply. Outside the *literal* meaning of words, conduct is protected as speech if it has a "communicative nature," *see United States v. Swisher*, 811 F.3d 299, 311 (9th Cir. 2016) (quoting *Texas v. Johnson*, 491 U.S. 397, 406 (1989)), and the use of preferred pronouns necessarily conveys "ideological messages." *Taking Offense v. State*, 66 Cal. App. 5th 696, 712 (2021). Thus, the use of preferred pronouns (or biological pronouns), necessarily contains *communicative content* about sex and gender theory, *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 572 (2023); *Meriwether v. Hartop*, 992 F.3d 492, 509 (6th Cir. 2021), and in this analysis, "content is king." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 965 & n.9 (9th Cir. 2011).

### 2. *Parental Exclusion Policies Are Unnecessary for Education.*

On the second prong, Defendants argue that communicating with parents is part of Plaintiffs' job duties, so the speech is unprotected. Dkt.164, pp.15:26-16:27; Dkt.165, pp.26:26-28:1; Dkt.166, pp.19:18-20:17, 21:4-18. Following, *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 530-31 (2022), the relevant question is not whether "[the teacher] was compelled to speak [to parents or] in the classroom setting," but whether, *practically*, "[h]er job was to teach English to the appropriate state standards" or to convey the school district's message "with regard to LGBTQ issues." *Geraghty v. Jackson Loc. Sch. Dist.*, No. 5:22-cv-2237, 2024 WL 3758499, at *13 (N.D. Ohio Aug. 12, 2024). The answer here is the former.

The AG cites to *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1264 (9th Cir. 2016), for the proposition that teachers' practical job duties are broader than curricular instruction, and include collaborating with and updating parents about students. Dkt.165, p.27:20-24. This does not change that teachers' job duties do *not*

include conveying ideological LGBTQ messages, *Geraghty*, 2024 WL 3758499, and, in fact, shows that Parental Exclusion Policies undermine traditional teacher duties of fostering parental *involvement*.

### 3. *There Is No Legitimate State Administrative or Efficiency Interest Requiring Parental Exclusion Policies*

Lastly, the AG argues that restricting teachers' speech with parents is necessary to create a safe and supportive learning environment and create teacher-student trust, Dkt.165, p.28:2-27, and the CDE argues that restricting their speech is necessary to protect their physical safety and privacy rights. Dkt.166, p.21:27-24:9. The CDE's concerns are simply hyperbolic, *see* Rebuttal Anderson Decl., ¶¶66-72, and the AG's concerns about teacher-student trust misunderstands the degree of authority delegated by parents to the State. Teacher-student trust is important, but not so important that parents have waived all their parental rights. *See Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 200-01 (2021) (Alito, J., concurring).[5]

### E. The Scope of the Requested Relief is Feasible and Proper.

### 1. *Plaintiffs Primarily Request an As-Applied Injunction, but a Facial One Is Also Appropriate.*

The AG also makes various attacks regarding the form of Plaintiffs' requested injunction. *See* Dkt.153, Not. of Mot. The AG first argues that Plaintiffs are bringing a facial challenge, which requires satisfaction of the high bar of showing that a policy is unconstitutional in all circumstances. *See* Dkt.165, pp.13:24-14:13. This is misleading. Plaintiffs are bringing *both* facial and as-applied challenges—as applied to every parent and their children in the California state-wide school system. *See* Dkt.133, SAC, Prayer ¶B. In any event, this case presents precisely the situation where facial invalidation is appropriate. The Court can and should facially invalidate California's policy, as stated

---

[5] The AG states that it is unclear why Plaintiffs cited *Mahanoy*. *See* Dkt.165, p.19:21-25. Although *Fields II* provides the straightforward rule of decision, Justice Alito provides a good explanation for that rule of decision. *See Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 192-200 (2021) (Alito, J., concurring).

in the CDE's FAQ Page, of socially transitioning children at school without parental notice or consent. *See Troxel v. Granville*, 530 U.S. 57, 75 (2000) (plurality) (affirming Washington Supreme Court's facial invalidation of statute).

### 2. *Plaintiffs Request a Prohibitory Injunction, but a Mandatory One Is Also Appropriate.*

The AG next argues that the higher bar for mandatory injunctions applies here. Dkt.165, pp.12:25-13:2; *cf. also* Dkt.164, p.20:8. That is incorrect. The relevant analysis asks whose action seeks to change (plaintiff) or did change (defendant) the relationship between the parties. Here, the State's action has upset centuries of respect for parental rights, so the injunction is not mandatory. *See FCA*, 82 F.4th at 687-88. In any event, if the status quo is itself causing irreparable harm, as here, then a mandatory injunction is proper. *See, e.g.*, *Betschart v. Oregon*, 103 F.4th 607, 619 (9th Cir. 2024); *N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024).

