1  Charles S. LiMandri, SBN 110841
    cslimandri@limandri.com
2  Paul M. Jonna, SBN 265389
    pjonna@limandri.com
3  Jeffrey M. Trissell, SBN 292480
    jtrissell@limandri.com
4  LiMANDRI & JONNA LLP
   P.O. Box 9120
5  Rancho Santa Fe, CA 92067
   Telephone: (858) 759-9930
6  Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>        Defendants. | Case No.: 3:23-cv-0768-BEN-VET<br><br>**Plaintiffs' Opposition to the CDE Defendants' Motions to Dismiss the Action as Moot**<br><br>Judge:        Hon. Roger T. Benitez<br>Courtroom:   5A<br>Hearing Date:  February 24, 2025<br>Hearing Time:  10:30 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

LEGAL STANDARD ........................................................................................ 4

RELEVANT BACKGROUND ............................................................................ 4

    A.    History of California's Adoption of Parental Exclusion Policies ............................................................................................ 4

    B.    History of California's Enforcement of Parental Exclusion Policies ............................................................................................7

    C.    History of California's Codification of Parental Exclusion Policies ............................................................................................ 8

    D.    Procedural History: Denial of the Motions to Dismiss ......................10

ARGUMENT......................................................................................................10

    I.    Background Legal Principles on Mootness ........................................10

    II.    Application of Mootness Principles........................................................12

        A.    The CDE Has Not Even Voluntarily Ceased the Conduct at Issue ........................................................................12

        B.    The CDE Has Not Met its Burden to Prove that the Wrongdoing Cannot Reasonably Be Expected to Recur. ................................................................................. 13

        C.    Taking Down the FAQ Page Does Not Completely and Irrevocably Eradicate its Effects. .......................................14

CONCLUSION..................................................................................................16

i

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

# TABLE OF AUTHORITIES

**CASES**

*Am. Nurses Ass'n v. Torlakson*,
No. C061150, 2014 WL 1831636 (Cal. Ct. App. May 8, 2014) .................... 14

*Ass'n of Mex.-Am. Educators v. California*,
231 F.3d 572 (9th Cir. 2000) ........................................................4

*Barnes v. Healy*,
980 F.2d 572 (9th Cir. 1992) .......................................... 3, 11, 12, 15

*Bell v. City of Boise*,
709 F.3d 890 (9th Cir. 2013) ...................................................11, 12

*Butt v. California*,
4 Cal. 4th 668 (1992) ..............................................................4

*Chafin v. Chafin*,
568 U.S. 165 (2013) ............................................................. 11

*Const. Party of Penn. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ........................................................4

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014)........................................................4

*Crocker v. Austin*,
115 F.4th 660 (5th Cir. 2024) .................................................... 15

*FBI v. Fikre*,
601 U.S. 234 (2024) ............................................................. 12

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) ...................................................... 11

*Fikre v. FBI*,
35 F.4th 762 (9th Cir. 2022).....................................................12, 14

*Flast v. Cohen*,
392 U.S. 83 (1968) ............................................................. 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .............................................................11, 12

*Hilton v. Wright*,
235 F.R.D. 40 (N.D.N.Y. 2006)..................................................... 15

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,

ii

    567 U.S. 298 (2012) ................................................................... 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................... 11

*Meinecke v. City of Seattle*,
    99 F.4th 514 (9th Cir. 2024)....................................................... 11

*Mirabelli v. Olson*,
    No. 3:23-cv-768, 2025 WL 42507 (S.D. Cal. Jan. 7, 2025)........... 15

*Planned Parenthood Great Nw. v. Labrador*,
    122 F.4th 825 (9th Cir. 2024)...................................................... 13

*Quern v. Jordan*,
    440 U.S. 332 (1979) ................................................................... 15

*Rezaq v. Nalley*,
    677 F.3d 1001 (10th Cir. 2012) .................................................. 15

*Rhoades v. Avon Prods., Inc.*,
    504 F.3d 1151 (9th Cir. 2007) ......................................................4

*Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*,
    581 F.3d 1169 (9th Cir. 2009) .................................................... 11

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ......................................................4

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
    968 F.3d 738 (9th Cir. 2020) .................................................. 4, 11

*Thomas v. Anchorage Equal Rts. Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ......................................................4

*Troxel v. Granville*,
    530 U.S. 57 (2000) ........................................................................2

