1  LEN GARFINKEL State Bar No. 114815
   General Counsel
2  PAUL GANT, State Bar No. 159844
   Assistant General Counsel
3  VIRGINIA CALE. State Bar No. 258557
   Deputy General Counsel
4  CHRISTOPHER MANDARANO, State Bar No. 263625
   Deputy General Counsel
5  California Department of Education
   1430 N Street, Room 5319
6  Sacramento, California 95814
   Telephone: 916-319-0860
7  Facsimile: 916-322-2549
   Email: lgarfinkel@cde.ca.gov
8  Attorneys for Defendants Tony Thurmond in his official capacity as State
   Superintendent of Public Instruction and State Board of Education Members in their
9  official capacities

10 *(Defendants Tony Thurmond in his official capacity and State Board of Education
   Members in their official capacity are Governmental Parties Exempt from the Provisions
11 of FRCP 7.1)*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, et al., | Case No. 3:23-cv-0768-BEN-VET |
| Plaintiffs, | REPLY IN SUPPORT OF SSPI AND SBE'S MOTION TO DISMISS ACTION AS MOOT |
| v. | |
| MARK OLSON, Superintendent of EUSD, et al., | Hearing Date: February 24, 2025<br>Time: 10:30 A.M.<br>Courtroom: 5A<br>Judge: Hon. Roger T. Benitez |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs by this action sought the following relief as to defendants State Superintendent of Public Instruction Thurmond ("SSPI") and State Board of Education ("SBE") members in their official capacities (Second Amended Complaint or SAC, Dkt. 133, p. 121):

> An order and judgment declaring that Parental Exclusion Policies as promulgated by . . . the CDE . . . violate [the constitution];
>
> An order and judgment declaring that Parental Exclusion Policies as mandated by . . . the CDE . . . violate FERPA and the Constitution;
>
> An order . . . enjoining and prohibiting Defendants from enforcing their . . . Parental Exclusion Policies . . .

Plaintiffs alleged that the California Department of Education's ("CDE") "policies" were contained in two documents: (1) Frequently Asked Questions (FAQs) and (2) a Legal Advisory. Defendants showed in their motion (Dkt. 195-1) that these alleged policies of the CDE have been removed and replaced, pursuant to a change in statute, thus rendering the action moot. Plaintiffs' Opposition (Dkt. 207) asserts that (1) there is a reasonable expectation that Defendants will resort to the alleged policies in the future, and (2) the effects of the alleged violation have not been adequately addressed. As shown below, Plaintiffs are incorrect on both counts.

## II. ARGUMENT

### A. Plaintiffs' Concessions

Plaintiffs ignore, and thus concede, two critical points in Defendants' motion regarding voluntary cessation: First, a government entity is entitled to a presumption that it acted in good faith when it made a policy change. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014); *America Cargo Transport, Inc. v. U.S.,* 625 F.3d 1176, 1180 (9th Cir. 2010). Second, we assume that a statutory change renders a case moot. *Board of Trustees of Glazing Health and Welfare Trust v. Chambers,* 941 F.3d 1195, 1199 (9th Cir. 2019); *Chemical Producers and Distributors Assn. v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006); *Rosebrock*, 745 F.3d at 971. In this case, the CDE, a government

entity, changed its guidance in good faith in direct response to a controlling statutory change.

### B. Voluntary Cessation

Plaintiffs assert that the CDE has not actually ceased the challenged conduct (i.e., the previous guidance regarding disclosure of gender identity) because the CDE referenced federal law relating to school curriculum in a recent press release. Opposition, Dkt. 207, at p. 13; Jonna Declaration, Dkt. 207-1, Exh. C. Plaintiffs are incorrect. Plaintiffs cite a recent Executive Order, *see* Jonna Declaration, Dkt. 207-1, Exh. B, which states at Section 3A(b)(i) that the President is seeking recommendations and a plan for eliminating federal grant funding that is used to promote "gender ideology" in K-12 curriculum. However, as the CDE's press release pointed out, to the extent that the Executive Order contemplates conditioning federal education grant funding on complying with the President's specific wishes on curricular content, it appears to be in direct conflict with existing federal law. The "Every Student Succeeds Act," or ESSA, provides in 20 U.S.C. § 7906a that federal grants *cannot* be conditioned on a school having specific curricular content. In fact, President Trump cited that very same statute in his Executive Order 13791, "Enforcing Statutory Prohibitions on Federal Control of Education," in support of federal policy that protects state and local control over curriculum and prohibits the U.S. Department of Education from exercising control over curriculum. *See* 82 Federal Register 20427 (April 26, 2017); 2017 WL 1537746. The CDE in the press release relied on by Plaintiffs was not announcing any policy relating to disclosure of gender identity; it was simply referencing federal law.

### C. Reasonable Expectation of Recurrence

The relevant law changed on January 1, 2025. The new law required the CDE to update supports and resources for parents, guardians and families of LGBTQ+ students to reflect changes in law. Cal. Educ. Code § 217(b). On January 2, 2025, the CDE posted and issued guidance to the field regarding the provisions of the new law. Dkt.

