IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, et al.,** | 23-cv-0768-BEN-VET |
| Plaintiffs, | |
| v. | **ORDER DENYING SPI / SBE'S MOTION TO DISMISS** |
| **MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,** | |
| Defendants. | |

On August 13, 2024. Plaintiffs filed their Amended Complaint. On August 27 and 28, 2024, California's Superintendent of Public Instruction ("SPI") and the members of the California State Board of Education ("SBE") filed a motion to dismiss asserting Plaintiffs lacked Article III standing and for failure to state a claim. Those motions were denied on January 7, 2025. On January 14, 2025, SPI and SBE filed a second motion to dismiss; this time the motion suggests Plaintiffs' claims are moot. The motion is denied.

I.  **Background**

Prior to this year, the California Department of Education ("CDE") maintained a page on its website titled *Frequently Asked Questions about the School Success and Opportunity Act (Assembly Bill 1266)*. All parties have referred to this

1

guidance as the "FAQs." At its core, the FAQs describe a policy that mandated non-disclosure by teachers when parents asked if their child was displaying signs of gender dysphoria. California Assembly Bill 1955 went into effect on January 1, 2025. AB 1955 takes a different direction and prohibits school districts from requiring teachers to always make disclosures to parents about a student's gender identity or expression. SPI and SBE say that "accordingly on January 2, 2025 the California Department of Education replaced the FAQs and Legal Advisory at issue here with updated guidance." Today, the FAQs page cannot be found on the CDE website. Today, the CDE website has a new policy page entitled *Protections for LGBTQ+ Students: AB 1955*[1] ("Protections"). SPI and CBE argue that because the guidance that Plaintiffs sought to enjoin has been replaced, Plaintiffs' case as to the FAQs policy is now moot and the court lacks subject matter jurisdiction.

## II. Discussion

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 840–41 (9th Cir. 2024) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). However, "[a] defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Id.* at 841 (quoting *F.B.I. v. Fikre*, 601 U.S. 234, 241 (2024)) (cleaned up). This is no easy burden. Quite the opposite, the burden is formidable. *Id.* (citing *Friends of*

---

[1] The SPI / CBE motion states,
"On January 2, 2025, as a result of AB 1955 going into effect, the CDE posted updated guidance at https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp. The guidance indicated that it replaced (1) Frequently Asked Questions: School Success and Opportunity Act (Assembly Bill 1266) and (2) Legal Advisory re: application of California's antidiscrimination statutes to transgender youth in schools -- that is, the FAQs and Legal Advisory at issue here. Thus, those two documents are no longer posted as of January 2, 2025. Also on January 2, 2025, the CDE notified all school district and county superintendents, and all charter school administrators, that the new guidance had been posted, and that it replaced the FAQs and Legal Advisory." Mot. at 2-3.

*the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  The Ninth Circuit explains, "[w]ere the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off."  *Id.*  Consequently, to prove that a case is really moot, defendants must show that "no reasonable expectation remains that it will return to its old ways."  *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)) (cleaned up).

"[W]hile a statutory change 'is usually enough to render a case moot,' an executive action that is not governed by any clear or codified procedures cannot moot a claim."  *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015).  That is the case in this proceeding.  Prior to January 1, 2025, there was no specific state law addressing the question of student gender identity and the permissibility of teacher disclosure to parents.  There existed only the CDE FAQs policy mandating teacher non-disclosure.  The CDE FAQs policy was based on California Constitution Article 1, Section 1, and other generally applicable state anti-discrimination laws.  While AB 1955 is a new law, Plaintiffs are not challenging AB 1955.  Moreover, AB 1955 states that its prohibition on mandatory teacher disclosure is not a change in the law.  For example, AB 1955 adds Education Code § 220.3(b) which states, "[s]ubdivision (a) *does not constitute a change in, but is declaratory of, existing law*."  (Emphasis added.)

Shortly after the effective date of AB 1955, the CDE removed its FAQs webpage and published its "Protections" webpage.  The new "Protections" webpage speaks only to the effect of AB 1955 while observing that the new *law* does not mandate non-disclosure and does not address whether a teacher may voluntarily disclose to parents information about their child's gender expression.  The new webpage does not say the CDE has changed its previous policy.  It does not say that the new policy permits a teacher to voluntarily disclose gender information to a parent.

