1
ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
2
Jack M. Sleeth Jr,, Esq. (SBN 108638)
jsleeth@as7law.com
3
Lauren J. Cambronero, Esq. (SBN 336555)
lcamberonero@as7law.com
4
3636 Fourth Avenue, Suite 200
San Diego, California 92103
5
Telephone: 619-232-3122
Facsimile: 619-232-3264
6

7
Attorneys for EUSD Defendants

8
## UNITED STATES DISTRICT COURT

9
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| 10 | ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, | Case No.: 3:23-cv-0768-BEN-VET |
|---|---|---|
| 11 | | **EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION** |
| 12 | Plaintiffs, | |
| 13 | | |
| 14 | v. | Judge: Hon. Roger T. Benitez |
| 15 | MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al. | Courtroom: 5A |
| 16 | | Hearing Date: August 18, 2025 |
| 17 | Defendants. | Hearing Time: 10:30 a.m. |
| 18 | | Action Filed: April 27, 2023 |
| | | Trial Date: Not Set |

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

ARTIANO SHINOFF

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................... 5

II.   FACTUAL BACKGROUND ........................................................ 6

III.  ARGUMENT ................................................................................ 9

    A.   Plaintiff West's Fourth Title VII For Religious Creed
        Discrimination / Failure to Accommodate Against EUSD Fails ........... 9

        1.   EUSD Initiated Good Faith Efforts to Accommodate West's
             Religious Beliefs ........................................................................ 9

        2.   West's Accommodation Request Created an Undue Hardship
             Because It Required EUSD to Violate State Law ..................... 11

    B.   EUSD Official-Capacity Defendants are Entitled to Qualified
        Immunity ............................................................................................. 13

ARTIANO SHINOFF

**EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY ADJUDICATION**    **3:23-cv-0768-BEN-VET**

{AS7 Law San Diego/001290/000012/PL/S0599342.DOCX}

# TABLE OF AUTHORITIES

**Cases**

*Altshuler v. City of Seattle*, 63 Wash.App. 389, 395, 819 P.2d 393 (1991) ................15

*Ansonia Bd. Of Educ v. Philbrook*, 479 U.S. 60, 70, 107 S.Ct. 367 ...........................11

*Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) ................................12

*Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir. 1984) ...................12

*Bolden-Hardge*, 63 F.4th at 1225 ...............................................................................12

*Burns v. Reed*, 500 U.S. 478, 494-95, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991) ........................................................................................................................14

*C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th Cir. 2011) 654 F.3d 975 ...............................................................................................................16

*C.F. v. Capistrano Unified School Dist.* (C.D. Cal. 2009) 656 F.Supp.2d 1190, 1199 ......................................................................................................16

*Cal. Dep't of Educ. v. Rocklin Unified Sch. Dist.*, No. S-CV-0052605 (Cal. Super. Ct., Placer Cnty., Apr. 10, 2024) .................................................................16

*Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-1941 (E.D. Cal. July 16, 2024) ...............................................................................................................15

*D'Aguanno v. Gallagher* (11th Cir. 1995) 50 F.3d 877, 881 ....................................17

*Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ........................................................................................................................13

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ................................................13

*Devereaux v. Perez*, 218 F.3d 1045, 1048 (9th Cir. 2000) ........................................13

GEO Grp., 616 F.3d at 271 ...........................................................................................11

*Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990) .........................15

*Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982) ...................................................................................................................13

*Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) ......................................9

*Konen v. Caldeira*, No. 22-cv-1813 (Cal. Super. Ct., Monterey Cnty., June 27, 2022), *removed*, No. 5:22-cv-5195 (N.D. Cal. Sep. 12, 2022) ........................15

*Mae M. v. Komrosky*, No. CVSW2306224 (Cal. Super. Ct., Riverside Cnty., Aug. 2, 2023), *appeal filed*, No. E083409 (Cal. App. Ct., 4th Dist., Div. 2, Feb. 28, 2024) ...................................................................................................16

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271

ARTIANO SHINOFF

3

(1986) ..............................................................................................................14

