Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice**
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-VET <br><br> **Memorandum of Points & Authorities in Support of Plaintiffs' Renewed Motion for Class Certification** <br><br> Judge: Hon. Roger T. Benitez <br> Courtroom: 5A <br> Hearing Date: August 18, 2025 <br> Hearing Time: 10:30 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

LEGAL STANDARD ................................................................................ 3

ARGUMENT .............................................................................................. 3

    I.    Certification of Four Subclasses is Appropriate in this Case. ............... 4

    II.    The Proposed Class and Subclasses are Appropriate Under Rule 23(b)(2) and Rule 23(b)(1)(A). ..................................................... 6

        A.    Certification of a Rule 23(b)(2) class action is appropriate. .............................................................................. 7

        B.    Certification of a Rule 23(b)(1)(A) class action is appropriate. .............................................................................. 8

    III.    This Action Satisfies the Four Requirements of Rule 23(a)............... 12

        A.    The Class is so numerous that joinder of all members is impracticable. ...................................................... 13

        B.    There Are Numerous Common Questions of Law and Fact...................................................................................... 17

        C.    Plaintiffs Satisfy the Typicality Requirement ........................... 21

        D.    The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class................... 22

    IV.    The Court Should Approve Class Counsel ....................................... 23

CONCLUSION .......................................................................................... 24

# TABLE OF AUTHORITIES

**CASES**

*A.B. v. Haw. State Dep't of Educ.*
    30 F.4th 828 (9th Cir. 2022) ..........................................................................7

*Adair v. England*
    209 F.R.D. 5 (D.D.C. 2002) ........................................................................ 9

*Al Otro Lado, Inc. v. McAleenan*
    423 F. Supp. 3d 848 (S.D. Cal. 2019) ..........................................................7

*Aldapa v. Fowler Packing Co., Inc.*
    323 F.R.D. 316 (E.D. Cal. 2018) ......................................................... 4, 5, 6

*Am. Timber & Trading Co. v. First Nat'l Bank of Oreg.*
    690 F.2d 781 (9th Cir. 1982) ......................................................................5

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 (1997) ....................................................................................7

*Barbara v. Trump*
    No. 1:25-cv-244, 2025 WL 1904338 (D.N.H. July 10, 2025).......................21

*Bellotti v. Baird*
    443 U.S. 622 (1979)..................................................................................... 2

*Berry v. Baca*
    226 F.R.D. 398 (C.D. Cal. 2005)................................................................. 9

*Betts v. Reliable Collection Agency, Ltd.*
    659 F.2d 1000 (9th Cir. 1981) .....................................................................5

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*
    459 U.S. 87 (1982) ...................................................................................... 4

*Buttino v. FBI*
    No. 3:90-cv-1639, 1992 WL 12013803 (N.D. Cal. Sept. 25, 1992)...........14, 17

*Cabrera v. Google LLC*
    No. 5:11-cv-1263, 2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) .................16

*Carolina Youth Action Project v. Wilson*
    60 F.4th 770 (4th Cir. 2023) .......................................................................16

*Cleaver v. Wilcox*
    499 F.2d 940 (9th Cir. 1974) .......................................................................19

# TABLE OF AUTHORITIES

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998) ............................................................................... 19

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*
  375 F.2d 648 (4th Cir. 1967)................................................................. 13

*Davis v. Lab'y Corp. of Am. Holdings*
  No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024)............................16

*Demers v. Austin*
  746 F.3d 402 (9th Cir. 2014) ................................................................ 20

*Dodge v. Evergreen Sch. Dist. #114*
  56 F.4th 767 (9th Cir. 2022)................................................................. 19

*Does 1-10 v. Univ. of Wash.*
  326 F.R.D. 669 (W.D. Wash. 2018) ...................................................... 22

*Does 1-11 v. Univ. of Colo.*
  100 F.4th 1251 (10th Cir. 2024) .......................................................... 21

*Dunakin v. Quigley*
  99 F. Supp. 3d 1297 (W.D. Wash. 2015)............................................... 8

*DZ Rsrv. v. Meta Platforms, Inc.*
  96 F.4th 1223 (9th Cir. 2024)............................................................... 18

*Escalante v. Cal. Physicians' Serv.*
  309 F.R.D. 612 (C.D. Cal. 2015) ........................................................... 9

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*
  82 F.4th 664 (9th Cir. 2023) ............................................................... 20

*Friend v. Kolodzieczak*
  965 F.2d 682 (9th Cir. 1992) ............................................................... 21

*Fulton v. Philadelphia*
  593 U.S. 522 (2021) ............................................................................ 20

*Gen. Tel. Co. of the Nw. v. EEOC*
  446 U.S. 318 (1980)............................................................................. 13

*Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*
  No. 5:22-cv-2237, 2024 WL 3758499 (N.D. Ohio Aug. 12, 2024) .................20

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)......................................................... 21, 22

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

*Harris v. Palm Springs Alpine Estates, Inc.*
    329 F.2d 909 (9th Cir. 1964) ............................................................... 14

*Hernandez v. Cnty. of Monterey*
    305 F.R.D. 132 (N.D. Cal. 2015) ......................................................... 13

*Hyland v. Navient Corp.*
    48 F.4th 110 (2d Cir. 2022) ................................................................. 16

*Ikonen v. Hartz Mountain Corp.*
    122 F.R.D. 258 (S.D. Cal. 1988) .................................................... 13, 17

*In re Victor Techs. Sec. Litig.*
    102 F.R.D. 53 (N.D. Cal. 1984) ............................................................. 9

*In re Victor Techs. Sec. Litig.*
    792 F.2d 862 (9th Cir. 1986) ................................................................. 9

*In re Yahoo Mail Litig.*
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................... 7

*Janus v. AFSCME, Council 31*
    585 U.S. 878 (2018) ............................................................................. 18

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*
    78 F.4th 622 (4th Cir. 2023) ............................................................... 16

*Johns v. Bayer Corp.*
    280 F.R.D. 551 (S.D. Cal. 2012) ......................................................... 13

*Jordan v. Los Angeles Cnty.*
    669 F.2d 1311 (9th Cir. 1982) ....................................................... 13, 17

*Jordan v. Los Angeles Cnty.*
    459 U.S. 810 (1982) ............................................................................. 13

*Jordan v. Los Angeles Cnty.*
    713 F.2d 503 (9th Cir. 1983) ............................................................... 13

*Just Film, Inc. v. Buono*
    847 F.3d 1108 (9th Cir. 2017) ............................................................. 22

