Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,

Plaintiffs,

v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

Defendants.

Case No.: 3:23-cv-0768-BEN-VET

**PLAINTIFFS' OPPOSITION TO EUSD'S MOTION FOR PARTIAL SUMMARY JUDGMENT / SUMMARY ADJUDICATION**

Judge:           Hon. Roger T. Benitez
Courtroom:    5A
Hearing Date:  September 29, 2025
Hearing Time:  10:30 a.m.

# TABLE OF CONTENTS

INTRODUCTION & FACTUAL BACKGROUND ................................................1

LEGAL STANDARD ........................................................................3

ARGUMENT ................................................................................3

   I.   The Court Should Deny EUSD's Motion for Summary
       Judgment as to Plaintiff West's Title VII Religious
       Discrimination Claim.......................................................... 4

      A.   EUSD Misunderstands Its Obligations Under Title
          VII .................................................................5

           1.   Background on a Title VII Claim ................................... 6

           2.   Application of the Legal Principles.................................7

      B.   EUSD Has Not Established the Undue Hardship
          Defense ........................................................... 11

           1.   Background on the Undue Hardship /
               Illegality Defense .......................................... 11

           2.   Application of the Legal Principles.............................12

   II.   The Court Should Deny the Personal Capacity EUSD
       Defendants' Motion for Partial Summary Judgment on the
       Affirmative Defense of Qualified Immunity ......................................16

      A.   Background Legal Principles on Qualified Immunity ..............16

      B.   Argument Regarding Qualified Immunity ................................18

           1.   Interfering with the Parent / Child
               Relationship is Patently Unconstitutional ....................19

           2.   The Actions of Albert, Schmidt, Smith, and
               White Warrant Damages............................................. 22

CONCLUSION..............................................................................25

# TABLE OF AUTHORITIES

## CASES

*Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*,
    781 F.2d 772 (9th Cir. 1986) ............................................................. 6, 8, 9, 10

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ........................................................................ 17

*Anderson v. Gen. Dynamics*,
    589 F.2d 397 (9th Cir. 1978) ........................................................... 8

*Aubin v. Columbia Cas. Co.*,
    272 F. Supp. 3d 828 (M.D. La. 2017) ............................................. 18

*Baker v. The Home Depot*,
    445 F.3d 541 (2d Cir. 2006) ........................................................... 11

*Barrett v. Steubenville City Schs.*,
    388 F.3d 967 (6th Cir. 2004) ..................................................... 20, 21

*Beaver v. Federal Way*,
    301 F. App'x 704 (9th Cir. 2008) ................................................... 17

*Berry v. Dep't of Soc. Servs.*,
    447 F.3d 642 (9th Cir. 2006) ..................................................... 11, 12

*Bhatia v. Chevron U.S.A., Inc.*,
    734 F.2d 1382 (9th Cir. 1984) .................................................... 12, 14

*Bolden-Hardge v. Off. of Cal. State Controller*,
    63 F.4th 1215 (9th Cir. 2023) ........................................ 2, 7, 11, 12, 14, 15

*Bolden-Hardge v. Off. of Cal. State Controller*,
    No. 2:20-cv-2081, 2025 WL 2495655 (E.D. Cal. Aug. 29, 2025) ................. 14

*Boyd v. City of Oakland*,
    458 F. Supp. 2d 1015 (N.D. Cal. 2006) .......................................... 13

*Browder v. City of Albuquerque*,
    787 F.3d 1076 (10th Cir. 2015) ................................................. 17, 18

*Buck v. Bell*,
    274 U.S. 200 (1927) ........................................................................ 22

*Carey v. Nevada Gaming Control Bd.*,
    279 F.3d 873 (9th Cir. 2002) .......................................................... 18

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................... 3

*Clark v. Cnty. of Tulare,*
    755 F. Supp. 2d 1075 (E.D. Cal. 2010) .......................................... 13

*Cmty. House, Inc. v. City of Boise,*
    623 F.3d 945 (9th Cir. 2010) ............................................................ 16

*Cooper v. Oak Rubber Co.,*
    15 F.3d 1375 (6th Cir. 1994) ............................................................ 11

*Courthouse News Serv. v. Forman,*
    606 F. Supp. 3d 1200 (N.D. Fla. 2022)........................................... 25

*Crawford v. Trader Joe's Co.,*
    No. 5:21-cv-1519, 2023 WL 3559331 (C.D. Cal. May 4, 2023) .......................7

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't,*
    533 F.3d 780 (9th Cir. 2008)........................................................... 3

*Cunningham v. Gates,*
    229 F.3d 1271 (9th Cir. 2000) ................................................. 16, 22

*Demaree v. Pederson,*
    887 F.3d 870 (9th Cir. 2018) ........................................................... 19

*Doe 1 v. Madison Metro. Sch. Dist.,*
    403 Wis. 2d 369 (2022) .............................................................10, 19

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
    575 U.S. 768 (2015) .......................................................................... 5

*EEOC v. GEO Grp., Inc.,*
    616 F.3d 265 (3d Cir. 2010)............................................................. 7

*EEOC v. Hacienda Hotel,*
    881 F.2d 1504 (9th Cir. 1989) ........................................................ 8

*EEOC v. Walmart Stores East, L.P.,*
    992 F.3d 656 (7th Cir. 2021) .......................................................... 7

*Express, LLC v. Fetish Grp., Inc.,*
    464 F. Supp. 2d 965 (C.D. Cal. 2006)......................................... 13

*Frudden v. Pilling,*
    877 F.3d 821 (9th Cir. 2017)......................................................... 16

*Gay v. Cabinet for Health & Fam. Servs. Dep't*,
No. 18-5285, 2019 WL 1338524 (6th Cir. Jan. 23, 2019) ............................. 17

*Groff v. DeJoy*,
600 U.S. 447 (2023) .................................................5, 7, 12, 14

*Grossman v. City of Portland*,
33 F.3d 1200 (9th Cir. 1994) ................................................ 18, 22

*Guillemard-Ginorio v. Contreras-Gómez*,
490 F.3d 31 (1st Cir. 2007)................................................ 18

*Guy v. Lorenzen*,
547 F. Supp. 3d 927 (S.D. Cal. 2021) ................................................ 17

*Hall v. Hall*,
3 Atk. 721 (Ch. 1749) ................................................ 21

*Heller v. EBB Auto Co.*,
8 F.3d 1433 (9th Cir. 1993)................................................7

*Homemakers, Inc., of Los Angeles v. Cal. Div. of Indus. Welf.*,
509 F.2d 20 (9th Cir. 1974) ................................................ 14

*Hoover v. Switlik Parachute Co.*,
663 F.2d 964 (9th Cir. 1981) ................................................ 13

*Hope v. Pelzer*,
536 U.S. 730 (2002) ................................................ 17

*In re Custody of Smith*,
137 Wash. 2d 1 (1998)................................................24

*In re Sunset Bay Assocs.*,
944 F.2d 1503 (9th Cir. 1991)................................................ 13

*Lawrence v. Reed*,
406 F.3d 1224 (10th Cir. 2005) ................................................ 18

*Leonard v. Robinson*,
477 F.3d 347 (6th Cir. 2007) ................................................ 18

*Mahmoud v. Taylor*,
606 U.S. ___, 145 S. Ct. 2332 (2025) ................................................ 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................3

*Meyer v. Nebraska*,
    262 U.S. 390 (1923)............................................................................ 21

*Mirabelli v. Olson*,
    691 F. Supp. 3d 1197 (S.D. Cal. 2023) ............................................. 3

*Pierce v. Gilchrist*,
    359 F.3d 1279 (10th Cir. 2004) ...................................................... 17

*Pierce v. Soc'y of Sisters*,
    268 U.S. 510 (1925) ........................................................................ 21

*Ricard v. Geary Cnty. Unified Sch. Dist. 475*,
    No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022)............ 10, 15, 19

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) .......................................................... 8

*Romero v. Kitsap County*,
    931 F.2d 624 (9th Cir. 1991)........................................................... 17

*Rosenfeld v. S. Pac. Co.*,
    444 F.2d 1219 (9th Cir. 1971) ....................................... 12, 13, 14, 15

*Schulkers v. Kammer*,
    955 F.3d 520 (6th Cir. 2020)...................................................... 19, 20

*Skinner v. Oklahoma*,
    316 U.S. 535 (1942) ........................................................................ 21

*Smith v. Pyro Min. Co.*,
    827 F.2d 1081 (6th Cir. 1987)......................................................... 11

*Snell v. Bell Helicopter Textron, Inc.*,
    107 F.3d 744 (9th Cir. 1997) ....................................................... 3, 11

*Soc'y of Sisters v. Pierce*,
    296 F. 928 (D. Or. 1924)................................................................. 21

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) .......................................................... 11

*Tan Lam v. City of Los Banos*,
    976 F.3d 986 (9th Cir. 2020)........................................................... 16

*Tatel v. Mt. Lebanon Sch. Dist.*,
    637 F. Supp. 3d 295 (W.D. Pa. Oct. 27, 2022) ............................... 19

*Taylor v. Riojas*,
   592 U.S. 7 (2020) ...............................................................3, 17

*Texas v. U.S. Dep't of Health & Hum. Servs.*,
   681 F. Supp. 3d 665 (W.D. Tex. 2023) .........................................25

*Tiano v. Dillard Dep't Stores, Inc.*,
   139 F.3d 679 (9th Cir. 1998) ..............................................6, 7, 8

*Troxel v. Granville*,
   530 U.S. 57 (2000) ..........................................................20, 24

*Vaughn v. Ruoff*,
   253 F.3d 1124 (8th Cir. 2001)..................................................20

*Webb v. City of Philadelphia*,
   562 F.3d 256 (3d Cir. 2009) .....................................................7

*White v. Pauly*,
   580 U.S. 73 (2017) .............................................................17

*Wright v. Beck*,
   981 F.3d 719 (9th Cir. 2020) ...................................................16

*Yeager v. FirstEnergy Generation Corp.*,
   777 F.3d 362 (6th Cir. 2015) ...................................................11

## Statutes & Rules

42 U.S.C. § 1983 ............................................................2, 4

42 U.S.C. § 2000e(j) .....................................................5, 6, 11

42 U.S.C. § 2000e-2(a)(1) ....................................................5

42 U.S.C. § 2000e-7 ......................................................2, 12

Cal. Const. art. XX, § 3 .....................................................14

Cal. Educ. Code § 51101 .....................................................19

Cal. Gov. Code § 12965 ........................................................2

Cal. Lab. Code § 1102.5(c) ...................................................15

Cal. Lab. Code § 1251 ........................................................14

Cal. Lab. Code § 1350 ........................................................14

Fed. R. Civ. P. 56(a) .........................................................3

Fed. R. Civ. P. 56(c)(4) .......................................................................... 13

**OTHER AUTHORITIES**

Bailey D. Barnes, *The Obvious Violation Exception to Qualified Immunity: An Empirical Study*, 99 Wash. L. Rev. 725 (2024) .................17, 25

John Alleyne, *The Legal Degrees of Marriage Stated and Considered* (London, 1774) ....................................................................... 21, 22

# INTRODUCTION & FACTUAL BACKGROUND[1]

Plaintiffs Elizabeth Mirabelli and Lori Ann West were long-time and devoted educators at Rincon Middle School within the Escondido Union School District ("EUSD"). Mirabelli MSJ Decl., ¶¶2-4 (ECF No. 247-2); West MSJ Decl., ¶¶2-6 (ECF No. 247-3). But on February 3, 2022, they discovered for the first time that they were expected to deceive parents by withholding information about a child's gender presentation at school. Mirabelli MSJ Decl., ¶¶14-19; West MSJ Decl., ¶¶11-15. Presenting as a different gender in public is called a "social transition" and is normally a reasoned medical decision made by families in consultation with psychologists. Anderson Rep., ¶¶17, 97-104, 132. However, EUSD Director of Student Services, Tracy Schmidt, gave a district-wide presentation for teachers stating that children alone can make the decision whether to "socially transition" and that under the child's "Right to Privacy," teachers had to scrupulously avoid "outing" a child to his parents. Mirabelli MSJ Decl., Ex.E. Unsurprisingly, during her presentation, Ms. Schmidt cited no law that gave EUSD the right to deceive parents, interfere with parental constitutional rights, or force teachers to do so. *Id.*

This greatly troubled Plaintiffs Mirabelli and West because, informed by their Christian faith, they know that keeping this information from parents is morally and ethically wrong. They believe that the relationship between parents and children is sacred and should not be undermined by introducing deception and distrust. Moreover, in seeking the best for their gender incongruent students, Plaintiffs Mirabelli and West believe that life-altering decisions like whether to "socially transition" must be left in the hands of parents, not children alone. Mirabelli MSJ Decl., ¶¶5-13 & Exs.A-D; West MSJ Decl., ¶¶7-10.

Thus, Plaintiffs Mirabelli and West sought a religious accommodation under Title VII and the California Fair Employment & Housing Act ("FEHA"). The

---

[1] Page citations are to the ECF page stamp. To avoid duplication, Plaintiffs primarily cite to the documents submitted with their summary judgment motion, ECF No. 247.

request was given to EUSD Assistant Superintendent of Human Resources, John Albert; the new Director of Student Services, Trent Smith; and Rincon Middle School Principal, Steve White. Together, they agreed to grant Plaintiffs Mirabelli and West a partial accommodation concerning matters not directly at issue in this case, but they denied any accommodation related to EUSD's Parental Exclusion Policies, leading to this lawsuit. Mirabelli MSJ Decl., ¶¶30-39 & Exs.J-L; West MSJ Decl., ¶¶16-22 & Exs.A-C.

Eventually, both Plaintiffs Mirabelli and West were forced into early retirement. Plaintiff West then brought a Title VII damages claim against EUSD itself, and both Plaintiffs Mirabelli and West brought 42 U.S.C. § 1983 damages claims against John Albert, Tracy Schmidt, Trent Smith, and Steve White. Mirabelli MSJ Decl., ¶¶53-71; West MSJ Decl., ¶¶38-52.[2]

In their motion for summary judgment, the EUSD Defendants seek judgment on these damages claims, making two primary arguments. First, EUSD itself argues that its reliance on guidance from the California Department of Education ("CDE") immunizes it from Title VII liability because it believed that granting Plaintiff West a religious accommodation would violate other state law. That's both factually and legally incorrect. Factually, neither EUSD nor the CDE have ever believed that the FAQ page itself has the force of law. Mirabelli MSJ Opp. Decl., ¶4. Legally, Title VII preempts state law. 42 U.S.C. § 2000e-7. Thus, an employer cannot rely on state law as a basis for refusing to grant a religious accommodation. *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1225 (9th Cir. 2023) ("*Bolden-Hardge I*").

---

[2] On May 21, 2025, Plaintiff Mirabelli received a right to sue letter from the California Civil Rights Department permitting her to bring a FEHA claim against EUSD. She has one year to file a suit. *See* Cal. Gov. Code § 12965. If this Court grants her motion for partial summary judgment on EUSD's sovereign immunity defense, *see* ECF No. 247-1, she will file the action in federal court. Otherwise, she plans to bring an action in California Superior Court by May 21, 2026. Mirabelli MSJ Opp. Decl., ¶2 & Ex.Q.

Second, Albert, Schmidt, Smith, and White seek judgment in their favor on the basis of qualified immunity. The Court should deny their motion. Numerous cases hold that government officials cannot argue that they were simply following orders in the face of a patently unconstitutional policy, *Taylor v. Riojas*, 592 U.S. 7, 9 (2020), which in this case amounted to a "trifecta of harm." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1222 (S.D. Cal. 2023).

## LEGAL STANDARD

Summary judgment should be granted "if the movant show(s) that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Partial summary judgment or summary adjudication is appropriate where no genuine issue of material fact exists regarding a part of a party's claim. Parties can move for partial summary judgment on any part of their claims. *See id.* The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then the burden shifts to the opposing party to controvert that showing "with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"When presented with cross-motions for summary judgment, we review each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008). When a defendant moves for summary judgment on the basis of an affirmative defense, the question is "whether no reasonable jury could fail to find that the defense had been established." *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).

## ARGUMENT

With respect to the EUSD Defendants, the Second Amended Complaint contains three categories of claims on behalf of four teachers: Plaintiffs Elizabeth Mirabelli, Lori Ann West, Jane Roe, and Jane Boe. *See* ECF No. 133. Specifically,

(1) Plaintiff Lori Ann West has asserted two Title VII claims against EUSD for religious discrimination and retaliation, seeking damages. *See id.* at pp.102-09, ¶¶401-36. (2) Both Plaintiffs Lori Ann West and Elizabeth Mirabelli have also asserted three 42 U.S.C. § 1983 claims—for violation of their Free Exercise and Free Speech rights—seeking damages against both the Official-Capacity EUSD Defendants and the Personal-Capacity EUSD Defendants. *See id.* at pp.87-102, ¶¶346-400. (3) Lastly, all four Teacher-Plaintiffs have asserted 42 U.S.C. § 1983 claims for violation of their Free Exercise and Free Speech rights seeking prospective injunctive and declaratory relief. *See id.* at pp.87-102, ¶¶346-400.

In their motion, the EUSD Defendants move for partial summary judgment on two of the above issues. As stated in the introduction, first, EUSD itself seeks summary judgment with respect to Plaintiff West's Title VII religious discrimination claim on the bases that (a) it engaged in good faith efforts to provide an accommodation and (b) that its reliance on the CDE's guidance provides a dispositive defense. *See* ECF No. 242-1, Memo., pp.9-13. Second, the Personal-Capacity EUSD Defendants seek summary judgment with respect to Plaintiffs Mirabelli's and West's 42 U.S.C. § 1983 damages claims on the basis that qualified immunity provides a dispositive defense. *See id.* at pp.13-17. EUSD does not seek summary judgment with respect to Plaintiff West's Title VII retaliation claim; and the Official-Capacity EUSD Defendants do not seek summary judgment as to the Teacher-Plaintiffs' 42 U.S.C. § 1983 claims—either with respect to prospective relief or damages. As explained below, the Court should deny the motion in full.

## I. THE COURT SHOULD DENY EUSD'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF WEST'S TITLE VII RELIGIOUS DISCRIMINATION CLAIM

In Plaintiff West's motion for summary judgment, she requested that the Court grant partial summary judgment as to liability with respect to her Title VII religious discrimination claim. *See* ECF No. 247-1, pp.59-61. As she explained, Title VII makes it

unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion[.]" 42 U.S.C. § 2000e-2(a)(1).

To discriminate "because of … religion" includes discrimination because of "all aspects of religious observance and practice, as well as belief." *Id.* at § 2000e(j). Thus, an employer has a duty to "accommodate" an employee's religious practice, "which means … allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary," *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015), unless doing so would create an "undue hardship" for the employer. *Groff v. DeJoy*, 600 U.S. 447, 472 (2023).

Plaintiff West then continued, explaining that because the Parental Exclusion Policies to which she objected violated the U.S. Constitution, accommodating her was necessarily required. *See* ECF No. 247-1, p.61. EUSD in contrast, in its cross-motion for summary judgment, has contended that: (1) Plaintiff West's claim failed because it initiated good faith efforts to reasonably accommodate her, ECF No. 242-1, pp.9-11; and (2) it can establish the "undue hardship" affirmative defense because it believed that exempting Plaintiff West from compliance with Parental Exclusion Policies would violate state law. *See* ECF No. 242-1, pp.11-13. Both arguments fail.

**A. EUSD Misunderstands Its Obligations Under Title VII**

EUSD's first argument is severely muddled. *See* ECF No. 242-1, pp.9:19-11:17. On the one hand, EUSD states that "West cannot meet *her* burden," implying that it is attacking Plaintiff West's satisfaction of her prima facie case. ECF No. 242-1, p.11:13-14. On the other hand, EUSD's argument substantively focuses on its "good faith efforts," which it characterizes as a *defense* arising after Plaintiff West satisfies her prima facie case. ECF No. 242-1, pp. 9:19-20, 10:2-8, 11:14-16.

EUSD also implies that Plaintiff West may have modified her request for a religious accommodation through her counsel's March 1, 2023, letter—although this argument is not developed. *See* ECF No. 242-1, pp.10:19-11:12. But nothing in that

letter stated that Plaintiff West was modifying her religious accommodation. In fact, it states the opposite: "With respect to the Privacy Policy, my clients remain concerned about the fact that an accommodation has not been offered[.]" ECF No. 242-3, p.435. Plaintiff West did not modify or withdraw her request for a religious accommodation, and never indicated that EUSD's statements regarding what she was still required to do were satisfactory. West MSJ Opp. Decl., ¶¶2-4.

Substantively, EUSD's argument is that Plaintiff West's claim fails because "EUSD initiated good f[aith] efforts to accommodate West's religious beliefs through meetings with EUSD district personnel." ECF No. 242-1, p.11:14-16. This argument is based on the following quote:

> Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "*either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.*" *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

ECF No. 242-1, p.10:2-6 (emphasis added). However, EUSD misunderstands what the Court in *Tiano* actually held.

### 1. Background on a Title VII Claim

As stated, the employer must "reasonably accommodate" "an employee's … religious observance or practice" unless doing so would be an "*undue hardship* on the conduct of the employer's business." 42 U.S.C. § 2000e(j) (emphasis added). The employer must offer a "reasonable accommodation," meaning one that "eliminate[s] the employee's religious conflict," and reasonably "preserve[s] that employee's employment status, *i.e.*, compensation, terms, conditions, or privileges of employment." *Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*, 781 F.2d 772, 776-77 (9th Cir. 1986).

To establish a prima facie claim for religious discrimination through non-accommodation, a plaintiff must show that: (1) "he had a bona fide religious belief, the

practice of which conflicted with an employment duty"; and (2) "the employer threatened him with or subjected him to discriminatory treatment … because of his [religious] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).[3] "Undue hardship is an affirmative defense." *Bolden-Hardge I*, 63 F.4th at 1224. Thus, once the plaintiff makes this prima facie case, the burden shifts to the employer to show that an accommodation would constitute an "undue hardship." *Groff*, 600 U.S. at 472.

EUSD states that it need establish merely "a de minimis cost," or "a slight burden," which is "not a difficult threshold to pass." ECF 242-1, p.11:24-12:9. But the cases it cites are from 2010 (*Geo Group*) and 2009 (*Webb*), which the Supreme Court abrogated in *Groff*, 600 U.S. 447. Indeed, one case cited by EUSD was directly overruled in *Groff*. *See id.* at 467 n.12 (overruling *EEOC v. Walmart Stores East, L.P.*, 992 F.3d 656 (7th Cir. 2021)). Rather, "undue hardship" should be understood as it would be used in "ordinary speech," as in "something hard to bear," "more severe then a mere burden," "excessive," or "unjustifiable." *Id.* at 468-69.

## 2. Application of the Legal Principles

EUSD states that it must show "*either* that it initiated good faith efforts to accommodate reasonably the employee's religious practices *or* that it could not reasonably accommodate the employee without undue hardship." ECF No. 242-1, p.10:2-6 (quoting *Tiano*, 139 F.3d at 681) (emphasis added). EUSD then argues that:

> West cannot meet her burden in establishing that she was discriminated against by EUSD for failing to engage in reasonable efforts to accommodate her. EUSD initiated good f[aith] efforts to accommodate West's religious beliefs through meetings with EUSD district personnel. *From the District's perspective, EUSD attempted to accommodate West to the fullest extent possible*….

---

[3] EUSD cites an old three-element test that has been abrogated. *See Crawford v. Trader Joe's Co.*, No. 5:21-cv-1519, 2023 WL 3559331, *9 n.4 (C.D. Cal. May 4, 2023). But the point is irrelevant as EUSD does not contend that Plaintiff West failed to establish that element. *See* ECF 242-1, pp.9:25-10:1.

ECF No 242-1, p.11:13-17 (emphasis added). In other words, EUSD believed its burden is satisfied merely through "initiat[ing] good faith efforts," regardless of whether Plaintiff West's religious conflict was eliminated. This is incorrect.

In *Tiano*, the quote is dicta because the Court held that the plaintiff failed to establish her prima facie case. 139 F.3d at 682. But *Tiano* cited *Hacienda Hotel*, which explains EUSD's misunderstanding. In *Hacienda Hotel*, this Court explained:

> [Defendant] admitted that she never asked any maid if they would volunteer to work nor did she make any effort to rearrange the schedule of the maids according to the religious needs of the employees within the housekeeping department…. Hacienda argues, however, that it could not accommodate the women's religious beliefs because any attempt at accommodation would have caused undue hardship on its business…. [However,] *at a minimum*, the employer was required to negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs.

*EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989) (emphasis added); *overruled on other grounds as stated in Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 n.4 (9th Cir. 2004); *accord Anderson v. Gen. Dynamics*, 589 F.2d 397, 401 (9th Cir. 1978) ("The burden was thereafter upon [the employers] to prove that they made good faith efforts to accommodate Anderson's religious beliefs *and*, if those efforts were unsuccessful, to demonstrate that they were unable reasonably to accommodate his beliefs without undue hardship") (emphasis added).

The only time when the "good faith efforts" would be sufficient is when the employer actually offers a "reasonable accommodation." As stated above, a reasonable accommodation is one that (1) eliminates the religious conflict; and (2) preserves the employee's privileges and status. *Am. Postal Workers Union*, 781 F.2d at 776-77. But "a reasonable accommodation need not be on the employee's terms only." *Id.* at 777. If the employer offers an accommodation that eliminates the religious conflict, but not in the manner that the employee prefers, the employer has satisfied its burden. *Id.* But "[i]f the accommodation proposed by the employer fails to eliminate the employee's

religious conflict," the employer has not met its burden. *Id*. at 776.

Thus, under Title VII, EUSD had a duty to eliminate the religious conflict, while reasonably maintaining Plaintiff West's employment status and privileges, or establish an undue hardship. Here, Plaintiff West stated in her written request for a religious accommodation that "[m]y religious beliefs preclude me from participating in any student's transgender identity, and they preclude me from withholding relevant information about a student's transgender identity, or any other issue regarding a student, from the student's parent or guardian." West MSJ Decl., ¶17 & Ex.A. As a result, she requested to be exempted from "[t]he 'Privacy' policy that prohibits teachers and staff from sharing a student's transgender identity with his or her parent or guardian without the student's permission, and requires teachers thereby to use different names or pronouns or to refer to the student depending on with whom the teacher is speaking." West MSJ Decl., Ex.A.

During the parties' first religious accommodation meeting, on November 15, 2022, EUSD Assistant Superintendent John Albert threateningly stated that Plaintiffs had to either comply with the Parental Exclusion Policies or "will be terminated." He also asked Plaintiffs how they would like to be "placed on unpaid administrative leave." Mirabelli MSJ Opp. Decl., ¶3. A second meeting was held on February 16, 2023. At that meeting, John Albert and Rincon Principal Steve White flanked attorney Shinoff. After listening to Plaintiff Mirabelli for a few minutes, Mr. Shinoff suddenly cut her off, announced they were out of time, slid a letter across the table, and then all three stood up and walked out. Mirabelli MSJ Opp. Decl., ¶5. Because of their hostile tone, Plaintiff West did not have a separate meeting with them, but simply read the letter. Mirabelli MSJ Opp. Decl., ¶5. This conduct gives the lie to any good faith.

In that letter, dated February 8, 2023, EUSD stated that "teachers are required to follow the 'privacy' policy that requires them to not share a student's gender identity status with their parent or guardian without the student's permission." ECF No. 242-3, p.433. In response, Plaintiff West's counsel sent a letter, dated March 1, 2023, which

stated: "With respect to the Privacy Policy, my clients remain concerned about the fact that an accommodation has not been offered, and [] have a few questions meant to clarify their understanding." ECF No. 242-3, p.435.

In the letter, Plaintiff West asked what she should do "if confronted by a parent" who "directly asks [her] to reveal a student's gender identity." ECF No. 242-3, p.436. This question was not posed as a tacit agreement to EUSD's denial of a religious accommodation, but rather sought clarification of the contours of EUSD's denial (the breadth of its illegality). At the time of this communication, March 2023, there were a few relevant court rulings. For example, one court held that Parental Exclusion Policies were obviously unconstitutional in all aspects. *Ricard v. Geary Cnty. Unified Sch. Dist. 475*, No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022). Another court did not explain its reasoning, but enjoined similar policies when applied to force a teacher to *directly lie* to parent. *See Doe 1 v. Madison Metro. Sch. Dist.*, 403 Wis. 2d 369, 379 (2022). Plaintiff West was just trying to understand the contours of the illegal job requirements before filing suit.

In final response, EUSD doubled-down, stating that Plaintiff West still had to comply with the "privacy policy" by using one set of pronouns in class and another set of pronouns when speaking to parents. ECF No. 242-3, pp.440-41. This did not eliminate the conflict, whether in a reasonable manner or not, so no "good faith" defense is available. *See* West MSJ Opp. Decl., ¶¶2-4; Albert Dep., 47:13-48:1;[4] *Am. Postal Workers Union*, 781 F.2d at 776 ("If the accommodation proposed by the employer fails to eliminate the employee's religious conflict, the employer must implement an alternate accommodation proposed by the employee").[5]

---

[4] The full deposition transcripts for John Albert and Trent Smith are available at ECF No. 247-20. The deposition transcript for Tracy Schmidt is available at ECF No. 247-19. The deposition transcript of Steve White is available at ECF No. 247-21.

[5] EUSD also stresses that it gave Plaintiff West a partial accommodation regarding how she was to use pronouns in class. ECF No. 242-1, pp.5:23-25, 7:12-14. But [a]n

**B. EUSD Has Not Established the Undue Hardship Defense**

EUSD's second argument is that it has established the "undue hardship" affirmative defense because it reasonably believed that accommodating Plaintiff West would violate the law. ECF No. 242-1, pp.11:18-13:9. Again, this argument requires quoting dicta out of context and misrepresenting the facts.

**1. Background on the Undue Hardship / Illegality Defense**

As stated, in the context of discrimination on the basis of religion under Title VII, an employer must either accommodate an employee's religious practice, or show that he cannot do so "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "Undue hardship is an affirmative defense." *Bolden-Hardge I*, 63 F.4th at 1224. Thus, to prevail on summary judgment, EUSD must show that "no reasonable jury could fail to find that the defense had been established." *Snell*, 107 F.3d at 746.

Courts sometimes state, as a general rule, that "an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate *federal* or *state* law." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) (federal requirement to provide SSN) (emphasis added). Crafty defense counsel can cite this statement to create a misleading impression that state law can be used to preempt federal law. It cannot. The rationale for the general rule differs for federal or state law. With respect to other *federal* laws, "[t]his conclusion is consistent with Title VII's text, which says nothing that might license an employer to disregard other federal statutes in the name of reasonably accommodating an employee's religious practices." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) (collecting similar SSN cases); *accord Berry v.*

employer does not fulfill its obligation to reasonably accommodate a religious belief when it is confronted with two religious objections and offers an accommodation which completely ignores one." *Baker v. The Home Depot*, 445 F.3d 541, 547 (2d Cir. 2006) (quoting *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994)); *accord Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1088 (6th Cir. 1987).

*Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (undue hardship through "danger of violations of the Establishment Clause").

With respect to *state* law, Title VII expressly preempts state law "which purports to require or permit the doing of any act which would be an unlawful employment practice under this title." *Rosenfeld v. S. Pac. Co.*, 444 F.2d 1219, 1226 (9th Cir. 1971) (quoting 42 U.S.C. § 2000e-7); *accord Bolden-Hardge I*, 63 F.4th at 1223. A case from long before *Groff*, applying the "de minimis" standard for an undue burden, held that an employer could meet the "de minimis" standard if required to "risk liability" for violating California OSHA standards. *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984) (per curiam). But "[w]here there is no indication of an actual threat of enforcement or liability for violating that state law … this sort of purported undue hardship" fails. *Bolden-Hardge I*, 63 F.4th at 1225.

## 2. Application of the Legal Principles

Here, EUSD argues summarily that its fear of violating state law provides a dispositive defense, stating: "EUSD could not accommodate this request as it would allow [West] to essentially 'out' a student, and thereby violate the law. Exhs. 8-9, 11." ECF No. 242-1, p.12:12-14. EUSD continues: "When determining what accommodations were feasible, EUSD Official-Capacity Defendants relied on the CDE to describe what the laws required. Exhibits 8-11." ECF No. 242-1, p.13:1-3. But EUSD never explains what specific "various laws" it was afraid of violating. EUSD merely cites the Shinoff Declaration and EUSD's exhibits.

Looking at those exhibits: EUSD's Exhibit 8 is the CDE's 2016 Legal Advisory on gender identity; Exhibit 9 is the CDE's 2016 FAQ page on gender identity; Exhibit 10 is Superintendent Luis Rankin-Ibarra's deposition stating the CDE Legal Advisory and FAQ page appear mandatory to him, and that EUSD generally relies on the CDE (but not that EUSD actually relied on the FAQ page in denying the religious accommodation); and Exhibit 11 is Assistant Superintendent John Albert's deposition stating that an accommodation could not be given because it "would violate other

laws," as stated in the TIPM memorandum. *See* ECF No. 242-3, pp.481-84.[6]

The TIPM memoranda for Plaintiff West is included in EUSD's Exhibit 4. *See* ECF No. 242-3, pp.425-30. The memo does not reference specific "laws"—merely state and federal guidance. *See* ECF No. 242-3, p.426; *see* Mirabelli MSJ Opp. Decl., ¶4 & Ex.R (guidance provided at accommodation meeting). But Mr. Shinoff's declaration provides the clarification. He wrote: "EUSD relied on the CDE for guidance on this issue and followed *state* law." ECF No. 242-2, p.3:6-12 (emphasis added).[7] However, during the November 15, 2022, religious accommodation meeting itself, EUSD stated that it believed the "Privacy Policy" was not state law, and only backed by the CDE's FAQ page. Mirabelli MSJ Opp. Decl., ¶¶3-4. And the CDE itself, throughout this litigation, has stressed that its FAQ page does not represent binding law. *See, e.g.*, ECF No. 25-1, p.12:13-22.

As stated above, in the normal course, an employer's fear of violating state law would be completely irrelevant because Title VII preempts conflicting state law. For example, in *Rosenfeld*, a woman sued after she was denied the role of "agent-telegrapher" which would require her to work over ten hours a day during peak

---

[6] The Court may consider depositions by treating them as declarations if they are "the equivalent of affidavits," i.e., "made on personal knowledge and set forth facts that were admissible in evidence." *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966 (9th Cir. 1981) (citing equivalent of modern Fed. R. Civ. P. 56(c)(4)). This requires the deponent either sign the deposition or be sworn. *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1509-10 (9th Cir. 1991). Here, EUSD submits neither signature pages nor swearing-in pages for the depositions of Ibarra or Albert. Thus, Plaintiff West objects to them as inadmissible.

[7] Plaintiff West objects to Paragraphs 12 and 13 of Mr. Shinoff's declaration for lack of personal knowledge and hearsay. *See, e.g.*, *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1024-25 (N.D. Cal. 2006); *Clark v. Cnty. of Tulare*, 755 F. Supp. 2d 1075, 1083-84 (E.D. Cal. 2010); *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 977 (C.D. Cal. 2006). Plaintiff West also objects to Dr. Albert's testimony on the basis of lack of personal knowledge because he testified to not remembering what occurred during Plaintiff West's religious accommodation meeting or recalling whether he ever reviewed the TIPM memo. *See* Albert Dep., 43:25-44:17, 48:10-49:4, 49:6-22.

season and lift more than fifty pounds. *Rosenfeld*, 444 F.2d at 1225. California labor law precluded employers from requiring women to do so. *Id.* (citing Cal. Lab. Code §§ 1251, 1350). But the Ninth Circuit held that these statutes were preempted, *id.* at 1226, and, a few years later, enjoined the California Division of Industrial Welfare from enforcing them. *Homemakers, Inc., of Los Angeles v. Cal. Div. of Indus. Welf.*, 509 F.2d 20, 22 (9th Cir. 1974).

More recently, Brianna Bolden-Hardge, a Jehovah's Witness, requested a Title VII religious accommodation from having to take the California loyalty oath if employed by the California State Controller. *Bolden-Hardge I*, 63 F.4th at 1223 (citing Cal. Const. art. XX, § 3). The Ninth Circuit held that "to exempt the Controller's Office from a federal accommodation requirement *solely* because the requested accommodation would violate state law would essentially permit states to legislate away any federal accommodation obligation, raising Supremacy Clause concerns." *Id.* at 1225; *see also Bolden-Hardge v. Off. of Cal. State Controller*, No. 2:20-cv-2081, 2025 WL 2495655, at *7 (E.D. Cal. Aug. 29, 2025) ("*Bolden-Hardge II*") (permanent injunction).

*Bhatia*—the one case that found an undue hardship through a feared violation of state law, fifty years before *Groff*—should be viewed as simply abrogated by *Groff*. But even if EUSD feared an enforcement action from the CDE for failing to follow the FAQ page, it submitted no evidence on that point. Dr. Rankins-Ibarra testified solely to his general understanding of how EUSD responds to CDE guidance (EUSD follows it), but offered no testimony specifically concerning Plaintiff West's religious accommodation request. *See* ECF No. 242-3, pp.467-72. That was handled by Dr. Albert, the Assistant Superintendent of Human Resources.

In the portion of Dr. Albert's testimony submitted by EUSD, he testified that EUSD believed it could not grant an accommodation that violated other laws—with no apparent understanding that state laws are preempted by federal laws, or any other nuance. *See* ECF No. 242-3, pp.481-84. This was reiterated in other portions of his

deposition testimony and his interrogatory responses. *See* Albert Dep., 41:1-20, 42:17-43:16, 44:22-46:9, 75:11-77:4. It was also confirmed by his lack of knowledge of the consequences of noncompliance and by his lack of any communication with the CDE to inquire what they would advise, despite serving as the head of human resources for an organization with thousands of employees. *See* Albert Dep., 60:11-61:4, 74:20-75:1.

EUSD actually denied a religious accommodation on the inexcusably mistaken belief that a supposed violation of state law would *necessarily* be an undue hardship under Title VII. As stated above, this is incorrect. *Bolden-Hardge I*, 63 F.4th at 1225; *Rosenfeld*, 444 F.2d at 1226. Indeed, EUSD had to choose its risk. When it denied Plaintiff West a religious accommodation, one court had already held Parental Exclusion Policies unconstitutional, *Ricard*, 2022 WL 1471372, and it is well-established that it is illegal for an employer to "retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute." Cal. Lab. Code § 1102.5(c). EUSD cannot try to justify its denial of a religious accommodation by cobbling together a *post hoc* explanation that the CDE may bring an enforcement action against it, or any similar explanation. The issue was forfeited. *Bolden-Hardge I*, 63 F.4th at 1226.

Moreover, in *Bolden-Hardge*, the Ninth Circuit cautioned against applying this rule to state agencies. As the Ninth Circuit explained:

> Although [a Supremacy Clause] concern is present in cases involving private employers arguing per se undue hardship under state law, it is heightened where the defendant is part of the very state whose law would be violated. The state could otherwise enact a law for the sole purpose of evading federal accommodation requirements…

*Bolden-Hardge I*, 63 F.4th at 1225. In its Answer to the Complaint, EUSD raises sovereign immunity on the basis that California school districts are arms of the state. *See* ECF No. 86, p.29:24-27. EUSD cannot have it both ways: EUSD cannot be an arm of the state for sovereign immunity purposes, but not an arm of the state for purposes of *Bolden-Hardge* and the Supremacy Clause.

## II. The Court Should Deny the Personal Capacity EUSD Defendants' Motion for Partial Summary Judgment on the Affirmative Defense of Qualified Immunity

The second part of EUSD's motion for partial summary judgment seeks adjudication of the issue of qualified immunity. ECF No. 242-1, pp.13-17. Plaintiffs Mirabelli and West also filed a cross-motion for partial summary judgment regarding qualified immunity, and thus incorporate that briefing by reference. ECF No. 247-1, pp.64:1-67:11. As a preliminary matter, all named EUSD-Defendants bring this motion: Mark Olson, Frank Huston, Joan Gardner, Doug Paulson, Zesty Harper, Luis Rankins-Ibarra, John Albert, Trent Smith, Tracy Schmidt, and Steve White. ECF No. 242-1, p.5:1-5. However, Olson, Huston, Gardner, Paulson, Harper, and Rankins-Ibarra—the Board and Superintendent—are sued in their *official-capacities* only. *See* ECF No. 133, Second Amend. Compl., pp.13:7-14:5. Thus, qualified immunity is not a defense they can raise. *Wright v. Beck*, 981 F.3d 719, 737 (9th Cir. 2020) ("Qualified immunity is, however, 'available only to government officials sued in their individual capacities' and is '*not* available to those sued only in their official capacities.'") (quoting *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 965 (9th Cir. 2010)).

In contrast, Albert, Smith, Schmidt, and White are sued in their personal capacities (or individual capacities) and thus may raise the defense of qualified immunity. *See* ECF No. 133, pp.14:6-15:5. For them, "[q]ualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) (quoting *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017)). "[I]n resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant (as viewed in a light most favorable to the plaintiff)." *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000).

### A. Background Legal Principles on Qualified Immunity

In their motion, Albert, Smith, Schmidt, and White cite many cases for the general rule that qualified immunity protects a personal-capacity defendant for

violating constitutional rights if he "could have reasonably believed that his particular conduct was lawful." ECF No. 242-1, p.14:11-13 (quoting *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)). Under this general principle, as stated in Plaintiffs' motion, qualified immunity can be overcome "in two ways: (1) by showing that there is clearly established law putting [officials] on notice that their conduct is unlawful; or (2) by showing that the [official's] conduct was a patently offensive violation of an existing right." *Beaver v. Federal Way*, 301 F. App'x 704, 705 (9th Cir. 2008) (cleaned up). *See* ECF No. 247-1, pp.64:18-23. Under either analysis, the official's "subjective beliefs" about legality "are irrelevant." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The second method deals with the "obvious" case. *Taylor v. Riojas*, 592 U.S. 7, 9 (2020). In that context, "the Supreme Court has also repeatedly stated that 'general statements of the law are not inherently incapable of giving fair and clear warning to [officials],' so long as 'pre-existing law' makes the 'unlawfulness of an action apparent.'" *Gay v. Cabinet for Health & Fam. Servs. Dep't*, No. 18-5285, 2019 WL 1338524, at *3 (6th Cir. Jan. 23, 2019) (brackets omitted) (quoting *White v. Pauly*, 580 U.S. 73, 80 (2017)). The Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002)); *see* Bailey D. Barnes, *The Obvious Violation Exception to Qualified Immunity: An Empirical Study*, 99 Wash. L. Rev. 725, 750-58 (2024). As explained by then-Judge Gorsuch:

> some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt.

*Guy v. Lorenzen*, 547 F. Supp. 3d 927, 944 (S.D. Cal. 2021) (quoting *Browder v. City*

*of Albuquerque*, 787 F.3d 1076, 1082-83 (10th Cir. 2015) (Gorsuch, J.)).

This can be the case even in the face of contrary state law. "Although state officials who rely on statutes are generally presumed to act reasonably, an official may nevertheless be liable for enforcing a statute that is 'patently violative of fundamental constitutional principles.'" *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994)). Thus, "individuals cannot always be held immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority." *Grossman*, 33 F.3d at 1209; *see, e.g.*, *Guillemard-Ginorio v. Contreras-Gómez*, 490 F.3d 31, 40-41 (1st Cir. 2007) (denying qualified immunity despite statute allowing officials to suspend a professional license without hearing, as violative of the Due Process Clause); *Leonard v. Robinson*, 477 F.3d 347, 359, 361 (6th Cir. 2007) (denying qualified immunity despite statute criminalizing blasphemy and cursing in front of children, as violative of Free Speech Clause); *Lawrence v. Reed*, 406 F.3d 1224, 1233 (10th Cir. 2005) (denying qualified immunity despite statute allowing seizure of derelict vehicle on one's own property without a hearing, as violative of the Due Process Clause); *Aubin v. Columbia Cas. Co.*, 272 F. Supp. 3d 828, 839 (M.D. La. 2017) ("[N]o reasonable officer could rely on Louisiana's public intimidation statute to arrest a person who threatens to have them fired.").

## B. Argument Regarding Qualified Immunity

Here, the EUSD Personal-Capacity Defendants argue that they should be protected by qualified immunity because "[t]he legal issues surrounding a transgender/gender nonbinary student's [sic] notification to his or her parents are complex issues that states and schools have attempted to develop and address," and "[t]he Constitutional issues surrounding gender-identity privacy and First Amendment rights are so new and constantly evolving, [to] the degree that these issues are still being litigated throughout the courts." ECF No. 242-1, p.15:8-20.

Plaintiffs do not contend that a "scavenger hunt" will reveal a precedential

case on all fours with the present one. When Plaintiffs' request for a religious accommodation was denied—February and March 2023—only a few cases addressed nearly identical situations, and none from California or the Ninth Circuit. *See Ricard v. Geary Cnty. Unified Sch. Dist. 475*, No. 5:22-cv-4015, 2022 WL 1471372 (D. Kan. May 9, 2022); *Doe 1 v. Madison Metro. Sch. Dist.*, 976 N.W.2d 584, 589-90 (Wis. July 8, 2022); *Tatel v. Mt. Lebanon Sch. Dist.*, 637 F. Supp. 3d 295 (W.D. Pa. Oct. 27, 2022). But the unconstitutionality of California's Parental Exclusion Policies should have been patently obvious to Albert, Smith, Schmidt, and White, such that it would be illegal to force Plaintiffs Mirabelli and West to comply with them. *Cf.* Cal. Educ. Code § 51101 (parents' bill of rights).

## 1. Interfering with the Parent / Child Relationship is Patently Unconstitutional

Numerous cases hold that officials are not protected by qualified immunity when they remove a child from his parent's custody without either a warrant or a reasonable belief that the child will suffer *imminent* harm. The rule is simple: removal of parental rights requires either a judicial imprimatur or exigency. For example, in *Demaree*, A.J. and Lisa Demaree had taken nude pictures of their three children following bath-time (aged 1, 4, and 5) and were being investigated for child exploitation (the parents were never charged). The children were removed from the parents' custody pending the investigation despite no warrant or evidence of imminent harm. This Court held that qualified immunity did not protect the social workers. *Demaree v. Pederson*, 887 F.3d 870, 881-84 (9th Cir. 2018).

In *Schulkers*, Ms. Holly Schulkers tested positive for opiates while giving birth to her fifth child. She had no history of drug use and denied using opiates. Even though the test later proved to be a false positive (caused by cough medicine), a social worker forced Holly to sign a document limiting her ability to be alone with any of her children, under threat that her children would be removed from her custody if she did not sign. In finding that qualified immunity did not apply, the Sixth Circuit held that "Plaintiffs'

right 'to make decisions concerning the care, custody, and control of [their] children' without arbitrary government interference was clearly established at the time of Defendants' conduct." *Schulkers v. Kammer*, 955 F.3d 520, 540-42 (6th Cir. 2020) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). Importantly, the Court refused to look at the granular facts regarding the limitation imposed on Holly's ability to be alone with her children, instead relying on the obviousness standard and focusing on the rule that absent evidence of unfitness, there is "no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id*. at 542 (quoting *Troxel*, 530 U.S. at 68-69).

In *Vaughn*, Kevin and Margaret Vaughn had two children, both of whom were taken from them by the state because of their alleged inability to care for them. After Margaret gave birth to their second child, a social worker told her that she and her husband could regain custody of their children if she agreed to tubal ligation sterilization, which she underwent. But then the state sought permanent termination of their parental rights. In denying qualified immunity under the obviousness standard, the Eighth Circuit held that "any reasonable social worker—indeed, any reasonable person, social worker or not—would have known that a sterilization is compelled, not voluntary, if it is consented to under the coercive threat of losing one's children, and hence unconstitutional." *Vaughn v. Ruoff*, 253 F.3d 1124, 1127-30 (8th Cir. 2001).

Lastly, in *Barrett*, Patrick Barrett took a long-term substitute teaching position at Wells Elementary School, teaching first grade. As a devout Catholic, Patrick's son attended private Catholic school. The next year, when applying for a full-time position, Patrick was told by the Wells Elementary principal that the human resources assistant superintendent would not hire him unless his son attended public schools, and he was then repeatedly passed over for a full-time position. Patrick was eventually fired from his substitute position for refusing to enroll his son in public school. Again relying on the obviousness standard, the Sixth Circuit held that "it is clearly established that

parents have a fundamental right to direct the education of their children," and clearly established that it is unconstitutional to not renew "a teaching contract on the basis of a teacher's exercise of a constitutionally protected interest." *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 968-70, 972-74 (6th Cir. 2004).

In each of the above cases, the government official's conduct was specifically unprecedented, subjectively reasonable to the officials, yet obviously unconstitutional. The same is true here. As stated in Plaintiffs' own motion for summary judgment, every American has the right "to marry, establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), which is "one of the basic civil rights of man." *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942). "[P]arents possess a natural and inherent right to the nurture, control, and tutorship of their offspring, that they may be brought up according to the parents' conception of what is right and just, decent, and respectable, and manly and noble in life." *Soc'y of Sisters v. Pierce*, 296 F. 928, 936-38 (D. Or. 1924), *aff'd*, 268 U.S. 510 (1925). *See* ECF No. 247-1, pp.30-40.

This right is older than our 250-year-old nation, *Hall v. Hall*, 3 Atk. 721 (Ch. 1749), and was reiterated just this past term. *Mahmoud v. Taylor*, 606 U.S. ___, 145 S. Ct. 2332 (2025). As explained by a founding-era treatise:

> The natural relations of man are, parent and child, brother and sister, persons in the various degrees of consanguinity and friendship.
>
> The relation of parent and child is the gravest of all, and the most solemn duties result from it—the observance of which lays the foundation of human happiness,—and the violation of which begets the various species of human misery.
>
> Parental authority and filial piety promote the nurture and education of the child, and the heartfelt joy of the parent;—by the first, the intemperance of youth is justly restrained, his defective inexperience is supplied, and his excrescent warmth moderated—by the latter the cares of life are relieved, and the bitterness of old age sweetened;—and as the child advances in life, the awful distance at which he has been wisely kept diminishes, and this relation is mellowed into the purest, and most endearing friendship.
>
> Here is a source of human happiness!—what wretch dare disturb it!

John Alleyne, *The Legal Degrees of Marriage Stated and Considered* (London, 1774). What wretch indeed.

The "wretch" here, of course, is the California Department of Education, who has doubled down in its opposition to parental rights. *See* Jonna MSJ Opp. Decl., Exs.P-R. But "as historical events such as the Holocaust and the My Lai massacre demonstrate, individuals cannot always be held immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). It is inevitable that California will look back on robbing gender-confused minors of their right to a family and children as no less egregious than the sterilization of Carrie Buck. *See Buck v. Bell*, 274 U.S. 200 (1927). Albert, Smith, Schmidt, and White should not be to hide behind the argument that they were just following orders.

**2. The Actions of Albert, Schmidt, Smith, and White Warrant Damages**

As stated, qualified immunity is analyzed based on the actions of each specific defendant, *Cunningham*, 229 F.3d at 1287, which EUSD oddly ignored. *See* ECF No. 242-1, pp.13-18. In any event, during the relevant time, Dr. John Albert was EUSD's Assistant Superintendent of Human Resources. Albert Dep., 13:11-15. Directors Tracy Schmidt and Trent Smith oversaw student support services for EUSD, with Trent Smith replacing Tracy Schmidt in March/April 2022. Schmidt Dep., 11:9-24; Smith Dep., 9:10-11:3. And Steve White has been the Principal of Rincon Middle School for the duration of this suit. White Dep., 10:14-11:7.

Tracy Schmidt was named personally in the suit for her direct leadership role in promoting the Parental Exclusion Policies that triggered this action and delivering the February 2022 slideshow presentation. *See* Mirabelli MSJ Decl., ¶¶16-17 & Ex.E; West MSJ Decl., ¶¶11-12. John Albert, Trent Smith, and Steve White were named due to their decisionmaking roles in Plaintiffs Mirabelli's and West's request for a religious accommodation, and their denial of any exemption for them. Mirabelli MSJ Decl., ¶¶30-39 & Ex.J; West MSJ Decl., ¶¶16-22 & Ex.A.

Each of these Defendants enforced Parental Exclusion Policies without reservation and denied Plaintiffs Mirabelli's and West's request for a religious accommodation. *See* Albert Dep., 21:25-22:16, 40:10-17, 112:18-113:21; Smith Dep., 12:16-14:17, 20:25-22:16, 31:10-32:20, 43:16-49:7, 60:12-69:12, 95:13-20; Schmidt Dep., 52:24-55:6, 66:22-74:16, 95:1-13; White Dep., 20:20-23, 26:14-28:9. For his part, Principal White testified that he was solely an "observer" in the religious accommodation meetings that were led by Assistant Superintendent Albert and Director Smith. White Dep., 31:16-32:12, 38:21-25. But none of them expressed any concerns about the unconstitutionality of Parental Exclusion Policies.

For example, Dr. Albert testified as follows:

> Q. … ·So this policy says that it's inappropriate employee conduct to be dishonest with parents—with students, parents, or members of the public, including, but not limited to, falsifying information. So if you have a teacher who is using a child's legal name with parents, but uses the child's preferred name at school, would that violate this policy?
> A. No.
> Q. Why is that?
> A. Because it's consistent with the legislation and the law.
> Q. Would you—
> A. And, for example, Paul, does—do you have a nickname, for example, Paul? Did anyone in college call you a different name? Is it dishonest to have a nickname and a different name? I wouldn't think so.

Albert Dep., 21:25-22:16. The arrogant obtuseness of analogizing a gender transition to a "nickname" pervaded the entirety of Dr. Albert's testimony, and colors the arrogant and threatening manner in which he conducted the religious accommodation meetings. Mirabelli MSJ Opp. Decl., ¶¶3-5. No parent would actually view their child's gender transition as similar to using a nickname—but if Dr. Albert chooses to take that approach with his own child, he can. What he cannot do is impose that approach on other people's children:

> Some parents and judges will not care if their child is physically disciplined by a third person; some parents and judges will not care if a third person teaches the child a religion inconsistent with the parents'

religion; and some judges and parents will not care if the child is exposed to or taught racist or sexist beliefs. But many parents and judges will care, and, between the two, the parents should be the ones to choose whether to expose their children to certain people or ideas.

*In re Custody of Smith*, 137 Wash. 2d 1, 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57 (2000).

Directors Schmidt and Smith oversaw Student Support Services for EUSD during the relevant time period, with Trent Smith replacing Tracy Schmidt in Spring 2022. Ms. Schmidt authored and delivered the slideshow presentation that started this lawsuit. Schmidt Dep., 47:14-48:12 & Ex. I-4. In response to questioning about *why* parents could not be informed about their child's gender transition, all she could say was that it was "the policy." Schmidt Dep., 53:15-5:6. When asked if this was for student safety, she again stated simply "our role and my role was to follow the policy that stated that student consent was necessary"—showing no agency at all. Schmidt Dep., 95:1-13.

After Trent Smith replaced her, he sent the alarming email which announced that "At this time, parents/guardians will not receive it," referring to Ms. Schmidt's slideshow presentation. Smith Dep., 38:7-39:8 & Ex. J-62.[8] He further testified: Q. Do you have an opinion, or did you have an opinion at the time, I should say, about whether parents should be notified about this policy? A. I don't think that—I don't think I viewed that as, really, the concerning issue." Smith Dep., 46:10-14. In contrast, under dozens of Supreme Court cases, this is quintessentially "the concerning issue."

Schmidt, Smith, and White were also shown the alarming email from Rincon Middle School counselor Gloria Torres identifying six children, their preferred names that Plaintiffs Mirabelli and West were required to use in class, and their legal names

---

[8] Mr. Smith testified erroneously that information about Parental Exclusion Policies were sent out in the annual package at the beginning of each year, where parents have to check a box on the internet. They were not. *See* Smith Dep., 38:9-42:5; Apodaca Dep., 90:18-92:5, 104:2-11.

that Plaintiffs were required to use when calling home. ECF No. 21. Tracy Schmidt's response? "Again, the policy states that their status cannot be shared without consent." Schmidt Dep., 66:22-74:16. Trent Smith's response? Just "[s]urprised that it was sent in an email"—no other reaction. Smith Dep., 60:12-62:9. Steve White's response: "[T]he student's privacy would need to be maintained." White Dep., 25:13-28:9. The exception to qualified immunity for obviously unconstitutional activity "does not only pertain to situations involving visceral, gruesome facts," *see* Barnes, *supra*, 99 Wash. L. Rev. at 750-51, but here the fact that Albert, Schmidt, Smith and White do have charge of thousands of children—and see no problem threatening and intimidating teachers into deceiving parents—is indeed viscerally gruesome.

\* \* \*

This case has always been an extremely apt example of "agency smurfing"—or the government "breaking up a policy goal into silos" in the hope of "avoid[ing] judicial scrutiny." *Texas v. U.S. Dep't of Health & Hum. Servs.*, 681 F. Supp. 3d 665, 671, 675 (W.D. Tex. 2023). Through its supposedly non-binding FAQ page, the CDE spread Parental Exclusion Policies across the state, placing teachers like Elizabeth Mirabelli and Lori Ann West in an impossible situation. When finally challenged, every defendant in this action pointed the finger at each other, stating that ultimate responsibility rested with the "silo" being carried by that party. But "this isn't *Who's on First*, Defendants must move past pointing fingers at each other like the spidermen [from the meme]." *Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200, 1227 (N.D. Fla. 2022). The finger pointing never would have ended had Mirabelli and West not stood up—Albert, Schmidt, Smith and White should have also.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny EUSD's motion for partial summary judgment in full.

/ / /

/ / /

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: September 8, 2025     By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-VET

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

1.   1. PLAINTIFFS' OPPOSITION TO EUSD'S MOTION FOR PARTIAL SUMMARY JUDGMENT / SUMMARY ADJUDICATION;
2.   Declaration of Plaintiff Elizabeth Mirabelli in Support of Plaintiffs' Opposition to EUSD's Motion for Partial Summary Judgment / Summary Adjudication;
3.   Declaration of Plaintiff Lori Ann West in Support of Plaintiffs' Opposition to EUSD's Motion for Partial Summary Judgment / Summary Adjudication;
4.   Declaration of Paul M. Jonna, Esq., in Support of Plaintiffs' Renewed Motion for (1) Summary Judgment on Prospective Relief Claims; (2) Partial Summary Judgment re Liability on Damages Claims; (3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and (4) Entry of a Class-Wide Permanent Injunction or, in the Alternative, a Class-Wide Preliminary Injunction; and
5.   PLAINTIFFS' EVIDENTIARY OBJECTIONS TO EUSD'S MOTION FOR PARTIAL SUMMARY JUDGMENT / SUMMARY ADJUDICATION.

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
California Department of Justice
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for CDE Defendants**

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
2727 Camino Del Rio South, Suite 300
San Diego, CA  92108
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

__ X __   **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__ X __   **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.  Executed on September 8, 2025, at Rancho Santa Fe, California.

Kathy Denworth