ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
JENNIFER A. BUNSHOFT (SBN 197306)
KEVIN L. QUADE (SBN 285197)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3377
 Fax:  (415) 703-5480
 E-mail:  Jennifer.Bunshoft@doj.ca.gov
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**DECLARATION OF RICHARD BARRERA IN SUPPORT OF STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       September 29, 2025<br>Time:      10:30 a.m.<br>Dept:      5A<br>Judge:     The Honorable Roger T. Benitez<br>Trial Date:  Not Set<br>Action Filed:      4/27/2023 |

I, Richard Barrera declare:

1.    I am the Senior Policy Advisor in the Superintendent's Initiatives Office at the California Department of Education (CDE).  I am familiar with the proceedings in this matter.  If called as a witness, I could and would testify competently thereto.

2.    Prior to January 1, 2025, CDE maintained a Frequently Asked Questions (FAQ) webpage titled "Frequently Asked Questions: School Success and

1

Opportunity Act (Assembly Bill 1266)" related to Assembly Bill 1266, which had been enacted in 2013. A true and correct copy of the FAQ is attached hereto as Exhibit 1.

3. Prior to January 1, 2025, CDE also maintained a related "Legal Advisory re: application of California's antidiscrimination statutes to transgender youth in schools." A true and correct copy of the Legal Advisory is attached hereto as Exhibit 2.

4. The FAQ and Legal Advisory were intended as guidance for school districts, and were not binding on them.

5. In July 2024, the Legislature enacted Assembly Bill 1955 (AB 1955), known as the "Support Academic Futures and Equality for Today's Youth (SAFETY) Act," which became effective on January 1, 2025.

6. On January 2, 2025, as a result of the enactment of AB 1955, CDE removed both the FAQ and Legal Advisory from its website in order to align CDE's guidance with new state laws, and replaced them with new guidance, titled "Protections for LGBTQ+ Students: AB 1955."

7. CDE published the new guidance on its website at: https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp. A true and correct copy of that current guidance is attached hereto as Exhibit 3.

8. The timing of the replacement guidance was based on the January 1, 2025, effective date of the new legislation and was undertaken as part of CDE's routine process for updating guidance materials when legislation is enacted.

9. The new legislation directed CDE to update its existing resources to address AB 1955. Specifically, AB 1955 added Education Code section 217, which provides:

> (a)(1) The department shall develop resources, or, as appropriate, update existing resources, for supports and community resources for the support of parents, guardians, and families of lesbian, gay, bisexual, transgender, queer, and questioning (LGBTQ) pupils and

strategies to increase support for LGBTQ pupils and thereby improve overall school and community climate. The resources shall be designed for use in schools operated by a school district or county office of education and charter schools serving pupils in grades 7 to 12, inclusive.

(2) The department shall develop the supports and community resources for parents, guardians, and families of LGBTQ pupils in collaboration with parents, guardians, and families of, including, but not limited to, LGBTQ pupils.

(b) The department shall periodically update the supports and community resources for the support of parents, guardians, and families of LGBTQ pupils to reflect changes in law.

10. The guidance states that it is "non-binding" and reiterates that school districts must comply with statutes and regulations.

11. The guidance also explicitly states that it "replaces (1) Frequently Asked Questions: School Success and Opportunity Act (Assembly Bill 1266) and (2) Legal Advisory re: application of California's antidiscrimination statutes to transgender youth in schools."

12. The guidance further explains that AB 1955 bans school districts from adopting "forced outing" policies that require staff to disclose information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent unless otherwise required by state or federal law, but clarifies that "AB 1955 does not mandate non-disclosure."

13. On January 2, 2025, via email, CDE notified all school district and county superintendents and charter school administrators of the posting of the new guidance, through a communication titled New Guidance: AB 1955. A true and correct copy of that communication is attached hereto as Exhibit 4.

14. CDE collects information through its California Longitudinal Pupil Achievement Data System (CALPADS) regarding, among other things, the number of public school students and teachers in the State, and the number of school districts. Based on CALPADS submissions in the 2024-25 school year, there were approximately 1,000 school districts in the State with over 5.8 million students.

3

Based on data from the 2023-2024 school year, there were nearly 286,000 teachers with classroom-based, teaching assignments.  These data are publicly available on the CDE website at https://www.cde.ca.gov/ds/ad/ceffingertipfacts.asp.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in San Diego, California on September __, 2025.


By: _Richard Barrera_____

Richard Barrera

Declaration of Richard Barrera iso State Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (3:23-cv-00768-BEN-VET)

## TABLE OF CONTENTS

| Exh. No. | Description | Page Numbers |
|---|---|---|
| 1 | Frequently Asked Questions: School Success and Opportunity Act (Assembly Bill 1266) (FAQ) | 001 - 012 |
| 2 | Legal Advisory re: application of California's antidiscrimination statutes to transgender youth in schools (Legal Advisory) | 013 - 014 |
| 3 | CDE guidance: Protections for LGBTQ+ Students: AB 1955 | 015 - 021 |
| 4 | January 2, 2025 CDE communication: New Guidance: AB 1955 | 022 |

EXHIBIT 1



Home  /  Resources  /  Department Information  /  Equal Opportunity & Access

# Frequently Asked Questions

School Success and Opportunity Act (Assembly Bill 1266) Frequently Asked Questions.

Consistent with our mission to provide a world-class education for all students, from early childhood to adulthood, the California Department of Education issues the following Frequently Asked Questions (FAQs) in an effort to (a) foster an educational environment that is safe and free from discrimination for all students, regardless of sex, sexual orientation, gender identity, or gender expression, and (b) assist school districts with understanding and implementing policy changes related to AB 1266 and transgender student privacy, facility use, and participation in school athletic competitions.

These FAQs are provided to promote the goals of reducing the stigmatization of and improving the educational integration of transgender and gender nonconforming students, maintaining the privacy of all students, and supporting healthy communication between educators, students, and parents to further the successful educational development and well-being of every student.

Expand All | Collapse All

1. What is Assembly Bill (AB) 1266?

   AB 1266, also known as the "School Success and Opportunity Act," was introduced by Assemblyman Tom Ammiano on February 22, 2013. It requires that pupils be permitted to participate in sex-segregated school programs, activities, and use facilities consistent with their gender identity, without respect to the gender listed in a pupil's records. AB 1266 was approved by Governor Brown on August 12, 2013.

   According to Assemblyman Ammiano, "This bill is needed to ensure that transgender students are protected and have the same opportunities to participate and succeed as all other students." "AB 1266 clarifies California's student nondiscrimination laws by specifying that all students in K-12 schools must be permitted to participate in school programs, activities, and facilities in accordance with the student's gender identity."

   As part of the analysis of AB 1266, Assemblyman Ammiano also stated, "Athletics and physical education classes, which are often segregated by sex, provide numerous well-documented positive effects for a student's physical, social, and emotional development. Playing sports can provide student athletes with important lessons about self-discipline, teamwork, success, and failure, as well as the joy and shared excitement that being a

001

member of a sports team can bring. When transgender students are denied the opportunity to participate in physical education classes in a manner consistent with their gender identity, they miss out on these important benefits and suffer from stigmatization and isolation. In addition, in many cases, students who are transgender are unable to get the credits they need to graduate on time when, for example, they do not have a place to get ready for gym class."

2. <u>When did this law go into effect?</u>

AB 1266 became a provision within California Education Code, Section 221.5(f), on January 1, 2014. It is important to note that prior to the enactment of AB 1266, both state and federal law have prohibited gender-based discrimination for some time.

**Federal Protection**:

Title IX prohibits sexual harassment and discrimination based on gender or sex stereotypes in every jurisdiction. While Title IX does not specifically use the terms "transgender" or "gender identity or expression," courts have held that harassment and other discrimination against transgender and gender nonconforming people constitutes sex discrimination. This position has also been supported by the U.S. Department of Education. These rights were clarified in the October 26, 2010, "Dear Colleague Letter" and the April 29, 2014, guidance issued by the U.S. Department of Education, Office for Civil Rights, described in the "Recent Developments and Resources" section at the end of this document.

**California Law**:

It is the policy of the State of California to afford all persons in public schools, regardless of their disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code, equal rights and opportunities in the educational institutions of the state. (Education Code Section 200.)

No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid. (Education Code Section 220.)

3. <u>What specifically does AB 1266 provide?</u>

Pre-existing state law prohibits public schools from discriminating on the basis of several

002

characteristics, including sex, sexual orientation, and gender identity. Pre-existing state law also requires that participation in a particular physical education activity or sport, if required of pupils of one sex, be available to pupils of each sex.  AB 1266 requires a pupil be permitted to participate in sex-segregated school programs, activities, and facilities including athletic teams and competitions, consistent with his or her gender identity, regardless of the gender listed on the pupil's records.

As amended, Education Code Section 221.5(f) provides that "a pupil shall be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed on the pupil's records."

4. <u>How should a school district, teacher, school administrator or other employee define gender, transgender, or gender identity?</u>

There are a number of developing terms used to describe transgender characteristics and experiences, which may differ based on region, age, culture, or other factors. Many of these terms are not currently defined by law. However, several common definitions have been used by the courts, the U.S. Department of Education, and a number of groups with educational equity expertise, including the Gay, Lesbian, Straight, Education Network, and the California School Boards Association. Any definitions provided in these materials are provided to facilitate the process of providing safe and nondiscriminatory learning environments and are not provided for the purpose of labeling any students.

003

"Gender" means sex, and includes a person's gender identity and gender expression. "Gender expression" means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth. (*Education Code* Section 210.7.)

"Gender identity" refers to a person's gender-related identity, appearance or behavior whether or not different from that traditionally associated with the person's physiology or assigned sex at birth.

"Gender expression" refers to external cues that one uses to represent or communicate one's gender to others, such as behavior, clothing, hairstyles, activities, voice, mannerisms, or body characteristics.

"Transgender" describes people whose gender identity is different from that traditionally associated with their assigned sex at birth. "Transgender boy" and "transgender male" refer to an individual assigned the female sex at birth who has a male gender identity. "Transgender girl" and "transgender female" refer to an individual assigned the male sex at birth who has a female gender identity. An individual can express or assert a transgender gender identity in a variety of ways, which may but do not always include specific medical treatments or procedures. Medical treatments or procedures are not considered a prerequisite for one's recognition as transgender.

"Gender nonconformity" refers to one's gender expression, gender characteristics, or gender identity that does not conform to gender stereotypes "typically" associated with one's legal sex assigned at birth, such as "feminine" boys, "masculine" girls and those who are perceived as androgynous. Sexual orientation is not the same as gender identity. Not all transgender youth identify as gay, lesbian or bisexual, and not all gay, lesbian and bisexual youth display gender-nonconforming characteristics.

5. <u>How can a teacher or school administrator determine whether a student is transgender or not?</u>

The first and best option is always to engage in an open dialogue with the student and the student's parent or parents if applicable (but see FAQs 6 and 7). Gender identity is a deeply rooted element of a person's identity. Therefore, school districts should accept and respect a student's assertion of their gender identity where the student expresses that identity at school or where there is other evidence that this is a sincerely held part of the student's core identity. Some examples of evidence that the student's asserted gender identity is sincerely held could include letters from family members or healthcare providers, photographs of the student at public events or family gatherings, or letters from

004

community members such as clergy.

If a student meets one or more of those requirements, a school may not question the student's assertion of their gender identity except in the rare circumstance where school personnel have a credible basis for believing that the student is making that assertion for some improper purpose. The fact that a student may express or present their gender identity in different ways in different contexts does not, by itself, undermine a student's assertion of their gender identity.

A school cannot require a student to provide any particular type of diagnosis, proof of medical treatment, or meet an age requirement as a condition to receiving the protections afforded under California's antidiscrimination statutes. Similarly, there is no threshold step for social transition that any student must meet in order to have his or her gender identity recognized and respected by a school.

6. May a student's gender identity be shared with the student's parents, other students, or members of the public?

A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home. Revealing a student's gender identity or expression to others may compromise the student's safety. Thus, preserving a student's privacy is of the utmost importance. The right of transgender students to keep their transgender status private is grounded in California's antidiscrimination laws as well as federal and state laws.  Disclosing that a student is transgender without the student's permission may violate California's antidiscrimination law by increasing the student's vulnerability to harassment and may violate the student's right to privacy.

- A. Public Records Act requests - The Education Code requires that schools keep student records private. Private information such as transgender status or gender identity falls within this code requirement and should not be released. (Education Code Section 49060.)

- B. Family Educational and Privacy Rights (FERPA) - FERPA is federal law that protects the privacy of students' education records. FERPA provides that schools may only disclose information in school records with written permission from a student's parents or from the student after the student reaches the age of 18. (20 U.S.C. Section 1232g.) This includes any "information that . . . would allow a reasonable person in the school community . . . to identify the student with reasonable certainty." (34 C.F.R. Section 99.3.)

- C. California Constitution - Minors enjoy a right to privacy under Article I, Section I of the California Constitution that is enforceable against private parties and government

005

officials. The right to privacy encompasses the right to non-disclosure (autonomy privacy) as well as in the collection and dissemination of personal information such as medical records and gender identity (informational privacy).

Even when information is part of a student's records and therefore covered by FERPA, the law provides several exceptions that permit appropriate communications under circumstances in which the student or others may be at risk of harm. Transgender or gender nonconforming students are often subject to stressors which can place them at risk of self-harm. FERPA expressly permits the disclosure of information from a student's records "…to appropriate parties in connection with an emergency if knowledge of the information is necessary to protect the health or safety of the student or other individuals." (34 C.F.R. Section 99.36(a).) "If the educational agency or institution determines that there is an articulable and significant threat to the health or safety of a student or other individuals, it may disclose information from education records to any person whose knowledge of the information is necessary to protect the health or safety of the student or other individuals." *(Id.* Section 99.36(c).)

Moreover, although FERPA restricts disclosures of information obtained from a student's records, it was never intended to act as a complete prohibition on all communications. One threshold point that is often overlooked is that FERPA limits only the disclosure of records and information from records about a student. It does not limit disclosure or discussion of personal observations.

In other words, if a school employee develops a concern about a student based on the employee's observations of or personal interactions with the student, the employee may disclose that concern to anyone without violating, or even implicating, FERPA. Of course, in most cases, the initial disclosure should be made to professionals trained to evaluate and handle such concerns, such as school student health or welfare personnel, who can then determine whether further and broader disclosures are appropriate.

7. <u>What steps should a school or school district take to protect a transgender or gender nonconforming student's right to privacy?</u>

To prevent accidental disclosure of a student's transgender status, it is strongly recommended that schools keep records that reflect a transgender student's birth name and assigned sex (e.g., copy of the birth certificate) apart from the student's school records. Schools should consider placing physical documents in a locked file cabinet in the principal's or nurse's office. Alternatively, schools could indicate in the student's records that the necessary identity documents have been reviewed and accepted without retaining the documents themselves. Furthermore, schools should implement similar safeguards to protect against disclosure of information contained in electronic records.

006

Pursuant to the above protections, schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents. In those very rare circumstances where a school believes there is a specific and compelling "need to know," the school should inform the student that the school intends to disclose the student's transgender status, giving the student the opportunity to make that disclosure her or himself. Additionally, schools must take measures to ensure that any disclosure is made in a way that reduces or eliminates the risk of re-disclosure and protects the transgender student from harassment and discrimination. Those measures could include providing counseling to the student and the student's family to facilitate the family's acceptance and support of the student's transgender status. Schools are not permitted to disclose private student information to other students or the parents of those students.

A transgender student's right to privacy does not restrict a student's right to openly discuss and express their gender identity or to decide when or with whom to share private information. A student does not waive his or her right to privacy by selectively sharing this information with others.

8. <u>What is a school or school district's obligation when a student's stated gender identity is different than the student's gender marker in the school's or district's official records?</u>

A school district is required to maintain a mandatory permanent student record which includes the legal name of the student and the student's gender. If and when a school district receives documentation that such legal name or gender has been changed, the district must update the student's official record accordingly.

If the school district has not received documentation supporting a legal name or gender change, the school should nonetheless update all unofficial school records (e.g. attendance sheets, school IDs, report cards) to reflect the student's name and gender marker that is consistent with the student's gender identity. This is critical in order to avoid unintentionally revealing the student's transgender status to others in violation of the student's privacy rights, as discussed above in section 6.

If a student so chooses, district personnel shall be required to address the student by a name and the pronouns consistent with the student's gender identity, without the necessity of legal documentation or a change to the student's official district record. The student's age is not a factor. For example, children as early as age two are expressing a different gender identity. It is strongly suggested that teachers privately ask transgender or gender nonconforming students at the beginning of the school year how they want to be addressed in class, in correspondence to the home, or at conferences with the student's

007

parents.

In addition to preserving a transgender student's privacy, referring to a transgender student by the student's chosen name and pronouns fosters a safe, supportive and inclusive learning environment. To ensure that transgender students have equal access to the programs and activities provided by the school, all members of the school community must use a transgender student's chosen name and pronouns. Schools should also implement safeguards to reduce the possibility of inadvertent slips or mistakes, particularly among temporary personnel such as substitute teachers.

If a member of the school community intentionally uses a student's incorrect name and pronoun, or persistently refuses to respect a student's chosen name and pronouns, that conduct should be treated as harassment. That type of harassment can create a hostile learning environment, violate the transgender student's privacy rights, and increase that student's risk for harassment by other members of the school community. Examples of this type of harassment include a teacher consistently using the student's incorrect name when displaying the student's work in the classroom, or a transgender student's peers referring to the student by the student's birth name during class, but would not include unintentional or sporadic occurrences. Depending on the circumstances, the school's failure to address known incidents of that type of harassment may violate California's antidiscrimination laws.

9. <u>How does a school or school district determine the appropriate facilities, programs, and activities for transgender students?</u>

A school may maintain separate restroom and locker room facilities for male and female students. However, students shall have access to the restroom and locker room that corresponds to their gender identity asserted at school. As an alternative, a "gender neutral" restroom or private changing area may be used by any student who desires increased privacy, regardless of the underlying reason. The use of such a "gender neutral" restroom or private changing area shall be a matter of choice for a student and no student shall be compelled to use such restroom or changing area.

If there is a reason or request for increased privacy and safety, regardless of the underlying reason, any student may be provided access to a reasonable alternative locker room such as:

- A. Use of a private area in the public area of the locker room facility (i.e., a nearby restroom stall with a door, an area separated by a curtain, or a P.E. instructor's office in the locker room).

- B. A separate changing schedule (either utilizing the locker room before or after the

008

Case 3:23-cv-00768-BAS-VET     Document 256-5     Filed 09/08/25     PageID.14912
Page 15 of 32

other students).

- C. Use of a nearby private area (i.e., a nearby restroom or a health office restroom). It should be emphasized that any alternative arrangement should be provided in a way that keeps the student's gender identity confidential.

Schools cannot, however, require a transgender student to use those alternatives. Requiring a transgender student to be singled out by using separate facilities is not only a denial of equal access, it also may violate the student's right to privacy by disclosing the student's transgender status or causing others to question why the student is being treated differently.

Some students (or parents) may feel uncomfortable with a transgender student using the same sex-segregated restroom or locker room. This discomfort is not a reason to deny access to the transgender student. School administrators and counseling staff should work with students and parents to address the discomfort and to foster understanding of gender identity, to create a school culture that respects and values all students.

10. How should a school or district determine the appropriate placement for transgender students related to sports and physical education classes?

Transgender students are entitled to and must be provided the same opportunities as all other students to participate in physical education and sports consistent with their gender identity. Participation in competitive athletic activities and contact sports are to be addressed on a case-by-case basis. For additional guidance, the California Interscholastic Federation issued new bylaws in 2013, which provide a detailed process for gender identity participation in interscholastic sports. (See, Recent Developments section below.)

11. May a school district or school enforce a gender-based dress code?

Nondiscriminatory gender segregated dress codes may be enforced by a school or school district pursuant to district policy. Students shall have the right to dress in accordance with their gender identity, within the constraints of the dress codes adopted by the school. School staff shall not enforce a school's dress code more strictly against transgender and gender nonconforming students than other students.

12. How should school districts and schools address harassment, bullying and abuse of transgender students?

California law requires that schools provide all students with a safe, supportive and inclusive learning environment, free from discrimination, harassment, and bullying. Examples of harassment and abuse commonly experienced by transgender students include, but are not limited to, being teased for failing to conform to sex stereotypes, being deliberately referred to by the name and/or pronouns associated with the student's

009

assigned sex at birth, being deliberately excluded from peer activities, and having personal items stolen or damaged. School district efforts to prevent and address harassment must include strong local policies and procedures for handling complaints of harassment, consistent and effective implementation of those policies, and encouraging members of the school community to report incidents of harassment. Beyond investigating incidents, schools should implement appropriate corrective action to end the harassment and monitor the effectiveness of those actions.

13. Should a school district or school generally review its gender-based policies?

As a general matter, schools should evaluate all gender-based policies, rules, and practices and maintain only those that have a clear and sound pedagogical purpose. Examples of policies and practices that should be reconsidered include: gender-based dress code for graduation or senior portraits and asking students to line up according to gender. Gender-based policies, rules, and practices can have the effect of marginalizing, stigmatizing, and excluding students, whether they are gender nonconforming or not. In some circumstances, these policies, rules, and practices may violate federal and state law. For these reasons, schools should consider alternatives to them.

Whenever students are separated by gender in school activities or are subject to an otherwise lawful gender-specific rule, policy, or practice, students must be permitted to participate in such activities or conform to such rule, policy, or practice consistent with their gender identity.

## RECENT DEVELOPMENTS AND RESOURCES

The California School Boards Association's (CSBA) Legal Guidance on Rights of Gender Nonconforming Students in Schools 🔗

CSBA has also developed a model board policy and administrative regulation that can be adopted by districts. The most current CSBA sample language is available through GAMUT Policy and Policy Plus 🔗:

- Board Policy 5145.3 - Nondiscrimination/Harassment
- Administrative Regulation 5145.3 - Nondiscrimination/Harassment

## Office for Civil Rights Complaint and Resolution Agreement

On July 24, 2013, the U.S. Department of Education's Office for Civil Rights and the U.S. Department of Justice's Civil Rights Division entered into a Resolution Agreement with the Arcadia Unified School District to resolve a complaint alleging violations of Title IX. The case was brought on behalf of a transgender student who was denied access to the boys' restrooms and

010

locker rooms, and required to sleep in a separate facility during an overnight field trip. The agreement requires the school district to treat the student in a manner consistent with his gender identity for all purposes. Moreover, the school district agreed to retain a consultant to revise their policies to prohibit discrimination on the basis of gender identity and implement a district-wide training program for staff and students.

The Resolution Agreement ☐ (PDF; Posted 29-Jan-2016) between the Office for Civil Rights and Arcadia Unified School District

## California Interscholastic Federation

In February 2013, the California Interscholastic Federation (CIF) issued new bylaws which provide that all students should have the opportunity to participate in CIF activities in a manner that is consistent with their gender identity. CIF Regulation 300 D, Gender Identify Participation, provides:

Participation in interscholastic athletics is a valuable part of the educational experience for all students. All students should have the opportunity to participate in CIF activities in a manner that is consistent with their gender identity, irrespective of the gender listed on a student's records. The student and/or the student's school may seek review of the student's eligibility for participation in interscholastic athletics in a gender that does not match the gender assigned to him or her at birth, should either the student or the school have questions or need guidance in making the determination, by working through the procedure set forth in the "Guidelines for Gender Identity Participation."

NOTE: The student's school may make the initial determination whether a student may participate in interscholastic athletics in a gender that does not match the gender assigned to him or her at birth.

The new California Interscholastic Federation bylaws ☐

## Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence, April 29, 2014

In April 2014, the U.S. Department of Education, Office for Civil Rights, issued guidance making clear that federal law prohibits discrimination against students on the basis of transgender status: "Title IX's sex discrimination prohibition extends to claims of discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity and OCR accepts such complaints for investigation ☐ (PDF; Posted 29-Jan-2016)."

## Office for Civil Rights Dear Colleague Letter, October 26, 2010

In October 2010, the U.S. Department of Education, Office for Civil Rights, issued a Dear Colleague Letter that, among other things, clarified that although Title IX does not prohibit discrimination on the basis of sexual orientation, harassment directed at a student because that

011

student is gay, lesbian, bisexual, or transgender may constitute sexual harassment and sex discrimination prohibited by Title IX.

The U.S. Department of Education, Office for Civil Rights, Dear Colleague Letter, October 26, 2010 ⬀ (PDF; Posted 29-Jan-2016)

## Other Resources

Gay-Straight Alliance Network/Tides Center, Transgender Law Center and National Center for Lesbian Rights. (2004). Beyond the Binary: A Tool Kit for Gender Identity Activism in Schools. San Francisco, CA: GSA Network ⬀ (PDF; Posted 29-Jan-2016)

Gerald P. Mallon, "Practice with Transgendered Children," in *Social Services with Transgendered Youth* 49, 55-58 (Gerald P. Mallon ed., 1999)

Stephanie Brill & Rachel Pepper, *The Transgender Child*, 61-64 (2008).

**Questions: School Health and Safety Office | shso@cde.ca.gov | 916-319-0914**

Last Reviewed: Tuesday, March 14, 2023

012

EXHIBIT 2

Case 3:23-cv-00768-BAS-VET    Document 256-5    Filed 09/08/25    PageID.14917
Page 20 of 32



# Legal Advisory

Legal Advisory regarding application of California's antidiscrimination statutes to transgender youth in schools.

---

This advisory replaces LO: 1-04, dated April 30, 2004, regarding application of California's antidiscrimination statutes to transgender youth in schools. The purpose of this advisory is to provide California school districts with updated guidance on the minimum requirements for compliance with California's prohibition on gender identity discrimination.

State and federal law generally prohibits discrimination, harassment, intimidation and bullying of students based on their actual or perceived sex, gender, sexual orientation, gender identity or expression, race, color, ancestry, national origin, ethnic group identification, age, religion, marital or parental status, physical or mental disability or genetic information, or association with a person or group with one or more of these actual or perceived characteristics. (Education Code sections 220, 234.1; 42 U.S.C. sections 2000d-2000e-17, 2000h-2000h-6.)

In addition, Education Code Section 234.1, as amended by AB 9 (Ch. 728, Statutes of 2011), and Section 235, mandate that school districts("districts"), including charter or alternative schools, adopt a policy prohibiting discrimination, harassment, intimidation and bullying based on the above categories at school or in any school activity related to school attendance or under the authority of the district. Education Code Section 234.1 further requires districts to adopt a process requiring school personnel to immediately intervene, when it is safe to do so, whenever they witness acts of discrimination, harassment, intimidation or bullying based on the characteristics specified in Education Code sections 220 or 234.1 or Penal Code Section 422.55, including gender identity.

Education Code Section 221.5 specifically prohibits discrimination on the basis of sex with regard to enrollment in classes or courses, career counseling and availability of physical education activities or sports to both sexes.

In 2013, AB 1266 amended Education Code Section 221.5 to clarify that students must be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with their gender identity, regardless of the gender listed in their student records. Even prior to the passage of AB 1266, the U.S. Department of Education's Office for Civil Rights and U.S. Department of Justice's Civil Rights Division investigated a civil rights complaint based on *federal* law against Arcadia Unified School District by a transgender student. The district agreed to provide transgender and gender-nonconforming

013

students with equal access to district facilities, programs and activities consistent with their gender identity. (*See* Resolution Agreement ↗ (PDF))

Therefore, California and federal law require schools to afford students equal opportunity and access to the school's facilities, activities, and programs, in a manner that is consistent with each student's gender identity, irrespective of whether the student's gender identity matches the student's assigned sex at birth. Education Code Section 210.7 (defining "gender" to include "a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth."). Creating that type of school environment will help ensure that all students will be provided an environment that will nurture their growth, both academically and developmentally.

The Department has prepared FAQs which address key issues regarding the requirements and implementation of AB 1266. These issues are: (1) privacy with respect to the student's transgender status; (2) names and pronouns; (3) school records; (4) dress codes and uniforms; (5) restrooms and locker rooms; (6) physical education classes and school sports; and (7) protection from harassment.  The FAQs also contain a glossary of definitions and list of helpful resources, including a model board policy and administrative regulation developed by the California School Boards Association for adoption by districts. It is recommended that these materials are reviewed by superintendents, principals, administrators and the local educational agency officer appointed pursuant to Education Code Section 234.1(g) to ensure compliance with the educational equity and nondiscrimination requirements of Education Code Section 200 et seq. and 5 California Code of Regulations Section 4900 et seq.

California law requires that schools provide all students with a safe, supportive and inclusive learning environment, free from discrimination, harassment, and bullying. Examples of harassment and abuse commonly experienced by transgender students include, but are not limited to, being teased for failing to conform to sex stereotypes, being deliberately referred to by the name and/or pronouns associated with the student's assigned sex at birth, being deliberately excluded from peer activities, and having personal items stolen or damaged. School district efforts to prevent and address harassment must include strong local policies and procedures for handling complaints of harassment, consistent and effective implementation of those policies, and encouraging members of the school community to report incidents of harassment. Beyond investigating incidents, schools should implement appropriate corrective action to end the harassment and monitor the effectiveness of those actions.

If you have further questions regarding this legal advisory, please contact us.

**Questions: School Health and Safety Office | shso@cde.ca.gov | 916-319-0914**

Last Reviewed: Tuesday, March 21, 2023

014

EXHIBIT 3



# Protections for LGBTQ+ Students: AB 1955

Includes legislative findings and declarations, substantive provisions, supports and resources, and summaries of other relevant laws.

## Introduction

On July 15, 2024, Governor Newsom signed into law Assembly Bill 1955, known as the "Support Academic Futures and Equality for Today's Youth (SAFETY) Act." AB 1955 became effective on January 1, 2025.

This guidance replaces (1) Frequently Asked Questions: School Success and Opportunity Act (Assembly Bill 1266) and (2) Legal Advisory re: application of California's antidiscrimination statutes to transgender youth in schools.

The guidance itself is non-binding. Local educational agencies must comply with statutes and regulations.

## Legislative Findings and Declarations

AB 1955, in Section 2, contains a number of legislative "findings and declarations," as follows:

Top of Form

(a) All pupils deserve to feel safe, supported, and affirmed for who they are at school.

(b) Choosing when to "come out" by disclosing an LGBTQ+ identity, and to whom, are deeply personal decisions, impacting health and safety as well as critical relationships, that every LGBTQ+ person has the right to make for themselves.

(c) Parents and families across California understand that coming out as LGBTQ+ is an extremely personal decision and want to support their children in coming out to them on their own terms.

(d) Parents and families have an important role to play in the lives of young people. Studies confirm that LGBTQ+ youth thrive when they have parental support and feel safe sharing their full identities with them, but it can be harmful to force young people to share their full identities before they are ready.

015

(e) Policies that forcibly "out" pupils without their consent remove opportunities for LGBTQ+ young people and their families to build trust and have these conversations when they are ready.

(f) LGBTQ+ pupils have the right to express themselves freely at school without fear, punishment, or retaliation, including that teachers or administrators might "out" them without their permission. Policies that require outing pupils without their consent violate pupils' rights to privacy and self-determination.

(g) Pupils have a constitutional right to privacy when it comes to sensitive information about them, and courts have affirmed that young people have a right to keep personal information private.

(h) Laws and policies that target or invite targeting of pupils on the basis of gender or sexual orientation are prohibited under state and federal law.

(i) Attacks on the rights, safety, and dignity of transgender, gender-expansive, and other LGBTQ+ youth continue to grow across the country, including here in California. These efforts are having a measurable impact on the health and well-being of LGBTQ+ pupils, and have led to a rise in bullying, harassment, and discrimination.

(j) School policies that support LGBTQ+ pupils and their parents and families in working towards family acceptance on their own terms, without interference from teachers and school staff, build safety and trust within school communities.

(k)

(1) Teachers and school staff can provide crucial support to LGBTQ+ young people and can play an important role in encouraging them to seek out appropriate resources and support.

(2) Affirming school environments significantly reduce the odds of transgender youth attempting suicide, according to The Trevor Project Research Brief: LGBTQ & Gender-Affirming Spaces (2020).

(3) LGBTQ+ students with supportive staff at their school experienced a number of positive outcomes, including being less likely to feel unsafe at school because of their gender expression or sexual orientation, or both, and reporting lower levels of depression, according to Joseph G. Kosciw, Ph.D., et al., The 2019 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools (2019).

016

(4) Transgender and gender-nonconforming youth with supportive educators had better education outcomes, according to Michelle Marie Johns et al., Protective Factors Among Transgender and Gender Variant Youth: A Systematic Review by Socioecological Level (2018).

(l) School personnel have faced increasing harassment and adverse employment actions because of their lawful efforts to protect pupil privacy, to protect pupils from discrimination, to provide instruction consistent with state standards, and to create a safe and supportive learning environment
for all pupils, including LGBTQ+ pupils.

(m) This harassment and adverse treatment of school personnel prevents all pupils from accessing safe and supportive learning environments.

(n) No school employee should suffer an adverse employment action because the employee supported a pupil or pupils in exercising their legal rights to privacy, nondiscrimination, state-aligned instructional materials, and equal educational opportunity.

## Substantive Provisions

AB 1955 has three major substantive provisions: (1) non-retaliation, (2) ban on what is known as "forced outing," (i.e. requiring an employee or a contractor to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent, unless otherwise required by state or federal law), and (3) invalidation of "forced outing" policies.

## Non-retaliation

AB 1955 adds Education Code (EC) Section 220.1, which states that an employee or a contractor of a school district, county office of education, charter school, or state special school for the blind or the deaf, or a member of the governing board of a school district or county office of education or a member of the governing body of a charter school, shall not in any manner retaliate or take adverse action against any employee, including by placing the employee on administrative leave, on the basis that the employee:

(a) supported a pupil in the exercise of rights set forth in Article 1 (commencing with Section 200) of, Article 2.7 (commencing with Section 218) of, Article 3 (commencing with Section 220) of, or Article 4 (commencing with Section 221.5) of, this chapter [i.e. Chapter 2, Educational Equity, EC Section 200 et seq., including among others the right to be free from discrimination based on a protected characteristic in EC 220, and the right to participate in sex-segregated school programs and activities, including athletic teams and competition, and use facilities consistent with the student's gender identity, in EC 221.5(f)],

017

(b) performed the employee's work activities in a manner consistent with the recommendations or employer obligations set forth in this chapter, or

(c) provided instruction to pupils consistent with the current content standards, curriculum frameworks, and instructional materials adopted by the state board, and any other requirements of this code, including, but not limited to, Section 51204.5 and the California Healthy Youth Act (Chapter 5.6 (commencing with Section 51930) of Part 28 of Division 4 of Title 2) [i.e. requirements in EC Section 51204.5 that social science instruction include the roles and contributions of diverse Americans including LGBTQ Americans, and in EC Section 51930 et seq. that comprehensive sexual health education include instruction and materials that: affirmatively recognize that people have different sexual orientations; when discussing or providing examples of relationships and couples, are inclusive of same-sex relationships; and teach pupils about gender, gender expression, gender identity, and explore the harm of negative gender stereotypes.]

## Ban on "forced outing"

AB 1955 adds EC Section 220.3, which states:

(a) An employee or a contractor of a school district, county office of education, charter school, or state special school for the blind or the deaf shall not be required to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent unless otherwise required by state or federal law.

(b) Subdivision (a) does not constitute a change in, but is declaratory of, existing law.

Note that AB 1955 does not mandate non-disclosure. AB 1955 does not specifically address whether a school employee may voluntarily disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent.

## Invalidation of "forced outing" policies

AB 1955 adds EC Section 220.5, which states:

(a) A school district, county office of education, charter school, state special school for the blind or the deaf, or a member of the governing board of a school district or county office of education or a member of the governing body of a charter school, shall not enact or enforce any policy, rule, or administrative regulation that would require an employee or a contractor to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent, unless otherwise required by state or federal law.

(b) Subdivision (a) does not constitute a change in, but is declaratory of, existing law.

018

(c) Any policy, regulation, guidance, directive, or other action of a school district, county office of education, charter school, or state special school for the blind or the deaf, or a member of the governing board of a school district or county office of education or a member of the governing body of a charter school, that is inconsistent with subdivision (a) is invalid and shall not have any force or effect.

## Supports and Resources

AB 1955 adds EC Section 217, which directs the California Department of Education to develop supports and resources for parents, guardians and families of LGBTQ+ students. EC Section 217 states:

(a)

(1) The department shall develop resources, or, as appropriate, update existing resources, for supports and community resources for the support of parents, guardians, and families of lesbian, gay, bisexual, transgender, queer, and questioning (LGBTQ) pupils and strategies to increase support for LGBTQ pupils and thereby improve overall school and community climate. The resources shall be designed for use in schools operated by a school district or county office of education and charter schools serving pupils in grades 7 to 12, inclusive.

(2) The department shall develop the supports and community resources for parents, guardians, and families of LGBTQ pupils in collaboration with parents, guardians, and families of, including, but not limited to, LGBTQ pupils.

(b) The department shall periodically update the supports and community resources for the support of parents, guardians, and families of LGBTQ pupils to reflect changes in law.

(c)

(1) As used in this section, school-based supports and community resources for the support of parents, guardians, and families of LGBTQ pupils include, but are not limited to, all of the following:

(A) Parents, guardians, and families of LGBTQ pupils support groups or affinity clubs and organizations.

(B) Safe spaces for parents, guardians, and families of LGBTQ pupils.

(C) Antibullying and harassment policies and related complaint procedures for parents, guardians, and families to access.

(D) Counseling services.

019

(E) School staff who have received antibias or other training aimed at supporting LGBTQ youth and their parents, guardians, and families.

(F) Suicide prevention policies and related procedures for parents, guardians, and families to access.

(2) As used in this section, community resources for the support of parents, guardians, and families of LGBTQ pupils include, but are not limited to, both of the following:

(A) Local community-based organizations that provide support to parents, guardians, and families of LGBTQ youth.

(B) Local physical and mental health providers with experience in treating and supporting parents, families, and guardians of LGBTQ youth.

# Summary of other relevant laws

In addition to the new AB 1955, some already-existing California laws relating to protections for LGBTQ+ students include the following:

## Prohibition on discrimination

EC 220 states in relevant part:

No person shall be subjected to discrimination on the basis of . . . gender identity, gender expression . . . sexual orientation . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance . . .

## Gender and gender expression defined

EC 210.7 states:

Gender means sex, and includes a person's gender identity and gender expression. Gender expression means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth.

## Sexual orientation defined

EC 212.6 states:

Sexual orientation means heterosexuality, homosexuality, or bisexuality.

## Athletics and facilities

EC 221.5(f) states:

020

A pupil shall be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed in the pupil's records.

**Questions:   School Health and Safety Office | <u>SHSO@cde.ca.gov</u> | 916-319-0314**
**Teacher and Leader Policy Office | 916-445-7331**
**School Health and Safety Office | 916-319-0914**

Last Reviewed: Thursday, January 02, 2025

021

EXHIBIT 4



**CALIFORNIA DEPARTMENT**

**OF EDUCATION**

**TONY THURMOND**

STATE SUPERINTENDENT OF
PUBLIC INSTRUCTION

1430 N STREET, SACRAMENTO, CA 95814-5901 • 916-319-0800 • WWW.CDE.CA.GOV

Thursday, January 2, 2025

Dear County and District Superintendents and Charter School Administrators:

## New Guidance on Assembly Bill 1955

The California Department of Education has posted new guidance, "***Protections for LGBTQ+ Students: AB 1955,***" on the following web page:**https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp**.

This guidance aligns to the new requirements of Assembly Bill 1955, known as the "**Support Academic Futures and Equality for Today's Youth (SAFETY) Act,**" which became effective on **January 1, 2025**.

The new guidance replaces (1) Frequently Asked Questions: School Success and Opportunity Act (Assembly Bill 1266) and (2) Legal Advisory regarding the application of California's antidiscrimination statutes to transgender youth in schools.

Sincerely,

Dominick Robinson, JD, MBAc, M.Ed.
Division Director, Whole Child Division

Richard Barrera, Senior Policy Advisor to the SSPI
Superintendent's Initiatives Office

022

## CERTIFICATE OF SERVICE

Case Name:    **Mirabelli et al. v. Olson, et al.**        Case    **3:23-cv-00768-BEN-VET**
No.

I hereby certify that on <u>September 8, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF RICHARD BARRERA IN SUPPORT OF STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>September 8, 2025</u>, at Los Angeles, California.


Anthony Conklin                          *Anthony Conklin*
Declarant                                Signature

SA2024300204
67921457.docx