ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN: 248011)
Supervising Deputy Attorney General
SHATTI A. HOQUE (SBN: 350250)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3884
 Fax:  (415) 703-5480
 E-mail:  Shatti.Hoque@doj.ca.gov
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**OBJECTION TO DECLARATION OF DR. ERICA E. ANDERSON, PHD**<br><br>Date:           September 29, 2025<br>Time:           10:30 a.m.<br>Dept:           5a<br>Judge:         The Honorable Roger T. Benitez<br>Trial Date:   Not Set<br>Action Filed:      April 27, 2023 |

Defendant Rob Bonta, in his official capacity as Attorney General of California, Defendant Tony Thurmond, in his official capacity as California Superintendent of Public Instruction, and the State Board of Education Members in their official capacities (collectively, State Defendants), submit the following objection to the Declaration of Dr. Erica E. Anderson, PhD, (ECF No. 247-10), filed in support of Plaintiffs' renewed motion for summary judgment.  ECF No. 247.

1

| NO. | MATERIAL OBJECTED TO | OBJECTIONS |
|---|---|---|
| 1 | Entire Expert Report of Dr. Erica E. Anderson.[1] | **Improper and irrelevant expert opinion.** *See* **Fed. R. Evid. 401, 402, 702.** <br><br> Dr. Anderson's Expert Report constitutes irrelevant and improper expert testimony, because its conclusions conflate non-medical interventions, which are at issue in this case, with medical interventions, which are not. Under Federal Rule of Evidence 702, testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony must be both "relevant" to the case and "reliable." *See Daubert v. Merrell Dow Pharms., Inc*, 509 U.S. 579, 597 (1993). <br><br> Dr. Anderson asserts that "no medical or mental health organization recommends that adults facilitate a social transition upon a child or adolescent's request without a careful evaluation by an appropriately trained mental health professional," for example, citing WPATH SOC8 to assert the necessity of a "comprehensive biopsychosocial assessment of adolescents who present with gender-identity concerns." (Anderson Rep., ¶ 118-119, quoting WPATH SOC8 at pp. S45, S50.) But Dr. Anderson's citation is misleading, as these portions of WPATH SOC8 offer this recommendation before undertaking "gender-affirming medical treatment," such as "medical/surgical transition-related care," which has no bearing on non-medical social transitions. (WPATH SOC8 at pp. S45, S50-S51; Expert Report of Dr. Christine Brady [Brady Rep.], Section 3, ¶¶ D(6)(c), E(18).) |

---

[1] Dr. Anderson's Expert Report is attached as Exhibit 1 to her Declaration.

2

Dr. Anderson cites the Endocrine Society Guidelines (an organization focused on medical intervention, e.g. hormone treatments)—which likewise deal with medical interventions, not social transition. (Brady Rep., Section III, ¶ D(6)(h).) Dr. Anderson also cites WPATH SOC7 to claim that it recommends "a careful psychological assessment" (Anderson Rep., ¶ 118, citing WPATH SOC7 at pp. 14-15, 17); but she misleadingly omits the fact that this section recommends a thorough evaluation "*when* [a mental health professional is] assessing children and adolescents who present *with gender dysphoria*," as opposed to recommending that all transgender or gender nonconforming youth receive such an assessment. (WPATH SOC7 at pp. 14-15, emphasis added.) Not only does this section not recommend that all transgender or gender nonconforming youth receive an evaluation (as it only refers to what mental health professionals should do when they are already treating a transgender youth), gender dysphoria is a specific mental health condition that not all gender nonconforming youth experience, and applying recommendations specific to this condition to all transgender or gender nonconforming youth is inappropriate. (Brady Rep., Section III, ¶ E(15) ["By suggesting that medical recommendations specific to *gender dysphoria* are appropriate for transgender youth categorically, Dr. Anderson's analysis improperly pathologizes transgender and gender nonconforming identity. Being transgender is not a mental illness, and being transgender is not the same as having gender dysphoria"].)

3

| | | |
|---|---|---|
| 2 | "While SOC8's focus is on medical interventions, the same is true for social transitions."<br><br>Expert Report of Dr. Anderson, ¶ 106. | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>Dr. Anderson acknowledges that "'[s]ocial transition' is primarily used to refer to name-and-pronoun changes [and] is used as a contrast to medical transition" [because social transition *does not involve*] "various medical interventions . . . such as puberty blockers, cross- sex hormone therapy, and various surgical interventions." (Anderson Rep., ¶ 17.) However, this challenged statement concludes, without any basis, that "[w]hile SOC8's focus is on medical interventions, the same is true for social transitions." (Anderson Rep., ¶ 106.) Because the statement "the same is true of social transitions" is offered without any authority, and is facially inconsistent with the scientific consensus approach of the SOC8, it is both improper opinion and offered without foundation. (Brady Rep., Section III, ¶ D(6)(f).) |
| 3 | "A child or adolescent who exhibits a desire to change name and pronouns should receive a careful professional assessment prior to transitioning."<br><br>Expert Report of Dr. Anderson, ¶ 8.<br><br>"Social transition itself is an impactful psychotherapeutic intervention that has the potential to increase the | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>These paragraphs constitute irrelevant testimony because they conflate social transitioning—a *non-medical* intervention, as Dr. Anderson herself acknowledges (Anderson Rep., ¶ 17; Brady Rep., Section III, ¶ E(13)—with *medical* interventions like surgery and hormone therapy. The former, not the latter, are at issue in this case.<br><br>Thus, Dr. Anderson's claim that "[s]ocial transition often leads to other medical interventions later in life" (Anderson Rep., ¶ |

4

| | | |
|---|---|---|
| | likelihood of persistence of gender incongruence. Transitioning socially can also be psychologically hard to reverse for a child or adolescent."<br><br>Expert Report of Dr. Anderson, ¶ 8.<br><br>"Social transition often leads to other medical interventions later in life, some of which are irreversible."<br><br>Expert Report of Dr. Anderson, ¶ 11. | 11), which is premised on the presumption that a social transition will make a child identify more strongly as transgender and increase the likelihood of "persistence," is false. "Youth who socially transition already have very strong cross-gender identification to begin with, which is why they pursue a social transition in the first place, and social transition does not impact their transgender identity or likelihood of persistence…" (Brady Rep., Section III, ¶ D(12)(d).) |
| 4 | "A request to change name and pronouns may be the first visible sign that the child or adolescent may be dealing with gender dysphoria or related coexisting mental-health issues."<br><br>Expert Report of Dr. Anderson, ¶ 8. | **Improper and irrelevant expert opinion.** ***See*** **Fed R. Evid. 401, 402, 702; lacks foundation.** ***See*** **Fed R. Evid. 602.**<br><br>This assertion is speculative, as many children and adolescents who request to change their name and pronouns do not have gender dysphoria or other mental- health issues. "Being transgender is not a mental illness, and being transgender is not the same as having gender dysphoria." (Brady Rep., Section III, ¶ E(15).) Dr. Anderson states this as well: "[N]ot everyone who is gender variant experiences gender dysphoria." (Anderson Rep., ¶ 18.) |
| 5 | "A child or adolescent's experience of gender incongruence may be influenced by societal or | **Improper and irrelevant expert opinion.** ***See*** **Fed R. Evid. 401, 402, 702; lacks foundation.** ***See*** **Fed R. Evid. 602.** |

5

| | |
|---|---|
| cultural factors and may or may not persist." | These assertions are speculative, as Dr. Anderson fails to point to (and admits her lack of) substantial evidence that "societal or cultural factors" are influencing the incidence of gender diversity. (Brady Rep., Section III, ¶ D(13)(a)-(g).) To the contrary, as Dr. Brady testified, "[s]ignificant research indicates that transgender identity results not from social pressures but from a strong, innate biological basis" (Brady Rep., Section III, ¶ D(13)(c).) and "gender identity is not a choice; it is a core aspect of a person's being." (Brady Rep., Section III, ¶ D(13)(b).) Studies point to other causes for the increased incidence of gender diversity. (Brady Rep., Section III, ¶ D(13)(c)-(f).) Further, because the statement is facially inconsistent with scientific consensus, it is both improper opinion and offered without foundation. |
| Expert Report of Dr. Anderson, ¶ 9. | |
| "To my knowledge, to date these dramatic changes in the population of children and adolescents reporting a transgender identity and the differences between age cohorts have not been adequately studied or explained, but these statistics suggest that cultural and/or societal factors may contribute—even substantially—to a young person's experience of gender variance. Indeed, WPATH SOC8 acknowledges that the recent phenomenon of 'adolescents seeking care who have not seemingly experienced, expressed (or experienced and expressed) gender diversity during their childhood years' suggests that for some young people, "susceptibility to social influence impacting gender may be an important differential to consider.'" | |
| Expert Report of Dr. Anderson, ¶ 55. | |

6

| 6 | "A careful assessment by professionals prior to transitioning is critical to understand the causes of the child's or adolescent's feelings of gender incongruence, the likelihood that those feelings will persist, to provide guidance about the implications of any kind of transition, to diagnose and treat any gender dysphoria or coexisting conditions, and to provide ongoing support to both youth and parents during any transition."<br><br>Expert Report of Dr. Anderson, ¶ 9.<br><br>"No professional medical association that I am aware of recommends social transition of children and adolescents without a careful assessment and treatment plan."<br><br>Expert Report of Dr. Anderson, ¶ 11.<br><br>"As far as I am aware, no medical or mental health organization recommends that adults facilitate a social transition upon a child or adolescent's request without a careful evaluation by an | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>Dr. Anderson asserts that "no medical or mental health organization recommends that adults facilitate a social transition upon a child or adolescent's request without a careful evaluation by an appropriately trained mental health professional," noting that "WPATH's SOC7 recommends a careful, psychological assessment and guidance from a mental health professional to help parents 'weigh the potential benefits and challenges' of a social transition." (Anderson Rep., ¶ 118, citing WPATH SOC7, pp. 14–15, 17.) To the extent Dr. Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community due to her refusal to recognize the current SOC8 and instead rely on the outdated SOC7, this purported evidence is also an improper opinion rather than scientific evidence.<br><br>Further, Dr. Anderson's citation of SOC7 misleadingly omits the fact that this section recommends a thorough evaluation "*when* [a mental health professional is] assessing children and adolescents who present with *gender dysphoria*"; it does not recommend that all transgender or gender nonconforming youth receive such an assessment in the first place. (WPATH SOC7, pp. 14-15, emphasis added.) As stated in Dr. Brady's Expert Report, this opinion fails to recognize that gender dysphoria is a specific condition. It is not the same as being transgender or gender nonconforming, and many transgender and gender nonconforming youth do not experience gender dysphoria. (Brady Rep., Section III, ¶ C(2); see also WPATH SOC8, |

7

| | | |
|---|---|---|
| | appropriately trained mental health professional. WPATH's SOC7 recommends a careful, psychological assessment and guidance from a mental health professional to help parents 'weigh the potential benefits and challenges' of a social transition. The Endocrine Society's Guidelines 'advise that decisions regarding the social transition of prepubertal youths with GD/gender incongruence are made with the assistance of an MHP or another experienced professional' (the guidelines do not say anything different about adolescents)."<br><br>Expert Report of Dr. Anderson, ¶ 118. | p. S6 ["The expression of gender . . . identities . . . that are not stereotypically associated with one's sex assigned at birth is a common and culturally diverse human phenomenon that should not be seen as inherently negative or pathological"].) "By suggesting that medical recommendations specific to gender dysphoria are appropriate for transgender youth categorically, Dr. Anderson's analysis improperly pathologizes transgender and gender nonconforming identity." (Brady Rep., Section III, ¶ E(15).)<br><br>Dr. Anderson also cites the Endocrine Society Guidelines (an organization focused on medical intervention, e.g. hormone treatments)—which deals with medical interventions, not social transition. (Brady Rep., Section III, ¶ D(6)(h).)<br><br>To the extent Dr. Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community due to her refusal to recognize the current SOC8 and instead rely on the outdated SOC7, this purported evidence is also an improper opinion rather than scientific evidence. To the extent she offers opinions about social transitions based on materials relating to medical interventions, she offers improper opinion unsupported by the material on which she relies. To the extent she offers her opinion based on incorrect conclusions about the state of scientific consensus on these issues, this evidence lacks foundation. |
| 7 | "No professional medical association that I am aware of recommends that school officials facilitate the | **Improper and irrelevant expert opinion. *See* Fed R. Evid. 401, 402, 702; lacks foundation. *See* Fed R. Evid. 602.** |

| | |
|---|---|
| social transition of a child or adolescent without parental knowledge and consent." Expert Report of Dr. Anderson, ¶ 13. "If a school facilitates a social transition at school without parental consent and buy-in, it necessarily interferes with the parents' ability to take a cautious approach and pursue an evaluation and assessment before allowing their child or adolescent to make significant changes to their identity." Expert Report of Dr. Anderson, ¶ 147. "A school-facilitated transition without parental consent also interferes with parents' ability to pursue a treatment approach that does not involve an immediate transition— such as an exploratory process to understand the cause of the feelings or self-perceptions of gender incongruence. It also necessarily interferes with the parent(s') ability to say 'no' to a social transition, which can be appropriate in some circumstances." | Dr. Anderson's assertions are irrelevant and lack foundation, as the issues in this case do not involve school officials "transitioning" students. As Dr. Brady, testified, "[I]t is incorrect to characterize schools officials' decisions to refrain from 'dead-naming' transgender or gender nonconforming students or referring to them by their former pronouns as 'facilitating' their transitions. (Brady Rep., Section III, ¶ D(8)(e).) Dr. Anderson's statement about social transitions in only specific contexts such as school amount to "facilitating a double life for some children, in which they present as transgender in some contexts but cisgender in other contexts [which] is not in their best interest" (Anderson Rep., ¶ 149) is not supported by the current professional standards, which state that "social transition may best occur in all or in specific contexts/settings only (e.g., school, home)." (Brady Rep., Section III, ¶ 8(b), quoting WPATH SOC8, p. S76.) Dr. Brady also testified that "Dr. Anderson's suggestion, then, that parental involvement should be required so that parents can sometimes 'say "no" to a social transition' (Anderson Rep., ¶ 148) is harmful to youth." (Brady Rep., Section III, ¶ D(14)(b).) Research has shown that lesbian, gay, and bisexual youth who experience parental rejection are eight times more likely to attempt suicide and six times more likely to report major depressive symptoms. (*Ibid.*) Dr. Anderson's citation of the Endocrine Society's Guidelines, which by their nature relate to *medical* transitions, is not relevant or supported here. (Anderson Rep., ¶ 60 |

9

| Expert Report of Dr. Anderson, ¶ 148.

"A school-facilitated transition over the objection of parents (or possibly worse, without their knowledge) also necessarily creates tension in the parent-child relationship. A common principle in the training for psychotherapists who work with children and adolescents is to never create or aggravate any tensions in the parent-child relationship. By facilitating a social transition at school over the parents' objection, a school would drive a wedge between the parent and child. Similarly, facilitating a double life for some children, in which they present as transgender in some contexts but cisgender in other contexts, is not in their best interest."

Expert Report of Dr. Anderson, ¶ 149.

"WPATH recognizes that 'social transition for children typically can only take place with the support and acceptance of parents/caregivers.' | ["Endocrinology is the subspecialty in medicine having to do with hormones. Pediatric endocrinologists are the physicians who prescribe puberty blockers or cross-sex hormones in the gender clinics"]; Brady Rep., Section III, ¶¶ D(6)(h), E(14).)

To the extent Dr. Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community due to her refusal to recognize the current SOC8 and instead rely on the outdated SOC7, this purported evidence is also an improper opinion rather than scientific evidence. To the extent she offers her opinion based on incorrect conclusions about the state of scientific consensus on these issues, this evidence lacks foundation. |

10

Likewise, 'adolescents are typically dependent on their caregivers/parents for guidance in numerous ways,' including as they 'navigate[ ] through the process of deciding about treatment options.'"

Expert Report of Dr. Anderson, ¶ 150.

"As WPATH notes elsewhere, '[p]arent and family support of TGD youth is a primary predictor of youth well-being.' Circumventing, bypassing, or excluding parents from decisions about a social transition undermines the main support structure for a child or adolescent who desperately needs support."

Expert Report of Dr. Anderson, ¶ 151.

"I am not aware of any professional body that has endorsed school-facilitated social transitions without parental consent. As noted above, WPATH's SOC7 recommends that mental-health professionals advise, but ultimately defer to, parents whether or not they 'allow their young

11

| | | |
|---|---|---|
| | children to make a social transition to another gender role.' The Endocrine Society's Guidelines 'advise that decisions regarding the social transition of prepubertal youths with GD/gender incongruence are made with the assistance of an MHP or another experienced professional' (which would require the informed consent of the parents). And the American Psychological Association advises psychologists to discuss 'the advantages and disadvantages of social transition during childhood and adolescence' with parents and their children, to promote discussion between parents and their children about 'developmentally appropriate decision making.'"<br><br>Expert Report of Dr. Anderson, ¶ 152. | |
| 8 | "Multiple studies across different groups and times have reported that, for the vast majority of children, gender incongruence does not persist (most of these studies involved children who did not transition). As | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>As stated in the Dr. Brady's Expert Report, this opinion is based on studies using flawed and outdated criteria. (Brady Rep., Section III, ¶¶ D(6)(e)-(f).) To the extent Dr. |

| | | |
|---|---|---|
| | WPATH notes, these studies show a persistence rate between 6% and 27%. One researcher summarized these studies as follows: "every follow-up study of [gender diverse] children, without exception, found the same thing: Over puberty, the majority of [gender diverse] children [identifying before puberty] cease to want to transition."<br><br>Expert Report of Dr. Anderson, ¶ 56. | Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community, this purported evidence is an improper opinion rather than scientific evidence. To the extent she offers her opinion based on incorrect conclusions about the state of scientific consensus on these issues, this evidence lacks foundation. |
| 9 | "Given the broad variety of factors that can contribute to a child's or adolescent's experience of gender incongruence and the reality that those feelings may be transitory, a mental health provider's first job is a careful evaluative process to understand the causes of the child's or adolescent's gender incongruence, assess the likelihood that those feelings will persist, and to help the child or adolescent and their parents process those feelings and make decisions about next steps." | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>As stated in Dr. Brady's Expert Report, this opinion fails to recognize that gender dysphoria is a specific condition. It is not the same as being transgender or gender nonconforming, and many transgender and gender nonconforming youth do not experience gender dysphoria. (Brady Rep., Section III, ¶ C(2); *see also* WPATH SOC8, p. S6 ['The expression of gender . . . identities . . . that are not stereotypically associated with one's sex assigned at birth is a common and culturally diverse human phenomenon that should not be seen as inherently negative or pathological'].) "By suggesting that medical recommendations specific to gender dysphoria are appropriate for transgender youth categorically, Dr. Anderson's analysis improperly pathologizes transgender and |

13

| | |
|---|---|
| Expert Report of Dr. Anderson, ¶ 58.<br><br>"WPATH's SOC7, for example, recommends a 'thorough assessment' of 'gender dysphoria and mental health' to 'explore the nature and characteristics of a child's or adolescent's gender identity,' as well as a 'psychodiagnostic and psychiatric assessment' that covers 'areas of emotional functioning, peer and other social relationships, and intellectual functioning/school achievement,' 'an evaluation of the strengths and weaknesses of family functioning,' any 'emotional or behavioral problems,' and any 'unresolved issues in a child's or youth's environment.'<br><br>Expert Report of Dr. Anderson, ¶ 59.<br><br>Similarly, the Endocrine Society recommends 'a complete psychodiagnostic assessment' including 'an assessment of the decision-making capability of the youth.'" | gender nonconforming identity." (Brady Rep., Section III, ¶ E(15).)<br><br>To the extent Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community, this purported evidence is an improper opinion rather than scientific evidence. To the extent she offers her opinion based on incorrect conclusions about the state of scientific consensus on these issues, this evidence lacks foundation.<br><br>Dr. Anderson's citation of the Endocrine Society's Guidelines, which by their nature relate to *medical* transitions, as she herself admits (Anderson Rep., ¶ 60 ["Endocrinology is the subspecialty in medicine having to do with hormones. Pediatric endocrinologists are the physicians who prescribe puberty blockers or cross-sex hormones in the gender clinics"]), is not relevant or supported here. (Brady Rep., Section III, ¶ D(6)(h).)<br><br>Dr. Anderson's citation of the SOC7 fails to rely on the current standards of care, and therefore her opinions are based upon conclusions that are not the consensus of the scientific community, and this purported evidence is an improper opinion rather than scientific evidence. To the extent she offers opinions about social transitions based on SOC7 materials relating to medical interventions, she also offers improper opinion unsupported by the material on which she relies. |

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

Expert Report of Dr. Anderson, ¶ 60.

"While young people sometimes 'self-transition,' responsible mental health practice requires that this assessment should occur *before* a child or adolescent socially transitions. WPATH SOC7 notes that mental health professionals 'should strive to maintain a therapeutic relationship with gender nonconforming children/adolescents and their families throughout any *subsequent* social changes,' (i.e., after the diagnostic process it recommends), which 'ensures that decisions about gender expression and the treatment of gender dysphoria are thoughtfully and recurrently considered.' Similarly, the Endocrine Society's Guidelines 'advise that decisions regarding the social transition of prepubertal youths with GD/gender incongruence are made with the assistance of [a mental health provider] or another experienced professional.'"

Expert Report of Dr. Anderson, ¶ 61.

15

"Another reason for a comprehensive assessment by a mental health professional is to determine whether and to what extent the child or adolescent is experiencing gender dysphoria (i.e., clinically significant distress associated with their experience of gender incongruence). As noted above, not every child or adolescent who exhibits gender variance experiences distress about that variance, but many do, and, as WPATH notes . . . , children and adolescents can be 'intensely distressed about it' and require professional support."

Expert Report of Dr. Anderson, ¶ 63.

"Yet another reason for a professional assessment is to identify and address any coexisting mental health concerns. Gender incongruence is often accompanied by other mental health issues, like anxiety, depression, self-harm, and others. WPATH's SOC8, for example, notes studies showing that transgender youth have higher rates of

16

depression, emotional and behavioral problems, suicide attempts and ideation, self-harm, eating disorders, autism spectrum disorders/characteristics, and other mental health challenges than the general population. Thus, WPATH and other professional associations recommend screening children and adolescents presenting with gender incongruence for coexisting mental health issues and treating those as necessary."

Expert Report of Dr. Anderson, ¶ 64.

"The assistance of a mental- health professional can also be critically important *during* any social transition. As the Endocrine Society's Guidelines note, a social transition 'may test the person's resolve, the capacity to function in the affirmed gender, and the adequacy of social, economic, and psychological supports,' and processing the transition is often 'a major focus of the counseling' during the transition."

17

Expert Report of Dr. Anderson, ¶ 65.

"For the reasons I have explained above, an assessment process and plan can be critically important *before* a child or adolescent transitions. I recognize that some children and adolescents do socially transition before meeting with a mental-health professional. But the fact that some individuals and families disregard sound practice is a problem that mental health professionals and schools should work to address, not a reason to ignore sound practice."

Expert Report of Dr. Anderson, ¶ 117.

"While its recommendations focus on medical interventions, WPATH's SOC8 likewise recognizes that 'a comprehensive clinical approach is important and necessary' and recommends 'a comprehensive biopsychosocial assessment of adolescents who present with gender-identity concerns.' SOC8 even emphasizes that

18

| | | |
|---|---|---|
| | '[t]reatment in this context (e.g., with limited or no assessment) has no empirical support and therefore carries the risk that the decision to start gender- affirming medical interventions may not be in the long-term best interest of the young person at that time.'"<br><br>Expert Report of Dr. Anderson, ¶ 119. | |
| 10 | "As noted above, numerous studies prior to the widespread adoption of social transition reported that gender incongruence did not persist through adolescence for a majority of children who experience it."<br><br>Expert Report of Dr. Anderson, ¶ 66.<br><br>"By contrast, a recent study of 317 transgender youth found that, 5 years after transitioning, 94% continued to identify as transgender, whereas only 6% had retransitioned back to a cisgender or nonbinary identity. A significant difference between this study and the prior studies is that all of the children in this study had already | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>Dr. Anderson's conclusions are based on outdated research, as discussed by Dr. Brady. (Declaration of Dr. Christine Brady, Ph.D. in Opposition to Plaintiffs' Motion for a Class-Wide Preliminary Injunction [Brady Decl.], ¶¶ 73-75, 81, 83-85.) To the extent Dr. Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community, this purported evidence is an improper opinion rather than scientific evidence. To the extent she offers her opinion based on incorrect conclusions about the state of scientific consensus on these issues, this evidence lacks foundation.<br><br>Dr. Anderson's citation of the Endocrine Society's Guidelines, which by their nature relate to *medical* transitions, is not relevant or supported here. (Anderson Rep., ¶ 60 ["Endocrinology is the subspecialty in medicine having to do with hormones. Pediatric endocrinologists are the physicians |

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

| | |
|---|---|
| socially transitioned. The dramatic difference in persistence rates reported in prior studies and this and similar studies of children who have transitioned demands an explanation and raises multiple questions. While there are a variety of possible explanations for this difference in persistence rates, one possible explanation that cannot yet be ruled out is that social transition itself has a causal effect on persistence rates by reinforcing a child's or adolescent's beliefs about their identity."<br><br>Expert Report of Dr. Anderson, ¶ 67.<br><br>"Indeed, multiple well-respected researchers in this area have raised this concern. A study in 2013, which reported higher persistence rates among children who had transitioned, noted that '[c]hildhood social transitions were important predictors of persistence, especially among natal boys. Social transitions were associated with more intense GD in childhood, but have never been | who prescribe puberty blockers or cross-sex hormones in the gender clinics."]; Brady Rep., Section III, ¶ D(6)(h).)<br><br>Thus, Dr. Anderson's testimony is improper expert testimony because she bases her opinion improperly on material not relating to the subject on which she purports to opine. |

20

independently studied regarding the *possible impact of the social transition itself on cognitive representation of gender identity or persistence.*' The authors went on to note that 'the hypothesized link between social transitioning and the cognitive representation of the self' may 'influence the future rates of persistence.' 'Until there is more knowledge about this mechanism,' the authors wrote, they endorsed the approach in WPATH SOC7 of deferring to parents and helping them 'weigh the potential benefits and challenges' and 'make decisions regarding the timing and process of any gender role changes for their young children.'"

Expert Report of Dr. Anderson, ¶ 68.

"Another well-known researcher and long-time practitioner in this field, Dr. Kenneth J. Zucker, commented on this study as follows: 'With the emergence in the last 10–15 years of a pre- pubertal gender social transition as a type of psychosocial

21

treatment [citations omitted]— initiated by parents on their own (without formal clinical consultation) or with the support/advice of professional input—it is not clear if the desistance rates reported in the four core studies will be "replicated" in contemporary samples. Indeed, the data for birth-assigned males in Steensma et al. (2013a) already suggest this: of the 23 birth- assigned males classified as persisters, 10 (43%) had made a partial or complete social transition prior to puberty compared to only 2 (3.6%) of the 56 birth-assigned males classified as desisters. Thus, *I would hypothesize that when more follow-up data of children who socially transition prior to puberty become available, the persistence rate will be extremely high*.' Dr. Zucker then adds that, in his view, 'parents who support, implement, or encourage a gender social transition (and clinicians who recommend one) are implementing a psychosocial treatment that

22

will increase the odds of long-term persistence.'"

Expert Report of Dr. Anderson, ¶ 69.

"The Endocrine Society Guidelines also recognize that '[s]ocial transition is associated with the persistence of GD/gender incongruence as a child progresses into adolescence. It may be that the presence of GD/gender incongruence in prepubertal children is the earliest sign that a child is destined to be transgender as an adolescent/adult (20). However, social transition (in addition to GD/gender incongruence) has been found to contribute to the likelihood of persistence.'"

Expert Report of Dr. Anderson, ¶ 70.

"The Interim Cass Review, noted that 'it is important to view [social transition] as an active intervention because it may have significant effects on the child or young person in terms of their psychological functioning. There are different views on the benefits versus the harms of early social

23

transition. Whatever position one takes, it is important to acknowledge that it is not a neutral act, and better information is needed about outcomes.'"

Expert Report of Dr. Anderson, ¶ 71.

"I share the concerns of these researchers and writers that transitioning may affect the likelihood of persistence, *especially* transitions without a careful assessment by a mental health professional prior to transitioning."

Expert Report of Dr. Anderson, ¶ 72.

"Again, the effects of social transition on a child's or adolescent's psychological development are still open to conjecture and hypothesis, since, to my knowledge, there have not yet been adequate long-term studies of social transitions during childhood or adolescence, as this is a relatively recent phenomenon. Indeed, WPATH's SOC8, released in 2022, acknowledges that 'there is a dearth of empirical literature regarding best practices

24

related to the social transition process.'"

Expert Report of Dr. Anderson, ¶ 73.

"WPATH and others have acknowledged that, in light of the paucity of long-term evidence about the effects, social transitions during childhood and adolescence are a controversial issue among mental-health professionals in this field. WPATH's SOC7, for example, notes that '[Social transition in early childhood] is a controversial issue,' that 'divergent views are held by health professionals,' and that '[t]he current evidence base is insufficient to predict the long- term outcomes of completing a gender role transition during early childhood.' Another group of researchers that is attempting to study this recently wrote: 'Relatively unheard-of 10 years ago, early childhood social transitions are a contentious issue within the clinical, scientific, and broader public communities. [citations omitted]. Despite the increasing occurrence of

such transitions, we know little about who does and does not transition, the predictors of social transitions, and *whether transitions impact children's views of their own gender*.'"

Expert Report of Dr. Anderson, ¶ 74.

"Thus, while social transition is too often described as nothing more than a harmless 'exploration' of gender and identity, at this time we cannot rule out that a social transition may have a causal effect on a child's or adolescent's future development of their internal sense of identity. On the contrary, the early research we have is consistent with the hypothesis that social transition causes some children to persist who otherwise might have desisted from experiencing gender dysphoria and transgender identification."

Expert Report of Dr. Anderson, ¶ 75.

"Yet another reason for caution is that social transition often leads to

26

medical interventions, many of which have permanent, long-term effects (or the effects are not yet fully known). Not everyone who socially transitions goes on to pursue medical interventions, but many do."

Expert Report of Dr. Anderson, ¶ 114.

"In the Olson study discussed above, only 37 of the 317 participants (11.7%) had started puberty blockers when the study began. By the end of the study (five years later), 190 of the 317 participants (59.9%) had started either puberty blockers and/or cross-sex hormones."

Expert Report of Dr. Anderson, ¶ 115.

"The fact that a high percentage of children who socially transition later feel the need to undergo medical interventions to maintain or further align their appearance with the identity adopted during a social transition further highlights the fact that social transition is itself a major health and mental

27

| | | |
|---|---|---|
| | health decision that may lead to important long-term consequences in the life of the child, for good or ill. This is itself an important consideration that children and adolescents, and their parents, should understand and weigh when deciding whether to undertake a social transition. Without the involvement of a mental health professional, they are unlikely to obtain the information and counsel necessary to make an informed decision."<br><br>Expert Report of Dr. Anderson, ¶ 116. | |
| 11 | "For some children experiencing gender incongruence, social transition is not the best approach. Some cease desiring to transition after an exploratory process and/or therapy to understand the source of their feelings, and some who do transition later come to regret it."<br><br>Expert Report of Dr. Anderson, ¶ 11.<br><br>"One way in which social transition may *decrease desistence* is the | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>Dr. Anderson's statements about the difficulties faced by youth who decide to return to their prior gender identity lack foundation and constitute improper speculation. As Dr. Brady testified, "the decision to change a social transition is simple and reversible: the youth simply goes back to using the prior name and pronouns the youth had used before." (Brady Decl., ¶ 27 fn. 52)<br><br>Dr. Anderson's statements about the rare instances where individuals seek to return to their prior gender after undergoing medical interventions like surgery or medication |

28

| | |
|---|---|
| psychological difficulty children and adolescents may face in transitioning back to an identity aligned with their natal sex after publicly transitioning to a transgender identity." | ("detransitioners") are irrelevant to the question of social transitioning, which is a non-medical process. (Brady Rep., Section III, ¶¶ D(6)(c), E(18).) |
| Expert Report of Dr. Anderson, ¶ 76. | Further, Dr. Anderson cites to *Newsweek* magazine and Reddit to support her assertions, non-professional sources that render her statement improper expert testimony. |
| "One group of researchers, in a qualitative study of 25 gender variant youth, found that 'some girls, who were almost (but not even entirely) living as boys in their childhood years, experienced great trouble when they wanted to return to the female gender role.' In light of that possibility, they 'suggest[ed] a cautious attitude towards the moment of transitioning.' I agree." | |
| Expert Report of Dr. Anderson, ¶ 77. | |
| "WPATH also recognizes that '[a] change back to the original gender role can be highly distressing and even result in postponement of this second social transition on the child's part.' So does the Endocrine Society: 'If children have completely | |

29

socially transitioned, they may have great difficulty in returning to the original gender role upon entering puberty.'"

Expert Report of Dr. Anderson, ¶ 78.

"In short, a social transition represents one of the most difficult psychological changes a person can experience. For all these reasons embarking upon a social transition based solely upon the self-attestation of the youth without consultation with parents and appropriate professionals is unwise."

Expert Report of Dr. Anderson, ¶ 79.

"Further to place teachers in the position of accepting without question the preference of a minor and further direct such teachers to withhold the information from parents concerning their minor children is hugely problematic."

Expert Report of Dr. Anderson, ¶ 79.

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

"As discussed above, multiple studies have reported that many children who experience gender incongruence ultimately revert to identifying with their natal sex. I personally have worked with youth, who, after an exploratory and therapeutic process, ultimately decided that transitioning was not the best approach for them."

Expert Report of Dr. Anderson, ¶ 105.

"WPATH's SOC8 argues that 'recognition that a child's gender may be fluid and develop over time [citations omitted] is not sufficient justification to negate or deter social transition for a pre-pubescent child when it would be beneficial.' I understand the SOC8's caveat, 'when it would be beneficial,' as an implicit recognition that a social transition is not always beneficial for every child or adolescent experiencing gender incongruence. Indeed, SOC8 repeatedly 'emphasizes the importance of a nuanced and individualized clinical approach to gender

31

assessment,' both for children and for adolescents. While SOC8's focus is on medical interventions, the same is true for social transitions."

Expert Report of Dr. Anderson, ¶ 106.

"WPATH's SOC8 asserts that the fluidity of gender variance during youth is not a reason to 'negate or deter social transition,' however, the reality that gender variant feelings can be fluid for many young people warrants caution before making any significant changes, including a social transition. Part of a mental-health provider's role is to counsel patients to exercise caution and explore what they are feeling before making major changes."

Expert Report of Dr. Anderson, ¶ 107.

"Yet another reason for caution is the growing awareness of 'detransitioners'—youth who previously transitioned to a transgender identity but later decide to revert to an identity that aligns with

32

| | | |
|---|---|---|
| | their natal sex. Many of these youth express regret about their prior transition. Some go further and express anger at providers who they feel gave them an inadequate evaluation." | |
| | Expert Report of Dr. Anderson, ¶ 108. | |
| | "I regularly monitor an online community of detransitioners on reddit (/r/detrans), and have observed many similar stories reported in that online community." | |
| | Expert Report of Dr. Anderson, ¶ 112. | |
| | "The potential for a difficult detransition process in the future and regret over a prior transition are important considerations that a mental-health provider should help a child or adolescent and their parents understand before they decide to undertake a social transition." | |
| | Expert Report of Dr. Anderson, ¶ 113. | |
| 12 | "In a few places, although it is not entirely clear about this, certain statements in | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.** |

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

| | |
|---|---|
| SOC8 could be read to suggest that social transition should be implemented immediately upon the request of a child or adolescent. SOC8 says that '*social transition should originate from the child and reflect the child's wishes* in the process of making the decision to initiate a social transition process,' and that any 'efforts at blocking reversible social expression or transition [like] choosing not to use the youth's identified name and pronouns' are 'disaffirming behaviors' that are always inappropriate and equivalent to conversion therapy." (Emphasis added.)<br><br>Expert Report of Dr. Anderson, ¶ 120.<br><br>"To the extent that one reads these statements as an endorsement of the view that children and adolescents should always immediately be allowed to socially transition upon request, this goes too far. As I have noted above, social transition may not in fact be easily 'reversible.' As a result, it can be | Dr. Anderson acknowledges that the current SOC8 directly states that social transitioning should originate from the child and reflect the child's wishes, but nevertheless relies upon the concededly outdated SOC7 to assert that "it is appropriate for parents to decide whether to 'allow' a social transition for their children." (Anderson Rep., ¶ 120-121.) These two assertions are facially and necessarily incompatible; indeed, that is clearly why Anderson must rely upon the now-rejected provisions of SOC7 and assert that the SOC8 "could be read" in a way that is inconsistent. Because Dr. Anderson applies standards that are rejected by the expert consensus on this issue, and provides no indication or evidence that any other expert in the field shares her view, this evidence must be rejected by this Court.<br><br>Alternatively, to the extent Dr. Anderson offers her opinions based upon conclusions that are not the consensus of the scientific community, this purported evidence is also an improper opinion rather than scientific evidence. To the extent she offers her opinion based on incorrect conclusions about the state of scientific consensus on these issues, this evidence lacks foundation. |

34

| | | |
|---|---|---|
| | appropriate for parents to say 'no' to a social transition (whether at school or elsewhere) to, among other things, allow time for assessment and exploration with the help of a mental health professional before making such a significant change. Part of parents' job is to help their children avoid making bad decisions. That ordinary parental role is not remotely comparable to or properly characterized as 'conversion therapy.' *As WPATH's SOC7 recognizes, it is appropriate for parents to decide whether to 'allow' a social transition for their children.* Neither SOC 7 nor SOC 8 suggest that school personnel should decide whether a minor should socially transition, let alone doing so and hiding this information from parents." (Emphasis added.)<br><br>Expert Report of Dr. Anderson, ¶ 121. | |
| 13 | "Parental involvement is necessary to obtain professional assistance for a child or adolescent experiencing gender | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702.**<br><br>These paragraphs constitute irrelevant testimony. They consistently conflate parental |

| | |
|---|---|
| incongruence, to provide accurate diagnosis, and to treat any gender dysphoria or other coexisting conditions."<br><br>Expert Report of Dr. Anderson, ¶ 12.<br><br>"A school-facilitated transition without parental consent interferes with parents' ability to pursue a careful assessment and/or therapeutic approach prior to transitioning, prevents parents from making the decision about whether a transition will be best for their child, and creates unnecessary tension in the parent-child relationship."<br><br>Expert Report of Dr. Anderson, ¶ 13.<br><br>"Aside from a few limited exceptions, *medical and mental- health providers* generally cannot see or treat a minor without informed consent from the parent(s)/legal guardian(s), both as a matter of state laws and as a matter of medical ethics." (emphasis added).<br><br>Expert Report of Dr. Anderson, ¶ 134. | involvement with *medical treatment* and *medical caregivers*, which are not at issue in this case, with non-medical interventions, which are. Dr. Anderson goes into substantial detail emphasizing how neither she nor other psychiatric/medical institutions with which she was formerly affiliated would ever provide medical/psychiatric treatment to an adolescent patient without parental involvement/consent, which is entirely irrelevant to the issues in this case. Honoring a student's request to be called by a certain name or pronouns are simply not medical treatment. (Brady Rep., Section III, ¶¶ D(6)(c), E(18).) This extended discussion of best practices in the context of medical treatment is therefore irrelevant. (*Id.*) |

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

"As WPATH's section on adolescents recognizes, many adolescents lack the 'skills for future thinking, planning, big picture thinking, and self-reflection' that are necessary for informed decision-making. Adolescents' decisions are often influenced by factors that are unrelated to their long-term best interests, like 'a sense of urgency that stems from hypersensitivity to reward,' a 'heightened focus on peer relationships,' and 'increased risk-taking behaviors.' In light of the ongoing and unfinished development of emotional and cognitive maturity during adolescence, '[i]n most settings, for minors, the legal guardian is integral to the informed consent process.'"

Expert Report of Dr. Anderson, ¶ 135.

"Parental involvement is also necessary as a practical matter. Many children and adolescents could not get to any appointments with a mental- health provider

37

without their parents' assistance. And most children and adolescents do not have their own health insurance and would have no way to pay for those appointments."

Expert Report of Dr. Anderson, ¶ 136.

"[I]n my practice, I will not (nor have I ever, that I can recall) see a minor child or adolescent without informed consent from a parent/legal guardian. During my years at the Child and Adolescent Gender Clinic at UCSF, we routinely would Repine to see minors without a parent present. And our standard practice was to obtain an informed consent form from a parent prior to initiating any form of *treatment*. If a minor presented for *treatment* without a parent present or if there were questions about which parent had decision-making authority, we would cease further contact until we could confirm that we had proper informed consent from the parent or parents with decision-making authority." (Emphasis added.)

38

| | | | |
|---|---|---|---|
| | | Expert Report of Dr. Anderson, ¶ 137.<br><br>"[G]iven the need for informed consent, as explained above, parental involvement is a necessary prerequisite for any kind of *treatment by a medical professional*, whether for gender dysphoria or any coexisting mental-health condition. For example, a child experiencing depression/anxiety related to gender incongruence ordinarily could not receive counseling or medication to treat the depression/anxiety without the informed consent of a parent/guardian." (Emphasis added.)<br><br>Expert Report of Dr. Anderson, ¶ 144. | |
| | 14 | "In light of the above, it is my expert opinion, based on my training and decades of experience as a clinical psychologist, to a reasonable degree of certainty, that the California Department of Education's and the Escondido Union School District's gender identity policies are consistent with | **Improper and irrelevant expert opinion.** *See* **Fed R. Evid. 401, 402, 702; lacks foundation.** *See* **Fed R. Evid. 602.**<br><br>Dr. Anderson's statements conflate parental involvement with *medical treatment* and *medical caregivers*, which are not at issue in this case, with non-medical interventions, which are. Honoring a student's request to be called by a certain name or pronouns is simply not mental health treatment. (Brady Rep., Section III, ¶¶ D(6)(c), E(18).) This |

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

| | |
|---|---|
| widely accepted mental health principles and practices relating to parental notification when their child or adolescent expresses a desire to be socially transitioned at school. Specifically, I am not aware of any professional body that would endorse the State of California's position, which envisions that school personnel would socially transition a child or adolescent without evaluation of mental health professionals and without parental involvement." <br><br> Expert Report of Dr. Anderson, ¶ 184. | discussion of widely accepted mental health principles and practice is therefore irrelevant. (*Id.*) <br><br> Dr. Anderson's testimony regarding "the State of California's position" lacks foundation, as it misstates the State's position. |

Dated:  September 8, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General

SHATTI A. HOQUE
Deputy Attorney General
*Attorneys for State Defendants*

SA2024300204

40

Objection to Declaration of Dr. Erica E. Anderson, PhD (3:23-cv-00768-BEN-VET)

# CERTIFICATE OF SERVICE

Case Name: **Mirabelli et al. v. Olson, et al.**        Case No.    **3:23-cv-00768-BEN-VET**

I hereby certify that on <u>September 8, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## OBJECTION TO DECLARATION OF DR. ERICA E. ANDERSON, PHD

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>September 8, 2025</u>, at Los Angeles, California.

| | |
|---|---|
| Anthony Conklin | *Anthony Conklin* |
| Declarant | Signature |

SA2024300204
67921457.docx