Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
William T. Duke, SBN 361823
  wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
  tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
  pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>Defendants. | Case No.: 3:23-cv-0768-BEN-VET<br><br>**Reply Memorandum in Support of Plaintiffs' Renewed Motion for Class Certification**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Hearing Date: September 29, 2025<br>Hearing Time: 10:30 a.m. |

**REPLY ARGUMENT**

In Defendants' opposition to Plaintiffs' motion for class certification, Defendants primarily raise the same two arguments repeatedly, alleging that the same two arguments defeat commonality, defeat typicality, and preclude certification of a Rule 23(b)(2) class. These two arguments are: (1) that there is no uniform policy that can be enjoined class-wide; and (2) that the class is not ascertainable or manageable. Apparently, by repeating the same substantive arguments over and over in different sections, Defendants think they can make the issues appear more complicated than they really are. But untangling Defendants' web is not all that complicated. Below, Plaintiffs will address these two arguments and then turn to Defendants' argument that certification of a Rule 23(b)(1)(A) class is inappropriate.[1]

### I.    THERE IS A UNIFORM POLICY TO BE ADJUDICATED.

Defendants first state that "Plaintiffs have not proven that there is a uniform statewide 'PEP' [Parental Exclusion Policy] that can be ruled on in a single proceeding"; rather, "there are over a thousand school districts, some of which have either no policy or no written policy…. All of those districts are at liberty to draft their own policies, and their individual policies have meaningful differences." ECF No. 257, p.23:14-23 (citing ECF No. 257, pp.11:20-13:8). Because of this, Defendants argue, there is no commonality, *id.*, pp.23:14-24:8, no typicality, *id.*, pp.25:15-26:9, and a Rule 23(b)(2) class is inappropriate. *Id.*, pp.27:5-20; *but see Gibson v. Loc. 40, Supercargoes &*

---

[1] As a preliminary note, Defendants also argue that "Plaintiffs offer no evidence to establish typicality or commonality." ECF No. 257, pp.14:22-15:17 (citing ECF No. 244, Ntc. of Mtn.). This argument is premised on the fact that although Plaintiffs' summary judgment declarations were cited in the class certification briefing (and filed on the same day), they were not cited in the notice of motion. *See id.* The relevant evidence for these prongs, of course, is Defendants' own undisputed actions. In any event, Defendants identify no prejudice from this nor any case law justifying ignoring the evidence in the docket. In fact, from a hyper-technical perspective, a notice need only recite the legal grounds on which the motion is made and the relief sought. *See* Fed. R. Civ. P. 7(b). Absent prejudice, "the niceties … can be disregarded by the court." 5 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1192 (4th ed. 2025).

*Checkers of ILWU*, 543 F.2d 1259, 1264 (9th Cir. 1976) (certification appropriate even "though the discrimination may have been manifested in a variety of practices affecting different members of the class in different ways and at different times").

In support, Defendants state that Plaintiffs' definition of Parental Exclusion Policies "relies wholly on a nonexistent webpage that contained non-binding guidance in a withdrawn FAQ, formerly issued by the California Department of Education," and that "Plaintiffs have not provided any evidence of any uniform policy mandated at the state-level *and* that all public-school districts have in fact adopted." ECF No. 257, p.12:8-13 (original emphasis). But Defendants give the game away in the next sentence: "There are over 1,000 unique school districts in California, each free to establish its own local policy … regarding gender-identity disclosure, *so long as it complies with state … law.*" ECF No. 257, p.12:13-17 (footnote omitted; emphasis added). That's the issue. The state law floor is itself unconstitutional. Parental Exclusion Policies are the result of the interplay of three aspects of California law: (1) the prohibition on gender identity discrimination, Cal. Educ. Code, §§ 200, 220; (2) the definition of gender identity as whatever a child claims, regardless of any contrary statement by a parent, Cal. Health & Saf. Code § 1439.50(b); and (3) minors' privacy rights with respect to their gender identity, even as against their parents, Cal. Const. art. I, § 1.

Practically, all California school districts learned that these three legal provisions together required Parental Exclusion Policies because of the CDE, its FAQ page, and its linked model AR 5145.3. *See* ECF No. 247-1, Mtn. Summary Judgment, pp.25:20-28:4. The FAQ page and the model AR 5145.3—and the Attorney General's "Know Your Rights" webpage—are the "uniform statewide policy" that Defendants claim does not exist. *See* ECF No. 257, pp.9:10-13, 12:12, 23:14, 25:16, 27:9. By "nonexistent" Defendants apparently mean that the FAQ page was taken down. *See id.*, p.12:8. But both Defendants themselves and school districts across the state still believe the FAQ page accurately described what California law currently requires. Thus, the Attorney General still claims as much on its "Know Your Rights" page and school districts

across the state have maintained their model AR 5145.3. *See* ECF No. 247-1, p.29:3-10.

Since Defendants stand by this interpretation of California law, the remedy is to enjoin them from enforcing their interpretation of California law against school districts and declare it unlawful. *See, e.g.*, *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024) (enjoining enforcement even though guidance document withdrawn); *Jackson v. Noem*, 132 F.4th 790, 794 (5th Cir. 2025) (declaration of illegality needed to moot out all residual effects); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020) (recognizing judgment against state agency would have trickle down effect to regulated entities).[2]

## II. The Class is Sufficiently Definite

Defendants next argue that class certification should be denied because class membership is not "objectively ascertainable" as it would allegedly depend upon "subjective states of mind." ECF No. 257, pp.14:25-26, 16:21-22. As a result, Defendants argue, commonality fails, *id.*, pp.24:9-25:2, typicality fails, *id.*, p.26:10-17, and certification of a Rule 23(b)(2) class action is inappropriate. *Id.*, pp.27:20-28:19. Defendants' arguments prove too much and would bar all identity-based class actions—whether based on religion or gender identity. There is no issue here.

### A. Background Legal Principles.

Defendants' motion acknowledges that there is no ascertainability requirement absent a "need to ascertain the membership of the class in order to effectuate the requested relief," but states that here "it is crucial to know who is in the Class," ECF No. 257, pp.17:16-18:12, "because if a plaintiff class loses, the preclusive effect of final judgment must be enforced against all class members," and "[t]he judgment rendered in a … Fed. R. Civ. P. 23(b)(2) class action is binding on all members of the class." *Id.*, p.18:15-17 & n.8 (citing, *e.g.*, *Chua v. City of Los Angeles*, No. 2:16-cv-237, 2017 WL

---

[2] Nor do Plaintiffs need to establish that all California school districts have adopted an identical policy. Plaintiffs are not seeking to certify a defense class of California school districts. *See Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022) (denying defense class of California school districts for lack of standing).

Reply Memorandum ISO Plaintiffs'
Renewed Motion for Class Certification

10776036 (C.D. Cal. May 25, 2017)). As implied, this argument does not require identification of class members "at the commencement of the action," but merely requires the class "be '*definite* enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *Chua*, 2017 WL 10776036, at *13 (quoting 7A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1760 (4th ed. 2025)) (emphasis added). Oddly, this argument contains a logical disconnect. Although Defendants state that Plaintiffs' cases did not have a "*need* to ascertain the membership," under Defendants' argument, there will *always* be such a need in order to apply res judicata. ECF No. 257, p.10:18; *but see Frank v. United Airlines, Inc.*, 216 F.3d 845, 852-53 (9th Cir. 2000). But beyond a generic reference to res judicata, Defendants do not explain practically why they need to be able to clearly identify who is in the class.[3]

As indicated in *Chua*, rather than an *ascertainability* requirement, there is a *definiteness* requirement, which requires a clear class definition based on "objective criteria." That way, it will be feasible in the future to determine whether a person was a member of the class or not. *See, e.g.*, *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 873 n.10 (S.D. Cal. 2019); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 598 n.8 (N.D. Cal. 2015). Thus, Plaintiffs reiterate that "both the weight of authority and consideration of the particular purpose of 23(b)(2) class actions [indicate] that ascertainability should not be required when determining whether to certify a class in the 23(b)(2) context." *Bee, Denning, Inc. v. Cap. All. Grp.*, No. 13-cv-02654, 2016 WL 3952153, at *5 (S.D. Cal. July 21, 2016).

Defendants' main argument—which actually applies to definiteness, not ascertainability—is that the proposed class is "fatally subjective." *See* ECF No. 257,

---

[3] Defendants state that identifying members is important because they are "persons entitled to enforce compliance." ECF No. 257, p.18:6. But "[a] precise class definition is less important in cases in which plaintiffs are attempting to certify a class for injunctive relief because the representative plaintiffs may move the Court to enforce compliance." *Conant v. McCaffrey*, 172 F.R.D. 681, 693 (N.D. Cal. 1997); *accord In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015).

Reply Memorandum ISO Plaintiffs'
Renewed Motion for Class Certification

pp.15:18-22:22. It is particularly telling that Defendants' lengthy string citations include no Ninth Circuit cases, *see id.*, but, in any event, when a class definition includes a subjective, state of mind criteria, that is not an "automatic reason" to deny class certification, but is merely "a shorthand method of alerting the court and the parties that there might be difficulty in identifying class members." *Simer v. Rios*, 661 F.2d 655, 669 n.25 (7th Cir. 1981). Indeed, in cases with little or no monetary relief, an "objective criteria" for identifying class members is their self-attestation via declaration. *In re Hulu Priv. Litig.*, No. 3:11-cv-3764, 2014 WL 2758598, at *15 (N.D. Cal. June 17, 2014) (collecting cases). Thus, although "[s]ome courts have found classes defined by a state of mind, such as intent or deterrence, too indefinite and unascertanable to certify," "[t]he presence of state of mind issues … does not necessarily preclude certification." *Leiken v. Squaw Valley Ski Corp.*, No. 93-cv-1622, 1994 WL 494298, at *6 (E.D. Cal. June 28, 1994) (citing *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1444-45 (9th Cir. 1984)).

### B. Application of Legal Principles.

In Defendants' motion, they argue: "A case-by-case analysis for each potential class member must be made to determine whether the employee or parent objects to the policies at issue *and* does so on religious, conscience, or ideological grounds (as opposed to, for example, an unrelated vendetta against a student in the case of an employee, or in the case of a parent, unrelated animus toward an ex-spouse)." ECF No. 257, p.21:17-21; *accord id.*, p.19:3-6. Defendants continue, stating that "[t]he term 'gender incongruence,' as used in the Class definition, is undefined, vague, and susceptible to Plaintiffs' subjective labels." *Id.*, p.20:14-15.

For the reasons stated above, Defendants' concern regarding the definiteness of the class and "state of mind" issues are overblown. *Leiken*, 1994 WL 494298, at *6; *Hulu Priv. Litig.*, 2014 WL 2758598, at *15. But beyond the fact that "[t]he Court may … consider proposals to change a class definition first raised in a reply brief on a motion for class certification," *United Farm Workers v. Noem*, No. 1:25-cv-246, 2025

WL 1235525, at *28 (E.D. Cal. Apr. 29, 2025) (collecting cases), the Ninth Circuit has specifically advised that courts "can and often should [resolve objections] by refining the class definition rather than by flatly denying class certification on that basis." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc). Thus, although Plaintiffs do not believe minor adjustments to the class definition are truly necessary, they do not oppose any such adjustments and offer solutions to moot Defendants' concerns, which are also detailed in the supplemental declaration of Paul M. Jonna.

**1.** The first potential "state of mind" issue—"desir[ing] to participate" in California's public school system—was meant solely to capture both present and future class members. If necessary, it can be easily modified to "are participating or will participate." *See, e.g.*, *N.O.W. v. Scheidler*, 172 F.R.D. 351, 355 (N.D. Ill. 1997).

**2.** Regarding the phrase, "who object on ideological or conscience grounds," that phrase was meant solely to distinguish the Free Speech and Parental Rights subclasses from the Free Exercise of Religion subclasses. The phrase can simply be omitted as the dispositive phrase is "who object." Neither Free Speech or Parental Rights turn on the objector's motive and whether it is "ideological" or not. *303 Creative LLC v. Elenis*, 600 U.S. 570, 595 (2023) ("[T]he First Amendment's protections … belong to all, including to speakers whose motives others may find misinformed or offensive").[4] To the extent that Defendants contend that "objecting" itself is subjective, that cannot be, as it necessarily occurs in every case: consent vitiates all wrongs. *See, e.g.*, Restatement (Second) of Torts § 892A (1979);

---

[4] To imply that it is a necessary delimitation, Defendants offer the examples of a teacher disclosing a child's gender incongruence because of "an unrelated vendetta against [the] student," or a parent denying a child's request to socially transition because of "unrelated animus toward an ex-spouse." ECF No. 257, p.21:17-21. Although not particularly plausible, it is not explained how a teacher "vendetta" or parental "animus" would change the analyses; they wouldn't. At best, those could be applied at the individualized, child-by-child, determination of parental fitness. But they are irrelevant to the illegality of Defendants' across-the-board policies.

Reply Memorandum ISO Plaintiffs'
Renewed Motion for Class Certification

86 Corpus Juris Secundum, Torts § 33 (2025).

**3.** The next alleged "state of mind" issue is how to define "gender incongruence." As stated by Defendants: "If an assigned-at-birth male child wears makeup, nail polish and long hair, are their parents in the Class? What about the parents of an assigned-at-birth female who has a short haircut, wears traditionally male clothes, and uses a gender-ambiguous nickname?" ECF No. 257, pp.20:19-21:1 (footnotes and emphasis omitted).

Defendants are severely over-complicating the issue. The term "gender incongruent" just means "transgender" or having a gender identity different from one's natal sex. *See, e.g.*, ECF No. 247-11, p.9 (Szajnberg Rep.); ECF No. 247-10, p.9 (Anderson Rep.); ECF No. 243-3, p.191:8-10 (Tando Dep.); ECF No. 243-5, p.15 (Tando's Book); Cal. Health & Saf. Code § 150900(f)(3) ("'Transgender' is broad and inclusive of all gender identities different from the gender that a person was assigned at birth."). The Ninth Circuit has made clear that these are not vague terms, *Tingley v. Ferguson*, 47 F.4th 1055, 1090 (9th Cir. 2022); *S.E. v. Grey*, 782 F. Supp. 3d 939, 952 (S.D. Cal. 2025) (both denying vagueness challenges to "gender identity"), and merely because one has to self-identify their "state of mind" as transgender has been no obstacle to the certification of numerous transgender class actions. *See, e.g.*, *Orr v. Trump*, No. 1:25-cv-10313, 2025 WL 1695941, at *15 (D. Mass. June 17, 2025).

Plaintiffs included the delimitation that a parent must have a transgender child because, without such a child, he could arguably lack standing. *See John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629-30 (4th Cir. 2023) (no standing because "children have [not] had any discussions with school officials about gender-identity or gender-transition issues").[5] But as a general rule, in class actions only "seeking injunctive or declaratory relief, only one plaintiff need demonstrate

---

[5] *But compare Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 972-73 (9th Cir. 2018) (parents suffer an "informational injury" when they cannot trust what schools are telling them); *Int'l Partners for Ethical Care, Inc. v. Ferguson*, 146 F.4th 841, 850 (9th Cir. 2025) (rejecting analogous argument in different context).

standing to satisfy Article III." *Olean Wholesale Grocery*, 31 F.4th at 682 n.32 (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)). The only problem there is that the class may not be defined *too* broadly. *Id*. at 669 n.14 (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Although, "[t]here is no precise measure" for "too broadly," *Messner*, 669 F.3d at 825, much greater flexibility is permitted in an action not seeking damages. *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 87-91 (M.D. Tenn. 2004) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

Here, Plaintiffs do not see the term "gender incongruent" (or "transgender") as fatally vague, but if necessary, the Court could strike the clause "and are experiencing, or have experienced, gender incongruence." That would potentially include parents without Article III standing, but in a Rule 23(b)(2) class action, the class would not be overbroad. *Bush v. Rust-Oleum Corp.*, No. 3:20-cv-3268, 2024 WL 422080, at *5 (N.D. Cal. Feb. 5, 2024) ("expos[ure]" to illegal policy sufficient).

**4.** Defendants next apply similar "state of mind" reasoning as to whether an individual's objection to Parental Exclusion Policies are religiously based. Unlike in the Free Speech and Substantive Due Process contexts, a religious motive is required for a Free Exercise claim. Thus, Plaintiffs' moving papers explained why—despite the need for that motive—a Free Exercise class action is still appropriate. *See* ECF No 244-1, p.31:6-8 (citing *Mayweathers v. Newland*, 258 F.3d 930, 933 (9th Cir. 2001); *Friend v. Kolodzieczak*, 965 F.2d 682, 685 (9th Cir. 1992)). In *Mayweathers*, Muslim inmates obtained class action relief permitting them to attend Friday worship services. *Mayweathers*, 258 F.3d at 933-34. In *Friend*, Roman Catholic inmates obtained class relief permitting them to possess rosary beads and scapulars. *Friend*, 965 F.2d at 683. In both, the court was necessarily required to find that a class member's self-identification of his religious beliefs did not defeat the appropriateness of class certification. The Ninth Circuit is not alone in certifying religion-based class actions. *See, e.g., U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 789 (N.D. Tex. 2022);

*Doster v. Kendall*, 342 F.R.D. 117, 129 (S.D. Ohio 2022).

As their only Free Exercise case, Defendants cite a case in which the Fifth Circuit held that a RFRA class action was inappropriate because of the need to conduct individualized inquiries into the corporate employers' religious sincerity. *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 935 (5th Cir. 2023). But *Braidwood* did not lay out a bright-line rule that a class action cannot be based around religious rights. Rather, the "issue of whether religion plays an important role in an *organization* is an entirely different and much more exacting inquiry than the sincerity of an employee's religious beliefs"—using a complex nine-factor test. *See Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155, 173-76 & n.3 (N.D. Tex. 2024) (emphasis added). *Sambrano* distinguished *Braidwood* on the basis that religious sincerity *for individuals* was established sufficient for class certification simply by raising a religious objection—just like in *U.S. Navy SEALs* and *Doster v. Kendall*.

Thus, if necessary, the class definition can be changed from "who object on religious grounds" to "who submit a request for a religious exemption or opt-out." As indicated in *Sambrano*, and implied in *Mayweathers* and *Friend*, actually submitting a request is an objective action that by itself provides sufficient evidence of religious sincerity. Indeed, the Ninth Circuit recently clarified that facially neutral government regulations can be recognized as a gerrymander *solely* based on their disparate impact on traditional religious beliefs. *Bates v. Pakseresht*, 146 F.4th 772, 792 (9th Cir. 2025) (requirement that foster parents affirm a child's transgender identity was not neutral). If that much can be inferred simply from commonsense, so can the sincerity of a religious objection to gender ideology.

### III. The Court Can Certify a Rule 23(B)(1)(A) Class is

As stated in Plaintiffs' motion, a Rule 23(b)(1)(A) class can be certified where "inconsistent or varying adjudications with respect to individual class members … would establish incompatible standards of conduct for the party opposing the class." *Id.* "[T]he "incompatible standards of conduct" of subdivision (b)(1)(A) must be

interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions." *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 620 (C.D. Cal. 2015). Plaintiffs then cited cases that "raise(d) the legal issue of whether Parental Exclusion Policies violate the Fourteenth Amendment—whether as an affirmative claim or as a defense." ECF No. 244-1, p.20:3-5. Nevertheless, Defendants state simply that "Plaintiffs have not made th[eir] showing" and "it is unclear how class certification in this case (or any other) would stop other state and federal courts from ruling on these issues." ECF No. 257, pp.29:7, 30:17-18.

To clarify, Defendants Bonta and Thurmond are also named as defendants in the cases *City of Huntington Beach v. Newsom, Bonta, & Thurmond*, No. 8:24-cv-2017, (C.D. Cal. Sep. 17, 2024), and *Chino Valley Unified Sch. Dist. v. Newsom, Bonta, & Thurmond*, No. 2:24-cv-1941 (E.D. Cal. July 16, 2024). Both of those cases seek declaratory and injunctive relief allowing local school districts to inform parents about their child's gender incongruence. Both cases were dismissed and are currently on appeal. If they ever proceed to a judgment in which the district court determines the breadth of parental rights under the Fourteenth Amendment, the judgments in those cases against Defendants Bonta and Thurmond could be different from the judgment entered in this case. That's how a Rule 23(b)(1)(A) class works and why it exists.[6]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for class certification.

---

[6] Defendants criticize Plaintiffs' citation to *Adair v. England*, 209 F.R.D. 5 (D.D.C. 2002), for failing to note that the class was de-certified twelve years later. *See* ECF No. 257, p.29:19-30:7 (citing *In re Navy Chaplaincy*, 306 F.R.D. 33, 55 (D.D.C. 2014)). The later opinion did not reject the reasoning of the prior opinion, but de-certified the class based on the intervening years. There was *no longer* a risk of competing judgments because "[a]t least five district courts and two Courts of Appeals have examined Plaintiffs' allegations (or substantially similar ones) over the past decade and none has found the Navy's current policies to be unlawful." *In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014). The opposite is true here.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: September 15, 2025     By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-VET

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- Reply Memorandum in Support of Plaintiffs' Renewed Motion for Class Certification; and
- Supplemental Declaration of Paul M. Jonna, Esq., in Support of Plaintiffs' Renewed Motion for Class Certification.

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

| | |
|---|---|
| Darrell Spence, Superv. Dep. Att'y Gen.<br>Kevin L. Quade, Dep. Att'y Gen.<br>California Department of Justice<br>1300 I Street, Suite 125<br>P.O. Box 944255<br>Sacramento, CA 94244-2550<br>Telephone: (916) 210-6089<br>E-Mail: Darrell.Spence@doj.ca.gov<br>E-Mail: kevin.quade@doj.ca.gov | Emmanuelle Soichet, Dep. Att'y Gen.<br>Jennifer Bunshoft, Dep. Att'y Gen.<br>Shatti Hoque, Dep. Att'y Gen.<br>California Department of Justice<br>455 Golden Gate Ave., Ste. 1100<br>San Francisco, CA 94102-7004<br>E-Mail: emmanuelle.soichet@doj.ca.gov<br>E-Mail: Jennifer.Bunshoft@doj.ca.gov<br>E-Mail: shatti.hoque@doj.ca.gov |
| Darin L. Wessel, Dep. Att'y Gen.<br>California Department of Justice<br>600 W Broadway Ste 1800<br>San Diego, CA 92101-3375<br>Telephone: (619) 738-9125<br>E-Mail: Darin.Wessel@doj.ca.gov<br>**Attorneys for CDE Defendants** | Daniel R. Shinoff, Esq.<br>Jack Sleeth, Esq.<br>Maurice Bumbu, Esq.<br>Lauren Cambronero, Esq.<br>Artiano Shinoff<br>3636 Fourth Avenue, Suite 200<br>San Diego, CA 92103<br>Tel: 619-232-3122<br>E-Mail: dshinoff@as7law.com<br>E-Mail: nlay@as7law.com<br>E-Mail: jsleeth@as7law.com<br>E-Mail: mbumbu@as7law.com<br>E-Mail: lcambronero@as7law.com<br>**Attorneys for EUSD Defendants** |

 X    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

 X    **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on September 15, 2025, at Rancho Santa Fe, California.

_____
Kathy Denworth