Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice**
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,

   Plaintiffs,

  v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

   Defendants.

Case No.: 3:23-cv-0768-BEN-VET

**Reply Memorandum in Support of Plaintiffs' Renewed Motion for
(1) Summary Judgment on Prospective Relief Claims;
(2) Partial Summary Judgment re Liability on Damages Claims;
(3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and
(4) Entry of a Class-Wide Permanent Injunction**

Judge:   Hon. Roger T. Benitez
Courtroom:  5A
Hearing Date: September 29, 2025
Hearing Time: 10:30 a.m.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

REPLY ARGUMENT ............................................................................... 2

    I.    Plaintiffs' Claims Remain Justiciable. ................................... 2

        A.    The CDE's Removal of the FAQ Page Does Not Moot this Case ........................................................... 2

        B.    Plaintiffs Have Standing to Seek Prospective Relief ................. 3

    II.    The Court Should Grant Plaintiffs Summary Judgment on their Claims for Prospective Relief ....................................... 5

        A.    Plaintiffs' Claims Both Facially and As-Applied. ..................... 5

        B.    Under the Free Exercise Clause, Both Religious Parents and Teachers Have the Right to Opt Out of Parental Exclusion Policies ........................................ 7

            1.    The Burden on Parent's Religion Triggers Strict Scrutiny .............................................. 7

            2.    The Exemptions Trigger Strict Scrutiny for Teachers ................................................... 8

            3.    Parental Exclusion Policies Cannot Satisfy Strict Scrutiny ............................................. 10

        C.    Under the Fourteenth Amendment Right to Direct the Upbringing of Children, Parental Exclusion Policies Are Unconstitutional ................................... 11

            1.    Directing a Child's Social Transition is Within the Parental Right ....................................... 11

            2.    The Medical Treatment of a Child's Social Transition is Within the Parental Right ..................... 12

        D.    Under Teacher's First Amendment Right to Freedom of Speech, Parental Exclusion Policies Are Unconstitutional ......................................... 14

            1.    Gender Identity is a Matter of Public Concern ............. 14

2.      Parental Exclusion Policies Are Unnecessary for Education .................................................. 15

3.      There Is No Legitimate State Administrative or Efficiency Interest Requiring Parental Exclusion Policies ........................................... 16

E.     The Family Educational Rights and Privacy Act ("FERPA") Requires Parent Access to Gender Support Plans........................................................... 17

III.     The Court Should Grant Plaintiffs Partial Summary Judgment on Liability for the EUSD Damages Claims ...................... 18

IV.     The Court Should Enter a Rule 54(b) Separate Judgment on the Prospective Relief Claims and stay the Rest of the Case, and Enter a Class-Wide Injunction. ......................... 19

A.     The Court Should Enter a Rule 54(b) Separate Judgment on the Prospective Relief Claims and stay the Rest of the Case ................................. 19

B.     The Court Should Enter a Class-Wide Injunction................... 19

CONCLUSION.............................................................................. 20

REPLY MEMORANDUM ISO PLAINTIFFS' RENEWED
MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**CASES**

*Alfonso v. Fernandez*,
195 A.D.2d 46 (N.Y. App. Div. 1993) ............................................ 12

*Ass'n for Accessible Meds. v. Bonta*,
562 F. Supp. 3d 973 (E.D. Cal. 2021) ............................................ 19

*Bacon v. Woodward*,
104 F.4th 744 (9th Cir. 2024) ....................................................... 9

*Balandran v. Balandran*,
No. B335531, 2025 WL 2416708 (Cal. Ct. App. July 22, 2025) ............... 10, 11

*Bates v. Pakseresht*,
146 F.4th 772 (9th Cir. 2025) ................................................... 8, 9

*Belanger v. Nashua Sch. Dist.*,
856 F. Supp. 40 (D.N.H. 1994) ..................................................... 17

*Blue Ridge Ins. Co. v. Stanewich*,
142 F.3d 1145 (9th Cir. 1998) ..................................................... 14

*Burch v. City of Chubbuck*,
146 F.4th 822 (9th Cir. 2025) ..................................................... 14

*City of Huntington Beach v. Newsom*,
No. 8:24-cv-2017, 2025 WL 1720210 (C.D. Cal. June 16, 2025) .............. 12, 13

*City of San Diego v. Roe*,
543 U.S. 77 (2004) ................................................................. 15

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013) .................................................. 15, 16

*Damiano v. Grants Pass Sch. Dist. No. 7*,
140 F.4th 1117 (9th Cir. 2025) .................................................... 16

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ..................................................... 10, 13, 14, 16

*Deanda v. Becerra*,
645 F. Supp. 3d 600 (N.D. Tex. 2022) .............................................. 12

*Deanda v. Becerra*,
96 F.4th 750 (5th Cir. 2024) ...................................................... 12

*Dodge v. Evergreen Sch. Dist. #114*,
    56 F.4th 767 (9th Cir. 2022) ........................................................ 14

*Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*,
    No. 23-3740, 2025 WL 2453836 (6th Cir. Aug. 26, 2025) ................... 7, 8

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) ........................................................ 9

*Doe v. Uthmeier*,
    407 So. 3d 1281 (Fla. Dist. Ct. App. 2025) .................................... 12

*Dr. A v. Hochul*,
    142 S. Ct. 552 (2021) .................................................................. 9

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ........................................................ 13

*Espinoza v. Mont. Dep't of Revenue*,
    591 U.S. 464 (2020) .................................................................... 11

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) ...................................................... 8, 9

*Fischer v. United States*,
    603 U.S. 480 (2024) .................................................................... 13

*Foote v. Ludlow Sch. Comm.*,
    128 F.4th 336 (1st Cir. 2025).................................................... 12, 13

*Foothills Christian Ministries v. Johnson*,
    ___ F.4th ___, 2025 WL 2351204 (9th Cir. Aug. 14, 2025) ............... 9, 10

*Friedman v. Jenkins*,
    No. 4:23-cv-5036, 2024 WL 2750021 (N.D. Cal. May 29, 2024) ........... 16

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021)..................................................................... 9

*Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*,
    No. 5:22-cv-2237, 2024 WL 3758499 (N.D. Ohio Aug. 12, 2024) ......... 16

*Greisen v. Hanken*,
    925 F.3d 1097 (9th Cir. 2019) ...................................................... 16

*Hill v. NCAA*,
    7 Cal. 4th 1 (1994) ...................................................................... 8

REPLY MEMORANDUM ISO PLAINTIFFS' RENEWED
MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION

*In re N.R.*,
    87 Cal. App. 5th 1187 (2023) .......................................................... 10

*Jacob B. v. Cnty. of Shasta*,
    40 Cal. 4th 948 (2007) .................................................................... 9

*Lavigne v. Great Salt Bay Cmty. Sch. Bd.*,
    146 F.4th 115 (1st Cir. 2025) ....................................................... 13

*Littlejohn v. Sch. Bd. of Leon Cnty.*,
    132 F.4th 1232 (11th Cir. 2025) .................................................... 12

*Loffman v. Cal. Dep't of Educ.*,
    119 F.4th 1147 (9th Cir. 2024) ...................................................... 11

*Lopez-Valenzuela v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014) ............................................................ 7

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ....................................................... 14

*Mann v. Cnty. of San Diego*,
    907 F.3d 1154 (9th Cir. 2018) ....................................................... 12

*Marken v. Santa Monica-Malibu Unified Sch. Dist.*,
    202 Cal. App. 4th 1250 (2012) ........................................................ 9

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ....................................................................... 18

*Mirabelli v. Olson*,
    691 F. Supp. 3d 1197 (S.D. Cal. 2023) ........................................ 17

*Mirabelli v. Olson*,
    761 F. Supp. 3d 1317 (S.D. Cal. 2025) ........................................ 11

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) ....................................................................... 13

*Parham v. J.R.*,
    442 U.S. 584 (1979) ....................................................................... 12

*Pickering v. Twp. High Sch. Dist.*,
    205 391 U.S. 563 (1968) ......................................................... 14, 16

*S. Bay United Pentecostal Church*,
    141 S. Ct. 716 (2021) ..................................................................... 10

Reply Memorandum ISO Plaintiffs' Renewed
Motion for Summary Judgment or a Preliminary Injunction

*Sandoval v. Pali Inst., Inc.*,
     113 Cal. App. 5th 616 (2025) ........................................................ 15

*Snyder v. Phelps*,
     562 U.S. 443 (2011) ................................................................ 15

*Stanley v. Illinois*,
     405 U.S. 645 (1972) ......................................................... 7, 10, 16

*Stromberg v. People of State of Cal.*,
     283 U.S. 359 (1931) ................................................................ 15

*T.F. v. Kettle Moraine Sch. Dist.*,
     No. 21-cv-1650 (Wis. Cir. Ct., Waukesha Cnty., Oct. 3, 2023) ..................... 13

*Taking Offense v. California*,
     66 Cal. App. 5th 696 (2021) ....................................................... 15

*Tandon v. Newsom*,
     593 U.S. 61 (2021) ................................................................ 10

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
     393 U.S. 503 (1969) ............................................................... 15

*Villiarimo v. Aloha Island Air, Inc.*,
     281 F.3d 1054 (9th Cir. 2002) ..................................................... 14

*Vitsaxaki v. Skaneateles Cent. Sch. Dist.*,
     771 F. Supp. 3d 106 (N.D.N.Y. 2025) ............................................... 13

*Vlaming v. W. Point Sch. Bd.*,
     302 Va. 504 (2023) ................................................................ 16

*Wallis v. Spencer*,
     202 F.3d 1126 (9th Cir. 2000) ..................................................... 12

*Wisconsin v. Yoder*,
     406 U.S. 205 (1972) ................................................................. 8

**STATUES & RULES**

28 U.S.C. § 1232g(a)(1)(A) .............................................................. 17

42 U.S.C. § 1983 ....................................................................... 20

Cal. Educ. Code § 220.3 ................................................................ 20

Cal. Educ. Code § 220.5 ................................................................ 20

Fed. R. Civ. P. 23(b)(2) ................................................................. 5

REPLY MEMORANDUM ISO PLAINTIFFS' RENEWED
Motion for Summary Judgment or a Preliminary Injunction

Fed. R. Civ. P. 54(b) ........................................................................ 19, 20

S.D. Civ. L.R. 7.1(f)(3)(c) ....................................................................... 19

**OTHER AUTHORITIES**

Michael T. Morley, *Disaggregating Nationwide Injunctions*,
    71 Ala. L. Rev. 1 (2019) ............................................................... 6

Tobias B. Wolff, *Discretion in Class Certification*,
    162 U. Pa. L. Rev. 1897 (2014) ....................................................... 6

# INTRODUCTION[1]

On August 16, 2024, Plaintiffs filed an early motion for summary judgment and motion for class certification. ECF Nos. 136, 137. As Plaintiffs explained therein, early summary judgment was appropriate because the material disputes between the parties were entirely legal. Nevertheless, the State Defendants requested that the Court stay these motions as premature. ECF Nos. 142, 148. As explained by Attorney General Bonta, "[t]his extremely expedited schedule affords the Attorney General no meaningful opportunity to conduct discovery, prepare memoranda of points and authorities, retain experts if needed, and engage in other standard litigation practices necessary to effectively brief the Court on the complicated, novel, and important legal issues in this case." ECF No. 142, p.2:13-17; *see also id.*, p.6:9-12. For their part, the CDE Defendants argued that, "By their unorthodox effort to rush these highly complex motions to hearing, Plaintiffs attempt to short-circuit defendants' well-established right to engage in reasonable discovery to develop a factual record on critical issues related to their defenses to the SAC." ECF No. 148, pp.2:25-3:4.

Now, a year later, the parties have taken or defended twenty fact-witness depositions, retained four expert witnesses and deposed each them, served subpoenas and received documents from three school districts (deposing two of them), and obtained the records of five mental health providers and two hospitals. Once all this was complete, Plaintiffs filed a very similar renewed motion for summary judgment. *See* ECF No. 247. In opposition, Defendants ignore twenty-two of the twenty-four deposition transcripts and only submit portions of the deposition transcripts of their own experts—hoping to rehabilitate them. *See* ECF No. 256. Defendants' briefing is very telling: the issues in this case are overwhelmingly legal and are ripe for resolution on summary judgment.

---

[1] This brief is 20-pages in accordance with the Court's grant of expanded briefing. *See* ECF Nos. 138, 200 ("The page limits for that joint reply brief would be proportional to the oversized joint opposition brief"). All page cites are to the ECF stamp.

# REPLY ARGUMENT

## I. PLAINTIFFS' CLAIMS REMAIN JUSTICIABLE.

Defendants' first argument is that Plaintiffs lack standing to sue any of the
State Education Defendants. Specifically, Defendants argue that Plaintiffs' claims
against the CDE Defendants are moot, Plaintiffs lack standing to seek prospective
relief, and the Attorney General is protected by sovereign immunity. ECF No. 256,
pp.17-22. Much of this argument is duplicative of Defendants' earlier motions to
dismiss and appears included solely to preserve the issue for appeal. *See* ECF No.
149-1, 150-1, 156-1, 195-1. Thus, Plaintiffs primarily refer back to their prior
oppositions, ECF Nos. 162, 207, 220, 225, and the Court's orders finding standing.
ECF Nos. 194, 236, with only summary responses.

### A. The CDE's Removal of the FAQ Page Does Not Moot this Case

In sum, on mootness, Defendants argue that the CDE's removal of the FAQ
page moots this case. ECF No. 256, p.17. But it is not clear that taking down the FAQ
page has cured *any* of its effects, let alone *all* of its effects, which "could be remedied
by a court order declaring the mandate unlawful." *Jackson v. Noem*, 132 F.4th 790, 794
(5th Cir. 2025). As stated in Plaintiffs' motion, the FAQ page linked to a model
AR 5145.3 which school districts across the state adopted usually verbatim. Although
that FAQ page has been taken down, school districts still use that model policy. ECF
No. 247-1, pp.25:20-29:10.

Defendants state that their "explicit withdrawal and replacement of those earlier
FAQs unequivocally conveys to districts that the rescinded guidelines are no longer in
effect," or, alternatively, that they have "unequivocally communicated to districts that
the rescinded guidance Plaintiffs focus on is no longer in effect." ECF No. 256,
pp.17:10-20, 21:12-14. Below is the alleged "unequivocal" statement:

> The new guidance replaces (1) Frequently Asked Questions: School
> Success and Opportunity Act (Assembly Bill 1266) and (2) Legal
> Advisory regarding the application of California's antidiscrimination
> statutes to transgender youth in schools.

ECF No. 256-5, p.31. This is actually a textbook definition of an equivocal statement. A case is not moot unless it is impossible for a court to grant "*any effective relief.*" *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 846-47 (9th Cir. 2009). To provide complete redress, the CDE would need to explicitly instruct all school districts that Parental Exclusion Policies are illegal. *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024); *Fikre v. FBI*, 35 F.4th 762, 771-72 (9th Cir. 2022).

### B. Plaintiffs Have Standing to Seek Prospective Relief

Prospectively, Defendants do not dispute that they have to run the gamut because "in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc). For Plaintiffs Roe and Boe, Defendants rely on a disavowal of enforcement against EUSD; for Plaintiffs Mirabelli and West, Defendants state that there is no history of *past*-enforcement because the *Bonta v. Chino Valley* case is distinguishable and that there is no need for future relief based on their current situations. ECF No. 256, pp.18-20.

For the disavowal, Defendants' actual disavowal was that "we're ready to make—to disavow any enforcement action against EUSD for any actions that EUSD takes in compliance with this Court's order." ECF No. 111, pp.15:25-16:3; *see also* ECF No. 193, pp.8:7-9:3. But courts "do not require [a] 'whack-a-mole' approach to mootness," *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008 (9th Cir. 2023), so "the government's disavowal must be more than a mere litigation position." *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010). And regarding the *Chino Valley* case, Defendants never explain why the distinction they make between "forced-disclosure policies" and "Parental Exclusion Policies" is a relevant one. For both, Defendants have vigorously argued that they are either precluded by, or required by, the Privacy Clause of the California Constitution. The *reasons* why Defendants found Chino Valley's policy illegal apply equally here. *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489 (9th Cir. 2024) (primary consideration is "whether [the plaintiff] plausibly alleged

... the Attorney General's interpretation of [the law]"); ECF No. 247-1, p.29:3-10 (record cites for the proposition that "both the CDE and Attorney General continue to assert that those directives did accurately summarize what the law currently requires"); ECF No. 255-3 (new PRISM training for all school staff on LGBTQ+ competency reiterating student privacy rights).

For the Doe Family and the Poe Family, Defendants stress the lack of likely future injury for the same reasons: withdrawal of the FAQ page and alleged lack of prior similar enforcement. But standing deals with "commonsense ... realities," *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136 (2025), and the reality here is that both the Doe Family's and the Poe Family's school districts continue to apply the *state's* Parental Exclusion Policies. *See* ECF No. 247-17, Apodaca Dep., 24:4-25:6, 58:15-20; ECF No. 247-6, Jane Poe Decl., ¶23. Indeed, here, the Poe Family explicitly instructed their child's school on August 30, 2025, to not facilitate a social transition for her and were told an unambiguous "no." *See* Supp. John Poe Decl., Ex. I. The CDE's FAQ page and model AR 5145.3—and the Attorney General's "Know Your Rights" page—are having long-lasting effects. Yet the Supreme Court has recently explained that courts "do not need to 'wait and see' how [an activity occurs] in a particular classroom on a particular day before evaluating the parents' First Amendment claims," *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2358 (2025), especially when Defendants admit in briefing "disclosure of their child's gender identity [would be] in contravention of state privacy laws." ECF No. 256, p.30:6.

For Plaintiffs West and Mirabelli, Defendants want to turn the focus away from their own state-wide actions to West's and Mirabelli's current situations. As stated in her declaration, Plaintiff West is serving as a long-term substitute teacher for the Sweetwater school district. ECF No. 247-3, ¶48. Plaintiff Mirabelli's health has improved and she is applying to be a guest teacher with the Carlsbad school district. Supp. Mirabelli Decl., ¶¶2-6. Unsurprisingly, both school districts enforce the state's Parental Exclusion Policies. Supp. Jonna Decl., Exs.J-K; Supp. Mirabelli Decl., Ex. S.

Lastly, the Attorney General also argues that sovereign immunity bars an action for prospective relief against him, again on the basis of an alleged lack of prior similar enforcement. ECF No. 256, pp.21-22. But, as stated above, the prior enforcement is *relevantly* similar.[2]

## II. The Court Should Grant Plaintiffs Summary Judgment on their Claims for Prospective Relief

### A. Plaintiffs' Claims Both Facially and As-Applied.

Plaintiffs' complaint seeks "[a]n order and judgment declaring that Parental Exclusion Policies as promulgated by the California Attorney General, the CDE, and EUSD, facially and as-applied to Plaintiffs, violate the First and Fourteenth Amendments to the U.S. Constitution." ECF No. 133, SAC, p.121:9-12.

"In a typical facial challenge, a plaintiff cannot succeed 'unless he establishes that no set of circumstances exists under which the law would be valid,' or he shows that the law lacks a 'plainly legitimate sweep.'" *X Corp. v. Bonta*, 116 F.4th 888, 898 (9th Cir. 2024) (quoting *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)) (cleaned up). Generally, on a facial challenge, the court "consider[s] only the text of the challenged rules." *Rhode v. Bonta*, 145 F.4th 1090, 1103 (9th Cir. 2025) (quoting *Nguyen v. Bonta*, 140 F.4th 1237, 1240 (9th Cir. 2025)) (brackets omitted). But a facial challenge can also be brought against informal or unwritten policies, *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011), and against severable portions of a statute. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1049 (9th Cir. 2007).

"Whether a challenge is 'facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding breadth of the remedy." *Regino v. Staley*, 133 F.4th 951, 967 (9th Cir. 2025) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)) (cleaned up). As a result, a facial challenge and a Rule 23(b)(2) class action are very similar. "[V]irtually any facial challenge to a legal

---

[2] There is no argument that the CDE is protected by sovereign immunity from prospective relief. *See Woolard v. Thurmond*, ___ F.4th ___, 2025 WL 2619134, *2 n.2 (9th Cir. Sep. 11, 2025).

provision … would likely satisfy the requirements for Rule 23(b)(2) class certification as a matter of law." Michael T. Morley, *Disaggregating Nationwide Injunctions*, 71 Ala. L. Rev. 1, 52 (2019). Thus, class certification may be unnecessary where a ruling of facial invalidity provides complete relief. Tobias B. Wolff, *Discretion in Class Certification*, 162 U. Pa. L. Rev. 1897, 1938 (2014).

Here, Plaintiffs believe that the issue of parental rights under Substantive Due Process and the Free Exercise Clause are particularly apt for resolution facially. Here, the CDE's Parental Exclusion Policies on their FAQ page imposed the following requirements: (1) "school districts should accept and respect a student's assertion of their gender identity where the student expresses that identity at school," (2) "schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family"; (3) "[w]ith rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents"; and (4) "[a] transgender student's right to privacy does not restrict a student's right to openly discuss and express their gender identity or to decide when or with whom to share private information." ECF No. 247-16, pp.170-72. This interpretation of California law is reflected in the model policy, AR 5145.3, which has been adopted by virtually every school district at the explicit direction of the State Defendants. *See* ECF No. 207-1, pp.5-21 (partial list of school districts with PEPs).

Defendants state that a facial challenge necessarily fails because California laws "permit disclosure of gender-identity information to parents in some circumstances without student consent, most notably where there is a compelling need for nonconsensual disclosure." ECF No. 256, p.23:10-14. But that does not cure the problem. As explained below, the government must presume that permitting parents to make the decisions regarding their children's gender presentation will be in the children's best interest. *Troxel v. Granville*, 530 U.S. 57, 68 (2000); *see also id.* at 77 (Souter, J., concurring) ("I concur in the … facial invalidation"). But Parental

Exclusion Policies "turn[] this presumption on its head." *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 937 (10th Cir. 2025) (McHugh, J., concurring). That defect makes them facially invalid. *See Stanley v. Illinois*, 405 U.S. 645, 654 (1972) (holding statute invalid that presumed all unwed fathers were unfit despite the fact some unwed fathers are unfit); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 789 (9th Cir. 2014) (holding statue precluding pre-trial release facially invalid despite the existence of "persons who could be detained consistent with due process under a different categorical statute").

**B. Under the Free Exercise Clause, Both Religious Parents and Teachers Have the Right to Opt Out of Parental Exclusion Policies**

**1. The Burden on Parent's Religion Triggers Strict Scrutiny**

In *Mahmoud v. Taylor*, the Supreme Court held that when the government "substantially interfer[es] with the religious development of the parents' children," then "we need not ask whether the law at issue is neutral or generally applicable before proceeding to strict scrutiny." 145 S. Ct. 2332, 2361 (2025) (cleaned up). This should be dispositive of the Parent Plaintiffs' Free Exercise claims. *See* ECF No. 247-1, p.41.

In response, Defendants state that *Mahmoud* is limited to when the government "requires [parents] to *submit their children to instruction*" that undermines their religious beliefs, and does not "permit[] [parents] to override a school's policy for how staff interacts with the students." ECF No. 256, p.26:23, 27:13-14 (original emphasis). Thus, Defendants argue that parents do not have the right to consent[3] before a school socially transitions their child. *Id*. This argument appears to be based on an unpublished Sixth Circuit decision which rejected the argument that parents have a right under *Mahmoud* to require schools to adopt sex-segregated, as opposed to gender-identity-segregated, bathrooms. *Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836, at *6-7 & n.3 (6th Cir. Aug. 26, 2025).

---

[3] Defendants also state that Plaintiffs lack a right to notice, separate from consent, for essentially the same reasons. ECF No. 256, pp.28-30. Plaintiffs agree that whether a right to notice and consent is *triggered* uses the same analysis. It is only at the strict scrutiny stage that the analysis would differ.

But as concurring Judge Larsen explained, the key holding of *Mahmoud* was that strict scrutiny applies when schools "substantially interfere" with a parent's right to direct the upbringing of their children without an "opt out"; it was not limited to "instruction." *Doe No. 1*, 2025 WL 2453836, at *12-13. Thus, because religious students already had an opt out (they could use the gender neutral, single-person bathrooms), *Mahmoud* did not apply. *Id.* at *14. The issue is not "instruction" but the "character of the burden." Here, the policies at issue in this case far more severely burden a parent's right to direct their child's religious upbringing—by allowing them to alter their gender presentation at school, reinforcing the state's views on gender ideology, and even risking harm to their children, as shown by the case of Child Poe and countless others. *Cf. Bates v. Pakseresht*, 146 F.4th 772, 790 (9th Cir. 2025).

So Defendants then pivot to argue that opt-outs were required in *Mahmoud* because they would not "undermine the learning environment," whereas here "[i]f a teacher is forced (because of a parent's religious insistence) to refer to a student by a name or pronouns different from that student's gender identity, that necessarily shapes the school culture for *all students* … [and] reinforces for every student on campus that transgender students are wrong." ECF No. 256, pp.27:15-28:19 (emphasis added). But this logic was expressly rejected in *Mahmoud*. There, the school district argued that it was impossible to opt-out children from reading LGBT-themed storybooks because the school district wanted to weave LGBT themes into all aspects of the curriculum to create a sense of normativity. The Court was unimpressed. 145 S. Ct. at 2362-63.

## 2. The Exemptions Trigger Strict Scrutiny for Teachers

For teachers, Plaintiffs' motion explains that strict scrutiny is triggered because of both discretionary exemptions and comparable exemptions. ECF No. 247-1, pp.41-44; *see Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023) ("*FCA*") (en banc). As Plaintiffs explained, California's Parental Exclusion Policies—whether enunciated in the CDE's FAQ page, the Attorney General's "Know Your Rights" page, or the model AR 5145.3

previously analyzed by the Court—are based on the Privacy Clause of the California Constitution, which is overcome via a "sufficient countervailing interest," *Hill v. NCAA*, 7 Cal. 4th 1, 40 (1994); thus, the analysis turns on discretion.

Defendants' response is to limit the scope of the "countervailing interest" to "a compelling *safety need*" for anybody, either the person whose privacy is violated or third parties. ECF No. 256, p.32:22-33:13 (emphasis added). This is both factually and legally wrong. *See, e.g.*, ECF No. 247-16, p.172 (FAQ Page: disclosure permitted for "compelling 'need to know'," not just safety reasons). The "countervailing interest" can be the litigation privilege, *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 962 (2007), or even government transparency. *Marken v. Santa Monica-Malibu Unified Sch. Dist.*, 202 Cal. App. 4th 1250, 1271 (2012). It is also legally wrong "that *Fulton* was only concerned with 'unfettered' discretion." *FCA*, 82 F.4th at 687 (en banc).[4]

For the comparable exemptions, Defendants make the same error. First, recognizing that comparability turns on the "government interest that justifies the regulation," Defendants cabin the exemptions to "the student's safety or wellbeing." ECF No. 256, p.35:1-28. But, as stated above, the exemptions are not so cabined.

Second, Defendants argue that a religious exemption is not comparable because the number of safety exemptions will likely be "very small" but the number of teachers who will "seek a religious exemption is large." ECF No. 256, pp.36:1-37:4 (citing *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177-78 (9th Cir. 2021)). As an emergency order, *Doe* is "persuasive but not binding" and turned on the fact that the government's interest was "health and safety." *Bacon v. Woodward*, 104 F.4th 744, 752 (9th Cir. 2024). As stated, the exemptions available here are not so cabined, the number of exemptions for other reasons are actually unknown—Defendants simply state that "[c]ommon sense dictates" they will be "rare," ECF No. 256, p.13-15—and

---

[4] A panel decision cannot overrule an en banc decision from a few years earlier. *See Bates v. Pakseresht*, 146 F.4th 772, 797 (9th Cir. 2025) (following *FCA*); *Foothills Christian Ministries v. Johnson*, ___ F.4th ___, 2025 WL 2351204, at *5 (9th Cir. Aug. 14, 2025) (apparently rejecting *FCA*, but without acknowledgment).

the "general applicability test doesn't turn on that kind of numbers game." *Dr. A v. Hochul*, 142 S. Ct. 552, 556 (2021) (Gorsuch, J., dissenting).

Third, with respect to other, statutory exemptions, Defendants state that they are not comparable because they are inspired by "different government interests." ECF No. 256, p.37:5-26. But "[c]omparability is concerned with the risks various activities pose, not the reasons why [the activities are undertaken]." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). The interest here is student privacy, which is equally undermined by religious exemptions as it is by any other. *See FCA*, 82 F.4th at 689.

### 3. Parental Exclusion Policies Cannot Satisfy Strict Scrutiny

As stated in Plaintiffs' motion for summary judgment, "[t]he whole point of strict scrutiny is to test the government's assertions, and our precedents make plain that it has always been a demanding and rarely satisfied standard." *S. Bay United Pentecostal Church*, 141 S. Ct. 716, 718 (2021) (Statement of Gorsuch, J.). Here, Defendants proffer compelling interests in (1) protecting transgender students from "bullying and harassment" and from "a heightened risk of suicide," and (2) protecting their "privacy as to their bodily autonomy, even with respect to their parents." ECF No. 256, pp.38:1-39:18; *but see* ECF No. 247-10, pp.45-49 (Dr. Anderson rebutting the suicide myth).

On the first point, as stated in Plaintiffs' *Daubert* motion and objections, the Court should strike the declarations of Brady, Tando, and Al-Shamma. *See* ECF No. 243; Plts.' Obj. No. 5. No amount of expert testimony can overcome the law. Absent *child-specific* information to the contrary, the government must presume that providing more information to a child's parents will lead to *less* "bullying and harassment" and a *lower* "risk of suicide." The government must further presume that permitting parents to make the decisions regarding when, how, and whether their child will transition to a different gender will be in the child's best interest. *Troxel*, 530 U.S. at 68. That presumption can be overcome in individual cases, but it cannot be overcome on a class-wide basis. *Stanley*, 405 U.S. at 656-57 ("individualized determination" is

always required); *In re N.R.*, 87 Cal. App. 5th 1187, 1190, 1199-1201 (2023) ("Ascertainment of parental fitness or child detriment is a child-by-child inquiry"); *Balandran v. Balandran*, No. B335531, 2025 WL 2416708, at *7 (Cal. Ct. App. July 22, 2025) ("The trial court's assumptions … are no substitute for clear and convincing evidence that [the parent's] decisions were detrimental to the children").

On the last point, "the long-recognized federal constitutional rights of parents must eclipse the state [privacy] rights of the child." *Mirabelli v. Olson*, 761 F. Supp. 3d 1317, 1336 (S.D. Cal. 2025). California's interests under its Privacy Clause "cannot qualify as compelling in the face of the infringement of [the U.S. Constitution] here." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1170 (9th Cir. 2024) (quoting *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 484-85 (2020)) (cleaned up).

## C. Under the Fourteenth Amendment Right to Direct the Upbringing of Children, Parental Exclusion Policies Are Unconstitutional

In Plaintiffs' motion, the Parent Plaintiffs asserted that their Fourteenth Amendment right to direct the upbringing of their children, and to direct the healthcare of their children, gave them the right to consent or not before their school socially transitions their child. *See* ECF No. 247-1, pp.47-50.

### 1. Directing a Child's Social Transition is Within the Parental Right

On the first point, Defendants state that Plaintiffs "have failed to show" that schools effectuating a social transition "fall[s] within the 'intimate' privacy decisions protected by the Fourteenth Amendment." ECF No. 256, p.43:17-22. There is nothing to rebut here, so Plaintiffs refer back to their original briefing. *See* ECF No. 247.[5] Then Defendants pivot, stating that even if Plaintiffs have the right to direct the gender transition of their own children, this Court should follow the First Circuit's rule

---

[5] Defendants also accuse Plaintiffs of recently "reframing" their legal theory by citing portions of the complaint that broadly discuss parents' "right to direct the upbringing of their children." ECF No. 256, p.42 n.10. There is no reframing here. The complaint has always referred to parents' right to "knowledge and consent" before a school gender transitions their child. ECF No. 133, SAC, p.42, ¶174.

that the right is only violated through "coercive conduct" or "affirmative deception"—i.e., there is no violation if the child agrees or teachers do not lie—because schools have no duty to "affirmatively foster the parent/child relationship." *See* ECF No. 256, pp.50:9-52:3 (emphasis omitted) (citing *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 353 (1st Cir. 2025), *cert. petition docketed*, No. 25-77 (U.S., July 22, 2025)).

Notably, Defendants cite no cases from the Ninth Circuit and there is no hint of such a requirement in key Ninth Circuit cases. *See, e.g.*, *Regino v. Staley*, 133 F.4th 951, 964-65 (9th Cir. 2025); *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1158 (9th Cir. 2018); *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). "Simply because the decision of a parent is not agreeable to a child" does not "transfer the power to make that decision from the parents to some agency or officer of the state," *Parham v. J.R.*, 442 U.S. 584, 603 (1979), and post-*Foote*, the Supreme Court reiterated the inherently "coercive nature of [the] classroom." *Mahmoud*, 145 S. Ct. at 2355. This Court should follow the Supreme Court and the Ninth Circuit, not *Foote*.[6]

### 2. The Medical Treatment of a Child's Social Transition is Within the Parental Right

On the second point, Defendants concede that parents have the constitutional right to direct their children's healthcare, but devote seven pages to disputing that

---

[6] Although Defendants cite cases from several circuits, the majority of quotes are dicta. The First Circuit's novel rule has only spread to a few cases. *See Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1245 (11th Cir. 2025), *cert. petition docketed*, No. 25-259 (U.S., Sep. 5, 2025); *City of Huntington Beach v. Newsom*, No. 8:24-cv-2017, 2025 WL 1720210, at *10-11 (C.D. Cal. June 16, 2025), *appeal filed*, No. 25-3826 (9th Cir., June 18, 2025). The Ninth Circuit's instructions in *Regino* made no mention of this supposed rule and many courts have rejected it. *See, e.g.*, *Alfonso v. Fernandez*, 195 A.D.2d 46, 56 (N.Y. App. Div. 1993) (irrelevant that student's participation in condom program was "wholly voluntary"); *Doe v. Uthmeier*, 407 So. 3d 1281 (Fla. Dist. Ct. App. 2025) (judicial bypass law for minor's abortion requires, at a minimum, notice to parent and hearing before right is removed); *Deanda v. Becerra*, 645 F. Supp. 3d 600, 627-28 (N.D. Tex. 2022), *aff'd in relevant part*, 96 F.4th 750 (5th Cir. 2024) (rejecting a "voluntary-compulsory distinction" as conflicting with "controlling precedent" and "the history of parental rights").

---

social transition is a "medical treatment." *See* ECF No. 256, pp.44-50. To begin, Defendants cite three non-binding cases where courts dismissed Fourteenth Amendment claims on the basis that a social transition is not a "medical treatment." *See* ECF No. 256, pp.45:18-46:23.[7] But none of those cases had a fully developed record, as here, or other cases. *See T.F. v. Kettle Moraine Sch. Dist.*, No. 21-cv-1650, *9-10 (Wis. Cir. Ct., Waukesha Cnty., Oct. 3, 2023) (on summary judgment: "This is undisputedly a medical and healthcare issue"); *cf. Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 119-20 (1st Cir. 2025) (noting staff had secretly provided a chest binder but dismissing due to lack of *Monell* liability).

In relying on their non-binding cases, and in attempting to distinguish the Ninth Circuit's statement that a social transition is an "evidence-based treatment option[] for individuals with gender dysphoria," *Edmo v. Corizon, Inc.*, 935 F.3d 757, 770 (9th Cir. 2019), Defendants nonsensically state that "[s]imply including something in a list of possible 'treatments' … does not mean that everything on the list qualifies as a medical or psychological treatment." ECF No. 256, p.47 n.15. Yes it does. *See Fischer v. United States*, 603 U.S. 480, 487 (2024) (canons of *noscitur a sociis* and *ejusdem generis*).

Turning to the facts, Defendants state that social transition cannot be a "treatment" because a transgender identity is not a "psychological disorder." ECF No. 256, pp.46:24-47:11. But, as explained in Plaintiffs' *Daubert* motion, that is a logical error; a gender transition can be "treatment" without the underlying condition being a "disorder." *See* ECF No. 243-1. Finally, Defendants spend several pages attempting to rehabilitate their own experts' admissions that "I do believe being transgender *is a medical condition*," Tando Dep., at 194:2-195:23, or, at the very least, "it [is] important … to look at … being transgender as something … *like a medical condition*." *Id.*, 184:20-185:16, 188:6-190:10. Or, as stated by Dr. Brady, "*[b]y itself*, social transition is psychologically beneficial and is a *medically recognized treatment* for gender

---

[7] Citing *Foote*, 128 F.4th at 349-50; *City of Huntington Beach*, 2025 WL 1720210, at *10; *Vitsaxaki v. Skaneateles Cent. Sch. Dist.*, 771 F. Supp. 3d 106, 121 (N.D.N.Y. 2025), *appeal filed*, No. 25-952 (2d Cir., Apr. 18, 2025).

dysphoria." Ex. B-20, pp.5, 7 (emphasis added); *see* Brady Dep., 197:15-202:22.

With respect to both Brady and Tando, the Court should exclude their testimony under *Daubert*. *See* ECF No. 243. With respect to Dr. Brady, as stated in Plaintiffs' objections, the Court should also strike her attempt to reverse course under the sham affidavit rule. *See* Plts.' Obj. No. 6. But even if the Court does not strike these declarations, Defendants still have to establish a "genuine issue[] of material fact," meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). And "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (quoting *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)). Here, the defense experts' explanations for their about-faces are not at all plausible and should be held to be inadequate. *See* ECF No. 256-3, ¶¶10-12; ECF No. 256-2, ¶¶10-13.

**D. Under Teacher's First Amendment Right to Freedom of Speech, Parental Exclusion Policies Are Unconstitutional**

As stated in Plaintiffs' motion, employees cannot be forced to engage in speech (1) about an issue of public concern, (2) that is unnecessary for their actual job duties (i.e., public v. private speech), (3) unless doing so is sufficiently necessary for the operation of the government as to outweigh First Amendment rights (i.e., *Pickering* balancing). *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776-83 (9th Cir. 2022).

**1. Gender Identity is a Matter of Public Concern**

"The first step—assessing whether [the] speech addressed a matter of public concern—presents a low bar." *Burch v. City of Chubbuck*, 146 F.4th 822, 833 (9th Cir. 2025). Here, "[w]ith the amount of public discourse in the recent years at all levels of society nationwide—from government to local communities and everything in between—concerning gender identity, the topic and matters related to it (e.g., use of

REPLY MEMORANDUM ISO PLAINTIFFS' RENEWED
MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION

personal pronouns) are undoubtedly issues of public interest." *Sandoval v. Pali Inst., Inc.*, 113 Cal. App. 5th 616 (2025) (collecting cases).

Defendants respond that the *context* here transforms the *content* of the speech into a matter of purely private concern. ECF No. 256, pp.53:17-54:24. But when the "content" "plainly relates to broad issues of interest to society at large," the "context" "cannot by itself transform" the speech into "a matter of private rather than public concern." *Snyder v. Phelps*, 562 U.S. 443, 454 (2011); *accord City of San Diego v. Roe*, 543 U.S. 77, 84 (2004). Nevertheless, Defendants argue that "disclosure of individual students' gender identity has nothing to do with [Plaintiffs] voicing their … beliefs or publicly articulating their position on policies." ECF No. 256, p.54:17-20. That's not right. Participating in a social transition communicates a message, as does the opposite, expressing "disagreement with the concept that a person's gender identity may be different from the sex the person was assigned at birth." *Taking Offense v. California*, 66 Cal. App. 5th 696, 712 (2021); *cf. Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 510 (1969) (black armbands were inherently expressive); *Stromberg v. People of State of Cal.*, 283 U.S. 359, 366 (1931) (red flag was inherently expressive).

### 2. Parental Exclusion Policies Are Unnecessary for Education

The second question is whether the speech is personal speech or government speech. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1068-76 (9th Cir. 2013) (en banc). Defendants state that the analysis here is simple because Plaintiffs are required to speak to parents on occasion regarding their child. *See* ECF No. 256, p.55:8-22. That's not quite right. The issue here is that Plaintiffs are *prohibited* from speaking to parents about their child's gender identity. In that negative context,

> when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties. Indeed, the fact that an employee is threatened or harassed by his superiors for engaging in a particular type of speech provides strong evidence that the act of speech was not, as a "practical" matter, within the employee's job duties notwithstanding any suggestions to the contrary in the employee's formal job description.

*Dahlia*, 735 F.3d at 1075. Obviously when Plaintiffs would speak to parents about their child's gender identity those discussions would not be *pursuant* to their official job duties because their schools *prohibit* it. *See, e.g.*, *Greisen v. Hanken*, 925 F.3d 1097, 1112 (9th Cir. 2019); *Friedman v. Jenkins*, No. 4:23-cv-5036, 2024 WL 2750021, at *5 (N.D. Cal. May 29, 2024). Teacher Plaintiffs job duties involve teaching *subjects*—not conveying gender ideology. *See Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 563-74 (2023) (public school teachers); *Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-cv-2237, 2024 WL 3758499, at *11 (N.D. Ohio Aug. 12, 2024).

### 3. There Is No Legitimate State Administrative or Efficiency Interest Requiring Parental Exclusion Policies

The final question is *Pickering* balancing, i.e., "whether the government's legitimate administrative interests outweigh the employee's right to engage in the expressive activity at issue." *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1138 (9th Cir. 2025). On this point, Defendants state that "[t]he creation of a safe learning environment for transgender students includes protection against discrimination, including bullying and parental backlash." ECF No. 256, p.57:6-8. In support of this, Defendants cite the declarations of social workers Maria Al-Shamma and Darlene Tando for the proposition that disclosing a child's social transition to her parents would be harmful. ECF No. 256, p.57:16-58:2.

As stated in Plaintiffs' objections, Ms. Al-Shamma's declaration should be stricken because she was an undisclosed expert. Plts.' Obj. No. 5. Further, Ms. Tando's declaration should be stricken under the *Daubert* standards. ECF No. 243. In any event, as stated above, the Court must presume that allowing parents to make decisions regarding how their own child will be addressed in school, and what gender they will present as, will be in the child's best interest, *Troxel*, 530 U.S. at 68, and that presumption can cannot be overcome on a class-wide basis. *Stanley*, 405 U.S. at 656-57.

The Court should grant partial summary judgment on the teachers' Free Speech claim, both because they cannot be compelled to engage in speech that violates parents'

rights and because Parental Exclusion Policies violate their own Free Speech rights. *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1215 (S.D. Cal. 2023) ("The teachers could also make out a freedom of speech claim if the policy compels them to violate the law or deliberately convey an illegal message.").

### E. The Family Educational Rights and Privacy Act ("FERPA") Requires Parent Access to Gender Support Plans

As part of Teacher Plaintiffs' free speech and free exercise claims, they seek declaratory relief that FERPA preempts any contrary state requirement to keep a student's gender transition secret from parents. *See* ECF No. 133, SAC, pp.92:2-5, 121:13-15. In response, Defendants do not dispute the general preemptive power of FERPA. But Defendants state that FERPA only requires disclosure of a student's records to his parents upon "a request by parents." ECF No. 256, pp.58:10-59:2. This is a miserly reading of FERPA, which precludes states from having "a policy of denying, *or which effectively prevents*, the parents of students who are or have been in attendance at a school … the right to inspect and review the education records of their children." 28 U.S.C. § 1232g(a)(1)(A) (emphasis added).

Nor do Defendants dispute the breadth of FERPA, as encompassing "everything in institutional records maintained for each student … and used by the institution in making decisions that affect the life of the student." *Belanger v. Nashua Sch. Dist.*, 856 F. Supp. 40, 49 (D.N.H. 1994). Rather, Defendants merely argue that there is no conflict (and therefore presumably no standing) because "[t]he FAQs do not suggest that 'education records' reflecting a student's transgender identity are not subject to FERPA." ECF No. 256, p.59:8-9. Again, that is a miserly reading of the FAQ page, which at least misleadingly implies as much when directing schools to keep separate records regarding gender identity "apart from the student's school records" "to prevent accidental disclosure of a student's transgender status," in the same paragraph that references "schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the

student's family. ECF No. 247-16, p.172. In light of the misleading nature of the FAQ page, it is not surprising that California school districts *actually* believe they must keep Gender Support Plans secret from parents, as shown in the "Gender Acknowledgment Plan" created by the Clovis Unified School District:

> Maintenance of the Gender Acknowledgment Plan shall be maintained as follows:
> ○ In a private file maintained by the school (if parents are not aware, supportive or if student safety is compromised)
> ○ A copy will be provided to parent(s) or guardian(s) per student's permission.

ECF No. 247-18, p.143. The above example from Child Poe's school district is more than sufficient to confer standing for declaratory relief by itself. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127-29 (2007). In any event, FERPA is a key aspect of Plaintiffs' free exercise and free speech claims, for which there plainly is standing. As stated, FERPA is a "comparable" exemption that triggers strict scrutiny under the Free Exercise Clause. And, under the Free Speech Clause, Plaintiffs cannot be compelled to speak in a manner that violates federal law.

## III. The Court Should Grant Plaintiffs Partial Summary Judgment on Liability for the EUSD Damages Claims

In Plaintiffs' motion for summary judgment, Plaintiffs Mirabelli and West requested partial summary judgment with respect to liability on their damages claims against EUSD. Specifically, Plaintiff West sought partial summary judgment with respect to her Title VII failure to accommodate claim, both sought partial summary judgment as to the sovereign immunity defense of the EUSD Board and Superintendent, and both sought partial summary judgment as to individual-capacity EUSD Defendants' qualified immunity defense. ECF No. 247-1, pp.59-67.

EUSD filed its own motion for summary judgment with respect to the Title VII claim and qualified immunity, which Plaintiffs opposed. ECF Nos. 242, 255. But EUSD did not oppose Plaintiffs' motion, which also included the request that the

Court strike EUSD's sovereign immunity defense. In light of the non-opposition, the Court should grant Plaintiffs' motion in full. *See* S.D. Civ. L.R. 7.1(f)(3)(c).

## IV. The Court Should Enter a Rule 54(b) Separate Judgment on the Prospective Relief Claims and stay the Rest of the Case, and Enter a Class-Wide Injunction.

### A. The Court Should Enter a Rule 54(b) Separate Judgment on the Prospective Relief Claims and stay the Rest of the Case

In Plaintiffs' motion, they requested that the Court sever the prospective-relief-only claims, enter a severed Rule 54(b) judgment, and stay the damages claims pending appeal. ECF No. 247-1, pp.67-68. Defendants do not oppose this request. *See* ECF No. 256, p.59 (noting request yet making no argument). Thus, the Court should grant it.

### B. The Court Should Enter a Class-Wide Injunction.

Plaintiffs also requested that the Court issue a class-wide injunction, either preliminarily or permanently. In response, Defendants state that "mere allegation of a constitutional violation does not constitute per se irreparable harm." ECF No. 256, p.60:6-10. But in each cited case, the constitutional right at issue was not based in the First Amendment, and the parties primarily sought damages. Here, it is undisputed that Plaintiffs cannot obtain damages from the State Defendants due to sovereign immunity. The *only* way their harms can be remedied is via an injunction. *See Ass'n for Accessible Meds. v. Bonta*, 562 F. Supp. 3d 973, 988 (E.D. Cal. 2021).

Defendants also state that Plaintiffs' requested injunction is unworkable because they will be required "to police nearly 286,000 classroom-based teachers, plus other teachers and school staff, and over 5.8 million students and their parents in California, to ensure that staff never 'enforce, implement, or recommend PEPs, including by using a student's preferred names and pronouns without parental consent, against any member of the Class.'" ECF No. 256, p.62:15-19 (quoting ECF No. 256-1, p.9:8-10). That's incorrect. The full quote enjoins Defendants from "*knowingly allowing school districts and state education employees to* enforce, implement, or recommend PEPs, including by using a student's preferred names and pronouns without parental consent,

against any member of the Class." ECF No. 256-1, p.9:7-10 (emphasis added). All Defendants need to do, for now, is replace their most recent "guidance" with a new page and email it to all school districts. According to Defendants themselves, such an email will "unequivocally" communicate to school districts and thereby redress Plaintiffs' harms. *See* ECF No. 256, pp.17:10-20, 21:12-14. And if a school district refuses to comply, Defendants have numerous enforcement mechanisms. *See* ECF No. 247-1, p.28:5-19 (discussing enforcement actions).

Lastly, Defendants state that Plaintiffs' requested relief is inappropriate because it goes beyond the claims made in the complaint. More specifically, Defendants argue that "Plaintiffs' claims in the SAC only sought to enjoin student-privacy policies," but "the requested relief could be interpreted as requiring districts to adopt forced disclosure policies." ECF No. 256, pp.62:24-63:15. That's not what the complaint says at all. Plaintiffs have never accepted Defendants' pointless distinction between the two concepts. Moreover, Plaintiffs agree that AB 1955 is irrelevant to the issues in this case because it does not apply, as Plaintiffs contend here, where disclosure is "required by … federal law." Cal. Educ. Code §§ 220.3, 220.5. Plaintiffs seek an order that schools may not socially transition a child without parental "knowledge or consent." ECF No. 133, SAC, p.42:8-12. How that is effected does not particularly matter and Plaintiffs will not speculate as to the best manner and "give schools a playbook for evading" the Constitution. *Mahmoud*, 145 S. Ct. at 2380 (Thomas, J., concurring).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the above motion in full, granting: (1) summary judgment on all Plaintiffs' 42 U.S.C. § 1983 prospective relief only claims; (2) partial summary judgment as to liability on Plaintiffs Mirabelli's and West's 42 U.S.C. § 1983 damages claims and on Plaintiff West's Title VII failure to accommodate claim; (3) entry of a Rule 54(b) Separate Judgment and a class-wide permanent injunction as to the prospective relief only claims; and (4) in the alternative, a class-wide preliminary injunction as to those claims.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: September 15, 2025     By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

### *Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.*
USDC Court Case No.: 3:23-cv-00768-BEN-VET

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- Reply Memorandum in Support of Plaintiffs' Renewed Motion for (1) Summary Judgment on Prospective Relief Claims; (2) Partial Summary Judgment re Liability on Damages Claims; (3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and (4) Entry of a Class-Wide Permanent Injunction;
- Plaintiffs' Objections in Support of Renewed Motion for (1) Summary Judgment on Prospective Relief Claims; (2) Partial Summary Judgment re Liability on Damages Claims; (3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and (4) Entry of a Class-Wide Permanent Injunction;
- Supplemental Declaration of Father John Poe in Support of Plaintiffs' Renewed Motion for (1) Summary Judgment on Prospective Relief Claims; (2) Partial Summary Judgment re Liability on Damages Claims; (3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and (4) Entry of a Class-Wide Injunction;
- Supplemental Declaration of Plaintiff Elizabeth Mirabelli in Support of Plaintiffs' Renewed Motion for (1) Summary Judgment on Prospective Relief Claims; (2) Partial Summary Judgment re Liability on Damages Claims; (3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and (4) Entry of a Class-Wide Injunction; and
- Supplemental Declaration of Paul M. Jonna, Esq., in Support of Plaintiffs' Renewed Motion for (1) Summary Judgment on Prospective Relief Claims; (2) Partial Summary Judgment re Liability on Damages Claims; (3) Entry of a Rule 54(b) Separate Judgment on Prospective Relief Claims and Stay of Damages Claims; and (4) Entry of a Class-Wide Permanent Injunction or, in the Alternative, a Class-Wide Preliminary Injunction.

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
California Department of Justice
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for CDE Defendants**

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on September 15, 2025, at Rancho Santa Fe, California.

_____
Kathy Denworth