ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
Jack M. Sleeth Jr,, Esq. (SBN 108638)
jsleeth@as7law.com
Lauren J. Cambronero, Esq. (SBN 336555)
lcamberonero@as7law.com
2727 Camino Del Rio South, Suite 300
San Diego, CA 92108
Telephone: 619-232-3122
Facsimile: 619-232-3264

Attorneys for EUSD Defendants

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al. <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-VET <br><br> **EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION** <br><br> Judge: Hon. Roger T. Benitez <br> Courtroom: 5A <br><br> Hearing Date: September 29, 2025 <br> Hearing Time: 10:30 a.m. <br><br> Action Filed: April 27, 2023 <br> Trial Date: Not Set |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ARTIANO SHINOFF

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................... 5

II.  FACTUAL BACKGROUND ............................................................ 6

III. ARGUMENT ................................................................................ 8

    A.   Plaintiff West's Title VII Claim For Religious Creed Discrimination for Failure to Accommodate Against EUSD Fails ............................... 8

        1.   EUSD Initiated Good Faith Efforts to Accommodate West's Religious Beliefs ..................................................................... 9

        2.   West's Accommodation Request Created an Undue Hardship Because It Required EUSD to Violate State Law ...................... 11

    B.   EUSD Superintendent and the EUSD Board of Education are Arms of the State and Thus Entitled to Sovereign Immunity ....................... 13

        1.   The State's Intent ............................................................... 13

        2.   The State's Control ............................................................ 14

        3.   The Effect on the State Treasury ........................................ 15

    C.   Official-Capacity Defendants are Entitled to Qualified Immunity ....... 15

IV. CONCLUSION ............................................................................ 19

ARTIANO SHINOFF

# TABLE OF AUTHORITIES

**Cases**

*Altshuler v. City of Seattle*, 63 Wash.App. 389, 395, 819 P.2d 393 (1991) ................17

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)..........................................................................................................17

*Ansonia Bd. Of Educ v. Philbrook*, 479 U.S. 60, 70, 107 S.Ct. 367 ............................12

*Belanger*, 963 F.2d at 253........................................................................................15,16

*Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006)................................13

*Bhatia v. Chevron U.S.A., Inc*., 734 F.2d 1382, 1383–84 (9th Cir. 1984) ..................13

*Bolden-Hardge*, 63 F.4th at 1225 ...............................................................................13

*Butt v. State of California*, 4 Cal.4th 668 (Cal. 1992) ..................................................15

*C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th Cir. 2011) 654 F.3d 975, 984 ...................................................................................................18,19

*C.F. v. Capistrano Unified School Dist.* (C.D. Cal. 2009) 656 F.Supp.2d 1190, 1199 .........................................................................................................18,19

*Cal. Dep't of Educ. v. Rocklin Unified Sch. Dist.*, No. S-CV-0052605 (Cal. Super. Ct., Placer Cnty., Apr. 10, 2024)........................................................18

*Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-1941 (E.D. Cal. July 16, 2024).......................................................................................................18

*D'Aguanno v. Gallagher* (11th Cir. 1995) 50 F.3d 877, 881........................................19

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ...................................................16

*Devereaux v. Perez*, 218 F.3d 1045, 1048 (9th Cir. 2000)..........................................16

*GEO Grp. Inc.*, 616 F.3d at 271 ...................................................................................12

*Hall v. City of Taft*, 47 Cal.2d 177 (Cal. 1956) ...........................................................14

*Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990)..............................17

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)..........................................................................................................16

*Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) .......................................10

*Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 645 (N.D. Cal. 2007) ..................14

*Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (9th Cir. 2023)..............14,15,16

*Konen v. Caldeira*, No. 22-cv-1813 (Cal. Super. Ct., Monterey Cnty., June

ARTIANO SHINOFF

27, 2022), *removed*, No. 5:22-cv-5195 (N.D. Cal. Sep. 12, 2022) .........................18

*Mae M. v. Komrosky*, No. CVSW2306224 (Cal. Super. Ct., Riverside Cnty., Aug. 2, 2023), *appeal filed*, No. E083409 (Cal. App. Ct., 4th Dist., Div. 2, Feb. 28, 2024), *appeal transferred*, No. G064332 (Cal. App. Ct., 4th Dist., Div. 3, June 24, 2024).........................18

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)..........................16

*P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008) ..............14

*Papasan v. Allain*, 478 U.S. 265, 276–77 (1986) .........................14

*People ex rel. Bonta v. Chino Valley Unified Sch. Dist.*, No. CIV SB 2317301 (Cal. Super. Ct., San Bernardino Cnty., Aug. 28, 2023).........................18

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).........................9

*Regino v. Staley* (E.D. Cal. July 11, 2023) No. 223CV00032JAMDMC, 2023 WL 4464845 ..........................18

Romero v. Kitsap County, 931 F.2d 624, 626 (9th Cir.1991 .........................16

*Sato*, 861 F.3d at 923 .........................15

*Saucier v. Katz*, No. 99-1977 (U.S. 06/18/2001).........................17

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31 (9th Cir. 1999) 10,13

*Tapia v. Jurupa Unified Sch. Dist.*, No. 5:23-cv-789 (C.D. Cal. May 3, 2023)...........18

*Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) .........................10

*Walmart Stores E., L.P.,* 992 F.3d at 659 .........................12

*Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989) .........................17

**Statutes**

42 U.S.C.A. Section 1983 .........................13,16

498 U.S. 938 .........................17

California Education Code Section 33112(a).........................14

California Education Code Section 35010(b).........................15

California Education Code Section 35208 .........................16

**Other Authorities**

California Constitution Article IX Sections 5–6 .........................14

ARTIANO SHINOFF

**EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION**          **3:23-cv-0768-BEN-VET**

{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

ARTIANO SHINOFF

1  Defendants MARK OLSON, FRANK HUSTON, JOAN GARDNER, DOUG

2  PAULSON, ZESTY HARPER, LUIS RANKINS-IBARRA, JOHN ALBERT, TRENT

3  SMITH, TRACY SCHMIDT, STEVE WHITE, (hereafter "EUSD OFFICIAL-

4  CAPACITY DEFENDANTS) AND ESCONDIDO UNION SCHOOL DISTRICT

5  (collectively "EUSD DEFENDANTS") submit the following memorandum in support

6  of their Opposition to Plaintiffs' renewed motion for summary judgment or a

7  preliminary injunction.

## I.   INTRODUCTION

9  EUSD Defendants request this Court deny Plaintiffs' renewed motion for partial

10  summary judgment or preliminary injunction on the following grounds:

11  First, Plaintiff Mirabelli West's (West) Title VII claim for Religious Creed

12  Discrimination/ Failure to Accommodate against EUSD fails because EUSD initiated

13  good faith efforts to accommodate her. EUSD reasonably accommodated West by

14  allowing her to refrain from addressing a student by his or her preferred names or

15  pronouns that were opposite of their biological sex, and instead refer to all students by

16  their last names. Moreover, EUSD offered to further accommodate West by allowing

17  her to refer any parent's questions or concerns relating to a student's gender identity to

18  an administrator. However, West requested she be permitted to affirmatively share a

19  student's gender identity to his or her parents without the student's consent. This request

20  would have functionally allowed West to "out" a transgender or gender-nonconforming

21  student without their consent. Thus, EUSD could not accommodate this request because

22  it created an undue hardship by requiring the District to violate the law.

23  Second, the EUSD Superintendent and EUSD Board of Education are arms of

24  the state and entitled to sovereign immunity. Additionally, Official-Capacity

25  Defendants are entitled to qualified immunity with respect to Teacher Plaintiffs' claims

26  because Teacher Plaintiffs' rights were not clearly established at the time of the 2020

27  update to AR 5145.3.

28  / / /

## II.  FACTUAL BACKGROUND

Teachers Elizabeth Mirabelli ("Mirabelli") and Lori Ann West ("West") allege individually named EUSD Official-Capacity Defendants updated and enforced Administrative Regulation 5145.3 in 2020 which violated their freedom of speech and religion. They are joined by two Doe teachers employed by EUSD who are asserting the same three 42 U.S.C. section 1983 Free Speech and Free Exercise of Religion claims against the EUSD Official-Capacity Defendants.

On or around August 13 2020, Escondido Union School District ("EUSD") updated its Administrative Regulation 5145.3, expanding upon its Board Policy 5145.3, which required EUSD employees to honor the request of a transgender or gender-nonconforming student's preferred name and pronouns and to respect the privacy rights of a student by not disclosing his or her transgender or gender nonconforming status without the student's consent. Daniel R. Shinoff Declaration "Decl. Shinoff" ¶ 3; Exh. 2.

On October 28, 2022, Plaintiffs Mirabelli and West sent correspondence to EUSD formally requesting a religious accommodation. Exh. 3. West submitted a formal request for an exemption from the following policies related to gender identity:

(1) The "Names" policy that requires teachers and staff to refer to a student by gender-specific name that the student identifies to match their transgender identity, but that is different than their legal name.

(2) The "Pronouns" policy that requires teachers and staff to refer to a student using pronouns identified by the student, including opposite-sex pronouns and genderless pronouns (e.g., "it" or "they"), regardless of the student's biological sex.

(3) The "Privacy" policy that prohibits teachers and staff from sharing a student's transgender identity with his or her parent or guardian without the student's permission, and requires teachers thereby to use different names or pronouns or to refer to the student depending on with whom the teacher is speaking." Exh. 3.

/ / /

On November 15, 2022, EUSD held separate religious accommodation meetings with Plaintiffs West and Mirabelli. Decl. Shinoff ¶ 11; Exhs. 4. During the meetings, EUSD counsel Daniel Shinoff provided hard copies of key laws and guidance applicable to West's request for religious accommodation. *Id*. The meeting was facilitated by the Meeting Facilitator Dr. Debra Dupree. *Id*.

During the interactive process, EUSD came to an agreement with Mirabelli and West for them to refer to all students using their last names and without using gendered pronouns. Decl. Shinoff ¶12; Exh. 4. As for the privacy policy, EUSD counsel Daniel R. Shinoff explained in his February 9, 2023, correspondence to Mirabelli and West's counsel Norman Grissom that the CDE stated: "Schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family…" Exh. 5. EUSD relied on the CDE for guidance on this issue and followed state law. *Id*.; Exhs. 8-11.

On March 1, 2023, Grissom communicated his concerns with the application of the "Privacy Policy". Exh. 6. This correspondence specifically stated:

> As for the Privacy Policy, as stated in my clients' initial religious accommodation letters, they do not seek a general exemption from the Privacy Policy such that they could gossip about a student's transgender identity with all parties. However, they are very concerned about interfering with parental rights and what to do if confronted by a parent. Thus, they have the following two questions:
>
> (1) What if a parent directly asks my clients to reveal a student's gender identity? In other words, how must my clients respond if the parent directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at school to address her using a male name or male pronouns?" In that context, instead of merely avoiding the topic, must my clients expressly deny that the student is being treated by the school as transgender? Or would they be permitted to admit that the parent's suspicions are true? **Or does EUSD envision some middle ground**, such as the teacher being required to say: "I have been directed not to tell you if your child is using a different name and pronoun." Could EUSD assign an administrator to sit in on parent-teacher

conferences to respond to parents about any transgender issues? Exh. 6. (emphasis added.)

On March 10, 2023, EUSD counsel responded with the following:

Question: In other words, how must my clients respond if the parent directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at school to address her using a male name or male pronouns?"

Clarification: Your clients should respond that the inquiry is outside of the scope of the intent of their interaction and state the intent of the communication is, as an example, to share information regarding the student's behavior as it relates to school, class rules, assignments, etc. If you have questions about parents' questions related to gender identification or equity laws/regulations, they should contact the principal, who will provide the necessary guidance. Exh. 7.

Grissom did not respond to the correspondence. On April 17, 2023, Plaintiffs Mirabelli and West initiated this lawsuit.

## III.   ARGUMENT

### A.   Plaintiff West's Title VII Claim For Religious Creed Discrimination for Failure to Accommodate Against EUSD Fails

West brings a cause of action for religious creed discrimination under Title VII. Claims under Title VII for religious discrimination may be asserted under various theories, the most common being disparate treatment and failure to accommodate. See *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Here, the theory is for failure to accommodate her religious beliefs. Plaintiff's claim against EUSD fails because EUSD initiated good faith efforts to accommodate West. First, EUSD reasonably accommodated West by allowing her to refrain from addressing a student by his or her preferred names or pronouns that were opposite of their biological sex and instead refer to all students by their last names. Moreover, EUSD offered to further accommodate West by allowing her to refer any parent's questions or concerns relating

8

EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION   3:23-cv-0768-BEN-VET
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION
{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

to a student's gender identity to an administrator. However, West requested she be permitted to affirmatively share a student's gender identity to his or her parents without the student's consent. This request would have functionally allowed West to "out" a transgender or gender-nonconforming student without their consent.

Thus, EUSD could not accommodate this request because it created an undue hardship by requiring the District to violate the law. Plaintiff primarily argues that the District cannot establish an undue hardship because the policies are "illegal", however, this is not well taken given that these policies were primarily established by the State to affirmatively respect a transgender or gender nonconforming student's transition by protecting the student from discrimination and/or harassment.

### 1. EUSD Initiated Good Faith Efforts to Accommodate West's Religious Beliefs

Claims under Title VII for failure to accommodate religion are accordingly analyzed under a burden-shifting framework. See *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993). First, the employee must plead a prima facie case of failure to accommodate religion. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999). A plaintiff must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson*, *supra*, 358 F.3d at 606.

Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

/ / /

/ / /

ARTIANO SHINOFF

Here, EUSD initiated good food efforts to accommodate West's religious beliefs through meetings with EUSD district personnel. On November 15, 2022, EUSD held separate religious accommodation meetings with Plaintiffs West and Mirabelli. Decl. Shinoff" ¶ 11; Exhs. 4.

During this process, EUSD came to an agreement with Mirabelli and West for them to refer to all students using their last names and without using gendered pronouns. Decl. Shinoff ¶12; Exh. 4. As for the privacy policy, EUSD counsel Daniel R. Shinoff explained in correspondence to Mirabelli and West's counsel that the CDE stated: "Schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family…" Exh. 5. EUSD relied on the CDE for guidance on this issue and followed state law. *Id.;* Exhs. 8-11.

On March 1, 2023, Grissom communicated his concerns with the application of the "Privacy Policy". Exh. 6. This correspondence specifically stated:

> As for the Privacy Policy, as stated in my clients' initial religious accommodation letters, they do not seek a general exemption from the Privacy Policy such that they could gossip about a student's transgender identity with all parties. However, they are very concerned about interfering with parental rights and what to do if confronted by a parent. Thus, they have the following two questions:

> (2) What if a parent directly asks my clients to reveal a student's gender identity? In other words, how must my clients respond if the parent directly asks: "I am concerned that [my daughter] is confused about her sexuality and gender. Do you know if she has asked anybody at school to address her using a male name or male pronouns?" In that context, instead of merely avoiding the topic, must my clients expressly deny that the student is being treated by the school as transgender? Or would they be permitted to admit that the parent's suspicions are true? **Or does EUSD envision some middle ground**, such as the teacher being required to say: "I have been directed not to tell you if your child is using a different name and pronoun." Could EUSD assign an administrator to sit in on parent-teacher conferences to respond to parents about any transgender issues?

10

EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION 3:23-cv-0768-BEN-VET
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION
{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

*Id.*;  (emphasis added.)

As noted in the correspondence, Mirabelli and West's own counsel requested a "middle ground" by means of accommodating them to not to directly address any parent concerns. *Id.* EUSD modified Plaintiff Mirabelli and West's request and explained they would not directly address parent concerns relating to gender identification or equity laws/regulations, and instead refer parents to the school principal for further guidance. Exh 7. Thus, West cannot meet her burden in establishing that she was discriminated against by EUSD for failing to engage in reasonable efforts to accommodate her. EUSD initiated good food efforts to accommodate West's religious beliefs through meetings with EUSD district personnel. From the District's perspective, EUSD attempted to accommodate West to the fullest extent possible absent violating the law.

### 2. West's Accommodation Request Created an Undue Hardship Because It Required EUSD to Violate State Law

An employer is not required "to accommodate at all costs." *Ansonia Bd. Of Educ v. Philbrook*, 479 U.S. 60, 70, 107 S.Ct. 367. Where an employer's good-faith efforts to accommodate have been unsuccessful, the inquiry turns to whether the employer demonstrated that "such an accommodation would work an undue hardship upon the employer and its business." *GEO Grp. Inc.*, 616 F.3d at 271. "An 'undue hardship' is one that results in more than a de minimis cost to the employer." *Id.* at 273. Both economic and non-economic costs suffered by the employer can constitute an undue hardship. *Id.* The undue hardship analysis is case-specific, requiring a court to look to "both the fact as well as the magnitude of the alleged undue hardship," though it is "not a difficult threshold to pass." *Id.* (quoting *Webb*, 562 F.3d at 260).

Examples of undue hardships include negative impacts on the employer's operations, such as on productivity or quality, personnel and overtime costs, increased workload on other employees, and reduced employee morale. See, e.g., *Walmart Stores E., L.P.,* 992 F.3d at 659 (noting that "Title VII does not require an employer to offer an 'accommodation' that comes at the expense of other workers" and concluding undue

11

EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION    3:23-cv-0768-BEN-VET
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION
{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

ARTIANO SHINOFF

1  hardship as shown where employer demonstrated that proposed accommodations would

2  require "more than a slight burden when vacations, illnesses, and vacancies reduced the

3  number of other" employees available);

4      Here, West sought an accommodation to allow her to affirmatively discuss the

5  gender identity status of a transgender or gender-nonconforming student with their

6  parent, even without the student's consent. EUSD could not accommodate this request

7  as it would allow her to essentially "out" a student, and thereby violate the law. Exhs.

8  8-9, 11.

9      The Ninth Circuit has held that for employers that have neither the ability to

10 create nor enforce the law, "an employer is not liable under Title VII [for failure to

11 accommodate] when accommodating an employee's religious beliefs would require the

12 employer to violate federal or state law" because "the existence of such a law establishes

13 'undue hardship.' " *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31

14 (9th Cir. 1999) (citing *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir.

15 1984)).

16     Even a "danger" of violating the law suffices to show undue hardship. *Berry v.*

17 *Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (finding undue hardship where

18 proposed accommodations "create[d] a danger" that public employer would violate the

19 Establishment Clause). Mere "potential" for liability likewise suffices. *Bolden-Hardge*,

20 63 F.4th at 1225; *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984)

21 (finding undue hardship where proposed accommodations required employer to "risk

22 liability" under California health and safety regulations).

23     When determining what accommodations were feasible, EUSD Official-

24 Capacity Defendants relied on the CDE to describe what the laws required. Exhibits 8-

25 11. In the summary of the interactive process meetings, EUSD explained that it faced

26 significant costs and risks if it accommodated West's request. Exhs. 4, 8-9. EUSD found

27 that attempting to deliver on her request for exemption unduly impacts the operations

28 and delivery of education to students, impacting the Master Scheduling and fostering

constraints on EUSD's ability to delivery educational services. Exh. 4. The nature of her request for exemptions also generate the potential for discrimination and lack of compliance under the various laws. *Id*.; Shinoff Decl. ¶ 14 Exhs. 8-11.

**B.   EUSD Superintendent and the EUSD Board of Education are Arms of the State and Thus Entitled to Sovereign Immunity**

Plaintiffs contend in their renewed motion that sovereign  immunity does not apply to the EUSD Superintendent and EUSD Board of Education.

The Eleventh Amendment bars a lawsuit against a state or its agencies absent the state's consent or Congressional abrogation of immunity. *Papasan v. Allain*, 478 U.S. 265, 276–77 (1986). The Eleventh Amendment also "bars a federal action for damages, or other retroactive relief, against a state official acting in his or her official capacity." *Khanna v. State Bar of Cal.,* 505 F. Supp. 2d 633, 645 (N.D. Cal. 2007).

The Ninth Circuit considers three factors to determine whether an entity is an arm of the state: "(1) the state's intent as to the status of the entity, (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (9th Cir. 2023). The test is entity-based, meaning that a given entity either is or is not an arm of the state; its status does not from one case to the next based on the nature of the suit. *Id*. at 1031.

**1.   The State's Intent**

The first factor turns on whether state law expressly characterizes the entity as a governmental instrumentality rather than as a local governmental or non-governmental entity, whether the entity performs state governmental functions, whether the entity is treated as a governmental instrumentality for purposes of other state law; and whether state representations about the entity's status favors sovereign immunity. *Id*. at 1030 (citing *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008). "The state legislature's characterization of an entity is not the only important metric for the intent factor — state court treatment is also relevant." *Id*. State law characterizes school districts as state entities. The California Constitution provides for a system of public

ARTIANO SHINOFF

schools, contemplates school districts that are part of a "Public School System," and establishes a "State School Fund" for said "Public School System." Cal. Const. art. IX §§ 5–6. The state's Education Code establishes a superintendent to oversee "the schools of this state." Cal. Educ. Code, § 33112(a). Similarly, state courts have concluded that school districts are arms of the state. *Hall v. City of Taft*, 47 Cal.2d 177 (Cal. 1956); *Butt v. State of California*, 4 Cal.4th 668 (Cal. 1992). The district also performs a state function: overseeing and facilitating the education of California's children. As the California Supreme Court previously explained, "management and control of the public schools [is] a matter of state care and supervision . . . . Local districts are the State's agents for local operation of the common school system…." *Butt*, 4 Cal.4th at 688 (Cal. 1992). Plaintiffs identify sections of the California Education Code that describe the powers of governing boards and their locally elected members. But the fact that locally elected officials have some power to manage the district does not mean that the district is a local entity. To the contrary, as evidenced by the same statutes, the officials' powers — and the districts they manage — flow from state authority. The first factor favors sovereign immunity.

## 2. The State's Control

The second factor favors sovereign immunity because EUSD is controlled by the state. "The second factor depends on how members of the governing body of the entity are appointed and removed, as well as whether the state can directly supervise and control the entity's ongoing operations." *Kohn*, 87 F.4th at 1030. Plaintiffs argue that local school districts have day-to-day administrative power over their own districts pursuant to California Education Code § 35010(b). The statute provides that "[e]very school district shall be under the control of a board of school trustees or a board of education." *Id*. While local board members control day-to-day administration, ultimately, the state has "total control" over public school funding and "centralized control" over other decisions for public schools, such as textbook use, student suspension, and student expulsion. *Belanger*, 963 F.2d at 253. Put differently, "the state

ARTIANO SHINOFF

14

EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION          3:23-cv-0768-BEN-VET

{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

still exercises significant control over school districts." *Sato*, 861 F.3d at 923. Thus, the second factor favors sovereign immunity.

### 3. The Effect on the State Treasury

The third factor favors sovereign immunity because the state is responsible for funding the district and paying its debts and judgments. The third factor considers the entity's overall effect on the state's treasury. *Kohn*, 87 F.4th at 1030. "The relevant issue is a [s]tate's overall responsibility for funding the entity or paying the entity's debts or judgments, not whether the [s]tate would be responsible to pay a judgment in the particular case at issue." *Id*. at 1036. The third factor is relevant but not dispositive. *Id*. at 1030. Though it predates the *Kohn* test, the Ninth Circuit's analysis in *Belanger* is largely dispositive for this factor. The Ninth Circuit held that "[t]he state has assumed the burden of funding public schools" in California, "the bulk of the school district's budget comes directly from the state school fund," and "a judgment against the school district would be satisfied from state funds." *Belanger*, 963 F.2d at 252. Plaintiff attempt to argue that school districts are required under California Education Code § 35208 to insure against judgment for liability for injury to persons. However, the fact that the state orders school districts to purchase insurance with state funds to protect the state treasury from judgments merely reinforces that this factor favors sovereign immunity.

## C. Official-Capacity Defendants are Entitled to Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from liability for civil damages, unless the official's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Romero v. Kitsap County,* 931 F.2d 624, 626 (9th Cir.1991). Threshold inquiry in a § 1983 analysis is whether the claimant has identified a right cognizable under the statute. 42 U.S.C.A. § 1983. *Devereaux v. Perez*, 218 F.3d 1045, 1048 (9th Cir. 2000), on reh'g *en banc sub nom*. *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability: ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). To determine whether a right is clearly established, the court evaluates the specific contours of the constitutional right, not at the general but at the more specific level:

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The court must canvass relevant case law to determine if a clearly established constitutional right exists. *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989), cert. denied, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) In the light of pre-existing law the unlawfulness must be apparent. *Saucier v. Katz*, No. 99-1977 (U.S. 06/18/2001). Thus, the plaintiff "must do more 'than identify a clearly established legal right and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.' " *Altshuler v. City of Seattle*, 63 Wash.App. 389, 395, 819 P.2d 393 (1991) (quoting *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990)), review denied, 118 Wash.2d 1023, 827 P.2d 1392 (1992). [Emphasis added.]

Teacher Plaintiffs allege that the EUSD Official-Capacity Defendants violated their constitutional right to free exercise of religion and free speech. However, there is no binding, analogous precedent putting the EUSD Defendants on notice that their conduct violated those rights.

The legal issues surrounding a transgender/gender nonbinary student's and

16

**EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION**      **3:23-cv-0768-BEN-VET**

{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

notification to his or her parents are complex issues that states and schools have attempted to develop and address. The EUSD Official-Capacity Defendants argue that the Administrative Regulation was made in order to comply with the law as understood at the time. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10. As evidenced tirelessly throughout this litigation, the EUSD Official-Capacity EUSD Defendants relied heavily on the State through the California Department of Education which endorsed the Administrative Regulation 5145.3 at issue through the California School Board Association at the time. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10.

The Constitutional issues surrounding gender-identity privacy and First Amendment rights are so new and constantly evolving, to the degree that these issues are still being litigated throughout the courts. See *Regino v. Staley* (E.D. Cal. July 11, 2023) No. 223CV00032JAMDMC, 2023 WL 4464845; *Konen v. Caldeira*, No. 22-cv-1813 (Cal. Super. Ct., Monterey Cnty., June 27, 2022), *removed*, No. 5:22-cv-5195 (N.D. Cal. Sep. 12, 2022); *People ex rel. Bonta v. Chino Valley Unified Sch. Dist.*, No. CIV SB 2317301 (Cal. Super. Ct., San Bernardino Cnty., Aug. 28, 2023), and *Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-1941 (E.D. Cal. July 16, 2024); *Mae M. v. Komrosky*, No. CVSW2306224 (Cal. Super. Ct., Riverside Cnty., Aug. 2, 2023), *appeal filed*, No. E083409 (Cal. App. Ct., 4th Dist., Div. 2, Feb. 28, 2024), *appeal transferred*, No. G064332 (Cal. App. Ct., 4th Dist., Div. 3, June 24, 2024); *Cal. Dep't of Educ. v. Rocklin Unified Sch. Dist.*, No. S-CV-0052605 (Cal. Super. Ct., Placer Cnty., Apr. 10, 2024); *Tapia v. Jurupa Unified Sch. Dist.*, No. 5:23-cv-789 (C.D. Cal. May 3, 2023).

EUSD Official-Capacity Defendants are entitled to qualified immunity and thus are not subject to attorney fees, even if the Court rules against them. Qualified immunity bars all damages, including attorney fees and costs. *C.F. v. Capistrano Unified School Dist*. (C.D. Cal. 2009) 656 F.Supp.2d 1190, 1199, aff'd sub nom. *C.F. ex rel. Farnan v. Capistrano Unified School Dist*. (9th Cir. 2011) 654 F.3d 975.  In that case, the court analyzed a similar issue and held that "the qualified immunity defense

17

**EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION**     **3:23-cv-0768-BEN-VET**
**TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION**
{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

also bars claims for costs and attorneys' fees." *Ibid*.

In that matter, the Court granted part of the Defendants' Motion for Summary Judgment, ruling the Defendants were entitled to qualified immunity. Plaintiffs then sought attorney fees after they were granted an injunction. The Court held that qualified immunity protects defendants from liability for attorney fees as well as claims for costs. The Ninth Circuit approved the analysis. "Although *Farnan* sought only nominal damages, the attorney's fees and costs for which *Corbett* could be liable absent the protection of qualified immunity undoubtedly would be considerable after more than three years of litigation." *C.F. ex rel. Farnan v. Capistrano Unified School Dist.* (9th Cir. 2011) 654 F.3d 975, 984.

The trial court in *C.F. v. Capistrano Unified School Dist*. relied on a similar case, out of the Eleventh Circuit, which also held that costs, expenses and attorneys' fees are barred by qualified immunity.

> A question has been presented in this appeal about whether the monetary damages which the defense of qualified immunity bars include plaintiffs' claims for costs, expenses of litigation, and attorneys' fees. The answer is "yes." We hold that, for qualified immunity purposes, the term "damages" includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity.
> *D'Aguanno v. Gallagher* (11th Cir. 1995) 50 F.3d 877, 881.

Here, the EUSD Official-Capacity Defendants reasonably believed their actions were lawful in updating and enforcing the Administrative Regulation as it came from the California Department of Education. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10. This body oversees the state's public education system, encompassing K-12 schools, adult education, and some preschool and childcare programs. Its primary responsibilities include enforcing education laws and regulations, providing funding and resources, and ensuring equitable access to quality education for all students. Thus, it was entirely reasonable for EUSD Official-Capacity Defendants to rely on the resources and mandates outlined by the CDE. Decl. Shinoff ¶¶ 11-13; Exhs. 8-10.

Moreover, the Administrative Regulation at issue was titled "Nondiscrimination/Harassment" in supporting the same titled Board Policy 5145.3. Exh. 2. The language of the AR 5145.3 specifically addressed the prohibition of discrimination and harassment based on sex, gender identity, or gender expression. *Id*. The guidelines relating to a transgender or gender-nonconforming student's right of privacy was specifically premised on the objective of ensuring transgender and gender-nonconforming students were afforded the same rights, benefits, and protections provided to all students by law and board policy. *Id*. As part of CDE's legal advisory, CDE provided FAQs included words "minimum requirements" which EUSD Official Capacity Defendants understood as the "absolute what you must do" or otherwise risk their state funding. Decl. Shinoff ¶¶ 11-14; Exhs. 8-10. Given this mandatory language, the Official Capacity Defendants updated and enforced the AR on the understanding that such policy was for the benefit of providing a school environment and providing transgender and gender-nonconforming students equal access and opportunities, in accordance with state law understood at the time. *Id*. Thus, Defendants request this Court to find that the EUSD Official-Capacity Defendants are entitled to qualified immunity.

## IV.  CONCLUSION

Based on the foregoing, EUSD Defendants request this Court deny Plaintiffs' renewed motion for summary judgment or a preliminary injunction.

Dated: September 16, 2025                    ARTIANO SHINOFF

By: _____
Daniel R. Shinoff
Jack Sleeth
Lauren Cambronero
Attorneys for EUSD Defendants

EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION                    3:23-cv-0768-BEN-VET

{AS7 Law San Diego/001290/000012/PL/S0603049.DOCX}

*Elizabeth Mirabelli, et al. v. Mark Olson, et al.*
*USDC Court Case No.: 23CV0768 BEN VET*

**PROOF OF SERVICE**

**(State and Federal Court)**

     I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of San Diego in the office of a member of the bar of this court at whose direction the service was made. My business address is 2727 Camino Del Rio South, Suite 300, San Diego, California, 92108.

     On September 16, 2025, I served the following document(s):

    **1.    EUSD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION**

    **2.    DECLARATION OF DANIEL R. SHINOFF IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR A PRELIMINARY INJUNCTION**

☒  **BY ELECTRONIC SERVICE** via e-mail sent without electronic error on September 16, 2025, by Nopealey Lay at nlay@as7law.com.

☐  **BY ELECTRONIC SERVICE** On the date executed below, I served the document(s) listed above via OneLegal.com.

☒  **BY ECF/CM SYSTEM** I caused such document(s) to be electronically filed and/or service using the ECF/CM System for filing and transmittal of the above documents to the below-referenced ECF/CM registrants.

| | |
|---|---|
| Charles S. LiMandri, Esq. | Thomas Brejcha, pro hac vice* |
| Paul M. Jonna, Esq. | Peter Breen, pro hac vice* |
| Jeffrey M. Trissell, Esq. | THOMAS MORE SOCIETY |
| LIMANDRI & JONNA LLP | 309 W. Washington St., Ste. 1250 |
| Rancho Santa Fe, CA 92067 | Chicago, IL 60606 |
| Tel: 858-759-9930 | Tel: 312-782-1680 |
| Facsimile: 858-759-9938 | Email: tbrejcha@thomasmoresociety.org |
| Email: cslimandri@limandri.com | Email: pbreen@thomasmorsociety.org |
| Email: pjonna@limandri.com | |
| Email: mmyers@limandri.com | |
| Email: jtrissell@limandri.com | |
| Email: kdenworth@limandri.com | |
| Email: roakley@limandri.com | |

**Attorneys for Plaintiffs, Elizabeth Mirabelli and Lori Ann West**

{AS7 Law San Diego/001290/000012/SH/S0574329.DOCX}

Darrell W. Spence, Esq.
Kevin L. Quade, Esq.
Emmanuelle S. Soichet, Esq.
455 Golden Gate Avenue, Ste. 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-4426
Fax: (415) 703-5843
Email: Emmanuelle.Soichet@doj.ca.gov
Email: Kevin.quade@doj.ca.gov
Email: Darrell.spence@doj.ca.gov
Email: shatti.hoque@doj.ca.gov
Email: jennifer.bunshoft@doj.ca.gov
Email: darin.wessel@doj.ca.gov
Email: stephanie.atwoodbell@doj.ca.gov

**Attorneys for State Defendants**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 16, 2025, at San Diego, California.

/s/Nopealey Lay
Nopealey Lay

**PROOF OF SERVICE**