UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, and LORI ANN WEST, individually and on behalf of herself and all others similarly situated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-768-BEN-WVG <br><br> **ORDER GRANTING CLASS CERTIFICATION** <br><br> **[Dkt. 244]** |

Plaintiffs seek to certify this civil rights action as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(1)(A). They seek certification of a plaintiff class with four subclasses and to appoint the plaintiffs as class representatives and counsel as counsel for the class. The Defendants oppose class certification focusing on factual differences among the putative class members and policy variations among the state public school system's many local arms. The motion is granted.

While business litigation has been the main domain for class actions over the past several decades, the Rule 23(b)(2) type of class action was specifically designed for civil rights cases. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("[T]he claims raised by the plaintiffs in this action are precisely the sorts of claims that Rule 23(b)(2) was designed to facilitate. . . . 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."). "As Wright and Miller have explained:

> 'Subdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions ... [T]he class suit is a uniquely appropriate procedure in civil-rights cases . . . . By their very nature, civil-rights class actions almost invariably involve a plaintiff class . . . .'

*Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (quoting Wright & Miller, 7AA *Fed. Prac. & Proc. Civ.* § 1776 (3d ed.)). As the court in *Parsons* observed, "[a]lthough we have certified many different kinds of Rule 23(b)(2) classes, the primary role of this provision has always been the certification of civil rights class actions." 754 F.3d at 686 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

There are four requirements. "'Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b).'" *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191–92 (9th Cir. 2024) (citation omitted). The four threshold requirements are:

(1) numerosity—the class is so large that joinder of all members is impracticable;

(2) commonality—one or more questions of law or fact is common to the class;

(3) typicality—the named parties' claims are typical of the class; and

(4) adequate representation—the class representatives will fairly and adequately protect the interests of other class members.

Fed. R. Civ. P. 23(a). Once Rule 23(a) is satisfied, a plaintiff class action may be maintained under Rule 23(b)(2) where the defendant "has acted ... on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies . . . that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citation omitted).

Plaintiffs seek to represent a class of adults who teach in, or have children in, California public schools and are adversely affected by school system policies that

prevent teachers from informing parents about their child's gender identification while at school. Specifically, Plaintiffs propose a plaintiff class and four permissive subclasses[1] as follows:

> **All individuals who are participating or will participate in California's public education system, whether as employees or parents/guardians of students, without having to subject themselves to Parental Exclusion Policies, and**
> **(1) Are employees who object to complying with Parental Exclusion Policies[2];**
> **(2) Are employees who submit a request for a religious exemption or opt-out to complying with Parental Exclusion Policies[3];**
> **(3) Are legal guardians who object to having Parental Exclusion Policies applied against them and have children who are attending California public schools[4]; or**
> **(4) Are legal guardians who submit a request for a religious exemption or opt-out to having Parental Exclusion Policies applied against them and have children who are attending California public schools.[5]**

In the class definition, Plaintiffs use the term "Parental Exclusion Policies" to mean the policies that exclude parents from being informed about their child's gender

---

[1] A class may be divided into subclasses that are each treated as a class. *See* Rule 23(c)(5). Where, as here, subclasses are permissive, they do not need to be separately evaluated for commonality, numerosity, typicality or adequacy. *Aldapa v. Fowler Packing Co., Inc.,* 323 F.R.D. 316, 326 (E.D. Cal. 2018) (citing Rule 23(c)(5)); *Am. Timber & Trading Co. v. First Nat'l Bank of Oreg.*, 690 F.2d 781, 787 n.5 (9th Cir. 1982). A prospective class representative can represent multiple subclasses. Subclasses are appropriate where class members have separate and discrete legal claims which raise a concern that adjudication of a single class' claims is impractical or undermines effective representation of the class.
[2] (Claim for Relief #1 [Teacher Free Speech]).
[3] (Claims for Relief #2-3 [Teacher Free Exercise]).
[4] (Claim for Relief #7 [Parent Substantive Due Process]).
[5] Claims for Relief #6, 8 [Parent Free Exercise]).

identification or expression which are the "result of the interplay of three aspects of California law: (1) the prohibition on gender identity discrimination, Cal. Educ. Code, §§ 200, 220; (2) the definition of gender identity as whatever a child claims, regardless of any contrary statement by a parent, Cal. Health & Saf. Code § 1439.50(b); and (3) minors' privacy rights with respect to their gender identity, even as against their parents, Cal. Const. art. I, § 1." *See* Plaintiffs' Renewed Motion for Class Certification, Dkt 244-1 at 5-6. These policies are evidenced, *inter alia*, by the California Department of Education's former FAQ page and its linked model AR 5145.3, the February 2022 EUSD staff wide training, the Attorney General's "State of Pride" webpage, the Attorney General's "Know Your Rights" webpage, and the California Department of Education's new webpage describing student rights under newly-enacted AB 1955. *See* Plaintiffs' Memorandum in Support of Plaintiffs' Renewed Motion for Summary Judgment, *et al*, Dkt 247 at 6-10.

      The State Defendants protest that there is no statewide policy.[6] However, whether such a policy persists is a question to be decided on the merits in later proceedings, rather than at the class certification stage. The State Defendants also assert that there are 1,000 separate public school districts and each school district sets its own policy.[7] Yet, the Ninth Circuit has found that the every-school-is-a-policy-island concept is not entirely accurate. California local school districts are ultimately state agents under state control. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 933 (9th Cir. 2017) ("We therefore find that . . . AB 97 did not disturb our longstanding precedent that California law treats

---

[6] "Plaintiffs' definition relies wholly on a nonexistent webpage that contained non-binding guidance in a withdrawn FAQ, formerly issued by the California Department of Education." State Defs' Oppo, Dkt 257, at 5.

[7] "There are over 1,000 unique school districts in California, each free to establish its own local policy (written or ad hoc) regarding gender-identity disclosure, so long as it complies with state and federal law, including Assembly Bill No. 1955." State Defs' Oppo, Dkt 257, at 5.

public schooling as a statewide or central governmental function. . . . that the state itself has decided to give its local agents more autonomy does not change the fact that the school districts remain state agents under state control.") (citations omitted). This structure is also recognized by the California Supreme Court. *Butt v. State of California*, 4 Cal. 4th 668, 681 (1992) ("Management and control of the public schools is a matter of state, not local, care and supervision. . . . Local districts are the State's agents for local operation of the common school system and the State's ultimate responsibility for public education cannot be delegated to any other entity.") (citations omitted). And the State Board of Education "is responsible for approving and overseeing statewide curriculum content, creating the curriculum framework for kindergarten through twelfth grade, and adopting instructional materials for kindergarten through eighth grade." *Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d 1218, 1222 (N.D. Cal. 2017). Thus, while there are many local school districts, they all must march to the beat of the State Defendants' drums. Consequently, the potential for declaratory or injunctive relief against the State Defendants on matters of statewide policy make the class action structure superior to numerous individual actions by individual parents and teachers.

### 1. Numerosity

Numerosity requires a showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is not a fixed numerical threshold. *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980) (numerosity requirement demands examines facts of each case). "Plaintiffs must show some evidence of or reasonably estimate the number of class members," as opposed to relying on mere speculation, impression, or extrapolation from cursory allegations. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999). Generally, courts presume numerosity is satisfied when there are forty or more members in the proposed class, *Rannis v. Recchia*, (380 F. App'x 646, 650-51 (9th Cir. 2010)), while a class of fifteen would likely be too small. *General Tel. Co.*, 446 U.S. at 330 (numerosity has "no absolute limitations").

Here, for purposes of estimating the number of class members, Plaintiffs rely on the deposition of Richard Barrera. Barrera was designated by the California Department of Education as its most knowledgeable person in response to Plaintiffs' deposition subpoena. Barrera testified that there are approximately 5,837,690 students enrolled in California public schools. *See* Dkt. 244-1, Ex 1, at 23. California public school teachers number approximately 319,000. *Id*. Plaintiffs also look to polling that suggests large numbers of the parents of California's 5,837,690 public school students hold the opinion that parents should be notified if their child identifies as transgender in school – 72.1% according to a November 2023 poll by the Women's Liberation Front. *See* Dkt. 244-1, Ex 5. And 62% of California voters would support a law requiring parents be notified of a child's gender transition, according to a March 2023 Rasmussen poll. *See* Dkt. 244-1, Ex 4. Based on the poll numbers, general knowledge, and common sense, it is clear that putative parent class members and teacher class members number in the thousands. Thus, joinder would be impracticable and the numerosity requirement is easily met. In fact, the State Defendants do not contest the question. *See* State Defendants' Oppo., Dkt 257, at n.1; 7-8 ("These issues are not even contested.").

### 2. Commonality

Commonality requires the plaintiffs "to show that there are questions of law or fact common to the class." *Wal-Mart*, 564 U.S. at 349. The Supreme Court says that commonality requires the plaintiffs to "demonstrate that the class members have suffered the same injury." *Id*. at 349-50. "What matters to class certification is not the raising of common questions ... but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 350 (quotations, ellipses omitted). The plaintiffs' claims must "depend upon a common contention." *Parsons*, 754 F.3d at 675 (quotation omitted). The plaintiffs "need not show, however, that every question in the case, or even a preponderance of questions, is capable of class-wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement." *Id*. (quotation omitted); *Mazza v. Am. Honda*

*Motor Co., Inc.* 666 F.3d 581, 589 (9th Cir. 2012) (commonality "only requires a single significant question of law or fact.").

Here, Plaintiffs ask for a legal declaration that the Parental Exclusion Policies violate the Fourteenth Amendment right of parents to direct the healthcare and upbringing of one's own children and parents' FERPA rights to school records. They also seek to enjoin the Defendants from continuing to violate their rights or enforcement of the defective policies. If their requests are meritorious, a ruling would dispose of most of the four subclass claims. Accordingly, Plaintiffs have provisionally shown commonality.

### 3. Typicality

Considerations underlying commonality and typicality often overlap considerably, such that they "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Rule 23(a)(3) provides that one or more class members may sue as a representative of all the members if the representative's claims are typical of the members' claims. The named representative's claims are typical if they are "reasonably coextensive with those of absent class members." *Parsons*, 754 F.3d at 685. The typicality element focuses on the claim rather than the specific facts underlying the claim. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). For Rule 23(b)(2) classes, typicality requires little more than that the main relief sought is declaratory or injunctive. *Does 1-10 v. Univ. of Wash.*, 326 F.R.D. 669, 683 (W.D. Wash. 2018) (citation omitted).

Here, the representatives' claims are typical of the class members. They all seek similar relief from the application and enforcement of the Parent Exclusion Policies against them. Thus, the typicality requirement is met.

### 4. Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." This requirement aims to "uncover conflicts of interest between the named parties and the class they seek to represent" and ensure the "competency . . . of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-

26 n.20 (1997). The adequacy test asks two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (quotations and internal citation omitted). Certification requires only one proper class representative. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009).

In appointing counsel for the class, one asks about: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). As to class counsel, Plaintiffs' current counsel is certainly adequate for the task and the Defendants do not contest the question. *See* State Defendants' Oppo., Dkt 257, at n.1; 7-8 ("These issues are not even contested.").

Defendants do not directly challenge Plaintiffs as adequate representatives. Being familiar with the allegations in the Amended Complaint and associated declarations, it is clear that the plaintiff parents and the plaintiff teachers do not have conflicting interests and are adequate to represent the proposed class and subclasses.

**5. Certification**

The plaintiffs have affirmatively demonstrated their compliance with Rule 23 by a preponderance of the evidence. Plaintiffs have proved and not simply pleaded that their proposed class satisfies each requirement of Rule 23(a) and meets the type of action listed in Rule 23(b)(2). *White v. Symetra Assigned Benefits Serv. Co.,* 104 F.4th 1182, 1191–92 (9th Cir. 2024) ("Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b).").

The State Defendants' principal objection is that the proposed class cannot be certified because it lacks "acertainability." Put differently, the State Defendants assert

that it would be "administratively impractical" to manage such a class. *See e.g.,* State Defs' Oppo., Dkt 257, at 2 ("Because it would be *administratively impractical* for the Court to *ascertain* whether an individual is a member of the Class, the Class should not be certified."); at 7 ("definition must also set forth a class that is *ascertainable*"); at 8 ("courts require that a class's membership be readily *ascertainable*"); at 9 ("Courts within the Ninth Circuit have held that putative classes fail to present *ascertainable* membership when …"); at 10 ("class definition must be definite enough so that it is *administratively feasible* for the court to *ascertain* whether an individual is a member"); at 11 ("courts have held fast to the *ascertainability* requirement"); at 12 ("This makes the Class fail the *ascertainability* test"); at 13 ("*ascertainability* is necessary for certification"); at 15 ("Plaintiffs propose no method for these determinations to be made, let alone an *administratively feasible* means"); at 17 ("because the Class is not *ascertainable* . . . it also lacks commonality"); at 19 ("because the class is not *ascertainable*, Plaintiffs also lack typicality") (italics added in each excerpt).

In essence, the State Defendants argue that there is an acertainability test. And the State Defendants argues that if the test is not met then that also undermines findings of class typicality and commonality. *Id*. at 17, 19. Why the State Defendants would oppose class certification on the basis of an ascertainability requirement is not altogether clear. What is clear is that the Ninth Circuit does not impose an "acertainability" requirement or an "administrative feasibility" requirement for class certification. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). *Briseno* held that, "[i]n sum, the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification . . . we decline to interpose an additional hurdle into the class certification process delineated in the enacted Rule." *Id*. at 1126. "We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement." *Id.* at 1133.

Similarly, regarding the State Defendants' notion that there is some kind of "acertainability" requirement for class certification, *Briseno* has not embraced one. *Id.* at

1125 & n.4 ("[Defendant] cites no other precedent to support the notion that our court has adopted an 'ascertainability' requirement. This is not surprising because we have not."); see also, In re Lidoderm Antitrust Litig., 2017 U.S. Dist. LEXIS 24097*12 (N.D. Cal. 2017) ("As the Ninth Circuit recently explained, acertainability (much less 'administrative ascertainability') is not a requirement under Rule 23.") (citing *Briseno*, 844 F.3d at 1125).

Ascertainability is not required at the certification stage and other judicial management tools are available. *Briseno*, 844 F.3d at 1129-31 (mentioning tools such as claim administrators, auditing processes, sampling for fraud detection, notice by publication, follow-up notices, *cy pres* awards, etc.). *Briseno* is binding law in this circuit and *Briseno* holds that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification," and a district court did not err in declining to require such a condition for certification. *Id*. at 1133; *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("We note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule.").

In the end, after setting aside the acertainability argument that was rejected by *Briseno*,[8] there is every reason to certify Plaintiffs' proposed class to prosecute the

---

[8] How did the State Defendants find themselves asserting a now-discarded argument? Perhaps by looking to a bevy of out-of-circuit cases and decisions pre-dating *Briseno*. *See e.g.,* State Defs' Oppo, Dkt 257, at 7, *Martinez v. Brown*, No. 08-cv-565 BEN (CAB), 2011WL 1130458, *24 (S.D. Cal. Mar. 25, 2011) (pre-*Briseno*); at 8-9, *Romberio v. Unumprovident Corp*., 385 Fed.Appx. 423, 431–33 (6th Cir. 2009) (out of circuit); at 9, *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 934-35 (5th Cir. 2023) (out of circuit); at 9, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (out of circuit); at 9, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495 (7th Cir. 2012) (out of circuit); at 9, *Crosby v. Soc. Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986) (out of circuit); at 9, *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (pre-*Briseno*); at 10, *Chua v. City of Los Angeles*, No. LACV1600237JAKGJSX, 2017 WL

alleged civil rights violations, as Rule 23(b)(2) was designed to do. *See Parsons*, 754 F.3d at 688 (ruling Rule 23(b)(2) requirements "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole").

The Court has conducted a rigorous analysis and is satisfied that the Rule 23 requirements are met. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 862 (9th Cir. 2025) ("Before it can certify a class, a district court must conduct a "rigorous analysis" to ensure that the requirements of Federal Rule of Civil Procedure 23 are satisfied.") (citations omitted). Plaintiffs' claims depend upon a common contention, and the contention is capable of class-wide resolution[9] and that determination will resolve one

---

10776036 (C.D. Cal. May 25, 2017) (pre-*Briseno*); at 11, *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 223 (N.D. Cal. 2015) (pre-*Briseno*); at 19, *In re Principal U.S. Prop. Acct. ERISA Litig.*, No. 4:10-CV-00198-JEG, 2013 WL 7218827, at *32 (S.D. Iowa Sept. 30, 2013) (pre-*Briseno*); at 19, *Mckinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-YGR, 2016 WL 879784, at *8 (N.D. Cal. Mar. 8, 2016) (pre-*Briseno*); at 20, *Shook v. Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (out of circuit); at 20, *Hernandez v. Grisham*, 494 F. Supp. 3d 1044, 1140 (D. New Mexico 2020) (out of circuit); at 20, *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012) (out of circuit); at 21 C.G.B. v. Wolf, 464 F.Supp.3d 174, 206 (D.D.C. 2020) (out of circuit).

Although the State Defendants do not mention *Briseno* directly, they do acknowledge what they call a loosening of the so-called ascertainability requirement in cases such as *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 833 (9th Cir. 2022) (certifying Rule 23(b)(2) class to end systemic discrimination) and *Rodriguez v. Hayes*, 591 F.3d 1105, 1113 (9th Cir. 2010) (affirming Rule 23(b)(2) certification of class of all detainees held pursuant to three immigration statutes). State Defs' Oppo, Dkt 257, at 10.

[9] Here, the class as a whole seeks resolution of the issue of whether "Parental Exclusion Policies" violate parental rights under the Fourteenth Amendment or the Family Educational Rights and Privacy Act (FERPA) or teachers' rights under the First Amendment. As alleged by the Plaintiffs, "Parental Exclusion Policies" is a term of art referring to the argument of both the California Attorney General and CDE that the privacy rights of minor students require schools to deceive parents about their children's gender orientation. *See* Second Amend. Compl., ¶¶2-5, 22, 256-63, 308-27 (citing Cal. Const. art. I, § 1).

or more issues that are central to the validity of each one of the claims in one stroke.[10] Injunctive relief on behalf of the proposed class would achieve systemic changes to the California Department of Education that would obviate the need for future lawsuits seeking similar relief. *See e.g., Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1333 (W.D. Wash. 2015) ("If the putative class members were to proceed on an individual basis, they might obtain the individual services they seek without obtaining systemic changes to DHHS's conduct that would benefit the class as a whole, a result that could lead to countless individual claims seeking the exact same relief."). Accordingly, the proposed Class fits squarely within Rule 23(b)(2) and is appropriate for certification.

Plaintiffs alternatively seek certification under Rule 23(b)(1)(A), which applies when prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudications with respect to individual class members or would establish incompatible standards of conduct for the party opposing the class. While it appears at first blush that (b)(1)(A) would be a sufficient ground for certification, because the Court certifies a (b)(2) class, it need not decide whether plaintiffs can proceed under (b)(1)(A).

**6. Conclusion**

Plaintiffs' motion is granted. The following class and subclasses are certified in accordance with Rule 23(b)(2):

> **All individuals who are participating or will participate in California's public education system, whether as employees or parents/guardians of students, without having to subject themselves to Parental Exclusion Policies, and**
>
> **(1) Are employees who object to complying with Parental Exclusion Policies;**

---

[10] The inquiry at the class certification stage differs from that at summary judgment. In certifying a class, courts merely decide a suitable method of adjudicating the case and do not turn class certification into a mini trial on the merits.

    **(2) Are employees who submit a request for a religious exemption or opt-out to complying with Parental Exclusion Policies;**

    **(3) Are parents/guardians who object to having Parental Exclusion Policies applied against them and have children who are attending California public schools; or**

    **(4) Are parents/guardians who submit a request for a religious exemption or opt-out to having Parental Exclusion Policies applied against them and have children who are attending California public schools.**

Dated:  October 15, 2025

              _____
               ROGER T. BENITEZ
               UNITED STATES DISTRICT JUDGE