UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, et al., <br><br> Plaintiff, <br><br> v. <br><br> MARK OLSON, et al., <br><br> Defendant. | Case No.: 23-CV-00768-BEN-VET <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERTS DARLENE TANDO AND CHRISTINE BRADY** <br><br> **[Dkt No. 243]** |

Plaintiffs' motion to exclude the testimony of Defendants' experts, Darlene Tando, LCSW, and Christine Brady, Ph.D., is **DENIED** under Federal Rule of Evidence 403 and 702.

**I.   BACKGROUND**

Plaintiffs Elizabeth Mirabelli, Lori Ann West, and others bring this action on behalf of themselves and a putative class challenging school district policies regarding the social transition of students who identify as transgender. The central dispute concerns whether California's public school teachers and staff may notify parents when a student uses a

-1-

different name or different pronouns or gender expressions that diverge from the name and sex assigned to the child at birth.

Defendants designate two expert witnesses: (1) Christine Brady, Ph.D., a clinical psychologist and Clinical Associate Professor at Stanford University School of Medicine's Pediatric and Adolescent Gender Clinic; and (2) Darlene Tando, LCSW, a licensed clinical social worker who has counseled gender nonconforming youth since 2006.

Plaintiffs contend these experts' opinions: (1) rely on unreliable principles, including quasi-spiritual beliefs; (2) lack sufficient factual basis; (3) contradict constitutional principles; (4) contain internal inconsistencies; and (5) are cumulative.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 establishes several requirements for admissibility of expert opinion evidence: (1) the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the "scientific, technical, or other specialized knowledge must assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue"; (3) the testimony must be "based on sufficient facts or data"; (4) the testimony must be "the product of reliable principles and methods"; and (5) the expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702. "Consistent with the 2023 amendment . . . Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence." *Engilis v. Monsanto Co.*, __ F.4th __, 2025 U.S. App. LEXIS 20377, 2025 WL 2315898, *16 (9th Cir. Aug. 12, 2025).

The trial court must ensure expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "Shaky but admissible evidence is to be attacked by cross-examination, contrary evidence, and careful instruction on the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citation omitted). The inquiry focuses on

methodology, not the correctness of conclusions. *Engilis,* 2025 WL 2315898, at *16. While doubtful testimony may be admitted, "'shaky' expert testimony, like any expert testimony, must still be 'admissible,' and this requires a determination by the trial court that it satisfies the threshold requirements established by Rule 702." *Id.* (citations omitted).

## III.  DISCUSSION

The Court makes no credibility determinations and assigns no particular weight to the experts' opinions at this stage. The testimony is admissible so long as it does not mislead or confuse the Court.[1] Plaintiffs' primary criticisms go to weight, not admissibility.

### A. Challenges Go to Weight, Not Admissibility

Plaintiffs argue that Tando's statements that gender identity is "part of a person's soul" and her references to "male and female brains" reflect quasi-spiritual rather than scientific foundations for her opinions. *See e.g.,* Ex. A, Tando Dep. 74:23-24, 77:9-14, 79:4-11, 86:20-25. While such statements can affect the credibility of the witness, they do not render the entirety of the testimony inadmissible. Plaintiffs also note the absence of studies examining social transition without parental involvement, while the cited literature presumes parental participation. *See* Anderson Rep. ¶129. The Court acknowledges the absence of supporting research for healthy gender transition without parental involvement. This absence, however, does not render inadmissible Tando's testimony based on broader clinical experience with transgender youth. The limitation concerns weight rather than admissibility. Plaintiffs contend the defense experts misunderstand "non-pathological" to mean "natural" or "innate," and extrapolate that

---

[1] "'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 595 (1993) (citation modified).

status to require gender affirmation in all cases. Szajnberg Rep. ¶¶15-22; Ex. A, Tando Dep. 324:5-18; Ex. B, Brady Dep. 222:15-223:17. Plaintiffs highlight the fact that both experts -- in their own practices -- refuse to treat minors without parental consent. Ex. A, Tando Dep. 56:18-57:20; Ex. B, Brady Dep. 216:18-218:7. The reality of their own practices does tend to contradict their view that schools may facilitate gender transition safely without parental involvement.[2] Even so, the experts' ongoing clinical experiences counseling transgender youth provides a sufficient foundation here for admissibility. Plaintiffs' arguments may go to credibility; they do not warrant exclusion.

Plaintiffs also argue that the experts' opinions run contrary to constitutional principles that sometimes require individualized determinations of parental fitness. *See e.g., Stanley v. Illinois*, 405 U.S. 645, 656-57 (1972).[3] At the same time, there is also a general constitutional presumption that fit parents act in their children's best interests. *Troxel v. Granville*, 530 U.S. 57, 68 (2000). As the Supreme Court has observed, "historically [the law] has recognized that natural bonds of affection lead parents to act in the best interests of their children[;] . . . so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69 (citations omitted). While these principles, including the presumption that fit parents act in their children's best

---

[2] While Plaintiffs highlight this contradiction, *Engilis* requires only that where experts "rules out a potential cause," they must "provide scientifically sound reasons." 2025 U.S. App. LEXIS 20377, 2025 WL 2315898, at *10. The experts' professional practice may differ from their opinions about school policies without rendering their testimony inadmissible.

[3] "Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand."

interests, maintain their vitality, expert opinion admissibility under Rule 702 does not turn on constitutional alignment; such issues go to the merits.

### B. Expert Disagreement Is Not a Basis for Exclusion

In essence, Plaintiffs contend that their experts are "right" and Defendants' experts are "wrong" requiring exclusion. "Correctness," however, is not the admissibility standard. "The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-95 (1993). Clinical experience with patients, peer discussions, and thorough examinations, are "tools of the [medical] trade" that can support opinions even where peer-reviewed studies are limited. *Engilis*, 2025 U.S. App. LEXIS 20377, 2025 WL 2315898, at *9 ("To be sure, an expert's specialized knowledge and experience is of critical significance when the district court determines whether a witness is 'qualified as an expert.'"); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999).[4]

Criticizing the defense expert opinions, the Plaintiffs point out for example that the Cass Review found no clear evidence that social transition in childhood has positive or negative mental health outcomes, and only "relatively weak" evidence for positive effects of social transition in adolescence. ECF 247-10, Ex. 1, ¶131. Yet, *Engilis* found that experts need not "conclusively identify the sole cause of a medical condition." 2025 U.S. App. LEXIS 20377, 2025 WL 2315898, at *10. Here, Defendants' experts need only

---

[4] "The Supreme Court has held that it was not an abuse of a district court's discretion to exclude expert testimony when there was 'too great an analytical gap between the data [of scientific studies] and the opinion proffered'. . .but we do not read the Supreme Court as requiring a medical expert to always rely on published studies indicating the exposure necessary to cause a particular illness." (citation modified).

demonstrate their opinions meet Rule 702's requirements by a preponderance of the evidence, not that they have definitively proven causation or eliminated all alternative explanations. As a result, the Court finds that such disagreement about whether there are mental health benefits from transitioning goes to weight, not admissibility. *Primiano*, 598 F.3d at 565-66 ("When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony.").

Additionally, because this matter proceeds to a bench trial, standards for excluding expert testimony apply with additional flexibility. "*Daubert* is meant to protect juries from being swayed by dubious scientific testimony." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018). "When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Id.* (citation omitted); *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014).[5]

Alternatively, Plaintiffs request limiting Defendants to one expert witness (either Dr. Brady or LCSW Tando). ECF 243 at 21:23-25:15. Rule 403 exclusion is to be applied cautiously and sparingly. *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024). Dr. Brady and LCSW Tando represent distinct disciplines. For example, Tando's counseling emphasizes social systems, skill development, and client advocacy. Bunshoft Decl., Ex. 2 at 26:1-17, 29:24-30:5. Defendants argue that the two experts offer different disciplinary approaches, and each obtains different perspectives from different client

---

[5] "When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial."; *Flores*, 901 F.3d at 1165 ("In bench trials, the district court is able to 'make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.'") (citation modified).

bases. The Court finds these differences sufficient. *Sidibe,* 103 F.4th at 691 ("Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases.") (citation omitted). Accordingly, the Court **DENIES** Plaintiffs' request to exclude Tando and Dr. Brady for duplicative reasons.

### IV.   CONCLUSION

Of course, for admission as evidence, Rule 702 still requires the drawing of, and respect for, boundary lines around expert opinion. *Engilis,* 2025 U.S. App. LEXIS 20377, 2025 WL 2315898, at *14 ("The [2023] amendment [to FRE 702] aimed 'to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology.'"). Those boundary lines have not yet been drawn at trial. For the present, for the reasons set forth above, Plaintiffs' Motion to Exclude the Testimony of Defendants' Expert Darlene Tando and Christine Brady is **DENIED**.

**IT IS SO ORDERED.**

 DATED:   October 23, 2025

**HON. ROGER T. BENITEZ**
United States District Judge