Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
William T. Duke, SBN 361823
  wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
  pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situation; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>    Defendants. | Case No.: 3:23-cv-0768-BEN-VET<br><br>**Plaintiffs' Supplemental Brief in Support of Ex Parte Application for an Order to Show Cause re: Sanctions**<br><br>Judge:    Hon. Roger T. Benitez<br>Courtroom:  5A<br>Date:     November 17, 2025<br>Time:     10:30 a.m. |

# SUPPLEMENTAL BRIEF

Plaintiffs respectfully submit this supplemental memorandum in support of their ex parte application for an Order to Show Cause regarding sanctions against the State Defendants and their counsel, currently set for hearing on November 17, 2025, at 10:30 a.m. *See* ECF Nos. 292, 293, 294. As detailed therein, since January 2025, the State Defendants have argued that Plaintiffs' claims have been mooted by the California Department of Education's ("CDE") removal of its Frequently Asked Questions webpage on the rights of gender diverse students. *See* ECF No. 292 at 4–5.

Plaintiffs were aware that the CDE was preparing a new LGBTQ+ cultural competency training program called PRISM, that was to be launched in July 2025 pursuant to Cal. Educ. Code § 218.3, but could not obtain access to it. *See* ECF No. 255-3, Jonna MSJ Decl., Ex. P. Plaintiffs were only able to access a "Facilitator's Guide" for the training published by the CDE. *See id.* at Ex. Q. The training has not been rolled out to any of the teacher-plaintiffs and the PRISM website requires login credentials to access. *See* Supp. Jonna Decl., ¶¶2-3. As shown on the PRISM website, the training would consist of six, one-hour courses that all certificated staff throughout the State would be required to take. *See* Supp. Jonna Decl., Ex. 5-1. The CDE was tasked with creating that training, and decided to collaborate with a coalition of nineteen organizations, including the Los Angeles County Office of Education, San Diego State University, the ACLU, the GSA Network, the Human Rights Campaign, Our Family Coalition, and the Trevor Project. *See* Supp. Jonna Decl., Exs. 5-2, 5-3.

However, on November 3, 2025, a nonprofit advocacy and media organization posted a screen-capture video of a PRISM training course. That video showed that the illegal directives from the FAQ page were restated in at least one of the PRISM training courses. *See* ECF No. 292-1, Jonna OSC Decl., Exs. 1–2. As a result, Plaintiffs immediately applied ex parte for an OSC re sanctions, which is set for hearing on November 17, 2025. ECF Nos. 292, 293, 294.

///

While it appeared that this was the PRISM training issued by the CDE, Plaintiffs later realized that it was possible that this training was only used by some school districts. California law allows school districts to use an alternative PRISM-compliant training so long as it is "substantially similar" to the CDE's training. Cal. Educ. Code § 218.3(c). Because the initial video came from one employee of one school district, there was no way to know how many school districts were using this version or to confirm whether the CDE and/or its partner organizations participated in its development or ratified it.

Thus, Plaintiffs sought to confirm whether the training that was posted online differed from the one developed by the CDE. As stated, obtaining access to the PRISM website was difficult. But in preparation for the OSC, Plaintiffs made further efforts and were able to obtain access to it. To the extent the CDE may attempt to distance itself from the PRISM training provided to the Court last week, Plaintiffs have now identified the training modules that were indisputably developed by the CDE, and obtained a screen-capture video of Course 3 from those trainings. *See* Supp. Jonna Decl., Elec. Ex. 4; Shaw Decl., ¶¶ 1-4; Burt Decl., ¶¶ 1-5.

This new video reveals that the PRISM training developed by the CDE and sent to all California school districts is even more egregious than initially thought, explicitly instructing teachers to withhold information from parents about a student's gender identity and promoting policies that directly contravene fundamental and constitutional parental rights. Indeed, the CDE removed the FAQ page, but partnered with the ACLU, Equality California, Our Family Coalition, The Trevor Project, GLSEN, and others to distribute identical directives statewide under these groups' letterheads and with the CDE's full blessing and approval.

This is not mere ambiguity or withdrawal, but an affirmative, statewide campaign to enforce Parental Exclusion Policies while falsely claiming mootness to evade judicial scrutiny. In doing so, the State Defendants have not only attempted to egregiously mislead the Court, but have attempted to severely prejudice Plaintiffs and

the certified class by preventing them from obtaining redress in this critically important civil rights class action. This conduct amounts to a blatant fraud on the Court, warranting severe sanctions. *See* Fed. R. Civ. P. 56(h); S.D. Cal. CivLR 83.1.

### I. Section Providing Legal Guidance.

Module D of PRISM Course 3 is titled "Strategies and Resources for LGBTQ+ Support." Beginning at 52:20, the video of the training shows a sub-section titled "Certificated Educator Resources." This section consists of links to various resource documents prepared by the PRISM partners. Beginning at 55:10, the video shows a hyperlink to a document titled "School Legal Responsibilities" which was prepared by Our Family Coalition, one of the partners that created the PRISM training. Supp. Jonna Decl., Ex. 6-1.

That guidance document states:

> ***School staff must respect students' right to privacy and may not affirmatively disclose a student's LGBTQ status*** to others without the student's permission. Students have a right to privacy in personal information about their sexual orientation and gender identity, and ***outing students*** both at school or ***at home violates this right*** and also risks exposing students to harassment. If a student is not out at home, schools should offer them support for working towards family acceptance. (CA Constitution; Ed Code §§ 200 et seq.))

Supp. Jonna Decl., Ex. 6-2, at p.2 (emphasis added).

Next, at minute 57:00, the video shows the PRISM training linking to a webpage prepared by the ACLU of Southern California titled "LGBTQ Student Rights in K-12 California Public Schools." Supp. Jonna Decl., Ex. 7-1. At the bottom of the page is also a document titled "CA LGBTQ+ Student Rights Toolkit." The webpage states:

> **Do I have the right to keep information about my gender identity and/or sexual orientation private?**
> *YES. Generally, school staff cannot share information about your gender identity and sexual orientation without your permission,* except under very limited circumstances, such as in case of an emergency. California law requires that school districts provide a safe and welcoming environment where you can learn and be yourself. Disclosing a student's

gender identity or sexual orientation without their permission may violate California's antidiscrimination laws.... ***However, under some limited circumstances, your school can tell your parents about your sexual orientation and/or gender identity—but only if they have a very good reason for doing so.***

Supp. Jonna Decl., Ex. 7-2, pp.5-6 (emphasis added).

The toolkit further includes a checklist for students to see if their school districts are compliant with California law. It states:

> [ ] ***Is your school careful not to "out" a student's LGBTQ+ status, including to their parents, without their consent?*** Are there policies and practices in place for working with and protecting the privacy rights of LGBTQ+ students who lack family support?

Supp. Jonna Decl., Ex. 7-3, p.7 (emphasis added).

## II.    Section on Model Transgender Anti-Discrimination Policies

Module B of the PRISM Course 3 is titled "Impacts of Bias on LGBTQ+ Students." In the videorecording of Course 3, beginning at minute 27:10, the training discusses the need for teachers to advocate for gender-affirming policies. The training then hyperlinks to a model district policy prepared by GLSEN, another of the nonprofit partners that prepared the PRISM training, stating: "Click here to download a model district policy that is affirming." *See* Supp. Jonna Decl., Ex. 8-1. It reiterates the FAQ page nearly exactly, stating in relevant part:

> The District shall ensure that all personally identifiable and medical information relating to transgender and gender nonconforming students shall be kept confidential in accordance with applicable state, local, and federal privacy laws. ***School staff shall not disclose any information that may reveal a student's transgender status to others, including parents or guardians*** and other school staff, unless legally required to do so or unless the student has authorized such disclosure….
>
> ***Before contacting the parent or guardian of a transgender student, school staff should ask the student whether to use their chosen name and the pronouns*** that correspond to their gender identity, or whether to use their legal name…..
>
> ***All persons, including students, have a right to privacy, and this includes***

*the right to keep one's transgender status private at school.* Information about a student's transgender status, legal name, or gender assigned at birth constitutes confidential personally identifiable and medical information. ***Disclosing this information to*** other students or ***parents*** or other third parties may violate privacy laws, such as the federal Family Educational Rights and Privacy Act (FERPA), as well as constitutional privacy protections. Additionally, disclosure or misuse of this information may establish a hostile environment for a transgender or gender nonconforming student, potentially subjecting them to bullying and harassment by peers, discrimination by school staff, or family rejection.

Supp. Jonna Decl., Ex. 8-2, p.4 (emphasis added).

### III.  Section on Gender Support Plans

Lastly, Module C of PRISM Course 3 is titled "Laws and Policies Supporting LGBTQ+ Students." Within this section, beginning at minute 43:55, it discusses implementing a "Gender Support Plan," which the training says "should be developed with input from the student and their family (*if appropriate*)." Supp. Jonna Decl., Ex. 9-1, p.2 (emphasis added). In the subsequent section titled "Implementing the Gender Support Plan," it explains when involving parents is appropriate:

> While the order of steps may vary from school to school, these are the basic steps one will follow in creating a Gender Support Plan.
> • Initial Consultation: ***Meet with the student, family (if applicable)***, and relevant staff to discuss and create the plan….
> • Communication with Staff: After the plan is created, ensure that relevant staff—such as teachers, counselors, and administrators—are informed, but ***only with the student's consent.*** This may involve offering training on gender inclusivity to help staff better understand how to provide effective support for the student.
> • ***Respect Privacy: Be sure to maintain confidentiality around the student's gender identity and provide the plan in a manner that respects their privacy.***
> • Review and Update: A GSP is a dynamic document that should be reviewed periodically and adjusted as necessary. ***Check in with the student and their family, if appropriate,*** to ensure that the accommodations are still working and that the student feels supported.

Supp. Jonna Decl., Ex. 9-1, pp.3-5 (some emphasis added).

Further down, the section also states: "Take a moment to explore Gender Spectrum's GSP template and its key components. Click on document below and scroll through the pages." The model Gender Support Plan is not hyperlinked, but imbedded in the training itself. *See* Supp. Jonna Decl., Ex. 9-1, p.6. That model Gender Support Plan has various questions with boxes in which the answer is to be written. It includes a box to answer the following question: "If the student's guardians are not aware and/or supportive of the student's gender status, ***how will school-home communications be handled***, including when individual staff members need to contact guardians?" Supp. Jonna Decl., Ex. 9-2, p.3 (emphasis added). This model plan clearly communicates that schools are still required to participate in parental deception.

## CONCLUSION

Plaintiffs' claims stemmed from the CDE's directives to all school districts on its 2016 FAQ page on the rights of gender diverse students, which the CDE stated contained "minimum requirements for compliance." ECF No. 247-16 at 164. After summarizing what California law purportedly required on these issues, the CDE directed all school districts to "model policies" (AR 5145.3) that it endorsed as complying with California law. *Id.* at 176. Unsurprisingly, that model AR 5145.3 was quickly adopted by virtually every school district in the State.

Then, in January 2025, the CDE replaced the 2016 FAQ page with a new page—without telling school districts that there was anything wrong with the prior "guidance" or the "model policy" that it had every school district adopt. As discovery in this case has confirmed, school districts kept the "model" AR 5145.3 Parental Exclusion Policies on the books because they thought they were still required. Now, with the required PRISM training the CDE just started to roll out, the CDE has reiterated to every school district in California that the challenged content on the 2016 FAQ page is still required. Meanwhile, in this case, the CDE is still somehow arguing that Plaintiffs' claims are moot. In essence, the CDE took down one webpage, but knowingly maintained the same policy—moving it to a location that is harder for the

public to find, but much more accessible to school districts as it is contained within a required training.

Thankfully, the Ninth Circuit does not take a "'whack-a-mole' approach to mootness." *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1008 (9th Cir. 2023). The mootness argument was always frivolous, and the Court has been correct to reject it. The issue now is much more serious than mootness. The question before the Court is whether it should allow the State Defendants to knowingly misrepresent critical facts in order to avoid judicial review and prejudice a Certified class of California parents and teachers. Thus, Plaintiffs respectfully request that the Court issue a significant monetary sanction against the State Defendants, and their counsel, payable to the Court and/or attorneys' fees payable to Plaintiffs following further briefing following the OSC hearing.[1]

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: November 10, 2025    By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

---

[1] Plaintiffs expect that they will move for fees under 42 U.S.C. § 1988 in due time and so any fee award to them would be redundant. Moreover, the Court can only grant fees to Plaintiffs upon finding bad faith on the part of the State Defendants. Rule 11 sanctions, which are only payable to the Court in this context, do not require a finding of bad faith.

# CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-VET

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **Plaintiffs' Supplemental Brief in Support of Ex Parte Application for an Order to Show Cause re: Sanctions;**
- **Supplemental Declaration of Paul M. Jonna, Esq., in Support of Plaintiffs' Ex Parte Application for an Order to Show Cause re: Sanctions;**
- **Declaration of Sonja Shaw in Support of Plaintiffs' Ex Parte Application for an Order to Show Cause re: Sanctions; and**
- **Declaration of Greg Burt in Support of Plaintiffs' Ex Parte Application for an Order to Show Cause re: Sanctions.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
California Department of Justice
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for CDE Defendants**

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on November 10, 2025, at Rancho Santa Fe, California.

_____
Kathy Denworth