1  ROB BONTA
   Attorney General of California
2  DARRELL W. SPENCE
   Supervising Deputy Attorney General
3  JENNIFER A. BUNSHOFT (SBN 197306)
   KEVIN L. QUADE (SBN 285197)
4  ANNE BUSACCA-RYAN (SBN 318295)
   SHATTI A. HOQUE (SBN 350250)
5  Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone:  (415) 510-3377
7   Fax:  (415) 703-5480
    E-mail:  Jennifer.Bunshoft@doj.ca.gov
8  *Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**STATE DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE RE: SANCTIONS**<br><br>Date:     November 17, 2025<br>Time:    10:30 a.m.<br>Dept:     5A<br>Judge:   The Honorable Roger T. Benitez<br><br>Action Filed:   April 27, 2023 |

**TABLE OF CONTENTS**

Page

Introduction ..................................................................................................................1
Relevant Background ...................................................................................................2
Argument ......................................................................................................................5
    I.    Sanctions Are Not Warranted Under the Courts' Inherent Authority to Impose Sanctions for Bad-Faith Conduct ........................5
    II.   Sanctions are Not Warranted Under Rule 56(H) ................................7
        A.    The Declaration of Richard Barrera is Accurate, Truthful, and Was Not Filed in Bad Faith .....................................................9
        B.    The Court Will Not Rely on the Barrera Declaration, Because the SPI and SBE have Withdrawn Their Mootness Argument ..................................................................................9
    III.  Sanctions are Not Warranted Under Rule 11 .....................................10
Conclusion .................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arrant v. Richardson*
   2019 WL 7630864 (C.D. Cal. Dec. 10, 2019) .................................................. 8

*Christian v. Mattel, Inc.*
   286 F.3d 1118 (9th Cir. 2002) ........................................................................... 5

*Coble v. Renfroe*
   2012 WL 4971997 (W.D. Wash. Oct. 17, 2012) ............................................. 8

*Faberge, Inc. v Saxony Prods., Inc.*
   605 F.2d 426 (9th Cir. 1979) ....................................................................... 9, 10

*Fink v. Gomez*
   239 F.3d 989 (9th Cir. 2001) ............................................................................. 6

*Operating Engineers Pension Trust v. A-C Co.*
   859 F.2d 1336 (9th Cir. 1985) ......................................................................... 10

*Pumphrey v. K.W. Thompson Tool Co.*
   62 F.3d 1128 (9th Cir. 1995) ............................................................................. 6

*Radcliffe v. Rainbow Const. Co.*
   254 F.3d 772 (9th Cir. 2001) ........................................................................... 11

*Raher v. Fed. Bureau of Prisons*
   2011 WL 4832574 (D. Or. Oct. 12, 2011) ....................................................... 8

*Stern v. Regency Towers, LLC*
   886 F. Supp. 2d 317 (S.D.N.Y. 2012) .............................................................. 8

*U.S. Sec. Holdings, Inc. v. Andrews*
   2021 WL 6882436 (C.D. Cal. Dec. 24, 2021) ................................................. 8

*Yagman v. Republic Ins.*
   987 F.2d 622 (9th Cir. 1993) ............................................................................. 6

*Zambrano v. City of Tustin*
   885 F.2d 1473 (9th Cir. 1989) ........................................................................... 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Education Code
  § 218.3 .................................................................................................................3
  § 218.3(d)..............................................................................................................5
  § 220.3 .................................................................................................................2

**COURT RULES**

Federal Rules of Civil Procedure
  11 ..............................................................................................................2, 10, 11
  11(b)....................................................................................................................10
  11(c)(2) .........................................................................................................10, 11
  11(c)(3) ...............................................................................................................11
  30(b)(6).................................................................................................................9
  56 .........................................................................................................................9
  56(h).............................................................................................................*passim*

# INTRODUCTION

Plaintiffs seek sanctions against State Defendants and their counsel, claiming that they have acted in "bad faith." The purported bad faith is that State Defendants asserted in their motions to dismiss and in opposition to Plaintiffs' motion for summary judgment that Plaintiffs' claims were moot as to the Superintendent of Public Instruction and the State Board of Education because the California Department of Education had withdrawn Plaintiffs' only basis for suit against the Superintendent and the Board by removing the FAQ page which contained the policies Plaintiffs challenge in this case.[1] Plaintiffs claim that the CDE merely moved the challenged content of the FAQ page to a new, required training for teachers.

While it is true that certain third-party resources linked to the training contain statements that are similar to the substance of the removed FAQ page, this was simply an error by the California Department of Education. There is no evidence before the Court that any of the State Defendants or their attorneys engaged in intentional, bad-faith conduct, which is required to impose sanctions under the Court's inherent powers and under Rule 56(h). Rather, the inconsistency between the mootness argument and the third-party resources linked to the training are the result of a simple oversight on the part of the California Department of Education. Now that the oversight has been discovered, the Superintendent of Public Instruction and the State Board of Education have withdrawn the mootness argument, and the California Department of Education has temporarily disabled the webpage used by teachers to access the training, while it is currently reviewing third-party webpages linked to the training.

Because State Defendants and their counsel have not acted in bad faith, the Court should not impose sanctions under the Court's inherent powers or under Rule

---

[1] Attorney General Bonta, in his capacity as a defendant in this case, did not make this argument.

1

56(h).  Additionally, because Plaintiffs failed to comply with the "safe harbor" provision of Rule 11, sanctions under that Rule are unavailable.

## RELEVANT BACKGROUND

On April 27, 2023, Plaintiffs filed a Complaint and named as defendants Superintendent Thurmond (SPI) and the Members of the State Board of Education (SBE) (collectively, State Education Defendants).  ECF 1.  Attorneys from the California Department of Education (CDE) initially represented the State Education Defendants in this matter.  Declaration of Len Garfinkel, ¶ 2.  Plaintiffs' claims against the State Education Defendants were primarily based on nonbinding guidance on CDE's website in the form of a Frequently Asked Questions (FAQ) page which addressed student privacy in relation to disclosure of their gender identity, among other things.  ECF 1.

On July 15, 2024, Governor Newsom signed into law Assembly Bill 1955, known as the "Support Academic Futures and Equality for Today's Youth (SAFETY) Act."  AB 1955 became effective on January 1, 2025.  Among other provisions, AB 1955 required the CDE to update existing resources and supports relating to LBGTQ students in order to reflect changes in law.  Garfinkel Decl., ¶ 4.  In addition, AB 1955 added Education Code section 220.3, which provides that employees of Local Education Agencies (LEAs) "shall not be required to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent unless otherwise required by state or federal law."  Nothing in AB 1955 mandates the conduct or speech of school district employees.

On January 2, 2025, as a result of AB 1955 going into effect, the CDE posted updated guidance.  Garfinkel Decl., ¶ 5.  The guidance indicated that it replaced the FAQs, and the FAQ page was taken down as of January 2, 2025.  *Id*.  Also on January 2, 2025, the CDE notified all school district and county superintendents,

1  and all charter school administrators, that the new guidance had been posted, and
2  that it replaced the FAQs. *Id*.
3      On January 14, 2025, the State Education Defendants filed a motion to dismiss
4  in this case, asserting that the claims against those defendants had become moot.
5  ECF 195. The State Education Defendants were represented in this motion by
6  attorneys from CDE. Garfinkel Decl., ¶ 6. State Education Defendants' motion
7  was denied on April 10, 2025. ECF 236.
8      On May 6, 2025, the State Education Defendants filed notices substituting
9  their CDE attorneys with attorneys from the California Office of the Attorney
10 General who had already been representing the Attorney General in this case (AGO
11 Attorneys). ECF 238, 239.
12     California Education Code section 218.3 requires that CDE provide cultural
13 competency training for certificated educators serving students in grades 7-12.
14 Garfinkel Decl., ¶ 8. This new training, entitled "Providing Relevant, Inclusive
15 Support that Matters for LGBTQ+ Students" (PRISM), is an online training. *Id*.
16 As provided for under the statute, CDE selected Los Angeles County Office of
17 Education (LACOE) as the lead contractor to develop the online cultural
18 competency training courses, and LACOE collaborated with an advisory committee
19 composed of 20 nonprofit organizations. *Id*. Under the law, the new training was
20 to be implemented by July 1, 2025. *Id*. The AGO Attorneys were not informed of
21 the PRISM training, and were not aware of it. Declarations of Kevin Quade,
22 Jennifer Bunshoft, and Darrell Spence, ¶¶ 7-9; Garfinkel Decl., ¶ 9.
23     In June of 2025, CDE's general counsel reviewed a draft of the text of the
24 PRISM training, and made certain edits to ensure consistency with the law,
25 including AB 1955, but inadvertently did not review any links to third-party
26 resources. Garfinkel Decl., ¶¶ 10-11. Because he did not review the links, he was
27 not aware of the language contained therein that Plaintiffs assert contradicts the
28 State Education Defendants' mootness arguments. *Id*. at ¶ 11.

3

|   |   |
|---|---|
| 1 | The AGO Attorneys were not involved in the review process for the PRISM |
| 2 | training, and were not informed of it.  *Id.* at ¶ 12; Quade, Bunshoft, and Spence |
| 3 | Decls., ¶¶ 7-9. |
| 4 | On September 8, 2025, in response to Plaintiffs' motion for summary |
| 5 | judgment, the State Defendants filed an opposition to Plaintiffs' motion.  Quade, |
| 6 | Bunshoft, and Spence Decls., ¶ 6.  Although the Court had earlier denied the State |
| 7 | Education Defendants' motion to dismiss on mootness grounds, for purposes of |
| 8 | preservation on appeal, the State Defendants' opposition included a two-paragraph |
| 9 | argument that the claims against the State Education Defendants remained moot. |
| 10 | *Id*.  This argument was not made by Attorney General Bonta in his capacity as a |
| 11 | defendant in this case.  *Id*. |
| 12 | CDE's general counsel reviewed State Defendants' opposition brief before it |
| 13 | was filed, and provided feedback to the AGO Attorneys who were drafting the |
| 14 | brief.  Garfinkel Decl., ¶ 14.  Because CDE's general counsel had no reason to |
| 15 | believe at that time that the PRISM training would conflict with the mootness |
| 16 | argument, he did not inform the AGO Attorneys of any factual conflicts with |
| 17 | asserting the mootness argument and did not raise the issue of the PRISM training. |
| 18 | *Id*. |
| 19 | The AGO attorneys became aware of the PRISM training when it was cited by |
| 20 | Plaintiffs for the first time in a pleading responsive to parties represented by the |
| 21 | AGO attorneys—Plaintiffs' reply briefing following the State Defendants' |
| 22 | opposition to summary judgment.  Quade, Bunshoft, and Spence Decls., ¶ 8; *see* |
| 23 | *also* ECF 269 at 12 (referencing a "new PRISM training for all school staff on |
| 24 | LGBTQ+ competency reiterating student privacy rights").  In making this reference |
| 25 | to the PRISM training, Plaintiffs did not assert or imply that the content of the |
| 26 | training conflicted with the mootness argument earlier made on behalf of the State |
| 27 | Education Defendants.  Quade, Bunshoft, and Spence Decls., ¶ 8.  In fact, this |
| 28 | reference was made in Plaintiffs' response to standing arguments made on behalf of |

4

all State Defendants, without reference to the State Education Defendants' mootness argument. *Id*. The AGO attorneys and State Defendants learned that third-party links embedded in the PRISM training potentially conflicted with the State Education Defendants' mootness arguments for the first time after Plaintiffs filed the instant request for sanctions. *Id*.[2]

The CDE has temporarily taken down the PRISM webpage and is reviewing those links and discussing any appropriate changes, such as disabling links to certain third-party resources. Garfinkel Decl., ¶ 16; Declaration of Sharla Smith, ¶ 13.

In addition, now that State Education Defendants are aware of the issue, they have withdrawn the mootness argument. ECF 298.

## ARGUMENT

### I. SANCTIONS ARE NOT WARRANTED UNDER THE COURTS' INHERENT AUTHORITY TO IMPOSE SANCTIONS FOR BAD-FAITH CONDUCT

Plaintiffs seek sanctions against State Defendants under the Court's inherent authority court to impose sanctions for bad faith, based on the claim that State Defendants engaged in "fraud on the court." ECF 292 at 4. "To impose sanctions under its inherent authority, the district court must make an explicit finding . . . that [the] conduct constituted or was tantamount to bad faith." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). In determining whether a party has acted in

---

[2] In the Ex Parte Application for OSC re Sanctions that Plaintiffs filed on November 7, 2025, Plaintiffs relied upon a video at the following link https://www.youtube.com/watch?v=h9xl0E2YJTo, as well as the screenshots in Exhibit 2 to the initial Declaration of Paul Jonna in support of Plaintiffs' application. ECF 292-1. However, it is not the PRISM training created by LACOE and CDE. Specifically, the corner of the video has the logo "Tuolumne JPA," which suggests it is a local training made by the "Tuolumne Joint Powers Authority," which may be the name for a consortium of school districts in that area. It does not have the PRISM logo, unlike the official PRISM training. In addition, the training refers to modules listed by number, such as "Module 1," but PRISM modules are identified by letters. Declaration of Sharla Smith, ¶ 10. An LEA may choose to use an in-service training as an alternative to the free online PRISM training. If so, the LEA must ensure that the alternative training is substantially similar to and meets the same requirements as PRISM. Cal. Educ. Code, § 218.3(d).

bad faith, the court must look to whether a party's conduct was intentional—a district court may not sanction "inadvertent" conduct, at least not under its inherent power. *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (citing *Zambrano v. City of Tustin*, 885 F.2d 1473, 1483 (9th Cir. 1989)) (Ninth Circuit reversed sanctions issued under court's inherent power due to a lack of intent); *see also Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993) (Ninth Circuit vacated imposition of sanctions where there was no evidence that the attorney had "intended to mislead the court"). To establish fraud on the court, the evidence must prove the existence of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995).

    Here, there is no evidence before the Court that any of the State Defendants or the AGO Attorneys engaged in intentional, bad-faith conduct, and certainly no evidence to establish a scheme to commit fraud on the court. First, as to the Attorney General, he did not make any mootness argument based on the removal of CDE's FAQ, in his capacity as a defendant in this case. He had no role with respect to the CDE's FAQ page, and the evidence confirms that he did not have any role with developing or implementing the complained of PRISM training. *See* ECF 256 at 17; Smith Decl., ¶¶ 4-5. Indeed, there is no evidence that the Attorney General was even aware of the PRISM training.

    Second, as to the SBE, it had no role concerning CDE's FAQ page, and it had no role in the development or implementation of the PRISM training. Smith Decl., ¶¶ 4-6.

    Third, as to the SPI, the evidence confirms that CDE's general counsel did not review the substance of the third-party resources Plaintiffs complain of, due to simple oversight, and was unaware of the conflict between the material complained of and the SPI and SBE's mootness argument. *See* Garfinkel Decl., ¶¶ 10, 11, 14.

Finally, as for the AGO Attorneys, the evidence shows that they were not aware of the PRISM training until they saw it mentioned in Plaintiffs' reply brief in response to State Defendants' opposition to Plaintiffs' motion for summary judgment. *See* Bunshoft, Quade, and Spence Decls., ¶¶ 7-9; *see also* Garfinkel Decl., ¶¶ 9, 12, 14. But even then, Plaintiffs' mention of the PRISM training was not in relation to the removal of the FAQs—it was in relation to the State Defendants' argument that Plaintiffs lacked standing to sue them, not that Plaintiffs' claims had become moot. ECF 269 at 12. In any event, the AGO Attorneys were not aware of the PRISM training until after they filed the opposition to Plaintiffs' motion for summary judgment, and were unaware of any possibility that any portion of the PRISM training contradicted the SPI and SBE's mootness argument until they received notice from Plaintiffs on November 11, 2025, of their intent to seek sanctions. Bunshoft, Quade, and Spence Decls., ¶¶ 7-9; *see also* Garfinkel Decl., ¶¶ 9,12,14.

If the SPI, SBE, and their attorneys handling this case had been aware that the SPI and SBE's mootness argument was contradicted by statements contained in certain third-party resources linked to the CDE's PRISM training, they never would have made the mootness argument in their opposition to Plaintiffs' motion for summary judgment. Bunshoft, Quade, and Spence Decls., ¶ 9. Because the evidentiary record before the Court does not establish that State Defendants or their counsel executed a plan or scheme to commit fraud on the Court, the request for sanctions should be denied.

## II. SANCTIONS ARE NOT WARRANTED UNDER RULE 56(H)

Plaintiffs also appear to seek sanction under Rule 56(h).[3] ECF No. 292 at 4. Federal Rule of Civil Procedure 56(h), which applies to motions for summary judgment, provides:

---

[3] Plaintiffs' sanctions request also cites S.D. Cal. Civ. Local Rule 83.1, but because sanctions under that local rule are available for failure to comply with the (continued…)

7

> Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court -- after notice and a reasonable time to respond -- may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h).

To award sanctions under Rule 56(h), a court must find (1) the declaration was "submitted in bad faith or solely for delay" and (2) the court relied on the declaration in deciding the summary judgment motion. *U.S. Sec. Holdings, Inc. v. Andrews*, 2021 WL 6882436, at *3 (C.D. Cal. Dec. 24, 2021), *appeal dismissed*, 2023 WL 3690828 (9th Cir. Apr. 28, 2023). Courts interpreting the Rule have held that "[b]ad faith in the context of Rule 56(h) requires a deliberate or knowing act for an improper purpose." *Raher v. Fed. Bureau of Prisons*, 2011 WL 4832574, at *8 (D. Or. Oct. 12, 2011); *see also Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (bad faith found "where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case") (internal quotation marks and citation omitted); *Arrant v. Richardson*, 2019 WL 7630864, at *4 (C.D. Cal. Dec. 10, 2019), *report and recommendation adopted*, 2020 WL 362627 (C.D. Cal. Jan. 22, 2020) ("A declaration is submitted in bad faith under Rule 56(h) when it 'knowingly contains perjurious or intentionally false assertions or knowingly seeks to mislead by omitting facts central to a pending issue'") (quoting *Coble v. Renfroe*, 2012 WL 4971997, at *2 (W.D. Wash. Oct. 17, 2012)).

However, even where a litigant's actions are wrongful, courts have not awarded sanctions where the declaration did not affect the disposition of the summary judgment motion. *See Raher*, 2011 WL 4832574, at *7; *see also*

---

Federal Rules of Civil Procedure, the analysis for sanctions under Rule 56(h) guides the analysis for sanctions under Local Rule 83.1 in this matter.

*Faberge, Inc. v Saxony Prods., Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) (per curiam) (even if affidavit was submitted in bad faith, plaintiff was not entitled to sanctions because the district court's and Ninth Circuit's panel decisions were not affected by the presence of the affidavit in the record). Sanctions under Rule 56(h) "are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions." Fed. R. Civ. P. 56(h), advisory committee's notes to 2010 amendment.

### A. The Declaration of Richard Barrera is Accurate, Truthful, and Was Not Filed in Bad Faith

Plaintiffs point to the Declaration of Richard Barrera, CDE's Rule 30(b)(6) witness, which was filed in opposition to Plaintiffs' motion for summary judgment, as the basis for their claim for sanctions under Rule 56(h). ECF 292 at 4. That declaration states that CDE withdrew the FAQ page, replaced it with the AB 1955 Guidance, and notified school districts and county superintendents of this new guidance on the date of its publication. ECF 256-5 at 2-3. There is nothing false about the facts set forth in this declaration. Moreover, there are no facts to establish that the declaration was submitted in bad faith. Indeed, as discussed in detail above, the evidence shows that the declaration was submitted in good faith and without any intent to mislead the Court. *See* Bunshoft, Quade, and Spence Decls., ¶¶ 6-9; *see also* Garfinkel Decl., ¶¶ 9,12,14. Because the Barrera declaration was not submitted in bad faith, the request for sanctions under Rule 56(h) should be denied.

### B. The Court Will Not Rely on the Barrera Declaration, Because the SPI and SBE have Withdrawn Their Mootness Argument

Additionally, Plaintiffs cannot meet the second element required for sanctions under Rule 56(h), as the Court will not rely upon Richard Barrera's declaration in deciding Plaintiffs' motion for summary judgment. This is because the SPI and SBE have withdrawn their mootness argument prior to the hearing on the motion

for summary judgment. ECF 298; *see Faberge, Inc. v Saxony Prods., Inc.*, 605 F.2d at 429 (even assuming affidavit was submitted in bad faith, movant not entitled to sanctions award because court's denial of summary judgment was not caused by the presence of the affidavit in the record). Again, sanctions should not issue under Rule 56(h).

### III. SANCTIONS ARE NOT WARRANTED UNDER RULE 11

It is unclear whether Plaintiffs are also seeking sanctions under Rule 11, as Plaintiffs' ex parte application for an order to show cause re sanctions does not make any mention of Rule 11, ECF 292, and their supplemental brief in support of their ex parte application re sanctions only mentions Rule 11 once, in a footnote on the last page of the brief. ECF 295 at 8. Regardless, Rule 11 sanctions are not available here because Plaintiffs have not complied with the procedural requirements of the Rule.

Rule 11 imposes upon attorneys a duty to certify by signature that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose. *See* Fed. R. Civ. P. 11(b). The Ninth Circuit has made clear that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1985). Thus, sanctions under Rule 11 are "reserve[d] for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344.

To seek sanctions under Rule 11, the submitting party is required to first serve a motion for sanctions on the other party, and the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Compliance with this "safe harbor" provision is mandatory, and if the service procedure is not followed

sanctions are not warranted. *See Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001).

Rule 11(c)(3)—which allows for court-initiated sanctions without a "safe harbor" provision—does not permit sanctions when the moving party initiates the sanctions proceeding. *See Radcliffe*, 254 F.3d at 789. "It would render [the] "safe harbor" provision meaningless to permit a party's noncompliant motion to be converted automatically into a court-initiated motion, thereby escaping the service requirement." *Id.*

Here, Plaintiffs did not comply with the mandatory "safe harbor" provision of Rule 11(c)(2), as they filed a request for an order to show cause re sanctions without serving the request on State Defendants 21 days prior. And Plaintiffs cannot argue that the Court initiated the instant sanctions proceeding, because it was Plaintiffs' request that caused the Court to set the instant order to show cause. Had Plaintiffs served their request on State Defendants prior to filing it with the Court, it would have enabled State Defendants' counsel to consult with CDE's General Counsel about Plaintiffs' contentions regarding the PRISM training. Through that investigation, CDE's General Counsel would have discovered that he inadvertently had not looked at the links to third-party resources when he reviewed and edited a draft of the text for the PRISM training, and State Defendants' counsel would have shared that information with Plaintiffs' counsel, and withdrawn the mootness argument.[4] State Defendants' counsel would have also informed Plaintiffs' counsel that the Tuolumne JPA training, relied upon in Plaintiffs' initial ex parte application for OSC was an alternative to the PRISM training, of which CDE had no involvement. Smith Decl., ¶¶ 10-11.

Regardless, because Plaintiffs violated Rule 11(c)(2), sanctions under Rule 11 are unavailable.

---

[4] Now that they are aware of the issue, the SPI and SBE have promptly withdrawn their mootness argument. ECF 298.

# CONCLUSION

For the reasons detailed above, Defendants respectfully request that the Court deny Plaintiffs' request for sanctions.

Dated: November 14, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General


*/s/ Jennifer A. Bunshoft*
JENNIFER A. BUNSHOFT
Deputy Attorney General
*Attorneys for State Defendants*