FILED

JAN 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual; LORI ANN WEST, an individual; JANE ROE, an individual, on behalf of herself and all others similarly situated; JANE BOE, an individual, on behalf of herself and all others similarly situated; JOHN POE, an individual, on behalf of himself and all others similarly situated; JANE POE, an individual on behalf of herself and all others similarly situated; Dr JOHN DOE, an individual, on behalf of himself and all others similarly situated; Miss JANE DOE, an individual, on behalf of herself and all others similarly situated, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of California; TONY THURMOND, in his official capacity as the California State Superintendent of Public Instruction; LINDA DARLING-HAMMOND, in her official capacity as President of the California State Board of Education; CYNTHIA GLOVER WOODS, in her official capacity as Vice President of the California State Board of Education; FRANCISCO ESCOBEDO, in his official capacity as a member of the California State Board of Education; BRENDA LEWIS, in her official capacity as a member of the California State Board of Education; JAMES J. MCQUILLEN, in his official | No. 25-8056 <br><br> D.C. No. 3:23-cv-00768-BEN-VET Southern District of California, San Diego <br><br> ORDER |

capacity as a member of the California State Board of Education; SHARON OLKEN, in her official capacity as a member of the California State Board of Education; GABRIELA OROZCO-GONZALEZ, in her official capacity as a member of the California State Board of Education; KIM PATTILLO BROWNSON, in her official capacity as a member of the California State Board of Education; HAYDEE RODRIGUEZ, in her official capacity as a member of the California State Board of Education; ALISON YOSHIMOTO-TOWERY, in her official capacity as a member of the California State Board of Education; ANYA AYYAPPAN, in her official capacity as a member of the California State Board of Education,

    Defendants - Appellants,

and

MARK OLSON, in his official capacity as President of the EUSD Board of Education, FRANK HUSTON, in his official capacity as Vice President of the EUSD Board of Education, JOAN GARDNER, in her official capacity as a member of the EUSD Board of Education, DOUG PAULSON, in his official capacity as a member of the EUSD Board of Education, ZESTY HARPER, in her official capacity as a member of the EUSD Board of Education, LUIS RANKINS-IBARRA, in his official capacity as Superintendent of EUSD, JOHN ALBERT, both in his personal capacity and in his official capacity as Assistant Superintendent of EUSD, TRENT SMITH, both in his personal capacity and in his

official capacity as Director of Integrated Student Services for EUSD, TRACY SCHMIDT, both in her personal capacity and in her official capacity as Director of Integrated Student Supports for EUSD, STEVE WHITE, both in his personal capacity and in his official capacity as Principal of Rincon Middle School at EUSD, NAOMI PORTER, in her official capacity as a member of the California State Board of Education, ESCONDIDO UNION SCHOOL DISTRICT, a local educational agency,

          Defendants.

Before: Mary H. Murguia, Chief Judge, and Andrew D. Hurwitz and Salvador Mendoza, Jr., Circuit Judges.

PER CURIAM:

      Plaintiff-Appellees are four parents and four Escondido Union School District ("EUSD") teachers who challenge a host of California state laws that Plaintiffs refer to as "the State's Parental Exclusion Policies." According to Plaintiffs, these challenged laws are described in the California Department of Education's 2016 "Legal Advisory regarding application of California's antidiscrimination statutes to transgender youth in schools" and its accompanying FAQs. The challenged policies allegedly violate teachers' and parents' constitutional rights by requiring teachers to hide a student's gender nonconformity and social transition, including from the student's parents, unless the student

consents to disclosure of that information.  Plaintiffs bring individual claims under Title VII of the Civil Rights Act and a class action through 42 U.S.C. § 1983, seeking injunctive and declaratory relief against California state officials ("State Appellants"), EUSD, and several EUSD officials.[1]  Plaintiffs sought to certify a class action with four subclasses that share common questions premised on: (1) violation of teachers' First Amendment free speech rights; (2) violation of teachers' First Amendment free exercise rights; (3) violation of parents' Fourteenth Amendment substantive due process rights; and (4) violation of parents' First Amendment free exercise rights.

    The district court certified the class of all California public school employees and parents of children attending public school who object to the challenged state laws under Rule 23(b)(2).  On December 22, 2025, the district court granted permanent injunctive relief to all its members.  The district court found that various California laws violate parents' substantive due process and free exercise rights to be informed "after a student says or dresses in a way that suggests a non-conforming gender identity."  The district court also concluded that public school employees have free speech and free exercise rights to provide information about a student's gender expression to the student's parents.

---

[1] Plaintiffs' claims against EUSD and EUSD officials were severed and stayed by the district court.  This appeal only concerns Plaintiffs' claims against the State Appellants.

Based on these conclusions, the court entered an injunction that bars State Appellants from "implementing or enforcing" "the Privacy Provision of the California Constitution . . . [and] any other provision of California law" that would "permit or require any employee in the California state-wide education system [to] mislead[] [a] parent or guardian . . . about their child's gender presentation at school."  The injunction prohibits State Appellants from "permit[ting] or requir[ing] any employee in the California state-wide education system to use a name or pronoun to refer to [a] child that [does] not match the child's legal name and natal pronouns, where a child's parent or legal guardian has communicated their objection to such use."  The injunction directs the State to include a notice in educator training materials that: "Parents and guardians have a federal constitutional right to be informed if their public school student child expresses gender incongruence."

The State Appellants now move for an emergency stay of the district court's permanent injunction.  For the reasons discussed herein, we grant the motion.

## LEGAL STANDARD

When deciding whether to grant a stay pending appeal, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* at 434.

## I.

After considering the record at this preliminary stage, we conclude that the State Appellants have shown that "there is a substantial case for relief on the merits." *Simon v. City & Cnty. of S.F.*, 135 F.4th 784, 816 (9th Cir. 2025) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012)).

### A.

First, we have serious concerns with the district court's class certification and injunction that covers every parent of California's millions of public school students and every public school employee in the state. Courts across the country, including in our circuit, have routinely rejected similar claims by parents and teachers due to lack of standing. *See, e.g.*, *City of Huntington Beach v. Newsom*, 790 F. Supp. 3d 812, 823–24 (C.D. Cal. 2025) (dismissing for lack of standing parents' claim where parents did not allege that their own child's factual circumstance implicated California Assembly Bill 1955's restriction on informing parents of their children's decision to use a different name or pronouns); *Chino Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-01941-DJC-JDP, 2025 WL 1151004, at *5 (E.D. Cal. Apr. 17, 2025) (same); *Parents Protecting Our Children,*

*UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 504–06 (7th Cir. 2024) (affirming dismissal for lack of standing a parental association's claim where the complaint failed to allege that even one of the association's members experienced an injury attributable to the challenged policies), *cert. denied*, 145 S. Ct. 14 (2024); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629–31 (4th Cir. 2023) (concluding parents lacked standing where parents did not allege that their own children had gender support plans or were otherwise likely to experience future harm from the challenged policies), *cert. denied*, 144 S. Ct. 2560 (2024). "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (internal quotations and citation omitted).

Further, the district court failed to undertake the "rigorous analysis" required by Rule 23 before granting relief on a class-wide basis. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). This weighs against the district court's conclusion that Plaintiffs have satisfied the prerequisites of Rule 23 for class certification. The wide scope of the district court's injunction violates the principle that "[i]njunctive relief must be tailored to remedy the specific harm alleged." *See Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2003); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 868 (2025) (Alito, J., concurring) ("[D]istrict courts should not view [*CASA*] as an invitation to certify nationwide classes

without scrupulous adherence to the rigors of Rule 23. Otherwise, the universal injunction will return from the grave under the guise of 'nationwide class relief,' and [*CASA*] will be of little more than minor academic interest.").

**B.**

Second, the district court's ruling reiterated that the State is "prohibiting public school teachers from informing parents of their child's gender identity" through its "parental exclusion" policies, yet the district court failed to clearly identify the set of policies it relied on to reach this conclusion. A preliminary review of the record shows that the State does not categorically forbid disclosure of information about students' gender identities to parents without student consent. [2] For example, guidance from the California Attorney General expressly states that schools can "allow disclosure where a student does not consent where there is a compelling need to do so to protect the student's wellbeing," and California Education Code § 49602 allows disclosure to avert a clear danger to the well-being of a child, Cal. Educ. Code § 49602. It is thus not clear from the district court's order which particular policies are problematic, and it is doubtful that all of those policies categorically forbid disclosure of information, again "suggesting that the injunctive relief ordered may have been broader than necessary," *see CASA*, 606

---

[2] The district court's injunction appears largely premised on the informal 2016 Legal Advisory and FAQ page posted on the California Department of Education's website, which has been removed.

U.S. at 861, and not "tailored to remedy the specific harm alleged," *see Winter*, 508 F.3d at 886.

## C.

Third, we are skeptical of the district court's decision on the merits, which primarily relies on substantive due process. The district court concluded that parents have the right to be informed when gender incongruence is observed and make the decision about whether future professional investigation or medical care is needed. But the Supreme Court has cautioned that we must be "reluctant to expand the concept of substantive due process," *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), to avoid usurping "authority that the Constitution entrusts to the people's elected representatives," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239–40 (2022).

Our sister circuit recently analyzed a similar claim in *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336 (1st Cir. 2025), *pet. for cert. pending* (No. 25-77), and concluded that "using the [s]tudent's chosen name and pronouns—something people routinely do with one another, and which requires no special training, skill, medication, or technology" is not a form of medical treatment that gives rise to a substantive due process claim. *Id.* at 350. The district court distinguished this case from *Foote*, reasoning that *Foote* did not involve allegations of school officials misrepresenting the student's gender transition when asked by parents. But the

challenged policies here appear to be analogous to the policy at issue in *Foote*, which "provides that 'parents are not to be informed of their child's transgender status and gender-affirming social transition to a discordant gender identity unless the child, of any age, consents.'" *See Foote*, 128 F.4th at 352. We thus conclude that the State Appellants have made a strong showing that the district court likely erred in its substantive due process analysis.

### D.

Because the State has sufficiently shown a substantial case for relief on the merits based on the sweeping nature of the district court's injunction, the dubious class certification, and the weakness of Plaintiffs' substantive due process claim, we may grant the stay on those grounds alone and need not reach the remaining First Amendment claims. Nonetheless, we address those briefly.

First, the district court's analysis of the parents' free exercise claims relied on *Mahmoud v. Taylor*, 606 U.S. 522 (2025), to conclude that the challenged policies triggered strict scrutiny and failed under that test. In *Mahmoud*, the Supreme Court applied strict scrutiny where a school district subjected "young children" to "unmistakably normative" books that "explicitly contradict[ed] their parents' religious views" and encouraged teachers "to reprimand any children who disagree[d]" or "express[ed] a degree of religious confusion." 606 U.S. at 550, 555–56 & n.8. However, *Mahmoud* has been described as a narrow decision

focused on uniquely coercive "curricular requirements." *See Doe No.1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836, at *7 n.3 (6th Cir. Aug. 26, 2025). As the Sixth Circuit explained, "[b]ecause *Mahmoud*'s reasoning principally relates to curricular requirements, we are thus unpersuaded that it stands for the broad proposition that strict scrutiny is automatically triggered when a school does not allow religious students to opt out of any school policy that interferes with their religious development, including general operational policies that involve no instruction." *Id.* Here, the challenged policies appear to apply only when a *student* makes the voluntary decision to share their gender nonconformity with the school. We thus disagree with the district court's cursory assertion that the challenged policies "impose a similar, if not greater, burden on free exercise" as the policies in *Mahmoud*. Accordingly, the district court improperly extended the reasoning of *Mahmoud* to the instant case.

Second, the district court's ruling on the subclass of public school teachers' free exercise claim is predicated on the challenged policies "requir[ing] teachers to withhold" information about a student's gender nonconformity "with the knowledge that the information will be impossible for the parents to obtain from the school." However, as explained above, the district court's premise—that these policies categorically forbid disclosure of information—is contradicted by the record.

Finally, as Plaintiffs concede, the teachers' free speech claim "rises and falls on parents' rights." Because State Appellants are likely to defeat the parents' constitutional claims, we need not address the merits of the free speech claims here.

## II.

Next, we consider three other factors in assessing a motion for a stay: "whether the applicant will be irreparably injured absent a stay"; "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and "where the public interest lies." *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776).

The remaining equitable factors weigh in favor of a stay. Justice Alito warned of universal injunctions under the guise of class relief. *CASA*, 606 U.S. at 868 (Alito, J., concurring). Here, the injunction is sweeping, ambiguous, and based on a lax enforcement of class certification principles. It further relies on a faulty reading of the policies at issue.

In considering irreparable harm, "we acknowledge the harms involved in denying the duly elected branches the policies of their choice." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 994 (9th Cir. 2025) (citing *CASA*, 606 U.S. at 860–61). At this stage, the government has demonstrated irreparable harm.

Because the policies at issue do not categorically forbid disclosure of

information about students' gender identities to parents without student consent, other parties in this action, including the Plaintiffs, will not be substantially injured from the issuance of a stay. Additionally, the public interest in protecting students and avoiding confusion among schoolteachers and administrators weighs in favor of a stay.

## CONCLUSION

For the reasons above, we **GRANT** the State Appellants' motion for a stay pending appeal.[3]

**EMERGENCY MOTION FOR STAY GRANTED.**

---

[3] We deny as moot Plaintiffs' request for oral argument on the instant motion. Dkt. No. 11 at 35.