Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
William T. Duke, SBN 361823
  wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
  pbreen@thomasmoresociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,<br><br><br>Plaintiffs,<br><br>v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>Defendants. | Case No.: 3:23-cv-0768-BEN-VET<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Judge:          Hon. Roger T. Benitez<br>Courtroom:   5A<br>Hearing Date:  March 9, 2026<br>Hearing Time: 10:30 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................1

FACTUAL & PROCEDURAL BACKGROUND.................................................. 4

    A.    Commencement of Representation: September 7, 2022 through January 19, 2023 (Entry Nos. 1-150)...................................... 4

    B.    Preparation for Litigation: January 20, 2023 through May 15, 2023 (Entry Nos. 151-492)...................................................5

    C.    The Initial Motion Practice: May 16, 2023 through September 15, 2023 (Entry Nos. 493-934)............................................ 6

    D.    More Briefing: Pleadings Challenges & Civil Contempt: September 16, 2023 through January, 11, 2024 (Entry Nos. 935-1383)..................................................................................7

    E.    Adding the Attorney General and Class Allegations: January, 12, 2024 through August 16, 2024 (Entry Nos. 1384-2245). .................7

    F.    Settling the Amended Pleadings: August 17, 2024 through December 3, 2024 (Entry Nos. 2246-2597). ....................................... 8

    G.    Extensive Discovery & CDE's Final Motion to Dismiss: December 4, 2024 through June 13, 2025(Entry Nos. 2598-3417). ............................................................................................. 8

    H.    Settlement Conference, Summary Judgment, and the Fees Motion: June 14, 2025 through February 2, 2026 (Entry Nos. 3418-4003). ................................................................................ 9

LEGAL STANDARD ......................................................................................10

ARGUMENT..................................................................................................12

    I.    Plaintiffs' Requested Hourly Rates Are Reasonable ..........................12

        A.    Background Legal Principles: Civil Rights Plaintiffs Should Be Awarded "Premium Rates" for their Locale ...............................................................................12

B.    Application of the Principles: Plaintiffs Seek Hourly Rates Appropriate for Complex Litigation in San Diego. ...................................................................................14

II.    All Hours Incurred Should be Compensated. .....................................16

A.    Background Legal Principles: There is No Need for Any Apportionment Due to the Unqualified Success. ..............16

B.    Application of the Principles: Defendants Litigated Tenaciously and Plaintiffs' Have Imposed a Significant Discount. ................................................................18

III.    A Multiplier is Appropriate. ............................................................. 20

IV.    Plaintiffs Are Entitled to Non-Taxable Costs ................................. 22

CONCLUSION .......................................................................................... 22

ii

# TABLE OF AUTHORITIES

## CASES

*A.D. v. Cal. Highway Patrol*,
712 F.3d 446 (9th Cir. 2013) ........................................................................ 20

*Allen v. City of Los Angeles*,
92 F.3d 842 (9th Cir. 121996) ...................................................................... 17

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) ........................................................................ 21

*Beauchamp v. Anaheim Union High Sch. Dist.*,
816 F.3d 1216 (9th Cir. 2016) ...................................................................... 14

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ........................................................................................ 11

*Bloom v. City of San Diego*,
No. 17-cv-2324, 2024 WL 4495512 (S.D. Cal. Oct. 15, 2024) ...................... 14

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................... 12

*Bronshteyn v. Cal. Dep't of Consumer Affs.*,
114 Cal. App. 5th 537 (2025) ....................................................................... 13

*Carey v. Piphus*,
435 U.S. 247 (1978) ........................................................................................ 1

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ................................................................. 11, 22

*Christiansburg Garment Co. v. EEOC*,
434 U.S. 412 (1978) .................................................................................. 3, 10

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ...................................................................................... 11

*CliniComp Int'l, Inc. v. Cerner Corp.*,
No. 17-cv-2479, 2023 WL 2604816 (S.D. Cal. Mar. 22, 2023) .................... 14

iii

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ................................................................ 11, 22

*Davis v. City of San Francisco*,
    976 F.2d 1536 (9th Cir.1992)................................................................ 6

*Duncan v. Bonta*,
    83 F.4th 803 (9th Cir. 2023) ................................................................ 11

*Dunsmore v. San Diego Cty. Sheriff's Dep't*,
    No. 20-cv-406, 2025 WL 2301940 (S.D. Cal. Aug. 8, 2025) ........................ 14

*Durruthy v. Charter Commc'ns LLC*,
    No. 20-cv-1374, 2021 WL 6883423 (S.D. Cal. Sept. 30, 2021).................... 20

*EEOC v. Union Camp Corp.*,
    536 F. Supp. 64 (W.D. Mich. 1982) ...................................................... 20

*Espino v. Besteiro*,
    708 F.2d 1002 (5th Cir. 1983) ............................................................... 1

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ........................................................................... 1

*Fox v. Vice*,
    563 U.S. 826 (2011)........................................................................... 10

*Furtado v. Bishop*,
    635 F.2d 915 (1st Cir. 1980) ................................................................. 1

*Garnier v. Poway Unified Sch. Dist.*,
    No. 17-cv-2215, 2025 WL 3403370 (S.D. Cal. Oct. 20, 2025)................. 13, 14

*Gateway City Church v. Newsom*,
    141 S. Ct. 1460 (2021) ........................................................................ 2

*Gish v. Newsom*,
    141 S. Ct. 1290 (2021) ........................................................................ 2

*Grove v. Wells Fargo Fin. California, Inc.*,
    606 F.3d 577 (9th Cir. 2010) ............................................................... 22

iv

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
  100 F.3d 691 (9th Cir. 1996)...................................................................3, 12, 21

*Harvest Rock Church, Inc. v. Newsom*,
  141 S. Ct. 1289 (2021) ........................................................................... 2

*Hasbrouck v. Texaco, Inc.*,
  879 F.2d 632 (9th Cir. 1989) ........................................................... 6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ....................................................... 1, 11, 16, 17

*Herring Networks, Inc. v. Maddow*,
  No. 19-cv-1713, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ....................14, 15

*His Tabernacle Family Church, Inc. v. James*,
  No. 22-cv-6486, 2025 WL 2945655 (W.D.N.Y. Sept. 2, 2025)..................... 13

*Hoa v. Riley*,
  78 F. Supp. 3d 1138 (N.D. Cal. 2015) .....................................................17, 19

*Hum. Rts. Def. Ctr. v. Cty. of Napa*,
  No. 20-cv-1296, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021)....................12

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
  912 F.3d 1147 (9th Cir. 2019) ...............................................................17, 18

*In re Manoa Fin. Co., Inc.*,
  853 F.2d 687 (9th Cir. 1988) ....................................................................21

*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) ..................................................................... 20

*Instrumentation Lab. Co. v. Binder*,
  No. 11-cv-965, 2013 WL 12049072 (S.D. Cal. Sept. 18, 2013),
  *aff'd*, 603 Fed. App'x 618 (9th Cir. 2015).....................................................18

*Jaramillo v. Cty. of Orange*,
  200 Cal. App. 4th 811 (2011)...................................................................21

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

*Laffey v. Northwest Airlines, Inc.*,
   572 F. Supp. 354 (D.D.C. 1983) ..................................................................... 13

*Lefemine v. Wideman*,
   568 U.S. 1 (2012) ....................................................................................10, 11

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ....................................................................1

*Masalosalo v. Stonewall Ins. Co.*,
   718 F.2d 955 (9th Cir. 1983) ......................................................................... 11

*McCracken v. Riot Games, Inc.*,
   No. 18STCV03957, 2023 WL 11053298 (Cal. Super. June 15, 2023) ........... 13

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................ 14, 21

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................................................ 17

*N.Y. Gaslight Club, Inc. v. Carey*,
   447 U.S. 54 (1980) ........................................................................................ 19

*Newman v. Piggie Park Enterprises, Inc.*,
   390 U.S. 400 (1968) ...................................................................................... 10

*NIFLA v. Becerra*,
   585 U.S. 755 (2018) ........................................................................................ 2

*Odima v. Westin Tucson Hotel*,
   53 F.3d 1484 (9th Cir. 1995) ....................................................................17, 18

*Orthopaedic Hosp. v. Encore Med., L.P.*,
   No. 19-cv-970, 2021 WL 5449041 (S.D. Cal. Nov. 19, 2021) ..................14, 15

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   No. 16-cv-236, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020)......................12

*Peak-Las Positas Partners v. Bollag*,
   172 Cal. App. 4th 101 (2009) ....................................................................... 18

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010) ..............................................................................11, 21

*Prison Legal News v. Schwarzenegger*,
    561 F. Supp. 2d 1095 (N.D. Cal. 2008) ...................................................... 6

*Ridgeway v. Wal-Mart Stores Inc.*,
    269 F. Supp. 3d 975 (N.D. Cal. 2017) ....................................................... 20

*Riverside v. Rivera*,
    477 U.S. 561 (1986) ..................................................................................10

*Roberts v. City of Honolulu*,
    938 F.3d 1020 (9th Cir. 2019) ............................................................11, 17

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) .................................................................................... 2

*S. Bay United Pentecostal Church v. Newsom*,
    141 S. Ct. 716 (2021) ................................................................................ 2

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
    284 F.3d 1163 (9th Cir. 2002) ............................................................... 5, 19

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
    968 F.3d 738 (9th Cir. 2020)...................................................................... 2

*Sonoma Land Tr. v. Thompson*,
    63 Cal. App. 5th 978 (2021).......................................................................21

*Stoddard-Nuñez v. City of Hayward*,
    No. 13-cv-4490, 2016 WL 1588271 (N.D. Cal. Apr. 20, 2016) ............... 18, 19

*Tandon v. Newsom*,
    593 U.S. 61 (2021) .................................................................................... 2

*Thorne v. City of El Segundo*,
    802 F.2d 1131 (9th Cir. 1986).....................................................................17

*Topanga Press, Inc. v. City of Los Angeles*,
    989 F.2d 1524 (9th Cir. 1993)..................................................................... 11

Memo. of Points & Authorities ISO
Plaintiffs' Motion for Attorneys' Fees

*Turner v. D.C. Bd. of Elections & Ethics*,
354 F.3d 890 (D.C. Cir. 2004) ....................................................................18

*Twitch Interactive, Inc. v. Johnston*,
No. 16-cv-3404, 2018 WL 3632171 (N.D. Cal. July 31, 2018).......................19

*United States v. City & Cty. of San Francisco*,
748 F. Supp. 1416 (N.D. Cal. 1990),
*aff'd in relevant part*, 976 F.2d 1536 (9th Cir. 1992) .......................................12

*United States v. City of San Diego*,
18 F. Supp. 2d 1090 (S.D. Cal. 1008)...........................................................19

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir.1990).........................................................................14

*Vogel v. Harbor Plaza Ctr., LLC*,
893 F.3d 1152 (9th Cir. 2018).......................................................................11

*Webb v. Sloan*,
330 F.3d 1158 (9th Cir. 2003)........................................................................17

*Z.F. v. Ripon Unified Sch. Dist.*,
No. 10-cv-523, 2017 WL 1064679 (E.D. Cal. Mar. 21, 2017)........................18

## STATUES, REGULATIONS & RULES

42 U.S.C. § 1983................................................................................1, 10, 27

42 U.S.C. § 1988..................................................................................1, 3, 10

Title VII of the Civil Rights Act of 1964...............................................................19

## OTHER AUTHORITIES

David Thomas & Mike Scarcella, *As lawyer rates surge, US firm charges
$4,000 an hour for top partners*, Reuters (Jan. 26, 2026)..............................15

David Thomas & Mike Scarcella, *More lawyers join the $3,000-an-hour
club, as other firms close in*, Reuters (Feb. 27, 2025)......................................15

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Debra Cassens Weiss, *"Very strong performance" reported for law firms in
2024, with revenue increasing 12.5%*, ABA Journal (Jan. 29, 2025) ................ 15

*DWP secures law firm, at up to $1,975 an hour, to defend against Palisades
fire lawsuits*, L.A. Times (Feb. 14, 2025) ........................................................ 13

*Law Firm Rates Report 2026: Law firms discover the hidden engine driving
their pricing power*, Thomson Reuters (Oct. 20, 2025) ................................... 15

Order, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
No. 3:15-cv-2277 (S.D. Cal. Mar. 7, 2019), ECF No. 92 .............................. 2

Order, *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
No. 3:16-cv-501 (S.D. Cal. May 11, 2023), ECF No. 141............................... 2

Memo. of Points & Authorities ISO
Plaintiffs' Motion for Attorneys' Fees

# INTRODUCTION

Congress enacted 42 U.S.C. § 1983 in 1871 to provide a federal cause of action against state officials who deprive individuals of their constitutional rights while acting under state law. Approximately a century later, in 1976, Congress enacted another provision—42 U.S.C. § 1988—to enable prevailing plaintiffs in § 1983 actions to recover their attorneys' fees from the rights-violating defendant.

That fee-shifting provision is designed not only to help "ensure 'effective access to the judicial process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), but also to further the critical purpose of deterring future constitutional violations. As the Supreme Court has explained, § 1988 "provides … by no means inconsequential … assurance that agents of the State will not deliberately ignore [constitutional] rights." *Carey v. Piphus*, 435 U.S. 247, 257 n.11 (1978). Section 1988 thus is "'an integral part of the remedies necessary to obtain' compliance with § 1983," *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980), and is intended to function as a powerful weapon in "the arsenal of remedies available to combat violations of civil rights," *Evans v. Jeff D.*, 475 U.S. 717, 732 (1986). *See also, e.g.*, *Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983) ("[T]he Supreme Court has recognized that since § 1988 frequently adds substantial attorney's fees to a judgment, it has the desirable subsidiary effect of deterring violations of rights secured by §1983."); *Furtado v. Bishop*, 635 F.2d 915, 918 n.5 (1st Cir. 1980) (noting that § 1988 "embodies" the "policy concern[]" of "deter[ring] civil rights violations by increasing defendants' liability").

Unfortunately, this legislative plan has not always worked as Congress envisioned. Notwithstanding the deterrent effect that § 1988 is supposed to exert, some states regularly enact and enforce laws that violate their citizens' constitutional rights. That is in no small part because, as a practical matter, states that lose § 1983 litigation often are not ordered to pay attorney's fees calculated at the prevailing lawyers' market rates, but instead often receive substantial court-approved discounts.

1

The upshot is that it is all too common for states to avoid fully internalizing the costs of their unconstitutional actions.

Indeed, cases involving California and its serial violations of the First Amendment are illustrative. In 2018, the Supreme Court issued a decision admonishing the state that it could not single out pro-life pregnancy resource organizations for especially harsh treatment, compelling them to mouth the government's preferred pro-abortion message. *NIFLA v. Becerra*, 585 U.S. 755 (2018). To the law firm that successfully obtained a Supreme Court victory, California ultimately paid only $958,535.80 in fees. *See* Order, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, No. 3:15-cv-2277 (S.D. Cal. Mar. 7, 2019), ECF No. 92. In another action, California tried to force churches to cover elective abortion in their health insurance plans. After a reversal by the Ninth Circuit of the district court's dismissal, California settled. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020). But again, California paid only $900,000 in fees. *See* Order, *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, No. 3:16-cv-501 (S.D. Cal. May 11, 2023), ECF No. 141.

Just a year after being admonished by the Supreme Court in *NIFLA v. Becerra*, California restricted attendance at worship services during the COVID-19 pandemic—perhaps the single greatest violation of Free Exercise rights imaginable. Even after the Supreme Court made absolutely clear that churches must be permitted to reopen through a decision out of New York, California refused to relent. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020). The threat of fees was insufficient and California only backed down after serial emergency orders from the Supreme Court. *E.g.*, *Tandon v. Newsom*, 593 U.S. 61 (2021); *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021); *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 1289 (2021); *Gish v. Newsom*, 141 S. Ct. 1290 (2021).

///

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

This dynamic—in which states are permitted to restrict the exercise of disfavored constitutional rights on the cheap—has only emboldened states like California. This case is the latest example in that troubling trend. Unwilling to forgo their constitutional rights, Plaintiffs retained a legal team that includes not only specialists in First Amendment law, but practitioners with extensive experience of both California and Supreme Court legal practice who are actually willing to represent plaintiffs seeking to vindicate the constitutional rights at issue here, which many law firms are unwilling to do because the subject matter is considered too controversial. *See* Dkt. 118, Motion for Leave to Amend & Proceed Pseudonymously (documenting retaliation).

As the outcome of this litigation has confirmed, Plaintiffs made the right call. After Plaintiffs obtained a preliminary injunction in this Court, *see* Dkt. 42, they eventually converted that into a classwide permanent injunction. *See* Dkt. 307, 308. Simply put, from this Court, Plaintiffs' attorneys secured all that their clients ever wanted. Because Plaintiffs' victory on the merits is clear, the only question is the amount of Plaintiffs' attorneys' fees—not their entitlement to such fees. And because of their unqualified success, this Court should award Plaintiffs their full lodestar and a 1.25 multiplier, totaling **$4,551,656.63**, along with **$20,755.10** in non-taxable costs. Plaintiffs have already submitted their bill of taxable costs in the amount of **$55,936.41**. *See* Dkt. 322.

To be sure, California has appealed, but that fact is irrelevant to this motion. Based on this Court's judgment, the Court should award Plaintiffs their fees in full— without giving the state any undeserved discount—and make clear that California cannot repeatedly single out certain constitutional rights for disfavored treatment and bank on a haircut when paying attorneys' fees. Doing so will honor Congress' intent in § 1988 to hold "violator[s] of federal law" accountable, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978), and will better enable representation in cases that are "extreme[ly] undesirab[le]" and when seeking to vindicate constitutional

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

rights that the government would rather suppress. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996).

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs in this action were primarily represented by LiMandri & Jonna LLP, a boutique civil litigation firm with experience in complex business, personal injury, and constitutional litigation. Jonna Decl., ¶¶2-7 & Ex.1. In addition, Plaintiffs were represented by Thomas More Society, a not-for-profit, national public interest law firm specializing in First Amendment litigation, including in the area of religious liberty and parental rights, which provided guidance and oversight but billed less than 100 hours. Jonna Decl., ¶¶5-6, 8. Lastly, LiMandri & Jonna LLP retained additional practitioners due to their specialty in employment law, Attorneys Norman D. Grissom and Frank J. Coughlin (each less than 75 hours), or their specialty as a legal historian, Professor H. Tomás Gómez-Arostegui (10 hours). Jonna Decl., ¶8.

The basic facts of this case are well known to the parties and the court, and discussed in the Court's summary judgment order. In sum, Plaintiffs are teachers and parents participating in the California public school system who object to California's "Parental Exclusion Policy" requiring teachers to facilitate a child's gender transition and keep that transition secret to their parents. That policy was initially authored by the California Department of Education ("CDE"), enforced by the California Attorney General, and implemented by all school districts across the State, including the Escondido Union School District ("EUSD"). Two EUSD teachers initiated this action asserting their Free Speech and Free Exercise rights and were later joined by additional teachers and parents who asserted their Free Exercise and Parental Substantive Due Process Rights. The Court ultimately granted summary judgment in favor of the Plaintiffs on all claims. *See* Dkt. 307. A more detailed history of the litigation follows.

**A.    Commencement of Representation: September 7, 2022 through January 19, 2023 (Entry Nos. 1-150).**

Counsel was retained by Plaintiffs Elizabeth Mirabelli and Lori Ann West in

September 2022. At that time, counsel began preliminary research into the issues and potential claims and submitted a public records request to EUSD relating to its Parental Exclusion Policy. Initially, Plaintiffs were primarily represented by Attorney Paul M. Jonna of LiMandri & Jonna LLP. He assigned two attorneys, Mark D. Myers and Jeffrey M. Trissell, to perform the initial legal research. Mr. Jonna also retained Norman D. Grissom of NDG Law, APC, as a consulting employment specialist.

In October 2022, Plaintiffs Mirabelli and West submitted a religious accommodation request to EUSD. In November, Mr. Grissom then attended an interactive process meeting with Mirabelli, West, and EUSD in the hopes of negotiating a religious accommodation. Finally, in January 2023, EUSD sent Plaintiffs two memos detailing the outcome of the accommodation meetings and why no accommodation was possible. Counsel incurred 98.6 hours and $112,524.00 in fees.[1]

**B.    Preparation for Litigation: January 20, 2023 through May 15, 2023 (Entry Nos. 151-492).**

Upon receipt of the two memos from EUSD in January 2023, Plaintiffs began drafting a complaint and motion for a preliminary injunction. Initial drafts of these papers were prepared by Attorneys Trissell and Milan L. Brandon, which were reviewed and revised by Mr. Jonna. They also assigned discrete research tasks to Attorneys Myers and Robert E. Weisenburger. At the same time, EUSD continued to communicate with Plaintiffs so Attorneys Jonna and Grissom continued to confer with them about any potential resolution and to obtain informal discovery of EUSD's positions. This included a further exchange of letters in February and March 2023. To prepare the complaint and preliminary injunction papers, counsel performed extensive research on similar cases nationwide, interviewed potential experts, and retained Dr.

---

[1] As further explained below, fees for this time can be awarded against the State Defendants. *See San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 284 F.3d 1163, 1167 (9th Cir. 2002) ("the work done by counsel in these two phases was as necessary to the attainment of adequate relief for their client as was all of their … work in the courtroom").

Erica Anderson, Ph.D., as an expert witness. The complaint was filed on April 27, 2023, and the preliminary injunction motion on May 15, 2023. At this time, counsel and Plaintiffs also participated in various media interviews.[2] Plaintiffs also experienced significant retaliation at their middle school, leading Mirabelli to leave the classroom on administrative leave. Counsel incurred 398.5 hours and $424,559.40 in fees.

## C.    The Initial Motion Practice: May 16, 2023 through September 15, 2023 (Entry Nos. 493-934).

Following initiation of the action, Plaintiffs opposed separate motions to dismiss from EUSD and the CDE, and drafted separate replies in support of their motion for a preliminary injunction. Attorneys Myers and Trissell prepared initial drafts of Plaintiffs' opposition to the motions to dismiss, with limited assistance from Attorney Joshua A. Youngkin. A summer law clerk, Matthew Zavaro, assisted Attorney Jonna in preparing for the forthcoming hearings. After Plaintiffs filed that motion, EUSD also placed Plaintiff West on involuntary administrative leave due to complaints by students and teachers. This required further letters and calls, along with investigative interviews of her, which Attorneys Jonna and Grissom handled.

The Court ultimately held a hearing on Plaintiffs' motion for a preliminary injunction and the two motions to dismiss on August 30, 2023. Shortly in advance of that hearing, the California Attorney General initiated an enforcement action against the Chino Valley Unified School District. Plaintiffs here submitted an amicus brief in support of the school district.[3] Then, on September 14, 2023, the Court issued its

---

[2] *See Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101 (N.D. Cal. 2008) ("Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same.") (quoting *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir.1992)).

[3] *See Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989) ("[I]t was reasonable to award fees for the *amicus* effort as an item of service which would have been undertaken by a reasonable and prudent lawyer to advance or protect his

order. Plaintiffs incurred 428.2 hours and $446,883.60 in fees.

**D.   More Briefing: Pleadings Challenges & Civil Contempt: September 16, 2023 through January, 11, 2024 (Entry Nos. 935-1383).**

After the preliminary injunction hearing, Mr. Jonna began discussions with EUSD about Plaintiffs Mirabelli's and West's return to work. At this time, Attorney Frank Coughlin replaced Attorney Grissom as employment counsel. Ultimately, EUSD refused to bring Plaintiffs back to work and so Plaintiffs filed an OSC re: Civil Contempt. At the same time, the CDE filed a motion for judgment on the pleadings. Plaintiffs' briefing was initially undertaken by Mr. Trissell and then reviewed by various Thomas More Society attorneys, Mr. Myers, and Mr. Jonna. The parties also held their Rule 26(f) conference on January 4, 2024, and Plaintiffs began preparing written discovery and initial disclosures. Mr. Jonna argued against the CDE's motion for judgment on the pleadings on January 8, 2024, and in favor of Plaintiffs' contempt application on January 10, 2024. Plaintiffs incurred 308.45 hours and $357,107.7 in fees.

**E.   Adding the Attorney General and Class Allegations: January, 12, 2024 through August 16, 2024 (Entry Nos. 1384-2245).**

At the January 8, 2024, hearing, the Court ordered Plaintiffs to add the Attorney General and State of California as defendants in the action. After seeking clarification from the Court, Plaintiffs filed a First Amended Complaint naming Attorney General Bonta and Governor Newsom as defendants on January 29, 2024. Both Bonta and Newsom then moved to dismiss the complaint. They also moved to stay discovery pending those motions. The Court granted the discovery stay as to Bonta and Newsom only, and later granted the motions to dismiss on May 10, 2024.

In the meantime, the other parties engaged in written discovery. Plaintiffs then moved for leave to file a Second Amended Complaint re-adding Attorney General Bonta, adding additional plaintiffs, adding employment claims, and adding class action allegations. The Court granted that motion on August 8, 2024. While preparing that

client's interest.").

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Second Amended Complaint, Plaintiffs researched and drafted an over-sized 50-page motion for summary judgment and motion for class certification, which were then immediately filed after the complaint. All briefing was initially undertaken by Mr. Trissell with assistance from Thomas More Society attorneys, and then reviewed by Mr. Myers and Mr. Jonna. Plaintiffs incurred 690.35 hours and $764,211.10 in fees.

### F.    Settling the Amended Pleadings: August 17, 2024 through December 3, 2024 (Entry Nos. 2246-2597).

After Plaintiffs filed their Second Amended Complaint and their motions for summary judgment and class certification, the Attorney General immediately moved for an extension of time to answer and to stay the motions, which the Court granted. Eventually, on September 30, 2024, the Attorney General filed his motion to dismiss. In the meantime, he refused to participate in discovery until the pleadings were settled. But Plaintiffs proceeded with discovery against CDE and EUSD, which also served discovery on Plaintiffs. Because the Court stayed Plaintiffs' motion for summary judgment, Plaintiffs filed a motion for a classwide preliminary injunction. The Attorney General again moved to stay that motion, but the Court did not grant that request. Ultimately the parties argued the Attorney General's motion to dismiss on December 2, 2024, and moved into the primary discovery phase. During this time, Attorney William Duke handled written discovery, overseen by Mr. Trissell, while Mr. Trissell and Mr. Myers drafted the briefing which was reviewed by Mr. Jonna. Plaintiffs incurred 384.4 hours and $387,729.60 in fees.

### G.    Extensive Discovery & CDE's Final Motion to Dismiss: December 4, 2024 through June 13, 2025(Entry Nos. 2598-3417).

From December 2024 through June 2025, the parties engaged in extensive discovery. Plaintiffs took the deposition (twice) of the CDE via its designee Richard Barrera, took the deposition of the Attorney General via his designee Laura Faer, and took the depositions of EUSD via its designees Luis Rankins-Ibarra, Audrey Frank, Tracy Schmidt, Trenton Smith, and Steve White. Plaintiffs also took the depositions of

8

other EUSD personnel, including former Assistant Superintendent John Albert, Band Teacher Kathleen Barlow, and Registrar Katie Terrill.

Defendants took the depositions of all the named Plaintiffs, including Elizabeth Mirabelli, Lori West, Jane Boe, Jane Roe, John Poe, Jane Poe, John Doe, and Jane Doe. Defendants also took depositions related to the Poe and Doe families' schools, including depositions of Clovis Unified School District via its designee Marc Hammack and Pasadena Unified School District via its designee Ana Apodaca. Lastly, Defendants took the depositions of Plaintiffs' experts Erica Anderson, Ph.D., and Nathan Szajnberg, M.D., and Plaintiffs took the depositions of Defendants' experts Darlene Tando, LMFT, and Christine Brady, Ph.D. In total, there were 25 deponents in this action for a total of 26 depositions. Mr. Trissell and Attorney Brian McPherson prepared the initial drafts of the deposition outlines, Mr. Jonna took the depositions, and Mr. Duke handled initial drafts of the written discovery.

During this time, the CDE also filed a motion to dismiss the action as moot, which required multiple rounds of briefing which were drafted by Mr. Trissell and Attorney Chris Galiardo, with input from Mr. Jonna, and which the Court denied. Preparing for the forthcoming summary judgment motion, Plaintiffs also retained Professor H. Tomás Gómez-Arostegui to perform historical legal research. Plaintiffs incurred 821.8 hours and $874,016.40 in fees.

### H. Settlement Conference, Summary Judgment, and the Fees Motion: June 14, 2025 through February 2, 2026 (Entry Nos. 3418-4003).

The last deposition was taken in early June 2025. Thereafter, Plaintiffs began preparing for the Final Settlement Conference and updating their summary judgment motion for re-filing. On July 16, 2025, Plaintiffs filed their renewed motion for summary judgment, renewed motion for class certification, and Daubert motion to exclude the defense experts. All three motions were set for hearing on August 18, 2025. At the same time, EUSD filed its own motion for summary judgment. The Defendants requested an extension of time to respond to Plaintiffs' motions, which the Court

granted. During this time, Plaintiffs discovered that the CDE was still requiring school districts to comply with its objectionable policies despite its mootness motion, leading Plaintiffs to seek sanctions.

After earlier severing the EUSD claims, denying the *Daubert* motion, and granting the class certification motion, the Court ultimately heard argument on Plaintiffs' summary judgment motion on November 17, 2025. Then, on December 22, 2025, the Court granted Plaintiffs' motion for summary judgment and entered a classwide permanent injunction. The Attorney General requested a stay pending appeal which this Court denied. Plaintiffs then began preparing their motion for attorneys' fees. Plaintiffs incurred 712.85 hours and $712,422.00 in fees. [4]

## LEGAL STANDARD

Section 1988 provides that, "[i]n any action or proceeding to enforce a provision of … [42 U.S.C. § 1983] …, the court … may allow the prevailing party … a reasonable attorney's fee as part of their costs." 42 U.S.C. § 1988(b). "A party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties," *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025), and "an injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012).

"When a plaintiff succeeds in remedying a civil rights violation …, he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)). "Fee-shifting in such a case at once reimburses a plaintiff for 'what it cos[t] [him] to vindicate [civil] rights,' and holds to account 'a violator of federal law.'" *Id.* (quoting *Riverside v. Rivera*, 477 U.S. 561, 577-78 (1986); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978)).

[4] Plaintiffs only included fees incurred before this Court, not any appellate fees, with a cut-off of Friday, January 30, 2026. Fees subsequently incurred before this Court will be submitted with the reply papers. Appellate fees will be requested from the Ninth Circuit. *See* 9th Cir. Rule 39-1.6.

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

The prevailing plaintiff in a civil rights action should be awarded his reasonable attorneys' fees "unless special circumstances would render such an award unjust." *Lefemine*, 568 U.S. at 5 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)); *accord Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989). Thus, "[w]hile the award of fees is discretionary, a court is expected to award such fees to the prevailing party unless there is some special circumstance which would justify the court's refusal." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1534 (9th Cir. 1993). And "[i]n civil rights actions …, the Supreme Court has held that plaintiff's counsel 'should recover a fully compensatory fee' for 'excellent results.'" *Roberts v. City of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) (quoting *Hensley*, 461 U.S. at 435). This includes all litigation costs and expenses except expert witness fees. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986).

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "[T]he 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.'" *Perdue*, 559 U.S. at 551 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

"[A]n appeal from the merits does not foreclose an award of attorneys' fees by the district court." *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). In contrast, the court should avoid "postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge." *Id.* at 957. Further, an interlocutory stay order "neither decides nor prejudges the merits of the appeal." *Duncan v. Bonta*, 83 F.4th 803, 806 n.1 (9th Cir. 2023).

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

## ARGUMENT

## I.    PLAINTIFFS' REQUESTED HOURLY RATES ARE REASONABLE

### A.    Background Legal Principles: Civil Rights Plaintiffs Should Be Awarded "Premium Rates" for their Locale

In setting the reasonable hourly rate, it is "to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This is an "inherently difficult" task because rates "[t]he type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively." *Id.* at 895 n.11. Thus, the plaintiff satisfies his burden by showing that "the requested rates are *in line* with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (emphasis added). "Furthermore, it is perfectly appropriate for a district court to award an hourly rate higher than is customarily charged by the plaintiff's attorney or than is set forth in the retainer fee agreement." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996).

In complex cases, "public interest attorneys are [] entitled to value their rates at the same level as corporate attorneys of equal caliber," and to seek the same "premium rates" that are "charged only by a handful of firms in the area." *United States v. City & Cty. of San Francisco*, 748 F. Supp. 1416, 1431 (N.D. Cal. 1990), *aff'd in relevant part*, 976 F.2d 1536, 1545-49 (9th Cir. 1992) ("[T]he proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel, San Francisco in this instance, for work similar to that performed by such counsel, broad-based complex litigation here.").[5]

---

[5] *Accord Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-236, 2020 WL 7626410, at *3 n.4 (N.D. Cal. Dec. 22, 2020) (firm awarded $1,280 per hour in abortion rights case); *Hum. Rts. Def. Ctr. v. Cty. of Napa*, No. 20-cv-1296, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021) (in public interest case, firm awarded $1,100 and $950 per hour).

---

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Thus, recently, in a case involving both the First Amendment and Second Amendment, a court awarded rates up to $1,795 per hour. *His Tabernacle Family Church, Inc. v. James*, No. 22-cv-6486, 2025 WL 2945655 (W.D.N.Y. Sept. 2, 2025). This Court recently awarded rates up to $1,500 per hour in a First Amendment case. *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215, 2025 WL 3403370, at *10 (S.D. Cal. Oct. 20, 2025) (Benitez, J.) And in a FEHA case, a California court recently affirmed rates up to $1,100 an hour. *Bronshteyn v. Cal. Dep't of Consumer Affs.*, 114 Cal. App. 5th 537, 542 (2025). Indeed, in a civil enforcement action jointly brought by private counsel and the California Civil Rights Department, the court awarded rates up to $1,050 for private counsel and rates up to $950 for the CRD, along with a 1.3 multiplier. *See McCracken v. Riot Games, Inc.*, No. 18STCV03957, 2023 WL 11053298, at *3 (Cal. Super. June 15, 2023); Jonna Decl., ¶67 & Exs. 13-14. Local governments in California are equally comfortable being billed far more, as Los Angeles County is paying up to $1,975 per hour for its defense against lawsuits related to the Palisades Fire. Jonna Decl., ¶68 & Ex. 15, Matt Hamilton & David Sahniser, *DWP secures law firm, at up to $1,975 an hour, to defend against Palisades fire lawsuits*, L.A. Times (Feb. 14, 2025) (partner rates up to $1,975; associate rates up to $1,180).

Various legal databases can be used as a starting point for identifying a reasonable hourly rate. For example, the USAO *Laffey* Matrix was prepared for litigation in Washington D.C. by the U.S. Attorney's Office with the intent that it could be adjusted annually to take inflation into account. *See Laffey v. Northwest Airlines*, Inc. 572 F. Supp. 354 (D.D.C. 1983). As stated therein, the point of the matrix was to facilitate settlement by providing rates that the U.S. Attorney's Office would not question. Jonna Decl., ¶55 & Ex.3. Criticism of the matrix has led to the development of more matrices, including the LSI *Laffey* Matrix and the *Fitzpatrick* Matrix, which list highest rates of $1,141 and $807, respectively. Jonna Decl., ¶¶56-57 & Exs.4-5. Another helpful guide is the Wolters Kluwer Real Rate Report, which lists average actual billing rates across the country, broken down by location and

practice area. Unfortunately, it only lists rates for partners and associate without further breakdown based on experience. It identifies a third-quartile-median partner rate for San Diego of $907. *See* Jonna Decl., ¶60 & Ex.6.

"[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990)). Here, judges in the Southern District have recently found partner rates up to $1,500, associate rates up to $1,065, and paralegal rates[6] up to $495 to be reasonable. *See, e.g.*, *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215, 2025 WL 3403370, at *10 (S.D. Cal. Oct. 20, 2025) (Benitez, J.) (partner rates up to $1,500); *Dunsmore v. San Diego Cty. Sheriff's Dep't*, No. 20-cv-406, 2025 WL 2301940, at *8 (S.D. Cal. Aug. 8, 2025) (Battaglia, J.) (regular rates up to $1,625 lowered to $1,251); *Bloom v. City of San Diego*, No. 17-cv-2324, 2024 WL 4495512, at *6 (S.D. Cal. Oct. 15, 2024) (Battaglia, J.) (partner rates up to $1,250; paralegal rates up to $390); *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-2479, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (Curiel, J.) (partner rates up to $1,465; associate rates up to $805; paralegal rates up to $495); *Orthopaedic Hosp. v. Encore Med., L.P.*, No. 19-cv-970, 2021 WL 5449041, at *13 (S.D. Cal. Nov. 19, 2021) (Goddard, J.) (partner rates up to $1,260; associate rates up to $1,065); *Herring Networks, Inc. v. Maddow*, No. 19-cv-1713, 2021 WL 409724, at *7 (S.D. Cal. Feb. 5, 2021) (Goddard, J.) (regular rates up to $1,525 lowered to $1,150).

### B.   Application of the Principles: Plaintiffs Seek Hourly Rates Appropriate for Complex Litigation in San Diego.

Plaintiffs' counsel does not charge an hourly rate to clients for its public interest work, instead partnering with the Thomas More Society. Jonna Decl., ¶¶53-54. As a

---

[6] *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("We thus take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by statute should compensate the work of paralegals, as well as that of attorneys.").

14

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

result, Plaintiffs' counsel has instead previously derived reasonable hourly rates for cases that concluded in 2021 and 2023. That hourly rate was derived by relying on cases such as *Orthopaedic Hospital* and *Herring Networks*, and looking at industry guides. Jonna Decl., ¶77. Since then, billing rates have significantly increased. *See* Jonna Decl., ¶73 & Exs. 18-19, David Thomas & Mike Scarcella, *More lawyers join the $3,000-an-hour club, as other firms close in*, Reuters (Feb. 27, 2025); David Thomas & Mike Scarcella, *As lawyer rates surge, US firm charges $4,000 an hour for top partners*, Reuters (Jan. 26, 2026). Indeed, on average, billing rates increased 8.3% in 2023, and 9.1% in 2024, and 7.4% in 2025. *See* Jonna Decl., ¶74 & Exs. 20-21, Debra Cassens Weiss, *"Very strong performance" reported for law firms in 2024, with revenue increasing 12.5%*, ABA Journal (Jan. 29, 2025); *Law Firm Rates Report 2026: Law firms discover the hidden engine driving their pricing power*, Thomson Reuters (Oct. 20, 2025).

To develop a reasonable hourly rate for this litigation, Plaintiffs' counsel began by taking the rates awarded to them in April 2023 and increasing them by 20%. Counsel then cross-referenced the resulting rates with the USAO *Laffey* Matrix, the LSI *Laffey* Matrix, the *Fitzpatrick* Matrix, and the 2024 Wolters Kluwer Real Rate Report. Counsel then made various minor revisions, which resulted in the below rates. *See* Jonna Decl., ¶¶79-84. Thomas More Society attorneys, who are not based in San Diego, use substantially higher hourly rates. But for this application, all rates are based on San Diego reasonable hourly rates.

| Timekeeper | Negotiated June 2021 | Awarded April 2023 | 2026 Rate |
|---|---|---|---|
| Principals/Executives | | | |
| Charles S. LiMandri (1983) (42 years) (L&J) | $1,150 | $1,260 | $1,512 |
| Paul M. Jonna (2009) (16 years) (L&J) | $850 | $1,140 | $1,368 |
| Peter C. Breen (2000) (25 years) (TMS) | | | $1,368 |
| Joan M. Mannix (1989) (36 years) (TMS) | | | $1,368 |
| H. Tomás Gómez-Arostegui (1997) (28 years) (Solo) | | | $1,368 |

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| | | | |
|---|---|---|---|
| Frank J. Coughlin (1993) (32 years) (Solo) | | | $1,050 |
| Norman D. Grissom (2005) (17 years) (Solo) | | | $1,050 |
| Senior Attorneys | | | |
| Mark D. Myers (2001) (24 years) (L&J) | | $1,065 | $1,278 |
| Jeffrey M. Trissell (2013) (12 years) (L&J) | $600 | $875 | $1,050 |
| Robert E. Weisenburger (2015) (10 yrs) (L&J) | | $700 | $1,050 |
| Mary Catherine Martin (2003) (22 yrs) (TMS) | | | $1,278 |
| Matthew F. Heffron (1984) (41 years) (TMS) | | | $1,278 |
| Michael G. McHale (2012) (13 years) (TMS) | $625 | | $1,050 |
| Associates/Staff Counsel | | | |
| Joshua A. Youngkin (2011) (14 years) (L&J) | | | $840 |
| Milan L. Brandon (2016) (9 years) (L&J) | | $700 | $840 |
| Brian M. McPherson (2022) (3 years) (L&J) | | | $610 |
| William T. Duke (2024) (1 year) (L&J) | | | $450 |
| Christopher J. Galiardo (2015) (10 yrs) (TMS) | | | $840 |
| Support | | | |
| Kathy Denworth (Paralegal) (L&J) | $175 | $200 | $240 |
| Robert Muldowney (Paralegal) (L&J) | | | $240 |
| Rebecca Oakley (Paralegal) (L&J) | | | $240 |
| Kate Howell (Paralegal) (L&J) | | $200 | $240 |
| Matthew Zavaro (Law Clerk) (L&J) | | $250 | $300 |
| Amelia Knapp (Paralegal) (TMS) | | | $240 |

## II. ALL HOURS INCURRED SHOULD BE COMPENSATED.

### A. Background Legal Principles: There is No Need for Any Apportionment Due to the Unqualified Success.

The Court should award "fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). Under this inquiry, the "court should consider in light of the entire record whether a reasonable attorney with his client's

16
MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

interests in mind would have" performed the work. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1026 (9th Cir. 2019). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

When a party is only partially successful, the court asks whether the unsuccessful claims were "unrelated to the claims on which he succeeded." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1172 (9th Cir. 2019) (quoting *Hensley*, 461 U.S. at 434). If the unsuccessful claims were *related* to the successful claims, by "involv[ing] a common core of facts or are based on related legal theories," then lack of success on all claims is irrelevant. *See id.* (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)) "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440.

If the unsuccessful claims were *unrelated*, the court asks "the plaintiff achieve[d] a level of success" or "excellent results" that warrants a full award regardless, or whether fees attributed to unrelated, unsuccessful claims should be segregated and reduced. *Ibrahim*, 912 F.3d at 1172 (quoting *Hensley*, 461 U.S. at 434-35). "[T]he test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)).

In the Section 1983 context, the court also need not apportion fees among defendants. This is because "[t]he Ninth Circuit has concluded that '[t]here is no federal right to indemnification provided in 42 U.S.C. § 1983.'" *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015) (quoting *Allen v. City of Los Angeles*, 92 F.3d 842, 845 n.1 (9th Cir. 1996), and collecting district court cases). Allowing contribution

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

would frustrate "1983's twin goals of compensation and deterrence." *Stoddard-Nuñez v. City of Hayward*, No. 13-cv-4490, 2016 WL 1588271, at \*4 (N.D. Cal. Apr. 20, 2016). Indeed, "[i]t has also been held proper for a court to award attorneys' fees against one defendant for time spent litigating against another." *Z.F. v. Ripon Unified Sch. Dist.*, No. 10-cv-523, 2017 WL 1064679, at \*4 (E.D. Cal. Mar. 21, 2017). Apportion is unnecessary where the litigation is "centered on a set of common issues" engaged in by all defendants. *Id.* (quoting *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 898 (D.C. Cir. 2004)).

A large fee award is particularly appropriate when the opposing party engaged in a "scorched-earth" litigation strategy, "aggressively disputing" nearly every factual and legal issue. *See Instrumentation Lab. Co. v. Binder*, No. 11-cv-965, 2013 WL 12049072, at \*4 (S.D. Cal. Sept. 18, 2013), *aff'd*, 603 Fed. App'x 618 (9th Cir. 2015) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quoting *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009)).

**B.    Application of the Principles: Defendants Litigated Tenaciously and Plaintiffs' Have Imposed a Significant Discount.**

Here, Plaintiffs raised four related constitutional legal theories—Parent Free Exercise, Teacher Free Exercise, Substantive Due Process, and Free Speech—all aimed at obtaining an exemption from a single course of course conduct: California's Parental Exclusion Policy. This Court should expressly find that because these claims are related, fees incurred with respect to *all* of them should be compensable with respect to *any* of them. *See, e.g.*, *Ibrahim*, 912 F.3d at 1173-78; *Odima*, 53 F.3d at 1499.

The same is true with respect to Plaintiffs' fees incurred litigating against EUSD. Again and again, EUSD has made clear that it *only* implemented a Parental Exclusion Policy because the CDE required it. *See, e.g.*, Dkt. 42 at 30-31. The Defendants were engaged in a common course of conduct, and the State Defendants are fully liable for all harm they caused with no right of contribution from joint-actors.

*See, e.g.*, *Hoa*, 78 F. Supp. 3d at 1145; *Stoddard-Nuñez*, 2016 WL 1588271, at *4.

This remains the case even for time that is conceptually segregable. Proceeding through the Title VII religious accommodation process is compensable under Title VII as part of the employment litigation itself. *See N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 66 (1980). But it should also be compensable under Section 1988 as an ancillary proceeding that is inextricably intertwined with the litigation. Indeed, in that process, EUSD confirmed that its position was entirely driven by state mandates—it could not grant a religious accommodation due to state law. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 284 F.3d 1163, 1166 (9th Cir. 2002). Further, if the process had been successful, litigation would have been unnecessary. In that context, because no reasonable attorney would forgo the process, it is compensable as part of the litigation. *See United States v. City of San Diego*, 18 F. Supp. 2d 1090, 1101 (S.D. Cal. 1008) ("No attorney representing a private client would allow his or her advocacy to end at the courthouse door in such a situation.").

Exhibit 2 to the Declaration of Paul M. Jonna is a printout of an excel spreadsheet merging time incurred in this action by LiMandri & Jonna LLP, Thomas More Society, NDG Law APC, Frank J. Coughlin PLC, and Prof. Gómez-Arostegui. Thomas More Society expended additional time supporting LiMandri & Jonna LLP that is not claimed in the chart. Jonna Decl., ¶¶11-12 & Ex.2.

In total, this spreadsheet shows that Plaintiffs incurred **3,807.15** hours of attorney, law clerk, or paralegal time, representing **$4,045,917** in fees. However, because these fees were not presented to clients, there is inherently a risk of over-billing or excessive work. To address this, Plaintiffs are voluntarily reducing their fee request by 10%. *See Twitch Interactive, Inc. v. Johnston*, No. 16-cv-3404, 2018 WL 3632171, at *4 (N.D. Cal. July 31, 2018) ("The voluntary reduction and conservative time reported by [plaintiff's] counsel adequately address any concern the Court might have regarding hours expended prosecuting the case."); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 990 (N.D. Cal. 2017) (same with respect to 5% reduction).

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

This reduces Plaintiffs' lodestar to **$3,641,325.30**, which Plaintiffs respectfully request that the Court grant in full.

Awarding the lodestar in full is necessary because Defendants drove up the fees here through their litigation tactics. As stated above, in addition to two motions to dismiss filed by EUSD against the original complaint and the Second Amended Complaint, Dkt. 17, 157, the State Defendants filed *eight* motions to dismiss:

- Dkt. 25: CDE Defendants' Motion to Dismiss Original Complaint;
- Dkt. 53: CDE Defendants' Motion for Judgment on the Pleadings;
- Dkt. 95: Governor Newsom's Motion to Dismiss FAC;
- Dkt. 96: Attorney General Bonta's Motion to Dismiss FAC;
- Dkt. 149: State Board of Education's Motion to Dismiss SAC;
- Dkt. 150: State Superintendent Thurmond's Motion to Dismiss SAC;
- Dkt. 156: Attorney General Bonta's Motion to Dismiss SAC; and
- Dkt. 195: CDE Defendants' Motion to Dismiss SAC as Moot.

In contrast, Plaintiffs have made repeated settlement overtures to both EUSD and the State Defendants, hoping to find some way to bring this case to an amicable resolution. *See* Jonna Decl., ¶¶75-77 & Exs.22-24. Indeed, in light of this practice, the vast majority of counsel's pro bono litigation resolves via settlement. *See* Jonna Decl., ¶7.[7] In this context, a party's intransigence makes the opposing party's incurred fees necessarily reasonable. *See EEOC v. Union Camp Corp.*, 536 F. Supp. 64, 66 (W.D. Mich. 1982); *Durruthy v. Charter Commc'ns, LLC*, No. 20-cv-1374, 2021 WL 6883423, at *9 (S.D. Cal. Sept. 30, 2021).

## III.    A Multiplier is Appropriate.

As explained by the Supreme Court, "the lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). Nevertheless,

---

[7] *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 461 (9th Cir. 2013) ("Federal Rule of Evidence 408 does not bar consideration of settlement offers when making attorneys' fee awards") (citing *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011)).

"enhancements may be awarded in 'rare' and 'exceptional' circumstances." *Id.* (cleaned up). Generally, this does *not* include "the novelty and complexity of a case," or "the quality of an attorney's performance," which should instead be reflected in the hourly rate. *Id.* at 553-55. Rather, "an enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Id.* at 555. But even then, "[c]ompensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Id.* at 556 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)).

Other factors which can be considered include "the extreme undesirability of the case, the likelihood that no other attorney … would have accepted the case, and the rare and exceptional nature of the case." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (2.0 multiplier); *accord Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005) (1.75 multiplier) ("the case was highly controversial"); *Jaramillo v. Cty. of Orange*, 200 Cal. App. 4th 811, 830 (2011) (1.15 multiplier) (awarding multiplier because counsel suffered "a degree of public opprobrium"). "An enhancement is proper … when these factors, though partially reflected in the lodestar, are not *fully* reflected in the lodestar." *Sonoma Land Tr. v. Thompson*, 63 Cal. App. 5th 978, 988 (2021); *accord In re Manoa Fin. Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988).

Here, the hourly rates of Plaintiffs' counsel are near the high-end of appropriate rates in San Diego County. But for the most exceptional lawyers in the entire State, rates were significantly higher. Indeed, although Plaintiffs' top rate is $1,512, Los Angeles County is presently paying up to $1,975 per hour for its defense against lawsuits related to the Palisades Fire. *See* Jonna Decl., ¶68 & Ex.15. In light of the nature of this case, obtaining excellent results across the entire state, Plaintiffs believe that a multiplier matching higher rates used across the State is appropriate. Thus, Plaintiffs request a 1.25 multiplier, bringing the lodestar to **$4,551,656.63.**

## IV.    PLAINTIFFS ARE ENTITLED TO NON-TAXABLE COSTS

Lastly, as stated, Plaintiffs are entitled to receive under Section 1988 all costs and expenses incurred, except expert witness fees. *Dang*, 422 F.3d at 814; *Chalmers*, 796 F.2d at 1216 n.7. Here, contemporaneously with this motion, Plaintiffs have filed their Bill of Taxable Costs in the amount of $55,936.41. *See* Dkt. 322. In addition, Plaintiffs are submitting their non-taxable costs with this motion, including filings fees for amicus briefs in related actions, printing costs, and travel costs. *See Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) ("[A]ttorneys' fees awards can include reimbursement for out-of-pocket expenses including ... travel, courier and copying costs"). Those non-taxable costs total $20,755.10. Jonna Decl., ¶88 & Ex.25.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for attorneys' fees in full.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: February 2, 2026        By:

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES