1  ROB BONTA
   Attorney General of California
2  DARRELL W. SPENCE
   Supervising Deputy Attorney General
3  KATHERINE BRUCK (SBN: 342536)
   Deputy Attorney General
4   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102
5   Telephone: (415) 229-0125
    Fax: (916) 732-7920
6   E-mail: Katherine.Bruck@doj.ca.gov
   *Attorneys for State Defendants*

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13  **ELIZABETH MIRABELLI, an**           3:23-cv-00768-BEN-VET
    **individual, and LORI ANN WEST,**
    **an individual,**                    **STATE DEFENDANTS'**
14                                         **OPPOSITION TO PLAINTIFFS'**
                                           **MOTION FOR ATTORNEYS'**
15                      Plaintiffs,        **FEES**

                                           [Declarations of James Schratz and
16             v.                          Katherine Bruck filed concurrently]

17  **MARK OLSON, in his official**        Date:         March 9, 2026
    **capacity as President of the EUSD**  Time:         10:30 a.m.
18  **Board of Education, et al.,**        Courtroom:    5A
                                           Judge:        The Honorable
19                      Defendants.                      Roger T. Benitez
                                           Action Filed: April 27, 2023
20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

Introduction ........................................................................................................ 1

Relevant Procedural History ............................................................................. 1

Argument ........................................................................................................... 2

I.     Plaintiffs Cannot Recover Any Attorneys' Fees Because They Are Not Currently the Prevailing Party ......................................... 2

II.    Plaintiffs Cannot Recover Any Fees From State Defendants for Their Employment Discrimination Claims, Which Were Severed, Stayed, and Have Not Been Adjudicated ........................... 3

III.   Plaintiffs' Counsel's Evidence is Unreliable ................................... 5

IV.    Plaintiffs' Counsel's Claimed Hourly Rates Are Unreasonable .......... 5

    A.    Plaintiffs' Counsel Improperly Relies on Fee Awards From Outside the Southern District of California .................... 6

    B.    Plaintiffs' Counsel Improperly Relies on Rates Paid to Large Firms, Which Are Not Comparable to Small Firms Like LiMandri & Jonna ........................................................ 7

    C.    Plaintiffs' Counsel Improperly Relies on Rates in Patent Cases, Which Are Not Comparable to Civil Rights Cases ....... 10

    D.    Rates Proffered by Plaintiffs' Counsel During Settlement Negotiations in Other Cases Are Irrelevant to Determination of Reasonable Rates .......................................... 11

    E.    Plaintiffs' Counsel Draws Improper Comparisons to Attorneys with Specialized Expertise .................................... 12

V.     Plaintiffs' Counsel's Billed Hours Are Unreasonable ...................... 15

    A.    The Hours Billed are Excessive on Their Face ...................... 15

    B.    Unrecoverable Media and Public Relations Work ................. 17

    C.    Unrecoverable Work in Separate Cases ................................ 18

    D.    Overstaffing .......................................................................... 19

    E.    Duplicative Deposition Attendance ...................................... 19

    F.    Excessive Hours on Document Drafting ................................ 20

    G.    Excessive Conferencing ....................................................... 20

    H.    Block Billing ......................................................................... 21

    I.    Overly Vague Billing Entries ............................................... 22

    J.    Unrecoverable Administrative and Clerical Work ................ 22

    K.    Use of a 0.2-Hour Minimum Billing Increment .................... 23

    L.    Unadjudicated Employment Discrimination Claims ............. 23

VI.    Upward Adjustment to the Lodestar is Not Warranted ..................... 24

Conclusion ....................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Albani v. Albani*
   No. 15-cv-1980, 2016 WL 3074407, at *1 (S.D. Cal. May 31, 2016) ........................................................................................ 18

*Amphastar Pharms. Inc. v. Aventis Pharma SA*
   No. 5:09-cv-00023-SHK, 2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) ........................................................................................ 22

*Astorga v. Cnty. of San Diego*
   No. 3:21-cv-00463-BEN-KSC, 2023 WL 4748784 (S.D. Cal. July 25, 2023) .............................................................. 13, 14, 17

*Au Hoon v. City & Cnty. of Honolulu*
   922 F.2d 844 (9th Cir. 1991) ................................................... 4

*Bloom v. City of San Diego*
   No. 17-cv-02324-AJB-DEB, 2024 WL 4495512 (S.D. Cal. Oct. 15, 2024) ...................................................................................... 7, 8

*Bronshteyn v. Dep't of Consumer Affs.*
   114 Cal. App. 5th 537 (2025) (case appealed from Los Angeles Superior Court) .................................................................... 7

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*
   532 U.S. 598 (2001) ................................................................ 2

*California v. Chino Valley Unified School District*
   No. CIVSB2317301 (Cal. Super. 2023) ................................ 18

*Carr v. Tadin, Inc.*
   51 F. Supp. 3d 970 (S.D. Cal. 2014) ................................... 21

*Chalmers v. City of Los Angeles*
   796 F.2d 1205 (9th Cir. 1986) ......................................... 15, 19

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*CliniComp International, Inc. v. Cerner Corp.*
  17-cv-02479-GPC-DEB, 2023 WL 2604816, at *3 (S.D. Cal. Mar.
  22, 2023) ........................................................................................................ 10

*Colony Cove Props., LLC v. City of Carson*
  No. 14-cv-3242-PSG-PJW, 2016 WL 11756096 (C.D. Cal. Aug.
  15, 2016) .......................................................................................................... 9

*Corder v. Gates*
  947 F.2d 374 (9th Cir. 1991) ......................................................................... 4

*Cuellar v. First Transit Inc.*
  No. 8:20-cv-01075-JWH-JDE, 2024 WL 83231 (C.D. Cal. Jan. 8,
  2024) ................................................................................................................ 8

*Davis v. City & Cnty. Of San Francisco*
  976 F.2d 1536 (9th Cir. 1992) ...................................................................... 18

*DeLew v. Nevada*
  No. 2:00-cv-00460-LRL, 2010 WL 11636127 (D. Nev. Jan. 7,
  2010) ................................................................................................................ 4

*Department of Fair Employment & Housing v. Cathy's Creations, Inc.*
  No. BCV-18-102633 (Cal. Super. 2018) ...................................................... 10

*Dunsmore v. San Diego Cnty. Sheriff's Dep't*
  No. 20-cv-00406-AJB-DDL, 2025 WL 2301940 (S.D. Cal. Aug. 8,
  2025) .......................................................................................................... 7, 14

*Durruthy v. Charter Commc'ns, LLC*
  No. 3:20-cv-01374-W-MSB, 2021 WL 6883423 (S.D. Cal. Sept.
  30, 2021) ........................................................................................................ 16

*El-Hakem v. BJY Inc.*
  415 F.3d 1068 (9th Cir. 2005) ....................................................................... 4

*Emond v. Murphy*
  No. 18-cv-09040-JAK-JEM, 2019 WL 13039332 (C.D. Cal. Aug.
  27, 2019) ........................................................................................................ 11

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*Equal Emp. Opportunity Comm'n v. Union Camp Corp.*
536 F. Supp. 64 (W.D. Mich. 1982).................................................................16

*F.D.I.C. v. Lake Elsinore 521, LLC*
No. 2:11-cv-00386-GMN, 2011 WL 5240164 (D. Nev. Nov. 1,
2011)....................................................................................................................18

*F.T.C. v. Actavis, Inc.*
570 U.S. 136 (2013) (Roberts, C.J., dissenting).................................................10

*Farrar v. Hobby*
506 U.S. 103 (1992) ........................................................................................2, 3

*Fitzgerald v. Pollard*
No. 20-cv-848-JM-MSB, 2024 WL 4596401, at *11 (S.D. Cal. Oct.
28, 2024)........................................................................................................14, 23

*Garnier v. Poway Unified Sch. Dist.*
No. 17-cv-2215-BEN-JLB, 2025 WL 3403370 (S.D. Cal. Oct. 20,
2025)...........................................................................................................*passim*

*Gates v. Gomez*
60 F.3d 525 (9th Cir. 1995), (Aug. 3, 1995) .....................................................17

*Gomez v. Gates*
804 F. Supp. 69 (C.D. Cal. 1992)........................................................................9

*Gonzalez v. City of Maywood*
729 F.3d 1196 (9th Cir. 2013)......................................................................15, 21

*Grace Church of N. Cnty. V. City of San Diego*
No. 07-cv-0419, 2008 WL 11508664 (S.D. Cal. Sept. 9, 2008).................17, 19

*Greater Los Angeles Council on Deafness v. Cmty. Television of S.
California*
813 F.2d 217 (9th Cir. 1987) .............................................................................17

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*
100 F.3d 691 (9th Cir. 1996) .............................................................................25

State Defendants' Opposition to Motion for Attorneys' Fees  (3:23-cv-0768-BEN-VET)

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page**

*Herring Networks, Inc. v. Maddow*
No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724 (S.D. Cal. Feb. 5,
2021) ........................................................................................................... 8

*Hess v. Ramona Unified Sch. Dist.*
No. 07-cv-0049-W-CAB, 2008 WL 5381243 (S.D. Cal. Dec. 19,
2008) ........................................................................................................ 18

*His Tabernacle Fam. Church, Inc. v. James*
No. 6:22-cv-6486, 2025 WL 2945655 (W.D.N.Y. Sept. 2, 2025) ...................... 7

*Hum. Rts. Def. Ctr. v. Cnty. of Napa*
No. 20-cv-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28,
2021) ........................................................................................................... 7

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975) ........................................................................ 24

*L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*
No. 18-cv-6809-MWF-MRW, 2024 WL 3839401 (C.D. Cal. Aug.
2, 2024) ....................................................................................................... 8

*Lahiri v. Universal Music & Video Distribution Corp.*
606 F.3d 1216 (9th Cir. 2010) .................................................................... 21

*Lehr v. City of Sacramento*
No. 2:07-cv-01565-MCE, 2013 WL 1326546 (E.D. Cal. Apr. 2,
2013) ........................................................................................................ 17

*Mae M. v. Komrosky*
No. G064332 (Cal. App. 2024) ................................................................... 18

*Martinez v. Costco Wholesale Corp.*
No. 19-cv-1195-WVG, 2023 WL 2229267 (S.D. Cal. Feb. 24,
2023) ................................................................................................. 19, 21, 22

*Matek v. Murat*
862 F.2d 720 (9th Cir. 1988) ....................................................................... 4

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*McCracken v. Riot Games, Inc.*
    No. 18STCV03957, 2023 WL 11053298 (Cal. Super. June 15,

4

    2023) ................................................................................................. 7

5

*Mich. State A. Philip Randolph Inst. v. Johnson*

6

    No. 16-cv-11844, 2019 WL 2314861 (E.D. Mich. May 31, 2019) .................... 3

7

*Mirabelli v. Bonta*

8

    No. 25-8056, 2026 WL 44874 (9th Cir. Jan. 5, 2026) .................................. 1, 3

9

*Mirabelli v. Bonta*

10

    No. 25-8056, Docket No. 14 (9th Cir. Jan. 8, 2026) ......................................... 2

11

*Mirabelli v. Bonta*

12

    No. 25-8056, Docket No. 6 (9th Cir. Dec. 24, 2025) ........................................ 1

13

*Mirabelli v. Bonta*

14

    No. 25A810 (U.S. Jan. 8, 2026) ....................................................................... 2

15

*Missouri v. Jenkins*
    491 U.S. 274 (1989) ....................................................................................... 22

16

*Muniz v. United Parcel Serv., Inc.*

17

    738 F.3d 214 (9th Cir. 2013) ............................................................................ 5

18

*Munoz v. California Bus. Bureau, Inc.*

19

    No. 1:15-cv-1345-BAM, 2017 WL 3009210 (E.D. Cal. July 14,

20

    2017)............................................................................................................... 20

21

*Nadorajah v. Hoder*

22

    569 F.3d 906 (9th Cir. 2009) .......................................................................... 23

23

*Notter v. City of Pleasant Hill*
    No. 16-cv-04412-JSC, 2017 WL 5972698 (N.D. Cal. Nov. 30,

24

    2017)............................................................................................................... 11

25

*Orthopaedic Hospital v. Encore Medical, L.P.*

26

    No. 3:19-cv-00970-JLS-AHG, 2021 WL 5449041, at *14 (S.D.

27

    Cal. Nov. 19, 2021) ........................................................................................ 10

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Parents Protecting Our Children v. Eau Claire Area School District*
  No. 23-1534 (7th Cir. 2024) ........................................................ 18

*Perdue v. Kenny A.*
  559 U.S. 542 (2010) ........................................................... 24, 25

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
  No. 16-cv-00236-WHO, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020) ............................................................................... 7

*Shame On You Prods., Inc. v. Banks*
  893 F.3d 661 (9th Cir. 2018) ..................................................... 4, 5

*Sierra Club v. Johnson*
  No. 08-cv-01409-WHA, 2010 WL 147951 (N.D. Cal. Jan. 12, 2010) .............................................................................. 20

*Staton v. City & Cnty. Of Butte-Silver Bow*
  No. 20-cv-60-BU-BMM, 2024 WL 2819335 (D. Mont. June 3, 2024) .............................................................................. 16

*Stratton v. Glacier Ins. Adm'rs, Inc.*
  No. 1:02-cv-06213-OWW-DLB, 2007 WL 1989097 (E.D. Cal. July 3, 2007) ........................................................................... 11

*UFO Chuting of Hawaii, Inc. v. Smith*
  508 F.3d 1189 (9th Cir. 2007) ....................................................... 3

*United States for Use & Benefit of Penn Air Control Inc. v. Bilbro Constr. Co., Inc.*
  No. 16-cv-003-WQH-NLS, 2019 WL 4547085 (S.D. Cal. Sept. 18, 2019) .............................................................................. 6

*United States v. $28,000.00 in U.S. Currency*
  802 F.3d 1100 (9th Cir. 2015) ................................................... 6, 11

*United States v. City & Cnty. of S.F.*
  748 F. Supp. 1416 (N.D. Cal. 1990) ................................................. 9

# TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Prism Autism Found.*
 No. 3:19-cv-00043-W-BLM, 2022 WL 5264493 (S.D. Cal. Oct. 6,
 2022) ..................................................................................................... 22

*Van Skike v. Dir., Off. of Workers' Comp. Programs*
 557 F.3d 1041 (9th Cir. 2009) ......................................................... 6, 7

*Wagnon v. Rocklin Unified Sch. Dist.*
 No. 2:17-cv-01666-CSK, 2025 WL 1569210 (E.D. Cal. June 3,
 2025) ..................................................................................................... 17

*Waikoloa Dev. Co. v. Hilton Resorts Corp.*
 No. 13-cv-00402 DKW, 2014 WL 4449895 (D. Haw. Sept. 9,
 2014) ....................................................................................................... 4

*Welch v. Metro. Life Ins. Co.*
 480 F.3d 942 (9th Cir. 2007) ........................................................ 21, 22

*Woods v. Graphic Commc'ns*
 925 F.2d 1195 (9th Cir. 1991) ............................................................. 5

*Yamada v. Snipes*
 786 F.3d 1182 (9th Cir. 2015) ............................................................. 2

**STATUTES**

42 United States Code
 § 1983 .................................................................................................. 14
 § 1988 ..................................................................................... 2, 3, 25

**COURT RULES**

Federal Rule of Civil Procedure
 42(b) ..................................................................................................... 3

**OTHER AUTHORITIES**

*Pamela S. Karlan*, https://law.stanford.edu/pamela-s-karlan/ ................. 12

1

**INTRODUCTION**

Following the Ninth Circuit's stay of the permanent injunction, Plaintiffs are not currently a prevailing party and therefore are not entitled to attorneys' fees. Yet Plaintiffs now seek approximately $4.5 million in fees. Plaintiffs' fee motion—which claims 3,807.15 hours billed by 24 timekeepers over 4,003 entries—is excessive; seeks to recover for non-billable time including duplicative work, filings in other cases, and media relations; and seeks hourly rates which are well in excess of prevailing rates for the Southern District of California. Plaintiffs' attempt to recover excessive fees, when they are not yet entitled to fees in the first place, must be rejected.

**RELEVANT PROCEDURAL HISTORY**

On December 22, 2025, the Court granted summary judgment to the Plaintiffs on their constitutional claims and issued a class-wide permanent injunction. ECF Nos. 307, 308. State Defendants appealed. ECF No. 312. Within hours of the permanent injunction order, State Defendants filed a notice of appeal and asked this Court for a stay of the injunction pending appeal. ECF No. 309. When the Court denied the request for stay pending appeal, ECF No. 313, State Defendants immediately filed a request for stay pending appeal in the Ninth Circuit. *Mirabelli v. Bonta*, No. 25-8056, Docket No. 6 (9th Cir. Dec. 24, 2025). On December 26, 2025, the Ninth Circuit issued an administrative stay of the injunction. *Id.*, Docket No. 8 (9th Cir. Dec. 26, 2025).

On January 5, 2026, the Ninth Circuit stayed the Court's permanent injunction pending appeal based on the State Defendants' likelihood of success on the merits, irreparable harm to the State Defendants, and the public interest in protecting students and avoiding confusion among schoolteachers and administrators. *See Mirabelli v. Bonta*, No. 25-8056, 2026 WL 44874, at *4 (9th Cir. Jan. 5, 2026).

On January 8, 2026, Plaintiffs filed an emergency application with the United States Supreme Court seeking to vacate the Ninth Circuit's stay of the permanent injunction. *See Mirabelli v. Bonta*, No. 25A810 (U.S. Jan. 8, 2026). The matter is fully briefed, and the application remains pending. Plaintiffs simultaneously filed a motion for reconsideration en banc in the Ninth Circuit on January 8, 2026, to which the State Defendants responded on February 6. *See Mirabelli v. Bonta*, No. 25-8056, Docket No. 14 (9th Cir. Jan. 8, 2026); *id.*, Docket No. 17 (9th Cir. Feb. 6, 2026). That application remains pending as well.

On February 2, 2026, Plaintiffs filed their Motion for Attorneys' Fees, ECF No. 323, and supporting memorandum, ECF No. 323-1 (Mot.).

## ARGUMENT

### I.    PLAINTIFFS CANNOT RECOVER ANY ATTORNEYS' FEES BECAUSE THEY ARE NOT CURRENTLY THE PREVAILING PARTY

Under 42 U.S.C. § 1988, the District Court may, in its discretion, award "reasonable attorney's fees" to the "prevailing party." Plaintiffs are not currently the prevailing party—and thus are not entitled to fees—following the Ninth Circuit's stay of the permanent injunction.

To be considered a prevailing party under § 1988, the plaintiff must receive "actual relief on the merits of his claim" that "materially alters the legal relationship between the parties *by modifying the defendant's behavior in a way that directly benefits the plaintiff*." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) (emphasis added); *see also Yamada v. Snipes*, 786 F.3d 1182, 1208 (9th Cir. 2015). "[A] judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." *Farrar*, 506 U.S. at 112; *see also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 606 (2001) (a plaintiff is not entitled to attorneys' fees based on "a judicial pronouncement that the defendant has violated the Constitution unaccompanied by

2

1 'judicial relief'").

2    Applying this rule, the Ninth Circuit has held that where, as here, a plaintiff

3 was awarded a permanent injunction against a state policy, but a court "stayed the

4 implementation of the permanent injunction before the [s]tate had to change its

5 behavior," the plaintiff "cannot be considered the 'prevailing party'" for purposes

6 of attorneys' fees under § 1988. *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d

7 1189, 1198 (9th Cir. 2007). This binding precedent disentitles Plaintiffs to fees.

8 *See id.*; *see also Mich. State A. Philip Randolph Inst. v. Johnson*, No. 16-cv-11844,

9 2019 WL 2314861, at *4 (E.D. Mich. May 31, 2019) (plaintiffs were not the

10 prevailing party where they were granted a permanent injunction that was

11 subsequently stayed by the Sixth Circuit, because "the permanent injunction never

12 forced [d]efendant to alter her behavior towards [p]laintiffs").

13    Unless and until Plaintiffs succeed on the merits of their claims by receiving

14 relief that changes Defendants' behavior in a way that "directly benefits" them, *see*

15 *Farrar*, 506 U.S. at 111–12—which the Ninth Circuit has indicated is unlikely, *see*

16 *Mirabelli v. Bonta*, No. 25-8056, 2026 WL 44874, at *4 (9th Cir. Jan. 5, 2026)—

17 Plaintiffs are not the "prevailing party."

18    Because Plaintiffs have not met the threshold prevailing party requirement,

19 they are not entitled to any attorneys' fees, and their motion must be denied in its

20 entirety.

21 **II.  PLAINTIFFS CANNOT RECOVER ANY FEES FROM STATE DEFENDANTS**
**FOR THEIR EMPLOYMENT DISCRIMINATION CLAIMS, WHICH WERE**
22 **SEVERED, STAYED, AND HAVE NOT BEEN ADJUDICATED**

23    Plaintiffs cannot be considered the prevailing party with respect to their Title

24 VII claims because those claims have not been adjudicated. The Court previously

25 severed the employment discrimination claims—which were brought only against

26 Escondido Union School District (EUSD), *see* ECF No. 133 ¶¶ 401–436—for

27 purposes of all "proceedings and eventually of trial." ECF No. 290 at 2. The Court

28 explained that severance was "necessary" under Federal Rule of Civil Procedure

42(b) because the employment discrimination claims raised "issues that are distinct from the plaintiff state-wide class action claims." *Id.* at 2–3.  In addition, the Court stayed the severed employment discrimination claims, *id.* at 3, and the Court has not lifted that stay.

As a result, the Court's summary judgment order did not address Plaintiffs' Title VII claims.  *See* ECF No. 307 (adjudicating claims 1, 2, 3, 6, 7, and 8). Because the employment discrimination claims have not yet been adjudicated and remain stayed, Plaintiffs cannot recover fees as to those claims.  *See Au Hoon v. City & Cnty. of Honolulu*, 922 F.2d 844 (9th Cir. 1991) ("Since the case has not been decided on the merits at this point, it would be premature to award attorneys' fees and costs."); *Waikoloa Dev. Co. v. Hilton Resorts Corp.*, No. 13-cv-00402 DKW, 2014 WL 4449895, at *1 (D. Haw. Sept. 9, 2014) ("[W]here a plaintiff's claims remain undecided and judgment had not been entered, a motion for attorneys' fees is premature."); *cf. Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988) ("[A]n award of costs to [plaintiff] would be premature because the [] claims against [defendant] have yet to be adjudicated."); *see also Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018) (holding a plaintiff cannot recover fees for claims they did not prevail on where the claims do not "involve a common core of facts" or "related legal theories").

Even if the employment discrimination claims had been adjudicated, apportionment of fees incurred in litigating the Title VII claims is required because of the "unequal" time spent pursuing EUSD compared to the State Defendants.  *See Corder v. Gates,* 947 F.2d 374, 383 (9th Cir. 1991); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1075 (9th Cir. 2005) ("In deciding whether apportionment is mandated, the court focuses on the time expended by the plaintiff in pursuing each defendant, rather than on relative liability.").  This includes the pre-litigation period during which "virtually no work was done relating to" the claims against the State Defendants.  *See DeLew v. Nevada*, No. 2:00-cv-00460-LRL, 2010 WL 11636127,

4

at *6 (D. Nev. Jan. 7, 2010); *see also Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1207 (9th Cir. 1991) (upholding district court's apportionment of fees among phases of litigation, including a period of time before one defendant was a party). The unequal time spent also includes work throughout the life of the litigation that pertained solely to the employment discrimination claims, which raise "distinct" issues, ECF No. 290. *See Shame On You Prods.*, 893 F.3d at 669. To the extent these fees are recoverable at all at this stage in the litigation, they must be apportioned to EUSD.

In sum, Plaintiffs' counsel spent 379.4 hours, for a total of $405,925.20 in claimed fees, pursuing the Title VII claims. Schratz Decl. ¶ 177.[1] This constitutes 11.15 percent of Plaintiffs' proffered lodestar. All fees incurred in litigating the employment discrimination claims should be disallowed. A figure for the appropriate reduction is provided below. *Infra* Section V(L).

## III. PLAINTIFFS' COUNSEL'S EVIDENCE IS UNRELIABLE

In support of the motion for attorneys' fees, Plaintiffs provide a declaration only from lead attorney Mr. Jonna. Yet the Ninth Circuit has explained that "[d]eclarations in support of attorney fee awards should be based upon personal knowledge." *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222 (9th Cir. 2013). "[W]hile [Mr. Jonna] can attest to his own recordkeeping practice, he cannot know the timekeeping practice of the 23 other timekeepers with any degree of certainty." *See* Schratz Decl. ¶ 34. Thus, the billing entries from all timekeepers other than Mr. Jonna are not sufficiently supported.

## IV. PLAINTIFFS' COUNSEL'S CLAIMED HOURLY RATES ARE UNREASONABLE

Even if Plaintiffs were entitled to attorneys' fees and had provided sufficient supporting documentation, the fees requested are unreasonable and must be

---

[1] Mr. Schratz has not opined on whether disallowance of the Title VII-related fees is appropriate because it constitutes a legal question outside the scope of his audit.

substantially decreased.  "A 'reasonable fee' is intended to 'induce a capable

attorney to undertake the representation of a meritorious civil rights case' without

'produc[ing] windfalls to attorneys.'"  *Garnier v. Poway Unified Sch. Dist.*, No. 17-

cv-2215-BEN-JLB, 2025 WL 3403370, at *6 (S.D. Cal. Oct. 20, 2025) (quoting

*Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

Plaintiffs' counsel seeks rates up to $1,512.  Yet counsel fails to demonstrate

that the requested rates are reasonable, instead relying on fee awards from locales

outside the Southern District of California and drawing inapt comparisons to highly

specialized experts and attorneys from large firms.

"In determining a reasonable rate for attorneys' fees, 'the burden is on the fee

applicant to produce satisfactory evidence—in addition to the attorney's own

affidavits'"—that the requested rates are reasonable.  *United States for Use &*

*Benefit of Penn Air Control Inc. v. Bilbro Constr. Co., Inc.*, No. 16-cv-003-WQH-

NLS, 2019 WL 4547085, at *4 (S.D. Cal. Sept. 18, 2019) (quoting *Blum v. Stenson*,

465 U.S. 886, 892 n.11 (1984)).  "The established standard when determining a

reasonable hourly rate is the rate prevailing in the community for similar work

performed by attorneys of comparable skill, experience, and reputation."  *United*

*States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015)

(citation modified).

For the following reasons, and as discussed in greater detail in the Declaration

of James Schratz, Plaintiffs' counsel fails to justify the requested rates.

**A.    Plaintiffs' Counsel Improperly Relies on Fee Awards From
Outside the Southern District of California**

Plaintiffs' counsel relies heavily on fee awards and rates from outside of the

Southern District of California.  Yet it is well-established that the relevant

community for determining attorney billing rates is "the forum in which the district

court sits."  *See Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d

1041, 1046 (9th Cir. 2009).

Plaintiffs' counsel cites cases from the Western District of New York, the

Northern District of California, and Los Angeles County.  *See His Tabernacle Fam.*

*Church, Inc. v. James*, No. 6:22-cv-6486, 2025 WL 2945655 (W.D.N.Y. Sept. 2,

2025); *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-cv-01296-JCS, 2021 WL

1176640 (N.D. Cal. Mar. 28, 2021); *Planned Parenthood Fed'n of Am., Inc. v. Ctr.*

*for Med. Progress*, No. 16-cv-00236-WHO, 2020 WL 7626410 (N.D. Cal. Dec. 22,

2020); *Bronshteyn v. Dep't of Consumer Affs.*, 114 Cal. App. 5th 537 (2025) (case

appealed from Los Angeles Superior Court); *McCracken v. Riot Games, Inc.*, No.

18STCV03957, 2023 WL 11053298 (Cal. Super. June 15, 2023) (final approval of

class action settlement in Los Angeles Superior Court).[2]  None of these cases are

relevant to determining the reasonable rate for attorneys based in San Diego.  *See*

*Van Skike*, 557 F.3d at 1046.

### B. Plaintiffs' Counsel Improperly Relies on Rates Paid to Large Firms, Which Are Not Comparable to Small Firms Like LiMandri & Jonna

Plaintiffs' counsel improperly relies on rates charged by large firms like DLA

Piper, Gibson Dunn, and Munger Tolles & Olson.  *See, e.g.*, Jonna Decl. (ECF No.

323-2) ¶¶ 62, 66, 68.  They also cite cases in which courts awarded rates in excess

of $1,000 to large international law firms Fish & Richardson, DLA Piper, and

Gibson Dunn, and nationally ranked mid-size firm Rosen Bien Galvan & Grunfeld.

*See Bloom v. City of San Diego*, No. 17-cv-02324-AJB-DEB, 2024 WL 4495512, at

*1 (S.D. Cal. Oct. 15, 2024) (awarding rates up to $1,250 to Fish & Richardson);[3]

*Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 20-cv-00406-AJB-DDL, 2025

---

[2] Plaintiffs' counsel also repeatedly points out that Los Angeles County has agreed to pay rates up to $1,975 per hour to defense counsel in the Palisades Fire litigation.  *See* Jonna Decl. ¶ 68; Mot. at 13, 21.  This comparison is irrelevant.  Los Angeles County is a separate entity from the State Defendants, and neither the parties involved nor the events or property at issue in the Palisades Fire litigation have any  connection to the Southern District or this case.  Further, the rates identified are charged by a large international law firm, Munger Tolles & Olson, which is not comparable to LiMandri & Jonna.

[3] The rates of $1,200 and $1,250 cited by Plaintiffs' counsel were not for a "local San Diego firm," *see* Jonna Decl. ¶ 63, but rather for Fish & Richardson, a large international law firm.

7

WL 2301940, at *1 (S.D. Cal. Aug. 8, 2025) (awarding, for example, a rate of $1,002 to partner from DLA Piper and rates from $750.75–$1,251.25 to partners from Rosen Bien Galvan & Grunfeld); *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724, at *5 (S.D. Cal. Feb. 5, 2021) (awarding, for example, a rate of $1,150 to a Gibson Dunn partner who had 30 years of experience and was an award-winning First Amendment attorney).

Medium and large law firms with national or international reach are not comparable to LiMandri & Jonna, "which has never employed more than 10 attorneys," and which, based on the sample of cases provided, appears to take on cases largely (if not exclusively) within California. *See* Jonna Decl. ¶¶ 3–4, 7. Industry data and reporting establish that large law firms both command higher billing rates and have seen larger rate increases in recent years when compared to small firms. Schratz Decl. ¶¶ 57–68. This is due to several factors, including the considerable marketing budget large firms use to establish and promote brand identity, the willingness of large corporate clients to pay higher rates, and the higher overhead costs associated with running large firms. *Id.* ¶¶ 75–76. Indeed, even *Bloom*—relied upon by Plaintiffs' counsel—implicitly recognized that large firms command higher rates by awarding rates up to $1,250 to a large firm, $915 to a local lawyer who specialized in disability rights litigation, and rates up to $750 and $810 for other local San Diego firms. *See* 2024 WL 4495512, at *1.

Other courts have recognized that rates across firms of different sizes are not comparable, in part because "firm size is a key factor that drives rates" and "serves as a proxy" for factors like "reputation" and "actual billing practices." *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, No. 18-cv-6809-MWF-MRW, 2024 WL 3839401, at *4 (C.D. Cal. Aug. 2, 2024); *see also Cuellar v. First Transit Inc.*, No. 8:20-cv-01075-JWH-JDE, 2024 WL 83231, at *12 (C.D. Cal. Jan. 8, 2024) (where plaintiffs' counsel was a small law firm, the court "would expect [plaintiffs' counsel's] rates to be even lower than the median rates . . . as rates tend to increase

with firm size"); *Colony Cove Props., LLC v. City of Carson*, No. 14-cv-3242-PSG-PJW, 2016 WL 11756096, at *8 (C.D. Cal. Aug. 15, 2016) ("Courts have recognized that fees charged at large, national firms may exceed those of smaller, local firms.") (collecting cases); *Gomez v. Gates*, 804 F. Supp. 69, 76 (C.D. Cal. 1992) ("For a given type of work, lawyers in large firms charge institutional clients far more per hour than is charged by lawyers of the same skill and experience in small firms to individual clients."). Accordingly, the large firm rates cited by Plaintiffs' counsel are irrelevant.

Plaintiffs' counsel cites one case—using selective quotations that mischaracterize the opinion—to argue that firm type is irrelevant in setting rates and that civil rights attorneys should be awarded "premium rates" that are "charged only by a handful of firms in the area." *See* Mot. at 12 (citing *United States v. City & Cnty. of S.F.*, 748 F. Supp. 1416 (N.D. Cal. 1990), *aff'd in part,* 976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)). Contrary to Plaintiffs' mischaracterization, *City & County of San Francisco* merely stated that "public interest attorneys"—attorneys working at a "'nonprofit legal services organization'"—are "entitled to value their rates at the same level as corporate attorneys of equal caliber." 748 F. Supp. at 1431 (quoting *Blum*, 465 U.S. at 894). The distinction drawn was between public sector and private sector, not between private firms of different sizes. *See id.* And importantly, the phrase "premium rates, charged only by a handful of firms in the area"—which Plaintiffs' counsel attempts to paint as the standard this Court should apply, *see* Mot. at 12—was used only to summarize the defendants' argument in opposition to the fee motion, and the court ultimately rejected that argument. *See City & Cnty. of S.F.*, 748 F. Supp. at 1431.

In sum, Plaintiffs' counsel's claimed rates must be rejected because they are based on comparison to rates commanded by larger firms with national or international reach, which are not comparable to a local "general civil litigation"

9

firm like LiMandri & Jonna.  *See* Jonna Decl. ¶¶ 2, 79.[4]

### C. Plaintiffs' Counsel Improperly Relies on Rates in Patent Cases, Which Are Not Comparable to Civil Rights Cases

Plaintiffs' counsel states, without explanation or evidence, that "in 2023, [they] requested and were awarded higher rates, $1,260 for Mr. LiMandri and $1,140 for [Mr. Jonna]."  Jonna Decl. ¶ 81.  There is no indication what case of Plaintiffs' counsel's this statement refers to, or by whom the rates were awarded.  *See id.*[5]  Plaintiffs' counsel explains that these rates were "taken from the rate awarded in *Orthopaedic Hospital v. Encore Medical, L.P.*," *id.*, which is a patent case in which the court awarded an average hourly rate of $709.63 to patent litigators from Quinn Emmanuel, another large international law firm.  No. 3:19-cv-00970-JLS-AHG, 2021 WL 5449041, at *14 (S.D. Cal. Nov. 19, 2021).  Plaintiffs' counsel also cites another patent case, *CliniComp International, Inc. v. Cerner Corp.*, which awarded rates ranging from $610 to $1,465 for patent litigators from large firms Orrick Herrington & Sutcliffe and Shook Hardy & Bacon, which are international and national law firms, respectively. 17-cv-02479-GPC-DEB, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023).

Rates awarded to large firms in patent litigation—which is "particularly complex, and particularly costly," *F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 170 (2013) (Roberts, C.J., dissenting)—are irrelevant.  There is no authority provided to support Plaintiffs' counsel's reasoning that rates awarded in patent litigation should be applied to civil rights litigation.  To the contrary, determination of reasonable rates must be made based on comparison to attorneys performing "similar work."

---

[4] To the extent Plaintiffs' counsel relies upon the *Laffey* Matrix, which provides generalized guidelines for fees in the District of Columbia, that is not a reliable source for determining rates for a small San Diego firm.  *See* Schratz Decl. ¶¶ 44–52.

[5] It is possible that Plaintiffs' counsel is referring to the fee award from *Department of Fair Employment & Housing v. Cathy's Creations, Inc.*, No. BCV-18-102633 (Cal. Super. 2018).  Rates awarded in that case cannot be relied upon because, according to Plaintiffs' counsel, they ultimately failed to succeed on the merits and the fee award was vacated.  *See* Jonna Decl. ¶ 72.

1    *See $28,000.00 in U.S. Currency*, 802 F.3d at 1106.  Thus, to the extent that any

2    award has been provided to LiMandri & Jonna based on rates from patent cases, *see*

3    Jonna Decl. ¶ 81, that award is not persuasive.

> **D.    Rates Proffered by Plaintiffs' Counsel During Settlement
> Negotiations in Other Cases Are Irrelevant to Determination of
> Reasonable Rates**

6    Plaintiffs' counsel refers to rates purportedly "us[ed]" in negotiating a fee

7    settlement.  *See* Jonna Decl. ¶ 70.  But nowhere does Plaintiffs' counsel explain

8    what rates, if any, the defendants in those cases agreed were reasonable; rather, the

9    declaration provides total settlement amounts that were agreed upon in "full

10    satisfaction" of attorneys' fees, which also included a 30% discount from the

11    lodestar amount in one of the cases.  *Id.* ¶¶ 70–71.

12    Plaintiffs' counsel's vague assertion concerning "the amount [they] demanded

13    in their fee negotiations" is "irrelevant to counsels' actual reasonable hourly rate."

14    *See Notter v. City of Pleasant Hill*, No. 16-cv-04412-JSC, 2017 WL 5972698, at *4

15    (N.D. Cal. Nov. 30, 2017).  Furthermore, a negotiated fee settlement that has not

16    been subject to court scrutiny is not necessarily reasonable for purposes of a judicial

17    fee award.  *See Emond v. Murphy*, No. 18-cv-09040-JAK-JEM, 2019 WL

18    13039332, at *12 (C.D. Cal. Aug. 27, 2019) (holding a negotiated fee that is "out of

19    th[e] range a court would award" is "not a fair and reasonable settlement of the

20    attorneys' claim for fees"); *Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 1:02-cv-

21    06213-OWW-DLB, 2007 WL 1989097, at *2 (E.D. Cal. July 3, 2007) ("[A]lthough

22    a negotiated fee may represent a reasoned business decision to settle, a negotiated

23    fee that exceeds a reasonable fee for the attorneys' contribution may not be

24    approved.").  Plaintiffs' counsel's claim concerning a rate proffered during

25    settlement negotiations thus cannot be relied upon in determining a reasonable

26    hourly rate here.

27

28

**E.    Plaintiffs' Counsel Draws Improper Comparisons to Attorneys with Specialized Expertise**

Plaintiffs' counsel relies upon rates awarded to attorneys with far greater levels of experience and expertise.  For example, Plaintiffs' counsel relies heavily on this Court's fee decision in *Garnier v. Poway Unified School District*, No. 17-cv-2215-BEN, 2025 WL 3403370 (S.D. Cal. Oct. 20, 2025).  Counsel cites the top rate awarded in that case, $1,500, but fails to explain that this rate was awarded to Professor Pamela Karlan,[6] a Supreme Court advocate who was the co-director of Stanford Law School's Supreme Court Litigation Clinic and had argued before the Supreme Court more than twenty times.  *See id.* at *10.

The rate awarded to a highly specialized Supreme Court expert is irrelevant to determining the appropriate rates for Plaintiffs' counsel.  Take for example Mr. Jonna and Mr. Trissell, who were the primary timekeepers in this matter.  Mr. Jonna joined LiMandri & Jonna in 2013 (before which he practiced commercial and securities litigation for an unspecified period time) and Mr. Trissell joined the firm in 2014 shortly after his graduation from law school.  *See* Jonna Decl. ¶¶ 18, 23.  Notably, of the identified constitutional cases that LiMandri & Jonna has taken on since Mr. Jonna and Mr. Trissell joined the firm, all are from 2019 or later, except for one case from 2016.  *See id.* ¶¶ 3, 7.  This is likely because LiMandri & Jonna's constitutional practice expanded following the formation of a relationship with the Thomas More Society in 2019.  *See id.* ¶¶ 5–7.  Based on the information provided by Plaintiffs' counsel, it appears that the bulk of Mr. Jonna and Mr. Trissell's constitutional litigation experience dates back to only 2019.  *See id.*

---

[6] Professor Karlan earned her law degree from Yale Law School in 1984, after which she clerked for Justice Blackmun of the U.S. Supreme Court.  She is currently a Professor of Public Interest Law at Stanford Law School in addition to her leadership of the Supreme Court Litigation Clinic.  She has also twice served as a Deputy Assistant Attorney General in the Civil Rights Division of the U.S. Department of Justice and is the co-author of "leading casebooks" on constitutional law and constitutional litigation. *See Pamela S. Karlan*, https://law.stanford.edu/pamela-s-karlan/.

1    Further, Mr. Jonna and Mr. Trissell dedicate a substantial amount of their

2  practice at LiMandri & Jonna—which is a "general civil litigation practice," *id.* ¶

3  2—to non-constitutional litigation.  *See id.* ¶ 19 (Mr. Jonna "represent[s] corporate

4  and individual clients in complex civil litigation," and a "significant portion of [his]

5  practice focuses on representing plaintiffs in serious personal injury cases"); *id.* ¶

6  24 (the majority of Mr. Trissell's practice is in "high-profile constitutional law

7  cases *and* in pre-trial, post-trial, and appellate briefing," with "the rest of his

8  practice focused on general civil litigation") (emphasis added).  The same goes for

9  other attorneys working at LiMandri & Jonna, which, again, is a general civil

10 litigation practice.  *See* Jonna Decl. ¶ 2, 27–42.  LiMandri & Jonna attorneys are

11 therefore not comparable to the highly specialized Supreme Court advocate who

12 was awarded a rate of $1,500 in *Garnier*.  *See Astorga v. Cnty. of San Diego*, No.

13 3:21-cv-00463-BEN-KSC, 2023 WL 4748784, at *3 (S.D. Cal. July 25, 2023)

14 ("[A]lthough [plaintiff's counsel] has experience in civil rights cases, his own

15 declaration states that his area of expertise is in employment law.  Higher hourly

16 rates appear to be associated with attorneys who have significant civil rights

17 experience.").

18    Indeed, *Garnier* actually contradicts Plaintiffs' counsel's requested rates.

19 There, this Court credited evidence stating that "San Diego attorneys with 20+

20 years experience in specialty fields like free speech and civil rights generally

21 charge" over $750, with only "some" in that category commanding rates more than

22 $1,000.  *See Garnier*, 2025 WL 3403370, at *9.  The Court awarded an attorney

23 with "30 years of experience focusing on civil rights and First Amendment

24 litigation" a rate of $925, which was justified by that attorney's "specialized

25 expertise."  *Id.*  As described above, Mr. Jonna, Mr. Trissell, and other LiMandri &

26 Jonna attorneys are not comparable to an attorney with three decades of specialized

27 experience in civil rights and First Amendment litigation.  Based on *Garnier*, the

28 rates sought by Plaintiffs' counsel are excessive.

1   Other recent cases from the Southern District confirm that Plaintiffs' requested

2   rates are excessive.  For example, in a civil rights class action brought under 42

3   U.S.C. § 1983, *Fitzgerald v. Pollard*, the court awarded rates of $825 for partners

4   with 31–35 years of experience, $775 for a senior associate with 22 years of

5   experience, $775 for an attorney with 19 years of experience, and $525 for an

6   attorney with 4 years of experience.  No. 20-cv-848-JM-MSB, 2024 WL 4596401,

7   at *11 (S.D. Cal. Oct. 28, 2024).  In *Dunsmore v. San Diego County Sheriff's*

8   *Department* (cited by Plaintiffs' counsel), the court stated that the "'median'

9   litigation partner rate in San Diego is $400 per hour," the "upper third quartile is

10  $907 per hour in San Diego," and "the average litigation partner hourly rate is $568

11  in San Diego."  No. 20-cv-00406-AJB-DDL, 2025 WL 2301940, at *6 (S.D. Cal.

12  Aug. 8, 2025).  There, the court awarded a local partner-level attorney with

13  expertise in disability rights litigation a rate of $900.  *Id.* at *7.  And as recently as

14  2023—the year the instant case was initiated—this Court stated that "[a] $550.00

15  hourly rate is more appropriate for an attorney with partner level experience" or "an

16  attorney who is highly specialized in civil rights litigation."  *Astorga*, 2023 WL

17  4748784, at *4 (Benitez, J.).

18  Based on the experience and qualifications of Plaintiffs' counsel, the rates

19  requested are not in line with prevailing rates in the Southern District of California.

20  As explained in the Schratz Declaration, based on rates previously claimed by

21  Plaintiffs' counsel, this Court's reasoning in *Garnier*, and annual rate increases,

22  reasonable rates for the necessary, reasonably staffed timekeepers[7] are as follows:

23  $1,069 for Mr. LiMandri, $925 for Mr. Coughlin, $800 for Mr. Grissom, Mr. Jonna,

24  and Mr. Myers, $625 for Mr. Trissell, $550 for Mr. Brandon, $300 for Mr. Duke,

25  and $175 for Mr. Zavaro, Ms. Denworth, and Mr. Muldowny.  Schratz Decl. ¶¶ 78–

26  90.  These reasonable, prevailing rates should be adopted for purposes of

27

28  [7] As discussed below, the timekeepers not listed here should be excluded due
    to overstaffing.

calculating Plaintiffs' counsel's attorneys' fees.  *See id.* ¶ 178.

## V.  PLAINTIFFS' COUNSEL'S BILLED HOURS ARE UNREASONABLE

"In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).  "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

If a court determines that some hours billed are not reasonable, it may exclude those hours by either conducting an "hour-by-hour analysis" of the fee request or make an "across the board percentage cut." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013).  "When faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.*

As explained below, the excessive amount of hours, duplicative work, large number of attorneys and support staff, faulty billing practices, and billing for non-recoverable tasks support an overall reduction of $1,872,240.99 from Plaintiffs' proffered lodestar amount of $3,641,325.30.  *See* Schratz Decl. ¶ 178.[8]  In addition, the fees should be reduced by a further 10%, or $176,908.43, to exclude fees incurred in litigating the severed, unadjudicated Title VII claims.  The appropriate reductions result in a final adjusted lodestar of **$1,592,175.88.**

### A.    The Hours Billed are Excessive on Their Face

Plaintiffs' counsel in this case has billed 3,807.15 hours since this case was opened approximately three years ago.  *Garnier* is again instructive, and

---

[8] $3,641,325.30 minus reductions totaling $1,872,240.99 results in Mr. Schratz's recommended fees of $1,769,084.31.  *See* Schratz Decl. ¶ 178.

1    demonstrates that the number of hours billed is excessive.  There, counsel for the

2    plaintiffs billed 1,813.45 hours.[9]  This Court remarked that the total hours billed

3    were "substantial" but were nonetheless reasonable due to the "case complexity"

4    and breadth of the work—including pre-trial litigation, trial, a first appeal, Supreme

5    Court litigation, and a second appeal—which occurred over the course of "nearly

6    eight years" and "involved novel First Amendment questions."  *See* 2025 WL

7    3403370, at *7–8.  Plaintiffs' counsel here has billed more than *double* what the

8    Court found reasonable in *Garnier*; and that litigation lasted more than *twice* as

9    long and included two Ninth Circuit appeals, a successful petition for writ of

10   certiorari, and merits briefing and argument before the Supreme Court.  *See id.* at

11   *1, 7–8.  And unlike *Garnier*, the instant case never made it to trial, which is a

12   phase of litigation that particularly drives up the number of hours billed.  *See, e.g.*,

13   *Staton v. City & Cnty. Of Butte-Silver Bow*, No. 20-cv-60-BU-BMM, 2024 WL

14   2819335, at *5 (D. Mont. June 3, 2024) (recognizing "the arduous and time-

15   intensive nature of trial").

16       Plaintiffs' counsel contends that the high number of hours billed are the result

17   of the filing of several dispositive motions by separate defendants across three

18   different versions of the complaint, unsuccessful attempts to settle, and

19   "intransigence."  They argue that these factors render their hours "necessarily

20   reasonable."  *See* Mot. at 20.  But the authority they cite does not support this novel

21   proposition.  *See Durruthy v. Charter Commc'ns, LLC*, No. 3:20-cv-01374-W-

22   MSB, 2021 WL 6883423, at *7–8 (S.D. Cal. Sept. 30, 2021) (finding hours billed

23   reasonable given the complexity of the issues raised and non-duplicative nature of

24   briefs filed); *Equal Emp. Opportunity Comm'n v. Union Camp Corp.*, 536 F. Supp.

25   64, 65 (W.D. Mich. 1982) (concluding that the plaintiff's case was "frivolous,

26   unreasonable, and without foundation" but awarding a reduced amount of

27   _____

28       [9] Plaintiffs' counsel in *Garnier* billed 1,767.45 hours through the life of the
     case, plus 46 hours for fee litigation.  2025 WL 3403370, at *7.

1  attorneys' fees to the defendant, whose fee request seemed "high").  There is no

2  authority to support the idea that protracted litigation makes any amount of billed

3  hours per se reasonable.

4      Scrutinizing Plaintiffs' counsel's billing records makes clear why the hours

5  billed here are excessive.  As discussed in greater detail below, "[t]he records are

6  replete with examples of overbilling, overstaffing, and overreaching."  *See Grace*

7  *Church of N. Cnty. V. City of San Diego*, No. 07-cv-0419, 2008 WL 11508664, at

8  *12 (S.D. Cal. Sept. 9, 2008).

9      **B.    Unrecoverable Media and Public Relations Work**

10     Plaintiffs' counsel has billed for media and publicity—including responding to

11 media inquiries, preparing and editing press releases, preparing clients for media

12 interviews, traveling to and participating in media interviews, and participating in

13 public-facing activities like webinars for the Thomas More Society, *see* Ex. 25 to

14 Schratz Decl.—"which are improper bases for a fee award."  *See Wagnon v.*

15 *Rocklin Unified Sch. Dist.*, No. 2:17-cv-01666-CSK, 2025 WL 1569210, at *10

16 (E.D. Cal. June 3, 2025).  As the Ninth Circuit has explained, "[m]edia contact" is

17 an activity that "attorneys generally do at their own expense."  *Gates v. Gomez*, 60

18 F.3d 525, 535 (9th Cir. 1995), *as amended* (Aug. 3, 1995); *see also Greater Los*

19 *Angeles Council on Deafness v. Cmty. Television of S. California*, 813 F.2d 217,

20 221 (9th Cir. 1987) ("The court reasonably disallowed time spent on publicity[.]");

21 *Lehr v. City of Sacramento*, No. 2:07-cv-01565-MCE, 2013 WL 1326546, at *12

22 (E.D. Cal. Apr. 2, 2013) ("Hours spent for media contacts"—for example preparing

23 for and making media appearances—"are generally not compensable.").

24     As this Court previously reasoned, in the absence of evidence to the contrary,

25 public relations work like "answering questions from various media outlets does

26 not seem reasonably necessary to the prosecution of" a civil rights case.  *See*

27 *Astorga*, 2023 WL 4748784, at *7.  There are some narrow circumstances, not

28 present here, in which public relations activities were "directly and intimately

related to the successful representation of a client"—for example, lobbying a public entity for the approval of a consent decree.  *See Davis v. City & Cnty. Of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).  However, the District Court must make a finding that specific public relations activities were necessary based on the circumstances of the litigation; "public relations work which did not contribute, directly and substantially, to the attainment of [Plaintiffs'] litigation goals" is not recoverable.  *See id.*  Plaintiffs' counsel has made no effort, whether in briefing or billing records, to justify the hours billed for general media relations, nor could they.  *See Hess v. Ramona Unified Sch. Dist.*, No. 07-cv-0049-W-CAB, 2008 WL 5381243, at *5 (S.D. Cal. Dec. 19, 2008) ("responding to media contacts and facilitating media coverage of the case" were not recoverable as attorneys' fees where there was no evidence that the media coverage affected the litigation).  Accordingly, Plaintiffs' media relations work is not recoverable and should be disallowed entirely.  *See* Schratz Decl. ¶¶ 137–139, 178.

### C.  Unrecoverable Work in Separate Cases

Plaintiffs' counsel billed for work done in entirely separate cases, including filing amicus briefs and participating in or attending proceedings in *California v. Chino Valley Unified School District*, No. CIVSB2317301 (Cal. Super. 2023); *Parents Protecting Our Children v. Eau Claire Area School District*, No. 23-1534 (7th Cir. 2024); and *Mae M. v. Komrosky*, No. G064332 (Cal. App. 2024).  Schratz Decl. ¶¶ 140–142; Ex. 26 to Schratz Decl.  Work performed in separate cases before other courts is not recoverable in the instant case.  As the court explained in *Albani v. Albani*, "awarding attorneys' fees for work done for another case and before another court would be improper."  No. 15-cv-1980, 2016 WL 3074407, at *1 (S.D. Cal. May 31, 2016); *see also F.D.I.C. v. Lake Elsinore 521, LLC*, No. 2:11-cv-00386-GMN, 2011 WL 5240164, at *3 (D. Nev. Nov. 1, 2011) ("This

1  Court is not going to award attorney's fees with respect to work done on another

2  case, even if the subject matter is similar.").

3      Because this work is not recoverable, the hours spent on other matters not

4  before this Court should be disallowed entirely.  *See* Schratz Decl. ¶¶ 140–142,

5  178.

### D.    Overstaffing

7      "A district court may reduce the hours claimed where the documentation is

8  inadequate or the time was not reasonably expended, such as where the record

9  reflects duplicative efforts or excessive staffing."  *Martinez v. Costco Wholesale*

10  *Corp.*, No. 19-cv-1195-WVG, 2023 WL 2229267, at *3 (S.D. Cal. Feb. 24, 2023)

11  (citation modified); *see also Chalmers*, 796 F.2d at 1210; *Grace Church*, 2008 WL

12  11508664, at *12.

13      The record establishes that this case was overstaffed.  A total of 24

14  timekeepers billed on behalf of Plaintiffs, including seven principals, five senior

15  attorneys, six associates, five paralegals, and one law clerk.  Schratz Decl. ¶ 92.  Of

16  these, 13 timekeepers billed less than 50 hours each.  *Id.* ¶ 98.  These "temporary

17  staff effectively rotate through a matter, requiring orientation time and effort from

18  both orientor and orientee that does not accrue to the long-term benefit of the matter

19  or perform discrete work that is duplicated or redone by another timekeeper."  *Id.* ¶

20  93.  This demonstrates "excessive staffing," and the associated fees should be

21  excluded.  *See Chalmers*, 796 F.2d at 1210; *Martinez*, 2023 WL 2229267, at *3;

22  *Grace Church*, 2008 WL 11508664, at *12.  Excluding all excessive timekeepers

23  results in a lodestar reduction of $162,244.80.  *See* Schratz Decl. ¶ 178; Ex. 34 to

24  Schratz Decl.

### E.    Duplicative Deposition Attendance

26      "Duplicative attendance at depositions is rarely warranted as only one attorney

27  should take the lead in questioning or defending the witness and the other

28  timekeepers in attendance typically do little, if anything, of substantive benefit to

1    the client or case." Schratz Decl. ¶ 100. The record here establishes excessive and

2    duplicative attendance at depositions.

3        There are several instances in which three or four attorneys billed time to

4    attend a given deposition. *See* Schratz Decl. ¶¶ 100–117. "[H]aving two attorneys

5    present at a deposition is not necessarily duplicative, especially if the deponent is a

6    key witness." *Munoz v. California Bus. Bureau, Inc.*, No. 1:15-cv-1345-BAM,

7    2017 WL 3009210, at *6 (E.D. Cal. July 14, 2017). But there is no indication that

8    three or more attorneys were needed at any single deposition, nor is it reasonable to

9    have more than one attorney at less important depositions. *See Sierra Club v.*

10   *Johnson*, No. 08-cv-01409-WHA, 2010 WL 147951, at *11 (N.D. Cal. Jan. 12,

11   2010) ("Ordinarily, no more than one attorney and one paralegal need be present at

12   a deposition; more will normally be deemed excessive."). Thus, only the

13   attendance of two attorneys for the depositions of the Plaintiffs and one attorney for

14   other depositions should be allowed. *See* Schratz Decl. ¶¶ 116–117, 178.

15       **F.**    **Excessive Hours on Document Drafting**

16        The record establishes that Plaintiffs' counsel spent excessive hours on

17   document preparation. For example, counsel spent 187.30 hours alone on drafting

18   the complaint. Schratz Decl. ¶ 149. Other excessive billing includes 97.2 hours for

19   the motion for preliminary injunction, 22.8 hours for the First Amended Complaint,

20   27.6 hours for the Second Amended Complaint, 46 hours for the motion for class

21   certification, 106.4 hours for the motion for summary judgment, and 145.8 hours

22   for the renewed motion for summary judgment. *Id.* "While it is admittedly

23   difficult to quantify how many hours were actually needed or necessary for each of

24   these tasks, the hours do not appear to be reasonable." *Id.* ¶ 151. Therefore, a

25   modest 10 percent reduction in these hours is appropriate. *See id.* ¶¶ 151–152, 178.

26       **G.**    **Excessive Conferencing**

27        "Although attorneys and staff within a firm need to coordinate work and

28   discuss strategy, when done to excess, such intra-office conferencing" can lead to

overbilling. Schratz Decl. ¶ 118. "Some strategic conferencing among attorneys does have value, but not when done to excess." *Id.* ¶ 121. Thus, "'the law does not require the district court to compensate for all the time [plaintiff's] counsel spent conferring among themselves.'" *Martinez*, WL 2229267, at *4 (quoting *Terry v. City of San Diego*, 583 Fed. App'x 786, 791 (9th Cir. 2014)) (alteration in original). Courts typically "discount or altogether exclude" excessive "intraoffice communications." *See Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 982 (S.D. Cal. 2014) (collecting cases).

In an efficiently billed case, the total amount of intraoffice conference typically totals less than 4% of the total hours billed. Schratz Decl. ¶ 128. Here, several timekeepers billed far more than 4% of their total hours for conferencing. For example, Mr. LiMandri and Mr. Myers spent 44.7% and 43.8%, respectively, of their total billed hours on conferencing. *Id.* ¶ 119. All intraoffice conferencing above 4% should be disallowed. *See id.* ¶¶ 128–129, 178.

### H.   Block Billing

"[B]ecause block billing makes it more difficult to determine how much time was spent on particular activities," district courts have "authority to reduce hours that are billed in block format" using percentage cuts to block-billed entries. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Block billing occurs when "one amount of time is shown for working on more than one discrete task." *Gonzalez*, 729 F.3d at 1202 (citation modified). Reductions to block-billed entries between 10–30% are appropriate and account for the inflation of time caused by block billing. *See Welch*, 480 F.3d at 948 (explaining that "the California State Bar's Committee on Mandatory Fee Arbitration . . . concluded that block billing 'may increase time by 10% to 30%'"); *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming 30% reduction for block billed entries).

21

1    Here, there are several instances of improper blocked billing where the time

2    spent on each specific task cannot be scrutinized.  *See* Schratz Decl. ¶¶ 163–171;

3    Ex. 32 to Schratz Decl.  A modest 10% reduction to the block-billed entries should

4    be applied.  *See* Schratz Decl. ¶¶ 170–171, 178.

5        **I.    Overly Vague Billing Entries**

6        When billing entries lack sufficient specificity, the Court is left to "play an

7    impossible guessing game."  *Martinez*, 2023 WL 2229267, at *6.  Thus, where

8    billing entries are so vague that the Court cannot "determine whether the hours

9    reflected therein were reasonably expended," those hours should be reduced.

10   *United States v. Prism Autism Found.*, No. 3:19-cv-00043-W-BLM, 2022 WL

11   5264493, at *5 (S.D. Cal. Oct. 6, 2022) (citing *Kailikole v. Palomar Cmty. Coll.*

12   *Dist.*, 2020 WL 6203097, at *5 (S.D. Cal. Oct. 22, 2020)).

13       Task descriptions such as "'[r]esearch issues', 'attention to file', 'discovery',

14   'prepare for trial', and similar statements are not specific enough to let the reader

15   know what was done."  Schratz Decl. ¶ 145 (quoting State Bar of California

16   Arbitration Advisory, No. 2003-01, at 7 (Jan. 29, 2003)).  There are several

17   examples of these types of vague task descriptions throughout counsel's billing

18   records.  *See* Schratz Decl. ¶ 143; Ex. 27 to Schratz Decl.

19       Similarly to block billing, vague billing can lead to inflation of time;

20   accordingly, a percentage cut to vague entries is also appropriate.  *See Welch*, 480

21   F.3d at 948.  A modest 20% reduction to vaguely billed tasks should be applied.

22   *See* Schratz Decl. ¶¶ 147–148, 178; *Amphastar Pharms. Inc. v. Aventis Pharma SA*,

23   No. 5:09-cv-00023-SHK, 2020 WL 8680070, at *10 (C.D. Cal. Nov. 13, 2020)

24   ("[A] twenty percent reduction is appropriate here because the instances of block

25   billing and vague time entries were significant[.]").

26       **J.    Unrecoverable Administrative and Clerical Work**

27       Purely clerical tasks are not recoverable in a motion for attorney's fees and

28   should instead be subsumed in normal overhead costs.  *See Missouri v. Jenkins*, 491

1   U.S. 274, 288 (1989); *Nadorajah v. Hoder*, 569 F.3d 906, 921 (9th Cir. 2009);

2   *Fitzgerald*, 2024 WL 4596401, at *12. Plaintiffs' counsel billed a total of 27 hours

3   on clerical or administrative tasks. *See* Schratz Decl. ¶¶ 134–136, 178; Ex. 24 to

4   Schratz Decl. All nonrecoverable hours spent performing clerical tasks should be

5   disallowed. *See* Schratz Decl. ¶¶ 135–136, 178.

6          **K.    Use of a 0.2-Hour Minimum Billing Increment**

7          "Generally speaking, 0.1 hour is the standard minimum billing unit in current

8   law practice." Schratz Decl. ¶ 153. Across Plaintiffs' counsel's 4,003 billing

9   entries, "there were *no* billing entries for 0.1 hour," yet "[t]here were 1,587 billing

10  entries for 0.2-hours. This means that 40 percent of the entries used this 0.2-hour

11  minimum." *Id.* ¶ 154. Minimum billing increments greater than 0.1 can lead to

12  inflation of billed time by 15 to 25 percent. *Id.* ¶ 155. Accordingly, a modest 15

13  percent reduction should be applied here. *See id.* ¶¶ 155, 161–162, 178.

14         **L.    Unadjudicated Employment Discrimination Claims**

15         As discussed above, Plaintiffs cannot recover fees incurred in litigating their

16  Title VII claims against EUSD, which were severed, stayed, and have not been

17  adjudicated. At the very least, those fees cannot be recovered from State

18  Defendants.

19         As explained in the Bruck Declaration, counsel for the State Defendants

20  identified the billing entries associated with prosecuting the Title VII claims. Bruck

21  Decl. ¶¶ 3–7. Plaintiffs' counsel spent 379.4 hours, for a total of $405,925.20 in

22  claimed fees, *see* Schratz Decl. ¶ 177, which is 11.15 percent of Plaintiffs'

23  counsel's original claimed lodestar of $3,641,325.30.[10] Applying a conservative 10

24  percent reduction—to account for potential errors by defense counsel in identifying

25

26

27         [10] As stated above, Mr. Schratz has not opined on whether disallowance of
    the Title VII-related fees is appropriate because it constitutes a legal question
28  outside the scope of his audit.

employment-related billing entries—results in a lodestar reduction of $176,908.43.[11]

In total, the above reductions to the rates and hours billed result in an adjusted lodestar amount of **$1,592,175.88**.

## VI.  UPWARD ADJUSTMENT TO THE LODESTAR IS NOT WARRANTED

The lodestar is presumptively reasonable.  *Perdue*, 559 U.S. at 552.  Only "rare" and "exceptional" circumstances justify deviating from the lodestar.  *Id.* at 552.  The burden of justifying an enhancement rests on the fee applicant, who "must produce 'specific evidence' that supports the award."  *Id.* at 553 (quoting *Blum*, 465 U.S. at 901).

The factors typically considered in assessing the reasonableness of a fee request and whether an enhancement is warranted—including the time spent, the novelty of the legal issues, the attorney's skill and expertise, the undesirability of the case, and other factors pertaining to the nature of the litigation, *see Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)—are largely subsumed by the lodestar calculation.  *See Perdue*, 559 U.S. at 552–55 ("[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.").  A deviation from the lodestar may be warranted "(1) where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value; (2) where the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted; and (3) where extraordinary circumstances involve exceptional delay in the payment of fees."  *Garnier*, 2025 WL 3403370, at *10 (citing *Perdue*, 559 U.S. at 555–56).

Plaintiffs request a 1.25 multiplier but provide no justification for that request. They merely state in conclusory fashion that they are deserving of rates paid to "the

---

[11] This figure was calculated by taking 10 percent of Mr. Schratz's recommended fee award of $1,769,084.31.

1  most exceptional lawyers in the entire State" based on "the nature of this case" and

2  the "excellent results" obtained.  Mot. at 21.  These baseless assertions do not

3  support a deviation from the lodestar, which already accounts for the appropriate

4  rate.  "[T]he record does not show that the lodestar fails to capture counsel's true

5  market value or that the costs award cannot address any extraordinary expense."

6  *See Garnier*, 2025 WL 3403370, at *11.

7       Plaintiffs also cite authority stating that a multiplier is warranted where the

8  case is "extremely undesirable."  *See Guam Soc'y of Obstetricians & Gynecologists*

9  *v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (citation modified).  However, they

10  provide no explanation of whether the instant case is undesirable.  And given that

11  Plaintiffs' counsel affirmatively seeks out religious liberty cases like this one and

12  has formed a partnership with an organization focusing almost exclusively on such

13  cases, *see* Jonna Decl. ¶¶ 3–7, it is hard to see how the instant case could be

14  considered undesirable to Plaintiffs' counsel.  Nor is there any evidence indicating

15  that "no other attorney would have accepted the case."  *See Guam Soc'y*, 100 F.3d

16  at 697 (citation modified).

17       Because Plaintiffs have failed to provide "specific evidence" that supports a

18  deviation from the lodestar, their requested enhancement must be denied.  *See*

19  *Perdue*, 559 U.S. at 553.

20                           **CONCLUSION**

21       Because Plaintiffs are not currently the prevailing party under section 1988,

22  their motion for attorneys' fees must be denied in its entirety.  In the alternative,

23  Plaintiffs should be awarded only **$1,592,175.88** in attorneys' fees to account for

24  the unadjudicated employment discrimination claims, unreasonably high rates

25  requested, billing for unrecoverable work, improper billing practices, and

26  inefficient and excessive staffing of the matter.

27

28

1    Dated: February 23, 2026                Respectfully submitted,

2                                             ROB BONTA
                                              Attorney General of California
3                                             DARRELL W. SPENCE
                                              Supervising Deputy Attorney General
4
                                              /s/ Katherine Bruck
5                                             _____
                                              KATHERINE BRUCK
6                                             Deputy Attorney General
                                              *Attorneys for State Defendants*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' Opposition to Motion for Attorneys' Fees  (3:23-cv-0768-BEN-VET)

# CERTIFICATE OF SERVICE

Case Name:    **Mirabelli et al. v. Olson, et al.**    No.    **3:23-cv-00768-BEN-VET**

I hereby certify that on <u>February 23, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 13, 2026</u>, at San Francisco, California.

<table>
<tr><td>Christopher R. Irby</td><td><i>S/ Christopher R. Irby</i></td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SA2024300204
44964008