Rob Bonta
Attorney General of California
Darrell W. Spence
Supervising Deputy Attorney General
State Bar No. 248011
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone: (916) 210-6089
  Fax: (916) 324-5567
  E-mail: Darrell.Spence@doj.ca.gov
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**DECLARATION OF ELIZABETH SANDERS RE NOTICE OF INJUNCTION ORDER**<br><br>Courtroom: 5A<br>Judge: The Honorable Roger T. Benitez<br>Trial Date:<br>Action Filed: 4/27/2023 |

I, Elizabeth Sanders, declare:

1.     I am over the age of 18 and am competent to make this declaration. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2.     I am the Director of the Communications Division at the California Department of Education (CDE).

3.     On December 22, 2025, the Court entered an Order granting a permanent injunction in this action.

1

4.      Pursuant to the Court's Order, on March 3, 2026, I caused a Notice of Court Order to be provided to all superintendents of county offices of education, school districts, and State Special Schools, as well as the lead administrators of charter schools in California.  The Notice was accompanied by true and correct copies of this Court's Order Granting Plaintiffs' Motion for a Class-Wide Permanent Injunction, dated December 22, 2025; the Ninth Circuit's order granting a stay pending appeal of the permanent injunction, dated January 5, 2026; and the Supreme Court's order vacating in part the Ninth Circuit's order, dated March 2, 2026.  A true and correct copy of the Notice of Court Order and enclosures is attached as **Exhibit A**.

5.      The Notice of Court Order was transmitted to all of the recipients mentioned above by electronic mail.

6.      A true and correct copy of the cover email transmitting the Notice of Court Order is attached as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 6, at Richmond, California.

Elizabeth Sanders

Digitally signed by Elizabeth Sanders
Date: 2026.03.06 10:04:11 -08'00'

Elizabeth Sanders

Declaration of Elizabeth Sanders re Notice of Injunction Order  (3:23-cv-00768-BEN-VET)

# EXHIBIT A



**CALIFORNIA DEPARTMENT OF EDUCATION**

**TONY THURMOND**
*STATE SUPERINTENDENT OF PUBLIC INSTRUCTION*

1430 N STREET, SACRAMENTO, CA 95814-5901 • 916-319-0800 • WWW.CDE.CA.GOV

March 3, 2026

Dear County and District Superintendents and Charter School Administrators:

## Notice of Court Order in the Case of *Mirabelli v. Olson*

The District Court for the Southern District of California has ordered that the California Department of Education provide notice to you of the attached (1) Order Granting Plaintiffs' Motion for a Class-Wide Permanent Injunction in the case of *Mirabelli v. Olson*, dated December 22, 2025. Please also find attached (2) an Order from the U.S. Court of Appeals for the Ninth Circuit granting a stay pending appeal of the district court's permanent injunction, dated January 5, 2026, and (3) an Opinion from the U.S. Supreme Court vacating the Ninth Circuit's stay with respect to the parent plaintiffs in *Mirabelli v. Olson*, dated March 2, 2026, allowing the Ninth Circuit's stay to remain in effect as to the public school employee plaintiffs.

As a result of the three orders, the district court's December 22, 2025, Order Granting Plaintiffs' Motion for a Class-Wide Permanent Injunction is currently in effect as to the class of parents and guardians certified by the district court.

Sincerely,

*Signed by*

David Schapira
Chief Deputy Superintendent
Chief of Staff

Ingrid Roberson
Chief Deputy Superintendent
California Department of Education



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,<br><br>  Defendants. | Case No.: 3:23-cv-0768-BEN-VET<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR A CLASS-WIDE PERMANENT INJUNCTION** |

# I.    **INTRODUCTION**

Plaintiffs Elizabeth Mirabelli, Lori Ann West, Jane Roe, and Jane Boe ("Teacher Plaintiffs"), and Plaintiffs John Poe, Jane Poe, John Doe, and Jane Doe ("Parent Plaintiffs"), brought this action under 42 U.S.C. § 1983 seeking injunctive and declaratory relief against Defendants Attorney General Rob Bonta ("AG Bonta"), Defendants State Superintendent Tony Thurmond and State Board of Education Members Linda Darling-Hammond, Cynthia Glover Woods, Francisco Escobedo, Brenda Lewis, James J. McQuillen, Sharon Olken, Gabriela Orozco-Gonzalez, Kim Pattillo Brownson, Haydee Rodriguez, Alison Yoshimoto-Towery, and Anya Ayyappan ("CDE Defendants").

Before this Court is Plaintiffs' Motion for Summary Judgment and for a Class-Wide Permanent Injunction. The Court heard oral argument on the motion on November 17, 2025. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** the Motion.

# II.    **PERMANENT INJUNCTION**

**IT IS HEREBY ORDERED** that:

1.    Defendants Attorney General Rob Bonta, State Superintendent Tony Thurmond and State Board of Education Members Linda Darling-Hammond, Cynthia Glover Woods, Francisco Escobedo, Brenda Lewis, James J. McQuillen, Sharon Olken, Gabriela Orozco-Gonzalez, Kim Pattillo Brownson, Haydee Rodriguez, Alison Yoshimoto-Towery, and Anya Ayyappan, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are enjoined from implementing or enforcing: (1) the Privacy Provision of the California Constitution, Cal. Const. art. I, § 1; (2) any other provision of California law, including equal protection provisions such as Cal. Educ. Code §§ 200, 220, Cal. Gov. Code § 11135; or (3) any regulations or guidance, such as the 2016 "Legal Advisory regarding application of California's antidiscrimination statutes to transgender youth in schools" and accompanying FAQ page, or Cal. Code Regs., tit.

5, §§4900-4965, or the newly produced PRISM cultural competency training, in such a manner as to:

(a): permit or require any employee in the California state-wide education system from misleading the parent or guardian of a minor child in the education system about their child's gender presentation at school, whether by: (i) directly lying to the parent; (ii) preventing the parent from accessing educational records of the child; or (iii) using a different set of preferred pronouns/names when speaking with the parents than is being used at school;

(b): permit or require any employee in the California state-wide education system to use a name or pronoun to refer to that child that do not match the child's legal name and natal pronouns, where a child's parent or legal guardian has communicated their objection to such use;

(c): require any employee in the California state-wide education system to use a name or pronoun to refer to a child that do not match the child's legal name and natal pronouns while concealing that social gender transition from the child's parents, over the employee's conscientious or religious objection;

(d): or in any way interfere with a teacher or other school administrator, counselor or staff from communicating to parents that his, her, or their child has manifested a form of gender incongruity such as changing preferred names or pronouns.

2.     Defendants shall provide forthwith, by personal service or otherwise, actual notice of this order to all personnel who are responsible for implementing or enforcing the enjoined provisions. Within 20 days, the government shall file a declaration establishing proof of such notice.

3.     Defendants shall include in a prominent place in PRISM training materials, and in any other state-created or approved instruction on the gender-related rights of student and faculty, the following statement:

**"Parents and guardians have a federal constitutional right to be informed**

1  **if their public school student child expresses gender incongruence.  Teachers and**
2  **school staff have a federal constitutional right to accurately inform the parent or**
3  **guardian of their student when the student expresses gender incongruence.**
4  **These federal constitutional rights are superior to any state or local laws, state or**
5  **local regulations, or state or local policies to the contrary."**

6      4.      Further, because enjoining Defendants from enforcing unconstitutional
7  policies will impose no financial burden, Plaintiffs are not required to post a bond or
8  undertaking.

9        **IT IS SO ORDERED.**

10  DATED:    December 22, 2025

                            **HON. ROGER T. BENITEZ**
11                              United States District Judge

ORDER GRANTING MOTION FOR CLASS-WIDE PERMANENT INJUNCTION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual; LORI ANN WEST, an individual; JANE ROE, an individual, on behalf of herself and all others similarly situated; JANE BOE, an individual, on behalf of herself and all others similarly situated; JOHN POE, an individual, on behalf of himself and all others similarly situated; JANE POE, an individual on behalf of herself and all others similarly situated; Dr JOHN DOE, an individual, on behalf of himself and all others similarly situated; Miss JANE DOE, an individual, on behalf of herself and all others similarly situated, | No. 25-8056 D.C. No. 3:23-cv-00768-BEN-VET Southern District of California, San Diego ORDER |

                Plaintiffs - Appellees,

    v.

ROB BONTA, in his official capacity as
Attorney General of California; TONY
THURMOND, in his official capacity as the
California State Superintendent of Public
Instruction; LINDA DARLING-
HAMMOND, in her official capacity as
President of the California State Board of
Education; CYNTHIA GLOVER WOODS,
in her official capacity as Vice President of
the California State Board of Education;
FRANCISCO ESCOBEDO, in his official
capacity as a member of the California State
Board of Education; BRENDA LEWIS, in
her official capacity as a member of the
California State Board of Education;
JAMES J. MCQUILLEN, in his official

capacity as a member of the California State
Board of Education; SHARON OLKEN, in
her official capacity as a member of the
California State Board of Education;
GABRIELA OROZCO-GONZALEZ, in her
official capacity as a member of the
California State Board of Education; KIM
PATTILLO BROWNSON, in her official
capacity as a member of the California State
Board of Education; HAYDEE
RODRIGUEZ, in her official capacity as a
member of the California State Board of
Education; ALISON YOSHIMOTO-
TOWERY, in her official capacity as a
member of the California State Board of
Education; ANYA AYYAPPAN, in her
official capacity as a member of the
California State Board of Education,

                Defendants - Appellants,

and

MARK OLSON, in his official capacity as
President of the EUSD Board of Education,
FRANK HUSTON, in his official capacity
as Vice President of the EUSD Board of
Education, JOAN GARDNER, in her
official capacity as a member of the EUSD
Board of Education, DOUG PAULSON, in
his official capacity as a member of the
EUSD Board of Education, ZESTY
HARPER, in her official capacity as a
member of the EUSD Board of Education,
LUIS RANKINS-IBARRA, in his official
capacity as Superintendent of EUSD, JOHN
ALBERT, both in his personal capacity and
in his official capacity as Assistant
Superintendent of EUSD, TRENT SMITH,
both in his personal capacity and in his

official capacity as Director of Integrated
Student Services for EUSD, TRACY
SCHMIDT, both in her personal capacity
and in her official capacity as Director of
Integrated Student Supports for EUSD,
STEVE WHITE, both in his personal
capacity and in his official capacity as
Principal of Rincon Middle School at
EUSD, NAOMI PORTER, in her official
capacity as a member of the California State
Board of Education, ESCONDIDO UNION
SCHOOL DISTRICT, a local educational
agency,

          Defendants.

Before: Mary H. Murguia, Chief Judge, and Andrew D. Hurwitz and Salvador
Mendoza, Jr., Circuit Judges.

PER CURIAM:

     Plaintiff-Appellees are four parents and four Escondido Union School

District ("EUSD") teachers who challenge a host of California state laws that

Plaintiffs refer to as "the State's Parental Exclusion Policies."  According to

Plaintiffs, these challenged laws are described in the California Department of

Education's 2016 "Legal Advisory regarding application of California's

antidiscrimination statutes to transgender youth in schools" and its accompanying

FAQs.  The challenged policies allegedly violate teachers' and parents'

constitutional rights by requiring teachers to hide a student's gender nonconformity

and social transition, including from the student's parents, unless the student

            25-8056

consents to disclosure of that information.  Plaintiffs bring individual claims under
Title VII of the Civil Rights Act and a class action through 42 U.S.C. § 1983,
seeking injunctive and declaratory relief against California state officials ("State
Appellants"), EUSD, and several EUSD officials.[1]  Plaintiffs sought to certify a
class action with four subclasses that share common questions premised on: (1)
violation of teachers' First Amendment free speech rights; (2) violation of
teachers' First Amendment free exercise rights; (3) violation of parents' Fourteenth
Amendment substantive due process rights; and (4) violation of parents' First
Amendment free exercise rights.

The district court certified the class of all California public school
employees and parents of children attending public school who object to the
challenged state laws under Rule 23(b)(2).  On December 22, 2025, the district
court granted permanent injunctive relief to all its members.  The district court
found that various California laws violate parents' substantive due process and free
exercise rights to be informed "after a student says or dresses in a way that
suggests a non-conforming gender identity."  The district court also concluded that
public school employees have free speech and free exercise rights to provide
information about a student's gender expression to the student's parents.

---

[1] Plaintiffs' claims against EUSD and EUSD officials were severed and stayed by
the district court.  This appeal only concerns Plaintiffs' claims against the State
Appellants.

Based on these conclusions, the court entered an injunction that bars State Appellants from "implementing or enforcing" "the Privacy Provision of the California Constitution . . . [and] any other provision of California law" that would "permit or require any employee in the California state-wide education system [to] mislead[] [a] parent or guardian . . . about their child's gender presentation at school." The injunction prohibits State Appellants from "permit[ting] or requir[ing] any employee in the California state-wide education system to use a name or pronoun to refer to [a] child that [does] not match the child's legal name and natal pronouns, where a child's parent or legal guardian has communicated their objection to such use." The injunction directs the State to include a notice in educator training materials that: "Parents and guardians have a federal constitutional right to be informed if their public school student child expresses gender incongruence."

The State Appellants now move for an emergency stay of the district court's permanent injunction. For the reasons discussed herein, we grant the motion.

## LEGAL STANDARD

When deciding whether to grant a stay pending appeal, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies.'"

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (quoting *Hilton v. Braunskill*, 481

U.S. 770, 776 (1987)).  "The first two factors . . . are the most critical."  *Id.* at 434.

## I.

After considering the record at this preliminary stage, we conclude that the

State Appellants have shown that "there is a substantial case for relief on the

merits."  *Simon v. City & Cnty. of S.F.*, 135 F.4th 784, 816 (9th Cir. 2025) (quoting

*Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012)).

## A.

First, we have serious concerns with the district court's class certification

and injunction that covers every parent of California's millions of public school

students and every public school employee in the state.  Courts across the country,

including in our circuit, have routinely rejected similar claims by parents and

teachers due to lack of standing.  *See, e.g.*, *City of Huntington Beach v. Newsom*,

790 F. Supp. 3d 812, 823–24 (C.D. Cal. 2025) (dismissing for lack of standing

parents' claim where parents did not allege that their own child's factual

circumstance implicated California Assembly Bill 1955's restriction on informing

parents of their children's decision to use a different name or pronouns); *Chino*

*Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-01941-DJC-JDP, 2025 WL

1151004, at *5 (E.D. Cal. Apr. 17, 2025) (same); *Parents Protecting Our Children,*

*UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 504–06 (7th Cir. 2024)

(affirming dismissal for lack of standing a parental association's claim where the

complaint failed to allege that even one of the association's members experienced

an injury attributable to the challenged policies), *cert. denied*, 145 S. Ct. 14 (2024);

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629–31

(4th Cir. 2023) (concluding parents lacked standing where parents did not allege

that their own children had gender support plans or were otherwise likely to

experience future harm from the challenged policies), *cert. denied*, 144 S. Ct. 2560

(2024). "Article III does not give federal courts the power to order relief to any

uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S.

413, 431 (2021) (internal quotations and citation omitted).

Further, the district court failed to undertake the "rigorous analysis" required

by Rule 23 before granting relief on a class-wide basis. *See Wal-Mart Stores, Inc.

v. Dukes*, 564 U.S. 338, 351 (2011). This weighs against the district court's

conclusion that Plaintiffs have satisfied the prerequisites of Rule 23 for class

certification. The wide scope of the district court's injunction violates the principle

that "[i]njunctive relief must be tailored to remedy the specific harm alleged." *See

Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2003); *see also

Trump v. CASA, Inc.*, 606 U.S. 831, 868 (2025) (Alito, J., concurring) ("[D]istrict

courts should not view [*CASA*] as an invitation to certify nationwide classes

25-8056

without scrupulous adherence to the rigors of Rule 23.  Otherwise, the universal

injunction will return from the grave under the guise of 'nationwide class relief,'

and [*CASA*] will be of little more than minor academic interest.").

## B.

Second, the district court's ruling reiterated that the State is "prohibiting

public school teachers from informing parents of their child's gender identity"

through its "parental exclusion" policies, yet the district court failed to clearly

identify the set of policies it relied on to reach this conclusion.  A preliminary

review of the record shows that the State does not categorically forbid disclosure of

information about students' gender identities to parents without student consent. [2]

For example, guidance from the California Attorney General expressly states that

schools can "allow disclosure where a student does not consent where there is a

compelling need to do so to protect the student's wellbeing," and California

Education Code § 49602 allows disclosure to avert a clear danger to the well-being

of a child, Cal. Educ. Code § 49602.  It is thus not clear from the district court's

order which particular policies are problematic, and it is doubtful that all of those

policies categorically forbid disclosure of information, again "suggesting that the

injunctive relief ordered may have been broader than necessary," *see CASA*, 606

---

[2] The district court's injunction appears largely premised on the informal 2016
Legal Advisory and FAQ page posted on the California Department of Education's
website, which has been removed.

U.S. at 861, and not "tailored to remedy the specific harm alleged," *see Winter*,

508 F.3d at 886.

## C.

Third, we are skeptical of the district court's decision on the merits, which

primarily relies on substantive due process. The district court concluded that

parents have the right to be informed when gender incongruence is observed and

make the decision about whether future professional investigation or medical care

is needed. But the Supreme Court has cautioned that we must be "reluctant to

expand the concept of substantive due process," *Washington v. Glucksberg*, 521

U.S. 702, 720 (1997), to avoid usurping "authority that the Constitution entrusts to

the people's elected representatives," *Dobbs v. Jackson Women's Health Org.*, 597

U.S. 215, 239–40 (2022).

Our sister circuit recently analyzed a similar claim in *Foote v. Ludlow Sch.*

*Comm.*, 128 F.4th 336 (1st Cir. 2025), *pet. for cert. pending* (No. 25-77), and

concluded that "using the [s]tudent's chosen name and pronouns—something

people routinely do with one another, and which requires no special training, skill,

medication, or technology" is not a form of medical treatment that gives rise to a

substantive due process claim. *Id.* at 350. The district court distinguished this case

from *Foote*, reasoning that *Foote* did not involve allegations of school officials

misrepresenting the student's gender transition when asked by parents. But the

challenged policies here appear to be analogous to the policy at issue in *Foote*,
which "provides that 'parents are not to be informed of their child's transgender
status and gender-affirming social transition to a discordant gender identity unless
the child, of any age, consents.'" *See Foote*, 128 F.4th at 352. We thus conclude
that the State Appellants have made a strong showing that the district court likely
erred in its substantive due process analysis.

## D.

Because the State has sufficiently shown a substantial case for relief on the
merits based on the sweeping nature of the district court's injunction, the dubious
class certification, and the weakness of Plaintiffs' substantive due process claim,
we may grant the stay on those grounds alone and need not reach the remaining
First Amendment claims. Nonetheless, we address those briefly.

First, the district court's analysis of the parents' free exercise claims relied
on *Mahmoud v. Taylor*, 606 U.S. 522 (2025), to conclude that the challenged
policies triggered strict scrutiny and failed under that test. In *Mahmoud*, the
Supreme Court applied strict scrutiny where a school district subjected "young
children" to "unmistakably normative" books that "explicitly contradict[ed] their
parents' religious views" and encouraged teachers "to reprimand any children who
disagree[d]" or "express[ed] a degree of religious confusion." 606 U.S. at 550,
555–56 & n.8. However, *Mahmoud* has been described as a narrow decision

focused on uniquely coercive "curricular requirements." *See Doe No.1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836, at *7 n.3 (6th Cir. Aug. 26, 2025).  As the Sixth Circuit explained, "[b]ecause *Mahmoud*'s reasoning principally relates to curricular requirements, we are thus unpersuaded that it stands for the broad proposition that strict scrutiny is automatically triggered when a school does not allow religious students to opt out of any school policy that interferes with their religious development, including general operational policies that involve no instruction." *Id.*  Here, the challenged policies appear to apply only when a *student* makes the voluntary decision to share their gender nonconformity with the school.  We thus disagree with the district court's cursory assertion that the challenged policies "impose a similar, if not greater, burden on free exercise" as the policies in *Mahmoud*.  Accordingly, the district court improperly extended the reasoning of *Mahmoud* to the instant case.

Second, the district court's ruling on the subclass of public school teachers' free exercise claim is predicated on the challenged policies "requir[ing] teachers to withhold" information about a student's gender nonconformity "with the knowledge that the information will be impossible for the parents to obtain from the school."  However, as explained above, the district court's premise—that these policies categorically forbid disclosure of information—is contradicted by the record.

Finally, as Plaintiffs concede, the teachers' free speech claim "rises and falls
on parents' rights." Because State Appellants are likely to defeat the parents'
constitutional claims, we need not address the merits of the free speech claims
here.

## II.

Next, we consider three other factors in assessing a motion for a stay:
"whether the applicant will be irreparably injured absent a stay"; "whether issuance
of the stay will substantially injure the other parties interested in the proceeding";
and "where the public interest lies." *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481
U.S. at 776).

The remaining equitable factors weigh in favor of a stay. Justice Alito
warned of universal injunctions under the guise of class relief. *CASA*, 606 U.S. at
868 (Alito, J., concurring). Here, the injunction is sweeping, ambiguous, and
based on a lax enforcement of class certification principles. It further relies on a
faulty reading of the policies at issue.

In considering irreparable harm, "we acknowledge the harms involved in
denying the duly elected branches the policies of their choice." *Immigrant Defs. L.
Ctr. v. Noem*, 145 F.4th 972, 994 (9th Cir. 2025) (citing *CASA*, 606 U.S. at 860–
61). At this stage, the government has demonstrated irreparable harm.

Because the policies at issue do not categorically forbid disclosure of

25-8056

information about students' gender identities to parents without student consent, other parties in this action, including the Plaintiffs, will not be substantially injured from the issuance of a stay. Additionally, the public interest in protecting students and avoiding confusion among schoolteachers and administrators weighs in favor of a stay.

## CONCLUSION

For the reasons above, we **GRANT** the State Appellants' motion for a stay pending appeal.[3]

**EMERGENCY MOTION FOR STAY GRANTED.**

---

[3] We deny as moot Plaintiffs' request for oral argument on the instant motion. Dkt. No. 11 at 35.

Per Curiam

# SUPREME COURT OF THE UNITED STATES

_____

No. 25A810

_____

## ELIZABETH MIRABELLI, ET AL. *v.* ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA, ET AL.

ON APPLICATION TO VACATE INTERLOCUTORY STAY ORDER

[March 2, 2026]

PER CURIAM.

Before us is an application to vacate a Court of Appeals order staying a permanent injunction entered by a District Court on behalf of parents and teachers who claim that certain California policies violate their rights under the Free Exercise Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment. The parents object that these policies prevent schools from telling them about their children's efforts to engage in gender transitioning at school unless the children consent to parental notification. The parents also take issue with California's requirement that schools use children's preferred names and pronouns regardless of their parents' wishes. The teachers object to their compelled participation in the implementation of the State's policies.

I

This case began in the United States District Court for the Southern District of California in 2023 when two teachers sued seeking an exemption from their school district's policies regarding students' gender. During litigation, the school district claimed that state law, as interpreted by the California attorney general and Department of Education, required it to adopt these policies. So the teachers added state officials as defendants, and parents of California schoolchildren joined the lawsuit as plaintiffs. Relying on

Per Curiam

their own experiences and guidance documents issued by
state officials, plaintiffs alleged that California's policies
permitted disclosure of a student's gender transitioning at
school only if the student consented.  Plaintiffs claimed that
these policies violated their rights under the Free Exercise
Clause of the First Amendment and the Due Process Clause
of the Fourteenth Amendment.

Two of the parent plaintiffs, John and Jane Poe, have re-
ligious objections to gender transitioning but were not told
by their daughter's school when she began to present as a
boy and use a male name and male pronouns during her
seventh-grade year.  In parent-teacher meetings, no one
told the Poes about their daughter's transitioning or re-
ferred to her using the male name and pronouns that were
used at school.  At the beginning of their daughter's eighth-
grade year, she attempted suicide and was hospitalized.
Only then did her parents learn from a doctor that she had
gender dysphoria and had been presenting as a boy at
school.  Just months after being discharged, the Poes'
daughter was rehospitalized and held there involuntarily
because she was at risk for self-harm.  At a new school in
ninth grade, she once again began identifying as a boy.
Contrary to the Poes' instructions, teachers and school offi-
cials continued to use a male name and pronouns for their
daughter, citing their obligations under California state
law.  The Poes have placed their daughter in therapy and
obtained psychiatric care for her.

Like the Poes, plaintiffs John and Jane Doe object to gen-
der transitioning, but since fifth grade, their daughter has
sometimes identified as a boy.  When their daughter was in
seventh grade, the Does confronted the school principal
about their daughter's transitioning.  They believed the
school was using a male name and pronouns for their
daughter behind their backs. The principal explained that
state law prohibited the school from sharing information
about a child's transitioning with the child's parents

Cite as: 607 U. S. ____ (2026)          3

Per Curiam

without the child's consent. The Does believed that the risk
of leaving their daughter in that school was too great, so
they transferred their daughter to a new public school be-
cause sending her to a private school was financially and
logistically infeasible. The Does have also placed their
daughter in therapy.

In 2025, defendants asserted that the guidance docu-
ments on which plaintiffs had relied were no longer opera-
tive and that the claims against certain state defendants
should be dismissed as moot. But the State had promul-
gated a new required training curriculum that similarly di-
rected teachers not to tell parents about their children's
gender identity without the children's consent. Defendants
then withdrew their mootness argument, and the District
Court declined to impose sanctions.

Later, plaintiffs sought classwide relief, and the District
Court certified a class with separate subclasses for parents
and teachers. One subclass of parents comprises all those
who object to the challenged policies, while a separate sub-
class is limited to those who seek a religious exemption.
App. to Emergency Application 90a (App.). Two similar
subclasses of teachers were also certified. *Id.*, at 89a–90a.

After discovery, the court granted summary judgment for
all plaintiffs and entered a permanent injunction in their
favor. The injunction prevents the schools from "mislead-
ing" parents about their children's gender presentation at
school and their social transitioning efforts. *Id.*, at 24a. It
also requires the schools to follow parents' directions re-
garding their children's names and pronouns. And it com-
pels defendants to include in state-created or approved in-
structional materials a notice of the rights protected by the
injunction.

The Ninth Circuit granted defendants' motion to stay the
injunction pending appeal. It began by raising procedural
objections to the District Court's injunction. It claimed that
the District Court had granted class certification without

undertaking the "'rigorous analysis'" required by Federal Rule of Civil Procedure 23. App. 7a (quoting *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338, 351 (2011)). And it stated that the injunction appeared to be overly broad because it "covers every parent of California's millions of public school students and every public school employee in the state." App. 6a. As a result, it opined, the injunction seemed to grant relief to uninjured class members who lacked Article III standing.

The Ninth Circuit also expressed doubts about the District Court's decision on the merits. On the free exercise issue, it relied on a not-precedential Sixth Circuit decision and brushed aside *Mahmoud* v. *Taylor*, 606 U. S. 522 (2025), as "a narrow decision focused on uniquely coercive 'curricular requirements.'" App. 10a–11a (citing *Doe No. 1* v. *Bethel Local School Dist. Bd. of Educ.*, 2025 WL 2453836, *7 (CA6, Aug. 26, 2025)). The Ninth Circuit expressed skepticism about the parents' and teachers' Fourteenth Amendment due process claim because it viewed those claims as seeking to expand the protection afforded by established precedent.

When the Ninth Circuit stayed the injunction, the parents and teachers filed this application seeking vacatur of the Ninth Circuit's stay pending appeal.

## II

We grant the application and vacate the stay with respect to the parents because this aspect of the stay is not "justified under the governing four-factor test." *Alabama Assn. of Realtors* v. *Department of Health and Human Servs.*, 594 U. S. 758, 763 (2021) (*per curiam*) (citing *Nken* v. *Holder*, 556 U. S. 418, 434 (2009)).

*Likelihood of success on the merits.* We conclude that the parents who seek religious exemptions are likely to succeed on the merits of their Free Exercise Clause claim. California's policies likely trigger strict scrutiny under that

Per Curiam

provision because they substantially interfere with the
"right of parents to guide the religious development of their
children." *Mahmoud*, 606 U. S., at 559 (citing *Wisconsin* v.
*Yoder*, 406 U. S. 205 (1972)). The parents who assert a free
exercise claim have sincere religious beliefs about sex and
gender, and they feel a religious obligation to raise their
children in accordance with those beliefs. California's poli-
cies violate those beliefs and "impos[e] the kind of burden
on religious exercise that *Yoder* found unacceptable." 606
U. S., at 550. Indeed, the intrusion on parents' free exercise
rights here—unconsented facilitation of a child's gender
transition—is greater than the introduction of LGBTQ sto-
rybooks we considered sufficient to trigger strict scrutiny in
*Mahmoud*. See *id.*, at 563.

California's policies will likely not survive the strict scru-
tiny that *Mahmoud* demands. The State argues that its
policies advance a compelling interest in student safety and
privacy. But those policies cut out the primary protectors
of children's best interests: their parents. See *Troxel* v.
*Granville*, 530 U. S. 57, 68–69 (2000) (plurality opinion).
California's policies also appear to fail the narrow-tailoring
requirement. The State's interest in safety could be served
by a policy that allows religious exemptions while preclud-
ing gender-identity disclosure to parents who would engage
in abuse. For these reasons, the parents who object to the
California policies on free exercise grounds are likely to suc-
ceed on the merits.

The same is true for the subclass of parents who object to
those policies on due process grounds. Under long-estab-
lished precedent, parents—not the State—have primary
authority with respect to "the upbringing and education of
children." *Pierce* v. *Society of Sisters*, 268 U. S. 510, 534–
535 (1925); accord, *Meyer* v. *Nebraska*, 262 U. S. 390, 399–
400 (1923). The right protected by these precedents in-
cludes the right not to be shut out of participation in deci-
sions regarding their children's mental health. *Parham* v.

Per Curiam

*J. R.*, 442 U. S. 584, 602 (1979). Gender dysphoria is a condition that has an important bearing on a child's mental health, but when a child exhibits symptoms of gender dysphoria at school, California's policies conceal that information from parents and facilitate a degree of gender transitioning during school hours. These policies likely violate parents' rights to direct the upbringing and education of their children.

*Irreparable harm.* The denial of plaintiffs' constitutional rights during the potentially protracted appellate process constitutes irreparable harm. *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 592 U. S. 14, 19 (2020) (*per curiam*).

*Balance of equities.* Finally, the "equities do not justify depriving [the parents] of the District Court's judgment in their favor." *Alabama Assn. of Realtors*, 594 U. S., at 765. Everyone agrees that children's safety is the overriding equity. And the injunction here promotes child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives. The injunction also permits the State to shield children from unfit parents by enforcing child-abuse laws and removing children from parental custody in appropriate cases.

### III

The Ninth Circuit's procedural objections to the injunction are unlikely to prevail.

First, the parents protected by the injunction very likely have standing because they are objects of the challenged exclusion policies. See *Diamond Alternative Energy, LLC* v. *EPA*, 606 U. S. 100, 114 (2025). Contrary to the Ninth Circuit's suggestion, the injunction does not provide relief for all the parents of California public school students, but only for those parents who object to the challenged policies or seek religious exemptions.

Cite as:  607 U. S. ____ (2026)                    7

Per Curiam

Second, class certification was likely proper.  The District Court addressed the requirements for certification under Rule 23 and explained why it concluded that they were met.

\*     \*     \*

The application to vacate the Ninth Circuit's stay presented to JUSTICE KAGAN and by her referred to the Court is granted as to the parents but is otherwise denied.

JUSTICE THOMAS and JUSTICE ALITO would grant the application in full.

JUSTICE SOTOMAYOR would deny the application in full.

Cite as: 607 U. S. ____ (2026)    1

BARRETT, J., concurring

# SUPREME COURT OF THE UNITED STATES

––––––––––

No. 25A810

––––––––––

## ELIZABETH MIRABELLI, ET AL. *v.* ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA, ET AL.

ON APPLICATION TO VACATE INTERLOCUTORY STAY ORDER

[March 2, 2026]

JUSTICE BARRETT, with whom THE CHIEF JUSTICE and JUSTICE KAVANAUGH join, concurring.

As the dissent observes, substantive due process is a controversial doctrine. Judges typically interpret express constitutional rights, such as the freedom of speech or religion. But substantive due process asks us to find unexpressed rights in a constitutional provision that guarantees only "process" before a person is deprived of life, liberty, or property. U. S. Const., Amdt. 14, §1. When rights are unstated, how do judges know what they are? The obvious risk is that judges will use their own values as a guide, thereby jeopardizing the People's right to self-governance. To mitigate this risk, the Court has crafted a demanding test for recognizing unexpressed rights: They must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington* v. *Glucksberg*, 521 U. S. 702, 721 (1997) (internal quotation marks omitted). Relevant here, the doctrine of substantive due process has long embraced a parent's right to raise her child, which includes the right to participate in significant decisions about her child's mental health. See *Pierce* v. *Society of Sisters*, 268 U. S. 510 (1925); *Meyer* v. *Nebraska*, 262 U. S. 390 (1923); *Parham* v. *J. R.*, 442 U. S. 584 (1979).

The parent-applicants are likely to succeed on the merits under a straightforward application of these cases. California prohibits its public schools from informing parents of

their child's gender transition at school unless the child consents. The record in this case indicates that the State's nondisclosure policy applies even if parents expressly ask for information about their child's gender identification. One set of parents learned of their child's transition at school only after the child attempted suicide. Strikingly, even after this tragic event, school administrators continued to withhold information about the student's gender identification. California's nondisclosure policy thus quite obviously excludes parents from highly important decisions about their child's mental health, see *Parham*, 442 U. S., at 601–604, and is unlikely to satisfy heightened scrutiny. Our resolution of the parents' likelihood of success on this claim is dictated by existing law.

The dissent questions how the Court can adhere to parental-rights precedent after its decision in *Dobbs* v. *Jackson Women's Health Organization*, 597 U. S. 215 (2022). *Post*, at 5–6 (opinion of KAGAN, J.). But *Dobbs* calls into question neither the doctrine of substantive due process nor the other unexpressed rights that the doctrine protects. Applying *Glucksberg*, *Dobbs* holds that *Roe* v. *Wade*, 410 U. S. 113 (1973), and *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833 (1992), were incorrectly decided because a right to abortion is not "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs*, 597 U. S., at 231. And because the Court concluded that the *stare decisis* factors counseled against retaining these cases, *Dobbs* overruled them. *Id.*, at 263–290. It does not follow from *Dobbs* that all our substantive due process cases conflict with *Glucksberg*, much less that *stare decisis* would counsel overruling any that do.

No party to this dispute questions the continued validity of *Meyer*, *Pierce*, or *Parham*. For all its concerns about deciding the issue in this posture, the dissent expresses "no doubt that parents have rights, even though

Cite as:  607 U. S. ____ (2026)            3

BARRETT, J., concurring

unenumerated, concerning their children and the life
choices they make."  *Post*, at 6.  And the precedent recog-
nizing those rights controls our assessment of whether the
parents are likely to succeed on the merits.

The word "likely" is important, because it reflects that
our assessment is preliminary.  We consider the merits not
to conclusively resolve them, but because they bear on the
limited question before us: Are the parents entitled to the
benefit of the judgment entered by the District Court while
California tries to overturn that judgment on appeal?  The
Ninth Circuit—itself acting on an interim basis—said "no."
We disagree.  The parents must continue to litigate in the
Ninth Circuit, and if necessary, this Court.  But in the
meantime, the injunction of California's policy—which, in-
cidentally, *was* entered after a full merits process—remains
in place.

And contrary to the dissent's charge, granting interim re-
lief is not a sign of the Court's "impatience" to reach the
merits.  *Post*, at 2.  Instead, the grant reflects the Court's
judgment about the risk of irreparable harm to the parents.
See *Nken* v. *Holder*, 556 U. S. 418, 435 (2009).  If the par-
ents were probably right but would suffer little harm from
the Ninth Circuit's stay, they would not be entitled to in-
terim relief.  *Ibid*.  But that is not the situation here.  Under
California's policy, parents will be excluded—perhaps for
years—from participating in consequential decisions about
their child's mental health and wellbeing.  Thus, the par-
ents are likely to suffer irreparable harm if California en-
forces its policy while this litigation winds its way through
the courts.  *Ante*, at 6.

One last point: The Court has chosen to accompany to-
day's order with a *per curiam* opinion that explains its rea-
soning.  The choice to say more rather than less is perhaps
the source of the dissent's concern that our disposition of
this application will be taken as a "conclusive merits judg-
ment."  *Post*, at 4.  But see, *e.g.*, *Whole Woman's Health* v.

4                        MIRABELLI *v.* BONTA

*Jackson*, 594 U. S. ___, ___ (2021) (KAGAN, J., dissenting from denial of application for injunctive relief) (slip op., at 1) (critiquing this Court's interim orders for "barely bother[ing] to explain [their] conclusion[s]"); *Trump* v. *Boyle*, 606 U. S. ___, ___ (2025) (KAGAN, J., dissenting from grant of application for stay) (slip op., at 3) (similar). Interim applications routinely require the Court to balance the lock-in risk of saying too much against the transparency cost of saying too little. See *Labrador* v. *Poe*, 601 U. S. ___, ___–___ (2024) (KAVANAUGH, J., concurring in grant of stay) (slip op., at 11–12). In my judgment, the benefits of explanation win out here. The Ninth Circuit (following the Sixth Circuit) significantly misunderstood *Mahmoud* v. *Taylor*, 606 U. S. 522 (2025), and general course correction will allow the case to progress efficiently. And because of the *Dobbs* point that JUSTICE KAGAN raises, it would have been unwise to issue an unreasoned order on the parents' substantive due process claim.

When an interim application comes to us, "we must decide it—grant or deny." *Labrador*, 601 U. S., at ___ (KAVANAUGH, J., concurring in grant of stay) (slip op., at 2). Because the *Nken* factors strongly favor the parents, *ante*, at 4–6, I see no basis for denying this application.

Cite as: 607 U. S. ____ (2026)          1

KAGAN, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 25A810

_____

## ELIZABETH MIRABELLI, ET AL. *v.* ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA, ET AL.

ON APPLICATION TO VACATE INTERLOCUTORY STAY ORDER

[March 2, 2026]

JUSTICE KAGAN, with whom JUSTICE JACKSON joins, dissenting.

Today's decision shows, not for the first time, how our emergency docket can malfunction. A case raising novel legal questions and arousing strong views comes to this Court via an application about whether to stay a district court's injunction pending appeal. The ordinary appellate process has barely started; only a district court has ruled on the case's merits. The Court receives scant and, frankly, inadequate briefing about the legal issues in dispute. It does not hold oral argument or deliberate in conference, as regular procedures dictate. It considers the request on a short fuse—a matter of weeks. And then the Court grants relief by means of a terse, tonally dismissive ruling designed to conclusively resolve the dispute. The Court does all this even though the application of existing law to the case raises tricky questions, and so cries out for reflection and explanation. The Court is impatient: It already knows what it thinks, and insists on getting everything over quickly. See also, *e.g.*, *Department of State* v. *AIDS Vaccine Advocacy Coalition*, 606 U. S. ___, ___ (2025) (KAGAN, J., dissenting from grant of stay application) (slip op., at 2–3); *Trump* v. *Wilcox*, 605 U. S. ___, ___ (2025) (KAGAN, J., dissenting from grant of stay application) (slip op., at 2–3, 8).

Indeed, the precipitousness of the Court's decision today has yet a further—and wholly new—dimension: In granting

2                          MIRABELLI *v.* BONTA

                          KAGAN, J., dissenting

emergency relief, the Court cannot even wait for an appel-
late court to conclude its own process for deciding the iden-
tical issue.  As the Court notes, a Ninth Circuit panel last
month stayed the District Court's injunction against the
challenged policies, pending the State's appeal of that or-
der.  See *ante*, at 3–4.  The plaintiffs responded by simulta-
neously filing two motions—one asking this Court to vacate
the panel's stay and the other asking the Ninth Circuit to
do the same thing through en banc review.  The Ninth Cir-
cuit is already acting on the motion filed there: The court
promptly called for (and has now received) a response from
the State, preparatory to exchanging memoranda and vot-
ing on reconsideration of the panel's decision.  Regular or-
der counsels that, in this situation, the Ninth Circuit should
go first.  The lower court, that is, should decide whether to
vacate the stay; and only then should this Court decide
whether further action is needed.  Cf. Supreme Court Rule
23.3 (Stay applications "shall set out with particularity why
the relief sought is not available from any other court").  But
the Court's impatience cannot be contained for even that
long.  The Court jumps the line, pre-empting the Ninth Cir-
cuit's normal (and notably reflective) en banc process.  Why
wait for appellate procedures to play out when the Court
already knows what it wants?

    And still, there is worse: The Court resolves the issues
raised through shortcut procedures on the emergency
docket even though it has had—for months now—the option
of doing so the regular way, on our merits docket.  Since
November of last year, a petition for certiorari has been
pending in a case that, in critical respects, is a carbon copy
of this one.  In *Foote* v. *Ludlow School Comm.*, 128 F. 4th
336 (CA1 2025) (*per curiam*), cert. pending, No. 25–77, as
here, a public school adopted a policy, conforming to a state
agency's guidance, about students who identify as
transgender.  There, as here, the policy requires school em-
ployees to use only a student's preferred name and

KAGAN, J., dissenting

pronouns, while barring employees from disclosing the student's at-school gender identity to parents. And there, as here, parents challenge that policy as a violation of their right to substantive due process. See *id.*, at 340–344.[1] Why not, then, just grant certiorari in *Foote*, and decide it this coming fall? Or if there is some reason that *Foote* is not suitable, the Court could take one of the many cases lined up behind it. By recent count, almost 40 cases raising due process and/or free exercise objections to similar school policies are currently in the judicial system (with several recently decided by appellate courts), so this Court would not have to wait long. See Pet. for Cert. in *Foote*, O. T. 2025, No. 25–77, p. 32. By granting certiorari on one (or more) of those cases, the Court could ensure that the issues raised by such policies receive the careful, disciplined consideration they merit, rather than the inevitably truncated review the Court affords emergency applications.

Certainly, the Court cannot claim that thought and care are not needed. If nothing else, this Court owes it to a sovereign State to avoid throwing over its policies in a slapdash way, if the Court can provide normal procedures. And throwing over a State's policy is what the Court does today. To be sure, the Court sprinkles the word "likely" atop its assessment of which party's arguments will succeed. But no one—in particular, neither a state official nor a lower

─────────────

[1] The one difference between this case and *Foote* is that this case also involves a First Amendment free exercise claim, which would (if successful) give relief to parents with religious objections to the State's policy. But as addressed later, the Court's recognition of the substantive due process claim here makes the free exercise claim immaterial. See *infra*, at 4. That is because accepting the due process claim gives relief to *all* objecting parents, religious and non-religious alike. So granting certiorari in *Foote* would allow the Court to consider, on its regular merits docket, the only claim doing actual work here. And if it is nonetheless thought important to address the First Amendment issue as well, the Court could grant certiorari (as I next explain) on one of multiple other cases raising both issues that are likely to reach us in short order.

KAGAN, J., dissenting

court—is apt to read the Court's *per curiam*, brusque though it is, as anything less than a conclusive merits judgment.

In any event, there *is* something else: This case presents some thorny legal issues. The Court grants relief to parents on the same two substantive grounds that supported the District Court's injunction. First, the Court says, some parents can show that the State's policy "substantially interfere[s]" with their First Amendment right "to guide the religious development of their children." *Ante*, at 5. Here, the Court analogizes to *Mahmoud* v. *Taylor*, 606 U. S. 522 (2025), a decision issued last Term about school curriculum. The ink on that decision is barely dry, and courts have just begun to consider its meaning and reach. But even assume the Court is right on the free exercise score; still, that could not justify extending relief to *all* the parents here. After all, some of those parents object to the State's policy not for religious reasons, but simply because it prevents them from taking part in their children's most crucial life decisions. So the District Court also ruled on substantive due process grounds, finding a parental right to "direct the upbringing and medical care of their children." App. to Emergency Application 54a. And indeed, in doing so, the court made its free exercise ruling superfluous, because the due process ground protects every parent, whether or not religious. See *supra*, at 3, n. 1. This Court, to affirm the relief given, must follow the same course: It explains that the State's policy "excludes parents" from "participation in decisions regarding their children's mental health." *Ante*, at 5–6. But the very phrasing the Court uses betrays the delicateness of the operation: Even in recognizing that parental right, the Court cannot quite bring itself to name the legal doctrine—it is, again, substantive due process—that provides the right's only basis.

Anyone remotely familiar with recent debates in constitutional law will understand why: Substantive due process

KAGAN, J., dissenting

has not been of late in the good graces of this Court—and especially of the Members of today's majority. The Due Process Clause, needless to say, does not expressly grant parental rights of any kind. The relevant text bars a State only from depriving a person of "liberty" "without due process of law." Members of the majority often have expressed skepticism—sometimes outright hostility—to understanding the "capacious" term "liberty" to enshrine specific rights. *Dobbs* v. *Jackson Women's Health Organization*, 597 U. S. 215, 239 (2022). Substantive due process, one has stated, is a "particularly dangerous" "legal fiction" because it "invites judges" to "roa[m] at large in the constitutional field guided only by their personal views." *McDonald* v. *Chicago*, 561 U. S. 742, 811 (2010) (THOMAS, J., concurring in part and concurring in judgment); *Obergefell* v. *Hodges*, 576 U. S. 644, 721 (2015) (THOMAS, J., dissenting).[2] Another has pointed to the "judicial misuse of the so-called 'substantive component' of due process to dictate policy on matters that belonged to the people to decide." *Sessions* v. *Dimaya*, 584 U. S. 148, 191 (2018) (GORSUCH, J., concurring in part and concurring in judgment). And yet a third, when defending the Court's elimination of a 50-year-old right grounded in substantive due process, explained that the "Constitution does not grant the nine unelected Members of this Court the unilateral authority to rewrite the Constitution." *Dobbs*, 597 U. S., at 340 (KAVANAUGH, J., concurring). There are many such statements to choose from in this Court's recent substantive due process caselaw. Especially given the Court's last venture into the field, today's

_____

[2] For that reason, JUSTICE THOMAS has called for overruling "all" of this Court's "substantive due process precedents." *Dobbs*, 597 U. S., at 332–333 (concurring opinion). That invitation presumably extends to the precedents supporting both the District Court's decision and today's *per curiam*. See *ante*, at 5–6 (citing *Meyer* v. *Nebraska*, 262 U. S. 390 (1923); *Pierce* v. *Society of Sisters*, 268 U. S. 510 (1925); and *Parham* v. *J. R.*, 442 U. S. 584 (1979)); App. to Emergency Application 38a–39a.

6                     MIRABELLI *v.* BONTA

KAGAN, J., dissenting

decision cannot but induce a strong sense of whiplash.
Compare *ante*, at 5–6 (recognizing a parent's right to make
important decisions about her child's health), with *Dobbs*,
597 U. S., at 231 (repudiating a woman's right to make im-
portant decisions about her own health).[3]

None of this is to say that the Court gets the merits here
wrong. It may not—as to the plaintiffs' free exercise claim,
or their substantive due process claim, or both. As to due
process particularly—because, again, that claim alone does
all the load-bearing work in this case, see *supra*, at 3, n. 1,
4—I have no doubt that parents have rights, even though
unenumerated, concerning their children and the life
choices they make. See *Pierce* v. *Society of Sisters*, 268 U. S.
510, 534–535 (1925); *Parham* v. *J. R.*, 442 U. S. 584, 602–
603 (1979). On the other side of ledger, of course, a State
has critical interests in the care and education of children.
But California's policy, in depriving all parents of infor-
mation critical to their children's health and well-being,
could have crossed the constitutional line. And that would
entitle the parents, at the end of the day, to relief.

The Court, however, would be far better equipped to
draw the appropriate line and to explain its legal basis—in
short, to do law in the right way—if it had followed our

———————

[3] Another contrast—this time, between this case and *United States* v.
*Skrmetti*, 605 U. S. 495 (2025)—is also striking. In *Skrmetti*, several
parents challenged Tennessee's ban on gender-affirming care for minors.
The suit raised claims grounded in both equal protection and substantive
due process. As to the latter, the parents in *Skrmetti*, similarly to the
parents here, asserted a right "to make decisions concerning medical care
for their minor children." Pet. for Cert., O. T. 2023, No. 23–466, p. 34;
see *id.*, at 18 (invoking a "right of parents with respect to the care, cus-
tody, and control of their children, including in decisions about medical
care"). And in support of that right, the *Skrmetti* parents relied on the
same precedents the Court does today: *Parham*, 442 U. S. 584, and
*Pierce*, 268 U. S. 510. See Pet. for Cert., No. 23–466, at 34–36; *ante*, at
5–6. But the Court, when deciding to grant certiorari in *Skrmetti*, lim-
ited its review to the equal protection issue: It would not even hear the
parents out on their substantive due process claim.

Cite as: 607 U. S. ____ (2026)          7

KAGAN, J., dissenting

ordinary processes.  A mere decade ago, this Court would never have granted relief in this posture.  (Indeed, I am confident that the plaintiffs would never have thought to ask, at this stage, for the Court's involvement.)  Then, though apparently not now, we understood that our normal processes—full briefing, oral argument, conference, and opinion writing, along with the time they take—exist for a reason.  They ensure that before the Court makes a decision, it has marshaled all the relevant facts; considered all interested parties' and multiple lower courts' legal arguments; and deliberated internally, with full understanding of each other's perspectives, on all disputed issues.  So too, those processes enable us to think through the best legal rationale for, and scope of, any decision, given both the views we have earlier expressed and the related issues that will soon come before us.  And they allow us to explain ourselves well and carefully, both to the parties and to the public.  Our processes are, in short, the hallmark of judicial probity, and alike its guarantor.  There was no reason to abandon them here.  I respectfully dissent.

EXHIBIT B

| | |
|---|---|
| **From:** | CHIEFDEPUTYOFFICE |
| **To:** | CHIEFDEPUTYOFFICE |
| **Bcc:** | superintendents-county@mlist.cde.ca.gov; superintendents-district@mlist.cde.ca.gov; charters-local@mlist.cde.ca.gov; charters-direct@mlist.cde.ca.gov |
| **Subject:** | Notice of Court Order in the Case of Mirabelli v. Olson |
| **Date:** | Tuesday, March 3, 2026 3:26:00 PM |
| **Attachments:** | Notice of Court Order in the Case of Mirabelli v. Olson 3-3-26.pdf |

Dear County and District Superintendents and Charter School Administrators:

Please see attached for notice of a court order in the case of *Mirabelli v. Olson*, which is currently in effect as to the class of parents and guardians of students in California public schools who have been certified by the district court.

Sincerely,

David Schapira
Chief of Staff
Chief Deputy Superintendent

Ingrid Roberson
Chief Deputy Superintendent
California Department of Education

# CERTIFICATE OF SERVICE

Case Name:  __Mirabelli et al. v. Olson, et al.__    No.  __3:23-cv-00768-BEN-VET__

I hereby certify that on <u>March 6, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF ELIZABETH SANDERS RE NOTICE OF INJUNCTION ORDER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 6, 2026</u>, at Sacramento, California.

|  |  |
|---|---|
| Christopher R. Irby | *S/ Christopher R. Irby* |
| Declarant | Signature |

SA2024300204
39682804.docx