ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General
JENNIFER A. BUNSHOFT
Deputy Attorney General
State Bar No. 197306
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3377
  Fax:  (415) 703-5480
  E-mail:  Jennifer.Bunshoft@doj.ca.gov600
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY INJUNCTION ORDER**<br><br>[Declaration of Darrell Spence filed concurrently]<br><br>Courtroom:  5A<br>Judge:  The Honorable Roger T. Benitez<br>Action Filed:  April 27, 2023 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that the State Superintendent of Public Instruction, the State Board of Education, and the California Attorney General (collectively, State Defendants), request, ex parte, that the Court modify its permanent injunction order to ensure consistency with the Supreme Court's March 2, 2026, per curium decision in this matter and to provide clarity to the local education agencies in California.  Specifically, State Defendants request that the Court modify the terms

1

of the permanent injunction now in effect to:  (1) confirm that the order does not compel disclosure "to parents who would engage in abuse;" and (2) eliminate the notice requirement set out in Item 3, in whole or in part.  State Defendants had previously requested such modifications through an emergency motion filed with the Ninth Circuit, which acknowledged State Defendants' "important concerns" but held that this Court "should address the request to modify its injunction in the first instance" and so denied the motion without prejudice.  C.A. Dkt. 33 at 2.

Plaintiffs have informed counsel for State Defendants that they oppose the above requested ex parte relief, and will file an opposition by Monday, March 23, 2026. Declaration of Darrell Spence, ¶¶ 3, 5 & Exh. A.

In light of the foregoing, the concurrently filed Memorandum of Points and Authorities, the accompanying Declaration of Darrell Spence, and the pleadings and papers filed in this matter, State Defendants respectfully request an ex parte order modifying the Court's permanent injunction as set forth above.

Given the ex parte status of this request, State Defendants provide the following contact information for Plaintiffs' counsel:

CHARLES S. LIMANDRI
    cslimandri@limandri.com
PAUL M. JONNA
    pjonna@limandri.com
MARK D. MYERS
    mmyers@limandri.com
JEFFREY M. TRISSELL
    jtrissell@limandri.com
MILAN L. BRANDON II
    mbrandon@limandri.com

LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

THOMAS BREJCHA, *pro hac vice**
    tbrejcha@thomasmoresociety.org
PETER BREEN, *pro hac vice**
    pbreen@thomasmorsociety.org

THOMAS MORE SOCIETY
309 W. Washington St.
Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

State Defendants' Ex Parte Application to Modify Injunction Order (3:23-cv-00768-BEN-VET)

Dated:  March 19, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General

*Jennifer Bunshoft*

JENNIFER A. BUNSHOFT
Deputy Attorney General
*Attorneys for State Defendants*

3

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

On March 2, 2026, the Supreme Court granted in part and denied in part plaintiffs' application to vacate the Ninth Circuit's stay order, at which point the Ninth Circuit issued an order vacating the stay of the permanent injunction as to the parents' claims and retaining the stay as to the remaining claims. Neither the Supreme Court nor the Ninth Circuit parsed the terms of the injunction and spelled out which terms are now in effect and which remain stayed. In the interest of clarity and consistency, State Defendants requested that the Ninth Circuit modify its stay order in two narrow respects: (1) confirm that the injunction is stayed insofar as it would require school officials to disclose a child's transgender status to parents who would abuse their child; and (2) confirm that the notice requirement set forth in Item 3 of the injunction is stayed pending appeal, or substitute a notice requirement that tracks the Supreme Court's decision. The Ninth Circuit recognized that State Defendants' motion "raise[d] important concerns," but held that this Court "should address the request to modify its injunction in the first instance" and so denied the motion without prejudice. C.A. Dkt. 33 at 2. State Defendants accordingly now respectfully ask this Court to modify its permanent injunction order as requested.

### STATEMENT OF FACTS

As the Court is aware, this case involves a challenge by parents and public-school teachers on substantive due process, free exercise, and free speech grounds to various state laws that plaintiffs collectively refer to as "the State's Parental Exclusion Policies." D.Ct. Dkt. 307 at 6-7. In late 2025, this Court certified the case as a class action, granted summary judgment to plaintiffs, and ordered a class-wide permanent injunction. D.Ct. Dkts. 286, 307, 308. On December 24, 2025, State Defendants filed an emergency motion with the Ninth Circuit for an interim administrative stay and stay pending appeal. C.A. Dkt. 7. The Ninth Circuit

4

granted an administrative stay pending further order, and then, on January 5, issued an unpublished opinion staying this Court's permanent injunction pending disposition of the appeal.  C.A. Dkt. 13.

On January 8, plaintiffs submitted an emergency application to the Supreme Court to vacate the panel's stay order, *see Mirabelli v. Bonta*, No. 25A810, and asked the Ninth Circuit to reconsider the panel's stay decision en banc, C.A. Dkt. 14.  On March 2, before the Ninth Circuit had resolved the motion for reconsideration en banc, the Supreme Court issued a per curiam opinion in which it granted the emergency application with respect to the parent plaintiffs and denied the emergency application with respect to the teacher plaintiffs.  *Mirabelli v. Bonta*, 607 U.S. __, 146 S.Ct. 797 (2026).  On March 3, the Ninth Circuit issued an order vacating the stay as to the parents' claims, and retaining the stay as to the remaining claims.  C.A. Dkt. 19.

On March 6, State Defendants filed an emergency motion for modification of the Ninth Circuit's stay order, in which they asked the Ninth Circuit to modify its stay order in two respects to clarify the terms of the permanent injunction now in effect.  C.A. Dkt. 24.  Plaintiffs opposed the motion and argued that the request should be resolved by this Court in the first instance.  C.A. Dkt. 27.

On March 17, the Ninth Circuit issued an order denying State Defendants' motion without prejudice.  C.A. Dkt. 33.  The Ninth Circuit observed that "Defendants raise important concerns, particularly regarding whether the injunction would compel disclosure 'to parents who would engage in abuse.'"  C.A. Dkt. 33 at 2.  "However," the Ninth Circuit explained, "the district court should address the request to modify its injunction in the first instance" and "retains jurisdiction to modify its injunction during the pendency of the appeal."  *Id.*

## ARGUMENT

This Court's permanent injunction includes multiple provisions, including some that are specific to the parents' claims, some that are specific to the teachers'

claims, and some that apply to both. Following the Supreme Court's decision on March 2, the permanent injunction is in effect with respect to the parents' claims and stayed with respect to the teachers' claims. To ensure that the aspects of the permanent injunction that remain in effect are consistent with the holding and reasoning of the Supreme Court's decision, State Defendants respectfully request that the Court modify its order staying the permanent injunction in the following two respects:

1. State Defendants ask that the injunction order be modified to confirm that the order does not compel disclosure "to parents who would engage in abuse." *Mirabelli*, 146 S.Ct. at 802-03. That request follows from the Supreme Court's decision, which explained that the parents' claims do not require disclosure for which the consequence would be abuse. This Court's injunction, however, does not expressly provide any exception for circumstances where public school employees reasonably believe that "parents . . . would engage in abuse." *Id.*

Specifically, in discussing plaintiffs' likelihood of success on the merits, the Supreme Court held that "[t]he State's interest in safety could be served by a policy that allows religious exemptions while precluding gender-identity disclosure to parents who would engage in abuse." 146 S.Ct. at 802-03. In other words, in granting in part plaintiffs' emergency application to vacate the stay, the Supreme Court explained that the parents' constitutional claims do not require school officials to disclose a student's transgender status "to parents who would engage in abuse." *Id.* Rather, States may, consistent with strict scrutiny's narrow tailoring requirement, "preclude[e] gender-identity disclosure to parents who would engage in abuse." *Id.* If a law that forbids disclosure to parents who would engage in abuse would satisfy strict scrutiny, then the parents' claims here cannot support an injunction prohibiting the State from restricting disclosure in exactly that circumstance. Put another way, the injunction cannot compel what the parents' claims do not require on the merits.

6

The Supreme Court's discussion of the equities is consistent with State Defendants' request.  In that section of the opinion, the Supreme Court explained that "[e]veryone agrees that children's safety is the overriding equity" and "[t]he injunction here promotes child safety by guaranteeing *fit* parents a role" while also "permit[ting] the State *to shield children from unfit parents* by enforcing child-abuse laws and removing children from parental custody in appropriate cases."  146 S.Ct. at 803 (emphasis added).  Requiring school officials to take action they reasonably believe will result in child abuse, and leaving them able only to report that abuse after it occurs, is no shield from harm.  The Supreme Court's brief reference to child-abuse and custody laws does not suggest that the State is precluded from protecting children who would suffer abuse *in all other ways*— including the very way the Supreme Court identified earlier in its opinion.

As this Court well knows, school employees are mandated reporters of known and suspected child abuse.  *See* D.Ct. Dkt. 307 at 5; Cal. Penal Code § 11165.7.  As mandatory reporters, school employees are required to receive training on "what constitutes child abuse" and "how to identify potential signs."  Cal. Dep't of Educ., Child Abuse Identification & Reporting Guidelines (last reviewed Nov. 4, 2024), https://www.cde.ca.gov/ls/ss/ap/childabusereportingguide.asp; *see also, e.g.*, Cal. Educ. Code § 44691.  The clarification with respect to abuse that the State seeks— namely, that the injunction does not require school officials to disclose a student's transgender status to parents who would engage in abuse as a result—is intended to incorporate the same definition of child abuse that school employees look to for purposes of their mandatory reporter obligations.[1]

In response to State Defendants' concerns about abuse as expressed in the

---

[1] Mandatory-reporter laws do not, on their own, address the State's concern that, in extraordinary circumstances, disclosure to parents will lead to child abuse. Mandatory-reporter laws do not relax the terms of the injunction, which requires disclosure.

emergency motion to the Ninth Circuit, this Court proposed a modification to the permanent injunction.  During a hearing on plaintiffs' motion for attorneys' fees, the Court proposed adding a final paragraph to the injunction that states:  "This injunction is intended to promote child safety by guaranteeing fit parents a role in some of the most consequential decisions of their children's lives while permitting the State to shield children from unfit parents by enforcing child-abuse laws in cases of compelling need."  Declaration of Darrell Spence, ¶ 5 & Exh. B.  That language largely tracks the Supreme Court's explanation of its conclusion that the balance of equities did not support vacating the injunction as to the parents, *see* 146 S.Ct. at 803, but narrows it by adding the "in cases of compelling need" qualifier.

The Court's proposed modification does not fully resolve the State's concern. State Defendants remain concerned that the proposed language would not allow school officials to withhold or delay disclosure where child abuse would otherwise result.  And State Defendants are concerned that the proposed language could be read by school officials to *require* them to disclose a transgender student's status even when they know that doing so will result in child abuse, and allow them only the ability to report such abuse after it happens.  Indeed, the Court's injunction bars the State from enforcing "any ... provision of California law" that would "in any way interfere with a" school employee "from communicating to parents that his, her, or their child has manifested a form of gender incongruity," D.Ct. Dkt. 308 at 1-2—broad language that would appear to extend to any laws that would otherwise allow or require school employees to withhold disclosure based on the threat of abuse.  In light of that concern, State Defendants informed the Court that it was not prepared to withdraw its emergency motion that was pending in the Ninth Circuit. D.Ct. Dkt. 351.

Although the request described above is State Defendants' strongly preferred approach, the Court appears to have suggested an additional proposal during the fees hearing.  During the Court's colloquy with the parties about the Court's

State Defendants' Ex Parte Application to Modify Injunction Order (3:23-cv-00768-BEN-VET)

proposed amendment, the Court articulated its view that "in the event that there's abuse ... there's a compelling reason to not disclose." Spence Decl., Exh. C, at 43:4-6. The Court offered "a hypothetical": "the child goes to the schoolteacher and says, 'Teacher, my parents said that they're going to kill me if I ever express any gender incongruity,' at that point in time – the teachers, by California law, are mandated reporters – ... would have a process ... to turn the parents over to CPS. And then there would be a judicial determination as to whether or not this is true; ... this is really a danger to the child." Id. at 48:22-49:6. Based on this exchange, it appears to State Defendants that the Court would be open to modifying the injunction to provide that if a school official reasonably suspects that a parent will abuse a child upon learning of their transgender status, the school official is not obligated to disclose the information to the parent in the moment, but instead must exercise their responsibilities as a mandatory reporter, at which point the relevant law enforcement or child welfare process would unfold. The assumption implicit in this approach is that if the parents learn of the student's transgender status during the ensuing process (as they almost certainly will), the process will be sufficient to protect the child from ultimately suffering any threatened abuse.

State Defendants believe that their proposed modification to the injunction order best tracks the Supreme Court's decision and reasoning, and have concerns about the harms that could still result to students (and their parents) through the alternative approach just described. But to the extent the Court is not inclined to grant State Defendants the relief requested as a first-order preference, State Defendants ask the Court to clarify that the injunction does not obligate a school official to disclose information to a parent they reasonably suspect would abuse their child as a result where the school official instead reports the possible future abuse to the relevant authorities.

2. State Defendants also ask that the injunction be modified to eliminate the notice requirement set out in Item 3, in whole or in part. Item 3 requires State

9

Defendants to post the following statement on "any . . . state-created or approved instruction on the gender-related rights of student and faculty": "'Parents and guardians have a federal constitutional right to be informed if their public school student child expresses gender incongruence. Teachers and school staff have a federal constitutional right to accurately inform the parent or guardian of their student when the student expresses gender incongruence. These federal constitutional rights are superior to any state or local laws, state or local regulations, or state or local policies to the contrary.'" D.Ct. Dkt. 308 at 2-3.

The first two sentences do not track the reasoning in the Supreme Court's decision. The first sentence could be understood to suggest that public school officials have an affirmative constitutional duty to inform parents whenever they observe a student's expression of "gender incongruence," effectively imposing a mandatory "see something, say something" obligation in all circumstances. But the Supreme Court interpreted the injunction to "provide relief . . . *only* for those parents who object to the challenged policies or seek religious exemptions." *Mirabelli*, 146 S.Ct. at 803 (emphasis added). Moreover, plaintiffs agreed in their opposition to the emergency motion in the Ninth Circuit that the language about parents' rights does not track the injunction's substantive requirements set out in Item 1. C.A. Dkt. 27 at 19. Given the disconnect between the class definition and the operation of the injunction's substantive terms on the one hand and the content of the notice on the other, lifting the injunction as to the first sentence of the notice requirement is important to avoid the misimpression that school officials must now "inform parents whenever they observe a student's expression of 'gender incongruence.'"

The second sentence in the notice requirement pertains to the rights of teachers and school staff. But the Supreme Court let stand the Ninth Circuit's stay of the permanent injunction with respect to the teachers' claims. *Mirabelli*, 146 S.Ct. at 803. Because the Ninth Circuit's stay as to the teachers' claims remains in

effect, *see* C.A. Dkt. 19, this Court should make clear that the State need not post the second sentence of the Item 3 notice.

If the Court does not wish to relieve State Defendants of any obligations under Item 3 in its entirety, and wishes to retain some version of a notice requirement, State Defendants suggest that the following language be substituted, which quotes directly from the Supreme Court's decision:

> Parents and guardians likely have a federal constitutional right "not to be shut out of participation in decisions regarding their children's mental health." *Mirabelli v. Bonta*, 607 U.S. __, 2026 WL 575049, at *3 (U.S. Mar. 2, 2026). "Gender dysphoria is a condition that has an important bearing on a child's mental health." *Id.* This right applies to parents "who object to" policies that "conceal . . . information from parents . . . when a child exhibits symptoms of gender dysphoria at school." *Id.* Consistent with that right, school employees may "preclud[e] gender-identity disclosure to parents who would engage in abuse." *Id.* This federal constitutional right is superior to any state or local laws, state or local regulations, or state or local policies to the contrary.

To the extent that the Court has concerns about the specific alternative language, State Defendants are not wedded to that particular proposal. Their bottom-line concern about the notice is absolved so long as the Court makes clear to school officials that no "see something, say something" mandate is currently in effect—and that public school employees need not make disclosures to parents if doing so would result in abuse.

## CONCLUSION

The Court's injunction should be modified in the ways discussed above.

Dated:  March 19, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
DARRELL W. SPENCE
Supervising Deputy Attorney General

*Jennifer Bunshoft*

JENNIFER A. BUNSHOFT
Deputy Attorney General
*Attorneys for State Defendants*

11

# CERTIFICATE OF SERVICE

Case Name:    **Mirabelli et al. v. Olson, et al.**        No.    **3:23-cv-00768-BEN-VET**

I hereby certify that on <u>March 19, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY INJUNCTION ORDER**

- **DECLARATION OF DARRELL W. SPENCE PURSUANT TO LOCAL RULE 83.3(g)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 19, 2026</u>, at San Francisco, California.

|  |  |
|---|---|
| G. Guardado | */s/ G. Guardado* |
| Declarant | Signature |

SA2024300204
45003864