ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN: 248011)
Supervising Deputy Attorney General
JENNIFER A. BUNSHOFT (SBN: 197306)
Deputy Attorney General
State Bar No. 197306
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3377
  Fax:  (415) 703-5480
  E-mail:  Jennifer.Bunshoft@doj.ca.gov
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH MIRABELLI, an individual, and LORI ANN WEST, an individual,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,**<br><br>Defendants. | 3:23-cv-00768-BEN-VET<br><br>**DECLARATION OF DARRELL W. SPENCE PURSUANT TO LOCAL RULE 83.3(g)** |

I, Darrell W. Spence, declare:

1.      I am an attorney licensed to practice before the courts of the State of California and a Supervising Deputy Attorney General employed by the Office of the Attorney General, counsel of record in this matter for the California Superintendent of Public Instruction, the State Board of Education, and the California Attorney General (collectively, State Defendants).  I am admitted to

1

practice before the United States District Court for the Southern District Court of California.

2. This declaration is submitted in compliance with Rule 83.3(g) of the Local Civil Rules of the United States District Court for the Southern District of California, in connection with State Defendants' Ex Parte Application to Modify Injunction Order, filed concurrently herewith.

3. On March 18, 2026, I called Paul Jonna, counsel for the plaintiffs, and left a detailed voicemail message for him. I informed Mr. Jonna that the State Defendants expected to file an ex parte motion in the District Court to modify the injunction order. I further explained that the grounds for the ex parte motion would be substantially similar to the grounds set forth in the motion to modify the stay order that State Defendants previously filed in the Ninth Circuit, with some minor additions related to the District Court proceedings. I also indicated that we hoped to file the motion by March 19, and suggested that if plaintiffs oppose the request, they could file an opposition on Monday, March 23. I also requested that he respond to let us know plaintiffs' position.

4. Later in the day on March 18, Mr. Jonna sent an email in response to my message. He stated that plaintiffs will be opposing the ex parte motion to modify the injunction for the same reasons that they opposed the requested relief before the Ninth Circuit. He further requested that we note in the ex parte motion that plaintiffs will be opposing it, and that they will file their opposition by Monday, March 23. A true and correct copy of Mr. Jonna's March 18, 2026, email is attached hereto as Exhibit A.

5. I attended the hearing on plaintiffs' Motion for Attorneys' Fees on March 9, 2026. During the hearing, the Court provided the parties with a one-page document that was the final page of the Court's Order Granting Motion for Class-Wide Permanent Injunction, with a newly added proposed paragraph 5, which states: "This injunction is intended to promote child safety by guaranteeing fit

2

parents a role in some of the most consequential decisions of their children's lives while permitting the State to shield children from unfit parents by enforcing child-abuse laws in cases of compelling need." A true and correct copy of this document is attached hereto as Exhibit B.

6.    I received a copy of the transcript of the March 9, 2026, hearing on plaintiffs' Motion for Attorneys' Fees. A true and correct copy of excerpts from the transcript are attached hereto as Exhibit C. The attached excerpts are relevant to State Defendants' ex parte motion to modify the injunction order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Sacramento, California, on March 19, 2026.


By:    _D Spence_____
DARRELL W. SPENCE

3

Declaration of Darrell W. Spence Pursuant to Local Rule 83.3(g) (3:23-cv-00768-BEN-VET)

# EXHIBIT A

| | |
|---|---|
| **From:** | Paul Jonna |
| **To:** | Darrell Spence; Jennifer Bunshoft |
| **Cc:** | Jeffrey Trissell; Peter Breen; Michael McHale; Kathy Denworth |
| **Subject:** | Mirabelli v Bonta - ex parte application |
| **Date:** | Wednesday, March 18, 2026 4:40:44 PM |
| **Attachments:** | image001.png |

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Darrell, sorry I missed your call. I did get your voicemail. Yes, we will be opposing the motion – for the same reasons that we opposed the requested relief before the Ninth Circuit. Please note in your motion that we will be opposing and that we will file our opposition by Monday, as you suggested. Thank you.

**Paul M. Jonna** | Partner
**LiMANDRI & JONNA LLP** | P.O. Box 9120 | Rancho Santa Fe, CA 92067
Tel: (858) 759-9930 | Direct: (858) 759-9133 | Fax: (858) 759-9938
pjonna@limandri.com | www.limandri.com



This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based in it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.

# EXHIBIT B

if their public school student child expresses gender incongruence. Teachers and school staff have a federal constitutional right to accurately inform the parent or guardian of their student when the student expresses gender incongruence. These federal constitutional rights are superior to any state or local laws, state or local regulations, or state or local policies to the contrary."

4.     Further, because enjoining Defendants from enforcing unconstitutional policies will impose no financial burden, Plaintiffs are not required to post a bond or undertaking.

5.     This injunction is intended to promote child safety by guaranteeing fit parents a role in some of the most consequential decisions of their children's lives while permitting the State to shield children from unfit parents by enforcing child-abuse laws in cases of compelling need.

**IT IS SO ORDERED.**

DATED: _____                        _____

**HON. ROGER T. BENITEZ**
United States District Judge

ORDER GRANTING MOTION FOR CLASS-WIDE PERMANENT INJUNCTION

# EXHIBIT C

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an
individual, et al.,                    )    No. 3:23-cv-00768-BEN-VET
                                       )
              Plaintiffs,              )
                                       )    March 9, 2026
      v.                               )
                                       )    1:01 p.m.
MARK OLSON, in his official            )
capacity as President of the EUSD      )
Board of Education, et al.,            )
                                       )    Courtroom 5A
              Defendants.              )
_____)    San Diego, California

TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE ROGER T. BENITEZ, DISTRICT JUDGE

COURT REPORTER:            ADRIAN DALE BAULE, RMR, CRR, CSR
                           United States District Court
                           333 West Broadway, Suite 420
                           San Diego, California 92101
                           adrian_baule@casd.uscourts.gov

Reported by Stenotype; Transcribed by Computer.

APPEARANCES:

For Plaintiffs:            LiMANDRI & JONNA LLP
                          BY:   PAUL M. JONNA, ESQ.
                                JEFFREY M. TRISSELL, ESQ.
                          P.O. Box 9120
                          Rancho Santa Fe, California 92067
                          (858)759-9930; (858)759-9948
                          pjonna@limandri.com;
                          jtrissell@limandri.com

                          THOMAS MORE SOCIETY
                          BY:   PETER BREEN, ESQ.
                          309 W. Washington St., Ste. 1250
                          Chicago, Illinois 60606
                          (312)782-1680
                          pbreen@thomasmoresociety.org


For State Defendants:      ROB BONTA
                          Attorney General of California
                          BY:   DARRELL W. SPENCE, ESQ.
                                Supervising Deputy Attorney
                                General
                          1300 I Street, Suite 125
                          Sacramento, California 95814
                          (916)210-6089
                          darrell.spence@doj.ca.gov

                          BY:   KATHERINE BRUCK, ESQ.
                                JENNIFER ANN BUNSHOFT, ESQ.
                                Deputy Attorneys General
                          455 Golden Gate Avenue, Suite 11000
                          San Francisco, California 94102
                          (415)229-0125; (415)510-3377
                          katherine.bruck@doj.ca.gov;
                          jennifer.bunshoft@doj.ca.gov

MIRABELLI, ET AL. V. OLSON, ET AL. - 03/09/2026

THE COURT:  Two o'clock.  So let's plan to be back here at 2:30.  Okay?  Thank you.

MR. JONNA:  Thank you, Your Honor.

(Recess taken from 1:59 p.m. to 2:42 p.m.)

THE CLERK:  Remain seated and come to order.  This court is once again in session.

THE COURT:  Okay.  We're back.  Did you folks make any progress?

MR. JONNA:  Your Honor, we did have a good conversation.  I think the conclusion is we're going to need the Court to make an order.  We're going to continue to discuss in good faith whether not only the fees can be negotiated but also the entire case, and we're going to have discussions, Mr. Spence and I and his team.  We couldn't agree on a number today.  They don't -- they couldn't reach out to everybody with authority.  We also didn't come back with a firm counter.

So I think we -- the process was useful and productive, but we're going to require an order from the Court on the fees.

THE COURT:  All right.  Well, listen, while you folks were doing that, I prepared an amendment to my injunction, which I'm going to -- I'm just going to hand you the last page which is where the -- so my injunction would continue as originally issued, but I've added that last paragraph, which I think is consistent with what the Supreme Court has said, and

which I think is consistent with what I understand you have asked the Ninth Circuit to do to modify the injunction, I think. If that is agreeable with you, then I will be more than happy to amend my injunction in order to save the Ninth Circuit some time and effort and to save some litigation.

(Pause.)

MR. SPENCE: Your Honor, so to be clear, paragraph 5 is what you added?

THE COURT: Yes.

MR. SPENCE: And so I don't -- I don't see a provision that expressly mentions kind of the ability to disclose -- not disclose the information in certain cases. This looks -- this doesn't -- at least from me reading it as I sit here today, I don't see anything expressly saying how exactly this intent can be effectuated.

MR. JONNA: Your Honor, I think the Court's proposed addition perfectly tracks the Supreme Court's language that I read in the record, and there's no need for the Court to fully enunciate the existing legal process for enforcing child abuse laws. I think the state is familiar with that process, and I think the language is sufficient.

THE COURT: Yeah. My language is taken right out of the Supreme Court's opinion, so -- and I think, basically, that details what a compelling interest is.

So the -- so the guidance, for example, that the

state has does not define what is a compelling interest where disclosure would occur.  Right?  It doesn't say that.  And neither does the Supreme Court.  What the Supreme Court says, and which is what I said, is that in the -- in the event that there's abuse, right, then the state has the ability.  There's a compelling -- there's a compelling reason to not disclose. And what you would have to do -- what the state would have to do is to follow the child abuse laws that are currently on the books in the state of California.  And so that's what I tried to do.

Now, maybe that's not enough for you, and if that's not enough for you, I understand.  That's fine.  I'm just offering it as a way of trying to make life easier for everyone.  So ...

MR. SPENCE:  Thank you, Your Honor.

MS. BUNSHOFT:  Your Honor, in the -- I think the Supreme Court language that was focused on in the submission to the Ninth Circuit for clarification --

(Court reporter interruption.)

The -- in the filing with the Ninth Circuit, the language that was focused on from the Supreme Court decision was that school employees may, quote, "preclude gender identity disclosure to parents who would engage in abuse," which is a little different than saying they can enforce -- you know, call, like, Child Protective Services or shield by enforcing

child abuse laws.  Because it seems like just enforcing child abuse laws may require, you know, telling the parents.

THE COURT:  It would?

MS. BUNSHOFT:  Yeah.  The parents would become aware of -- of it because of the calling Child Protective Services -- information.

THE COURT:  Just a second.  Just a second.

So if I understand, what you're saying is that you would want there to be a provision that says that disclosure would not occur -- the parents -- let me put it in plain language.  The parents would not be told about the child's expressed gender incongruity if the state or the school district felt that there was a compelling need to do so without resorting to the state's child abuse laws.  Is that what you're saying?

MS. BUNSHOFT:  Yes.  That -- that you could preclude gender identity to -- disclosure to parents who would engage in abuse.  That's the Supreme Court's language, which does suggest that you wouldn't have to disclose and then call Child Protective Services, but rather not disclose if there was a fear -- a real fear that the parents would be abusive if the disclosure was made.  There's a difference there.

(Pause.)

THE COURT:  Who would -- who would make the determination as to whether or not there's a compelling need to

disclose?

MS. BUNSHOFT: The -- the school would. Just as they would with any, you know, child abuse laws, there would be some information or evidence that would make it apparent to the school that disclosure of this information would put that child in harm of potential abuse. Otherwise, sort of, the cat's out of the bag if you have to disclose in the process of making the referral for -- you know, through Child Protective Services. At that point you've -- you know, you've -- you're disclosing.

Yes. The --

THE COURT: But -- so let me -- let me very quickly -- maybe we'll get back to the attorney fee issue, but let me just point out this.

So remember in the *Parham* case, for example, in the *Parham* case, the Supreme Court talked about the fact that there was a judicial process by which it could be determined whether or not the child would be hospitalized. Remember that?

MS. BUNSHOFT: Yes.

THE COURT: Okay.

So in essence, what the Supreme Court was saying was, Look, you parents have the right to make health care decisions for your children. Right? You can hospitalize your child, but there will be a judicial process, there will be a determine process by which we can decide whether or not you have exercised your right judiciously. If, after that process is

concluded, we conclude that no, you did not exercise your right judiciously, then the child would not be hospitalized.

So I think what I got out of *Parham* -- again, I'm not the sharpest knife in the drawer -- was that there's this overriding process that allows for, say, for example, a judicial determination of whether or not the parents' rights could be curtailed.

And the way, I think, you're telling me that you want the right to be curtailed is by simply a determination without any judicial process or any overview by anyone other than the school or the state that, Yeah, we, the school, we, the state, believe that there's a compelling need not to disclose, so we're not going to disclose. And there's no judicial process, there's no other process by which we can decide whether or not the parents' rights were rightfully curtailed.

You follow what I'm saying?

MS. BUNSHOFT:  I do.

I have two points.  One, I just wanted to point to you in the -- in the Supreme Court's per curiam decision, the full quote on page 5 is -- it says:

"The state's interest in safety could be served by a policy that allows religious exemptions while precluding gender identity disclosure to parents who would engage in abuse."

So it talks about precluding the disclosure, and

that's what's different from *Parham*. Here we're talking about the harm -- the potential harm is the disclosure itself. So if you have to disclose in order to engage in the process, you've already caused the harm by virtue of the disclosure, which the Supreme Court has said you could preclude gender identity disclosure in those cases.

So that is the point that we're making. It's different from the *Parham* case where there was no information that wasn't known. This was, you know, the child, the parents, the hospital's question about whether they should be hospitalized, but there wasn't any sort of privacy information or potential harm that would cause by some release of information, because, you know, that was quite a different scenario from here where it's -- it is, in fact, the knowledge, the information that, in and of itself, at that moment could cause the harm.

THE COURT: But who would -- who would -- so if I'm right, and if, I think, the Supreme Court has said that the primary right to determining whether or not a child's care, custody, and control, including making health care decisions, rests with the parents, right, if that is true, by allowing the state and/or the school districts to make that decision, you would once again be turning the right on its head, because you would be saying that it is now the state and the school district that have the right to decide whether or not

disclosure would occur.  And there's no review, there's no --
there's no way for anyone to -- for the parents to ever have
any input into that.

So you would have, say, for example -- I'm just going
to throw you a hypothetical -- say, the Poe girl.  So the Poe
girl is experiencing some gender incongruity, maybe some
depression, some anxiety.  She goes and talks to her counselor.
The counselor then forms the opinion that, you know, there's a
compelling need not to disclose to the parents.  There's no
disclosure.  The girl then goes and attempts to commit suicide.
We really haven't solved anything, have we?

So my paragraph No. 5 -- and I'm not going to spend
much more time on this -- but my paragraph No. 5 is essentially
a direct quote from the Supreme Court.  That's what the Supreme
Court said.  It's a direct quote.  It said:

"The injunction is intended to promote child safety

by guaranteeing the parents a role in some of the

most consequential decisions in children's lives

while permitting the state to shield children from

unfit parents by enforcing child abuse laws in cases

of a compelling need."

In other words, if, in fact -- I'll just throw a
hypothetical at you -- the child goes to the schoolteacher and
says, "Teacher, my parents said that they're going to kill me
if I ever express any gender incongruity," at that point in

time -- the teachers, by California law, are mandated reporters -- at that point in time, the teachers would have a process, and the process would be to turn the parents over to CPS. And then there would be a judicial determination as to whether or not this is true; this is a -- this is really a danger to the child. All right?

And I say that only because, you know -- I mean, I don't know if you have kids or if you -- you know, if you remember, but sometimes parents say things, you know. They don't really mean it. You know, they just -- right? So maybe somebody -- not the school district, not the state, not the parents -- has to decide whether or not there's a real danger to the child. Right? And I think that's what the Supreme Court was referring to in that quote. That is basically just a direct quote right out of the Supreme Court.

Now, if you can't agree to that, that's fine. I understand. You go to the Ninth Circuit. I'm sure the Ninth Circuit will give you -- you know, will do whatever it is they think is necessary. But I think this is a reasonable compromise that protects the child. It protects the state and the school district. It protects the parents.

So anyway. That's what I'm proffering.

So let's get back to the attorneys' fees. You've got a little time. You can talk to your cocounsel there while Mr. Spence is telling me about his position on the attorneys'

C E R T I F I C A T E

I, Adrian Dale Baule, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter on March 9, 2026; and that the format used complies with the rules and requirements of the United States Judicial Conference.

Date:  March 11, 2026

_____

Adrian Dale Baule, RMR, CRR, CSR
U.S. Official Court Reporter