Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
William T. Duke, SBN 361823
  wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
  pbreen@thomasmoresociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,

Plaintiffs,

v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

Defendants.

Case No.: 3:23-cv-0768-BEN-VET

**PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION**

Judge:       Hon. Roger T. Benitez
Courtroom:   5A

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT............................................................................................ 2

    I.     There Is No Need to Modify the Injunction........................................3

        A.    This Court's Role is to Give Effect to the Supreme Court's Order. .......................................................................3

        B.    California Fails to Carry Its Burden Under Strict Scrutiny. ....................................................................5

             1.    The Burden to Satisfy Strict Scrutiny Belongs to California. ..............................................................5

             2.    California Fails in its Burden.......................................... 6

        C.    Alternatively, Any Clarification Should Use Far More Specific Language Consistent with Parental Rights. ......................................................................10

    II.    There Is No Need to Modify the Notice Text.................................. 11

        A.    The First Sentence Is Accurate...............................................12

        B.    The Second Sentence Follows the Supreme Court's Opinion.................................................................. 13

    III.    The Equitable Factors Foreclose Relief. ........................................16

CONCLUSION..........................................................................................17

i

# TABLE OF AUTHORITIES

*Cases*

*Akers v. McGinnis*,
   352 F.3d 1030 (6th Cir. 2003) ........................................................................ 15

*Brown v. Entertainment Merchs. Ass'n*,
   564 U.S. 786 (2011) ........................................................................ 5, 6

*Bucklew v. Precythe*,
   587 U.S. 119 (2019) ........................................................................ 15

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ........................................................................ 9

*Danville Christian Acad., Inc. v. Beshear*,
   141 S. Ct. 527 (2020) ........................................................................ 15

*Dep't of Homeland Sec. v. D.V.D.*,
   145 S. Ct. 2627 (2025) ........................................................................ 4

*Doe v. San Diego Unified Sch. Dist.*,
   142 S. Ct. 1099 (2022) ........................................................................ 15

*Fusari v. Steinberg*,
   419 U.S. 379 (1975) ........................................................................ 7

*Green v. Miss United States of Am., LLC*,
   52 F.4th 773 (9th Cir. 2022) ........................................................................ 6

*Ill. State Bd. of Elections v. Socialist Workers Party*,
   440 U.S. 173 (1979) ........................................................................ 14

*In re Sanford Fork & Tool Co.*,
   160 U.S. 247 (1895) ........................................................................ 4

*Ind. State Police Pension Tr. v. Chrysler LLC*,
   556 U.S. 960 (2009) ........................................................................ 14

*Mahmoud v. Taylor*,
   606 U.S. 522 (2025) ........................................................................ 5, 10, 13, 15

*Mandel v. Bradley*,
   432 U.S. 173 (1977) ........................................................................ 7

*Mayweathers v. Newland*,
   258 F.3d 930 (9th Cir. 2001) ........................................................................ 3

ii

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
    686 F.2d 731 (9th Cir. 1982).........................................................................................2

*Meinhold v. United States Dep't of Def.*,
    34 F.3d 1469 (9th Cir. 1994)................................................................................. 2, 3

*Mirabelli v. Bonta*,
    146 S. Ct. 797 (2026)....................................................................................*passim*

*Mueller v. Auker*,
    700 F.3d 1180 (9th Cir. 2012).................................................................................7

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001).............................................................................. 2, 3

*Parham v. J.R.*,
    442 U.S. 584 (1979) ...............................................................................................7

*Pope v. Cty. of San Diego*,
    719 F. Supp. 3d 1076 (S.D. Cal. 2024)...................................................................7

*Prince v. Massachusetts*,
    321 U.S. 158 (1944)............................................................................................... 5

*Ramirez v. Collier*,
    595 U.S. 411 (2022) .............................................................................................. 5

*Ramos v. Louisiana*,
    590 U.S. 83 (2020)............................................................................................... 13

*Rodriguez v. Newsom*,
    974 F.3d 998 (9th Cir. 2020)............................................................................... 14

*Romer v. Evans*,
    517 U.S. 620, 631 (1996)..................................................................................... 15

*S. Bay United Pentecostal Church*,
    141 S. Ct. 716 (2021).......................................................................................5, 14

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ............................................................................................ 15

*Spector Motor Serv. v. Walsh*,
    139 F.2d 809 (2d Cir. 1943) ................................................................................ 14

*Taking Offense v. California*,
    18 Cal. 5th 891 (2025) ...........................................................................................8

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025).......................................................................................... 16

iii

PLAINTIFFS' RESPONSE TO STATE DEFENDANTS'
EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

*United States v. Carver,*
    260 U.S. 482 (1923) .................................................................................. 14

*Vukasovich, Inc. v. Comm'r,*
    790 F.2d 1409 (9th Cir. 1986) ...................................................................... 14

*Wallis v. Spencer,*
    202 F.3d 1126 (9th Cir. 2000) ........................................................................8

*Washington v. Trump,*
    145 F.4th 1013 (9th Cir. 2025) ..................................................................... 15

*Washington v. United States Dep't of Educ.,*
    161 F.4th 1136 (9th Cir. 2025) ........................................................................3

*Yellowbear v. Lampert,*
    741 F.3d 48 (10th Cir. 2014) ...........................................................................6

*Yeshiva Univ. v. Yu Pride All.,*
    143 S. Ct. 1 (2022) ..................................................................................... 15

*Ysursa v. Pocatello Educ. Ass'n,*
    555 U.S. 353 (2009) .................................................................................. 15

***Statutes & Rules***

Cal. Code Regs. tit. 2, § 11034(h) ...................................................................... 12

Cal. Code Regs. tit. 22, § 83001(g)(2) ................................................................. 12

Cal. Educ. Code § 221.5(f) ................................................................................ 12

Cal. Pen. Code § 11165.6 ....................................................................................8

Fed. R. Civ. P. 62(d) ............................................................................................2

Sup. Ct. R. 10 ................................................................................................... 14

***Other Authorities***

Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827 (2021).................. 14

PLAINTIFFS' RESPONSE TO STATE DEFENDANTS'
EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

## INTRODUCTION

The Supreme Court vacated the Ninth Circuit's stay of this Court's permanent injunction "with respect to the parents." *Mirabelli v. Bonta*, 146 S. Ct. 797, 802 (2026) (per curiam). It did so without qualification. The Supreme Court held that parents who seek religious exemptions "are likely to succeed on the merits of their Free Exercise Clause claim," *id.*, and that "[t]he same is true for the subclass of parents who object to those policies on due process grounds." *Id.* at 803. Justice Barrett, joined by the Chief Justice and Justice Kavanaugh, wrote to emphasize that "[o]ur resolution of the parents' likelihood of success on this claim is dictated by existing law." *Id.* at 804 (Barrett, J., concurring). And those justices framed the question at bar as, "Are the parents entitled to the benefit of the judgment entered by the District Court while California tries to overturn that judgment on appeal? The Ninth Circuit—itself acting on an interim basis—said 'no.' We disagree." *Id.* at 805 (Barrett, J., concurring). Now, claiming to be concerned that the Supreme Court's order is inconsistent with its reasoning, California asks this Court to modify its injunction and strip parents of the full "benefit of the judgment." *Id.* (Barrett, J., concurring).

The Court should not do so. ***First***, State Defendants seek to condition the parents' right to their permanent injunction on a vague precondition that it not apply "insofar as it would require school officials to disclose a child's transgender status to parents who would abuse their child." Dkt. 358, Ex Parte Appl., p.4:10-12. But the Supreme Court rejected California's arguments on this point, agreeing with this Court that "[t]he injunction also permits the State to shield children from unfit parents by enforcing child-abuse laws and removing children from parental custody in appropriate cases." *Mirabelli*, 146 S. Ct. at 803. California pressed this point in this Court, the Ninth Circuit, and the Supreme Court—*and lost each time*. Furthermore, even if the High Court had been silent on this point, California does not attempt to explain how its new standardless "abuse" exception would work in practice; who

would decide the matter; or even why current legal protections against abuse that this Court and the Supreme Court recognized are adequate are not. A standardless test appears to be California's goal, a way to nullify the injunction.

*Second*, California seeks to stay entirely or rewrite the notice requirement in Item 3 of the injunction—a provision that the Supreme Court specifically recognized as part of the injunction before it and chose not to disturb. *See Mirabelli*, 146 S. Ct. at 802. California thus asks this Court not merely to ignore a Supreme Court holding, but to reverse the High Court on matters it specifically considered and addressed. California meanwhile has resorted to defying the federal courts, prefacing the notice with a statement that, "[i]n the Attorney General's view, the statement required by the district court in its Order does not fully reflect the reasoning of the Supreme Court's opinion," and explaining why it is supposedly erroneous. *See* Jonna Decl., Ex. 1, State of Pride Report 2025 (updated Mar. 5, 2026); Ex. 2, Know Your Rights page (updated Mar. 5, 2026). The Court should decline the invitation to revisit what the Supreme Court already has resolved and admonish California that it cannot preface the notice with advice not to follow it.

## ARGUMENT

A district court, while an appeal is pending from a "final judgment that grants … an injunction," may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). This rule "does not restore jurisdiction to the district court to adjudicate anew the merits of the case after either party has invoked its right of appeal and jurisdiction has passed to an appellate court." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982). Rather, it "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). This includes the district court's power "to clarify its original injunction and to supervise compliance." *Meinhold v. United States Dep't of*

*Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir. 1994). But any modification should "not materially alter the status of the case on appeal." *Nat. Res. Def. Council*, 242 F.3d at 1166. A modification "can inure to the benefit of plaintiffs or defendants." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001).

A stay pending appeal is governed by four familiar factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Washington v. United States Dep't of Educ.*, 161 F.4th 1136, 1139 (9th Cir. 2025). The first two factors "are the most critical, and the court will address the last two factors only once the applicant has satisfied the first two factors." *Id.* (cleaned up).

## I.  THERE IS NO NEED TO MODIFY THE INJUNCTION.

State Defendants first ask the Court to modify the injunction to "confirm that the injunction is stayed insofar as it would require school officials to disclose a child's transgender status to parents who would abuse their child." Dkt. 358, Ex Parte Appl., pp.4:10-12, 6:8-9:26. California proposes two ways to achieve that result. *First*, they suggest school officials should be free to determine (with no oversight) that disclosure to a parent about his or her child's gender incongruence would lead (someday, at some unknown time) to abuse and then withhold the information. *Id.* at 7:1-24 & n.1. *Second*, State Defendants suggest that once a teacher makes a mandatory report of abuse, disclosure of the child's gender incongruence to the parent would no longer be required. *Id.* at 7:25-9:26. Both suggestions should be rejected. However, if the Court is inclined to clarify the injunction, it should adopt alternative language proposed by Plaintiffs below.

### A.  This Court's Role is to Give Effect to the Supreme Court's Order.

In the context of granting an emergency order, the Supreme Court recently reaffirmed that "any matter 'disposed of by' decree of this Court must be carried

'into execution, according to the mandate,' by the courts below," whose only role is "to give effect to" it. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2630 (2025) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)) (granting emergency motion for clarification). Thus, this Court's role is solely to interpret and faithfully apply the Supreme Court's ruling.

The Supreme Court's opinion addressed the rare problem of child abuse in this context twice. First, the Supreme Court wrote:

> California's policies also appear to fail the narrow-tailoring requirement. The State's interest in safety could be served by a policy that allows religious exemptions while precluding gender-identity disclosure to parents who would engage in abuse. For these reasons, the parents who object to the California policies on free exercise grounds are likely to succeed on the merits.

*Mirabelli v. Bonta*, 146 S. Ct. 797, 802-03 (2026). Second, the Court wrote:

> Everyone agrees that children's safety is the overriding equity. And the injunction here promotes child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives. The injunction also permits the State to shield children from unfit parents by enforcing child-abuse laws and removing children from parental custody in appropriate cases.

*Id.* at 803. These holdings came after the Supreme Court reviewed this Court's order denying a stay, which stated: "While there is the possibility that an abusive parent will be notified without a stay, there continue to exist criminal laws against parental abuse of their children. This Court's decision in no way affects those laws, and the Defendant is free to continue to enforce the same." Dkt. 313 at 4:24-27.

Thus, as stated, "[t]he injunction … permits the State to shield children from unfit parents by enforcing child-abuse laws and removing children from parental custody in appropriate cases." *Mirabelli*, 146 S. Ct. at 803. The sole question is whether the injunction should be modified and/or clarified to effectuate the Supreme Court's statement that strict scrutiny *may* be satisfied by a *hypothetical policy* "precluding gender-identity disclosure to parents who would engage in abuse." *Id.* It

should not be, given the Supreme Court's recognition that the injunction *already* sufficiently advances and protects children's safety—both with respect to fit and unfit parents.

### B.    California Fails to Carry Its Burden Under Strict Scrutiny.

The primary problem with California's motion is that the burden to satisfy strict scrutiny *belongs to the State*—not Plaintiffs. Yet California makes no attempt to satisfy that burden, assuming that the Supreme Court's statement that its exclusion policies could be more narrowly tailored means that such tailoring would satisfy strict scrutiny. That's wrong. The Court did not hide an elephant in a mousehole, upending decades of jurisprudence sub silentio. And even if California had attempted to adequately brief strict scrutiny—in the odd procedural posture of a motion for a partial stay of an injunction pending appeal—its arguments would fail.

### 1.    The Burden to Satisfy Strict Scrutiny Belongs to California.

A regulation interfering with parental decisionmaking "must fall *unless shown* to be necessary for or conducive to the child's protection against some clear and present danger." *Prince v. Massachusetts*, 321 U.S. 158, 167 (1944) (emphasis added). Strict scrutiny thus requires the *government* to "demonstrate that its policy advances interests of the highest order and is narrowly tailored to achieve those interests." *Mahmoud v. Taylor*, 606 U.S. 522, 565 (2025) (cleaned up).

Once the plaintiff has made his case, "it is *the government that must show* its policy is the least restrictive means of furthering a compelling governmental interest." *Ramirez v. Collier*, 595 U.S. 411, 432 (2022) (cleaned up) (emphasis added), and "because [the government] bears the risk of uncertainty, ambiguous proof will not suffice." *Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 786, 799-800 (2011). "[C]onjecture" and "hypothetical[s]," and other "'[s]uch speculation is insufficient to satisfy' [the government's] burden," *Ramirez*, 595 U.S. at 430, because "[t]he whole point of strict scrutiny is to test the government's assertions." *S. Bay United Pentecostal Church*, 141 S. Ct. 716, 718 (2021) (Statement of Gorsuch, J.).

Further, the government cannot assert generally that it has an interest in preventing "serious mental, financial, and emotional harm on transgender individuals," but must show that its proposed rule is actually necessary to achieve that goal. *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 791-92 (9th Cir. 2022). In other words, even when the government has identified a problem in need of solving, the restriction "must be actually necessary to the solution," for the "government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown*, 564 U.S. at 799, 803 n.9. And, generally, "the government must prove the 'compellingness' of its interest in the context of 'the burden on *that person.*'" *Yellowbear v. Lampert*, 741 F.3d 48, 57 (10th Cir. 2014) (Gorsuch, J.).

### 2.    California Fails in its Burden.

Plaintiffs do not doubt that protecting children is a compelling government interest. And it *may* very well be the case that "a law that forbids disclosure to parents who would engage in [*actual*, legally proscribed] abuse would satisfy strict scrutiny." Ex Parte Appl., p.6:24-27. But the Supreme Court did not determine that *any* such law would survive strict scrutiny because the relevant details were never provided to it—just like California failed to present them to this Court in response to Plaintiffs' motion for summary judgment and just as California fails to provide them now. Indeed, very quickly State Defendants move from the Supreme Court's language of "would engage in abuse," to vaguer language about officials who "reasonably believe" that disclosure "will result in child abuse." The absence of any explanation for this shift should give the Court pause. *See* Ex Parte Appl., 7:7-9.

Plaintiffs dispute that it would ever be proper for a party to attempt to satisfy strict scrutiny as part of a motion for a partial stay of an injunction pending appeal. The time and place for making that showing was *before* the judgment was entered. In any event, in attempting to analyze the legal issues that California ignored, the long-standing rule is that parental rights can be overridden in only two situations. "First, these rights may be extinguished where, after a formal hearing in which 'all available

sources' were considered and the parents were afforded due process, a neutral adjudicator concludes that the parents neglected or abused their child." *Pope v. Cty. of San Diego*, 719 F. Supp. 3d 1076, 1086 (S.D. Cal. 2024) (quoting *Parham v. J.R.*, 442 U.S. 584, 606-07 (1979)). "Second, without such a 'due process' hearing, the state can only override parental rights to make medical decisions in 'emergency situation[s]' 'when the children are subject to immediate or apparent danger or harm.'" *Id.* at 1086 (quoting *Mueller v. Auker*, 700 F.3d 1180, 1187 (9th Cir. 2012)). This Court previously recognized as much in this case. *See* Dkt. 39, Preliminary Injunction Hearing Transcript, at 42 ("The Court: It seems [too] extreme. It seems so extreme to want to keep information about a child's health and welfare from the parents, absent the *showing that the parent is abusive.*") (emphasis added).

Here, there is no evidence that the Supreme Court meant to overrule this longstanding precedent in *Mirabelli v. Bonta*—to the contrary, a "summary affirmance … is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391-92 (1975) (Burger, C.J., concurring)). Thus, the Court should not modify the injunction to accept California's first argument that the parental right can be overridden through a "reasonabl[e] belie[f]" by a single government official that the parent will engage in wholly undefined (and thus inherently subjective) "abuse" of the child. *See* Ex Parte Appl., p.7:1-24 & n.1.

Regarding California's second argument—that a parents' right to know about their child's gender incongruence should be suspended once they are *reported* to Child Protective Services, *see* Ex Parte Appl., p.7:25-9:26—California fails to explain why that is necessary to prevent child abuse. Stated differently, why is the mere act of reporting (even if wholly unjustified or meritless) a sufficient predicate to "depriv[e] [a] parent[] of information critical to their children's health and well-being." *Mirabelli*, 146 S. Ct. at 809 (Kagan, J., dissenting) (agreeing with this Court that

California's policies withhold such "critical" information from parents). And why is Child Protective Services unable to timely investigate and remediate instances of suspected child abuse such that withholding information from parents is the *only* remedy? Absent a court order, parents' rights cannot be overridden "unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). Even then, "the scope and degree of the state interference" can extend no further than is "justified by the alleged exigency." *Id.* at 1140. If there is an imminent danger of abuse, the child should be immediately taken into the custody of the state. If there is not an imminent danger of abuse, then parents' rights should be respected.

California also conspicuously fails to define "abuse." Under California law, "child abuse or neglect" includes: (1) "physical injury or death inflicted by other than accidental means upon a child by another person"; (2) "sexual abuse"; (3) "neglect"; (4) "the willful harming or injuring of a child or the endangering of the person or health of a child"; and (5) "and unlawful corporal punishment or injury." Cal. Pen. Code § 11165.6. California could easily argue that a parent's refusal to affirm a child's transgender identity is child abuse under this section. Indeed, California has determined that misgendering seniors in long-term care facilities is elder abuse. *See Taking Offense v. California*, 18 Cal. 5th 891, 930 (2025).

Further, the testimony of California's experts is unequivocal that, in *their* view, there is allegedly no instance where it would be appropriate for a parent to say "no" to a social transition, Dkt. 243-3, Dep. of Darlene Tando, p.324:5-18; Dkt. 243-7, Dep. of Christine Brady, pp.222:15-223:17, and that affirmation is necessary for a gender incongruent child's psychological well-being. Dkt. 243-4, Report of Darlene Tando, ¶¶ 39, 50-54, 55-56, 57-63, 64-66; Dkt. 243-8, Report of Christine Brady, §§ III.D.1(f)-(i), III.D.2(d)-(e), (q)-(aa), III.D.3(a)-(k), III.D.4(c)-(i), III.D.9(c)-(i), III.D.14(a)-(d). And in the ACLU of Southern California's recent FAQ page on the Supreme Court's decision in this case, it indicated that "abus[ive]" families are

Plaintiffs' Response to State Defendants'
Ex Parte Application to Modify the Permanent Injunction

those that are not *"immediately ready to be supportive*," or are not *"immediately affirming*," and rather "react in ways that *could* lead to serious trauma, harmful responses like conversion therapy"—i.e., *talk* therapy that the Supreme Court appears poised to uphold in *Chiles v. Salazar*, No. 24-537 (Oral Arg. October 7, 2025)—"or even escalation to violence." Jonna Decl., Ex. 3, Know Your Rights – Mirabelli v. Bonta FAQ (Mar. 19, 2026) (emphasis added). This guidance confirms Plaintiffs' concerns with opening up potential loopholes to this Court's carefully tailored injunction.

But perhaps most alarmingly, one *amicus* brief filed with the Supreme Court discussed stories of schools calling Child Protective Services solely because the parent would not affirm the child's gender transition, and/or *actually* removing the children from the parent's custody. *See* Jonna Decl., Ex. 4, Brief of Child & Parental Rights Campaign, Inc. and Our Duty USA as *Amici Curiae* in Support of Applicants, *Mirabelli v. Bonta*, No. 25A810 (U.S. Jan. 20, 2026). Despite these legitimate concerns, California offers no meaningful explanation here.

In sum, Plaintiffs agree that the Supreme Court did not foreclose the possibility that California may be able to thread the needle and enforce a regime that satisfies strict scrutiny. But the Supreme Court did not actually rule on that issue because it was never squarely presented to it. *Accord Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014) (HHS contraceptive mandate violated strict scrutiny as applied to religiously objecting for-profits, given HHS had provided a less restrictive "accommodation" to non-profits; but *also* noting that "[w]e do not decide today whether [the non-profit 'accommodation'] complies with RFRA"). California could have drafted a narrower policy (with proper definitions and clarifications to ensure compliance with parental rights) and made its strict scrutiny arguments during litigation, assuming that policy were challenged in court. But instead it asks this Court to do the work the Supreme Court assigned to *California*, not this Court. And it does so without offering any cogent policy as part of its motion—in lieu of a de

9

facto blank check susceptible to being used as—if not *intentionally designed* to be—an end run around this Court's *Supreme-Court-approved* injunction, which this Court need not modify. But, at the very least, the burden to make and support that argument is entirely California's, and California has utterly failed to do so.

### C. Alternatively, Any Clarification Should Use Far More Specific Language Consistent with Parental Rights.

If this Court is inclined to clarify the injunction, it should reject California's vague language that "the order does not compel disclosure 'to parents who would engage in abuse.'" Ex Parte Appl., pp.2:1-2, 6:9. Instead, Plaintiffs believe that California's later proposed language—with clarifying additional language ensuring fidelity to this Court's Orders and the Supreme Court's parental rights jurisprudence—would meet State Defendants' asserted aims. *See* Ex Parte Appl., p.9:10-17; *Mahmoud*, 606 U.S. at 569 (duty to "notify [parents] in advance"); Dkt. 307, Order Granting Summary Judgment, at p.5:10-11 ("Disagreement is not abuse, and the court so finds."). Specifically, California wrote:

> [I]f a school official reasonably suspects that a parent will abuse a child upon learning of their transgender status, the school official is not obligated to disclose the information to the parent in the moment, but instead must exercise their responsibilities as a mandatory reporter, at which point the relevant law enforcement or child welfare process would unfold. The assumption implicit in this approach is that if the parents learn of the student's transgender status during the ensuing process (as they almost certainly will), the process will be sufficient to protect the child from ultimately suffering any threatened abuse.

Ex Parte Appl., p.9:10-17.

As California observes, with this approach, the parents "almost certainly will" learn of the child's desire to change gender—thus complying with *Mahmoud*'s requirement of prior notice and the Supreme Court's holding here that, "Gender dysphoria is a condition that has an important bearing on a child's mental health, but when a child exhibits symptoms of gender dysphoria at school, California's policies

conceal that information from parents and facilitate a degree of gender transitioning during school hours. These policies likely violate parents' rights to direct the upbringing and education of their children." *Mirabelli*, 146 S. Ct. at 803. At the same time, the approach provides a moderate delay to allow time for the child welfare process to "protect the child from ultimately suffering any threatening abuse." Ex Parte Appl., p.9:17. Based on this, Plaintiffs propose adding a new Paragraph 5, as follows:

> 5. (a): If a school official reasonably suspects that a parent or guardian will abuse a child upon learning of their transgender status, the school official is not obligated to disclose the information to the parent or guardian in the moment, but instead must exercise his or her responsibilities as a mandatory reporter, at which point the relevant law enforcement or child welfare process would unfold. Implicit in this approach is that the parents or guardians will learn of the student's transgender status during the ensuing process, but the process will be sufficient to protect the child from ultimately suffering any threatened abuse.

> (b): All other aspects of the above injunction remain in effect such that Defendants shall not permit or require any employee in the California state-wide education system to facilitate a child's social gender transition at school, including by using an opposite-sex name and opposite-sex pronouns or by giving the child access to opposite-sex facilities and activities, before (i) providing notice to the parent or guardian and an opportunity to object or (ii) obtaining a judicial termination of parental rights.

> (c): A parent or guardian's disagreement with a child's stated gender identity, or a parent or guardian's religious or conscientious inability to affirm a child's stated gender identity, is not abuse.

## II. THERE IS NO NEED TO MODIFY THE NOTICE TEXT.

State Defendants also ask the Court to stay enforcement of the notice requirement in the injunction, in full or in part. Ex Parte Appl., p.9:27-11:18. That notice requirement states:

> [1] Parents and guardians have a federal constitutional right to be informed if their public school student child expresses gender incongruence. [2] Teachers and school staff have a federal

11

constitutional right to accurately inform the parent or guardian of their student when the student expresses gender incongruence. [3] These federal constitutional rights are superior to any state or local laws, state or local regulations, or state or local policies to the contrary.

Dkt. 308 at 2-3.

California argues that the notice provision is inaccurate for two reasons and asks the Court to revise it. The Court should decline. More troubling still, the California Attorney General has already resorted to the self-help of prefacing the notice with his opinion that the notice does not accurately reflect the Supreme Court's reasoning and should not be understood at face value. The Court should deny California's request to modify the notice provision and direct California to remove that prefatory disclaimer. *See* Jonna Decl., Exs. 1-2.

### A. The First Sentence Is Accurate.

California first argues that the notice is inaccurate because its first sentence supposedly implies that "school officials have an affirmative constitutional duty to inform parents whenever they observe a student's expression of 'gender incongruence,' effectively imposing a mandatory 'see something, say something' obligation." Ex Parte Appl., p.10:10-13. That objection misreads both the notice and California law.

Under California law, public schools may not discriminate based on gender identity. That includes denying access to sex-segregated facilities and activities based on biological sex and so-called misgendering—i.e., the core aspects of a social transition. Cal. Educ. Code § 221.5(f); Cal. Code Regs. tit. 2, § 11034(h). California defines "gender identity" as an "individual's *stated* gender identity … without regard to any contrary statement by any other person." Cal. Code Regs. tit. 22, § 83001(g)(2) (emphasis added). So, a child is treated as transgender under California law only if she *claims to be transgender*—not because a teacher notices some gender non-conforming behavior. And if a child claims to be transgender, such that a social transition should occur under California law, then that social transition cannot

occur absent parental notice and consent. *See Mirabelli*, 146 S. Ct. at 803 ("California's policies … facilitate a degree of gender transitioning during school hours. These policies likely violate parents' rights").

The Supreme Court also made clear that California's policies "permitting *disclosure* of a student's gender transitioning at school only if the student consented" squarely trigger its recent decision last year in *Mahmoud*. *See Mirabelli*, 146 S. Ct. at 802 (citing *Mahmoud*, 606 U.S. at 559, 563). In turn, *Mahmoud* held that the school district there had duty to "notify [parents] in advance" of programing that would burden parents' religious exercise, including because the district was "doubtless aware of the presence in [the] County of substantial religious communities whose members hold traditional views on marriage, sex, and gender," and the programming at issue "pose[s] a very real threat of undermining the religious beliefs and practices that parents wish to instill in their children." *Mahmoud*, 606 U.S. at 565, 567, 569 (cleaned up). So too here, as the Supreme Court expressly recognized. *See Mirabelli*, 146 S. Ct. at 802.

Yet California has doubled down on this erroneous reasoning. In another case, California has argued that the Supreme Court's opinion has no effect on AB 1955 because the Supreme Court's opinion merely prohibits active efforts to "shut out" parents via "conceal[ment]." Jonna Decl., Ex. 5, Supplemental Brief, *City of Huntington Beach v. Newsom*, No. 25-3826, Dkt.55 (9th Cir. Mar. 13, 2026). But because the Court held that the Fourteenth Amendment forbids schools from facilitating a child's gender transition without parental consent, and that the First Amendment's "advance notice" requirements under *Mahmoud* squarely apply here, schools are effectively mandated to report such information to parents in order to inquire about their consent. Maintaining the first sentence in the notice is crucial.

### B.    The Second Sentence Follows the Supreme Court's Opinion.

State Defendants next argue that the second sentence should be stayed because "the Supreme Court let stand the Ninth Circuit's stay of the permanent injunction

with respect to the teachers' claims." Ex Parte Appl., p.10:26-27. Utterly irrelevant. When applying Supreme Court precedent, lower courts "should decide cases according to their reasoned view of the way Supreme Court would decide the pending case today." *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1416 (9th Cir. 1986). "The measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before [the Supreme Court]." *Id.* (quoting *Spector Motor Serv. v. Walsh*, 139 F.2d 809, 823 (2d Cir. 1943) (L. Hand, J., dissenting)). That principle applies with special force where the Supreme Court has just spoken, even in an interim posture, because such rulings provide especially strong guidance as to the Court's current view of the merits. Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827, 844 (2021).

To be sure, the precedential effect of a summary order extends only to the issues necessarily decided. *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182-83 (1979); *see Ramos v. Louisiana*, 590 U.S. 83, 104-05 (2020) (plurality). This means that a summary *grant* of relief is binding precedent, albeit limited in scope. *Rodriguez v. Newsom*, 974 F.3d 998, 1005 (9th Cir. 2020). It also means that the summary *denial* of relief provides no precedent. The High Court is not a court of error correction. *See* Sup. Ct. R. 10. Thus, a denial of relief is "*not* a decision on the merits of the underlying legal issues." *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009) (emphasis added); *see also United States v. Carver*, 260 U.S. 482, 490 (1923) ("The denial of a writ of certiorari imports no expression of opinion upon the merits").

In contrast, in interpreting the Court's summary *opinions*, they provide "extensive guidance" that lower courts are expected to follow. *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 719 (2021) (Statement of Gorsuch, J., joined by Thomas and Alito, JJ.) ("Today's order should have been needless; the lower courts in these cases should have followed the extensive guidance this Court

already gave."); *id.* at 717 (Barrett, J., concurring, joined by Kavanaugh, J.) ("I agree with Justice GORSUCH'S statement [in relevant part]"). This is because "just as binding as th[e] holding is the reasoning underlying it." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019). Indeed, many of the Supreme Court's opinions deal with preliminary determinations. *See, e.g.*, *Mahmoud*, 606 U.S. at 546 (preliminary injunction: "we hold that the parents are likely to succeed").

Here, the Supreme Court's *denial* of summary relief as to the teachers proves nothing by itself. That denial may have rested on any number of grounds, such as lack of necessity. *See, e.g.*, *Yeshiva Univ. v. Yu Pride All.*, 143 S. Ct. 1, 1 (2022) (application denied without prejudice as unnecessary); *Doe v. San Diego Unified Sch. Dist.*, 142 S. Ct. 1099, 1099 (2022) (same); *Danville Christian Acad., Inc. v. Beshear*, 141 S. Ct. 527, 527-28 (2020) (same). That lack of necessity grounds was especially likely here: the Court's reasoning as to parents is clear, and that reasoning necessarily bears on whether teachers and staff may accurately inform parents about the same facts.

This Court correctly held that strict scrutiny is triggered under the Free Exercise clause. *See* Dkt. 307. But—whether under the Free Exercise Clause or the Free Speech Clause—objections to government regulations are always *at least* subject to rational basis review. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009) (speech); *Sherbert v. Verner*, 374 U.S. 398, 406 (1963) (religion); *see Akers v. McGinnis*, 352 F.3d 1030, 1037 (6th Cir. 2003) (government employer). Under that standard, the regulation must have "a rational relation to *legitimate* state interests." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (emphasis added). But California has "no legitimate interest in enforcing an Order that is likely unconstitutional." *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025). Or, as the Ninth Circuit recognized, the right of teachers to object "rises and falls on parents' rights." Dkt. 320 at 12.

The California School Boards Association (CSBA)—the author of the gender secrecy policy at issue in this case (AR 5145.3)—recognizes as much, now advising schools that "[t]he teacher plaintiffs will likely receive the relief they sought." The

PLAINTIFFS' RESPONSE TO STATE DEFENDANTS'
EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

CSBA wrote:

> The teacher plaintiffs will likely receive the relief they sought, even though the district court's specific order as to them is still stayed. Because the parent's rights prohibit the state from permitting or requiring teachers to keep information about student gender presentation private from parents or guardians, the teachers will be able to disclose the information.

Jonna Decl., Ex. 6, CSBA, *Supreme Court Strengthens parental notification rights for gender transitions* (Mar. 6, 2026). Plaintiffs made this exact rational basis argument to the Ninth Circuit. *See* Jonna Decl., Ex. 7, *Mirabelli v. Bonta*, No. 25-8056, Dkt.31 (9th Cir. Mar. 16, 2026). That California had the opportunity to, but chose not to, address this issue is telling.

## III.   The Equitable Factors Foreclose Relief.

Lastly, in light of the Supreme Court's opinion, it is impossible for the State Defendants to show the extraordinary circumstances required for a further partial stay of the injunction pending appeal. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases.").

***Irreparable harm.*** First, California identifies no concrete, imminent harm. California's mandatory reporting laws, dependency proceedings, and removal authority remain fully operative. California has identified no specific parent who "would engage in abuse" as a result of the injunction, nor any specific child at risk. Its argument rests on the same generalized, speculative harms that the Supreme Court weighed and rejected.

***Balance of equities and public interest.*** Second, on the public interest, the Supreme Court held that "the injunction here promotes child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives." *Mirabelli*, 146 S. Ct. at 803. This is binding.

///

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the State Defendants' motion to modify the permanent injunction and admonish the California Attorney General to remove the preface to the Court's notice.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 23, 2026          By:

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

17

## CERTIFICATE OF SERVICE

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-VET

_____

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION;**
- **DECLARATION OF PAUL M. JONNA, ESQ IN SUPPORT OF PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov
E-Mail: Julie.Veroff@doj.ca.gov
E-Mail: Helen.Hong@doj.ca.gov
E-Mail: Samuel.Harbourt@doj.ca.gov
E-Mail: Joshua.Klein@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
California Department of Justice
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for CDE Defendants**

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on March 23, 2026, at Rancho Santa Fe, California.

_____
Kathy Denworth