Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
William T. Duke, SBN 361823
  wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
  pbreen@thomasmoresociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,

   Plaintiffs,

  v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

   Defendants.

Case No.: 3:23-cv-0768-BEN-VET

**PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUPPLEMENTAL OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION**

Judge:  Hon. Roger T. Benitez
Courtroom: 5A

**TO:  THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs, by and through counsel, will and hereby do apply to the Court, for leave to supplement their opposition to the State Defendants' ex parte application to modify the permanent injunction with additional argument and evidence.

This ex parte application is made on the basis that Defendants' reply raised new, troubling arguments and that Plaintiffs have engaged in additional research and obtained additional evidence that is relevant to the motion, and which could not have reasonably been obtained within the two court days Plaintiffs had to oppose the motion.

On Friday, March 27, 2026, Plaintiffs provided notice of this ex Parte application to the State Defendants in compliance with S.D. Cal. CivLR 83.3(g)(2).

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 27, 2026          By:  _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

PLAINTIFFS' EX PARTE APPL. FOR LEAVE TO FILE SUPPL OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

## SUPPLEMENTAL OPPOSITION

As explained below, Plaintiffs' subsequent research has confirmed that the Court need not modify the permanent injunction at all to address State Defendants' concerns about parents who "would engage in abuse." *Mirabelli v. Bonta*, 146 S. Ct. 797, 803 (2026). However, to the extent that the Court believes doing so is necessary, Plaintiffs have identified superior modifications to the injunction. In addition, State Defendants' reply briefing shows that clarification is needed from the Court that their current actions are prohibited.

### I.    The Court Should Deny the Request to Include Language in the Injunction About Parents Who "Would Engage in Abuse."

On Thursday, March 19, 2026, State Defendants filed an ex parte application to modify the permanent injunction order, Dkt. 358, which Plaintiffs then opposed on Monday, March 23, 2026. Dkt. 359. As stated therein, Plaintiffs' primary argument was that there was no need to make *any* modification to the permanent injunction. *See* Dkt. 359 at 8:13-15:4. The parties fully briefed and argued this point in their summary judgment papers, and this Court has repeatedly made clear that the permanent injunction does not prohibit California from using its standard child protective services processes to protect children. *See, e.g.*, Dkt. 307, MSJ Order, at 5:19-25; Dkt. 313, Order Denying Stay, at 4:24-27. That specific balancing of the interests, i.e., respecting parental rights until and unless the regular judicial processes terminate parental rights, was upheld by the Supreme Court. *See Mirabelli v. Bonta*, 146 S. Ct. 797, 803 (2026) ("[T]he *injunction here* promotes child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives" and "also *permits the State to shield children from unfit parents by enforcing child-abuse laws* and removing children from parental custody *in appropriate cases*.") (emphases added). And "any action taken pursuant to [modify a permanent injunction] may not materially alter the status of the case on appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166, 1168 (9th Cir. 2001) (cleaned up) ("the modification was a minor

adjustment of the injunction that preserved the status quo.").

Nevertheless, because State Defendants did not propose specific text to effectuate their requested modification, Plaintiffs, relying on Defendants' alleged secondary proposal, attempted to craft a mutually agreeable modification to the injunction that would also protect parents' fundamental rights. *See* Dkt. 359 at 15:5-16:22. Since that time, Plaintiffs have had the ability to consult with juvenile law experts who have confirmed that the modifications urged by Defendants would be ripe for abuse and would substantially undermine the substantive parental rights that Plaintiffs fought hard to vindicate in this litigation, especially in view of the procedural law in California that has developed around protecting parental rights and the realities of juvenile court practice. As the parties must agree to any modification that would "materially alter" the case and Defendants have instead objected strenuously, Plaintiffs withdraw it. *See* Jonna Decl., ¶2.

Two subject-matter experts with whom Plaintiffs consulted are attorneys Erin Friday and Shawn McMillan. As explained in her declaration, Ms. Friday is the President of Our Duty-USA, a nonprofit advocacy group active in this area. Friday Decl., ¶¶2-3. As a result of her work leading that group, she has worked with nearly 500 parents of gender incongruent children and has advised parents in nearly a dozen states who lost custody of their gender incongruent children. *Id.* at ¶¶15-16. As she explains, a significant problem is that when a school official asks a child whether it is "safe" to speak to their parents about their gender incongruence, the school is actually priming the child to respond with inorganic fear. *Id.* at ¶20. After, it is revealed that the child fails to appreciate the true consequences of being taken into the custody of the state, leading to significant harm for both child and parent. *Id.* at ¶¶21-22. Thus, rigorous adherence to the accepted standards for child abuse is imperative.

Mr. McMillan is a private litigator in San Diego County whose practice for over fifteen years has been 95% devoted to 42 U.S.C. § 1983 actions challenging

PLAINTIFFS' EX PARTE APPL. FOR LEAVE TO FILE SUPPL OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

improper seizure of children from their parents' custody and the improper provision of non-emergency medical care to children while in the custody of the state. *See* McMillan Decl., ¶¶2-10. His primary opinion is that there is no practical way to modify the permanent injunction along the lines that State Defendants request. *Id.* at ¶¶11, 19. He explains that the baseline understanding is that the government must seek a warrant to seize a child or otherwise interfere with the parental right, which usually takes 2-4 hours. *Id.* at ¶¶12, 16.

In practice, this means that the "emergency" exception must be one where the child is in imminent harm within the next several hours—and must be based on very concrete evidence—which is never the case, for example, in situations alleging emotional abuse or general neglect. *Id.* at ¶¶15-16. Moreover, based on the nature of how the juvenile dependency proceedings are organized, there is no practical way to keep *information* about a child from her parents while maintaining the child in the parent's custody. Infringing on that right to information would require a judicial order, and due process requires permitting the parent to know what he is fighting against. *Id.* at ¶¶17-19.

The Supreme Court set forth a hypothetical in which a more narrowly tailored policy would be one in which the State "preclud[es] gender-identity disclosure to parents who would engage in abuse." *Mirabelli*, 146 S. Ct. at 803. State Defendants then attempted to find a way of navigating that narrow path without explaining the details of how to determine that a parent "would" take certain action (potential, future action). California may be able to amend its current laws and create a regime in which this is possible, but it is not currently possible. The State Defendants' proposal to simply permit a teacher to assert that she "reasonably believe[s]" that the parent would engage in abuse will not work. *See* Dkt. 358 at 6:14, 7:8.

When State Defendants announced this standard, they stated that this standard was meant to incorporate mandatory reporter standards. *See* Dkt. 358 at 7:13-24. But the *mandatory* reporter statute is only triggered by past or ongoing abuse.

PLAINTIFFS' EX PARTE APPL. FOR LEAVE TO FILE SUPPL OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

There is no duty for a mandatory reporter to make a report based on suspicion of *future* abuse and no reasonable likelihood that teachers or other school officials would be well suited to make such a predictive judgment. *See* Cal. Pen. Code § 11166; *see also id.* at § 11165.12(b).

In light of the above, Plaintiffs reassert that no change is needed to the Court's permanent injunction to protect California's legitimate interests. The Court has made clear that the State can still exercise its regular child protective services regime, and the language from the Supreme Court was never intended to be a giant loophole for California to exploit. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (2024) (Gorsuch, J., concurring) ("As Judge Easterbrook has put it, an 'opinion is not a comprehensive code; it is just an explanation for the Court's disposition.'"). However, should the Court believe that modifications are appropriate, Plaintiffs propose additional clarifying language in news Paragraphs 1(e) and 5, and in Paragraph 3, in a draft proposed modified permanent injunction being submitted herewith. *See* Jonna Decl., Exs. 1 & 2.

## II.    The Court Should Clarify the State Defendants' Misinterpretation of the Permanent Injunction

State Defendants filed their reply in support of their ex parte application on Tuesday, March 24, 2026. Therein, State Defendants made two alarming claims. First, they stated that the Court's permanent injunction only enjoins them from socially transitioning children through pronouns and names without parental consent, such that they are still free to facilitate social transitions in every other way—e.g., changing a child's bathroom and other facility use, a child's activities, etc.—on the basis of asserted gender identity, without parental notice or consent. Dkt. 361 at 2-3. Second, they stated that they could comply with the Court's order via informing all parents at the beginning of the school year of their Parental Exclusion Policies. Dkt. 361 at 3. Both issues require immediate clarification from the Court.

///

### A.    The parental right covers all aspects of a social transition.

The Parent-Plaintiffs' claims in their motion for summary judgment focused on their right to *direct* the upbringing of their children, including to direct the social transition. *See* Dkt. 247.1 at 48 ("1. Directing a Child's Social Transition is Within the Parental Right"). Plaintiff's motion for summary judgment explained that:

> Here, a social transition encompasses behaving—in all regards—as a member of the opposite sex. That includes adopting a new name and pronouns, adopting a new opposite-sex presentation (hair, clothes, makeup), and beginning to use sex-segregated facilities and participating in sex-segregated activities as a member of the opposite sex. Anderson Rep., ¶¶17, 97-104, 132. As this Court previously noted, the decision over a social transition would seem to fall within the right to direct the "upbringing" of one's children, *Mirabelli*, 691 F. Supp. 3d at 1210, as the above precedent collectively shows that "parents retain a constitutionally protected right to guide their own children on matters of identity, including the decision to adopt or reject various gender norms and behaviors," *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 556 (E.D. Ky. 2024), and "to have a say in what a minor child is called and by what pronouns they are referred." *Ricard v. Geary Cnty. Unified Sch. Dist. 475*, No. 5:22-cv-4015, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022). And because a child's social transition is one over which parents have a fundamental right, schools may "not interfere with the right of the parents to make [that] intimate decision[]." *Fields II*, 447 F.3d at 1191.

Dkt. 247-1 at 48:9-23; *see also id.* at 20:14-18.

State Defendants' opposition similarly recognized that a social transition was broader than a mere verbal name and pronoun change. *See* Dkt. 256 at 43:17-19 (arguing Plaintiffs "have failed to show that decisions by schools permitting students to … use a bathroom consistent with their gender identity, fall within the 'intimate' privacy decisions protected by the Fourteenth Amendment").

In the Court's summary judgment order, the Court did not explicitly mention sex-segregated activities and facilities, but neither did the Court explicitly limit its holding to names and pronouns. Rather, the Court generally framed the issue as

concerning a child's "expression" of gender identity. *See* Dkt. 307 at 3:8 ("[F]or something as significant as a student's expressed change of gender"); 7:9-13, 10:4 (this case is about the manifestation of an "unusual gender expression"); 35:19-21 ("The child expresses a newfound desire to be regarded as a different gender"). As a result, the primary holding of the Court's summary judgment order states:

> As for whether gender incongruence is an unhealthy medical condition in need of treatment, or, whether social transitioning at school is medical treatment, does not matter. Under the Fourteenth Amendment, parents have a substantive due process right to know of and *explore* whether their own child's gender incongruence is a medical or psychological condition and whether and *what kind of* treatment or *approach is in their child's best interest.*

Dkt. 307 at 29:11-16 (emphasis added). In other words, "Under the Fourteenth Amendment, parents have a substantive due process right to … explore … what kind of … approach is in their child's best interest." *Id*. The Supreme Court specifically held that California's current "unconsented facilitation of a child's *gender transition*" violates strict scrutiny without limiting that term to names and pronouns. *Mirabelli v. Bonta*, 146 S. Ct. 797, 802-03 (2026) (emphasis added); *see id.* at 800-01, 803 (similarly using the term "gender transition" or "gender transitioning" without limitation to names and pronouns); *see also id.* at 801 (noting the injunction covers *both* "gender presentation at school and [] social transitioning efforts"). Thus, in Plaintiffs' proposed modifications to the permanent injunction, Plaintiffs use the phrase "social transition" to ensure there is no confusion.

Plaintiffs also read the Court's order as implicitly acknowledging the self-evident, long-standing rule that parents are entitled to adequate notice of those issues so that they can direct the approach taken. *See Mirabelli*, 146 S. Ct. at 802 ("The parents who assert a free exercise claim have sincere religious beliefs about sex and gender, and they feel a religious obligation to *raise their children* in accordance with those beliefs"; "the intrusion on parents' free exercise rights here—*unconsented*

*facilitation of a child's gender transition*—is greater than the introduction of LGBTQ storybooks") (emphasis added).

### B.    Waiver of constitutional rights must be intentional.

This leads to State Defendants' second alarming suggestion: they plan to seek a waiver of constitutional rights at the beginning of each school year. Dkt. 361 at 3. "The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966).

Waiver of constitutional rights can occur only "where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver." *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988); *accord Gonzalez v. Hidalgo Cnty.*, 489 F.2d 1043, 1046-47 (5th Cir. 1973). For example, when the purported waiver "was a printed part" of a contract, State Defendants would still have the burden of showing that the waiving parents "were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972).

In light of State Defendants' suggestion, Plaintiffs have proposed that the Court add a new Paragraph 1(e) to the injunction clarifying that waiver of parents' Fourteenth Amendment rights can only be achieved through a clear, knowing, and intentional relinquishment.

///

///

///

///

///

///

///

///

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the State Defendants' motion to modify the permanent injunction and admonish the California Attorney General to remove the preface to the Court's notice.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 28, 2026        By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

***Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.***

USDC Court Case No.: 3:23-cv-00768-BEN-VET

_____

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO FILE A SUPPLEMENTAL OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION / SUPPLEMENTAL OPPOSITION;**
- **SUPPLEMENTAL DECLARATION OF PAUL M. JONNA, ESQ IN SUPPORT OF PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION;**
- **DECLARATION OF SHAWN A. MCMILLAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION;**
- **DECLARATION OF ERIN FRIDAY, ESQ., IN SUPPORT OF PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov
E-Mail: Julie.Veroff@doj.ca.gov
E-Mail: Helen.Hong@doj.ca.gov
E-Mail: Samuel.Harbourt@doj.ca.gov
E-Mail: Joshua.Klein@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
California Department of Justice
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for CDE Defendants**

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on March 28, 2026, at Rancho Santa Fe, California.

_____
Kathy Denworth