Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al., <br><br> Defendants. | Case No.: 3:23-cv-0768-BEN-VET <br><br> **DECLARATION OF SHAWN A. MCMILLAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION** <br><br> Judge:      Hon. Roger T. Benitez <br> Courtroom:    5A |

I, Shawn A. McMillan, Esq., declare and state as follows:

1.      I am an attorney at law duly licensed to practice in the State of California and in the Southern District of California. I am the Principal of the Law Offices of Shawn A. McMillan, APC. I was retained by counsel for Plaintiffs in this action. The matters discussed below are based on my own personal knowledge. I could and would testify to them if called upon to do so in court.

### PROFESSIONAL BACKGROUND

2.      I was admitted to the California Bar in November 2000 and have been actively engaged in the practice of law since that time. Since 2003, I have been, and remain, the principal trial attorney for the Law Offices of Shawn A McMillan, APC, where I carry my own active case load and supervise one other full-time attorney, Stephen D. Daner. During my time in practice, I have tried in excess of 25 cases to jury verdict.

3.      In addition to being admitted to the California Bar, I am licensed to practice law in the state of Washington (since September 2019), the state of Oregon (September 2024), and the state of Arizona (since June 2024). I am also admitted to practice before the United States District Courts for the Southern, Central, Eastern, and Northern Districts of California as well as before the Ninth Circuit, and the United States Supreme Court. Prior to being admitted to the Arizona Bar, I was regularly admitted to practice in the United States District Court for the District of Arizona on a *pro hac vice* basis.

4.      Prior to 2007, my practice focused primarily on the litigation, trial, and appeals of complex business disputes including copyright and trademark infringement cases, cases involving claims of economic interference, as well as cases involving complex price fixing schemes and violation of the Cartwright Act. *See, e.g., ApexWholesale v. Fry's Elecs.*, 2006 Cal. App. Unpub. LEXIS5169 (June 15, 2006, No. D041383); *Western Pet Wholesalers, Inc. v. Natura Pet Prods.*, 2005 Cal. App. Unpub. LEXIS 7286 (Aug. 11, 2005, D042817); *Western Pet Wholesalers, Inc.*

DECLARATION OF SHAWN A. MCMILLAN, ESQ. ISO OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

*v. Natura Pet Prods.*, 2006 Cal. App. Unpub. LEXIS 8313 (Sep. 21, 2006, D047616); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206 (9th Cir. 2005); *Tritek Telecom, Inc. v. Superior Court*, 169 Cal. App. 4th 138 5(2009); *In re Alpha Med. Ctr. Partners, LLC*, No.06-00062-B11, 2009 WL 6640974 (Bankr. S.D. Cal. July 17, 2009); *Rock & RollReligion, Inc. v. Cels Enterprises, Inc.*, No. CV09-5258, 2010 WL 11462991 (C.D. Cal. Apr. 20, 2010), *aff'd in part, rev'd in part*, 481 F. App'x 323 (9th Cir. 2012); *Lipoderm Inst., Inc. v. MCOA Holdings, LLC*, No. CV1002389, 2010 WL 11597943 (C.D. Cal. June 18, 2010); *Jaksch v. Seitz Fam. P'ship, L.P.*, No.G038786, 2008 WL 2352494 (Cal. Ct. App. June 10, 2008); *AVAAK, Inc. v. Shi*, No. D052687, 2008 WL 5403665 (Cal. Ct. App. Dec. 30, 2008), among others.

5.     I have been actively engaged in prosecuting civil rights/civil liberties cases against child protective services agencies since May 2005 when I signed on as lead trial counsel in *Fogarty-Hardwick v. Cty. of Orange*, No. G039045, 2010 WL 2354383 (Cal. Ct. App. June 14, 2010).

6.     In 2009 I made the decision to shed my business and litigation/trial support practice completely. It took a couple years to complete the transition, but since that time my firm has specialized in prosecuting civil rights cases against county/government child protection workers, county child protective service agencies, and private medical providers who collaborate with such agencies throughout Southern California and Arizona. This type of case work represents 95% of my firm's practice. I do still maintain a couple of very old clients from the time when I used to mainly litigate business and commercial matters. Presently my firm has 19 active civil rights cases against a combination of social service workers and/or government "child protection" agencies and/or private medical professionals for alleged violations of 4th and 14th Amendment rights of children and/or parents.

7.     Most of my cases allege *Monell* violations based on the particular government agency's deliberate failure or refusal to adhere to Ninth Circuit warrant

DECLARATION OF SHAWN A. MCMILLAN, ESQ. ISO OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

requirements relative to either medical examinations or outright seizures of children from their parents. Indeed, I have tried two *Monell* cases to a positive jury verdict.

8.      Since I began prosecuting civil rights cases under 42 U.S.C. § 1983, I have been lead litigation/trial counsel in the following significant cases: *McCue v. S. Fork Union Elem. Sch.*, 766 F. Supp. 2d 1003 (E.D. Cal. 2011); *Arce v. Cty. of Los Angeles*, 211 Cal. App. 4th 1455 (2012); *Kemper v. Cty. of San Diego*, 242 Cal. App. 4th 1075 (2015); *Marshall v. Cty. of San Diego*, 238 Cal. App. 4th 1095 (2015); *Dwight R. v. Christy B.*, 212 Cal. App. 4th 697 (2013); *Huk v. Cty. of Santa Barbara*, 650 F.App'x365 (9th Cir. 2016); *D.C. v. Cty. of San Diego*, No. 18-cv-13, 2019 WL 4534550 (S.D. Cal. Sept. 19, 2019); *A.C. v. Cortez*, 398 F. Supp. 3d 748 (S.D. Cal. 2019); *Garcia v. Cty. of San Diego*, No. 15-cv-189, 2018 WL 6334286 (S.D. Cal. Dec. 5, 2018); *Walter v. Cty. of San Diego*, No. 19-cv-2465, 2020 WL 7024660 (S.D. Cal. Nov. 30, 2020); *Deeths v. Lucile Slater Packard Children's Hosp. at Stanford*, No. 12-cv-2096, 2013 WL 6185175 (E.D. Cal. Nov. 26, 2013); *Gerrie v. Cnty. of San Bernardino*, No. 19-cv-1435, 2020 WL 3978060 (C.D. Cal. June 4, 2020); *Garcia v. McCann*, 833 F. App'x 69 (9th Cir. 2020); *N.L. v. Childrens' Hosp. Los Angeles*, 711 F. App'x 433 (9th Cir. 2018); and *Shane v. Cty. of San Diego*, 677 F. Supp. 3d 1127 (S.D. Cal. 2023), among many others.

9.      I am a recognized expert in the field regarding the constitutional rights of children and parents in the context of child abuse investigations. I am a co-author of Rutter Guide's Fair Housing and Public Accommodations Practice Guide, particularly the chapters on 42 U.S.C. § 1983 and *Monell* theories of liability as relating to disability discrimination.

10.     I also have been invited to lecture, and have lectured regarding the civil rights implications of the work done by social workers and other law enforcement agents when they investigate child abuse allegations as follows:

  a.  The University of La Verne College of Law's "Civil Rights Symposium §1983" on February 8, 2013.This was a panel style presentation, and I

was one of three attorneys on the panel.

b. The California Appellate Defense Counsel's 24th Annual State Wide Conference held in San Diego on March 10-11, 2017, *i.e.*, the constitutional implications of the work done by county social services agencies and social workers—and, how to sue them when they violate people's rights.

c. Advokids' 3.0 hour MCLE course titled, "Fighting for the Civil Rights of Children in Foster Care," on February 24, 2018, sponsored by Whittier Law School. I was the sole presenter.

d. Advokids' 5.75 hour MCLE course titled, "Child Welfare Civil Rights Litigation: Nuts and Bolts Workshop," on October 20, 2018, sponsored by the University of San Francisco Law School. I was the sole presenter.

e. Arizona State University Law School's 6 hour MCLE course titled: "Civil Rights Litigation Against Child Welfare Workers and Child Welfare Agencies, Nuts & Bolts Workshop (March 2, 2019.)" I was the sole presenter.

f. Trojan Horse Method's (Dec. 2019) "Case Analysis" 12 hour (two-day) MCLE course teaching various aspects of case development specific to cases brought under 42 U.S.C. § 1983 against government social workers and child protection agencies. I was the sole presenter. https://www.caseanalysis.com/speakers/.

g. With the advent of COVID-19, my lecture schedule was sidelined. However, I most recently presented a 6 hour MCLE workshop at Trial Lawyers University, Las Vegas program in October 2024.

## EXPERT OPINIONS

11. Plaintiffs have asked me to opine on the workability of the State Defendants' proposal that the Court should modify its permanent injunction "to confirm that the order does not compel disclosure 'to parents who would engage in

abuse.'" ECF No. 358, Ex Parte Appl., p.6. My opinion is that there would be no meaningful way to effectuate such a provision within current California law regarding the protection of minors and within the strictures of the 14th Amendment. My citations to legal authority are meant solely to provide context for my opinions.

12.    The first place to begin is to recognize that the Supreme Court has clearly laid out that parents have a 14th Amendment Due Process right to raise their children as they see fit. As the Court has explained: "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (citations omitted). Because of this, the standard manner of infringing on parental rights nearly always requires judicial oversight. When children are taken into the custody of the state, their 4th Amendment rights against seizure are implicated and their parents' 14th Amendment rights are also implicated. Both use the same standard. *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000). Failing to get a judicial order or warrant permitting the seizure (or other interference) is presumptively impermissible—but that presumption can be overcome by exigency. *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018) ("Searches conducted without a warrant are *per se* unreasonable.").

13.    Once the child is in protective custody, the parents' rights still largely dominate. As the Supreme Court has explained, "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have … lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Thus, the requirement to get judicial oversight—another order—permitting intrusions on the parents' 14th Amendment right continues. This most commonly occurs, in my practice, when the government wants to provide non-exigent medical treatment to the child. Many cases say that is not allowed without judicial oversight. *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 1999); *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018)

DECLARATION OF SHAWN A. MCMILLAN, ESQ. ISO OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

14.    Indeed, in order to lawfully interfere with a parent's right to control the upbringing of their child, at the time of the interference the state must be in possession of "specific, articulable evidence" that provides "cogent, fact-focused reasonable cause" to believe the child would be imminently subject to physical abuse. *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000); *Demaree v. Pederson,* 887 F.3d 870, 882-84 (9th Cir. 2018). Moreover, evidence showing "probable cause" to support the issuance of a removal warrant, is insufficient to support any conclusion that imminent danger existed. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1108 n.2 (9th Cir. 2001).

15.    Of course, truly exigent circumstances sometimes exist. But they are not the norm. I have litigated many cases against California counties as well as the state of Arizona for improperly seizing children and then improperly providing them with non-exigent medical care without obtaining consent from their parents or even notifying them. The traditional phraseology, from the *Wallis* case, is that the seizing authority must have "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." The same standard applies to non-emergency medical care. As explained in the *Mann* case, medical care can only be provided without parental consent where "the children are in imminent danger."

16.    This standard is particularly high—and intentionally so. Absent direct evidence that abuse is occurring in the moment, the government must have undertaken a reasonable investigation to develop evidence to support a reasonable belief that physical abuse is occurring. That reasonable belief must also be justified and/or corroborated by specific and articulable evidence showing the child is likely to suffer severe physical injury in the time it would take to obtain a warrant. Allegations of emotional abuse or general neglect, by definition, cannot ever meet this standard. Moreover, the scope of any intrusion on parental rights must be carefully and narrowly tailored to the facts—i.e., the prospective intrusion must be tailored to meet the *specific* danger the government is concerned about. In practice,

DECLARATION OF SHAWN A. MCMILLAN, ESQ. ISO OPPOSITION TO
DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

this means that a parents' rights can only be suspended due to exigent circumstances where a warrant may not be obtained within a relatively short period of time. Based on my experience in litigating dozens of similar cases involving the unwarranted seizure of children and/or the unwarranted usurpation of medical decision making from parents, in most California counties it takes 2 to 4 hours to obtain a protective custody warrant to remove a child and/or interfere with a parent's decision making authority.

17.    In reviewing the Supreme Court's opinion in this case, it made clear that the 14th Amendment rights of parents include the right to not be "shut out of participation in decisions" regarding their child's gender confusion. Slip. opn. at 5. Decisions addressing a child's "gender confusion" may be categorized broadly as medical decisions due, at least in part, to the significant psychological and social ramifications that can surface if left untreated. Thus, the Supreme Court's decision was not surprising to me in any regard as it applies clearly established principles that are fundamental to the American conception of family. As explained above, this right to not be "shut out" can only be overcome through a judicial order or temporarily suspended due to well defined exigent circumstances. The State's proposal that it would withhold information about a child from his or her parents, due to speculation about future "abuse," without taking the child into the custody of the state, is not one that I have ever encountered or that even makes ordinary sense considering the well-established definitions of exigency, i.e., imminent severe physical injury or death in the time it would normally take to obtain a warrant. The State's proposal flies in the face of clearly established law and ignores a parent's entitlement to pre-deprivation due process in the absence of an exigent circumstance. Rather, if the child is not seized, then that is strong evidence that the threat of abuse is not exigent.

18.    Nor, practically, do I see how information about a child's gender confusion could be withheld from a parent absent a much greater intrusion on parental rights. To be sure, under certain circumstances, a child may be taken into the

DECLARATION OF SHAWN A. MCMILLAN, ESQ. ISO OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO MODIFY THE PERMANENT INJUNCTION

custody of the state, and a court may limit parental rights, or even terminate rights, such that the parent no longer has a right to make medical decisions (or even to have notice of them) for his or her child. Or, alternatively, a child could be retained in his parents' custody but have the right to make medical decisions transferred by a court from the parents to a third-party. However, it would be antithetical to our system of government to permit a parent's right to information about their child to be taken away by a non-judicial arm of the state absent some form of pre-deprivation judicial oversight or process. Our constitutional system and extant law simply do not allow it.

19.    In sum, as I stated above, there is no practical way to effectuate the State Defendants' request that the Court modify its permanent injunction "to confirm that the order does not compel disclosure to parents who *would* engage in abuse." The precatory standard espoused by the State Defendants flies in the face of clearly established law. For example, the law leaves no room for speculation. Indeed, the mere *possibility* of danger, is not sufficient to show exigent circumstances. *Bailey v. Newland*, 263 F.3d 1022 (9th Cir. 2001); *U.S. v. Reid*, 226 F.3d 1020 (9th Cir. 2000); *Tenenbaum v. Williams*, 193 F.3d 581, 594 (2d Cir. 1999); *Garver v. Washoe County*, No. 09-cv-463, 2011 WL 6002969, at *6 (D. Nev. Nov. 28, 2011). The State Defendants' proposed language would ignore the high importance that the U.S. Constitution places on parental rights and the extremely high bar, both substantively and procedurally, that must be surmounted to overcome a parent's well recognized fundamental rights to parent their children and make important decisions for them.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct with the exception of those matters stated on information and belief and as to those matters, I believe them to be true. Executed on March 28, 2026, in San Diego, California.

_____
Shawn A. McMillan, Esq.

9