**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ELIZABETH MIRABELLI, and LORI ANN WEST, individually and on behalf of herself and all others similarly situated, et al.,,

Plaintiff,

v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  23-CV-768-BEN-VET

**ORDER ON ATTORNEYS' FEES [ECF No. 323]**

Before the Court is Plaintiffs' Motion for Award of Attorney Fees (Doc. No. 323), and Defendants' opposition.  (Doc. No. 333).  For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Attorneys' fees.

**I. BACKGROUND**

The Court has presided over this case since its inception three years ago and is well familiar with how it has been litigated by all parties.  Plaintiffs, two long time award winning Christian middle school teachers of schoolchildren in the California public school system, brought a lawsuit challenging California's "Parental Exclusion Policy" on constitutional grounds under 42 U.S.C. § 1983, which was filed on April 27, 2023, after

-1-

the Plaintiffs' request for religious accommodations from Escondido Unified School District ("EUSD") was denied in January 2023. A motion for a preliminary injunction was filed on May 15, 2023, and granted on September 14, 2023. In January 2024, the Court ordered the addition of the Attorney General and State of California as defendants, leading to the filing of a First Amended Complaint. A Second Amended Complaint was filed in August 2024, adding new plaintiffs, employment claims, and class action allegations. (Doc. Nos 133 and 323 at 7.) On December 22, 2025, the Court granted summary judgment in favor of the Plaintiffs and issued a class-wide permanent injunction against the policy. (*Id.* at 10; Doc. No. 307.) The Court denied the State's request for a stay, and the State appealed to the Ninth Circuit, which granted the State the stay it sought. Plaintiffs appealed to the United States Supreme Court, and in a written opinion, the Court reversed the Ninth Circuit.

Plaintiffs seek an award of $4,551,656.63 in attorneys' fees under 42 U.S.C. § 1988. (Doc. No. 323 at Jonna Decl., ¶¶ 85-86). The amount is composed of a lodestar of $4,045,917, reduced by a self-imposed 10% reduction to $3,641,325, plus a 1.25 multiplier.

**II. DISCUSSION**

**A. Prevailing Party Status**

Plaintiffs were successful on summary judgment and achieved a class-wide permanent injunction as well as a declaratory judgment establishing their Parental Rights. The Supreme Court affirmed the injunction. The State has since withdrawn its argument that Plaintiffs were not prevailing parties. (*See* Doc. No. 337.) The Court finds that the Plaintiffs achieved all of their main litigation objectives and are therefore the prevailing party entitled to seek attorney fees from the government defendants.

**B. Reasonableness of Hourly Rates.**

A prevailing party fee applicant bears the burden of producing satisfactory evidence that the requested hourly fee rates align with those prevailing in the community for similar services by lawyers of reasonably comparable skill and reputation. *Jordan v.*

*Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g.*, *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins.*, 845 F. Supp. 2d 1016, 1024-25 (N.D. Cal. 2012). Plaintiffs submitted time sheets reflecting total hours worked (up to February 2, 2026) of 3,807.15 hours. (*See* Doc. No. 323 Ex. 2)

Plaintiffs propose hourly rates ranging from $240/hr for paralegal and law clerk work to $1,512/hr for Mr. Limandri's work. Plaintiffs argue these rates are reasonable for the San Diego legal market, where this case was litigated and where counsel's firm is located, citing the Real Rate Report and prior court orders approving similar rates in accordance with relevant case law.

The State argues that the hours billed are excessive; they cannot recover for media and public relations work, overstaffing, duplicative depositions, excessive document drafting, conferencing, block billing, administrative and clerical work, use of .2-hour minimum billing work, and unadjudicated employment discrimination claims, and the upward adjustment to the lodestar is not warranted. The state relies principally on the declaration of James P. Schratz. (Doc No. 333-2.) However, the court disregards the Schratz opinion because it lacks objectivity, as other courts have mentioned, and because it relies on a large firm / small firm distinction for allowable hourly rates—a distinction the Ninth Circuit Court of Appeals has recently rejected. *See LA Int'l Corp. v. Prestige Brands Holdings, Inc.* 168 F.4th 608, 626 (9th Cir. 2026).

The Court has considered the Parties' arguments. The Court is also familiar with the prevailing market rates for federal civil rights attorneys in the San Diego, California legal market. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (a court may rely on its own knowledge of prevailing rates). Plaintiffs report that they developed the requested hourly rates for this litigation by taking the rates awarded to them in another

case in April 2023, and increasing those awarded rates by 20% to arrive at 2026 rates. Plaintiffs then cross-referenced the resulting rates with the USAO Laffey Matrix, the LSI Laffey Matrix, the Fitzpatrick Matrix, and the 2024 Wolters Kluwer Real Rate Report. Counsel then made various minor revisions, resulting in the rates below. *See* Jonna Decl., ¶¶79-84. Here, Plaintiffs' counsel's hourly rates are within the high end for San Diego County; top lawyers statewide charge more. Plaintiffs' top hourly rate is $1,512, while Los Angeles, for example, pays up to $1,975 per hour for defending Palisades Fire lawsuits. *See* Jonna Decl., ¶68 & Ex. 15.

The Court finds that Plaintiffs have demonstrated that counsel possesses significant litigation experience in protecting constitutional rights and has provided evidence of prior rate approvals. Accordingly, the Court holds that the requested rates fall within the acceptable range for attorneys of comparable skill and experience in civil rights litigation.

C. **Reasonableness of Hours Expended**

Plaintiffs litigated four related constitutional theories—Parental Free Exercise Rights, Teacher Free Exercise Rights, Parental Substantive Due Process Rights, and Educator free speech rights—all aimed at obtaining relief from unconstitutional statewide policies that work an intolerable harm on families with school age children and their teachers, *i.e.*, California's Parental Exclusion Policies.

District courts "must calculate awards for attorneys' fees using the 'lodestar' method." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The lodestar equals "the product of reasonable hours times a reasonable rate." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992), with a "'strong presumption' that the lodestar represents the 'reasonable fee'." *Id.* at 562 (citation omitted).

A "reasonable fee" is intended to "induce a capable attorney to undertake the representation of a meritorious civil rights case" without "produc[ing] windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The moving party bears the burden on both hours and rates. *Hensley*, 561 U.S. at 437. Having established that the Plaintiffs are entitled to fees, the Court calculates the lodestar

-4-

amount.

In the typical case, a court should usually defer to the winning lawyer's professional judgment about the work and time required to win the case. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court does so here. The case required an enormous amount of attorney time to articulate claims for relief, defend against numerous defense motions to dismiss or for judgment on the pleadings filed by several state office-holding defendants. Plaintiffs appropriately amended their Complaint several times as the state defendants maneuvered and shifted their defenses. To better and more efficiently seek relief for all aggrieved parents, Plaintiffs created a statewide class action with four subclasses, which was certified over defendants' objections. Plaintiffs sought and won a preliminary injunction, and eventually a permanent injunction against the unconstitutional state education policies.

Some of the attorney hours spent were the result of this Court's suggestions, such as the requirement to add the Attorney General as a defendant (Doc. No. 72) and then the new defendant's motions to dismiss. (Doc. Nos. 95 and 96). More work was triggered by the Court's questioning about whether parents should be included as plaintiffs, and Plaintiff's Amended Complaint in response. (Doc. No. 130).

Many of the hours spent by Plaintiffs' counsel were required to respond to defendants' litigation intransigence. For example, the State Superintendent of Public Instruction and the members of the State Board of Education moved to dismiss the case against them at the outset of litigation. (Doc. No. 25). That is not unusual. What is unusual is that shortly after the motions were denied (Doc. No. 42), the defendants moved for judgment on the pleadings (Doc. No. 53), effectively trying to sidestep the effect of the Court's Order denying their motions to dismiss. The same state defendants filed motions to dismiss, once again, after the filing of Plaintiffs' amended complaint (Doc. Nos 146 and 147), followed shortly thereafter, again, by motions for judgment on the pleadings. (Doc. Nos 149 and 150). When the Plaintiffs moved to certify the class, the California attorney general moved to dismiss. (Doc. No. 156). Only one week after

-5-

the Court denied the motions to dismiss on January 7, 2025, the same State Superintendent of Public Instruction filed another motion to dismiss. (Doc. No. 195).

After the permanent injunction was entered, the state defendants filed a motion in this Court to stay the injunction on December 22, 2025, and then filed an appeal on the next day, December 23, 2025, without waiting for a ruling from this Court – a ruling that was entered on December 24, 2025 – effectively wasting scarce judicial resources during a statewide winter break from public education, the necessity of which remains unexplained.  Twice, the state defendants formally withdrew arguments after they were shown to be inarguably meritless (*e.g.,* the argument of mootness until it was shown that the state department of education was still incorporating constitutionally defective statements in training materials, and the argument that Plaintiffs were not actually prevailing parties until the U.S. Supreme Court vacated a stay and explained that Plaintiffs would likely prevail on the merits).

In short, if Plaintiffs' counsel spent time on the case that would normally be considered unnecessary, it was time most likely required to overcome the defendants' litigation strategy of resisting at all junctures.  Therefore, other than work on amicus briefs described next, the Court finds all of Plaintiffs' attorney time to be reasonably incurred.

As to Plaintiffs' work on amicus briefs in other cases, the hours expended were reasonable, perhaps even strategic, but not recoverable in this case.  The billing records reflect that counsel and staff incurred 31.2 hours for drafting, revising, finalizing, filing, and serving the amicus brief.  Those entries include reviewing correspondence and court rules, drafting and revising the amicus brief, incorporating edits, reviewing proofs, preparing the table of authorities, coordinating with filing and printing vendors, and serving the brief on counsel.  The total fees associated with that amicus work are $24,768.00, with an additional $2,739.22 in costs and expenses. Accordingly, to the extent time spent on amicus work is not recoverable, 31.2 hours, $24,768.00 in fees, and $2,739.22 in costs should be deducted from the total request.

-6-

**Lodestar Multiplier**

Plaintiffs request a 1.25 multiplier, which aligns with higher statewide rates, resulting in a lodestar of $4,551,656.63.  Plaintiffs base their request for a 1.25 lodestar multiplier due to the importance of the case, the outstanding results achieved, the undesirability of the case, and the likelihood that another attorney would not have accepted the case.  *See* e.g., *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (2.0 multiplier); *accord Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005) (1.75 multiplier) ("the case was highly controversial"); *Jaramillo v. Cty. of Orange*, 200 Cal. App. 4th 811, 830 (2011) (1.15 multiplier) (awarding multiplier because counsel suffered "a degree of public opprobrium").  "An enhancement is proper…when these factors, though partially reflected in the lodestar, are not *fully* reflected in the lodestar."  *Sonoma Land Tr. v. Thompson*, 63 Cal. App. 5th 978, 988 (2021); *accord In re Manoa Fin. Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988).

Plaintiffs deserve a multiplier in this case.  The case concerns a very important subject.  State public education policies impinged on families' right to the free exercise of religion under the First Amendment.  The policies also rejected and subverted the federal constitutional rights of California parents to guide the health and well-being of their school-age children.  Such concerns intrude among the most important areas of family life in America's history and tradition.

At the same time Plaintiffs achieved impressive results through three years of dogged litigation.  To this day, the Defendants continue to fight about the merits based on the thinnest of arguments.  Take the defendants' just-filed *ex parte* motion to amend the permanent injunction, for example.  The injunction (and whether it should continue to be stayed) was the subject of the Supreme Court's recent decision.  The Supreme Court's review found no fault with the injunction and lifted the appeals court's stay of the injunction.  Today, only days later, the state defendants vociferously argue that the injunction is flawed and needs to be modified.

The Court agrees with Plaintiffs and applies a lodestar multiplier of 1.25 for a total

[Case Number]

fee award of $4,551,656 minus the $24,768.00 for the 31.2 hours spent on amicus work in attorneys' fees.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Attorney's Fees and awards Plaintiffs fees in the amount of **$4,526,888.** *C.f., Lucas R., et al. v. Robert F. Kennedy, Jr.*, Case No. CV 18-5471-DMG (BFMx), Order (C.D.C.A. March 6, 2026) (awarding attorney fees and costs of $7,025,420 for successful litigation protecting constitutional rights of undocumented or refugee minors detained in the custody of the federal Office of Refugee Resettlement).

**IT IS SO ORDERED.**

DATED:    March 30, 2026

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-8-

[Case Number]