Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
William T. Duke, SBN 361823
  wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
  pbreen@thomasmoresociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,

Plaintiffs,

v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

Defendants.

Case No.: 3:23-cv-0768-BAS-VET

**PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO STAY EXECUTION OF ATTORNEYS' FEES ORDERS**

Judge:         Hon. Cynthia A. Bashant
Courtroom:   12B

## INTRODUCTION

State Defendants seek an unsecured stay of this Court's attorneys' fees awards totaling $4.8 million, *see* ECF Nos. 364, 366, while they pursue an appeal apparently aimed at overturning the decision of the U.S. Supreme Court in this same action. *See Mirabelli v. Bonta*, 146 S. Ct. 797 (2026). Why the appeal is still pending is a mystery to Plaintiffs. As explained in Plaintiffs' supplemental brief to the Ninth Circuit, the Supreme Court's opinion resolves every issue in this case. *See* Jonna Decl., Ex. 1, Plaintiffs-Appellees' Supplemental Brief, *Mirabelli v. Bonta*, No. 25-8056 (9th Cir. Mar. 16, 2026).

The best way to understand State Defendants' ex parte application is as a necessity resulting from the impending deadlines of April 29 and May 2, 2026, when the attorneys' fees orders become collectible. However, while Plaintiffs could not agree to an unsecured stay pending appeal, *see* ECF No. 377-2, Spence Decl., ¶6, a temporary stay so that the parties can meet and confer would be appropriate. Such a 60-day stay is also warranted because, as explained below, State Defendants' rushed ex parte application is woefully inadequate to obtain an unsecured stay of the fees awards for potentially several years. State Defendants imply that, because they represent California, an unsecured stay should be the rule—but the exact opposite is the case. An unsecured stay is particularly inappropriate for the government because Plaintiffs cannot use regular collection procedures.

Thus, as explained below, the Court should grant a temporary 60-day stay until June 26, 2026. If the parties cannot come to an agreement, then State Defendants can file a renewed motion for an unsecured stay pending appeal. But, as explained below, this rushed ex parte application woefully fails to justify one.

## LEGAL STANDARD

A judgment becomes final and collectible "30 days after its entry." Fed. R. Civ. P. 62(a). However, "[a]t any time after judgment is entered, a party may obtain a [further] stay by providing a bond or other security. The stay takes effect when the

court approves the bond or other security and remains in effect for the time specified in the bond or other security." *Id.* at subd. (b). In general, "[t]he purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987).

In setting the amount of the bond, it "should be sufficient to pay the judgment *plus* interest, costs and any other relief (e.g. attorney fees) the appellate court may award." *Cotton v. City of Eureka*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012); *accord Clark v. Hidden Valley Lake Ass'n*, No. 16-cv-2009, 2018 WL 2412136, at *2 (N.D. Cal. May 29, 2018) (bond should cover any amounts appellate court could award); *accord Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1109 (9th Cir. 2000) (district court required $30,000 bond to secure $11,900 judgment).

However, "the court has discretion to allow other forms of judgment guarantee," *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985), and can stay enforcement of the judgment even without any security. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990) (vacating further sanctions award because it was not frivolous for attorney to request stay of $3,000 sanctions award without security pending appeal); *Buffin v. California*, 23 F.4th 951, 958 (9th Cir. 2022) (noting that fee award was stayed without security).

The Ninth Circuit has never announced a test for when it is appropriate to stay a money judgment without security, so a court's discretion should primarily be guided by the purpose of security. As the Ninth Circuit has explained, "[t]he posting of a bond [1] protects the prevailing plaintiff from the risk of a later uncollectible judgment and [2] compensates him for delay in the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). This "compensation" should not be viewed in monetary terms, but in terms of a guarantee, and a shift of the risk. Indeed, "[a] person who cannot furnish supersedeas bond does not lose his right to appeal. What he suffers is that he takes the risk of getting the money back again if the

judgment is reversed." *Koster & Wythe v. Massey*, 262 F.2d 60, 62 (9th Cir. 1958).

The Seventh Circuit, however, has identified five factors that courts can consider in determining whether to stay a judgment without any security. *See Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988). That test is frequently followed by courts in the Southern District of California. *See, e.g.*, *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-cv-1305-BAS, 2025 WL 3022746, at *2 (S.D. Cal. Oct. 29, 2025). Under that test, the court reviews the following five factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904-05 (cleaned up).

These factors, however, do not lay out a coherent test. Rather, the Seventh Circuit merely collected distinct grounds that various courts had separately used to justify their decision. Factors (1)-(3) come from *Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986); Factor (4) comes from *Northern Indiana Public Service Co. v. Carbon County Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986); and Factor (5) comes from *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 796 (7th Cir. 1986). This makes sense especially since factors (3) and (4) are essentially the same, and both are the "opposite" of factor (5). *See Cotton*, 860 F. Supp. 2d at 1028.

## ARGUMENT

State Defendants make three primary arguments in support of their motion to stay execution of the attorneys' award. *First*, they argue that the first and second factors—complexity of the collection process and the time it would take post-affirmance for the judgment to be paid—favor a stay because "the State has a clear,

4

established process of appropriating funds to pay judgments against it." ECF No. 377, Ex Parte App., p.5:2-3. *Second*, they argue that "State Defendants' ability to pay is so plain that the cost of a bond would be a waste of money." Ex Parte App., p.6:11-12. *Third*, they argue potential prejudice should the Ninth Circuit reduce the fee award, complaining that they may not be able to claw back funds. Ex Parte App., p.6:23-7:12. Each argument is addressed in turn.

## I. THE CUMBERSOME NATURE OF GOVERNMENT COLLECTIONS JUSTIFIES THE POSTING OF SECURITY.

As stated, the first three *Dillon* factors come from the Seventh Circuit case *Lightfoot v. Walker*, 797 F.2d 505 (7th Cir. 1986). There, "[t]he underlying lawsuit [was] a massive prisoners' civil rights suit against the State of Illinois," being prosecuted against Governor Walker in his official capacity. *Id.* at 506. Illinois argued that it was financially stable enough that the plaintiffs need not worry that they would not ultimately be paid the district court's $700,000 attorneys' fees award. The Seventh Circuit, however, affirmed the district court's decision to require the posting of security on the basis that "the procedure for collecting a judgment against the state is not only cumbersome and time-consuming, but uncertain in outcome, since the judgment cannot be paid unless and until the state legislature votes to appropriate the money necessary to pay it." *Id.*

Stated differently, the Seventh Circuit explained that the true cost of a stay should not be viewed in terms of the price of the bond, but in terms of providing the plaintiff with the *guaranty* that he will in fact be paid, however that is achieved. *Id.* This rule has since been followed in cases across the country. *See, e.g.*, *Lewis v. Kern Cty.*, No. 1:21-cv-378, 2025 WL 1865995, at *4 (E.D. Cal. July 7, 2025); *Contreras v. City of Los Angeles*, No. 11-cv-1480, 2013 WL 12474477, at *2 (C.D. Cal. May 20, 2013); *Se. Booksellers Ass'n v. McMaster*, 233 F.R.D. 456, 459-60 (D.S.C. 2006); *Wilmer v. Bd. of Cty. Comm'rs of Leavenworth Cty.*, 844 F. Supp. 1414, 1419 (D. Kan. 1993).

Here, State Defendants argue that a stay of the judgment is warranted because

"the State has a clear, established process of appropriating funds to pay judgments against it," cite various bills appropriating funds to pay judgments, and then make the conclusory statement that "[t]his process weighs in favor of an unsecured stay." Ex Parte Appl., p.5:1-9. It actually does the opposite.

The cited bills show that California follows a similar procedure to Illinois and many other jurisdictions. A party may not enforce a judgment against California using the regular collections process. Cal. Gov. Code § 965.5(b). Rather, "it remains for the state, after such judgment, to provide for the payment thereof in such manner as it sees fit, or to refuse to do so at its pleasure, and the judgment creditor can obtain payment in no other way than that provided." *Westinghouse Elec. & Mfg. Co. v. Chambers*, 169 Cal. 131, 135-36 (1915). Thus, under the applicable rules, the California legislature must pass a specific appropriations bill. For example, S.B. 251 states:

> (a) The sum of one million two hundred twenty-one thousand four hundred ninety-one dollars and thirty cents ($1,221,491.30) is hereby appropriated from the General Fund to the Attorney General to be allocated in accordance with the following schedule:
>
> (1) The sum of six hundred seventeen thousand two hundred seventy-seven dollars and eighty-one cents ($617,277.81) for the payment of claims, settlements, or judgments against the state arising from *First Amendment Coalition v. Bonta* (San Francisco Superior Court Case No. CFP-19-516545).
>
> (2) The sum of two hundred forty-four thousand three hundred ninety-nine dollars and seventy-six cents ($244,399.76) for the payment of claims, settlements, or judgments against the state arising from *Linton v. Bonta* (United States District Court, Northern District of California, No. 3:18-cv-07653-JD).
>
> (3) The sum of three hundred fifty-nine thousand eight hundred thirteen dollars and seventy-three cents ($359,813.73) for the payment of claims, settlements, or judgments against the state arising from *X Corp. v. Bonta* (United States District Court, Eastern District of California, No. 2:23-cv-01939-WBS-AC).

*See* Jonna Decl., Ex. 2, Cal. Stat. 2025, ch. 90, § 1 (SB 251); *see also* Ex. 3, Cal. Stat. 2024, ch. 328, § 1 (SB 1481); Ex. 4, Cal. Stat. 2023, ch. 10, § 1 (SB 383).

Forty years ago, the California Legislature decided to rely on its authority to refuse to pass an appropriations bill to pay an attorneys' fees award. This led to an order directing payment of the award from the funds appropriated for the Department of Health Services' general "[o]perating expenses." The California Supreme Court then affirmed the order on the basis that it appeared that the California Legislature was attempting to "set itself above the judiciary by discarding the outcome" of a judicial proceeding. *Mandel v. Myers*, 29 Cal. 3d 531, 542, 547 (1981). This rule, however, has since been closely circumscribed. *See, e.g.*, *Butt v. State of California*, 4 Cal. 4th 668, 700 (1992); *Cal. Sch. Bds. Ass'n v. California*, 192 Cal. App. 4th 770, 800 (2011); *Cty. of San Diego v. California*, 164 Cal. App. 4th 580, 598 (2008). And even in *Mandel*, it took the party eight years of further litigation to get paid. *Mandel*, 29 Cal. 3d at 535.

Here, State Defendants are not done litigating. The appeal is proceeding despite *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026), and State Defendants have made clear their goal of narrowing that decision as much as possible. *See* Jonna Decl., Ex. 5, Brief of California as Amicus Curiae, *Regino v. Blake*, No. 26-475 (9th Cir. Apr. 13, 2026). If State Defendants want to keep litigating, that is their right, but Plaintiffs are equally entitled to be protected in the interim through the posting of security.

## II. THE COURT SHOULD GRANT A 60-DAY STAY FOR THE PARTIES TO NEGOTIATE THE POSTING OF APPROPRIATE SECURITY.

State Defendants' third argument is that "a stay is necessary to protect State Defendants from the risk that they will be unable to claw back the fee award following appeal." Ex Parte App., p.6:23-24. To begin, this argument wrongly applies the test for the stay of an injunction pending appeal—which looks to likelihood of success on appeal. "However, courts in this circuit have held that the preliminary injunction test specifically applies to a stay of injunctive relief pursuant to Federal Rule of Civil Procedure ('Rule') 62(c), and is 'irrelevant' in a case involving a monetary judgment." *Sarver v. Hurt Locker LLC*, No. 10-cv-9034, 2012 WL 12892147, at *2

(C.D. Cal. Feb. 2, 2012); *accord Abbywho, Inc. v. Interscope Recs.*, No. 06-cv-6724, 2008 WL 11406049, at *4 n.11 (C.D. Cal. Aug. 25, 2008)

In any event, this argument blinks the reality of this case. Plaintiffs obtained a state-wide permanent injunction that has since been affirmed by the Supreme Court. *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026). The holdings of the Supreme Court, even in per curiam opinions from the interim docket, are final and definitive. "[A]ny matter 'disposed of by' decree of this Court must be carried 'into execution, according to the mandate,' by the courts below." *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2630 (2025) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). Thus, in response to the Supreme Court's opinion, State Defendants immediately withdrew their argument that Plaintiffs were not the prevailing party. *See* ECF No. 337, Notice of Withdrawal of Argument.

In the absence of that argument, State Defendants' argument turns solely on the *amount* of fees that should be properly awarded to Plaintiffs. The District Court here awarded $4,818,675.20. ECF Nos 364, 366. State Defendants argued, instead, that the District Court should have awarded $1,592,175.88. *See* ECF No. 333, Opp. to Motion for Attorneys' Fees, p.15:23. Thus, there is no argument for staying payment of at least $1.6 million.[1]

Turning to more specifics, State Defendants argue that "[t]he order approving the massive fee request [1] largely ignored the evidence of reasonable hours and rates offered by State Defendants, [2] granted a 1.25 multiplier without supporting evidence in defiance of the Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542, 552-55 (2010), and [3] failed to address State Defendants' argument that they should not have to pay fees associated with unadjudicated employment discrimination claims against a separate defendant." Ex Parte App., p.7:6-12

---

[1] State Defendants argument was directed at lowering the original fee request of $4.5 million to $1.6 million. It does not account for the subsequent award of an additional $300,000. Thus, State Defendants would presumably agree that their $1.6 million amount is too low now.

(numbers added). None of these arguments have merit.

*First*, as counsel explained at the hearing, the rates requested were extrapolated from the same hourly rates that the California Attorney General agreed to in litigation before this Court. ECF No. 352, Transcript of Attorneys' Fees Hearing, p.92:3-22 ("So we took the *South Bay* rates that were agreed to by the Attorney General's office…. We cited … in my declaration evidence showing the increase in billing rates since 2023. And we just took that 8.3 percent increase in 2023, 9 percent in 2024, and 7.4 percent in 2025, and that's how we developed these rates, which are consistent with rates awarded in this district."). There is no likelihood that the Ninth Circuit will determine that the District Court abused its discretion in awarding the same rates that State Defendants stipulated to a few years ago. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.").

*Second*, contrary to State Defendants' argument, Plaintiffs specifically requested, and the District Court specifically awarded, a multiplier that was consistent with *Perdue v. Kenny A.*, 559 U.S. 542, 552-55 (2010). *See* ECF No. 323-1, Motion for Attorneys' Fees, pp.30:23-31:21 (explaining permissible bases for a multiplier under *Perdue*). Indeed, when the District Court had questions as to whether it could award a multiplier based on "contingent risk"—prohibited by *Perdue*—counsel specifically advised the Court that it was not permissible. *See* ECF No. 352, Transcript of Attorneys' Fees Hearing, pp.98:25-100:20. Then, the District Court limited its analysis to factors which were permissible, including "the undesirability of the case, and the likelihood that another attorney would not have accepted the case." ECF No. 364, Order on Attorneys' Fees, p.7:4-6. In this context, "[t]he district court's limited use of the multipliers was well within its broad discretion to determine the amount of reasonable fees" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 572 (9th Cir. 2019) (en banc).

*Third*, State Defendants object to having to pay for fees incurred in litigating

related but unadjudicated claims. This situation, of course, happens frequently and is almost never a basis for lowering the fee award. The rule is that when a party is only partially successful, the court asks whether the unsuccessful claims were "unrelated to the claims on which he succeeded." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1172 (9th Cir. 2019) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If the unsuccessful claims were *related* to the successful claims, by "involv[ing] a common core of facts or are based on related legal theories," then lack of success on all claims is irrelevant. *See id.* (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)) "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. If the unsuccessful claims were unrelated, the court asks whether "the plaintiff achieve[d] a level of success" or "excellent results" that warrants a full award regardless, or whether fees attributed to unrelated, unsuccessful claims should be segregated and reduced. *Ibrahim*, 912 F.3d at 1172 (quoting *Hensley*, 461 U.S. at 434-35).

Here, at the hearing, the District Court specifically addressed this argument, noting that the local EUSD Defendants "were sort of the foundation of this case," and that time spent litigating against them were absolutely necessary for the end result. *See* ECF No. 352, p.22:24-23:12 (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). As a result, the District Court specifically held that "In the typical case, a court should usually defer to the winning lawyer's professional judgment about the work and time required to win the case. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court does so here." ECF No. 364, p.5:2-4. The District Court was specifically deferring to Plaintiff's determination that time incurred litigating against the EUSD Defendants was necessary to win the victory against the State Defendants.

The notion that there is any meaningful risk that the State Defendants will need to "claw back" the attorneys' fees award is fanciful. The Supreme Court has

issued a definitive ruling and the District Court acted within the boundaries of its broad discretion.

\*        \*        \*

As stated, there is no meaningful means for Plaintiffs to immediately begin collections. Cal. Gov. Code § 965.5(b). If the California Legislature refuses to appropriate funds to pay the fee award, finding a fund from which that award can be forcibly taken is no easy task and would require further litigation. Thus, there is no risk that Plaintiffs will attempt to enforce the fee awards on April 29 or May 2, 2026, *see* Ex Parte Appl., p.4:3-5, and State Defendants' rush to litigate this issue on an ex parte basis is particularly suspect.

More, State Defendants fail to identify any amount for a bond, or any alternative method guaranteeing payment. In addition to the $4,818,675.20 fee award, ECF Nos. 364, 366, Plaintiffs have a pending bill of costs in the amount of $55,936.41, ECF No. 322, and incurred approximately $792,000 in fees litigating the emergency motions with the Ninth Circuit and U.S. Supreme Court. *See* Jonna Decl., ¶7. Normally, a bond would need to cover all of this, *and* the further attorneys' fees the Ninth Circuit will inevitably award, *and* be multiplied by 1.25. *Cotton*, 860 F. Supp. 2d at 1027; *Clark*, 2018 WL 2412136, at \*2. This would likely be close to $8 million needed in order to obtain a stay as a matter of right.

However, Plaintiffs are optimistic that the parties can come to an informal agreement. Thus, Plaintiffs respectfully request that the Court issue a 60 day stay of the attorneys' fees award, to Friday, June 26, 2026 (for both awards) so that the parties can meet and confer.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the State Defendants' ex parte application to stay execution of the Attorneys' Fees Order, and instead impose a 60-day temporary stay to June 26, 2026, with instructions to the parties to meet and confer.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 22, 2026          By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
Attorneys for Plaintiffs

12

**CERTIFICATE OF SERVICE**

*Elizabeth Mirabelli v. Mark Olson, President of the EUSD Board of Education, et al.*

USDC Court Case No.: 3:23-cv-00768-BEN-VET

_____

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO STAY EXECUTION OF ATTORNEYS' FEES ORDERS; and**
- **DECLARATION OF PAUL M. JONNA, ESQ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO STAY EXECUTION OF ATTORNEYS' FEES ORDERS..**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Darrell Spence, Superv. Dep. Att'y Gen.
Kevin L. Quade, Dep. Att'y Gen.
California Department of Justice
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6089
E-Mail: Darrell.Spence@doj.ca.gov
E-Mail: kevin.quade@doj.ca.gov
E-Mail: Julie.Veroff@doj.ca.gov
E-Mail: Helen.Hong@doj.ca.gov
E-Mail: Samuel.Harbourt@doj.ca.gov
E-Mail: Joshua.Klein@doj.ca.gov

Darin L. Wessel, Dep. Att'y Gen.
California Department of Justice
600 W Broadway Ste 1800
San Diego, CA 92101-3375
Telephone: (619) 738-9125
E-Mail: Darin.Wessel@doj.ca.gov
**Attorneys for CDE Defendants**

Emmanuelle Soichet, Dep. Att'y Gen.
Jennifer Bunshoft, Dep. Att'y Gen.
Shatti Hoque, Dep. Att'y Gen.
California Department of Justice
455 Golden Gate Ave., Ste. 1100
San Francisco, CA 94102-7004
E-Mail: emmanuelle.soichet@doj.ca.gov
E-Mail: Jennifer.Bunshoft@doj.ca.gov
E-Mail: shatti.hoque@doj.ca.gov

Daniel R. Shinoff, Esq.
Jack Sleeth, Esq.
Maurice Bumbu, Esq.
Lauren Cambronero, Esq.
Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel: 619-232-3122
E-Mail: dshinoff@as7law.com
E-Mail: nlay@as7law.com
E-Mail: jsleeth@as7law.com
E-Mail: mbumbu@as7law.com
E-Mail: lcambronero@as7law.com
**Attorneys for EUSD Defendants**

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.  Executed on April 22, 2026, at Rancho Santa Fe, California.

_____
Kathy Denworth