Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Peter Breen, *pro hac vice*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH MIRABELLI, an individual, on behalf of herself and all others similarly situated; LORI ANN WEST, an individual, on behalf of herself and all others similarly situated; et al.,

Plaintiffs,

v.

MARK OLSON, in his official capacity as President of the EUSD Board of Education, et al.,

Defendants.

Case No.: 3:23-cv-0768-BAS-VET

**DECLARATION OF PAUL M. JONNA, ESQ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' EX PARTE APPLICATION TO STAY EXECUTION OF ATTORNEYS' FEES ORDERS**

Judge:      Hon. Cynthia A. Bashant
Courtroom:   12B

I, Paul M. Jonna, Esq., declare and state as follows:

1.      I am an attorney at law duly licensed to practice in the State of California and in the Southern District of California. I am a Partner with LiMandri & Jonna LLP, and am counsel of record for Plaintiffs in this action. The matters discussed below are based on my own personal knowledge. I could and would testify to them if called upon to do so in court.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiffs' Supplemental Brief filed in *Mirabelli v. Bonta*, No. 25-8056 (9th Cir. Mar. 16, 2026).

3.      Attached hereto as **Exhibit 2** is a true and correct copy of a printout of California Statutes 2025, chapter 90, (Senate Bill 251), dated July 30, 2025, as obtained from the California Legislative Information website.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of a printout of California Statutes 2024, chapter 328, (Senate Bill 1481), dated September 20, 2024, as obtained from the California Legislative Information website.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a printout of California Statutes 2023, chapter 10, (Senate Bill 383), dated June 16, 2023, as obtained from the California Legislative Information website.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of the Brief of the State of California as Amicus Curiae in Support of Defendant-Appellee, filed in *Regino v. Blake*, No. 26-475 (9th Cir. Apr. 13, 2026).

7.      Plaintiffs have incurred approximately $792,000 in fees litigating the emergency motions with the Ninth Circuit and U.S. Supreme Court.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on April 22, 2026, in Rancho Santa Fe, California.

_____
Paul M. Jonna, Esq.

2

DECLARATION OF PAUL M. JONNA, ESQ. ISO PLAINTIFFS' OPPOSITION TO STATE
DEFENDANTS' EX PARTE APPLICATION TO STAY EXECUTION OF ATTORNEYS' FEES

**EXHIBIT 1**

No. 25-8056

# In the United States Court of Appeals for the Ninth Circuit

ELIZABETH MIRABELLI, an individual, on behalf
of herself and all others similarly situated; LORI
ANN WEST, an individual, on behalf of herself
and all others similarly situated, et al.,
Plaintiffs-Appellees,

v.

ROB BONTA, in his official capacity as
the Attorney General of California, et al.,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of California
Honorable Roger T. Benitez
(3:23-cv-768-BEN)

## PLAINTIFFS-APPELLEES'
## SUPPLEMENTAL BRIEF

CHARLES S. LIMANDRI
PAUL M. JONNA
JEFFREY M. TRISSELL
**LiMANDRI & JONNA LLP**
Post Office Box 9120
Rancho Santa Fe, CA 92067
(858) 759-9930
*pjonna@limandri.com*

PETER BREEN
MICHAEL MCHALE
CHRISTOPHER J.F. GALIARDO
**THOMAS MORE SOCIETY**
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680
*pbreen@thomasmoresociety.org*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

SUPPLEMENTAL BRIEF ...................................................................... 1

   I.   Legal Background: Precedent on Precedent. ............................ 1

   II.  The Supreme Court's Opinion Effectively Resolves
       All Questions in this Case. ..................................................... 4

CERTIFICATE OF COMPLIANCE ...................................................... 12

CERTIFICATE OF SERVICE .............................................................. 13

# TABLE OF AUTHORITIES

*Cases:*

*Akers v. McGinnis,*
   352 F.3d 1030 (6th Cir. 2003) ...................................................... 8

*Bolden-Hardge v. Off. of Cal. State Controller,*
   63 F.4th 1215 (9th Cir. 2023) ...................................................... 8

*Bucklew v. Precythe,*
   587 U.S. 119 (2019) .............................................................. 3, 5

*Danville Christian Acad., Inc. v. Beshear,*
   141 S. Ct. 527 (2020) ................................................................. 7

*Dep't of Homeland Sec. v. D.V.D.,*
   145 S. Ct. 2627 (2025) ............................................................ 1, 9

*Doe v. San Diego Unified Sch. Dist.,*
   142 S. Ct. 1099 (2022) ............................................................... 7

*Gateway City Church v. Newsom,*
   141 S. Ct. 1460 (2021) ............................................................... 2

*Hutto v. Davis,*
   454 U.S. 370 (1982) .................................................................. 1

*Ill. State Bd. of Elections v. Socialist Workers Party,*
   440 U.S. 173 (1979) .................................................................. 2

*In re Sanford Fork & Tool Co.,*
    160 U.S. 247 (1895) ................................................................................ 1

*Ind. State Police Pension Tr. v. Chrysler LLC,*
    556 U.S. 960 (2009) ................................................................................ 3

*Labrador v. Poe,*
    144 S. Ct. 921 (2024) .............................................................................. 4

*Lee v. Poudre Sch. Dist. R-1,*
    135 F.4th 924 (10th Cir. 2025) ............................................................... 7

*Mahmoud v. Taylor,*
    606 U.S. 522 (2025) ............................................................................ 3, 5

*Mirabelli v. Bonta,*
    146 S. Ct. 797 (2026) ..................................................................... passim

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025) ........................................................................... 1

*Parham v. J.R.,*
    442 U.S. 584 (1979) ................................................................................ 6

*Priests for Life v. U.S. Dep't of Health & Hum. Servs.,*
    808 F.3d 1 (D.C. Cir. 2015) .................................................................... 3

*Rodriguez v. Newsom,*
    974 F.3d 998 (9th Cir. 2020) .................................................................. 3

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
    592 U.S. 14 (2020) .................................................................................. 2

*Romer v. Evans,*
    517 U.S. 620 (1996) ................................................................................ 8

*S. Bay United Pentecostal Church v. Newsom,*
    141 S. Ct. 716 (2021) ........................................................................... 2, 3

*Sherbert v. Verner,*
    374 U.S. 398 (1963) ................................................................................ 8

*Spector Motor Serv. v. Walsh,*
    139 F.2d 809 (2d Cir. 1943) ................................................................... 2

*Stanley v. Illinois,*
    405 U.S. 645 (1972) ..................................................................... 7

*Troxel v. Granville,*
    530 U.S. 57 (2000) ................................................................. 6, 7

*Vukasovich, Inc. v. Comm'r,*
    790 F.2d 1409 (9th Cir. 1986) ................................................ 1, 2

*Washington v. Trump,*
    145 F.4th 1013 (9th Cir. 2025)..................................................... 8

*Yeshiva Univ. v. Yu Pride All.,*
    143 S. Ct. 1 (2022) ..................................................................... 7

*Ysursa v. Pocatello Educ. Ass'n,*
    555 U.S. 353 (2009) ..................................................................... 8

**Statutes & Rules:**

9th Cir. R. 3-6(a).............................................................................. 1

Cal. Code Regs. tit. 2, §11034(h) .................................................... 9

Cal. Code Regs. tit. 22, §83001(g)(2) ............................................. 9

Cal. Educ. Code §221.5(f) ............................................................... 9

Fed. R. App. P. 32(g)(1) ................................................................. 12

**Other Authorities:**

CSBA, *Supreme Court Strengthens parental notification
    rights for gender transitions* (Mar. 6, 2026).................................. 9

Supplemental Brief, *City of Huntington Beach v. Newsom,*
    No. 25-3826, Dkt.55 (9th Cir. Mar. 13, 2026)............................... 10

Trevor N. McFadden & Vetan Kapoor, *The Precedential
    Effects of the Supreme Court's Emergency Stays,*
    44 Harv. J.L. & Pub. Pol'y 827 (2021) ........................................ 2

iii

## SUPPLEMENTAL BRIEF

This Court has ordered the parties to submit supplemental briefing "addressing the impact of the Supreme Court's order … on the issues presented in this case." Dkt.20. As explained below, the specific holdings in the Supreme Court's order have effectively resolved the disputed issues in the case, making this case ripe for summary affirmance due to an "intervening court decision." 9th Cir. R. 3-6(a).

### I.    Legal Background: Precedent on Precedent.

The holdings of the Supreme Court are final and definitive. "[A]ny matter 'disposed of by' decree of this Court must be carried 'into execution, according to the mandate,' by the courts below." *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2630 (2025) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring) (quoting *Hutto v. Davis*, 454 U.S. 370, 375 (1982)).

In following the precedent of the Supreme Court, the law of this circuit provides that "the courts of appeal should decide cases according to their reasoned view of the way Supreme Court would decide the pending case today." *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1416 (9th Cir. 1986). Thus, "[t]he measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before [the Supreme

Court]." *Id.* (quoting *Spector Motor Serv. v. Walsh*, 139 F.2d 809, 823 (2d Cir. 1943) (L. Hand, J., dissenting)). Under this rule, the Supreme Court's interim orders "should be especially compelling. After all, these orders are a very recent, and thus highly indicative, insight into the Court's likely resolution of the issue on the merits." Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827, 844 (2021).

The Supreme Court recently confirmed as much during the COVID-19 pandemic. In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Court issued a brief *per curiam* opinion granting emergency relief to residents of New York whose constitutional rights were being violated. 592 U.S. 14 (2020). Despite its emergency nature, five Justices later made clear that it should have been followed by this Court with respect to a similar lawsuit in California. *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 719 (2021) (Statement of Gorsuch, J., joined by Thomas and Alito, JJ.) ("Today's order should have been needless; the lower courts in these cases should have followed the extensive guidance this Court already gave."); *id.* at 717 (Barrett, J., concurring, joined by Kavanaugh, J.) ("I agree with Justice GORSUCH'S statement [in relevant part]"). And then again, in response to another COVID-19 lawsuit in California, the Court granted emergency relief on the basis that the "outcome is clearly dictated" by the *South Bay* emergency order. *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021).

2

In interpreting the Court's summary *orders*, "the precedential effect of a summary [order] can extend no farther than the precise issues presented and *necessarily* decided by those actions," and "no more may be read into our action than was essential to sustain that [order]." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182-83 (1979) (emphasis added) (cleaned up). This means that a summary *grant* of relief without explanation is binding precedent, albeit limited in scope, *Rodriguez v. Newsom*, 974 F.3d 998, 1005 (9th Cir. 2020), and a summary *denial* of relief provides no precedent. *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009).

In contrast, in interpreting the Court's summary *opinions*, they provide "extensive guidance" that lower courts are expected to follow. *S. Bay*, 141 S. Ct. at 719 (Statement of Gorsuch, J.). This is because "just as binding as th[e] holding is the reasoning underlying it." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019). Indeed, many of the Court's opinions deal with preliminary determinations. *See, e.g., Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025) ("we hold that the parents are likely to succeed"). Further, courts must view an emergency order as an "extremely strong signal[]" because relief "under the All Writs Act … is appropriate only where the legal rights at issue are indisputably clear." *Priests for Life v. U.S. Dep't of Health & Hum. Servs.*, 808 F.3d 1, 25 (D.C. Cir. 2015) (Kavanaugh, J., dissenting) (cleaned up).

3

## II.   The Supreme Court's Opinion Effectively Resolves All Questions in this Case.

**1.** On March 2, 2026, the Supreme Court issued a substantively thorough opinion vacating this Court's stay of the district court's permanent injunction with respect to parents. *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026). Despite comments from the concurring and dissenting opinions, the majority opinion is dispositive.

To begin, commenting on the opinion's comprehensiveness, Justice Kagan described it as "*designed* to conclusively resolve the dispute" and lamented that "no one—in particular, neither a state official nor a lower court—is apt to read the Court's *per curiam*, brusque though it is, as anything less than a conclusive merits judgment." *Id*. at 806-07 (Kagan, J., dissenting) (emphasis added). Justice Barrett (joined by Chief Justice Roberts and Justice Kavanaugh) then responded that the opinion's grant of emergency relief was "not a sign of the Court's '*impatience*' to reach the merits," but rather "reflect[ed] the Court's judgment about the risk of irreparable harm to the parents." *Id*. at 805 (Barrett, J., concurring, joined by Roberts, C.J., and Kavanaugh, J.) (emphasis added).

Indeed, as Justice Kavanaugh has explained elsewhere (joined by Justice Barrett), where "the harms and equities are very weighty on both sides[,] … [the Supreme] Court has little choice but to decide the emergency application by assessing likelihood of success on the merits." *Labrador v. Poe*, 144 S. Ct. 921, 930-32 (2024) (Kavanaugh, J., concurring). And while rejecting the charge that the opinion's scope was

deviously "designed," Justice Barrett did conclude that "[t]he parent-applicants are likely to succeed on the merits under a straightforward application" of Supreme Court caselaw and that "the benefits of explanation win out here" because "[t]he Ninth Circuit (following the Sixth Circuit) significantly misunderstood" that caselaw. *Mirabelli*, 146 S. Ct. at 804-05 (Barrett, J., concurring).

Thus, because the reasoning of the Court is binding, *Bucklew*, 587 U.S. at 136, the question presented to this Court is whether there is any issue presented by the record here—which the Supreme Court took nearly two months to consider—that was not effectively decided in *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026). There isn't.

**2.** With respect to the parents' claims, the Supreme Court first held that "California's policies likely trigger strict scrutiny under [the Free Exercise Clause] because they substantially interfere with the 'right of parents to guide the religious development of their children.'" *Id*. at 802 (quoting *Mahmoud*, 606 U.S. at 559). The Court rejected the view that *Mahmoud* is "a narrow decision focused on uniquely coercive 'curricular requirements.'" *Id*. (quoting Dkt.13 at 10-11). Instead, it recognized that California is "impos[ing] the kind of burden on religious exercise that [we] found unacceptable"—and it is doing so in degree "greater than the introduction of LGBTQ story books we considered sufficient strict scrutiny in *Mahmoud*." *Id*.; *see also id*. at 805 (Barrett, J, concurring) (the Court's *per curiam* opinion is a "general course correction" on *Mahmoud*).

5

Thus, following *Mirabelli*, this Court is effectively required to affirm the district court's holding to the same effect.

On strict scrutiny, the Court held that California lacks a compelling interest because its "policies cut out the primary protectors of children's best interests: their parents." *Id.* (citing *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000) (plurality)). In so holding, the Supreme Court effectively reaffirmed its precedent that "absent a *finding* of neglect or abuse, … the traditional presumption that the parents act in the best interests of their child should apply." *Parham v. J.R.*, 442 U.S. 584, 604 (1979) (emphasis added). Similarly, the Court also held that California likely has more narrowly tailored means of protecting vulnerable children. *Mirabelli*, 146 S. Ct. at 803. Again, that reason again effectively requires affirming the district court's analysis finding the same.

Turning to Substantive Due Process, the Supreme Court continued, holding that "[t]he same is true for the subclass of parents who object to those policies on due process grounds" because "[g]ender dysphoria is a condition that has an important bearing on a child's mental health." *Id.* (citing *Parham*, 442 U.S. at 602). The Court recognized that by "conceal[ing]" from parents "information" about their child's manifestation of "symptoms of gender dysphoria at school" and "facilitat[ing] a degree of gender transitioning during school hours," California is "likely violat[ing] parents' rights to direct the upbringing and education of their children." *Id.* Again, that analysis and conclusion

6

effectively require affirming the district court's similar holding on the same issue.

Notably, the Court did not repeat or refer back to its strict scrutiny analysis. *Id.* This is presumably because, by flipping the presumption of parental fitness on its head, California's regime became facially invalid. *See Stanley v. Illinois*, 405 U.S. 645, 654 (1972) (holding statute invalid that presumed all unwed fathers were unfit despite the fact some unwed fathers are unfit); *Troxel*, 530 U.S. at 77 (Souter, J., concurring) ("I concur in the … facial invalidation"); *see also Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 937-38 & n.1 (10th Cir. 2025) (McHugh, J., concurring).

**3.** With respect to the teachers' claims, as stated, the Supreme Court's *denial* of summary relief is indicative of nothing at all. Emergency relief could have been denied for any number of reasons including as unnecessary. *E.g., Yeshiva Univ. v. Yu Pride All.*, 143 S. Ct. 1 (2022); *Doe v. San Diego Unified Sch. Dist.*, 142 S. Ct. 1099 (2022); *Danville Christian Acad., Inc. v. Beshear*, 141 S. Ct. 527 (2020).

On the teachers' Free Exercise claim, this Court's initial stay order quoted the district court's preliminary injunction order to find that there was no actual conflict between the teachers' religious beliefs and California's policies. *See* Dkt.13 at 11 (quoting 1-Plt.Exs-161). But on summary judgment, California did not make any such argument and the district court found undisputed that there was a conflict. *See* 4-Plt.Exs-777-84; 1-Plt.Exs-52-58. Indeed, this Court has cautioned against over-

scrutinizing assertions of religious conflict, *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223-24 (9th Cir. 2023), and each teacher offered sworn testimony of such a conflict. 4-Plt.Exs-968-70; 5-Plt.Exs-1173-74; 5-Plt.Exs-1226-38. Once such a conflict is established, as this Court recognized, the rights of teachers "rises and falls on parents' rights." Dkt.13 at 12.

The district court held that strict scrutiny applied to the teachers' Free Exercise claims because of the exclusion policy's standardless nature, 1-Plt.Exs-55-57, and held that teachers could not be compelled to violate parents' rights upon raising a Free Speech objection. 1-Plt.Exs-558-59. Regardless of whether this Court agrees that the policy is neutral and generally applicable under the Free Exercise clause, as the district court recognized, objections to government regulations are always at least subject to rational basis review. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009); *Sherbert v. Verner*, 374 U.S. 398, 406 (1963); *see Akers v. McGinnis*, 352 F.3d 1030, 1037 (6th Cir. 2003) (government employer). Under that standard, the regulation must have "a rational relation to *legitimate* state interests." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (emphasis added). But, as an obvious tautology, California has "no legitimate interest in enforcing an Order that is likely unconstitutional." *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025).

Indeed, the California School Boards Association—the author of the gender secrecy policy at issue in this case (AR 5145.3), *see* 1-Plt.Exs-17—

8

is advising schools that "[t]he teacher plaintiffs will likely receive the relief they sought." In full, the CSBA wrote:

> The teacher plaintiffs will likely receive the relief they sought, even though the district court's specific order as to them is still stayed. Because the parent's rights prohibit the state from permitting or requiring teachers to keep information about student gender presentation private from parents or guardians, the teachers will be able to disclose the information.

CSBA, *Supreme Court Strengthens parental notification rights for gender transitions* (Mar. 6, 2026), https://blog.csba.org/mirabelli-march26/.

**4.** Lastly, with respect to the scope of the district court's injunction, the Supreme Court was clear that class certification was proper. *Mirabelli*, 146 S. Ct. at 803. But California argues that there is ambiguity in whether it has a "mandatory 'see something, say something' obligation in all circumstances." Dkt.24 at 6. As Plaintiffs noted in opposition, California's motion for clarification should have been directed to the Supreme Court. *See Dep't of Homeland Sec.*, 145 S. Ct. at 2629-30. However, California's purported confusion is easily cleared up.

Under California law, public schools may not discriminate based on gender identity, which includes exclusion from sex-segregated facilities due to biological sex and misgendering—i.e., the core aspects of a social transition. Cal. Educ. Code §221.5(f); Cal. Code Regs. tit. 2, §11034(h). "Gender identity" is defined as an "individual's *stated* gender identity … without regard to any contrary statement by any other person." Cal. Code Regs. tit. 22, §83001(g)(2) (emphasis added). Thus, under California law,

9

a child is treated as transgender only if she *claims to be transgender*— not because a teacher notices some gender non-conforming behavior. And if a child claims to be transgender, such that a social transition is required under California law, then that social transition cannot occur absent parental notice and consent.

Oddly, in another case before this Court, California argued that the Supreme Court's opinion has no effect on AB 1955 because it merely bans "mandatory reporting policies," and the Supreme Court's opinion merely prohibits affirmatively "shut[ting] out" parents via "conceal[ment]." Supplemental Brief, *City of Huntington Beach v. Newsom*, No. 25-3826, Dkt.55 (9th Cir. Mar. 13, 2026). But because the Court held that the Fourteenth Amendment prohibits facilitating a child's gender transition without parental consent, and California law defines failing to do so as discrimination, schools are effectively mandated to report such information to parents in order to inquire about their consent. AB 1955 *forbids* precisely such mandatory communication to parents—and is thus effectively unconstitutional under *Mirabelli*.

\* \* \*

The Supreme Court's holding that California's challenged exclusion policies likely violate parents' free exercise and due process rights requires affirming the district court's holding to the same effect. Because the teachers' claims are derivative of the parents', their claims are likewise effectively resolved by the Supreme Court's opinion.

10

Accordingly, this case is ripe for expeditious resolution. The Court should issue an order to show cause re: summary affirmance, or at least summarily affirm at to the parents' claims, and order mediation as to the teachers' claims and potentially remand (or otherwise issue a temporary stay and require settlement discussions).

Respectfully submitted,

Dated: March 16, 2026     By: */s/ Paul M. Jonna*
                              Charles S. LiMandri
                              Paul M. Jonna
                              Jeffrey M. Trissell
                              William T. Duke
                              LiMANDRI & JONNA LLP
                              Post Office Box 9120
                              Rancho Santa Fe, CA 92067
                              Telephone: (858) 759-9930

                              Peter Breen
                              Michael McHale
                              Christopher J.F. Galiardo
                              THOMAS MORE SOCIETY
                              309 W. Washington St., Ste. 1250
                              Chicago, IL 60606
                              (312) 782-1680

                              *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I hereby certify that the foregoing document satisfies the type-volume requirements set out in this Court's order dated March 4, 2026, as it contains 2,499 words, and was prepared using Microsoft Word in Century Schoolbook, 14-point font, a proportionally spaced typeface.

*/s/ Paul M. Jonna*
Paul M. Jonna

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system and by email to all counsel of record.

/s/ *Paul M. Jonna*
Paul M. Jonna

**EXHIBIT 2**

 

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

## SB-251 Claims against the state: appropriation. (2025-2026)

SHARE THIS: **f** 𝕏

Date Published: 07/30/2025 09:00 PM

### Senate Bill No. 251

### CHAPTER 90

An act relating to the payment of claims against the state, making an appropriation therefor, and declaring the urgency thereof, to take effect immediately.

[ Approved by Governor  July 30, 2025. Filed with Secretary of State  July 30, 2025. ]

### LEGISLATIVE COUNSEL'S DIGEST

SB 251, Caballero. Claims against the state: appropriation.

Under existing law, if sufficient appropriations are not available for the payment of certain claims, settlements, or judgments, the Attorney General is required to report the claims, settlements, and judgments to the chairperson of either the Senate Committee on Appropriations or the Assembly Committee on Appropriations, who is then required to cause introduction of legislation appropriating the funds necessary for payment.

This bill would appropriate $1,221,491.30 from the General Fund to the Attorney General for the payment of claims, settlements, or judgments against the state arising from 3 specified actions.

This bill would declare that it is to take effect immediately as an urgency statute.

Vote: 2/3   Appropriation: yes   Fiscal Committee: yes   Local Program: no

### THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** (a) The sum of one million two hundred twenty-one thousand four hundred ninety-one dollars and thirty cents ($1,221,491.30) is hereby appropriated from the General Fund to the Attorney General to be allocated in accordance with the following schedule:

(1) The sum of six hundred seventeen thousand two hundred seventy-seven dollars and eighty-one cents ($617,277.81) for the payment of claims, settlements, or judgments against the state arising from First Amendment Coalition v. Bonta (San Francisco Superior Court Case No. CFP-19-516545).

(2) The sum of two hundred forty-four thousand three hundred ninety-nine dollars and seventy-six cents ($244,399.76) for the payment of claims, settlements, or judgments against the state arising from Linton v. Bonta (United States District Court, Northern District of California, No. 3:18-cv-07653-JD).

(3) The sum of three hundred fifty-nine thousand eight hundred thirteen dollars and seventy-three cents ($359,813.73) for the payment of claims, settlements, or judgments against the state arising from X Corp. v. Bonta (United States District Court, Eastern District of California, No. 2:23-cv-01939-WBS-AC).

(b) Any funds appropriated in excess of the amounts actually required for the payment of these claims, settlements, or judgments shall revert to the General Fund within 45 days after final payment is made.

**SEC. 2.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to pay judgment and settlement claims against the state and end hardship to claimants as quickly as possible, it is necessary for this act to take effect immediately.

**EXHIBIT 3**

Case 3:23-cv-00768-BAS-VET    Document 379-1    Filed 04/22/26    PageID.20433
Page 25 of 50

4/22/26, 9:04 AM    Bill Text - SB-1481 Claims against the state: appropriation.

 

Home    Bill Information    California Law    Publications    Other Resources    My Subscriptions    My Favorites

## SB-1481 Claims against the state: appropriation.  (2023-2024)

SHARE THIS:    Date Published: 09/23/2024 09:00 PM

### Senate Bill No. 1481

### CHAPTER 328

An act relating to the payment of claims against the state, making an appropriation therefor, and declaring the urgency thereof, to take effect immediately.

[ Approved by Governor  September 20, 2024. Filed with Secretary of State September 20, 2024. ]

### LEGISLATIVE COUNSEL'S DIGEST

SB 1481, Caballero. Claims against the state: appropriation.

Under existing law, if sufficient appropriations are not available for the payment of certain claims, settlements, or judgments, the Attorney General is required to report the claims, settlements, and judgments to the chairperson of either the Senate Committee on Appropriations or the Assembly Committee on Appropriations, who is then required to cause introduction of legislation appropriating the funds necessary for payment.

This bill would appropriate $19,289,000 from the General Fund to the Attorney General, to be allocated according to a particular schedule, in order to pay claims, judgments, or settlements against the state arising from several specified actions.

This bill would declare that it is to take effect immediately as an urgency statute.

Vote: 2/3   Appropriation: yes   Fiscal Committee: yes   Local Program: no

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** (a) The sum of nineteen million two hundred eighty-nine thousand dollars ($19,289,000) is hereby appropriated from the General Fund to the Attorney General to be allocated according to the following schedule:

(1) The sum of sixty-three thousand dollars ($63,000) for the payment of claims, settlements, or judgments against the state arising from Aubin v. Bonta (United States District Court, Northern District of California, No.21-cv-7938 NC).

(2) The sum of thirteen million three hundred thousand dollars ($13,300,000) for payment of claims, settlements, or judgments against the state arising from Davis v. State of California (San Diego County Superior Court Case No. 37-2020-00030315-CU-NP-NC).

(3) The sum of one million six hundred twenty-five thousand dollars ($1,625,000) for the payment of claims, settlements, or judgments against the state arising from Souliotes v. California Victim Compensation Board

(Los Angeles County Superior Court Case Nos. BS170608 and 21STCP03535).

(4) The sum of two million seven hundred twenty-four thousand dollars ($2,724,000) for the payment of claims, settlements, or judgments against the state arising from California Water Curtailment Cases (Santa Clara County Superior Court Case No. 1-15-CV-285182; JCCP 4838). This amount shall be deposited into the State Treasurer's Special Deposit Fund. The State Controller may issue a separate warrant to eligible claimants as directed by the Department of Justice.

(5) The sum of one million five hundred seventy-seven thousand dollars ($1,577,000) for the payment of claims, settlements, or judgments against the state arising from Welchen v. Bonta, et al. (United States District Court, Eastern District of California, No. 2:16-cv-00185-TLN-DB).

(b) Any funds appropriated in excess of the amounts actually required for the payment of these claims, settlements, or judgments shall revert to the General Fund within 45 days after final payment is made.

**SEC. 2.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to pay judgment and settlement claims against the state and end hardship to claimants as quickly as possible, it is necessary for this act to take effect immediately.

**EXHIBIT 4**

Case 3:23-cv-00768-BAS-VET    Document 379-1    Filed 04/22/26    PageID.20436
Page 28 of 50

4/22/26, 9:06 AM                                Bill Text - SB-383 Claims against the state: appropriation.

 

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

## SB-383 Claims against the state: appropriation. (2023-2024)

SHARE THIS:                                     Date Published: 06/16/2023 09:00 PM

### Senate Bill No. 383

### CHAPTER 10

An act relating to the payment of claims against the state, making an appropriation therefor, and declaring the urgency thereof, to take effect immediately.

[ Approved by Governor  June 16, 2023. Filed with Secretary of State  June 16, 2023. ]

### LEGISLATIVE COUNSEL'S DIGEST

SB 383, Portantino. Claims against the state: appropriation.

Under existing law, if sufficient appropriations are not available for the payment of certain claims, settlements, or judgments, the Attorney General is required to report the claims, settlements, and judgments to the chairperson of either the Senate Committee on Appropriations or the Assembly Committee on Appropriations, who is then required to cause introduction of legislation appropriating the funds necessary for payment.

This bill would appropriate $6,773,000 from the General Fund to the Attorney General for the payment of claims, settlements, or judgments against the state arising from 2 specified actions.

This bill would declare that it is to take effect immediately as an urgency statute.

Vote: 2/3   Appropriation: yes   Fiscal Committee: yes   Local Program: no

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** (a) The sum of six million seven hundred seventy-three thousand dollars ($6,773,000) is hereby appropriated from the General Fund to the Attorney General to be allocated in accordance with the following schedule:

(1) The sum of three million seven hundred thousand dollars ($3,700,000) for the payment of claims, settlements, or judgments against the state arising from Wetlands Preservation Foundation v. Department of Water Resources, et. al (San Joaquin County Superior Court, July 9, 2020, No. STK-CV-UWM-2018-8957).

(2) The sum of three million seventy-three thousand dollars ($3,073,000) for the payment of claims, settlements, or judgments against the state arising from California DUI Lawyers Association, et. al v. Department of Motor Vehicles, et. al (Los Angeles County Superior Court, April 15, 2022, No. BC553552).

(b) Any funds appropriated in excess of the amounts actually required for the payment of this judgment shall revert to the General Fund within 45 days after final payment is made.

**SEC. 2.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to pay judgment and settlement claims against the state and end hardship to claimants as quickly as possible, it is necessary for this act to take effect immediately.

**EXHIBIT 5**

No. 26-475

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

AURORA REGINO,
>                         *Plaintiff-Appellant,*

v.

GREG BLAKE,
>                         *Defendant-Appellee.*

_____

**On Appeal from the United States District Court
for the Eastern District of California**
No. 2:23-cv-00032-DJC-DMC
Hon. Daniel J. Calabretta, Judge

_____

**BRIEF OF THE STATE OF CALIFORNIA AS AMICUS CURIAE
IN SUPPORT OF DEFENDANT-APPELLEE**

_____

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
MICHAEL L. NEWMAN
  *Senior Assistant Attorney General*

JULIE VEROFF
  *Deputy Solicitor General*
LAURA FAER
  *Supervising Deputy Attorney General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 510-3776
Julie.Veroff@doj.ca.gov
*Attorneys for the State of California*

April 13, 2026

## TABLE OF CONTENTS

**Page**

Introduction and interest of amicus curiae.........................................................1

Statement.........................................................................................................3

Argument..........................................................................................................6

    I.     The parental substantive due process right recognized in
         *Mirabelli* is limited in several important respects.........................6

    II.    Whether a school policy triggers and survives strict
         scrutiny is fact-dependent..............................................................12

Conclusion ......................................................................................................15

# TABLE OF AUTHORITIES

**Page**

CASES

*Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*
    503 F.3d 256 (3d Cir. 2007) ...............................................................8

*Cal. Parents for the Equalization of Educ. Materials v. Torlakson*
    973 F.3d 1010 (9th Cir. 2020) ...........................................................11

*DeShaney v. Winnebago County Dep't of Soc. Servs.*
    489 U.S. 189 (1989).............................................................................8

*Fields v. Palmdale Sch. Dist.*
    427 F.3d 1197 (9th Cir. 2005) ...........................................................11

*Grimm v. Gloucester Cnty. Sch. Bd.*
    972 F.3d 586 (4th Cir. 2020) .............................................................10

*Haitian Refugee Ctr., Inc. v. Baker*
    953 F.2d 1498 (11th Cir. 1992) ...........................................................8

*Mirabelli v. Bonta*
    146 S. Ct. 797 (2026)...................................................................*passim*

*Mirabelli v. Bonta*
    2026 WL 44874 (9th Cir. Jan. 5, 2026)...............................................4

*Mirabelli v. Olson*
    2025 WL 3713588 (S.D. Cal. Dec. 22, 2025) ......................................7

*New York v. Ferber*
    458 U.S. 747 (1982).............................................................................14

*Parents for Priv. v. Barr*
    949 F.3d 1210 (9th Cir. 2020) ...............................................11, 12, 14

*Perry v. Marteney*
    __ F.4th __, 2026 WL 946152 (4th Cir. Apr. 8, 2026)..........................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Prince v. Massachusetts*
    321 U.S. 158 (1944)..................................................................................13

*Regino v. Staley*
    133 F.4th 951 (9th Cir. 2025) ........................................................6, 12, 13, 14

*Roberts v. U.S. Jaycees*
    468 U.S. 609 (1984)..................................................................................14

*Runyon v. McCrary*
    427 U.S. 160 (1976)....................................................................................7

*Troxel v. Granville*
    530 U.S. 57 (2000).......................................................................................7

*United States v. Salerno*
    481 U.S. 739 (1987)..................................................................................14

*United States v. Skrmetti*
    605 U.S. 495 (2025)..................................................................................10

*Washington v. Glucksberg*
    521 U.S. 702 (1997)....................................................................................6

*Wisconsin v. Yoder*
    406 U.S. 205 (1972)................................................................................7, 13

**INTRODUCTION AND INTEREST OF AMICUS CURIAE**

The State of California submits this brief under Federal Rule of Appellate Procedure 29(a)(2) in support of Defendant-Appellee.  When this case was last before the Court on appeal, the State led a multistate amicus brief and participated in oral argument in support of Defendant-Appellee.  *See Regino v. Staley*, No. 23-16031, Dkts. 46 (9th Cir. Jan. 9, 2024), 103 (9th Cir. May 9, 2024).  The State explained that States have a compelling interest in providing all students, including transgender and gender nonconforming students, with a safe and supportive learning environment, and that Plaintiff-Appellant's claims were properly dismissed.  *Id.*

This case is now again before the Court on appeal, following the district court's decision granting Defendant-Appellee's motion to dismiss Plaintiff-Appellant's amended complaint.  The State agrees with much of the district court's well-reasoned decision, which generally aligns with arguments the State has advanced in other, related litigation.  *See, e.g.*, *City of Huntington Beach v. Newsom*, No. 25-3826, Dkt. 26 (9th Cir. Aug. 13, 2025).  That decision, however, pre-dated the Supreme Court's recent per curiam order in *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026), which provided a preliminary assessment of the merits of a parental substantive due process claim similar to the one at issue here.  Because neither the district court's decision nor Defendant-Appellee's answering brief

1

addresses the *Mirabelli* decision, the State writes to provide the Court with its view

of the principles set forth therein.  The State is particularly well suited to offer an

analysis of *Mirabelli*.  Several state officials, including the California Attorney

General, are defendants in *Mirabelli*.  The State accordingly has substantial

familiarity with the legal issues involved, and an ongoing interest in any appeal

before this Court that presents an opportunity for the interpretation and application

of the Supreme Court's recent decision.  Indeed, the State has already filed

multiple briefs and letters in other cases pending before this Court addressing the

decision, and it will file its opening merits brief in the *Mirabelli* appeal pending

before this Court on May 18.[1]

As set out further below, the Supreme Court's preliminary decision in

*Mirabelli* recognized a parental substantive due process right "not to be shut out of

participation in decisions regarding their children's mental health."  146 S. Ct. at

803.  That right, however, is not absolute—as the Supreme Court itself recognized.

Among other things, States (and school districts) may permissibly restrict school

---

[1] *See Grimsby v. Pan*, No. 25-6100, Dkt. 35 (9th Cir. Mar. 6, 2026) (letter addressing relevance of *Mirabelli* to state vaccination laws); *City of Huntington Beach v. Newsom*, No. 25-3826, Dkt. 55 (9th Cir. Mar. 13, 2026) (supplemental brief addressing impact of *Mirabelli* on challenge to Assembly Bill 1955); *Mirabelli v. Bonta*, No. 25-8056, Dkt. 29 (9th Cir. Mar. 16, 2026) (supplemental brief addressing impact of *Mirabelli* on pending appeal); *Chino Valley Unified School District v. Newsom*, No. 25-3686, Dkt. 50 (9th Cir. Mar. 27, 2026) (letter addressing impact of *Mirabelli* on challenge to Assembly Bill 1955).

officials from disclosing a student's gender identity "to parents who would engage in abuse," *id.*, and school officials are not constitutionally obligated to provide information to parents who have not asked to receive it.

The State takes no position on whether the Court should address *Mirabelli* in the context of this appeal or vacate and remand for the district court to do so in the first instance. However the Court proceeds, the State respectfully asks that it consider the State's view of *Mirabelli* to the extent it describes or applies the decision. Understanding the proper scope of *Mirabelli*—including the limits of the ruling—is critical, not only in the context of gender-identity disclosure and related policies, but also when considering a host of other laws and policies that have elicited similar constitutional challenges, or could do so in the future. *Cf. Perry v. Marteney*, __ F.4th __, 2026 WL 946152, at *8 & n.1 (4th Cir. Apr. 8, 2026) (opinion of Wilkinson, J., joined by Agee, J.) (rejecting free exercise challenge under *Mirabelli* to school vaccination policy).

### STATEMENT

Because this amicus brief focuses on the State's view of the Supreme Court's provisional order in *Mirabelli*, the State here briefly recounts the relevant procedural history of that case. The *Mirabelli* case began in 2023, when two teachers argued that aspects of their school district's policy on transgender and gender nonconforming students violated their free speech and free exercise rights.

*See Mirabelli*, 146 S. Ct. at 800.  Eventually, the case expanded into a putative

class action on behalf of certain public school parents and teachers who challenged

on substantive due process, free exercise, and free speech grounds a set of alleged

state policies concerning parental notice and consent in connection with a student's

request that school officials use a name and pronouns that reflect the student's

gender identity.  *Id*. at 800-801.  The district court certified a class of public school

parents and employees who object to the challenged policies, granted summary

judgment to plaintiffs, and entered a permanent injunction.  *Id*. at 801-802.

A panel of this Court granted the State's request for a stay of the injunction

pending appeal.  *See Mirabelli v. Bonta*, 2026 WL 44874 (9th Cir. Jan. 5, 2026).

The panel held that the State had shown "a substantial case for relief on the merits

based on the sweeping nature of the district court's injunction, the dubious class

certification, and the weakness of" plaintiffs' claims.  *Id.* at \*3.  The panel also

noted that the district court misunderstood the relevant state laws, which are not

"categorical[]" as the district court believed, and that the injunction's terms failed

to clearly identify "which particular policies are problematic."  *Id*.  And it

concluded that the equitable factors favored a stay.  *Id.* at \*4.

The *Mirabelli* plaintiffs submitted an emergency application to the Supreme

Court to vacate the panel's stay order, which the Supreme Court granted as to the

parent plaintiffs and denied as to the teacher plaintiffs.  *See Mirabelli*, 146 S. Ct. at

797. In a per curiam order, the Supreme Court held that the parent plaintiffs are likely to succeed on their substantive due process and free exercise claims. *Id.* at 802-803. The Court explained that parents likely have a substantive due process "right not to be shut out of participation in decisions regarding their children's mental health," and that the State's policies likely violate that right to the extent they "conceal" from parents that their child is "exhibit[ing] symptoms of gender dysphoria at school" and that the school is "facilitat[ing] a degree of gender transitioning during school hours." *Id.* at 803.

For similar reasons, the Supreme Court held that the challenged policies likely trigger strict scrutiny on free exercise grounds, but explained that a state policy would likely satisfy that scrutiny to the extent that it "allows religious exemptions while precluding gender-identity disclosure to parents who would engage in abuse." 146 S. Ct. at 802-803. The Court also observed that "class certification was likely proper" and that the class members "very likely have standing." *Id.* at 803. In reaching those conclusions, the Court emphasized that the district court's injunction protects only "those parents who object to the challenged policies or seek religious exemptions," *not* "all the parents of California public school students." *Id.*

Justice Barrett, joined by the Chief Justice and Justice Kavanaugh, wrote separately to emphasize that the Court's "assessment is preliminary" and does not

"conclusively resolve [the merits]." *Id.* at 805 (Barrett, J., concurring). Justices

Sotomayor, Kagan, and Jackson dissented. *Id.* at 803, 806-809.

## ARGUMENT

### I. THE PARENTAL SUBSTANTIVE DUE PROCESS RIGHT RECOGNIZED IN *MIRABELLI* IS LIMITED IN SEVERAL IMPORTANT RESPECTS

As this Court explained when this case was last before it, to assess whether

state action has interfered with a fundamental right in violation of substantive due

process, a court "begin[s] with 'a careful description of the asserted fundamental

liberty interests'" and then "decide[s] whether the asserted interest" qualifies as

"fundamental." *Regino v. Staley*, 133 F.4th 951, 960 (9th Cir. 2025) (quoting

*Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). If the interest qualifies as a

fundamental right, a court then considers whether the fundamental right has been

infringed by the challenged law. *Id.* at 962. If it has, the court asks whether "'the

infringement is narrowly tailored to serve a compelling state interest.'" *Id.* "'Laws

that do not infringe a fundamental right survive substantive-due-process scrutiny

so long as they are 'rationally related to legitimate government interests.''" *Id.*

In *Mirabelli*, the parent plaintiffs asserted a liberty interest in knowing about

and consenting to school officials' use of their child's requested name and

pronouns. *See, e.g.*, *Mirabelli v. Olson*, No. 3:23-cv-768-BAS-VET, Dkt. 269 at

11 n.5 (S.D. Cal. Sept. 15, 2025) ("The complaint has always referred to parents'

right to 'knowledge and consent' before a school gender transitions their child.").

The district court, however, announced a right far broader than the interest plaintiffs asserted—the "right to be informed about the identity expressed within the school gate of one's child." *Mirabelli v. Olson*, 2025 WL 3713588, at \*16 (S.D. Cal. Dec. 22, 2025). The district court's formulation is materially broader than the plaintiffs' asserted interest because it concerns not just name and pronoun use by school officials, but a student's gender expression more generally. In resolving the plaintiffs' emergency application, the Supreme Court did not accept the district court's broad formulation, nor did it hold that the plaintiffs' asserted interest is a fundamental right deeply rooted in history and tradition. Instead, the Supreme Court held that "[t]he right protected by" its parental substantive due process precedents likely "includes the right not to be shut out of participation in decisions regarding their children's mental health." *Mirabelli*, 146 S. Ct. at 803.[2]

The Supreme Court's formulation of the parental substantive due process right is limited in several important respects. To begin with, the Supreme Court

---

[2] As a general matter, the Supreme Court has not identified strict scrutiny as the appropriate standard for evaluating substantive due process claims. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 69 (2000) (requiring lower courts to give parent's decision "special weight"); *Runyon v. McCrary*, 427 U.S. 160, 178-179 (1976) (requiring only "reasonable government regulation"); *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972) ("balancing process"). The Supreme Court's recent per curiam order identified strict scrutiny as the appropriate standard for the parents' free exercise claim, but did not specify the appropriate standard of review for their substantive due process claim. *See Mirabelli*, 146 S. Ct. at 802-803.

Case 3:23-cv-00768-BAS-VET    Document 379-1    Filed 04/22/26    PageID.20450
Case: 26-475, 04/13/2026, DktEntry: 33.1, Page 12 of 20

did not recognize an unqualified parental right to unilaterally dictate the outcome of all "decisions regarding their children's mental health"—it recognized "the right not to be shut out of *participation* in" such decisions. *Mirabelli*, 146 S. Ct. at 803 (emphasis added). The Supreme Court also did not suggest that school officials have a constitutional obligation to provide information to parents who have not asked to (and may not want to) receive it. To the contrary, the Court upheld the scope of the class-certification order on the understanding that it included only "those parents who object to the challenged policies or seek religious exemptions," not "all the parents of California public school students." *Id.*

That makes sense: the Constitution "does not require the Government to assist the holder of a constitutional right in the exercise of that right." *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1992); *see also DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195 (1989) ("[The Due Process Clause] cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."); *Anspach ex rel. Anspach v. City of Phila. Dep't of Pub. Health*, 503 F.3d 256, 262 (3d Cir. 2007) ("familial liberty interest protected under the Constitution" does not "impose a *constitutional* obligation on state actors to contact parents of a minor or to encourage minors to contact their parents").

8

The Supreme Court also made clear that parental rights do not prevent States or public schools from maintaining policies that restrain disclosure of a student's gender identity or expression to parents who would engage in abuse as a result. *Mirabelli*, 146 S. Ct. at 803.  Indeed, the Supreme Court specifically noted that a policy "precluding gender-identity disclosure to parents who would engage in abuse" would survive strict scrutiny under the Free Exercise Clause. *Id.*  If policies with exceptions for abuse would survive strict scrutiny, they would certainly satisfy whatever standard of scrutiny applies to a substantive due process claim of the sort brought by the plaintiff here.  *See supra* p. 7 n.2.  For much the same reason, any injunctive relief in this context should include an exception to make clear that school officials have no constitutional obligation to disclose information about a student's gender identity when doing so would threaten abuse.[3]

---

[3] In *Mirabelli*, the district court's injunction includes no express carveout for circumstances involving a risk of abuse.  *Mirabelli v. Olson*, No. 3:23-cv-768-BAS-VET, Dkt. 308 (S.D. Cal. Dec. 22, 2025).  For that reason, the State sought an order clarifying that the injunction is stayed on appeal to the extent it would require disclosure in those circumstances.  *Mirabelli v. Bonta*, No. 25-8056, Dkt. 24 (9th Cir. Mar. 6, 2026).  Although a panel of this Court denied the request without prejudice to refiling in district court, it made clear that the State raised "important concerns."  *Id.*, Dkt. 33 at 2 (9th Cir. Mar. 17, 2026).  The district court subsequently stated from the bench that "there's nothing in [the] injunction that prohibits a teacher from pursuing lawful approaches to either avoiding or resolving possible abuse."  *Mirabelli v. Olson*, No. 3:23-cv-768-BAS-VET, Tr. of Mot. Hearing 8:14-16 (S.D. Cal. Mar. 30, 2026).  The State will continue to seek clarification on appeal to ensure that the district court's injunction is not understood and applied in an overbroad manner inconsistent with the reasoning in the Supreme Court's order.

And finally, the Supreme Court took care to specifically tether the parental right to their child's mental health, not their gender identity or gender expression more generally.  In applying its articulation of the right to the issues in *Mirabelli*, the Supreme Court explained:  "Gender dysphoria is a condition that has an important bearing on a child's mental health," and "when a child exhibits symptoms of gender dysphoria at school," the parental substantive due process right "not to be shut out of participation in decisions regarding their children's mental health" is likely violated where state "policies conceal that information from parents and facilitate a degree of gender transitioning during school hours" without informing parents.  *Mirabelli*, 146 S. Ct. at 803.

That right will not be implicated every time a student expresses a transgender or gender nonconforming identity because merely being transgender is not a "symptom[] of gender dysphoria." *Mirabelli*, 146 S. Ct. at 803.  Gender dysphoria is "a medical condition" from which "*[s]ome* transgender individuals suffer" that is "characterized by persistent, clinically significant distress resulting from an incongruence between gender identity and biological sex." *United States v. Skrmetti*, 605 U.S. 495, 502-503 (2025) (emphasis added); *see also Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020) ("Being transgender is also not a psychiatric condition, and 'implies no impairment in judgment, stability, reliability, or general social or vocational capabilities.'").

10

Importantly, the Supreme Court's specific focus on mental health does nothing to disturb this Court's precedent—and the many similar decisions from other courts of appeals—that parents lack a substantive due process right "to direct the curriculum that is taught to their children" and "to direct school administration more generally." *Parents for Priv. v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020), *cert. denied* 141 S. Ct. 894 (2020); *see also Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1020 (9th Cir. 2020) (rejecting parents' substantive due process challenge to school curriculum); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204-1205 (9th Cir. 2005) (collecting cases rejecting parental substantive due process challenges to school programs and policies concerning community service requirements, sex education, attendance, condom distribution, and speech therapy services). So long as school policies do not concern symptoms that have an "important bearing on a child's mental health"—and so long as school policies do not "shut out" parents from participating in decisions regarding students' mental health—the limited right discussed on a preliminary basis in *Mirabelli* is not burdened. 146 S. Ct. at 803.

Construing the right discussed in *Mirabelli* more expansively would threaten vast implications that the Supreme Court did not have the opportunity to consider. For example, if understood too broadly, a substantive due process right to parental involvement in school administration would effectively require teachers to become

11

agents of the parents, forced to administer various parenting choices and philosophies, even where the State or school district deems them discriminatory and harmful to students and the learning environment. An overbroad understanding of *Mirabelli* could, for example, threaten to require school officials to regulate what children wear (or elect not to wear) at school, such as a head covering or other form of religious dress, to conform with their parents' requirements, or to stop teens of different races from dancing together at the school prom in accordance with their parents' objections. Public schools have never been forced to assume those responsibilities, *see, e.g.*, *Parents for Privacy*, 949 F.3d at 1231, and *Mirabelli* does not change that.

## II.  WHETHER A SCHOOL POLICY TRIGGERS AND SURVIVES STRICT SCRUTINY IS FACT-DEPENDENT

Whether a given school policy burdens a parent's "right not to be shut out of participation in decisions regarding their children's mental health," *Mirabelli*, 146 S. Ct. at 803, necessarily turns on the policy's terms and operation. *See Regino*, 133 F.4th at 962 ("'identifying a general parental right is far different than concluding that it has been infringed'"). For example, a disclosure policy that does not restrain school officials from sharing information with parents regarding their child's mental health or well-being would not burden the parental substantive due process right articulated by the Supreme Court. Nor would a policy that prohibits school officials from referring to a student by a name and pronouns that do not

12

reflect the student's gender identity, so long as the policy does not restrain school officials from informing, consulting with, and involving parents in the process of responding to the student's request regarding name and pronoun use.

If a court determines that a given policy burdens a parental substantive due process right, the court then must consider whether that burden is justified. As this Court previously explained, the parental right "is not absolute; it must 'bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae*.'" *Regino*, 133 F.4th at 961. That is especially so where the child's well-being is at stake. *See, e.g., Prince v. Massachusetts*, 321 U.S. 158, 167 (1944) ("the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare"); *Yoder*, 406 U.S. at 230 (distinguishing case challenging compulsory-attendance law with "one in which any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred"). A court must therefore assess whether the particular burden imposed on a parental due process right is justified in light of the countervailing interests at stake. *See supra* 6. That inquiry will necessarily be fact-specific, turning on the policy's terms, the nature of the government interest asserted, and the evidence supporting that interest. Here, for example, the State has no doubt—based on its own research and experience—that

13

the school district will be able to provide compelling evidence that intentionally misgendering students when they have requested to be referred to by a different name and pronouns advances compelling interests in combatting discrimination, protecting the well-being of students, and fostering a learning environment in which all students can thrive. *Cf. New York v. Ferber*, 458 U.S. 747, 756-757 (1982) (compelling interest in "'safeguarding the physical and psychological well-being of a minor'"); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) (compelling interest in "eradicating discrimination"); *Parents for Priv.*, 949 F.3d at 1238 ("legitimate purpose of protecting student safety and well-being, and eliminating discrimination on the basis of sex and transgender status").

In light of the fact-specific inquiry that is required, a court's analysis of the government interest and evidentiary record in one case should not be understood to dictate any particular result in another case. And in all events, courts must be attentive to whether a plaintiff seeking facial relief has shown that "no set of circumstances exists under which the [laws] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Regino*, 133 F.4th at 967.

## CONCLUSION

To this extent this Court addresses the Supreme Court's decision in *Mirabelli*

in its resolution of this appeal, the State respectfully asks that it does so in

accordance with the principles described above.


Dated:  April 13, 2026                          Respectfully submitted,

                                                 *s/Julie Veroff*

                                                 ROB BONTA
                                                   *Attorney General of California*
                                                 SAMUEL T. HARBOURT
                                                   *Solicitor General*
                                                 MICHAEL L. NEWMAN
                                                   *Senior Assistant Attorney General*
                                                 JULIE VEROFF
                                                   *Deputy Solicitor General*
                                                 LAURA FAER
                                                   *Supervising Deputy Attorney General*

                                                 *Attorneys for the State of California*


15

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** <u>26-475</u>

I am the attorney or self-represented party.

**This brief contains <u>3,517</u> words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Julie Veroff</u>        **Date** <u>04/13/2026</u>
*(use "s/[typed name]" to sign electronically-filed documents)*