### 3. *The Requested Injunction is Based on the Complaint and is Administratively Feasible.*

The AG also argues that the Court cannot issue an injunction based on claims not pled in the Complaint, and that AB 1955 neither requires Parental Exclusion Policies nor is referenced in the "prayer for relief" (only earlier in the Complaint). Dkt.165, p.30:8-28. While the primary section of AB 1955 only directly precludes school districts from adopting Parental Notification Policies (and is silent as to whether they must adopt a Parental Exclusion Policy), the legislative findings make clear that this is based on the fact that "[p]upils have a constitutional right to privacy." 2024 Cal. Stat., ch. 95, § 2(g). So Plaintiffs asked the Court to enjoin any provision of California law that requires Parental Exclusion Policies, including potentially AB 1955. *See* Dkt.153. If the AG will confirm that AB 1955 is irrelevant to them, this issue is moot.

The AG lastly argues that the proposed injunction is unenforceable because the AG "does not employ, regulate, or in any way legally control the more than 300,000 individual teachers." Dkt.165, pp.29:25-30:7. *As to the AG*, however, the requested

injunction seeks to prevent the AG from "enforcing" any provision of California law so as to require Parental Exclusion Policies, or "knowingly allow[ing]" any school district from doing so. *See* Dkt.153 at pp.2:22, 3:6. As stated in the motion, the AG has been busy enforcing California law against CVUSD and threatening other school districts—he should be enjoined from continuing to do so. *See* App'x Exs.22-27.

As for the CDE—who does not argue unworkability—Plaintiffs ask that the Court enjoin it from "implementing" any provision of California law so as to "permit or require" any employee or school district from socially transitioning children without parental consent. Dkt.153, pp.2:22, 3:5. To effect this, it can simply issue a Legal Advisory stating that school districts are prohibited from using a student's preferred names and pronouns without parental consent. *See, e.g.*, *Am. Nurses Ass'n v. Torlakson*, 57 Cal. 4th 570, 578 (2013) (referencing Legal Advisory on rights of diabetic students); *Calif. Ass'n of Sch. Psychologists v. Superintendent of Pub. Educ.*, No. 3:93-cv-2891, 1994 WL 224433, at *1 (N.D. Cal. May 17, 1994) (referencing Legal Advisory on IQ testing).

As stated in Plaintiffs' opposition to the CDE's motion to dismiss, this should be adequate as the CDE cannot disperse state education funds to school districts violating any aspect of California law, Cal. Educ. Code § 250; Cal. Gov. Code § 11135, and, practically, the CDE knows how to monitor school districts' compliance with various laws because it already does so in various contexts. *See, e.g.*, *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, No. 2:13-cv-889, 2016 WL 5661775, at *7 (E.D. Cal. Sept. 30, 2016).

## II. THE OTHER INJUNCTION FACTORS FAVOR PLAINTIFFS

Here, because Plaintiffs are likely to succeed on the merits of their constitutional claims, the remaining preliminary injunction factors necessarily favor granting an injunction, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023), because a moment's deprivation of a constitutional right is irreparable injury, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020), and is never in the public interest. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Defendants first focus on

1  the lack of an imminent injury, but this blinks the continuous violation of constitutional

2  rights, Dkt.165, p.29:2-8; Dkt.166, p.24:10-21, before addressing the countervailing

3  interests of students. Dkt.164, p.19:17-20; Dkt.165, p.29:9-22; Dkt.166, pp.24:22-25:16.

4  Thus it bears repeating that "a state has *no interest whatever* in protecting children from

5  parents unless it has some reasonable evidence that the parent is unfit and the child is

6  in imminent danger." *Wallis*, 202 F.3d at 1142 n.14 (emphasis added).

7  **III.  CLASS-WIDE RELIEF IS APPROPRIATE**

8          In opposition to provisional class certification, the Defendants do not dispute

9  numerosity of the class or adequacy of counsel. Rather, they argue solely (1) lack of

10  ascertainability of the class, and (2) lack of common issues—as needed for both the

11  Rule 23(a) commonality and typicality determinations, and Rule 23(b)(2).[6]

12          **A.    No Ascertainability Requirement Applies Here.**

13          The AG argues lack of ascertainability via footnote. Dkt.165, p.32:20-28. This

14  argument was rightly relegated to a footnote. "Although the Ninth Circuit has yet to

15  expressly address the ascertainability requirement in the context of Rule 23(b)(2),

16  courts in this Circuit have held that it does not apply." *Al Otro Lado, Inc. v.*

17  *McAleenan*, 423 F. Supp. 3d 848, 872 (S.D. Cal. 2019) (collecting district court

18  opinions); *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015)

19  ("every other circuit to address the issue has concluded that the ascertainability

20  requirement does not apply to Rule 23(b)(2) classes"). And Like with a Rule 23(b)(2)

21  class, there is neither an ascertainability nor a notice requirement for a Rule

22  23(b)(1)(A) class. *See Risto v. Screen Actors Guild*, No. 2:18-cv-7241, 2020 WL

23  5518600, at *12 (C.D. Cal. Sept. 14, 2020); *In re Victor Techs. Sec. Litig.*, 102 F.R.D.

24

_____

25  [6] The AG also criticizes Plaintiffs for not repeating the classes defined in the complaint

26  in the notice of motion. Dkt.165, p.32:6-14. But as a general matter, the parties are
    bound to the class as defined in the complaint, except to make minor modifications, so

27  there is no ambiguity. *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 350 (S.D.
    Cal. 2024). And although the Court has no obligation to cure any deficiencies in the

28  class definition, it may do so. *See id.*

53, 63 (N.D. Cal. 1984), *aff'd*, 792 F.2d 862 (9th Cir. 1986). This makes perfect sense in a class action seeking declaratory and injunctive relief as opposed to damages; there is simply no need to know the class members.

### B.    Common Issues Predominate Here.

Under Rule 23(a), as stated above, Defendants argue solely lack of commonality and typicality, elements which "tend to merge," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011), on the bases that class members' claims will turn on their individual beliefs and each school district's policies are distinct. *See* Dkt.165, p.33:7-34:16; Dkt.166, p.10:7-18. For the same alleged lack of uniformity, the AG argues that a class under either Rule 23(b)(2) or 23(b)(1)(A) is inappropriate. Dkt.165, pp.34:17-35:8.

In support, the AG points to an opinion in which this Court found that a prisoners' free exercise claims would require an "individualized inquiry," but that conclusion turned on the different circumstances of various prisons for which evidence had not been submitted. *Martinez v. Brown*, No. 3:08-cv-565, 2011 WL 1130458, at *10 (S.D. Cal. Mar. 25, 2011).

But here, based on the evidence submitted, the Court can conclude that the parties are dealing with a *statewide policy*, exemplified by the CDE's FAQ page, *see* Dkt.153-6, Jane Poe Decl., ¶11; Jane Doe Decl., ¶21; Dkt.133, SAC, ¶¶254, 318, and then decide the uniform issue of whether a school may socially transition a child without parental knowledge or consent—an issue which the State has answered for all school districts statewide, and which is patently appropriate for class resolution. *See B.K. v. Snyder*, 922 F.3d 957, 968-70 (9th Cir. 2019) (court properly grounded determination in validity of "statewide policies and practices" as applied to substantive due process rights of minors).[7]

---

[7] The AG also argues that a Rule 23(b)(1)(A) class is inappropriate when damages are sought. Dkt.165, p.35:227-28. Plaintiffs are not seeking damages *for the class* and, in any event, the cited case does not support the statement. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001).

16

Reply Memo. ISO Plts.' Mtn. for Class-Wide Prelim. Inj.

# IV.    THE COURT SHOULD DISPENSE WITH A BOND REQUIREMENT

Lastly, EUSD asks for the Court to order Plaintiffs to post a bond for damages it may sustain if the injunction is later vacated. Dkt.164, p.20:17-20. But where the defendant failed to "submit any evidence regarding her likely damages," a bond should be denied. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Here, because EUSD failed to submit any specific evidence of what it (or any of the Defendants) could allegedly sustain, a bond should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the above motion in full, granting them a class-wide preliminary injunction.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: October 28, 2024          By:

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-WVG

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **Reply Memorandum in Support of Plaintiffs' Motion for a Class-Wide Preliminary Injunction;**

• **Rebuttal Declaration of Dr. Erica E. Anderson, PhD, in Support of Plaintiffs' Motion for a Class-Wide Preliminary Injunction;**

• **Plaintiffs' Response to the Defendants' Evidentiary Objections in Support of Plaintiffs' Motion for a Class-Wide Preliminary Injunction; and**

• **Corrected Appendix of Evidence, Volume II, in Support of Plaintiffs' Motion for a Class-Wide Preliminary Injunction.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell W. Spence, Supervising Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-mail: Darrell.Spence@doj.ca.gov
**Attorneys for Attorney General Ron Bonta**

Len Garfinkel, Esq., General Counsel
Bruce Yonehiro, Assistant General Counsel
Paul Gant, Assistant General Counsel
Christopher Mandarano, Esq., Deputy Gen. Counsel
Virginia Cale, Deputy General Counsel
California Department of Education
1430 "N" Street, Suite 5319
Sacramento, CA 95814
Tel: 916-319-0860; Fax: 916-322-2549
E-Mail: lgarfinkel@cde.ca.gov
E-Mail: byonehiro@cde.ca.gov
E-Mail: pgant@cde.ca.gov
E-Mail: cmandarano@cde.ca.gov
E-Mail: vcale@cde.ca.gov
**Attorneys for State Defendants**

Daniel R. Shinoff, Esq.
Gil Abed, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: Dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: gabed@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
**Attorneys for EUSD Defendants**

Emmanuelle Soichet, Esq.
Kevin L. Quade, Esq.
Deputy Attorney General
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov
**Attorneys for Governor Gavin Newsom and Attorney General Ron Bonta**

  X    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

  X    **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on October 28, 2024, at Rancho Santa Fe, California.

_____
Kathy Denworth