**STATUTES & RULES**

Cal. Const. art. I, § 1 ............................................................... 2, 5, 6

Cal. Educ. Code § 213 ....................................................................2

Cal. Educ. Code § 220.1................................................................3, 8

Cal. Educ. Code § 220.3 ................................................................3, 8

Cal. Educ. Code § 220.3(a) .............................................................9

Cal. Educ. Code § 220.3(b) .................................................................. 9

Cal. Educ. Code § 220.5 ................................................................... 3, 8

Cal. Educ. Code § 220.5(a) ................................................................. 9

Cal. Educ. Code § 220.5(b) ................................................................. 9

Cal. Educ. Code § 221.5(f) ................................................................. 5

Cal. Educ. Code § 250 ........................................................................ 2

Cal. Educ. Code § 33300 ..................................................................... 5

Cal. Educ. Code § 33301 ..................................................................... 5

Cal. Educ. Code § 33303 ..................................................................... 5

Cal. Gov. Code § 11135 ....................................................................... 2

Cal. Stat. 2013, ch. 85 ........................................................................ 5

Cal. Stat. 2024, ch. 95 .................................................................. 3, 8, 9

Cal. Stat. 2024, ch. 95, § 2(f)-(g) ...................................................... 14

Fed. R. Civ. P. 12(b)(1) ...................................................................... 3

**OTHER AUTHORITIES**

Cal. Sen. Comm. on Educ. Report,
    Analysis of AB 1955, 2023-2024 Reg. Sess. (May 22, 2024) ......................... 14

**INTRODUCTION**

At the beginning of the 2020-2021 school year, the Escondido Union School District ("EUSD") joined hundreds of other school districts in adopting a Parental Exclusion Policy. *See* ECF No. 133, Second Amend. Compl. ¶¶179-80 & Ex.3 ("SAC"). According to EUSD, this Parental Exclusion Policy is based on a given child's "[r]ight to privacy" because "[a] student's transgender or gender-nonconforming status is the student's private information." SAC, Ex.3 (ECF No. 133 at p.136).[1]

As further explained by EUSD, this policy has two main components:

> [F]irst off, determining gender identity. The school or District shall accept the student's assertion of their gender identity and begin to treat the student immediately, consistently with that gender identity. The student's assertion is enough. There is no need for a formal declaration. There's no requirement for parent or caretaker agreement or even for knowledge for us to begin treating that student consistent with their gender identity.

> [Second,] [s]tudents also have a right to privacy. A student's status is their private information, and the District shall only disclose the information to others with the student's prior consent. When disclosure of a student's gender identity is made to a District employee by a student, that employee shall seek the student's permission to share with others including parents or caretakers. The main take away is this: It always comes back to the student's comfort. If one wants to take any action to share a student's status, they must be granted that permission, and that includes parents, caretakers, other teachers, administrators, even support staff. You have to seek out that permission first.

SAC ¶¶186-87 & Ex.4, pp.3-4 (ECF pp.141-42) (cleaned up).

Under this Parental Exclusion Policy, parents are denied the right to participate in *any* decision-making regarding their child's gender transition—they do not even get to know about it—even though "the interest of parents in the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests

---

[1] Page citations are made to the ECF page stamp.

1

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality).

When Plaintiffs Elizabeth Mirabelli and Lori Ann West sought a religious accommodation from EUSD, they were told that no accommodation was possible because state law requires Parental Exclusion Policies. The evidence? A Frequently Asked Questions page on the website of the California Department of Education ("CDE") interpreting the privacy rights of children under Cal. Const. art. I, § 1. *See* SAC ¶254 & Ex.27, p.2 (ECF p.311). When the Poe Family and the Doe Family made similar inquiries, they were told the same thing. SAC ¶¶125, 143. But that provision simply says: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." Cal. Const. art. I, § 1 (emphasis added).

Hundreds of Californian school districts are treating the language from the FAQ page as binding. *See* Jonna Decl., Ex. A (non-comprehensive list of 596 California school districts with similar policies). The CDE pretends to be shocked this is happening, insisting when asked that the FAQ page merely provides *guidance* on how to interpret cited provisions of California law—completely non-binding advice: "There's nothing in an FAQ itself, separate and apart from the particular statute and other laws that are cited there, that is binding on anyone." ECF No. 39, Prelim. Inj. Hearing Transcript, at p.4:1-14. And so a supposedly befuddled CDE concludes in its most recent motion to dismiss that hundreds of school districts must have simply interpreted the Privacy Clause the same way it did. *See* ECF No. 150-1, at p.12:12-27. In the CDE's view, school districts' interpretation certainly could not have been influenced by their knowledge that the CDE must withhold state education funds from school districts that violate California law. *See* Cal. Educ. Code §§ 213, 250; Cal. Gov. Code § 11135.

This Court readily and rightly has deemed that argument absurd. *See* ECF No. 42 at pp.30-33; ECF No. 194 at pp.10-11. But now, one week after the Court's most

recent order, the CDE has filed another motion to dismiss—its fifth motion raising similar arguments. ECF No. 195; *see* ECF Nos. 25, 53, 124, 150. The pretext this time is that on January 1, 2025, California's horribly mis-named SAFETY Act came into effect. *See* ECF No. 195-2, CDE Req. Jud. Not., Ex.1, Cal. Stat. 2024, ch. 95 (AB 1955) (creating Cal. Educ. Code §§ 220.1, 220.3, 220.5).

That new statute (1) prohibits local school districts from adopting any policy requiring employees to inform parents about their child's gender presentation at school and (2) prohibits local school districts from requiring any specific employee to do so. *Id.* at § 6. And in light of this new statute, the CDE took down its FAQ page and replaced it with new guidance. In that new guidance, the CDE explains the above two points, states that "[l]ocal educational agencies *must* comply with statutes and regulations," but then states that "AB 1955 does not specifically address whether a school employee may voluntarily disclose any information related to a pupil's … gender identity." ECF No. 195-2, CDE Req. Jud. Not., Ex.2 (emphasis added).

As a result, the CDE argues, "[t]here are no longer any alleged state 'policies' for the court to enjoin," and so this case should be dismissed as moot. ECF No. 195-1 at p.5:15-16. But the CDE comes nowhere close to meeting the standard. As explained by the Ninth Circuit, "[v]oluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

Here, there is not even voluntary cessation. The CDE has not offered *any* evidence that it no longer views Parental Exclusion Policies to be required by state law or now understands that they are precluded by federal law. And even if the CDE had come to that conclusion, until it instructs all of the school districts (and the courts in which it has made that argument) of as much, merely taking down a webpage does not "completely and irrevocably eradicate[]" the effects of previously

telling the school districts to institute the policies. The CDE's latest frivolous motion should be summarily denied.

## LEGAL STANDARD

A complaint over which there is a "lack of subject-matter jurisdiction" is subject to a motion to dismiss. Fed. R. Civ. P. 12(b)(1). Federal courts have jurisdiction solely "to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)).

Under Rule 12(b)(1), the complaint can be challenged either "facially" or "factually," i.e., based on the face of the complaint or upon asking the court to make disputed factual determinations. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). However, if "the actual facts of this case [a]re not contested in any real sense," then the motion should be treated as essentially a facial attack because "[a] factual attack requires a factual dispute." *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Where the relevant facts are disputed, the facts as identified in the plaintiff's declarations are taken as true, or the court can order an evidentiary hearing to resolve the factual dispute. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007).

## RELEVANT BACKGROUND

### A.     History of California's Adoption of Parental Exclusion Policies

In California, "[i]t is 'well settled that the California Constitution makes public education uniquely a fundamental concern of the state.'" *Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 581 (9th Cir. 2000) (en banc) (quoting *Butt v. California*, 4 Cal. 4th 668, 685 (1992)). The agency tasked with managing education is the California Department of Education ("CDE"), which is "administered through" the

4

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

1  State Superintendent of Public Instruction and the State Board of Education. *See* Cal.
2  Educ. Code §§ 33300, 33301, 33303.

3  In 2014, California enacted the School Success and Opportunity Act. *See* Cal.
4  Stat. 2013, ch. 85 (AB 1266) (eff. Jan. 1, 2014) (amending Cal. Educ. Code
5  § 221.5(f)). That new Act stated that "[a] pupil shall be permitted to participate in
6  sex-segregated school programs and activities, including athletic teams and
7  competitions, and use facilities consistent with his or her gender identity, irrespective
8  of the gender listed on the pupil's records." *Id*. In conjunction with that Act, the
9  National Center for Lesbian Rights ("NCLR"), the Gay-Straight Alliance (later
10  renamed the Genders-Sexualities Alliance), and Equality California, met with the
11  CDE and submitted a proposed legal advisory on gender identity for the CDE to
12  publish. *See* MSJ Exhibits 1, 2, 3 (ECF No. 153-3 at pp.8-29).[2]

13  The proposed legal advisory surveyed the breadth of law concerning students
14  presenting as gender incongruent. As relevant here, the draft legal advisory stated that,
15  in light of a child's privacy rights under Cal. Const. art. I, § 1, "schools are required to
16  respect the limitations that a student places on the disclosure of their transgender
17  status, including not sharing that information with the student's parents." MSJ Exhibit
18  3, p.165 (ECF No. 153-3 at p.20). The draft model school policy included similar
19  language, stating that "school personnel should not disclose a student's transgender
20  status … to others, including, but not limited to … parents …, unless legally required to,
21  the student has authorized such disclosure, or there is a specific and compelling 'need
22  to know.'" MSJ Exhibit 3, p.171 (ECF No. 153-3 at p.26).

23  Upon reviewing the proposed legal advisory, the CDE ultimately decided to
24  publish it in two parts: a Legal Advisory and a Frequently Asked Questions page, both

25  _____

26  [2] Because the CDE is lodging a factual challenge, Plaintiffs cite to both the Second
   Amended Complaint and to evidence identified in discovery and submitted with
27  Plaintiffs' motion for summary judgment. To avoid redundancy, Plaintiffs merely cite
   to those exhibits and do not re-submit them. Plaintiffs also submit a few more exhibits
28  attached to the declaration of Paul M. Jonna.

of which were published by the CDE on January 29, 2016. MSJ Exhibit 5, Interrog. 1 (ECF No. 153-3 at p.35); MSJ Exhibit 6, Amend. Interrog. 3 (ECF No. 153-3 at pp.49-50); *see* SAC, Ex.26, 2016 Legal Advisory and FAQ Page.

The new 2016 Legal Advisory stated that its purpose was "to provide California school districts with updated guidance on the minimum requirements for compliance with California's prohibition on gender identity discrimination." *See* SAC ¶311 & Ex. 26-A, p.1. Thus, although its publication was inspired by the passage of the School Success and Opportunity Act, it sought to provide a comprehensive treatment of the rights of transgender youth in California schools. *Id*. Concerning the FAQ page, the Legal Advisory stated that "[i]t is recommended that these materials are reviewed by superintendents, principals, administrators and [others] … to ensure compliance with the educational equity and nondiscrimination requirements of" California law. SAC ¶312 & Ex. 26-A, p.2.

In most relevant part, the FAQ page stated: "Minors enjoy a right to privacy under Article I, Section I of the California Constitution that is enforceable against private parties and government officials. The right to privacy encompasses the right to non-disclosure (autonomy privacy) as well as in the collection and dissemination of personal information such as medical records and gender identity (informational privacy)." SAC ¶313 & Ex. 26-B, p.5. Thus, "schools *must* consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. With rare exceptions, schools are *required* to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents." SAC, Ex. 26-B, p.6 (emphasis added).

When initially published, the FAQ page linked to the California School Boards Association's ("CSBA") 2014 Final Guidance on AB 1266, Model BP 5145.3, Model AR 5145.3, and Policy Brief on Transgender Rights. *See* MSJ Exhibits 9-12 (ECF No. 153-3 at pp.70-95). Both the Policy Brief and the Model AR 5145.3 stated that a

6

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

child's gender transition should not be revealed to the child's parents. *See* MSJ Exhibits 10, 12 (ECF No. 153-3 at 79, 94-95). On March 14, 2023, the CDE updated its FAQ page to update the links and connect them to the CSBA's 2022 guidance and current model policies. *See* MSJ Exhibits 19-20 (ECF No. 153-3 at pp.194-212). In that guidance, the CSBA stated:

> A student's decision to inform the LEA ["local education agency," in California typically a school district] that their gender identity differs from their assigned sex at birth is extremely personal and private. At the same time, the decision may potentially involve very public components if, for example, the student starts to go by a different name. Despite this potential for public awareness, LEAs are required to, with rare exceptions, respect the limitations that a student places on the disclosure of the student's transgender status and consider the student's privacy rights and safety associated with this information, including not sharing that information with the student's parents except with the student's authorization.

MSJ Exhibit 19, p.6 (ECF No. 153-3 at p.199).

In June 2023, AG Bonta created a "State of Pride" page on the California Department of Justice website to highlight the actions he is taking for the LGBTQ community. That page included a "Know Your Rights" section which states that "You have the right to disclose – or not disclose - your gender identity on your own terms, regardless of your age. Your school, whether public or private, doesn't have the right to 'out' you as LGBTQ+ to anyone without your permission, including your parents." MSJ Exhibit 21 (ECF No. 153-3 at p.219) (emphasis omitted).

## B. History of California's Enforcement of Parental Exclusion Policies

On July 20, 2023, the Chino Valley Unified School District ("CVUSD") considered whether to adopt BP 5020.1, a Parental Notification Policy requiring school officials to notify a child's parents anytime a child "asks to be identified or treated as a gender 'other than the student's biological sex or gender listed on the student's birth certificate or any other official records.'" SAC ¶317; MSJ Exhibits 22-23 (ECF No. 153-3 at pp.223-34). On that same day, the Attorney General sent the

CVUSD Board a letter advising them that BP 5020.1 likely violated California law. MSJ Exhibit 24 (ECF No. 153-3 at pp.236-38). But the Board adopted the policy anyway. MSJ Exhibit 22 (ECF No. 153-3 at p.225). The next day, July 21, 2023, the CDE issued a press release stating that "[w]hat CVUSD has done may be in violation of state law. We will be working closely with the State Attorney General's office to verify and enforce California law." SAC ¶317 & Ex.37.

Shortly thereafter, the Attorney General sued CVUSD, alleging that BP 5020.1 violated both equal protection principles (both constitutional and statutory), and the Privacy Clause of the California Constitution. He also immediately applied for a temporary restraining order. SAC ¶318; MSJ Exhibits 26-27 (ECF No. 153-4 at pp.9-59). In his briefing, analogizing to reproductive rights, the Attorney General explained that minors have "autonomy" privacy rights in their gender identity because "[a] student's gender identity will … implicate the student's control over their personal bodily integrity, [and] serious long-term consequences in determining their life choices…." SAC ¶319; MSJ Exhibit 27, p.23 (ECF No. 153-4 at p.55) (cleaned up).

Similarly, on September 6, 2023, the Rocklin Unified School District ("RUSD") adopted a Parental Notification Policy. The next day, a teacher filed an administrative complaint with the CDE. After investigating, the CDE issued a Final Investigation Report in which it ordered RUSD to rescind its policy as a violation of student privacy rights. When RUSD refused to comply, the CDE filed suit. SAC ¶¶320-21; MSJ Exhibit 28 (ECF No. 153-4 at pp.61-94).

C.     History of California's Codification of Parental Exclusion Policies

With the beginning of 2025, California enacted the Support Academic Futures and Educators for Today's Youth Act, or SAFETY Act. *See* CDE RJN, Ex. 1 (ECF No. 195-2), Cal. Stat. 2024, ch. 95 (AB 1955) (eff. Jan. 1, 2025) (creating Cal. Educ. Code §§ 220.1, 220.3, 220.5). In that Act, it is declared that "[p]upils have a constitutional right to privacy when it comes to sensitive information about them." *Id.* at § 2(g). Thus, the Act provides that (1) teachers "shall not be required to

disclose any information related to a pupil's … gender identity … to any other person without the pupil's consent unless otherwise required by state or federal law," *id.* at § 5 (Cal. Educ. Code § 220.3(a)); and (2) school districts "shall not enact or enforce any policy … that would require an employee or a contractor to disclose any information related to a pupil's … gender identity … to any other person without the pupil's consent, unless otherwise required by state or federal law." *Id.* at § 6 (Cal. Educ. Code § 220.5(a)). As stated in the bill, both of these clarifications "does not constitute a change in, but is declaratory of, existing law." *Id.* at §§ 5, 6 (Cal. Educ. Code §§ 220.3(b), 220.5(b)).

As a result of this new SAFETY Act, the CDE replaced its 2016 Legal Advisory with new 2025 Guidance. *See* CDE RJN Ex. 2 (ECF No. 195-2).[3] In the new 2025 Guidance, the CDE stresses that "[l]ocal educational agencies *must* comply with statutes and regulations." *Id.* (ECF No. 195-2 at p.10) (emphasis added). The CDE further explains that the new Act includes a "ban on what is known as 'forced outing,' (i.e., requiring an employee or a contractor to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent, unless otherwise required by state or federal law)." *Id.* (ECF No. 195-2 at p.12).

However, the CDE explains, "AB 1955 [itself] does not specifically address whether a school employee may voluntarily disclose any information related to a pupil's … gender identity." *Id.* (ECF No. 195-2 at p.13). Upon issuing this new 2025 Guidance, the CDE sent a letter to all school districts advising them of its existence. CDE RJN Ex. 3. However, the CDE did not specifically state whether it has repudiated its position that a child's gender identity is protected information that cannot be disclosed to the child's parents. *See id.*

///

---

[3] https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp.

### D.    Procedural History: Denial of the Motions to Dismiss

On August 13, 2024, Plaintiffs filed their Second Amended Complaint, which included the State Superintendent and State Board of Education members as defendants for their role with respect to Parental Exclusion Policies. SAC ¶¶51, 53-65. On September 30, 2024, both the Attorney General and the CDE filed Rule 12(b)(1) motions to dismiss for lack of jurisdiction. *See* ECF Nos. 149, 150 (CDE); ECF No. 156 (AG).

In attempting to identify the cause of Plaintiffs' harm, the Court noted that on the defense side "it's like a circular firing squad." ECF No. 193, Transcript of Motion to Dismiss Hearing, p.88. "Everybody says, 'It's not me, it's them,' 'It's not me, it's them,' 'It's not me, it's them.'" *Id.* Nevertheless, the Court ultimately denied these motions. With respect to the State Superintendent, the Court held that the Plaintiffs' harms were fairly traceable to the CDE's Frequently Asked Questions page. ECF No. 194, at pp.10:17-21, 11:15-18. With respect to the State Board, the Court held that state law gives it authority to decide the policies of the CDE, which the State Superintendent is then required to execute. *Id.* at pp.12:19-14:9. And with respect to the Attorney General, the Court held that Plaintiffs were "likely to suffer future injuries traceable to the State Defendants' policies requiring non-disclosure." *Id.* at pp.14:10-15:20.

One week after this Court denied the CDE's and Attorney General's motions to dismiss, the CDE filed a renewed motion to dismiss the action as moot on the basis that it had taken down its FAQ page. *See* ECF No. 195.

## ARGUMENT

### I.    BACKGROUND LEGAL PRINCIPLES ON MOOTNESS

As stated above, "the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen*, 392 U.S. 83, 94 (1968). Further, parties must maintain a true "case or controversy" "through all stages of federal judicial proceedings, trial and appellate," otherwise the case should be

10

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

dismissed as moot. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

"To satisfy the 'irreducible constitutional minimum' for standing, a plaintiff must establish 'three elements': (1) injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). For prospective relief, the plaintiff must also establish an additional fourth element: "a sufficient likelihood that he will again be wronged in a similar way." *Meinecke v. City of Seattle*, 99 F.4th 514, 520 (9th Cir. 2024) (quoting *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680-81 (9th Cir. 2023) (en banc) ("*FCA*")).

But once an action has been commenced, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "Voluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

"The burden of demonstrating mootness is a heavy one," *id.*, and "lies with the party asserting mootness," including "a government entity that voluntarily ceases allegedly illegal conduct." *Bell v. City of Boise*, 709 F.3d 890, 898-99 (9th Cir. 2013); *see also Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1173-1175 & n.4 (9th Cir. 2009) ("*Rosemere*") (noting the defendant "impermissibly attempts to shift the burden to Rosemere to defeat mootness. As we have stated, it is the EPA that bears the 'heavy burden' in this case."). And courts must view "maneuvers designed to insulate a decision from review …with a critical eye." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012).

Thus, voluntary cessation "will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) ("*Fikre II*") (quoting *Friends of the Earth*, 528 U.S. at 189). The government has not met its burden where it "remains practically and legally free to return to its old ways." *Fikre v. FBI*, 35 F.4th 762, 767 (9th Cir. 2022) ("*Fikre I*") (cleaned up). Sworn testimony that it will not engage in the conduct in "the future based on the currently available information" is inadequate without a "broad change in agency policy or procedure" or an acknowledgment that past actions were illegal and an "unambiguous renunciation of its past actions." *Id.* at 771-72.

## II. APPLICATION OF MOOTNESS PRINCIPLES

As noted above, the voluntary cessation of conduct does not moot a claim unless: "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes*, 980 F.2d at 580. The CDE has the burden of proving both. *Bell*, 709 F.3d at 898-99.

### A. The CDE Has Not Even Voluntarily Ceased the Conduct at Issue.

To begin, the CDE argues that it has voluntarily ceased publishing the FAQ page. *See* Mtn., p.5 (§ IV.A). It also argues that it was not enforcing the FAQs in the Rocklin litigation, merely state law. *See* Mtn., pp.6-7 (§ IV.C). But the FAQs are not what is directly at issue here. Rather, the issue is that the CDE *holds the view* that Parental Exclusion Policies are required by state law, instructed school districts as much, and has enforced its interpretation of state law. The question is whether the CDE has voluntarily ceased *holding that view*—and there is no evidence it has.

For example, in a similar case, the Attorney General of Idaho issued an opinion letter interpreting the word "assists in performing" in a state statute. When he withdrew the letter during litigation, the Ninth Circuit held that did not moot the plaintiff's claims because "the Attorney General still has not repudiated his conclusion that § 18-622(1) prohibits referring patients to out-of-state abortion providers. Nor has

he provided an alternative interpretation of § 18-622(1) that would ease plaintiffs' fears of enforcement." *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024). What matters is the CDE's view of the law, not whether it has merely informed school districts that it took down the FAQ page.

Here, beyond the simple fact that the CDE has not explained its view in its moving papers, there is new evidence that it maintains its views. On January 29, 2025, President Trump issued his Executive Order "Ending Radical Indoctrination in K-12 Schooling." Jonna Decl., Ex.B. In that Executive Order, among other things, he explains that Parental Exclusion Policies are illegal and directs various cabinet secretaries to investigate how to, and send him a report detailing their conclusions about how to, "prevent or rescind Federal funds, to the maximum extent consistent with applicable law, from being used by an [local school district] to directly or indirectly support or subsidize the social transition of a minor student, including through school staff or teachers or through deliberately concealing the minor's social transition from the minor's parents." *Id.* at p.5.

In response, on the same day, the CDE issued a statement that President Trump need not wait the 90 days to receive the secretaries' reports about what they can and cannot do. Rather, the CDE explained: "We can give the Trump Administration that answer right now: **nothing**." Jonna Decl., Ex.C. "[F]ederal law already prohibits the federal government from leveraging grants to mandate specific instructional content in schools." *Id.* The CDE is not mooting this case, it is doubling down.

## B. The CDE Has Not Met Its Burden to Prove that the Wrongdoing Cannot Reasonably Be Expected to Recur.

Turning to the first element, whether it is reasonably expected that the harm will recur, the CDE makes the rather surprising argument that it cannot reasonably be expected that it will re-institute the 2016 Legal Advisory and FAQ page (or something similar) because doing so would violate California's Administrative Procedure Act. *See* Mtn., pp.5-6 (§ IV.B). The CDE massages the argument to state

that Plaintiffs' allegation that the FAQ page was de facto binding is foreclosed by the APA, which prohibits the CDE from adopting binding regulations without following the APA procedures. *See id.*

But this massaging of the case law is misleading. Rather, California courts have held that the CDE necessarily violates the APA when it issues a legal advisory like the one at issue here: "a statement by the Department of its understanding of the law" that does "not seek to enforce the *actual language* of the statute, but to *interpret* it." *See Am. Nurses Ass'n v. Torlakson*, No. C061150, 2014 WL 1831636, at *4-5 (Cal. Ct. App. May 8, 2014). In other words, the FAQ page was always an illegal "underground regulation." *Id.* at *4. Since the CDE has been violating the California APA for years, it is an unjustified assumption that it will suddenly start complying with it, in the absence of a declaration from the CDE acknowledging that it previously violated the APA and an "unambiguous renunciation of its past actions." *Fikre I*, 35 F.4th at 771-72.

But even taking this argument at face value, it would not be a violation of the California APA for the CDE to issue new guidance unequivocally stating that Parental Exclusion Policies are required by California law. The new SAFETY Act actually says as much; no interpretation is needed. Rather, all the CDE would need to do is repeat the SAFETY Act's statement that: "Pupils have a constitutional right to privacy when it comes to sensitive information about them" and "outing pupils without their consent violate[s] pupils' rights to privacy and self-determination." Cal. Stat. 2024, ch. 95, § 2(f)-(g); *see also* Jonna Decl., Ex.D, Cal. Sen. Comm. on Educ. Report, Analysis of AB 1955, 2023-2024 Reg. Sess., at 7 (May 22, 2024).

## C. Taking Down the FAQ Page Does Not Completely and Irrevocably Eradicate Its Effects.

Even assuming the CDE would start complying with California law going forward, the CDE has not met the second element of voluntary cessation: taking action that "completely and irrevocably eradicate[s] the effects of the alleged

14

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

violation." *Barnes*, 980 F.2d at 580. To achieve this, *all* harms that Plaintiffs suffered must be redressed. *See Crocker v. Austin*, 115 F.4th 660, 668 (5th Cir. 2024) ("[T]he district court failed to consider Appellants' broader, ongoing claims concerning the Air Force's alleged 'sham' religious exemption process and policies.").

This means that the parties need to be returned to the same position that existed before the CDE's wrongdoing. *See Rezaq v. Nalley*, 677 F.3d 1001, 1009 (10th Cir. 2012) ("[T]hey have never been returned to their pre-ADX placements in USP–GPs"). The CDE would need to take action to reverse the Parental Exclusion Policies of each school district that relied on the FAQ page as accurate. Thus, as explained in one case, when thousands of individuals were denied appropriate medical treatment under a rescinded policy, the government could not merely point to its rescission. Rather, it had to take some affirmative action to correct the effects of the prior policy: "Defendants have repudiated the mandatory aspect of the ASAT/RSAT requirement…. But [this] does not necessarily translate into treatment—while some inmates will invariably receive the treatment based on Dr. Wright's [new] directive, it is not clear that all the inmates that were denied the treatment based on their failure to complete an ASAT/RSAT program will now receive the treatment." *See Hilton v. Wright*, 235 F.R.D. 40, 50 (N.D.N.Y. 2006).

Here, at the minimum, the CDE could issue a new legal advisory, and send a letter to all school districts, explaining that its 2016 Legal Advisory was incorrect with respect to Parental Exclusion Policies. *See Quern v. Jordan*, 440 U.S. 332, 347 (1979) (affirming lower court order to provide notice to all affected parties). That new legal advisory would not run afoul of the California APA because the CDE would not need to *interpret* the law, just repeat it: "Parents have a right to know about their child's gender expression at school." *Mirabelli v. Olson*, No. 3:23-cv-768, 2025 WL 42507, at *13 (S.D. Cal. Jan. 7, 2025). That, at the very least, would "be a beginning, [even if] it is far from an eradication." *Hilton*, 235 F.R.D. at 50.

///

15

Plts.' Opp. to CDE Defs.' Mots. to Dismiss as Moot

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the CDE Defendants' motion to dismiss in full.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: February 10, 2025     By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***
USDC Court Case No.: 3:23-cv-00768-BEN-VET

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **Plaintiffs' Opposition to the CDE Defendants' Motions to Dismiss the Action as Moot; and**
• **Declaration of Paul M. Jonna, Esq., in Support of Plaintiffs' Opposition to the CDE Defendants' Motions to Dismiss the Action as Moot.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Len Garfinkel, Esq., General Counsel
Paul Gant, Assistant General Counsel
Christopher Mandarano, Esq., Deputy Gen. Counsel
Virginia Cale, Deputy General Counsel
California Department of Education
1430 "N" Street, Suite 5319
Sacramento, CA 95814
Tel: 916-319-0860; Fax: 916-322-2549
E-Mail: lgarfinkel@cde.ca.gov
E-Mail: pgant@cde.ca.gov
E-Mail: cmandarano@cde.ca.gov
E-Mail: vcale@cde.ca.gov
**Attorneys for CDE Defendants**

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
Deputy Attorney General
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for AG Rob Bonta**

___X___ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

___X___ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on February 10, 2025, at Rancho Santa Fe, California.

Kathy Denworth