195-2, Exh. 2 and 3. The CDE simultaneously removed the challenged previous guidance, and informed the field that it had done so. *See* Dkt. 195-2, Exh. 2, p. 10 ("This guidance [on AB 1955] replaces [the challenged guidance]"); Dkt. 195-2, Exh. 3, p. 18 ("This guidance aligns to the new requirements of Assembly Bill 1955" and "replaces [the challenged guidance]." The new guidance covered: (1) the new law's "legislative findings and declarations"; (2) its "substantive provisions" (including a ban on California school boards enacting policies that force school employees to disclose student transgender status without pupil consent "unless otherwise required by state or federal law"); and (3) "supports and resources." The legislature is presumed to have acted in good faith when it passed AB 1955. *Board of Trustees of Glazing Health and Welfare Trust v. Chambers,* 941 F.3d 1195 at 1199. Similarly, the CDE is entitled to a presumption that it acted in good faith when it replaced the previous challenged guidance with the new guidance, as mandated by new Cal. Educ. Code § 217(b). *Rosebrock v. Mathis*, 745 F.3d at 971; *America Cargo Transport, Inc. v. U.S.,* 625 F.3d at 1180.

There is no indication in the record that the legislature plans to undo AB 1955 and the CDE is not free to say that the law is something other than what AB 1955 says. The CDE's new guidance clearly states -- and could not more clearly state -- that " . . . *AB 1955 does not mandate non-disclosure*." Dkt. 195-2, Exh. 2, p. 13 (emphasis in italics supplied). To the extent that Plaintiffs assert that the previous guidance mandated non-disclosure (which it did not),[1] there is simply no basis in the record to conclude that there is a reasonable expectation that the CDE will issue guidance stating that current law mandates non-disclosure.

---

[1] Plaintiffs themselves previously asserted that the CDE's FAQs were not a formal agency interpretation (*see* Dkt. 1, p. 46, ¶ 189, ll. 20-23) and that the FAQs were non-binding. Dkt. 10, p. 22, n. 11. And, in any event, the FAQs did not suggest non-disclosure in all circumstances. *See* FAQ 7 (referencing circumstances in which there is a compelling need to know). SAC, Dkt. 133, Ex. 26-B, p. 302.

The CDE showed in its motion that it would have to follow California's Administrative Procedure Act (APA) to regulate in the area of disclosure of gender identity. Plaintiffs appear to assert that there is a risk that the CDE can and will, without following the APA, issue guidance that "repeat[s]" certain statements in the legislative findings and declarations portion of AB 1955. Opposition, Dkt. 207, p. 14. The argument is unclear. The CDE's new guidance does in fact recite the "legislative findings and declarations" in AB 1955, and it clearly separates them from the bill's "substantive provisions." Legislative findings and declarations are of course not enforceable on their own. *City of Arcadia v. State Water Resources Control Board*, 191 Cal. App. 4th 156, 176 (2010); *Shamsian v. Department of Conservation*, 136 Cal. App. 4th 621, 640-641 (2006). There is no basis in the record to conclude that there is a reasonable expectation that the CDE will issue guidance that the legislative findings and declarations in AB 1955 are, in and of themselves, substantive law. As the CDE clearly stated in its new guidance, local educational agencies (LEAs) must comply with statutes and regulations. Dkt. 195-2, p. 10.

**D. Addressing the Effects of the Alleged Violation**

The CDE's actions of removing the challenged previous guidance, replacing it with the new guidance that aligns with AB 1955, and informing the field of these changes, have sufficiently addressed any alleged harm. The relief sought in the SAC -- an order enjoining the CDE's since-removed guidance -- has been mooted. The CDE updated its guidance, as required by law, to reflect changes in law, and in doing so clearly informed the field that "AB 1955 does not mandate non-disclosure."

Plaintiffs allege that many LEAs in California continue to have "parental exclusion policies," and purport to provide a list. Jonna Declaration, Dkt. 207-1, Exhibit A. Defendants object to that evidence on the grounds that Plaintiffs have failed to lay the appropriate evidentiary foundation for admissibility. There are multiple deficiencies with the "list of school district transgender-gender nonconforming student policies," including: (1) no declarant is identified who attests to having conducted the relevant

research; (2) no actual LEA policies are included; (3) there is no description of the method used for determining that a LEA's policy "openly states that district personnel can or should keep a student's transgender status hidden from parents," and (4) there is no description of the method used for determining if a policy is current.

In any event, Plaintiffs' suggestion that Defendants must "take action to reverse the Parental Exclusion Policies of each school district that relied on the FAQ page" by informing the field of this court's statement that "Parents have a right to know about their child's gender expression at school," (Opposition, Dkt. 207, p. 15) is unfounded. LEAs are responsible for developing their own local policies. The CDE has pointed out to the field that AB 1955 does not mandate non-disclosure. Plaintiffs identify no legal authority requiring Defendants to inform the field of statements contained in a particular trial court's preliminary ruling on a matter of education law.

### III. CONCLUSION

For the foregoing reasons, the claims for injunctive relief are moot. The remaining claims for declaratory relief, standing alone, are insufficient to confer jurisdiction. *Rhoades v. Avon Products, Inc.,* 504 F.3d 1151, 1157 (9th *see* Cir. 2007); *Martinez v. Newsom*, 46 F.4th 965, 972-973 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1792 (2023). Accordingly, Defendants SSPI and SBE members in their official capacities respectfully request dismissal of the SAC as to each of them.

Dated: February 13, 2025

Respectfully submitted,

By: /s/ Len Garfinkel
LEN GARFINKEL
General Counsel
California Department of Education
Attorney for Defendants SSPI and SBE members