SPI / CBE argues in its briefs that the act of removing the FAQs webpage and posting the new "Protections" webpage constitutes a change in policy that moots the action. In *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014), the Ninth Circuit provided guidance to district courts considering whether a change in government policy might moot a pending case. Since the CDE website change was not statutory or regulatory, the factors set out in *Rosebrock* govern. The factors are used to analyze whether a defendants' policy may reasonably be expected to recur such that the case is not moot. *Riley's Am. Heritage Farms v. Elsasser*, No. 23-55516, 2024 WL 1756101, at *2 (9th Cir. Apr. 24, 2024). *Rosebrock* said,

> "We have not set forth a definitive test for determining whether a voluntary cessation of this last type—one not reflected in statutory changes or even in changes in ordinances or regulations—has rendered a case moot. But we have indicated that mootness is more likely if (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone, (2) the policy change fully addresses all of the objectionable measures that the Government officials took against the plaintiffs in the case, (3) the case in question was the catalyst for the agency's adoption of the new policy, ; (4) the policy has been in place for a long time when we consider mootness,;  and (5) since the policy's implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff. On the other hand, we are less inclined to find mootness where the new policy could be easily abandoned or altered in the future. Ultimately, the question remains whether the party asserting mootness has met its heavy burden of proving that the challenged conduct cannot reasonably be expected to recur.

745 F.3d at 972 (citations omitted) (cleaned up). Applying the factors to this case yields the following. Factor (1): is the CDE's policy change evidenced by language that is broad in scope and unequivocal in tone? No. The CDE's policy change uses

narrow language restricting its guidance to the effect of AB 1955 and omitting direct language saying that the FAQs policy has been abandoned. Factor (2): does the policy change fully addresses all of the objectionable measures that the Government officials took against the plaintiffs in the case? No. The new policy avoids answering the question about whether teachers may now voluntarily inform parents about their child's gender identity in school. Factor (3): is this case the catalyst for the agency's adoption of the new policy? No. The catalyst for whatever change in policy SPI /CBE has implemented was the legislature's passage of AB 1955. Factor (4): has the policy been in place for a long time? No. The policy in *Rosebrock* had been in place for 40 years. The FAQs webpage had been posted for only a few years. Factor (5): since the policy's implementation have the agency's officials engaged in conduct similar to that challenged by the plaintiff? Unknown. The alleged change in policy is too new to observe effects.

    In this case, the *Rosebrock* factors suggest a continuing live controversy. To the extent the CDE policy has been changed, the new policy could be easily abandoned or altered in the future. Where that is the case, the Ninth Circuit has been less inclined to find mootness. *Rosebrock*, 745 F.3d at 972 (citing *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013); *Bell*, 709 F.3d at 901 ("the authority to establish policy for the Boise Police Department is vested entirely in the Chief of Police, such that the new policy regarding enforcement of the Ordinances could be easily abandoned or altered in the future."). Moreover, "'an executive action that is not governed by any clear or codified procedure cannot moot a claim.'" *Planned Parenthood,* 122 F.4th at 841 (quoting *McCormack,* 788 F.3d at 1025). SPI / CBE's taking down of the FAQs webpage on the CDE website is an executive action that does not appear to be governed by any clear or codified procedure and under Ninth Circuit precedent would not moot the Plaintiff parents' claims. The CDE website changes reflect, at best, a limited change of policy that likely continues to cause harm and could be changed again to cause additional harm in the

future. The CDE webpage changes hardly make it absolutely clear that the allegedly wrongful policy could not reasonably be expected to recur. *Cf. Riley's Am. Heritage Farms v. Elsasser*, No. 23-55516, 2024 WL 1756101, at *2–3 (9th Cir. Apr. 24, 2024) ("Further, no procedural protections would prevent CUSD from blacklisting Riley's Farms again in the future in the face of parental complaints. . . . In short, there was a dispute of fact . . . about whether there was an unconstitutional policy. That dispute remains—despite CUSD's attempts to moot it out and thereby claim immunity.").

Given the CDE's lack of policy formality and how easily it can be reversed, together with a lack of procedural safeguards to protect teachers and local school districts from arbitrary enforcement action, neither SPI nor CBE have carried their heavy burden to show that the FAQs policy enforcement against a teacher's voluntary disclosure cannot reasonably be expected to recur. Thus, the dispute about the existence of an ongoing policy remains live.

### III. Conclusion

If the Defendants made a commitment to not enforcing the FAQs policy against voluntary teacher disclosure and entered into a consent judgment binding themselves and their successors in office, that would likely moot Plaintiffs' case. In the meantime, the actual chilling effect of the FAQs policy on Plaintiffs' constitutional rights remains. Therefore, the case is not moot. The motion to dismiss is denied.

IT IS SO ORDERED.

Dated: April 10, 2025

HON. ROGER T. BENITEZ
United States District Court