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d
411 (1985) ...................................................................................................14

*People ex rel. Bonta v. Chino Valley Unified Sch. Dist.*, No. CIV SB
2317301 (Cal. Super. Ct., San Bernardino Cnty., Aug. 28, 2023) ..........................15

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) ....................9,10

*Regino v. Staley* (E.D. Cal. July 11, 2023) No. 223CV00032JAMDMC, 2023
WL 4464845 ...............................................................................................15

Romero v. Kitsap County, 931 F.2d 624, 626 (9th Cir.1991 ..................................13,14

*Saucier v. Katz*, No. 99-1977 (U.S. 06/18/2001) ...............................................15

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31 (9th Cir.
1999) ........................................................................................................9,12

*Tapia v. Jurupa Unified Sch. Dist.*, No. 5:23-cv-789 (C.D. Cal. May 3, 2023) ...........16

*Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) .....................10

*Walmart Stores E., L.P.,* 992 F.3d at 659 .......................................................12

*Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989), cert. denied, 498 U.S.
938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) ....................................................15

**Statutes**

42 U.S.C.A. § 1983 ......................................................................................13

**Rules**

Board Policy 5145.3 ....................................................................................6,17

**Regulations**

Administrative Regulation 5145.3 ...............................................................passim

ARTIANO SHINOFF

{AS7 Law San Diego/001290/000012/PL/S0599342.DOCX}

Defendants MARK OLSON, FRANK HUSTON, JOAN GARDNER, DOUG PAULSON, ZESTY HARPER, LUIS RANKINS-IBARRA, JOHN ALBERT, TRENT SMITH, TRACY SCHMIDT, STEVE WHITE, (hereafter "EUSD OFFICIAL-CAPACITY DEFENDANTS) AND ESCONDIDO UNION SCHOOL DISTRICT (collectively "EUSD DEFENDANTS") submit the following memorandum in support of their motion for summary adjudication.

## I. INTRODUCTION

Elizabeth Mirabelli (" Mirabelli" ) and Lori Ann West ("West") have now expanded the scope in the filing of the operative Second Amended Class Action Complaint (" SAC" ) as follows: two Title VII Claims by Lori West against Defendant Escondido Union School District ("EUSD" ), two new teachers Jane Roe and Jane Boe (collectively with Mirabelli and West "Teacher Plaintiffs") who are asserting the same three 42 U.S.C. section 1983 Free Speech and Free Exercise of Religion claims against the EUSD Official-Capacity Defendants and the State Defendants,  two sets of Parent Plaintiffs John and Jane Poe and John and Jane Doe, and two class action claims on behalf of the Teacher Plaintiffs and Parent Plaintiffs, who assert the same three 42 U.S.C 1983 free exercise of religion and parental rights claims against the State-Level Defendants.

EUSD Defendants request this Court grant summary adjudication on the following grounds:

First, Plaintiff West's Fourth Title VII For Religious Creed Discrimination/ Failure to Accommodate against EUSD fails because EUSD initiated good faith efforts to accommodate her. EUSD reasonably accommodated West by allowing her to refrain from addressing a student by his or her preferred names or pronouns that were opposite of their biological sex, and instead refer to all students by their last names. Moreover, EUSD offered to further accommodate West by allowing her to refer any parent's questions or concerns relating to a student's gender identity to an administrator. However, West requested she be permitted to affirmatively share a student's gender

ARTIANO SHINOFF

1  identity to his or her parents without the student's consent. This request would have

2  functionally allowed West to "out" a transgender or gender-nonconforming student

3  without their consent. Thus, EUSD could not accommodate this request because it

4  created an undue hardship by requiring the District to violate the law.

5  Second, EUSD Official-Capacity Defendants are entitled to qualified immunity

6  with respect to Teacher Plaintiffs' claims because Teacher Plaintiffs' rights were not

7  clearly established at the time of the 2020 update to AR 5145.3.

8  ## II.   FACTUAL BACKGROUND

9  Teachers Elizabeth Mirabelli ("Mirabelli") and Lori Ann West ("West") allege

10  individually named EUSD Official-Capacity Defendants updated and enforced

11  Administrative Regulation 5145.3 in 2020 which violated their freedom of speech and

12  religion. They are joined by two Doe teachers employed by EUSD who are asserting

13  the same three 42 U.S.C. section 1983 Free Speech and Free Exercise of Religion claims

14  against the EUSD Official-Capacity Defendants.

15  On or around August 13 2020, Escondido Union School District ("EUSD")

16  updated its Administrative Regulation 5145.3, expanding upon its Board Policy 5145.3,

17  which required EUSD employees to honor the request of a transgender or gender-

18  nonconforming student's preferred name and pronouns and to respect the privacy rights

19  of a student by not disclosing his or her transgender or gender nonconforming status

20  without the student's consent. Daniel R. Shinoff Declaration "Decl. Shinoff" ¶ 3; Exh.

21  2.

22  On October 28, 2022, Plaintiffs Mirabelli and West sent correspondence to

23  EUSD formally requesting a religious accommodation. Exh. 3. West submitted a formal

24  request for an exemption from the following policies related to gender identity:

25  (1) The "Names" policy that requires teachers and staff to refer to a student by

26  gender-specific name that the student identifies to match their transgender identity, but

27  that is different than their legal name.

28  (2) The "Pronouns" policy that requires teachers and staff to refer to a student

using pronouns identified by the student, including opposite-sex pronouns and genderless pronouns (e.g., "it" or "they"), regardless of the student's biological sex.

(3) The "Privacy" policy that prohibits teachers and staff from sharing a student's transgender identity with his or her parent or guardian without the student's permission, and requires teachers thereby to use different names or pronouns or to refer to the student depending on with whom the teacher is speaking." Exh. 3.

On November 15, 2022, EUSD held separate religious accommodation meetings with Plaintiffs West and Mirabelli. Decl. Shinoff ¶ 11; Exhs. 4. During the meetings, EUSD counsel Daniel Shinoff provided hard copies of key laws and guidance applicable to West's request for religious accommodation. *Id*. The meeting was facilitated by the Meeting Facilitator Dr. Debra Dupree. *Id*.

During the interactive process, EUSD came to an agreement with Mirabelli and West for them to refer to all students using their last names and without using gendered pronouns. Decl. Shinoff ¶12; Exh. 4. As for the privacy policy, EUSD counsel Daniel R. Shinoff explained in his February 9, 2023, correspondence to Mirabelli and West's counsel Norman Grissom that the CDE stated: "Schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family…" Exh. 5. EUSD relied on the CDE for guidance on this issue and followed state law. *Id*.; Exhs. 8-11.

On March 1, 2023, Grissom communicated his concerns with the application of the "Privacy Policy". Exh. 6. This correspondence specifically stated:

> As for the Privacy Policy, as stated in my clients' initial religious accommodation letters, they do not seek a general exemption from the Privacy Policy such that they could gossip about a student's transgender identity with all parties. However, they are very concerned about interfering with parental rights and what to do if confronted by a parent. Thus, they have the following two questions:
>
> (1) What if a parent directly asks my clients to reveal a student's gender identity? In other words, how must my clients respond if the parent

ARTIANO SHINOFF

directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at school to address her using a male name or male pronouns?" In that context, instead of merely avoiding the topic, must my clients expressly deny that the student is being treated by the school as transgender? Or would they be permitted to admit that the parent's suspicions are true? **Or does EUSD envision some middle ground**, such as the teacher being required to say: "I have been directed not to tell you if your child is using a different name and pronoun." Could EUSD assign an administrator to sit in on parent-teacher conferences to respond to parents about any transgender issues? Exh. 6. (emphasis added.)

On March 10, 2023, EUSD counsel responded with the following:

Question: In other words, how must my clients respond if the parent directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at school to address her using a male name or male pronouns?"

Clarification: Your clients should respond that the inquiry is outside of the scope of the intent of their interaction and state the intent of the communication is, as an example, to share information regarding the student's behavior as it relates to school, class rules, assignments, etc. If you have questions about parents' questions related to gender identification or equity laws/regulations, they should contact the principal, who will provide the necessary guidance. Exh. 7.

Grissom did not respond to the correspondence. On April 17, 2023, Plaintiffs Mirabelli and West initiated this lawsuit.

///

///

///

///

///

{AS7 Law San Diego/001290/000012/PL/S0599342.DOCX}

# III.    ARGUMENT

## A.    Plaintiff West's Fourth Title VII For Religious Creed Discrimination / Failure to Accommodate Against EUSD Fails

West brings a cause of action for religious creed discrimination under Title VII. Claims under Title VII for religious discrimination may be asserted under various theories, the most common being disparate treatment and failure to accommodate. See *Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 603 (9th Cir. 2004). Here, the theory is for failure to accommodate her religious beliefs. Plaintiff's claim against EUSD fails because EUSD initiated good faith efforts to accommodate West. First, EUSD reasonably accommodated West by allowing her to refrain from addressing a student by his or her preferred names or pronouns that were opposite of their biological sex and instead refer to all students by their last names. Moreover, EUSD offered to further accommodate West by allowing her to refer any parent's questions or concerns relating to a student's gender identity to an administrator. However, West requested she be permitted to affirmatively share a student's gender identity to his or her parents without the student's consent. This request would have functionally allowed West to "out" a transgender or gender-nonconforming student without their consent. Thus, EUSD could not accommodate this request because it created an undue hardship by requiring the District to violate the law.

### 1.    EUSD Initiated Good Faith Efforts to Accommodate West's Religious Beliefs

Claims under Title VII for failure to accommodate religion are accordingly analyzed under a burden-shifting framework. See *Heller v. EBB Auto Co*., 8 F.3d 1433, 1440 (9th Cir. 1993).  First, the employee must plead a prima facie case of failure to accommodate religion. *Sutton v. Providence St. Joseph Med. Ctr*., 192 F.3d 826, 830 (9th Cir. 1999). A plaintiff must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to

9

ARTIANO SHINOFF

fulfill the job requirement." *Peterson*, *supra*, 358 F.3d at 606.

Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano v. Dillard Dep't Stores, Inc*., 139 F.3d 679, 681 (9th Cir. 1998).

Here, EUSD initiated good food efforts to accommodate West's religious beliefs through meetings with EUSD district personnel. On November 15, 2022, EUSD held separate religious accommodation meetings with Plaintiffs West and Mirabelli. Decl. Shinoff" ¶ 11; Exhs. 4.

During this process, EUSD came to an agreement with Mirabelli and West for them to refer to all students using their last names and without using gendered pronouns. Decl. Shinoff ¶12; Exh. 4. As for the privacy policy, EUSD counsel Daniel R. Shinoff explained in correspondence to Mirabelli and West's counsel that the CDE stated: "Schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family…" Exh. 5. EUSD relied on the CDE for guidance on this issue and followed state law. *Id.;* Exhs. 8-11.

On March 1, 2023, Grissom communicated his concerns with the application of the "Privacy Policy". Exh. 6. This correspondence specifically stated:

> As for the Privacy Policy, as stated in my clients' initial religious accommodation letters, they do not seek a general exemption from the Privacy Policy such that they could gossip about a student's transgender identity with all parties. However, they are very concerned about interfering with parental rights and what to do if confronted by a parent. Thus, they have the following two questions:
>
> (2) What if a parent directly asks my clients to reveal a student's gender identity? In other words, how must my clients respond if the parent directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at

school to address her using a male name or male pronouns?" In that context, instead of merely avoiding the topic, must my clients expressly deny that the student is being treated by the school as transgender? Or would they be permitted to admit that the parent's suspicions are true? **Or does EUSD envision some middle ground**, such as the teacher being required to say: "I have been directed not to tell you if your child is using a different name and pronoun." Could EUSD assign an administrator to sit in on parent-teacher conferences to respond to parents about any transgender issues?

*Id*.; (emphasis added.)

As noted in the correspondence, Mirabelli and West's own counsel requested a "middle ground" by means of accommodating them to not to directly address any parent concerns. *Id*. EUSD modified Plaintiff Mirabelli and West's request and explained they would not directly address parent concerns relating to gender identification or equity laws/regulations, and instead refer parents to the school principal for further guidance. Exh 7. Thus, West cannot meet her burden in establishing that she was discriminated against by EUSD for failing to engage in reasonable efforts to accommodate her. EUSD initiated good food efforts to accommodate West's religious beliefs through meetings with EUSD district personnel. From the District's perspective, EUSD attempted to accommodate West to the fullest extent possible without violating the law.

### 2. West's Accommodation Request Created an Undue Hardship Because It Required EUSD to Violate State Law

An employer is not required "to accommodate at all costs." *Ansonia Bd. Of Educ v. Philbrook*, 479 U.S. 60, 70, 107 S.Ct. 367. Where an employer's good-faith efforts to accommodate have been unsuccessful, the inquiry turns to whether the employer demonstrated that "such an accommodation would work an undue hardship upon the employer and its business." *GEO Grp. Inc.*, 616 F.3d at 271. "An 'undue hardship' is one that results in more than a de minimis cost to the employer." *Id*. at 273. Both economic and non-economic costs suffered by the employer can constitute an undue hardship. *Id*. The undue hardship analysis is case-specific, requiring a court to look to "both the fact as well as the magnitude of the alleged undue hardship," though it is "not

ARTIANO SHINOFF

ARTIANO SHINOFF

1  a difficult threshold to pass." *Id*. (quoting *Webb*, 562 F.3d at 260).

2      Examples of undue hardships include negative impacts on the employer's

3  operations, such as on productivity or quality, personnel and overtime costs, increased

4  workload on other employees, and reduced employee morale. See, e.g., *Walmart Stores*

5  *E., L.P.,* 992 F.3d at 659 (noting that "Title VII does not require an employer to offer

6  an 'accommodation' that comes at the expense of other workers" and concluding undue

7  hardship as shown where employer demonstrated that proposed accommodations would

8  require "more than a slight burden when vacations, illnesses, and vacancies reduced the

9  number of other" employees available);

10      Here, West sought an accommodation to allow her to affirmatively discuss the

11  gender identity status of a transgender or gender-nonconforming student with their

12  parent, even without the student's consent. EUSD could not accommodate this request

13  as it would allow her to essentially "out" a student, and thereby violate the law. Exhs.

14  8-9, 11.

15      The Ninth Circuit has held that for employers that have neither the ability to

16  create nor enforce the law, "an employer is not liable under Title VII [for failure to

17  accommodate] when accommodating an employee's religious beliefs would require the

18  employer to violate federal or state law" because "the existence of such a law establishes

19  'undue hardship.' " *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31

20  (9th Cir. 1999) (citing *Bhatia v. Chevron U.S.A., Inc*., 734 F.2d 1382, 1383–84 (9th Cir.

21  1984)).

22      Even a "danger" of violating the law suffices to show undue hardship. *Berry v.*

23  *Dep't of Soc. Servs*., 447 F.3d 642, 655 (9th Cir. 2006) (finding undue hardship where

24  proposed accommodations "create[d] a danger" that public employer would violate the

25  Establishment Clause). Mere "potential" for liability likewise suffices. *Bolden-Hardge*,

26  63 F.4th at 1225; *Bhatia v. Chevron U.S.A., Inc*., 734 F.2d 1382, 1384 (9th Cir. 1984)

27  (finding undue hardship where proposed accommodations required employer to "risk

28  liability" under California health and safety regulations).

When determining what accommodations were feasible, EUSD Official-Capacity Defendants relied on the CDE to describe what the laws required. Exhibits 8-11. In the summary of the interactive process meetings, EUSD explained that it faced significant costs and risks if it accommodated West's request. Exhs. 4, 8-9. EUSD found that attempting to deliver on her request for exemption unduly impacts the operations and delivery of education to students, impacting the Master Scheduling and fostering constraints on EUSD's ability to delivery educational services. Exh. 4. The nature of her request for exemptions also generate the potential for discrimination and lack of compliance under the various laws. *Id*.; Shinoff Decl. ¶ 14  Exhs. 8-11.

**B.    EUSD Official-Capacity Defendants are Entitled to Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from liability for civil damages, unless the official's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Romero v. Kitsap County,* 931 F.2d 624, 626 (9th Cir.1991). Threshold inquiry in a § 1983 analysis is whether the claimant has identified a right cognizable under the statute. 42 U.S.C.A. § 1983. *Devereaux v. Perez*, 218 F.3d 1045, 1048 (9th Cir. 2000), on reh'g *en banc sub nom*. *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

The purpose of providing qualified immunity to public officials is best discussed in the case of *Devereaux v. Perez*, *supra*, where the court cogently noted:

> The purpose of the defense of qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). This defense recognizes that the interests of both the public official and society are best served by shielding officials from liability in order to permit the officials to carry out discretionary functions without fear of harassing litigation, "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in

the unflinching discharge of their duties.' " *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736 (citations omitted); see also *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) (Qualified immunity plays a critical role in striking the "balance ... between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.").

The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed*, 500 U.S. 478, 494-95, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). "Therefore, regardless of whether a constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991).* Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability: ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). To determine whether a right is clearly established, the court evaluates the specific contours of the constitutional right, not at the general but at the more specific level:

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The court must canvass relevant case law to determine if a clearly established constitutional right exists. *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) In the light of pre-existing law the unlawfulness must be apparent. *Saucier v. Katz*, No. 99-1977 (U.S. 06/18/2001).

14

Thus, the plaintiff "must do more 'than identify a clearly established legal right and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.' " *Altshuler v. City of Seattle*, 63 Wash.App. 389, 395, 819 P.2d 393 (1991) (quoting *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990)), review denied, 118 Wash.2d 1023, 827 P.2d 1392 (1992). [Emphasis added.]

The legal issues surrounding a transgender/gender nonbinary student's and notification to his or her parents are complex issues that states and schools have attempted to develop and address.

The EUSD Official-Capacity Defendants argue that the Administrative Regulation was made in order to comply with the law as understood at the time. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10. As evidenced tirelessly throughout this litigation, the EUSD Official-Capacity EUSD Defendants relied heavily on the State through the California Department of Education which endorsed the Administrative Regulation 5145.3 at issue through the California School Board Association at the time. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10.

The Constitutional issues surrounding gender-identity privacy and First Amendment rights are so new and constantly evolving, t0o the degree that these issues are still being litigated throughout the courts. See *Regino v. Staley* (E.D. Cal. July 11, 2023) No. 223CV00032JAMDMC, 2023 WL 4464845; *Konen v. Caldeira*, No. 22-cv-1813 (Cal. Super. Ct., Monterey Cnty., June 27, 2022), *removed*, No. 5:22-cv-5195 (N.D. Cal. Sep. 12, 2022); *People ex rel. Bonta v. Chino Valley Unified Sch. Dist.*, No. CIV SB 2317301 (Cal. Super. Ct., San Bernardino Cnty., Aug. 28, 2023), and *Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-1941 (E.D. Cal. July 16, 2024); *Mae M. v. Komrosky*, No. CVSW2306224 (Cal. Super. Ct., Riverside Cnty., Aug. 2, 2023), *appeal filed*, No. E083409 (Cal. App. Ct., 4th Dist., Div. 2, Feb. 28, 2024), *appeal transferred*, No. G064332 (Cal. App. Ct., 4th Dist., Div. 3, June 24, 2024); *Cal. Dep't*

15

of Educ. v. Rocklin Unified Sch. Dist., No. S-CV-0052605 (Cal. Super. Ct., Placer Cnty., Apr. 10, 2024); *Tapia v. Jurupa Unified Sch. Dist.*, No. 5:23-cv-789 (C.D. Cal. May 3, 2023). Thus, these Defendants are entitled to qualified immunity so that no damages, and no attorney fees, can be levied against them.

EUSD Official-Capacity Defendants contend they are entitled to qualified immunity and thus are not subject to attorney fees, even if the Court rules against them. Qualified immunity bars all damages, including attorney fees and costs. *C.F. v. Capistrano Unified School Dist.* (C.D. Cal. 2009) 656 F.Supp.2d 1190, 1199, aff'd sub nom. *C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th Cir. 2011) 654 F.3d 975. In that case, the court analyzed a similar issue and held that "the qualified immunity defense also bars claims for costs and attorneys' fees." *Ibid*.

In that matter, the Court granted part of the Defendants' Motion for Summary Judgment, ruling the Defendants were entitled to qualified immunity. Plaintiffs then sought attorney fees after they were granted an injunction. The Court held that qualified immunity protects defendants from liability for attorney fees as well as claims for costs. The Ninth Circuit approved the analysis. "Although *Farnan* sought only nominal damages, the attorney's fees and costs for which *Corbett* could be liable absent the protection of qualified immunity undoubtedly would be considerable after more than three years of litigation." *C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th Cir. 2011) 654 F.3d 975, 984.

The trial court in *C.F. v. Capistrano Unified School Dist.* relied on a similar case, out of the Eleventh Circuit, which also held that costs, expenses and attorneys' fees are barred by qualified immunity.

A question has been presented in this appeal about whether the monetary damages which the defense of qualified immunity bars include plaintiffs' claims for costs, expenses of litigation, and attorneys' fees. The answer is "yes." We hold that, for qualified immunity purposes, the term "damages" includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity.

16

*D'Aguanno v. Gallagher* (11th Cir. 1995) 50 F.3d 877, 881.

Here, the EUSD Official-Capacity Defendants reasonably believed their actions were lawful in updating and enforcing the Administrative Regulation as it came from the California Department of Education. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10.This body oversees the state's public education system, encompassing K-12 schools, adult education, and some preschool and childcare programs. Its primary responsibilities include enforcing education laws and regulations, providing funding and resources, and ensuring equitable access to quality education for all students. Thus, it was entirely reasonable for EUSD Official-Capacity Defendants to rely on the resources and mandates outlined by the CDE. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10.

Moreover, the Administrative Regulation at issue was titled "Nondiscrimination/Harassment" in supporting the same titled Board Policy 5145.3. Exh. 2. The language of the AR 5145.3 specifically addressed the prohibition of discrimination and harassment based on sex, gender identity, or gender expression. *Id*. The guidelines relating to a transgender or gender-nonconforming student's right of privacy was specifically premised on the objective of ensuring transgender and gender-nonconforming students were afforded the same rights, benefits, and protections provided to all students by law and board policy. *Id*. As part of CDE's legal advisory, CDE provided FAQs included words "minimum requirements" which EUSD Official Capacity Defendants understood as the "absolute what you must do" or otherwise risk their state funding. Decl. Shinoff ¶¶ 11-14; Exhs. 8-10. Given this mandatory language, the Official Capacity Defendants updated and enforced the AR on the understanding that such policy was for the benefit of providing a school environment and providing transgender and gender-nonconforming students equal access and opportunities, in accordance with state law understood at the time. *Id*.

Based on the foregoing, we urge this Court to find that the EUSD Official-Capacity Defendants are entitled to qualified immunity.

{AS7 Law San Diego/001290/000012/PL/S0599342.DOCX}

ARTIANO SHINOFF

Dated: July 16, 2025                    ARTIANO SHINOFF


By: _____
        Daniel R. Shinoff
        Jack Sleeth
        Lauren Cambronero
    Attorneys for EUSD Defendants

{AS7 Law San Diego/001290/000012/PL/S0599342.DOCX}