*Labrador v. Poe*
    144 S. Ct. 921 (2024) ............................................................................. 2

*Lee v. York Cnty. Sch. Div.*
    484 F.3d 687 (4th Cir. 2007) ............................................................... 19

# TABLE OF AUTHORITIES

*Lynch v. Rank*
  604 F. Supp. 30 (N.D. Cal. 1984) ................................................................. 13

*Lynch v. Rank*
  747 F.2d 528 (9th Cir. 1984) .................................................................. 13

*Mahmoud v. Taylor*
  606 U.S. ___, 2025 WL 1773627 (U.S. June 27, 2025) .................................... 20

*Mateo v. M/S Kiso*
  805 F. Supp. 761 (N.D. Cal. 1991) ................................................................ 24

*Mayweathers v. Newland*
  258 F.3d 930 (9th Cir. 2001) .................................................................. 21

*Mazza v. Am. Honda Motor Co., Inc.*
  666 F.3d 581 (9th Cir. 2012) .................................................................. 18

*McDonnell–Douglas Corp. v. U.S. Dist. Court*
  523 F.2d 1083 (9th Cir. 1975) ................................................................... 9

*M.D. v. Abbott*
  907 F.3d 237 (5th Cir. 2018) ...................................................................... 7

*Mirabelli v. Olson*
  691 F. Supp. 3d 1197 (S.D. Cal. 2023) ........................................ 1, 2, 6, 18, 20

*Morgan v. Swanson*
  659 F.3d 359 (5th Cir. 2011) .................................................................. 19

*Moyle v. Liberty Mut. Ret. Ben. Plan*
  823 F.3d 948 (9th Cir. 2016) .................................................................... 8

*Murray v. Loc. 2620, AFSCME*
  192 F.R.D. 629 (N.D. Cal. 2000) ................................................................. 9

*Nunez v. Davis*
  169 F.3d 1222 (9th Cir. 1999) ................................................................ 19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
  31 F.4th 651 (9th Cir. 2022) .................................................................. 16

*Parent/Prof'l Advoc. League v. City of Springfield*
  934 F.3d 13 (1st Cir. 2019) .................................................................. 18

*Parra v. Bashas', Inc.*
  536 F.3d 975 (9th Cir. 2008) ...................................................................... 3

# TABLE OF AUTHORITIES

*Parsons v. Ryan*
    754 F.3d 657 (9th Cir. 2014) ............................................................. 7, 18, 22

*Perez-Funez v. INS*
    611 F. Supp. 990 (C.D. Cal. 1984) ................................................. 13

*Rannis v. Recchia*
    380 F. Appx. 646 (9th Cir. 2010) ............................................. 13, 17

*Regino v. Staley*
    133 F.4th 951 (9th Cir. 2025) ................................................. 10, 19

*Risto v. Screen Actors Guild*
    No. 2:18-cv-7241, 2020 WL 5518600 (C.D. Cal. Sept. 14, 2020) ................. 9

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010) ......................................... 5, 6, 7, 22

*Rodriguez v. Hayes*
    715 F.3d 1127 (9th Cir. 2016) ................................................... 5

*Rodriguez v. W. Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ............................................... 22, 23

*Roman Cath. Diocese of Brooklyn v. Cuomo*
    592 U.S. 14 (2020) ............................................................. 20

*Sali v. Corona Reg'l Med. Ctr.*
    909 F.3d 996 (9th Cir. 2018) ..................................................... 3

*Saravia v. Sessions*
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) ..................................... 14, 17

*Saravia v. Sessions*
    905 F.3d 1137 (9th Cir. 2018) ................................................. 14

*Shook v. El Paso Cnty.*
    386 F.3d 963 (10th Cir. 2004) ................................................... 7

*Stockwell v. San Francisco*
    749 F.3d 1107 (2014) ........................................................... 3

*Stormans, Inc. v. Wiesman*
    794 F.3d 1064 (9th Cir. 2015) ................................................. 18

*Sueoka v. United States*
    101 F. App'x 649 (9th Cir. 2004) ............................................... 8

# TABLE OF AUTHORITIES

*Tandon v. Newsom*
        593 U.S. 61 (2021) ..................................................................... 20

*Tapia v. Jurupa Unified Sch. Dist.*
        No. 5:23-cv-789 (C.D. Cal. May 3, 2023) ..................................... 10

*Troxel v. Granville*
        530 U.S. 57 (2000) ....................................................................... 1

*Trump v. CASA, Inc.*
        606 U.S. ___, 2025 WL 1773631 (U.S. June 27, 2025) ............... 2, 21

*Twegbe v. Pharmaca Integrative Pharm., Inc.*
        No. 3:12-cv-5080, 2013 WL 3802807 (N.D. Cal. July 17, 2013) ................... 14

*United States v. Rahimi*
        602 U.S. 680 (2024) ....................................................................... 2

*Vlaming v. W. Point Sch. Bd.*
        302 Va. 504 (2023) ...................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*
        564 U.S. 338 (2011) .................................................... 3, 7, 17, 21

*Walters v. Reno*
        145 F.3d 1032 (9th Cir. 1998) ...................................................... 18

*Washington v. Glucksberg*
        521 U.S. 702 (1997) ................................................................. 1, 19

*Wehner v. Syntex Corp.*
        117 F.R.D. 641 (N.D. Cal. 1987) ................................................. 23

*West v. Cal. Servs. Bureau, Inc.*
        323 F.R.D. 295 (N.D. Cal. 2017) ................................................. 13

*Wisconsin v. Yoder*,
        406 U.S. 205 (1972) ....................................................................... 1

*Zinser v. Accufix Rsch. Inst., Inc.*
        253 F.3d 1180 (9th Cir. 2001) ........................................................ 8

///

///

///

# TABLE OF AUTHORITIES

## Statutes, Regulations & Rules

42 U.S.C. § 1983 ................................................................................................10

Cal. Educ. Code §§ 220.1 ................................................................................. 2

Cal. Educ. Code §§ 220.3 ................................................................................. 2

Cal. Educ. Code §§ 220.5 ................................................................................. 2

Cal. Const. art. I, § 1 ......................................................................................6, 7

Cal. Stat. 2024, ch. 95 (AB 1955) .................................................................. 2

Fed. R. Civ. P. 23(a) ....................................................................................... 3, 12

Fed. R. Civ. P. 23(a)(1) ....................................................................................12

Fed. R. Civ. P. 23(a)(2) ....................................................................................17

Fed. R. Civ. P. 23(a)(3) ....................................................................................21

Fed. R. Civ. P. 23(a)(4) ................................................................................... 22

Fed. R. Civ. P. 23(b)(1)(A) ............................................................................6, 9

Fed. R. Civ. P. 23(b)(2) .................................................................................... 6

Fed. R. Civ. P. 23(c)(5) .................................................................................... 4

## Other Authorities

*California Voters Support Parental Rights by Overwhelming Margins*,
Rasmussen Reports ( June 12, 2023) ............................................................15

*Fingertip Facts on Education in California*, Cal. Dep't of Educ. (last
reviewed May 16, 2024) ...............................................................................14

Jody L. Herman, et al., *How Many Adults and Youth Identify as
Transgender in the United States*, UCLA School of Law, Williams
Institute (June 2022) ....................................................................................16

Monmouth Poll Reports, *New Jersey: Majority Support Parental
Notification for Gender Identity*, Monmouth University (Aug. 22,
2023) .............................................................................................................15

Newberg and Rubenstein on Class Actions (6th ed. 2025) .................................9, 12

# TABLE OF AUTHORITIES

Press Release, *Parents Defending Education poll: 71% of voters support legislation requiring schools to inform parents if their child wants to change their gender identity*, Parents Defending Education (Mar. 21, 2023) ................................................................................................ 15

Press Release, *Parents Defending Education Poll: Parents Support Girls-Only Spaces in Schools, Oppose Parental Exclusion Policies and Grading for Equity*, Parents Defending Education ( Jan. 6, 2025) ................ 15

Press Release, *New California Poll Reveals Dramatic Decrease for Support of "Gender Identity" Policies Since 2020*, Women's Liberation Front (Nov. 29, 2023) .................................................................. 15

*Religious Landscape Study: Adults in California*, Pew Research Center (printed July 15, 2025) ................................................................ 15

Stevenson & Fitzgerald, Cal. Practice Guide: Fed. Civ. Proc. Before Trial (2025) .................................................................................... 17

William Blackstone, Commentaries on the Laws of England (1765) .................. 1, 2

# INTRODUCTION

Two years ago, this Court held that California's policies regarding minor gender incongruence "harms … parents by depriving them of the long recognized Fourteenth Amendment right to care, guide, and make health care decisions for their children." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1222 (S.D. Cal. 2023). This conclusion was absolutely correct. In determining whether certain rights are protected by the Fourteenth Amendment, "we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, [1] 'deeply rooted in this Nation's history and tradition,' and [2] 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations omitted). Thus, just this past term, the Supreme Court emphasized that "the right of parents 'to direct the religious upbringing of their' children would be an empty promise if it did not follow those children into the public school classroom." *Mahmoud v. Taylor*, 606 U.S. ___, 2025 WL 1773627, at *14 (U.S. June 27, 2025) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972)).

As more fully explained in Plaintiffs' concurrently filed renewed motion for summary judgment, the first element of the Substantive Due Process analysis is squarely answered in parents' favor. "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality). At the founding of our nation, it was well-established that parents had a duty "to provide for the maintenance of their children … laid on them not only by nature herself, but by their own proper act, in bringing them into the world." 1 William Blackstone, Commentaries on the Laws of England 447 (1765) (emphasis omitted). "The *power* of parents over their children is derived from … their duty: this authority being given them, partly to enable the parent more effectually to perform his duty, and partly as a recompence for his care and

trouble in the faithful discharge of it." *Id*. at 452.

On the second element of the Substantive Due Process analysis, the Supreme Court has equally explained that parental control is necessary for the child's ultimate liberty: "[T]he tradition of parental authority is not inconsistent with our tradition of individual liberty [as applied to a child]; rather, the former is one of the basic presuppositions of the latter. Legal restrictions on minors, especially those supportive of the parental role, may be important to the child's chances for the full growth and maturity that make eventual participation in a free society meaningful and rewarding." *Bellotti v. Baird*, 443 U.S. 622, 638-39 (1979) (plurality). As explained by Blackstone, without "the *power* of parents over their children," a parent would be unable to "discharge his duty; first, of protecting his children from the snares of artful and designing persons: and next, of settling them properly in life, by preventing the ill consequence of too early and precipitate [decisions]." 1 Blackstone, *supra* at 452-53.

In applying these historical precedents in modern contexts, "the Court's interpretation permits a historical inquiry calibrated to reveal something useful and transferable to the present day." *United States v. Rahimi*, 602 U.S. 680, 702 (2024) (Sotomayor, J., concurring). This inquiry "consider[s] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at 692 (maj. opn.) Here, as this Court recognized last year, California's Parental Exclusion Policies are not consistent with the principles underpinning parental rights, but rather are "foreign to federal constitutional and statutory law." *Mirabelli*, 691 F. Supp. 3d at 1212. Nevertheless, California has doubled-down, passing a state-wide Parental Exclusion Policy. Cal. Stat. 2024, ch. 95 (AB 1955); Cal. Educ. Code §§ 220.1, 220.3, 220.5.

Thus, Plaintiffs now move for class certification and entry of a class-wide injunction. *Cf. Trump v. CASA, Inc.*, 606 U.S. ___, 2025 WL 1773631, at *9 (U.S. June 27, 2025) ("The bill of peace lives in modern form, but not as the universal injunction. It evolved into the modern class action"); *Labrador v. Poe*, 144 S. Ct. 921,

927 (2024) (Gorsuch, J., concurring) (in action challenging laws relating to gender identity: "If they seek relief for a larger group of persons, they must join those individuals to the suit or win class certification.").

## LEGAL STANDARD

Certification of a class is appropriate if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To grant class certification, the Court determines whether the prerequisites of Rule 23(a) are satisfied and that the class fits within at least one of the categories of Rule 23(b). This determination is made without respect to the ultimate merits of the case. *Stockwell v. San Francisco*, 749 F.3d 1107, 1111-12 (2014).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). However, at the class certification "stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004-05 (9th Cir. 2018). The decision to grant or deny class certification is within the trial court's discretion. *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008).

## ARGUMENT

In this action, Plaintiffs seek to represent a Class of all individuals who desire to participate in California's public education system without having to subject themselves to Parental Exclusion Policies. Within this Class, Plaintiffs seek to represent four subclasses based around their substantive claims.

///

The proposed overarching Class and four Subclasses are:

All individuals who desire to participate in California's public education system, whether as employees or parents/guardians of students, without having to subject themselves to Parental Exclusion Policies, and

(1) Are employees who object on ideological or conscience grounds, whether religious or secular, to complying with Parental Exclusion Policies (Claim for Relief #1);

(2) Are employees who object on religious grounds to complying with Parental Exclusion Policies (Claims for Relief #2-3);

(3) Are legal guardians who object on ideological or conscience grounds, whether religious or secular, to having Parental Exclusion Policies applied against them and have children who are attending California public schools and are experiencing, or have experienced, gender incongruence (Claim for Relief #7); or

(4) Are legal guardians who object on religious grounds to having Parental Exclusion Policies applied against them and have children who are attending California public schools and are experiencing, or have experienced, gender incongruence (Claims for Relief #6, 8).

As explained below, each of the Requirements of Rule 23(a) and (b) are satisfied with respect to each proposed subclass. Thus, the Court should grant class certification with respect to them.

## I.    CERTIFICATION OF FOUR MANAGEMENT SUBCLASSES IS APPROPRIATE IN THIS CASE.

"When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). Under this rule, "[s]ubclasses may be used to more efficiently resolve common issues during the proceeding and at trial." *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326 (E.D. Cal. 2018). "Absent conflicts of interest between subclasses, however, there is no rule that separate subclasses are required for each cause of action in order for plaintiffs to satisfy their burden on class certification." *Id.*; *accord Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 90 n.1 (1982) (noting that the plaintiff class in *Brown* was

certified and included all political candidates, their treasurers, and people who contributed to or received disbursements from the campaign).

"If subclasses are required because of conflicts between the various class members … 'each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.'" *Aldapa*, 323 F.R.D. at 326 (quoting *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981)). But if the subclassing is "permissive" for management purposes, "it need not be evaluated separately for commonality, numerosity, typicality, and adequacy." *Id.* (citing *Am. Timber & Trading Co. v. First Nat'l Bank of Oreg.*, 690 F.2d 781, 787 n.5 (9th Cir. 1982)). A prospective class representative can represent multiple subclasses. *See, e.g.*, *Aldapa*, 323 F.R.D. at 358 ("The court finds plaintiffs Avalos and Aldapa to be adequate class representatives, and confirms them as class representatives for each of the certified subclasses, except for the Vehicle Expense Subclass, for which only plaintiff Avalos is a class representative").

Subclasses are appropriate where class members have separate and discrete legal claims which raise a concern that adjudication of a single class's claims is impractical or undermines effective representation of the class. *See, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1123-24 (9th Cir. 2010) ("*Hayes I*") (identifying the potential for subclasses due to detained immigrants' differing legal statuses under federal law), *subsequent ruling*, 715 F.3d 1127 (9th Cir. 2016) ("*Hayes II*") (affirming trial court's certification and preliminary injunction for detained immigrant subclasses defined by which of two federal statutes authorized their detention).

Here, the Class as a whole seeks resolution of the issue of whether Parental Exclusion Policies—which the State says are required by the California Constitution and now the California Education Code, and which have been adopted by nearly every California school district—violate Parental Rights in the Fourteenth Amendment or the Family Educational Rights and Privacy Act (FERPA). As explained in the Complaint, "Parental Exclusion Policies" is a term of art referring to

the argument of both the California Attorney General and CDE that minor privacy rights require schools to deceive parents about their children. *See* Second Amend. Compl., ¶¶2-5, 22, 256-63, 308-27 (citing Cal. Const. art. I, § 1).

If those policies do indeed violate the Fourteenth Amendment or FERPA, that determination is dispositive of every class members' claims. *See Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1217 (S.D. Cal. 2023) ("The reasons proffered by the defendants for the policy pass neither the strict scrutiny *nor the rational basis tests*.") (emphasis added). This warrants certification of a single, overarching class. *Hayes I*, 591 F.3d at 1122 ("The existence of shared legal issues with divergent factual predicates is sufficient"). However, for management purposes, it could be helpful to divide the Class into four subclasses, identified above, based on the cause of action. *Aldapa*, 323 F.R.D. at 326-27.

## II. THE PROPOSED CLASS AND SUBCLASSES ARE APPROPRIATE UNDER RULE 23(B)(2) AND RULE 23(B)(1)(A).

In addition to satisfying the four requirements of Rule 23(a) (discussed below), the proposed Class must qualify as at least one of the types of class actions identified in Rule 23(b). Here, Plaintiffs seek certification under Subdivision (b)(2), which applies whenever "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Alternatively, Plaintiffs seek certification under Subdivision (b)(1)(A), which applies when "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Both types of class actions are appropriate here.

///

///

## A. Certification of a Rule 23(b)(2) class action is appropriate.

"The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* In light of the nature of a Rule 23(b)(2) class action, "[n]otice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited." *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004).

"Although the Ninth Circuit has yet to expressly address the ascertainability requirement in the context of Rule 23(b)(2), courts in this Circuit have held that it does not apply." *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 872 (S.D. Cal. 2019) (collecting district court opinions); *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015) ("every other circuit to address the issue has concluded that the ascertainability requirement does not apply to Rule 23(b)(2) classes"). The whole purpose of Rule 23(b)(2) is the certification of civil rights class actions: "Although we have certified many different kinds of Rule 23(b)(2) classes, the primary role of this provision has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples") (citations omitted). Further, "'[t]he inclusion of future class members in a class is not itself unusual or objectionable,' because '[w]hen the future persons referenced become members of the class, their claims will necessarily be ripe.'" *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022) (quoting *Hayes I*, 591 F.3d at 1118); *accord M.D. v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018) (upholding class certification that included "all children now, or in the future" in the state's conservatorship program).

Here, this case arises from the State of California's determination that all school districts must adopt Parental Exclusion Policies due to the Privacy Clause of the California Constitution, Cal. Const. art. I, § 1. *See* Second Amend. Compl., ¶¶2-5, 22, 256-63, 308-27. All members of the proposed Class will be equally impacted by a single declaratory ruling that such Parental Exclusion Policies violate Parental Rights under the Fourteenth Amendment or FERPA; all members of the proposed subclasses will be equally impacted by single declaratory rulings that such Parental Exclusion Policies violate the Free Speech Clause and Free Exercise Clause of the First Amendment; and all members of the Class will have their harms equally remedied by a single injunctive order prohibiting the California Attorney General and the California Department of Education from imposing those policies on the Class members.

Moreover, injunctive relief on behalf of the proposed Class will achieve systemic changes to the California Department of Education that would obviate the need for future lawsuits seeking similar relief. *See, e.g.*, *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1333 (W.D. Wash. 2015) ("If the putative class members were to proceed on an individual basis, they might obtain the individual services they seek without obtaining systemic changes to DHHS's conduct that would benefit the class as a whole, a result that could lead to countless individual claims seeking the exact same relief."). Accordingly, the proposed Class fits squarely within Rule 23(b)(2) and is appropriate for certification.

**B.      Alternatively, certification of a Rule 23(b)(1)(A) class action is also appropriate.**

"To invoke Rule 23(b)(1)(A), plaintiffs must show that there is a risk that defendants' efforts to comply with the judgment in one action will require them to act inconsistently with the judgment in another." *Sueoka v. United States*, 101 F. App'x 649, 654 (9th Cir. 2004). Thus, Rule 23(b)(1)(A) applies where "different results in separate actions would impair the opposing party's ability to pursue a uniform

continuing course of conduct." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001); *accord Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016). Rule 23(b)(1)(A) does not apply merely because "separate actions would simply raise the same questions of law; '[i]nstead, the "incompatible standards of conduct" of subdivision (b)(1)(A) must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions.'" *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 620 (C.D. Cal. 2015) (quoting *McDonnell–Douglas Corp. v. U.S. Dist. Court*, 523 F.2d 1083, 1086 (9th Cir. 1975)).

Further, under Rule 23(b)(1)(A), the plaintiff must show an actual "risk" of multiple litigation. *See* Fed. R. Civ. P. 23(b)(1)(A). But "this threshold criterion is easily met" when "at the time of class certification, multiple cases have already been filed, each seeking some form of injunctive relief, all of which threaten to put the defendant under conflicting commands." 2 Newberg and Rubenstein on Class Actions § 4:6 (6th ed. 2025) (citing *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) (granting certification because "the federal courts in California dealing with these cases have already rendered somewhat different decisions on issues similar to those addressed in the case at bar")).

Even absent multiple pending litigations, federal courts in California generally find this "risk" satisfied so long as the class itself is sufficiently numerous. *Berry v. Baca*, 226 F.R.D. 398, 406 (C.D. Cal. 2005) ("In this case, should the numerosity requirement be satisfied, it logically follows that the defendant could likely be subject to numerous separate actions absent certification."); *Murray v. Loc. 2620, AFSCME*, 192 F.R.D. 629, 636 (N.D. Cal. 2000). Like with a Rule 23(b)(2) class, there is neither an ascertainability nor a notice requirement for a Rule 23(b)(1)(A) class. *See Risto v. Screen Actors Guild*, No. 2:18-cv-7241, 2020 WL 5518600, at *12 (C.D. Cal. Sept. 14, 2020); *In re Victor Techs. Sec. Litig.*, 102 F.R.D. 53, 63 (N.D. Cal. 1984), *aff'd*, 792 F.2d 862 (9th Cir. 1986).

///

Here, in addition to the present case, there are or have been at least eight cases raising the identical issues. Some of these were settled, some were dismissed, some are currently on appeal, and some are pending. But they all raise(d) the legal issue of whether Parental Exclusion Policies violate the Fourteenth Amendment—whether as an affirmative claim or as a defense—and many seek injunctive relief. *See* Jonna Decl., ¶¶19-27. These cases include:

- *Konen v. Caldeira*, No. 22-cv-1813 (Cal. Super. Ct., Monterey Cnty., June 27, 2022), *removed*, No. 5:22-cv-5195 (N.D. Cal. Sep. 12, 2022). In this action, Mrs. Jessica Konen sued the Spreckels Union School District and middle-school teacher Lori Caldeira, via 42 U.S.C. § 1983 for violation of her Parental Rights after they socially transitioned her minor daughter to a male gender. The action sought damages and declaratory relief, but was settled on April 7, 2023.

- *Tapia v. Jurupa Unified Sch. Dist.*, No. 5:23-cv-789 (C.D. Cal. May 3, 2023). In this action, teacher Jessica Tapia was fired after she requested a religious accommodation from having to comply with Parental Exclusion Policies, was denied an accommodation, and then informed the school district that she still could not comply with the policies. Mrs. Tapia brought both a Title VII claim and 42 U.S.C. § 1983 claims for violation of her free exercise and free speech rights. The action sought damages, declaratory relief and injunctive relief. Following the denial of the school district's motion to dismiss, the action settled on May 14, 2024.

- *Regino v. Staley*, No. 2:23-cv-32 (E.D. Cal. Jan. 6, 2023), *appeal filed*, No. 23-16031 (9th Cir. July 28, 2023). In this action, Mrs. Aurora Regino sued Superintendent Kelly Staley of the Chico Unified School District, via 42 U.S.C. § 1983 for violation of her Parental Rights after the District socially transitioned her minor daughter to a male gender. The action sought declaratory relief and injunctive relief, but a preliminary injunction was

denied and the case was dismissed on July 11, 2023, for failure to state a claim. The Ninth Circuit reversed and remanded on April 4, 2025.

- *People ex rel. Bonta v. Chino Valley Unified Sch. Dist.*, No. CIV SB 2317301 (Cal. Super. Ct., San Bernardino Cnty., Aug. 28, 2023). In this action, California Attorney General Rob Bonta filed suit against the Chino Valley Unified School District after it passed a Parental Notification Policy, which he alleged violated the Privacy Clause of the California Constitution as well as Equal Protection principles. After California passed a statute prohibiting Parental Notification Policies the school district filed a federal action challenging it. Bonta obtained a permanent injunction on October 3, 2024.

- *Mae M. v. Komrosky*, No. CVSW2306224 (Cal. Super. Ct., Riverside Cnty., Aug. 2, 2023), *appeal filed*, No. E083409 (Cal. App. Ct., 4th Dist., Div. 2, Feb. 28, 2024), *transferred*, No. G064332 (Cal. App. Ct., 4th Dist., Div. 3, June 24, 2024). In the First Amended Complaint filed on October 13, 2023, various student plaintiffs and teacher plaintiffs sued the Temecula Valley Unified School District and Board Member Joseph Komrosky for passing a Parental Notification Policy, which they alleged violated the Equal Protection clause. In the action, the plaintiffs sought injunctive and declaratory relief. On February 23, 2024, the superior court denied the plaintiffs a preliminary injunction and they appealed. On May 19, 2025, the Court of Appeal determined that the challenge to the Parental Notification Policy was moot in light of the passage of AB 1955.

- *Cal. Dep't of Educ. v. Rocklin Unified Sch. Dist.*, No. S-CV-0052605 (Cal. Super. Ct., Placer Cnty., Apr. 10, 2024). In this action, the California Department of Education filed suit against the Rocklin Unified School District after it passed a Parental Notification Policy. The Department argued that it had determined during an administrative proceeding that the policy violated the Privacy Clause of the California Constitution, along with

Equal Protection principles. The action sought declaratory and injunctive relief forcing the school district to comply with the Department's order to rescind the policy. The case is currently stayed.

- *Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-1941 (E.D. Cal. July 16, 2024), *appeal filed*, No. 25-3686 (9th Cir. June 9, 2025). In this action, Chino Valley Unified School District sued California alleging that AB 1955 was unconstitutional and that it should be permitted to enact a Parental Notification Policy. On May 9, 2025, the district court dismissed the case and the school district appealed.

- *City of Huntington Beach v. Newsom*, No. 8:24-cv-2017 (C.D. Cal. Sep. 17, 2024), appeal filed, No. 25-3826 (9th Cir. June 17, 2025). In this action, the City of Huntington Beach sued California alleging that AB 1955 was unconstitutional and that it should be permitted to enact a local ordinance requiring school districts to adopt Parental Notification Policies. On June 16, 2025, the district court dismissed the case and the school district appealed.

In light of the above, there is plainly a "risk" of multiple cases imposing different injunctive demands on the California Attorney General and California Department of Education, warranting certification under Rule 23(b)(1)(A).

## III. THIS ACTION SATISFIES THE FOUR REQUIREMENTS OF RULE 23(a).

As stated above, in order to achieve class status, a putative class must satisfy four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs meet these requirements.

///

## A. The Class is So Numerous that Joinder of All Members is Impracticable.

The first requirement is that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This subdivision's "core requirement is that joinder be impracticable." 1 Newberg and Rubenstein on Class Actions § 3:11 (6th ed. 2025). "Numerousness—the presence of many class members—provides an obvious situation in which joinder may be impracticable, but it is not the only such situation." *Id.* (footnote omitted); *accord Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319-20 & nn.9-10 (9th Cir. 1982), *vacated*, 459 U.S. 810 (1982), *on remand*, 713 F.2d 503 (9th Cir. 1983) (discussing factors that "should be considered in determining impracticability of joinder").

Thus, there is no magic number for determining whether a class size is sufficiently numerous. Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). "As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *but see Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (upholding class of 18). "A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (quotations omitted); *accord Rannis v. Recchia*, 380 F. Appx. 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members").

The court need not know the exact size of the putative class, "so long as general knowledge and common sense indicate that it is large." *Perez-Funez v. INS*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 304-05 (N.D. Cal. 2017) (applying general statistical analysis to determine

numerosity); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 556 (S.D. Cal. 2012) (presuming numerosity based on size of sales). Using such common sense, "a court may draw a reasonable inference of class size from the facts before it." *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984). This rule applies with particular force in Rule 23(b)(2) class action seeking solely injunctive relief. *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018) (finding numerosity where plaintiffs could establish only 15 known class members, but raised the possibility of hundreds more based on generally available information).

When addressing practicality of joinder, typically, a fact-specific inquiry is appropriate to determine whether joinder would be impracticable. Impracticable does not mean impossible, but that it would be "difficult[] or inconvenien[t] [to] join[] all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). In assessing impracticality of joinder, courts consider factors such as "(1) the number of individual class members; (2) the ease of identifying and contacting class members; (3) the geographical spread of class members; and (4) the ability and willingness of individual members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant." *Twegbe v. Pharmaca Integrative Pharm., Inc.*, No. 3:12-cv-5080, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013); *see also Buttino v. FBI*, No. 3:90-cv-1639, 1992 WL 12013803, at *2 (N.D. Cal. Sept. 25, 1992) (finding numerosity where an unknown number of gay FBI employees worked under antigay policies and were unlikely to come forward individually).

Here, all of these factors support a class action. To begin, according to the California Department of Education, the most recently available data shows that there are approximately a total of 5,837,690 students enrolled in California public schools (each of which has at least one parent or guardian) and approximately a total of 319,004 public school teachers in the state of California. Ex. 1, Barrera Depo.,

pp.23:6-24:13 (discussing *Fingertip Facts on Education in California*, Cal. Dep't of Educ. (Oct. 25, 2024)). Under the "rule of 40," Plaintiffs only need to establish that it is reasonably inferable that at least 0.013% of California teachers and 0.00069% of California parents object to Parental Exclusion Policies. The evidence shows that Plaintiffs more than meet the numerosity requirement.

Various polls show that the majority of Americans generally, and Californians specifically, oppose Parental Exclusion Policies. For example, according to a December 2024 poll by the group Parents Defending Education, 75% of registered voters oppose letting schools withhold information about a child's gender identity from their parents. Ex.2-A, Press Release, *Parents Defending Education Poll: Parents Support Girls-Only Spaces in Schools, Oppose Parental Exclusion Policies and Grading for Equity*, Parents Defending Education (Jan. 6, 2025). This is up from 71% a year prior. Ex.2-B, Press Release, *Parents Defending Education poll: 71% of voters support legislation requiring schools to inform parents if their child wants to change their gender identity*, Parents Defending Education (Mar. 21, 2023). A similar August 2023 poll from Monmouth University found 77% of New Jerseyans believe that schools should notify parents of a child's request to socially transition to a new gender. Ex.3, Monmouth Poll Reports, *New Jersey: Majority Support Parental Notification for Gender Identity*, Monmouth University (Aug. 22, 2023).

With respect to California specifically, a March 2023 Rasmussen poll found that 82% of California voters disagree with the statement "A person loses their parental rights when a child enters public school," with 62% of voters supporting a law requiring parental notification of a child's gender transition. Ex.4, *California Voters Support Parental Rights by Overwhelming Margins*, Rasmussen Reports (June 12, 2023). Similarly, a November 2023 poll by the Women's Liberation Front found that 72.1% of Californians either "strongly agree" or "somewhat agree" that parents should be notified if their child identifies as transgender in school. Ex.5, Press Release, *New California Poll Reveals Dramatic Decrease for Support of "Gender*

*Identity" Policies Since 2020*, Women's Liberation Front (Nov. 29, 2023).

Further, according to the Pew Research Center, 55% of Californians are Christian, which includes 25% who are Catholic. Ex.6, *Religious Landscape Study: Adults in California*, Pew Research Center (printed July 15, 2025). And as stated in the Complaint and Plaintiffs' declarations, traditional Christian ethics hold that the parent-child relationship is a sacred one that the government should not interfere with. *See* Second Amend. Compl., ¶¶100-01, nn.29-31, & Exs. 24-25; Mirabelli MSJ Decl., ¶¶5-13; West MSJ Decl., ¶¶7-10.

So long as the named plaintiffs/class representatives have standing to seek prospective relief, there is no requirement that each member of the class similarly have standing. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc); *Davis v. Lab'y Corp. of Am. Holdings*, No. 22-55873, 2024 WL 489288, at *2 n.1 (9th Cir. Feb. 8, 2024) ("LabCorp's allegation that some potential class members may not have been injured does not defeat commonality"); *accord Hyland v. Navient Corp.*, 48 F.4th 110, 118 n.1 (2d Cir. 2022); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023). Thus, whether "some class members were not injured" is irrelevant. *Cabrera v. Google LLC*, No. 5:11-cv-1263, 2023 WL 5279463, at *38 (N.D. Cal. Aug. 15, 2023); *cf. John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629-30 (4th Cir. 2023) (maj. opn.) (finding lack of standing by parents without transgender children); *but see id.* at 639-43 (Niemeyer, J., dissenting) (finding that parents need not show direct application of unconstitutional policy to their children, merely threat that it will be applied, to have standing).

Here, the fact that there are nearly six million public school children in California, *see* Ex.1, and more than one-half of Americans both object to Parental Exclusion Policies, *see* Exs.2-5, and are Christian, *see* Ex.6, supports a reasonable inference that the numerosity requirement is met. Even if standing were a concern, the main narrowing issue would be the number of gender incongruent minors. In this

respect, a recent study by the Williams Institute at the UCLA School of Law estimates that, among individuals aged 13-17, 1.93% or 49,100 identify as transgender. Ex.7, Jody L. Herman, et al., *How Many Adults and Youth Identify as Transgender in the United States*, UCLA School of Law, Williams Institute (June 2022). Even with less than 2% of California children identifying as transgender, and two-thirds of their parents desiring to know about their gender identity struggles, it is reasonably inferable that the proposed parent subclasses would include thousands of members. Thus, numerosity should be presumed. *Ikonen*, 122 F.R.D. at 262; *Rannis*, 380 F. Appx. at 651.

In any event, the other factors which play a role in determining feasibility of joinder also support class certification. The fact that "[t]he class consists of a changing population" tilts the balance in Plaintiffs' favor. *Saravia*, 280 F. Supp. 3d at 1203; *see Jordan*, 669 F.2d at 1320 (finding joinder impracticable where the class at issue was "composed of unnamed and unknown future black applicants who may be discriminated against by the County's employment practices"). Moreover, the substance of this case—concerning the interplay between transgender rights and parental rights—makes individual plaintiffs less likely to come forward. *See Buttino*, 1992 WL 12013803, at *2. Lastly, the alternative to class certification would be piecemeal litigation by individual teachers and parents which would impose unnecessary administrative burdens on the courts. For all practical purposes, these individual lawsuits would repetitively seek the exact same relief for parents and teachers distributed across the State, making a single class action a far more practical solution. Thus, the requirement of numerosity is met.

## B. There Are Numerous Common Questions of Law and Fact

The next requirement is that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Under this subdivision, "[w]hat matters to class certification is … the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal

citations omitted). In a Rule 23(b)(2) class action, "suits seeking joint relief in the form of an injunction or declaratory judgment usually present 'common questions' by their very nature." 2 Stevenson & Fitzgerald, Cal. Practice Guide: Fed. Civ. Proc. Before Trial § 10:276 (2025). In that context, "[m]embership in a class should be defined by the nature of the claim asserted and the relief sought." *Id.* at § 10:278.

Thus, the Ninth Circuit has explained, "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "[C]ommon answers typically come in the form of 'a particular and sufficiently well-defined set of allegedly illegal policies [or] practices' that work similar harm on the class plaintiffs." *Parent/Prof'l Advoc. League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (quoting *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014)). In any event, the commonality requirement has "permissive standards," *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024), because it "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, the overarching Class, as a whole, seeks resolution of the issue of whether Parental Exclusion Policies violate the Fourteenth Amendment right to direct the upbringing of one's own children and/or FERPA. If so, that is dispositive of the Parent Plaintiffs' Fourteenth Amendment claim (self-evidently), dispositive of the Teacher Plaintiffs' Free Speech claim, *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1215 (S.D. Cal. 2023) ("The teachers could … make out a freedom of speech claim if the policy compels them to violate the law"),[1] and is dispositive of all Plaintiffs' Free Exercise claims. *Id.* at 1217 ("The reasons proffered by the defendants for the policy

---

[1] *See Janus v. AFSCME, Council 31*, 585 U.S. 878, 908 (2018) (under Free Speech Clause, the governmental "employer may insist that the employee deliver any *lawful* message") (emphasis added).

pass neither the strict scrutiny nor the rational basis tests.").[2]

As a general matter, whether legislative government policy violates parental rights is suitable for resolution on a class-wide basis. *See, e.g.*, *Cleaver v. Wilcox*, 499 F.2d 940, 943 (9th Cir. 1974). This makes sense because legislative violations of Substantive Due Process rights require a "fundamental rights" analysis, *see Regino v. Staley*, 133 F.4th 951, 960 n.5 (9th Cir. 2025); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), which asks whether the asserted rights are "*objectively* deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (cleaned up; emphasis added).

Further, as explained in Plaintiffs' concurrently filed renewed motion for summary judgment, the free speech analysis is primarily a question of law. Under the First Amendment right to freedom of thought, the government cannot force employees to engage in speech (1) about an issue of legitimate public concern, (2) that is not critical to the performance on their actual job duties, (3) unless doing so is necessary for the effective operation of the government. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776-77 (9th Cir. 2022). Whether certain activity is "speech" is a pure matter of law, as is whether a specific subject matter is a matter of public concern. *See Nunez v. Davis*, 169 F.3d 1222, 1230 (9th Cir. 1999) ("The district court erroneously submitted to the jury the question whether Nunez's speech implicated a matter of public concern and whether her conduct was speech. This is properly a question of law.").

With respect to the last two elements, they turn primarily on whether Parental Exclusion Policies are "curricular in nature" (i.e., teaching math), or are an aspect of

---

[2] *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015) (analyzing whether free exercise objection could succeed under rational basis challenge: "Under rational basis review, we must uphold the rules if they are rationally related to a *legitimate* governmental purpose") (emphasis added).

promulgating an "ideological subject" (gender ideology). This is a question of law. *See Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 697 (4th Cir. 2007); *Morgan v. Swanson*, 659 F.3d 359, 375 n.52 (5th Cir. 2011). Since this question is answered in Plaintiffs' favor, the First Amendment protects conscientious objectors. *See Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 565-69 (2023); *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014); *Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-cv-2237, 2024 WL 3758499, at *11 (N.D. Ohio Aug. 12, 2024).

Turning to the Parent Plaintiffs' free exercise claims, they are dispositively answered by the Supreme Court's recent *Mahmoud* decision which held that when the government "substantially interfer[es] with the religious development of the parents' children," then "we need not ask whether the law at issue is neutral or generally applicable before proceeding to strict scrutiny." *Mahmoud v. Taylor*, 606 U.S. ___, 2025 WL 1773627, at *22 (U.S. June 27, 2025) (quotation marks omitted).

For the Teacher Plaintiffs, they need to establish that Parental Exclusion Policies are not neutral or generally applicable. Upon doing so, if "challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means that they must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020). Government "regulations are not neutral and generally applicable ... whenever they treat *any* comparable secular activity more favorably than religious exercise." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 688 (9th Cir. 2023) (en banc) (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)). Nor are they neutral and generally applicable when they "invite[] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Id.* at 686 (quoting *Fulton v. Philadelphia*, 593 U.S. 522, 533 (2021)). As this Court recognized two years ago, Parental Exclusion Policies fail both tests. *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1215-17 (S.D. Cal. 2023).

///

On the free exercise analysis, the only potential factual issue is whether an objection to complying with Parental Exclusion Policies is sincerely religious. But if the government engages in an "intrusive religious inquiry," it will violate the prohibition on religious hostility. *See Does 1-11 v. Univ. of Colo.*, 100 F.4th 1251, 1270 (10th Cir. 2024). Thus, numerous courts have certified religion-based class actions without finding a sincerity objection problematic. *See, e.g.*, *Mayweathers v. Newland*, 258 F.3d 930, 933 (9th Cir. 2001); *Friend v. Kolodzieczak*, 965 F.2d 682, 685 (9th Cir. 1992). The numerous common questions of law and fact fully support granting class certification. *See, e.g.*, *Trump v. CASA, Inc.*, 606 U.S. ___, 2025 WL 1773631, at *19 (U.S. June 27, 2025) (Kavanaugh, J., concurring) ("To be sure, in the wake of the Court's decision, plaintiffs who challenge the legality of a new federal statute or executive action and request preliminary injunctive relief may sometimes seek to proceed by class action under Federal Rule of Civil Procedure 23(b)(2) and ask a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide."); *Barbara v. Trump*, No. 1:25-cv-244, 2025 WL 1904338 (D.N.H. July 10, 2025) (certifying class and enjoining executive order).

## C. Plaintiffs Satisfy the Typicality Requirement

The third class action prerequisite is that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "[T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (citation omitted). *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative 'aligns with the interests of the class.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted). This requirement is "permissive" meaning that a class representative's claims are "'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). Thus, "[m]easures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted). In the Rule 23(b)(2) context, typicality "requires only that 'the primary relief sought is declaratory or injunctive.'" *Does 1-10 v. Univ. of Wash.*, 326 F.R.D. 669, 683 (W.D. Wash. 2018) (quoting *Hayes I*, 591 F.3d at 1125). "In other words, 'the rule does not require [the court] to examine the viability or bases of class members' claims for declaratory or injunctive relief, but only to look at whether members seek uniform relief from a practice applicable to all of them.'" *Id.*

The Plaintiffs' claims are "reasonably coextensive" with the claims of the absent class members as they all seek the same relief—declaratory and injunctive relief precluding application of Parental Exclusion Policies against them. As such, Plaintiffs have met their burden of demonstrating typicality.

## D. The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class

Finally, class certification can be granted only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prong has two sub-parts: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "[T]he adequacy-of-

representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) ("*W. Publishing Corp.*"). The answers to both inquiries support certification of the proposed Class.

*First*, Plaintiffs are primarily seeking declaratory and injunctive relief, and all of the other members of the proposed class are seeking the same declaratory and injunctive relief. Further, although Plaintiffs Mirabelli and West are seeking damages, the other class representatives are not. Thus, any potential conflict between their interests and that of the Class is resolved by the presence of the new plaintiffs. *See W. Publishing Corp.*, 563 F.3d at 961 (representation adequate where "[o]nly five of the seven class representatives had an incentive agreement"). Moreover, the procedural posture of this action minimizes the possibility of conflict. The action seeks solely the protection of teachers and parents who object to the Parental Exclusion Policies; parents who believe such policies are good are free to let their schools know that they do not object to them. The Plaintiffs all acknowledge their duties to the class and are prepared to fulfill them. *See* Mirabelli MSJ Decl., ¶75; West MSJ Decl., ¶55; Boe MSJ Decl., ¶20; Roe MSJ Decl., ¶24; Poe MSJ Decls., ¶34; Doe MSJ Decls., ¶50.

*Second*, counsel for the proposed Class have no conflicts of interest and motivated exclusively in obtaining full and complete relief for all members of the proposed Class. Moreover, counsel have significant experience with constitutional litigation and with complex class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the Proposed Class. *See generally* Jonna Decl., ¶¶2-18. Thus, the adequacy of representation requirement is satisfied.

## IV.   THE COURT SHOULD APPROVE CLASS COUNSEL

With respect to the competency of class counsel, "[i]t is presumed plaintiffs' counsel is competent to litigate this case and will fairly and adequately represent the

interests of the class members." *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Thus, "[a]bsent a basis for questioning the competence of counsel, the named plaintiffs' choice of counsel will not be disturbed, and plaintiffs bear no affirmative burden to allege facts establishing the competence of counsel in the complaint." *Mateo v. M/S Kiso*, 805 F. Supp. 761, 771 (N.D. Cal. 1991).

Plaintiffs seek appointment of Charles S. LiMandri, Paul M. Jonna, and Jeffrey M. Trissell as joint class counsel. Pursuant to Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class when determining whom to appoint.

The accompanying declaration of Paul M. Jonna demonstrates that counsel meet these requirements. This Court should approve the undersigned counsel to represent the proposed Class. *See generally* Jonna Decl., ¶¶2-18.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their renewed motion for class certification.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: July 16, 2025          By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs